2 To G

ORIGINAL 

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,　　　:　Case No. 1:01-CV-1157
　　　　　　　Plaintiff　　:
　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　:
　　　　　　　　　　　　　　:
UNUM PROVIDENT　　　　　:
CORPORATION, PAUL　　　　:
REVERE LIFE INSURANCE　　:　JUDGE KANE
COMPANY and NEW YORK　　:
LIFE INSURANCE COMPANY,　:
　　　　　　　　　　　　　　:
　　　　　Defendants　　　:

**FILED**
HARRISBURG, PA
AUG 0 9 2002
MARY E. D'ANDREA, CLERK
Per
　Deputy Clerk

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

STEVENS & LEE
E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants

## Table of Contents

Page

I.    PROCEDURAL HISTORY .........................................................................1

II.   FACTUAL HISTORY .............................................................................1

    A.    The Policy...................................................................................1

    B.    Plaintiff's Disability Claim. ..........................................................3

    C.    The Medical Evidence Provided By Dr. Bower. ..............................10

    D.    Plaintiff's Deposition Testimony. .................................................12

    E.    Discovery Into Plaintiff's Alleged Psychiatric Condition And SSDI Claim. .........................................................................14

    F.    The Parties' Expert Reports.........................................................15

III.  STATEMENT OF QUESTIONS PRESENTED .........................................16

    A.    WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM. ..................................................................16

    B.    WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE BAD FAITH CLAIM. .............................................................................16

IV.   ARGUMENT....................................................................................16

    A.    Defendants Are Entitled To Summary Judgment On Plaintiff's Breach of Contract Claim...........................................16

        1.    Plaintiff's Burden Of Proof.................................................16

        2.    Plaintiff Cannot Satisfy His Burden Of Proof. .......................18

    B.    Paul Revere Acted Reasonably in Denying Plaintiff's Claim for Benefits and Plaintiff is Unable to Produce Clear and Convincing Evidence That Establishes a Prima Facie Case of Bad Faith. ...............................................................23

        1.    Plaintiff's Burden of Proof. ................................................23

        2.    Conduct That is Not Bad Faith............................................25

        3.    Paul Revere Did Not Act In Bad Faith By Denying Plaintiff's Disability Benefits ............................................26

V.    CONCLUSION..................................................................................29

i

# TABLE OF AUTHORITIES

## CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)...................................................................24

Block v. Pitney Bowes, Inc.,
952 F.2d 1450 (D.C. Cir. 1992) .............................................22

Breznek v. Union Mutual Life Ins,. Co.,
No. 87-3804, 1988 U.S. Dist. LEXIS 6591 (E.D. Pa. June 20, 1998).....20

Bucks v. Reliance Standard Life Ins. Co.,
No. 99-3398, 2000 U.S. App. LEXIS 11456 (6th Cir. May 12, 2000)....21

Cantor v. The Equitable Life Assurance Soc.,
No. 97-CV-5711, 1999 U.S. Dist. LEXIS 4805
(E.D. Pa. Apr. 13, 1999) ...............................................25, 28

Cipriani v. Federal Ins. Co.,
No. 99-CV-1014, 1999 U.S. Dist. LEXIS 11405
(E.D. Pa. July 20, 1999)................................................29

Cox v. Mid-America Dairymen, Inc.,
965 F.2d 569 (8th Cir. 1992).............................................22

Dawes v. UNUM Life Ins. Co.,
851 F. Supp. 118 (S.D. N.Y. 1994) .......................................20

Dinner v. United Services Automobile Assoc.,
No. 01-1299, 2002 U.S. App. LEXIS 3408
(3d Cir. Jan. 24, 2002) .................................................23

Doe v. Provident Life and Accident Ins. Co.,
No. 96-3951, 1997 U.S. Dist. LEXIS 5462
(E.D. Pa. April 23, 1997) ...............................................19

Doyle v. Paul Revere Life Ins. Co.,

SL1 281075v1/10305.060

144 F.3d 181 (1st Cir. 1998) ................................................................22

Gonyea v. John Hancock Life Ins. Co.,
  812 F. Supp. 445 (D. Vt. 1993) ..........................................................21

Hofkin v. Provident Life & Accident Inc. Co.,
  81 F.3d 365 (3d Cir. 1996) .................................................................28

Keefe v. Prudential Property and Casualty Ins. Co.,
  203 F.3d 218 (3d Cir. 2000) ...............................................23, 28, 29

Landau v. Reliance Standard Life Ins. Co.,
  1999 U.S. Dist. LEXIS 279 (E.D. Pa. Jan. 13, 1999) .............................23

McCabe v. State Farm Mutual Automobile Ins. Co.,
  36 F. Supp. 2d 666 (E.D. Pa. 1999).....................................24, 25, 26, 27

Polselli v. Nationwide Mutual Fire Ins. Co.,
  23 F.3d 747 (3d Cir. 1994) .................................................................23

Russell v. Paul Revere Life Ins. Co.,
  148 F. Supp. 2d 392 (D. Del. 2001), aff'd, 288 F.3d 78 (3d Cir.
  2002)...................................................................................................17

Russell v. Paul Revere Life Ins. Co.,
  288 F.3d 78 (3d Cir. 2002)...............................................16, 17, 19, 21

Scarinci v. Ciccia,
  880 F. Supp. 359 (E.D. Pa. 1995)........................................................22

Seidman v. Minnesota Mutual Life Ins. Co.,
  40 F. Supp. 2d 590 (E.D. Pa. 1997)....................................................25

SL1 281075v1/10305.060

## I.    PROCEDURAL HISTORY

Plaintiff alleges claims for bad faith, under 42 Pa. C.S.A. § 8371, and breach of contract arising from the denial of his claim for disability benefits based on back and psychiatric conditions.  Defendants UNUMProvident Corporation ("UNUMProvident"), The Paul Revere Life Insurance Company ("Paul Revere") and New York Life Insurance Company ("NYL") move for summary judgment.

The deadline for expert reports was June 28, 2002.  Although plaintiff claims to be medically disabled, he has not designated any medical expert.  Rather, he relies solely on a so-called expert in insurance practices.  He also relies on testimony from his treating physician, Dr. Douglas J. Bower, an internist, who has not been designated as an expert under Rule 26, and who admits he is not an expert on back conditions and is not board certified in psychiatry or psychology.

Accordingly, Defendants have filed a motion in limine to preclude testimony by plaintiff's insurance practices expert and any testimony in the nature of expert testimony by Dr. Bower on plaintiff's alleged back and psychological conditions.[1]

## II.    FACTUAL HISTORY

### A.    <u>The Policy.</u>

Plaintiff is a restaurant owner who seeks disability benefits under a disability policy (the "Policy") issued by NYL.  (Appendix [hereinafter "App."], Exhibit A (copy of policy produced by plaintiff in discovery)).  Pursuant to a reinsurance

---

[1]    Defendants reserve the right to file additional motions in limine prior to the expiration of the deadline for in limine motions.

1

agreement, Paul Revere is responsible for administering claims under the Policy and paying any Policy benefits that may be owed.

Several policy provisions are relevant in analyzing plaintiff's claims. First, the Policy insures against either "total" or "residual disability" based on the insured's "regular occupation." Total disability is defined, in relevant part, as:

> From the start of a total disability until 2 years after the Income Starting Date, total disability means that the Insured cannot do the substantial and material duties of his or her regular job.

(App., Exh. A at 699). Significantly, the term "regular job" is defined broadly to encompass all of the insured's occupational duties. Thus, the Policy defines the term "Regular Job" as: **"Regular Job** The occupation, or occupations if more than one, in which the Insured is engaged when a disability starts." (App., Exh. A at 699 (emphasis added)).

The Policy also provides for "residual disability" where the insured is not totally disabled. In general, this provision provides for payment of partial benefits if the insured has a loss of income greater than 20% which is caused by the same or a related injury or sickness that gave rise to the initial claim for disability benefits. (App., Exh. A at 714).

Claims are not payable until "all information that is necessary for [Paul Revere] to make a decision is received." (App., Exh. A at 703 ("Time of Payment of Claim")). The insured's first obligation is to provide notice of claim "within 30

2

days after a disability starts or a covered loss occurs, or as soon as this can reasonably be done." (App., Exh. A at 703 ("Notice of Claim")). Next, claim forms are sent out which the insured must fill out and return. (App., Exh. A at 703 ("Claim Forms")). Finally, the Policy's proof of loss provision requires the insured to provide periodic "written proof of disability" during the period when benefits are payable. (App., Exh. A at 703 ("Proof of Disability or Loss")).

In short, to determine whether plaintiff was entitled to benefits under the Policy, Paul Revere needed accurate information about, among other things, his medical condition and his occupation -- or occupations -- at the time his alleged disability began.

### B.    Plaintiff's Disability Claim.

Plaintiff applied for the NYL policy on June 3, 1993. (App., Exh. B at 320-330).[2] In the application plaintiff gave very specific questions about his occupation and a certification that his representations were accurate. (Id. at 326).

First, plaintiff said his occupation was "President of First Class Restaurant." (Id. at 330). Next, when describing his "[e]xact duties, including percentage of time spent performing any manual or supervisory duties and traveling," plaintiff said his duties were "executive, office duties only." (Id.)

---

[2]    Defendants have attached as Exhibit B to the appendix copies of the non-privileged documents contained in the claim file which have been numbered 1 – 563. These records also include several pages which were in the claim file but inadvertently not numbered and several more legible duplicates of certain numbered pages, all of which have been produced in discovery.

**Plaintiff's 1996 Claim**

Plaintiff has a history of lower back problems which were successfully treated over the years through periodic epidural steroid injections. In 1996, however, plaintiff had two slip-and-fall incidents in January and March 1996 and sought disability benefits. (App., Exh. B at 17).

Plaintiff told NYL he worked 40 hour weeks and listed his important duties as "manage employees, work schedules; book work; deal with food companies; phone; and administration and office duty." (App., Exh. B at 42-43). In his deposition, plaintiff claimed he was mistaken when he wrote 40 hours a week (App., Exh. C at 69-71), although he said he worked 40 hours a week again in 2000. (App., Exh. B at 540). In any event, he confirmed the accuracy of the remaining information. (App., Exh. C at 71).

Plaintiff provided an attending physician statement of disability ("APS") from his physician, Dr. Douglas Bower, who said plaintiff had been unable to work from April 3, 1996 to October 23, 1996. (App. Exh. B at 15, questions 2(B) and 6(B)). Dr. Bower also gave restrictions and limitations ("R&Ls") on plaintiff's return to work as follows: "to avoid prolonged standing for greater than 10-15 minutes at a time, to try to avoid bending at the waist or lifting objects greater than 10 lbs., or to avoid continuous walking of greater than 15-20 minutes at a time." (App., Exh. B at 13).

4

NYL investigated a possible rescission questioning whether plaintiff had fully disclosed on his application his history of back problems. (Id. at 81, 83). But after receiving additional information, NYL decided not to pursue rescission. (Id. at 151-52 and 191-92). Instead, without having any medical review of the records, NYL elected to pay benefits for the limited period of July 2, 1996 through October 23, 1996 (the date by which plaintiff had recovered). (Id. at 216-217).[3]

## Plaintiff's 2000 Claim

In July 2000, plaintiff suffered a heart attack and was transported to the hospital by ambulance. He claims that during the ambulance ride, he injured his back when the ambulance hit a bump in the road.

Although the alleged injury occurred in July, Paul Revere did not receive notice until September 2000. (App., Exh. B at 556-557; Exh. D at 11-12). That same month, both NYL and Paul Revere sent plaintiff claim forms, along with an explanation that Paul Revere would administer the claim pursuant to a reinsurance agreement. (App., Exh. B at 552-553). Plaintiff's claim forms were not received until December 15, 2000 (after another request by Paul Revere on November 1, 2000). (App., Exh. B at 550 and 551).

---

[3]  The policy contained an "elimination period" of 90 days during which no benefits are paid; hence, the benefits were payable only from July 2, 1996 and not from April 1996 when plaintiff first claimed to be disabled.

## Plaintiff's Claim Forms

The claim forms requested detailed occupational and medical information. When asked to "list the duties of your occupation at the time of your disability," plaintiff responded: "Executive - 50%" and "Office - 50%." (Id. at 549). He said his occupation was "President" (Id. at 548), and that his duties were 50% executive duties and 50% office duties. (Id. at 547).

He also described his occupational duties as involving 40 hours a week (Id. at 540), with 50% of his time supervising employees; 25% bookkeeping, and 25% other office duties. (Id.). He also said he "occasionally" had to lift or carry five-pound objects. (Id. at 539).

Plaintiff further said he had to sit for 3.5 total hours (as opposed to at a time), stand for 3.5 hours and walk for 1 hour. (Id.). Plaintiff signed the application and certified that his answers were "complete and true." (Id. at 539).

Plaintiff also described the medical basis for the claim as a heart attack. (Id. at 549 and 544). He also said he "cannot perform my duties under the stressful situation. My chest is painful and I am fearful for my life." (Id. at 540).

Dr. Bower also completed APS forms noting, among other things, that plaintiff had "objective findings" of a cardiac catheterization on July 24, 2000, and had "subjective symptoms" of "anxiety, worry, low back pain." (Id. at 546). Dr. Bower also identified R&Ls of "no prolonged standing, no heavy lifting (2nd to back)" and "cannot work in a stressful situation." (Id.).

6

On January 4, 2001, plaintiff's counsel faxed Paul Revere a November 3, 2000 letter from Dr. Bower which said plaintiff's cardiac condition may not be disabling.  (Id. at 531).  But Dr. Bower claimed plaintiff's back problems were disabling.  (Id.).  Finally, Dr. Bower said plaintiff had "stress and anxiety which has been provoked because of his recent cardiac problems."  (Id. at 532).

On January 15, 2000, Paul Revere wrote plaintiff about the status of the claim which was delayed by the late submission of the claim forms.  (Id. at 529-530).  Further, the letter noted that medical records had been requested and that, consistent with Policy, the claim was not payable until all information necessary for Paul Revere to make a decision is received.  (Id.).  Finally, Paul Revere asked plaintiff for an occupational description and a progress report.  (Id.).

In his January 18, 2001 occupational form, plaintiff claimed his job required him to stand most of the time.  (Id. at 345).  His statements were inconsistent with his prior statements about his occupational duties, such as his statement in November 2001 about the amount of time he spent sitting, standing and walking.  (Compare App., Exh. B at 345 and 539).  They were also inconsistent with the descriptions of the specific duties plaintiff outlined on the same form, none of which reflect a need to stand "most of the time."  Instead, they refer to (1) bookkeeping; (2) office duties; and (3) employee administration.  (Id. at 345).

7

Paul Revere received medical records from Carlisle Hospital in late January 2001. (App., Exh. B at 437-505). Additionally, on or about March 1, 2001, Paul Revere received records from Dr. Bower's office. (Id. at 387-436).

The Carlisle records revealed that plaintiff had periodic epidural steroid injections for his back. (App., Exh. B at 482-503). For example, in October 2000 treatment notes, plaintiff's physician noted "[h]e has spinal stenosis and does reasonably well [with] an injection or 2 once a year." (App., Exh. B at 503).

Dr. Bower's treatment records also did not indicate a disability (despite his November 2000 narrative letter). The November 29, 2000 treatment notes reflect that plaintiff's back problems and anxiety were being treated successfully with medication. (Id. at 434). The January 11, 2001 treatment notes reflect no cardiac impairment and that plaintiff's anxiety was stable. While plaintiff was apparently considering another epidural steroid injection, there is no indication that his back was any worse than it was previously when he obtained epidural injections and continued to work. Indeed, the treatment notes reflect that he was "exercising without difficulty." (Id.).

Paul Revere then arranged for a medical review by Dr. John Clarke, M.D. (App., Exh. B at 381, 378-379).[4] Dr. Clarke found no cardiac impairment nor "any information to support a present cardiac impairment related to stress." (Id. at 378).

---

[4] Dr. Clarke is a part-time physician-consultant for Paul Revere. (App., Exh. E (Clarke Dep.) at 6). He is a graduate of Harvard Medical School who is board certified in sports medicine with an extensive background in rehabilitation medicine. (Id. at 4-7).

8

Dr. Clarke noted that plaintiff had prior episodes of trauma-related exacerbation of his back condition but had been able to return to work "and there does not appear to have been any significant structural change in his condition associated with the recent exacerbation." (Id.).

On April 20, 2001, Paul Revere rendered its decision to deny the claim (App., Exh. F; Exh. B at 369-370 and 358-360).[5] In the letter, Paul Revere reviewed the medical and occupational information and concluded that plaintiff's submissions did not prove he was entitled to benefits under the policy.

Plaintiff requested reconsideration of Paul Revere's decision on May 8, 2001. (App., Exh. B at 367-368). His attorney challenged Paul Revere's understanding of plaintiff's occupational duties. (Id. at 360). The allegations of plaintiff's counsel stand in stark contrast to plaintiff's written statements about a 40 hour work week spent performing executive and office duties. They are also inconsistent with plaintiff's deposition testimony in this case.

On May 23, 2001 Paul Revere denied plaintiff's request for reconsideration. (Id. at 361-362). Paul Revere offered to review any new information through a further appeal; however, plaintiff filed suit instead.

---

[5]    Unfortunately, the April 20, 2001 letter was separated in the claim file. Accordingly, a copy of the document produced by plaintiff in discovery is attached at Exhibit F.

**C.    The Medical Evidence Provided By Dr. Bower.**

Dr. Bower's deposition testimony confirms there are only three possible bases for plaintiff's claim: (1) a cardiac condition; (2) back problems; and/or (3) a psychiatric condition. None, in fact, are disabling.

### Plaintiff's Cardiac Condition Is Not Disabling

Following a "small" heart attack and angioplasty in July 2000, plaintiff's heart function was normal (App., Exh. G at 14). He was not under any cardiac restrictions after rehabilitation. (<u>Id.</u> at 17). Dr. Bower confirmed that plaintiff's heart condition "does not limit him at all" (<u>Id.</u> at 49), is "not in any way disabling at this point" (<u>Id.</u> at 58), and does not prevent him from working (<u>Id.</u> at 61).

### Plaintiff's Back Condition Is Not Disabling

As for the back condition, Dr. Bower concedes that "I am not an expert in back conditions." (<u>Id.</u> at 7). Further, his office notes frequently noted that plaintiff's back problems were stable or well-controlled on medication. An early 2001 EMG study found no abnormalities. (<u>Id.</u> at 28-30).

Dr. Bower provided R&Ls which included no prolonged standing for more than 15-30 minutes (<u>Id.</u> at 46), and no lifting of more than 20 pounds (<u>Id.</u> at 48). These appeared less restrictive than the R&Ls he imposed in 1996. (<u>Id.</u> at 13). In any event, he conceded that he did not have a good grasp of plaintiff's occupational requirements and how those requirements related to his restrictions. (<u>Id.</u> at 50-51).

Dr. Bower conceded that if plaintiff's back was the only problem, he could perform the occupational duties he described to Paul Revere (i.e., 20% bookkeeping, 20% office duties and 60% supervising employees). (Id. at 54-57 and 59). Dr. Bower has treated other patients with similar back problems who have returned to sedentary or light duty work. (Id. at 51-52).

Perhaps most significantly, Dr. Bower also conceded that another physician could examine plaintiff's records and conclude that he can to perform light or sedentary work. (Id. at 53).

### Plaintiff's Alleged Psychiatric Condition

Although plaintiff's only purported expert witness (Gordon Rose) says there are no psychiatric issues, (App., Exh. H), Dr. Bower relies largely on plaintiff's alleged psychological problems. In fact, Dr. Bower thinks the alleged psychological problems represent plaintiff's "biggest" problem. (App., Exh. G at 44). In any event, Dr. Bower is not a psychologist or psychiatrist, has not performed the necessary testing, and is therefore not qualified to render such an opinion. (See Defendants' Motion In Limine). (Id. at 36).

Dr. Bower formally diagnosed plaintiff with depression in July 2001. (Id. at 35). And while he believes this is plaintiff's biggest problem, (id. at 44), he has not referred plaintiff to a psychologist claiming that there were few viable options in the geographic area. (Id. at 44-45).

11

Dr. Bower summarized his opinion by stating that while plaintiff's back condition was "a big limitation," plaintiff's "primary problem" was his psychiatric problem. (Id. at 58). In short, Dr. Bower opines that it is the combination of psychiatric and back problems that is disabling with the alleged psychiatric problem being the predominate factor. (Id. at 59).

**D.     Plaintiff's Deposition Testimony.**

Plaintiff's deposition confirms that his occupational duties were not as strenuous as his lawyers claimed to Paul Revere. For example, the restaurant has a room with a desk where he handles paperwork like ordering supplies. (App., Exh. C at 9-11). This room also has a window from which plaintiff can sit and observe the customers and his employees. (Id. at 10, 81). Plaintiff also described a "typical" day in which he would welcome customers, operate the cash register, pay bills, order supplies, take food orders from customers. (Id. at 17-19).

Plaintiff would very rarely, such as once a month, need to go with a customer to a table. (Id. at 18). Also, plaintiff would fill in cooking "once a month maybe, once every two months," if an employee did not show up. (Id. at 19). Plaintiff was not involved with cleaning. (Id. at 18).

Plaintiff also claimed that the various occupational descriptions he provided to NYL and Paul Revere did not disclose all of the tasks he actually performed at the restaurant. (App., Exh. C at 72-73). He agrees the information he provided in the forms could mean different things to different people. (Id. at 69). He concedes

12

therefore that someone reviewing the forms might not understand that he works the cash register and may need to wait on tables or cook once a month. (Id. at 85). While plaintiff thinks this should be apparent to someone familiar with restaurants (Id. at 86), he agrees there are many different types of restaurants and restaurant owners. (Id. at 86-88).

Plaintiff also provided information on his R&Ls. He testified that he can stand for intervals of 15 to 30 minutes. (Id. at 31). He can walk for 35-40 minutes on flat surfaces. (Id. at 32).

When asked about his sources of income and in particular his investment account, plaintiff initially claimed "[t]here is not much there. We Don't do to much." (Id. at 34). Yet plaintiff's tax returns reveal significant trading activity, which undermines plaintiff's claims that psychological problems disable him. While plaintiff claims it is too stressful for him to do bookkeeping, pay bills and order supplies, he engaged in close to $6 million in stock trades in 2000 alone. (Id. at 49-51; App., Exh. I).[6] Plaintiff confirmed he made these investment decisions on his own, followed the market closely and made his trades by computer. (Id. at 49, 53-54). Indeed, many stocks were held for as little as a day or two. (Id. at 49)

Plaintiff lost over $300,000 in 2000 and over $70,000 in 2001. (App., Exh. I). While plaintiff claims that working at his restaurant is too stressful, he

---

[6]    Exhibit I contains the Schedule D from plaintiff's 2000 and 2001 individual tax returns.

13

claims that losing this much money did not bother him and made him neither anxious nor angry. (App., Exh. C at 54).

### E. Discovery Into Plaintiff's Alleged Psychiatric Condition And SSDI Claim.

Plaintiff never submitted a claim based on a psychiatric condition, nor provided any report by a psychiatrist or a psychologist. Paul Revere therefore reviewed the claims about stress in the context of plaintiff's cardiac condition.

However, given Dr. Bower's deposition testimony, Paul Revere took additional discovery which lead to discovery into his claim for Social Security Disability Income ("SSDI") benefits. This discovery, as well as plaintiff's deposition testimony about his activities since he stopped working at his restaurant further undermine his claims. The records include the following:

- An August 29, 2001 denial of benefits because there are positions he could perform which are "simple, unskilled work" positions. (App. Exh. J (compilation of records from SSDI file) at 4);

- A June 18, 2001 report by Dr. Laurence Goldstein finding plaintiff capable of light work and noting R&Ls that allow him to occasionally lift up to 20 pounds and frequently lift 10 pounds; stand or walk for about 6 hours in an 8 hour work day and sit for about 6 hours in an 8 hour work day. (Id. at 1-3); and

- A July 13, 2001 psychological IME report which does not appear to support plaintiff's claim of a *disabling* psychiatric condition. (Id. at 5-9). In fact, as explained below, Paul Revere had these records reviewed by a board certified psychiatrist, Dr. Abram M. Hostetter, who opined that the records provide insufficient evidence of a psychiatric disability.

14

After the close of discovery, plaintiff's counsel produced a July 25, 2002 Social Security Decision awarding plaintiff SSDI benefits. (Id. at 12-16). As explained below, this award does not impact plaintiff's claim for benefits under the policy, or the present motion, in any way.

**F.     The Parties' Expert Reports.**

As noted above, Paul Revere has designated Dr. Hostetter as one of its expert witnesses. Dr. Hostetter has opined that plaintiff has provided insufficient evidence of a psychiatric disability. (App., Exh. K).

Paul Revere has also designated Robert T. Steinman, M.D., a board certified physiatrist, who has opined, among other things, that (1) plaintiff's back condition does not prevent him from working at the restaurant; (2) his alleged need to stand behind a counter does not mean he is disabled; (3) plaintiff could work by alternating between sitting and standing; (4) that the trauma-induced problems in 1996 are not comparable to the ambulance ride in 2000; and (5) that any orthopedic impairment from the ambulance ride should be resolved by now. (App., Exh. L).

Plaintiff has not designated any medical experts at all. Instead, he relies solely on an insurance practices expert, Gordon Rose, who is unqualified to render medical opinions. Nonetheless, Mr. Rose has opined that plaintiff's disability claim is limited to his back problems and has nothing to do with psychological problems. (App., Exh. H). Thus, plaintiff's only "expert" has, in fact, contradicted

15

what plaintiff's treating physician has said about plaintiff's claim. Apart from this stunning factual contradiction, Mr. Rose's testimony is inadmissible for a variety of issues addressed in Defendant's motion in limine.

## III.   STATEMENT OF QUESTIONS PRESENTED

### A.   WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM.

[Suggested Answer: Yes]

### B.   WHETHER DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE BAD FAITH CLAIM.

[Suggested Answer: Yes]

## IV.   ARGUMENT

### A.   Defendants Are Entitled To Summary Judgment On Plaintiff's Breach of Contract Claim.

#### 1.   Plaintiff's Burden Of Proof.

It is plaintiff's burden to prove he was "disabled within the meaning of the policy and to prove that defendant breached its obligation to pay benefits." Doe v. Provident Life and Accident Ins. Co., No. 96-3951, 1997 U.S. Dist. LEXIS 5462 at *4 (E.D. Pa. April 23, 1997) (citations omitted). Plaintiff has "the burden of proof, the burden of going forward, and the burden of ultimate persuasion at trial...." Id.

The Third Circuit recently addressed the burden of proof under "occupational" disability policies that provide both total and residual disability benefits. Russell v. Paul Revere Life Ins. Co., 288 F.3d 78 (3d Cir. 2002). Under

16

the policy's definitions in <u>Russell</u>, an employee was totally disabled when the "employee cannot perform the important duties of his own occupation." <u>Russell v. Paul Revere Life Ins. Co</u>., 148 F. Supp. 2d 392, 404 (D. Del. 2001), <u>aff'd</u>, 288 F.3d 78 (3d Cir. 2002). The plaintiff in <u>Russell</u> argued that he was totally disabled under this definition as long as he could not perform some of the important duties of the occupation.

Both the Third Circuit and the District Court rejected the plaintiff's position:

> The Court therefore found, inter alia, that "the policy language places upon the employee the initial burden to demonstrate that he or she <u>cannot perform any</u> of the important duties of his position." ... Although Russell seems to acknowledge that he can perform some of the important duties of his occupation, he contends that if he is unable to perform one of those duties, he is totally disabled and entitled to benefits accordingly ....Russell has not provided any basis for the payment of full benefits in the face of evidence that he is able to perform some of the important duties of his occupation but elected not to work at all and spend his time in non-occupational tasks.

288 F.3d at 82 (emphasis added).

Then, in clearest possible terms, the Court confirmed that residual disability benefits are not payable if the insured does not return to work:

> As for benefits on partial disability, they are not payable unless the insured is working.

<u>Id.</u>

Under <u>Russell</u>, plaintiff's burden is to prove, by a preponderance of the evidence, that he cannot perform <u>any</u> of the substantial and material duties of his

17

occupation. Further, no benefits are payable if plaintiff can perform <u>some</u> of the duties of his occupation (such as bookkeeping and office duties), but does not return to work part-time.

### 2.    <u>Plaintiff Cannot Satisfy His Burden Of Proof</u>.

Here, plaintiff attempts to support his disability claim without competent expert testimony. Instead, he relies on a non-expert witness, Dr. Bower, who is not board certified in psychiatry or psychology and who concedes he is not an expert on back problems.

Dr. Bower's testimony confirms that plaintiff is not disabled by his cardiac condition. (App., Exh. G at 14, 15, 17, 49, 58 and 61). Similarly, Dr. Bower did not, and could not, opine that plaintiff's back problems prevented him from performing tasks such as bookkeeping, supervising employees and calling suppliers. (<u>Id.</u> at 54-57). Further, Dr. Bower conceded that if plaintiff's back was the only problem, plaintiff could work. (<u>Id.</u> at 59).

Plaintiff's only purported expert, Gordon Rose, claims there are no psychiatric issues. And while Dr. Bower claims that plaintiff has a psychiatric disability, Dr. Bower is not board certified in the field, has not performed the required testing and is therefore not qualified to render this opinion, as explained more fully in Defendants' motion in limine.

Nor can plaintiff's testimony that he cannot work because of psychiatric problems satisfy his burden of proof. As a lay witness, plaintiff is <u>not</u> permitted to

18

offer "opinions or inferences" based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. of Evid. 701(c).

Notably, the only expert on psychiatric issues is Dr. Hostetter who has opined that (a) there is no basis for Dr. Bower's opinion because Dr. Bower has not performed the necessary testing; and (b) that plaintiff has not provided sufficient evidence to establish a psychiatric disability. (App., Exh. K). Again, it is plaintiff's burden to provide this evidence. Russell, 288 F.3d at 82; Doe, 1997 U.S. Dist. LEXIS 5462 at *4.

The discovery record further undermines plaintiff's claim of a psychiatric disability. Plaintiff's stock trading activities (and lack of anxiety or anger over his significant losses) demonstrate that he has the ability to perform the type of office and administrative duties he described for Paul Revere.

In short, in the absence of competent medical evidence, plaintiff cannot satisfy his burden to prove that he cannot perform any of his occupational duties. And, because he is not working but is instead spending his time in "non-occupation tasks," he cannot recover residual disability benefits. Russell, 288 F.3d at 82.[7]

Based on issues raised in discovery, plaintiff will apparently argue that he cannot return to work because his restaurant has a very high counter behind which he must stand for long periods of time. This argument fails for several reasons.

---

[7] It is perhaps not surprising that plaintiff has not returned to his restaurant. His wife runs the restaurant now so plaintiff's family does not face a potential loss of all income based on his decision to pursue non-occupational tasks.

19

First, as to any physical R&Ls, Dr. Bower has opined that plaintiff can perform his occupational duties as he described them to Paul Revere. Therefore, even if standing behind a large counter was <u>one</u> of the occupational duties, plaintiff would still have only a residual disability and would not be entitled to benefits because he is not working (as made clear in <u>Russell</u>).

Second, there is no evidence that standing behind a large counter is a substantial and material duty of the occupation of a restaurant president rather than a requirement of working at his specific restaurant. But the term "occupation" focuses on the insured's "occupation" as it is generally performed and is not limited to the specific requirements of the insured's specific job. <u>Dawes v. UNUM Life Ins. Co.</u>, 851 F.Supp. 118, 122 (S.D. N.Y. 1994)(term "occupation" in disability context is "not limited to the insured's particular job.").

Thus, in <u>Breznek v. Union Mutual Life Ins,. Co.</u>, No. 87-3804, 1988 U.S. Dist. LEXIS 6591 at *7 (E.D. Pa. June 20, 1998), Judge Pollak rejected a plaintiff's argumment that he was disabled from his occupation until he was able to resume employment with his or her previous employer. Notably, the Third Circuit affirmed. 865 F.2d 249 (3d Cir. 1988). Plaintiff's claims about the layout of his restaurant simply do not establish an "occupational" disability.

Plaintiff will also argue that he is entitled to benefits because NYL waived premiums under a separate life insurance policy which is unrelated to Paul Revere or plaintiff's disability policy. Contrary to plaintiff's position, a waiver of life

20

insurance premiums based on disability does not estop an insurer from denying

benefits on a separate disability policy.  Bucks v. Reliance Standard Life Ins. Co.,

No. 99-3398, 2000 U.S. App. LEXIS 11456 (6th Cir. May 12, 2000); Gonyea v.

John Hancock Life Ins. Co., 812 F. Supp. 445 (D. Vt. 1993).  Notably, these cases

involved claim decisions by the same company.  Here, plaintiff's argument is even

weaker because the life insurance premium waiver was by NYL, a company

separate and distinct from Paul Revere.

Finally, plaintiff will rely on his July 25, 2002 award of SSDI benefits to

support his claim.  But this award is based on different standards and a different

factual record and is therefore irrelevant to this case.

For example, the SSDI standards do not incorporate the Third Circuit

standard in Russell under which no benefits are payable where (a) the policy

provides residual disability benefits; (b) the claimant has a residual disability; and

(c) the claimant does not return to work.  Notably, the ALJ found plaintiff could,

among other things, "sit 4 hours per 8-hour workday with a sit/stand option."

(App., Exh. J at 14).  Such restrictions would not preclude plaintiff from

performing some of his occupational duties (like bookkeeping and office duties)

and, therefore, the ALJ's decision undermines plaintiff's position under Russell.

Likewise, the Social Security award is based on a factual record far different

from that presented to either Paul Revere or this Court.  For example, the ALJ

referred and gave "significant weight" to an opinion by Dr. Bower dated April 16,

21

2002. This opinion was not produced in discovery until August 8, 2002 and was not submitted by plaintiff to Paul Revere to provide "proof of loss" under the policy.

More importantly, it does not appear that Dr. Bower's deposition testimony was submitted to the ALJ. If it had been, the ALJ would have seen that Dr. Bower has opined that plaintiff's back condition alone does not prevent him from performing his occupational duties. (Exh. F at 54 –57 and 59 (where Dr. Bower opined: "Again, with the back, if that was his only issue, could he muddle through further, he probably could."). Instead, the ALJ had Dr. Bower's letter (written the day of his deposition) which implies that the back condition alone is disabling. (App, Exh. J at 10 ("Despite this aggressive therapy, Mr. Mazzamuto is still severely limited in his ability to stand, bend or sit for prolonged periods of time and is unable to work.")). The ALJ also was apparently unaware of Dr. Bower's admission that he is not an expert on back problems.

For these reasons (different standards and different factual records) numerous courts have found that an award of SSDI is not germane to a disability insurance dispute. E.g., Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 186-87 n. 4 (1st Cir. 1998); Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 572-73 (8th Cir. 1992); Scarinci v. Ciccia, 880 F. Supp. 359, 365 (E.D. Pa. 1995).

Justice Ginsburg dealt with this issue while on the Court of Appeals for the District of Columbia Circuit. Block v. Pitney Bowes, Inc., 952 F.2d 1450 (D.C.

22

Cir. 1992). Rejecting a plaintiff's argument that an SSDI award rendered a denial of disability benefits arbitrary, Judge Ginsburg noted that the evidentiary records may be different in the two proceedings and, therefore, the Court would "accord no weight" to the SSDI award. Id. at 1455-56.

> **B.   Paul Revere Acted Reasonably in Denying Plaintiff's Claim for Benefits and Plaintiff is Unable to Produce Clear and Convincing Evidence That Establishes a Prima Facie Case of Bad Faith.**

> **1.   Plaintiff's Burden of Proof.**

In order to prove bad faith, plaintiff must prove, by clear and convincing evidence, that Paul Revere (1) did not have a reasonable basis for its actions and (2) knew of or recklessly disregarded the alleged lack of a reasonable basis for its actions. Keefe v. Prudential Property and Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000); Polselli v. Nationwide Mutual Fire Ins. Co., 23 F.3d 747, 751 (3d Cir. 1994). He must prove Paul Revere acted "through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." Keefe, 203 F.3d at 225.

In its recent decision in Dinner v. United Services Automobile Assoc., No. 01-1299, U.S. App. LEXIS 3408 (3d Cir. Jan. 24, 2002), the Third Circuit underscored plaintiff's significant burden of proof.[8] In Dinner, the plaintiff offered expert testimony that an insurer acted in bad faith by violating the Unfair Insurance

---

[8] Defendants note that the Third Circuit's opinion is not reported other than in Lexis. While not technically binding, unpublished Third Circuit decisions have been viewed as "extremely persuasive" authority. See Landau v. Reliance Standard Life Ins. Co., 1999 U.S. Dist. LEXIS 279, *10 n.2 (E.D. Pa. Jan. 13, 1999) (Yohn, J.) ("Though an unpublished opinion of the Third Circuit is not binding precedent upon this court, it is extremely persuasive, especially when it addresses the precise issue before the court.").

SL1 281075v1/10305.060

Practices Act ("UIPA"), 40 Pa. C.S. § 1171.1, et seq., and the Unfair Claims

Settlement Practices ("UCSP") regulations, 31 Pa. Code § 146.1, by failing to

complete its investigation within 30 days and failing to keep the insured advised in

writing of the status.

The Third Circuit found the testimony inadmissible because UIPA and

UCSP violations are not bad faith per se and the proposed testimony "holds the

potential for the jury's verdict being influenced by irrelevant matter." 2002 U.S.

App. LEXIS 3408 at *10. Further the Court noted that most of the acts prohibited

by the UIPA and UCSP, including provisions addressing "the timing of

investigations and payment of claims" are irrelevant to the issue of bad faith. Id. at

*10-11.

Given the very difficult burden of proof, it is not surprising that courts often

grant summary judgment on bad faith claims. For example, in McCabe v. State

Farm Mutual Automobile Ins. Co., 36 F. Supp. 2d 666, 670 (E.D. Pa. 1999), the

Court reasoned that "[s]ince plaintiff's burden at trial is higher than preponderance

of the evidence, plaintiff's burden in opposing summary judgment is also higher."

Id. (citing, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

Conversely, in the absence of contrary evidence, the defendant can prevail on

summary judgment by demonstrating a reasonable basis for its actions. 36

F. Supp. 2d at 670 n. 1. Here, Paul Revere acted reasonably at every turn.

SL1 281075v1/10305.060

## 2.    **Conduct That is Not Bad Faith.**

There are a number of commonly followed practices in the insurance industry that are not bad faith. Several are pertinent here.

First, it is not bad faith for an insurer to investigate a claim. Cantor v. The Equitable Life Assurance Soc., No. 97-CV-5711, 1999 U.S. Dist. LEXIS 4805 (E.D. Pa. Apr. 13, 1999). In Cantor, the court rejected the notion that it is bad faith for an insurer to conduct its own investigation rather than merely accept at face value the contentions of the insured and his or her treating physician. Id. at *7-8. The court further held that the insurer is not required to prove that (a) its investigation "yielded the correct conclusion or even that its conclusion more likely than not was accurate;" or (b) "the process by which it reached its conclusion was flawed or that the investigatory methods it employed eliminated possibilities at odds with its conclusion." Id. Instead, the Cantor court held that the insurer is required to "show it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." Id. at *8-9.

Second, it is not bad faith for an insurer to rely on the advice and opinions of qualified professionals. Seidman v. Minnesota Mutual Life Ins. Co., 40 F. Supp. 2d 590, 594 (E.D. Pa. 1997); McCabe, 36 F. Supp. 2d at 671. Where the insurer relies on the advice of such professionals in deciding how to handle a claim, the insurer has a reasonable basis for its actions and has not acted in bad faith.

Third, evidence regarding the demeanor of an insurer's representatives alone cannot prove bad faith.  <u>McCabe</u>, 36 F. Supp. 2d at 671.  Accordingly, the plaintiff cannot support his claim for bad faith merely with vague or subjective allegations about the conduct or alleged motives of Paul Revere's representatives.

### 3.    Paul Revere Did Not Act In Bad Faith By <u>Denying Plaintiff's Disability Benefits</u>

**Paul Revere Did Not Engage In Bad Faith
In Evaluating The Medical Evidence**

It was plainly reasonable for Paul Revere to investigate the medical basis for plaintiff's claim, especially given the many inconsistencies in plaintiff's claim.  For example, while plaintiff initially claimed that his disability was based on his cardiac condition, his physician noted that the cardiac condition was not disabling in a November 3, 2000 letter Paul Revere received in early January 2001.

Likewise, it was reasonable for Paul Revere to conclude that plaintiff's orthopedic condition was not disabling.  Significantly, Dr. Bower has conceded that plaintiff's back problems would not, by themselves, prevent him from working.  (App., Exh. G at 54-57, 59).

Perhaps most significant from the standpoint of bad faith, Dr. Bower has conceded that his interpretation of the medical records is not the only possible interpretation.  Dr. Bower conceded that another physician could examine the records and conclude that plaintiff can perform light or sedentary work.  (App.,

26

Exh. G at 53).   Here, three other physicians (Drs. Clarke, Steinman and Goldstein) have reached conclusions that conflict with Dr. Bower's opinion.

In reviewing plaintiff's claims for SSDI benefits and benefits under the NYL policy, neither Dr. Goldstein nor Dr. Clarke found plaintiff disabled.  Dr. Goldstein outlined R&Ls that would not preclude a return to work and Dr. Clarke noted that (a) plaintiff had successfully treated his back with periodic epidural injections and (b) no structural changes were found in plaintiff's back from the period of alleged disability in 2000 and 2001 and earlier periods when plaintiff had worked.  That is, there was no new objective evidence of a change in plaintiff's back (like a new herniated disc) that would explain why he could work before but cannot now. Finally, Dr. Steinman has also opined that plaintiff is not disabled.

From a psychological perspective, Dr. Hostetter has opined that there is insufficient evidence – i.e., evidence that plaintiff has the burden to provide -- of any psychiatric disability.  Nor does plaintiff's psychiatric claim make sense given the information learned in discovery.  It is difficult to imagine how plaintiff could find tasks like bookkeeping and ordering supplies too stressful when he does not find it stressful to engage in day trading in the stock market and lose nearly $400,000 in two years.  These facts undermine any "bad faith" claim.

The undisputed facts therefore reveal that Paul Revere carefully reviewed plaintiff's medical information and relied on the opinions of its medical personnel, which is not bad faith.  McCabe, 36 F. Supp. 2d at 671.  And even if Dr. Clarke's

opinions (and the opinions of Paul Revere's expert witnesses) were wrong, plaintiff could not prove by clear and convincing evidence that Paul Revere acted through ill will or self-interest. Instead, mere negligence is not bad faith and, at worst, plaintiff's evidence could show nothing more. Keefe, 203 F.3d at 225.

### Plaintiff Is Unable To Offer Reliable And Admissible Medical Evidence To Counter the Opinions of Dr. Clarke and Paul Revere's Experts

As of this date, plaintiff has not identified any medical expert or expert report for purposes of trial and the deadline for designating experts is long past. He is therefore limited to the evidence contained in Dr. Bower's testimony or reports which Dr. Bower is qualified to provide (i.e., regarding the cardiac condition which Dr. Bower says is not disabling). However, even if all of Dr. Bower's opinions were admissible, Paul Revere thoroughly reviewed these reports and opinions and concluded that plaintiff was not disabled. Paul Revere's opinion was correct and is corroborated by Dr. Steinman and Dr. Hostetter.

To surpass this undisputed fact, plaintiff must argue (and apparently does) that Paul Revere must accept any medical opinion offered by his physicians without question. But as cases like Hofkin v. Provident Life & Accident Inc. Co., 81 F.3d 365 (3d Cir. 1996), make clear, Paul Revere is entitled to perform its own investigation and reach its own conclusion. It is not required to blindly accept the opinions of plaintiff's physicians. E.g., Cantor, 1999 U.S. Dist. LEXIS 4805 at *7-8.

SL1 281075v1/10305.060

**Neither NYL nor UNUMProvident Acted As Insurers**

Finally, even if plaintiff's bad faith claim is not dismissed in its entirety,

plaintiff's bad faith claim against NYL and UNUMProvident should be dismissed

because they did not act as insurers with respect to the claim in question.  E.g.,

Cipriani v. Federal Ins. Co., No. 99-CV-1014, 1999 U.S. Dist. LEXIS 11405 (E.D.

Pa. July 20, 1999)(noting that parties other than insurers cannot be held liable for

bad faith).  Indeed, the standard for bad faith focuses solely on the actions of the

party who adjudicates the insured's claim under the policy.  Keefe, 203 F.3d at 225.

Because that party was Paul Revere and neither NYL nor UNUMProvident, any

bad faith claim that survives summary judgment should not include NYL and

UNUMProvident as defendants.

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully request the Court to

grant their Motion for Summary Judgment.

STEVENS & LEE

By

E. Thomas Henefer
Attorney I.D. 55773
Kirk L. Wolgemuth
Attorney I.D. 45792
111 North Sixth Street
P.O. Box 679
Reading, PA  19603-0679

Attorneys for Defendants

29

## CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, ESQUIRE, certify that on this date, I

served a certified true and correct copy of the foregoing Brief In Support of

Defendant's Motion for Summary Judgment upon the following counsel of record,

by hand delivery as follows:

> Richard C. Angino, Esquire
> Angino & Rovner, P.C.
> 4503 N. Front Street
> Harrisburg, PA  17110

Date: 8|9|02