2 TO G



ORIGINAL 8-12- RW ⑲

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,          :   Case No. 1:01-CV-1157
            Plaintiff          :
                         :
                         :
          v.          :
                         :
UNUM PROVIDENT          :
CORPORATION, PAUL          :
REVERE LIFE INSURANCE          :   JUDGE KANE
COMPANY and NEW YORK          :
LIFE INSURANCE COMPANY,          :
                         :
          Defendants



# DEFENDANTS' BRIEF IN SUPPORT OF
# MOTION IN LIMINE

STEVENS & LEE
E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603
(610) 478-2000

Attorneys for Defendants

## TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL HISTORY ............................................................................1

III.  ARGUMENT..........................................................................................2

    A.    Legal Standard Governing Daubert Motions .......................................2

        1.    The Daubert Opinion ........................................................2

        2.    The Joiner Opinion ..................................................................4

        3.    The Kumho Tire Opinion....................................................5

        4.    Third Circuit Application of Daubert And Its Progeny.............6

        5.    Rule 702's Three Restrictions on Admission of Expert
            Testimony .......................................................................10

    B.    The Mandates of Daubert and Rule 702 Preclude the Admission
        of Dr. Bower's Expert or Opinion Testimony ....................................13

    C.    The Testimony of Plaintiff's Bad Faith "Expert" Must Be
        Precluded. ........................................................................................18

IV.   CONCLUSION......................................................................................30

# TABLE OF AUTHORITIES

## CASES

Aloe Coal Co. v. Clark Equip. Co.,
    816 F.2d 110 (3d Cir. 1987) ................................................................... 11

American Bearing Co., Inc. v. Litton Industries, Inc.,
    540 F. Supp. 1163 (E.D. Pa. 1982), aff'd, 729 F.2d 943 (3d Cir. 1984),
    cert. denied, 469 U.S. 854 (1984) ........................................................... 23

Bergman v. United Services Automobile Association,
    742 A.2d 1101 (Super. Ct. 1999) ...................................................... 19, 20

Block v. Pitney Bowes, Inc.,
    952 F.2d 1450 (D. C. Cir. 1992) ............................................................ 22

Bourjaily v. United States,
    483 U.S. 171 (1987) ................................................................................ 4

Burton v. Danek Medical, Inc.,
    1999 U.S. Dist. LEXIS 2619 (March 1, 1999, E.D. Pa.) ....................... 13

Cantor v The Equitable Life Assurance Soc.,
    1999 U.S. Dist. LEXIS 4805 (E.D. Pa. April 13, 1999) ........................ 27

Ciba-Geigy Corp. v. Crompton & Knowles Corp.,
    1991 U.S. Dist. LEXIS 18369 (E.D. Pa. Dec. 30 1991) ........................ 21

Concord Boat Corp. v. Brunswick Corp.,
    207 F.3d 1039 (8th Cir. 2000), reh'g en banc denied, 2000 U.S. App.
    LEXIS 13703 (8th Cir. June 13, 2000), cert. denied, 121 S. Ct. 428
    (2000) .................................................................................................. 8, 12

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
    509 U.S. 579 (1993)................................ 2, 3, 4, 5, 6, 7, 8, 9, 11,

SL1 281073v1/10305.060

12, 14, 15, 16, 17, 24

Diaz v. Johnson Matthey Inc.,
   893 F. Supp. 358 (D. N.J. 1995)..................................................15

Dinner v United Services Automobile Ass'n. Casualty Ins. Co.,
   2002 U.S. App. LEXIS 3408 (3d Civ. Feb. 27, 2002) ...........................29

Elcock v. Kmart Corp.,
   233 F.3d 734 (3d Cir. 2000).........................................3, 5, 6, 8, 10

Fechter v.  Connecticut General Life Insurance Co.,
   800 F. Supp. 182 (E.D. Pa. 1992).............................................21

Federated Life Ins. Co. v. Walker,
   1997 U.S. Dist. LEXIS 566 (E.D. Pa. Jan. 21, 1997), aff'd.....................27

General Electric Co. v. Joiner,
   522 U.S. 136 (1997)......................................................4, 13

Gonyea v. John Hancock Life Insurance Company,
   812 F. Supp. 445 (D. Vt. 1993)..............................................28

Government of Virgin Islands v. Sanes,
   57 F.3d 338 (3d Cir. 1995).....................................................7

Hamilton v. Emerson Electric Co.,
   133 F. Supp. 2d 360 (M.D. Pa. 2001)..........................................10

Heller v. Shaw Industries, Inc.,
   167 F.3d 146 (3d Cir. 1999)..................................................13

JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.,
   No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 (E.D. Pa. Apr. 14, 1998),
   aff'd,
   178 F.3d 1279 (3d Cir. 1999)..........................................18, 24, 25

SL1 281073v1/10305.060

Joy v. Bell Helicopter Textron, Inc.,
    999 F.2d 549 (D.C. Cir. 1993), reh'g denied, 1993 U.S. App. LEXIS
    34667 (D.C. Cir. Sept. 21, 1993).................................................................9

Kosierowski v Allstate Ins. Co.,
    51 F. Supp. 2d 583 (E.D. Pa. 1999), aff'd...............................................27

Kumho Tire Company, Ltd. v. Carmichael,
    526 U.S. 137 (1999)...............................................................................5, 6

Lightning Lube, Inc. v. Witco Corp.,
    4 F.3d 1153 (3d Cir. 1993).......................................................................12

Lithuanian Commerce Corp. v. Sara Lee Hosiery Corp.,
    179 F.R.D. 450 (D.N.J. 1998), aff'd, 2000 U.S. App. LEXIS 31996
    (3d Cir. Nov. 13, 2000)...........................................................................7, 9

Minasian v. Standard Chartered Bank, PLC,
    109 F.3d 1212 (7th Cir. 1997)....................................................................8

Oddi v. Ford Motor Co.,
    234 F.3d 136 (3d Cir. 2000), cert. denied, 121 S. Ct. 1357 (2001) .3, 7, 17

In re Paoli Railroad Yard PCB Litig. v. Southeastern
    Pennsylvania Transp. Auth.,
    35 F.3d 717 ....................................................................... 3, 7, 10, 12, 13

Pappas v. Sony Electronics, Inc.,
    136 F. Supp. 2d 413 (W.D. Pa. Dec. 27, 2000) .......................................7

Parkway Garage, Inc. v. City of Phila.,
    1994 U.S. Dist. LEXIS 10900 (E.D. Pa. Aug. 3, 1994)..........................12

Rapp v. Singh,
    2001 U.S. Dist. LEXIS 5705 (E.D. Pa. May 1, 2001) ..............................9

SL1 281073v1/10305.060

Reiff v. Convergent Technologies,
   957 F. Supp. 573 (D.N.J. 1997) ............................................................... 10

Robertson v. Norton Co.,
   148 F.3d 905 (8th Cir. 1998) ................................................................... 14

Saldana v. Kmart Corp.,
   84 F. Supp. 2d 629 (D.V.I. 1999) ............................................................ 10

Segall v Liberty Mutual Ins. Co.,
   2000 U.S. Dist. LEXIS 16382 (E.D. Pa. Nov. 9, 2000) .......................... 27

Surace v. Caterpillar, Inc.,
   111 F.3d 1039 (3d Cir. 1997) ............................................................. 7, 11

Tyus v. Urban Search Management,
   102 F.3d 256 (7th Cir. 1996), reh'g en banc denied, 1997 U.S. App.
   LEXIS 337 (7th Cir. Jan. 6, 1997), cert. denied, 520 U.S. 1251 (1997)..11

In re Unisys Savings Plan Litigation,
   173 F.3d 145 (3d Cir. 1999) ..................................................................... 11

Wehling v. Sandoz Pharms. Corp.,
   162 F.3d 458 (4th Cir. 1998) ................................................................... 14

Wilkinson v. Rosenthal & Co.,
   712 F. Supp. 474 (E.D. Pa. 1989) ........................................................... 11

Williams v Hartford Casualty Ins. Co.,
   83 F. Supp. 2d 567 (E.D. Pa. 200), aff'd .......................................... 27, 28

Williams v. Rene,
   72 F.3d 1096 (3d Cir. 1995) ..................................................................... 23

Wilson v. Chestnut Hill Healthcare,
   2000 U.S. Dist. LEXIS 1580 (E.D. Pa. Feb. 18, 2000) ........................... 24

iv

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | JUDGE KANE |
| CORPORATION, et al., | : | |
| Defendants | : | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION IN LIMINE

### I.      INTRODUCTION

Defendants UNUM Provident Corporation, Paul Revere Insurance Company and New York Life Insurance Company ("Defendants") file this Motion in Limine to (1) preclude expert testimony of Gordon K. Rose, CLU on the issue of bad faith; and (2) to preclude expert or opinion testimony of Dr. Bower.

### II.      FACTUAL HISTORY

This case involves breach of contract and bad faith claims by a restaurant owner arising out of his claim for disability benefits under a long-term disability policy issued by New York Life. A detailed description of the facts is contained in the brief in support of Defendants' motion for summary judgment which is incorporated herein in its entirety.

1

Plaintiff has produced a report from Gordon K. Rose, CLU, a purported expert in insurance claims practices. As explained below, Rose's testimony is inadmissible under Fed. R. of Evid. 403 and 702.

Next, Plaintiff may offer into evidence the expert or opinion testimony of Dr. Bower, plaintiff's treating physician of internal medicine. Plaintiff has not identified Dr. Bower as an expert witness nor provided an expert report as required by Fed. R. of Civ. Pro. 26(a)(2)(A) and (B). In addition, Dr. Bower is not qualified to offer a reliable expert opinion regarding Plaintiff's psychiatric or back condition. Dr. Bower is also precluded from offering opinion testimony pursuant to Rule 701 because the opinions are based upon scientific or specialized knowledge.

## III.  ARGUMENT

### A.  <u>Legal Standard Governing Daubert Motions</u>

#### 1.  <u>The Daubert Opinion</u>

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) (Blackmun, J.), the Supreme Court held that a district court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Id.</u> at 589. As a result, a district court must stand as the "gatekeeper" to the admission of expert reports and testimony at trial. <u>Id.</u> at 589-93.

The <u>Daubert</u> Court refused to "set out a definitive checklist" of factors that bear on the district court's inquiry, but offered "some general observations."

2

Id. at 592. Specifically, the Supreme Court discussed testing, peer review, publication, error rates, the existence and maintenance of standards, and general "acceptability" in the relevant scientific community, some or all of which might prove helpful in determining the reliability of a particular "scientific theory or technique." Id. at 593-94. As a result, relevant factors to be considered by a court to determine if the proposed testimony is derived from reliable evidence include:

(1)    whether the proposed expert's theory or hypothesis can be and has been tested;

(2)    whether the theory or technique has been subject to peer review and publication;

(3)    what is the known or potential rate of error;

(4)    the existence of standards controlling the technique's operation;

(5)    whether the methodology has been generally accepted in the relevant scientific community;

(6)    the relationship of the proposed method or methodology to methods or methodology that have been shown to be reliable;

(7)    the qualification of the expert witness; and

(8)    the non-judicial uses to which the method has been put.

Daubert, 509 U.S. at 592-594; Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000) (McKee, J.), cert. denied, 121 S. Ct. 1357 (2001); Elcock v. Kmart Corp., 233 F.3d 734, 745-46 (3d Cir. 2000) (Becker, C.J.); In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania Transp. Auth., 35 F.3d 717, 742 and n.8 (3d Cir. 1994) (Becker, J.), reh'g denied, 1994 U.S. App. LEXIS 29233 (3d Cir. Oct. 14, 1994), cert. denied, 513 U.S. 1190 (1995); see also Reiff v. Convergent

3

<u>Technologies</u>, 957 F. Supp. 573, 577 (D.N.J. 1997) (Irenas, J.). These factors have been referred to as the "<u>Daubert</u> factors."

The <u>Daubert</u> Court also emphasized that the "inquiry envisioned by Rule 702 is ... a flexible one," and noted that the "focus ... must be solely on principles and methodology, not on the conclusions they generate." <u>Id.</u> at 595. Finally, the Court held that the proponent of the expert testimony and report alone bears the burden of demonstrating admissibility. <u>Id.</u> at 593 (<u>citing</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 175-76 (1987)). Thus, in the present case, Plaintiff has the evidentiary burden with respect to Plaintiff's experts.

## 2.    The Joiner Opinion

In <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 146-47 (1997), the Supreme Court clarified the scope of its holding in <u>Daubert</u>. There, the Supreme Court first held that the correct standard of review of evidentiary rulings, including <u>Daubert</u> motions, is for abuse of discretion. 522 U.S. at 142. Moreover, the Supreme Court rejected the petitioner's argument[1] that the district court had committed legal error when it disagreed with the conclusions the expert drew from the studies he had performed:

> [C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. <u>But nothing in either Daubert or the Federal Rules of Evidence requires a district court to</u>

---

[1]    The petitioner had based its argument on the language in <u>Daubert</u>, quoted <u>supra</u>, that the "focus ... must be solely on principles and methodology, not on the conclusions they generate." 509 U.S. at 595.

SL1 281073v1/10305.060

> admit opinion evidence which is connected to existing
> data only by the ipse dixit of the expert. A court may
> conclude that there is simply too great an analytical gap
> between the data and the opinion proffered.

Id. at 146 (emphasis added).[2]

### 3.    The Kumho Tire Opinion

In 1999, the Supreme Court held that Daubert applies equally to all expert witnesses under Fed. R. Evid. 702 (witnesses possessing "scientific, technical, or other specialized knowledge"). See Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 149 (1999) (Breyer, J.). There, the Supreme Court explained:

> We conclude that Daubert's general principles apply to
> the expert matters described in Rule 702. The Rule, in
> respect to all such matters, "establishes a standard of
> evidentiary reliability."    It "requires a valid . . .
> connection to the pertinent inquiry as a precondition to
> admissibility."  And where such testimony's factual basis,
> data, principles, methods, or their application are called
> sufficiently into question, ... the trial judge must
> determine whether the testimony has "a reliable basis in
> the knowledge and experience of [the relevant]
> discipline."

Id. at 141, 149 (quoting Daubert) (emphasis added and citations omitted).  See also Elcock v. Kmart Corp., 233 F.3d 734, 745 (3d Cir. 2000) (Becker, C.J.) ("It was not until Kumho Tire that the Supreme Court made clear that Daubert's

---

[2]    *Ipse dixit* is defined in Black's Law Dictionary as "a bare assertion resting on the authority of an individual." Black's Law Dictionary 828 (6th ed. 1990).

gatekeeping obligation covered not only scientific, but also non-scientific, testimony.") (citing Kumho Tire, 526 U.S. at 151).

Kumho Tire also made clear that the list of factors identified in Daubert is a non-exhaustive list and that each factor need not be applied in every case. Id. at 149-51; see also Elcock, 233 F.3d at 745-746. Rather, although a district court should use the Daubert factors to the extent possible, district courts have "considerable leeway" in determining whether an opinion is reliable:

> Rather, we conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. That is to say, a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony.

Id. at 152; see also id. at 141; Elcock, 233 F.3d at 746.

### 4.    Third Circuit Application of Daubert And Its Progeny

The Third Circuit has repeatedly affirmed rulings by trial courts excluding proposed expert testimony from trial under Daubert. The applicable case law reveals three concepts that are critical: (1) an expert may not merely rely on his or her own intuition without proper testing or investigation of a hypothesis; (2) the district court's role as a gate keeper requires it to exclude testimony that is unreliable under Daubert; and (3) a failure to satisfy Daubert's standards may not be cured by subjecting the expert to cross examination.

First, the case law is clear that <u>Daubert</u> requires proper testing by the expert of the proposed opinion to satisfy the need for reliability. Simply put, experts may not rely on their own mere intuition alone. Or, as one District Court aptly observed, "before the gates to the courtroom will be opened in this Circuit, a proposed expert must do more than simply say 'let me in (because I say so).'" <u>Pappas v. Sony Electronics, Inc.</u>, 136 F. Supp. 2d 413, 422 (W.D. Pa. 2000).

For example, in <u>Oddi v. Ford Motor Co.</u>, 234 F.3d 136, 158 (3d Cir. 2000) (McKee, J.), <u>cert. denied</u>, 121 S.Ct. 1357 (2001), the Court held that expert testimony was properly excluded where the expert conducted no tests and "used little, if any, methodology beyond his own intuition." The Third Circuit has reached similar conclusions in numerous other cases. <u>E.g.</u>, <u>Lithuanian Commerce Corp. v. Sara Lee Hosiery Corp.</u>, 179 F.R.D. 450, 456-458 (D.N.J. 1998) (Orlofsky, J.), <u>aff'd</u>, 2000 U.S. App. LEXIS 31996 (3d Cir. Nov. 13, 2000) (Garth, J.) (NOT FOR PUBLICATION) (affirming <u>Daubert</u> analysis excluding damages expert); <u>In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania Transp. Auth.</u>, 35 F.3d 717, 762 (3d Cir. 1994) (Becker, J.) (affirming district court's exclusion of proposed experts where witnesses' conclusions were based only on plaintiff's self representations, and calling such information unreliable), <u>reh'g denied</u>, 1994 U.S. App. LEXIS 29233 (3d Cir. Oct. 14, 1994), <u>cert. denied</u>, 513 U.S. 1190 (1995); <u>Surace v. Caterpillar, Inc.</u>, 111 F.3d 1039, 1055-56 (3d Cir. 1997) (Becker, J.); <u>Government of Virgin Islands v. Sanes</u>, 57 F.3d 338, 341 (3d

7

Cir. 1995) (Nygaard, J.) (district court did not abuse its discretion in excluding unreliable testimony).

Other Circuits have also endorsed the concept that an expert cannot rely on intuition alone. Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1084 (8th Cir. 1999) (Hansen, J.)(affirming exclusion due to a lack of proper testing which rendered the opinion little more than "unabashed speculation"); Minasian v. Standard Chartered Bank, PLC, 109 F.3d 1212, 1216 (7th Cir. 1997)("Our district judge was not snookered" by witness' testimony which made conclusions without analysis).

Second, while the issue of exclusion is within the Court's discretion, the case law confirms that exclusion is required where Daubert and its progeny are not satisfied. Indeed, the Third Circuit has not hesitated to reverse a district court for failing to exclude an expert (even after a jury verdict) when Daubert and its progeny compel such exclusion.

A recent example is Elcock v. Kmart Corp., 233 F.3d 734, 750 (3d Cir. 2000), where the Court held that the district court erred by allowing a vocational rehabilitation expert to testify given "serious doubts" about his methods. Moreover, the Elcock Court held that the District Court erred by admitting an expert's testimony on damages when the "economic damages model relied on several empirical assumptions that were not supported by the record." Id. at 755-56. See also Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056-

8

57 (8th Cir. 2000) (Murphy, J.) (reversing district court for admitting unreliable expert opinion evidence that did not incorporate all aspects of the "economic reality" which rendered the conclusions "mere speculation."), <u>cert. denied</u>, 121 S. Ct. 428 (2000).

Third, the district court's gatekeeper role is not fulfilled by allowing unreliable expert testimony into evidence under the assumption that it is subject to cross examination and the fact finder can properly weigh the testimony.  As the District of Columbia Circuit cautioned:  "[W]e must resist the temptation to answer objections to receipt of expert testimony with the shorthand remark that the [fact-finder] will give it 'the weight it deserves.'"  <u>Joy v. Bell Helicopter Textron, Inc.</u>, 999 F.2d 549, 569 (D.C. Cir. 1993) (citations omitted), <u>reh'g denied</u>, 1993 U.S. App. LEXIS 34667 (D.C. Cir. Sept. 21, 1993).

This same issue was addressed in <u>Lithuanian Commerce Corp.</u>, where the District Court held:

> To conclude that evidence is admissible because it is subject to such safeguards [of cross examination] is, therefore, circular. Consequently, I find that it was error for Judge Rosen, in exercising his gatekeeping function, to premise his determination of admissibility on Sara Lee's ability to rebut the proffered testimony.

179 F.R.D. at 458-59.

Applying these concepts, district courts within the Third Circuit have granted <u>Daubert</u> motions in a variety of contexts.  <u>See</u>, <u>e.g.</u>, <u>Rapp v. Singh</u>, 2001

9

U.S. Dist. LEXIS 5705 at *33 (E.D. Pa. May 1, 2001); <u>Saldana v. Kmart Corp.</u>, 84 F. Supp. 2d 629, 635 (D.V.I. 1999).

One instructive case is <u>Hamilton v. Emerson Electric Co.</u>, 133 F. Supp 2d 360, 371-72 (M.D. Pa. 2001), where Judge McClure granted a <u>Daubert</u> motion to exclude an expert from testifying about the failure of a brake on a miter saw. Among the problems with the proposed testimony was that the expert had not performed proper testing and accordingly, his "conclusion that the saw was defective is based only on his own authority, which is a violation of Rule 703." <u>Id.</u> Further, Judge McClure criticized the expert for failing to consider or address other possible explanations as to causation: "He has completely disregarded any margin for error in that he does not recognize the possibility that his assumption is incorrect or imprecise." <u>Id.</u>

### 5.    Rule 702's Three Restrictions on Admission of Expert Testimony

In addition to <u>Daubert</u>, Rule 702 imposes three distinct substantive restrictions on the admission of expert testimony:  qualifications, reliability and fit:

> (1)    whether the proposed witness is a qualified expert in the area in which he or she is being offered as an expert;
>
> (2)    whether the proposed expert's testimony is based upon reliable evidence; and
>
> (3)    whether the expert's testimony assists the trier of fact.

<u>Paoli Railroad</u>, 35 F.3d at 741-42 (<u>citing</u> <u>Daubert</u>, 509 U.S. at 587-591); <u>Elcock</u>, 233 F.3d at 741; <u>Reiff</u>, 957 F. Supp. at 577 (excluding "ergonomic" expert

SL1 281073v1/10305.060

testimony upon finding that methodology was unreliable for failure to test

hypothesis or consider alternative causes of injury). Each of these requirements is

discussed separately below.

First, while the standard for qualifications is somewhat liberal, a basic

understanding of a general subject matter does not alone qualify a witness as an

expert on that specific subject. See In re Unisys Savings Plan Litigation, 173 F.3d

145, 156-57 (3d Cir. 1999)(expert who had background in investments for property

and casualty insurance was properly excluded from testifying about life insurance

investments); Aloe Coal Co. v. Clark Equip. Co., 816 F.2d 110 (3d Cir.

1987)(excluding testimony of tractor salesman about cause of a tractor fire);

Wilkinson v. Rosenthal & Co., 712 F. Supp. 474, 478 (E.D. Pa. 1989) (Huyett, J.)

(excluding proposed expert testimony of professor at Wharton School of Business

regarding futures contracts because he "has no experience, skill, knowledge, or

education in commodity futures contracts apart from the basic principles he

teaches").

In fact, the Third Circuit recently upheld a district court's exclusion of

a proposed witness who, although he possessed both academic and practical

experience in a relevant subject area, lacked specialized knowledge of the specific

issues which formed the basis of his theory of liability. Surace, supra, 111 F.3d at

1055-56. As the Court of Appeals for the Eighth Circuit aptly stated, "the district

court must ensure that it is dealing with an expert, not just a hired gun." Tyus v.

11

Urban Search Management, 102 F.3d 256, 263 (7th Cir. 1996) (emphasis added), reh'g en banc denied, 1997 U.S. App. LEXIS 337 (7th Cir. Jan. 6, 1997), cert. denied, 520 U.S. 1251 (1997).

Next, Rule 702, like Daubert, requires reliability. Expert testimony is only reliable if the proponent establishes that the proposed expert bases his or her opinions and conclusions on "good grounds." Paoli Railroad, 35 F.3d at 748; see also Daubert, 509 U.S. at 590. A witness' "subjective belief or unsupported speculation" does not constitute "good grounds" for the proposed expert's conclusions or opinions. Daubert, 509 U.S. at 590. See Parkway Garage, Inc. v. City of Phila., 1994 U.S. Dist. LEXIS 10900, *31 (E.D. Pa. Aug. 3, 1994) (Bechtle, S.J.) (testimony based on "pure speculation" is unreliable). See also Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175 (3d Cir. 1993) (Greenberg, J.) (citing Wilkinson, 712 F. Supp. at 479) ("opinion based on false assumptions is unhelpful in aiding the jury in its search for the truth, and is likely to mislead and confuse")). Moreover, any expert who bases his or her opinions on insubstantial, inadequate, or non-representative data may similarly be precluded. Concord Boat Corp., 207 F.3d at 1056-57.

The third requirement under rule 702 is that the expert's testimony must assist the trier of fact (i.e., it must "fit" the subject matter at issue). Daubert, 509 U.S. at 591. That is, there must be a connection between the opinion and the

12

facts of the case.  Heller v. Shaw Industries, Inc., 167 F.3d 146, 159 (3d Cir. 1999)

(Becker, Ch. J.); Paoli Railroad, 35 F.3d at 742-43, 746.

**B.**     **The Mandates of Daubert and Rule 702 Preclude the Admission of Dr. Bower's Expert or Opinion Testimony**

Dr. Bower has admitted that he is not an expert in back conditions.

(Bower Dep. p. 7, attached as Exhibit C).  Similarly, he is not a practicing

psychiatrist or psychologist and is not board certified in those areas.  (Bower Dep.

pp. 6, 7, 36).  Although Dr. Bower "thinks" that he is qualified to treat back and

anxiety conditions and express an opinion as to whether a patient is disabled from

one of these conditions, this Court need not admit opinion evidence which is

connected to the facts only by Dr. Bower's ipse dixit approach.  General Electric

Co. v. Joiner, Id. at 146.

For example, in Burton v. Danek Medical, Inc., 1999 U.S. Dist. Lexis

2619 (March 1, 1999, E.D. Pa.), the Court granted summary judgment to the

defendant because, inter alia, the plaintiff was unable to establish that his expert

witness was qualified to testify as an expert in that case.  Id. at *10-11, 15-16.  In

that case, plaintiff proposed to use Dr. Bennett, a board certified neurologist, to

establish that the use of pedicle lumbar screws caused plaintiff's injuries.  Id. at

*7-8.  The court found that Dr. Bennett had never performed surgery, had no

training in or ever observed spinal fusion surgery, and had never treated a patient

with spinal fusion surgery.  Id. at *10.  Dr. Bennett was not familiar with the

13

techniques of spinal fusion surgery and had no expertise with the devices used in such surgery.  Id. at *11.  As a result, the court held that Dr. Bennett was not qualified to testify as an expert because he did not possess sufficient knowledge in the area of spinal surgery through training, education or experience.  Id.

In the case of In Re:  Diet Drugs Products Liability Litigation, 2000 U.S. Dist. Lexis 9661 (June 28, 2000 E.D. Pa.), the court reviewed the Daubert factors and stated that a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness' area of expertise" (citing Weinstein's Fed. Evid. § 702.06 [1], at 702-52 (2000); Wehling v. Sandoz Pharms. Corp., 162 F.3d 458 (4th Cir. 1998), Robertson v. Norton Co., 148 F.3d 905, 907 (8th Cir. 1998), Kent v. Howell Elec. Motors, 1999 U.S. Dist. Lexis 10940 (July 20, 1999 E.D. Pa.); other cases omitted).  The court also stated that "an expert's opinion must be based on scientific, technical or other specialized knowledge and not on "subjective belief or unsupported speculation."  Id. at *12 (citations omitted).  Also, the court held that "testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury."  Id. at *12 (citations omitted).

The court in In Re:  Diet Drugs then examined the qualifications of the proposed expert witnesses.  Specifically, the court found that Drs.  Maher and Wellman did not have any general expertise regarding disease causation in humans.  Id. at *18.  Although the Court did not find that the experts were not

14

qualified on this basis alone, it took into consideration the experts' absence of

expertise in disease causation as it examined the reliability of their opinions under

Daubert. The court then found that their hypothesis was not reliable. Id. at *40.

Similarly, in Diaz v. Johnson Matthey Inc., 893 F. Supp. 358 (D.

N.J. 1995), the court noted that the proposed expert, among other things, was a

pulmonologist, not a pharmacologist or toxicologist. Id. at 372-73. The court then

concluded that the physician's lack of any general training in epidemiology or

toxicology, his lack of experience as an allergist, his lack of familiarity with the

medical literature, and his lack of exposure treating patients suffering from the

platinum salt allergy, rendered his opinions unreliable. Id. at 374.

Applying these factors to Dr. Bower's testimony, it is clear that his

belief that he is qualified to opine that Plaintiff is disabled by back and psychiatric

conditions is insufficient to overcome his candid admissions that he is neither an

expert on back problems nor board certified in psychiatric medicine. Thus, his

opinions are outside his area of expertise and not reliable. Dr. Bower's opinions

are not based upon specialized knowledge of Plaintiff's psychiatric and spinal

conditions and whether they are disabling, but rather on his "subjective belief and

unsupported speculation." In Re: Diet Drugs, Id. at *12. This testimony is

nothing more than Dr. Bower's belief as to the weight of the evidence which

improperly invades the province of the jury.

Although Dr. Bower, as an internist, may treat people with psychiatric conditions, he does so because of a purported lack of qualified psychiatrists in his community. (Summary Judgment Appendix ("App."), Exh. G at 36). The simple fact that he treats patients with anxiety does not qualify him as an expert to render an opinion whether that condition is disabling. This is especially so where he has no specific training or certification in this area and only treats his patients for anxiety because he purportedly cannot find a qualified psychiatrist to refer them. His opinion is not reliable under Daubert.

The same can be said for Dr. Bower's opinion regarding Plaintiff's spinal condition. Dr. Bower is not an orthopedic physician, a physiatrist or a neurologist and admits that he is not an expert in this area. Certainly, Dr. Bower can treat pain associated with spinal conditions but he is not qualified to state that such a condition is disabling.

The reliability of any opinion that Dr. Bower may render on this subject must be analyzed with his previous testimony. As noted earlier, Dr. Bower testified that Plaintiff could work with his back condition but for his psychiatric condition. (Id. at 59). Thus, if Dr. Bower testifies that Plaintiff's back condition is disabling, the opinion would be neither reliable nor truthful.

Another factor under Daubert that must be considered by the Court to determine if the proposed testimony is derived from reliable evidence is whether the methodology is generally accepted in the relevant scientific community and the

16

existence of standards controlling the technique's operation. <u>Daubert</u>, 509 U.S. at 592-594; and <u>Oddi</u>, 234 F.3d 145. Dr. Abram Hostetter, M.D., a psychiatrist, reviewed the medical records and unequivocally concluded that he cannot conclude that Plaintiff is psychiatrically disabled from Dr. Bower's treatment records and deposition testimony because Dr. Bower has not done a thorough mental status evaluation on Plaintiff. (App., Exh. K). Dr. Hostetter further concludes that the only way to give a more definitive opinion on the issue of disability is to conduct a full mental status evaluation. (<u>Id.</u>).

Because Dr. Bower did not conduct a full mental status examination, a prerequisite to a psychiatric opinion, his testimony is not reliable. Dr. Bower's combined inability to conduct such an examination and his failure to either conduct one or order the examination may explain Plaintiff's attempt to do an about face on the cause of Plaintiff's disability by having Mr. Rose opine that there is no psychiatric issue in the case.

Plaintiff has also not provided an expert report from Dr. Bower or designated Dr. Bower as an expert witness as required by Rule 26(a)(2)(A) and (B) of the Federal Rules of Civil Procedure. The failure to identify an expert or provide the required report are grounds to have the testimony precluded as a sanction under Rule 37. <u>Stein v. Foamex International, Inc.</u>, 2001 U.S. Dist. Lexis 12211, *20 (August 15, 2001 ED Pa.).

Finally, Plaintiff may argue that Dr. Bower is testifying pursuant to Rule 701 of the Federal Rules of Evidence. However, as clearly set forth in that rule, his testimony would be precluded because his testimony would be based upon specialized knowledge within the scope of Rule 702.

### C. The Testimony of Plaintiff's Bad Faith "Expert" Must Be Precluded.

Testimony by plaintiff's insurance practices expert, Gordon Rose, should be excluded for three reasons. First, Rose cannot offer testimony that will assist the trier of fact. Second, Rose's testimony should be excluded under Rule 403 because his testimony has no probative value and any probative value would be outweighed by the unfair prejudicial effect of the testimony and its likelihood to confuse the jury. Finally, Rose's testimony is based on factual assumptions that are, in fact, without any factual support.

### Rose's Testimony Will Not Assist The Jury

Rule 702 contains a fundamental requirement that expert testimony must be helpful to the jury to be admissible. Fed. R. of Evid. 702; JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 at *14 (E.D. Pa. Apr. 14, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999). The applicable case law confirms that Rose's proposed testimony will not be "helpful." Two cases are particularly instructive.

18

First, in <u>Dattilo v. State Farm Insurance Co.</u>, 1997 WL 644076 (E.D. Pa. October 17, 1997), the District Court, in granting summary judgment, rejected the deposition testimony of plaintiff's expert witness on the issue of bad faith. 1997 WL 644076 at *4.  Although the decision was based on Rule 56 rather than the Rules of Evidence, the District Court nonetheless evaluated whether the expert witness would be permitted to testify if the case went to trial.  <u>Id.</u> at *5.  The court noted that the case did not involve a claim of malpractice in which the insurer's conduct would be judged by the standards of the insurance industry.  Instead, bad faith is a legal concept which does not require scientific, technical or specialized knowledge or skill to assist the trier of fact.  <u>Id.</u>  The District Court noted that the expert witness' opinion was nothing more than subjective speculation unsupported by any scientific or specialized knowledge.  <u>Id.</u>

The second instructive case is <u>Bergman v. United Services Automobile Association</u>, 742 A.2d 1101, 1105 (Super. Ct. 1999), where the plaintiff filed a bad faith claim over underinsured motorist benefits.  742 A.2d at 1103.  On appeal, the Superior Court held that the trial court had properly excluded the testimony of the plaintiff's "bad faith" expert.  742 A.2d at 1104-05.

Notably, the Superior Court relied on the rationale of <u>Datillo</u>, and a growing trend among the various states, and affirmed the exclusion of the expert testimony because the case did not involve highly sophisticated insurance concepts or practices or call for special knowledge, skill or experience to understand or

19

analyze the insurance company's actions.  742 A.2d at 1107.  The court also found

that the expert's report was conclusory and invited abdication of the court's duty as

a fact finder.  Id.  The court also found the facts upon which the bad faith claim

was based were adequately presented by the testimony of other witnesses.  Id.

The same can readily be said of Rose's "expert" conclusions that the

Defendants failure to request an independent medical exam delayed the

investigation of the claim, and that his back condition was the cause of his

disability (App., Exh. H).

The Court must first determine whether Rose's proposed testimony is

related to some science, profession, business or occupation that is beyond the

understanding of the average lay person.  Fed. R. of Evid. 702; Bergman, 742 A.2d

at 1105.  If the facts can be fully and accurately described so the jury can analyze

the facts with the issues in the case without the special knowledge or training of an

expert, then Rose's opinions are inadmissible.  Id.

This case does not involve complex or highly technical insurance

issues and concepts where expert testimony might be helpful.  Instead, this case

involves general insurance concepts and practices, which the jury can easily

comprehend and evaluate.  Moreover, the facts underlying Rose's opinion can be

fully and accurately described to the jury by the Plaintiff and representatives of

Defendants.  Special knowledge or training is simply not needed.

For example, the jury will be able to determine whether or not Plaintiff was unable to perform the principal duties of his position as a restaurant owner and they can easily determine whether he satisfied the written proof of loss provisions in the insurance policy. In this regard, the case is just like any other contractual dispute. The jury can easily determine in this case whether an independent medical examination was necessary, especially in light of Dr. Bower's testimony that his back condition will not prevent him from working. Similarly, the jury can determine whether the Defendants delayed the processing of this claim and whether Plaintiff has proven a disabling condition.

As for the bad faith claim, the jury will be charged by the Court on the applicable law. They can easily understand the facts about the denial of benefits. There is no need for Rose to use his testimony to usurp the Court's role to charge the jury on the law of bad faith.

Moreover, Rose's opinion that UNUM acted in bad faith is nothing more than a legal conclusion which the Court should exclude. Fechter v. Connecticut General Life Insurance Co., 800 F. Supp. 182, 187, n. 12 (E.D. Pa. 1992); and Ciba-Geigy Corp. v. Crompton & Knowles Corp., 1991 U.S. Dist. Lexis 18369, *6 (E.D. Pa. Dec. 30 1991). This is especially true here where Rose is not a lawyer (and therefore is not qualified to render an opinion on the legal standard for bad faith) and where his testimony is not that of an expert, but rather that of an advocate with respect to the issue of bad faith.

**Rose's Testimony Is Factually Inaccurate And Should Be Excluded**

Rose's testimony is also contrary to the facts of this case. For example, Rose claims that Paul Revere's denial of benefits in the face of plaintiff being awarded Social Security Disability Income ("SSDI") benefits is bad faith. Since Plaintiff was awarded Social Security benefits on July 25, 2002, Rose could not have known of this award when he drafted his earlier report. Moreover, numerous courts have held that an award of SSDI is not germane to a disability insurance dispute including the Court of Appeals for the District of Columbia where Justice Ginsburg, in <u>Block v. Pitney Bowes, Inc.</u>, 952 F.2d 1450, 1455-56 (D. C. Cir. 1992), rejected plaintiff's argument that an SSDI award rendered a denial of disability benefits arbitrary.

Even more shocking is Rose's opinion that "neither Mr. Mazzamuto, nor his representatives have claimed that his disability was due to a mental condition. Mr. Mazzamuto had mentioned he was apprehensive about returning to work, but it was clear his inability to stand for periods of time, due to his back condition, was the cause of the disability." (7/11/02 Report, attached as Exhibit B). Rose then uses this "revelation" to argue that it was bad faith for Defendants to retain a psychiatrist as an expert (following Dr. Bower's testimony about psychiatric issues).

Rose's statement could not be more wrong. Indeed, Plaintiff's treating physician testified that the primary cause of his current disability is his anxiety and

22

depression. (App., Exh. G at 9, 44, 58, 60). Dr. Bower also noted that if his back were the only problem, he would be able to "muddle through" work. (Id. at 59).

Furthermore, Mr. Rose is not qualified to offer an opinion as to the cause of his disability. Poust v. Huntleigh Healthcare, 998 F. Supp. 478, 492-93 (D. N.J. 1998)(engineer cannot offer opinion on medical causation). Rose is not a physician. He purports to be an expert in insurance practices. Thus, his opinion as to the cause of disability and his interpretation of Dr. Steinman's report must be precluded from the jury.

Courts are obligated to reject expert testimony if it is factually unsupported and speculative. For example, in Williams v. Rene, 72 F.3d 1096, 1101-03 (3d Cir. 1995), the Court held that an expert's testimony about future earnings capacity was inadmissible because the expert ignored the employer's actual salary scale, had no evidence to support his opinions about possible future promotions and, in response to one question, manipulated future anticipated increases by focusing on a narrow time period in which the plaintiff received an unusual promotion and raise. Id. at 1102. The Williams Court found the testimony unsupported and speculative and therefore inadmissible. Id.

Courts have often excluded expert testimony where the assumptions were not supported by the evidence. In American Bearing Co., Inc. v. Litton Industries, Inc., 540 F. Supp. 1163, 1173-74 (E.D. Pa. 1982), aff'd, 729 F.2d 943 (3d Cir. 1984), cert. denied, 469 U.S. 854 (1984), for example, the Court noted an

23

expert opinion that relies on incorrect factual assumptions (in that case about other competitors entering the market) was inadmissible.  See also, Wilson v. Chestnut Hill Healthcare, 2000 U.S. Dist. LEXIS 1580, *14 (E.D. Pa. Feb. 18, 2000).

Expert testimony that ignores critical facts should be excluded.  JMJ Enterprises, 1998 U.S. Dist. LEXIS 5098 at *16.  In determining whether expert testimony is "helpful" by Rule 702, the court should consider "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993).

Here, Mr. Rose has concluded that the cause of Plaintiff's disability was his back condition rather than his psychiatric condition and based his criticism of Defendant's conduct on Defendant's investigation of the psychiatric condition. Because Mr. Rose's opinions are based upon this incorrect assumption, his testimony must be precluded.  This is especially true because Rose has no qualifications to offer an opinion as to the cause of Plaintiff's disability.

### Rose's Testimony Is Inadmissible Under Rule 403

Fed. R. of Evid. 403 prohibits admission of evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it misleads the jury.  This applies to expert testimony.  JMJ Enterprises, 1998 U.S. Dist. LEXIS 5098.

SL1 281073v1/10305.060

Rose's testimony will mislead the jury and create confusion. Because Rose has no qualifications to render an opinion as to the cause of Plaintiff's disability, and his testimony is based on inaccurate factual assumptions, his testimony will confuse the jury and interfere with the Court's role to charge the jury on the law. In short, Rose's testimony has no probative value, will confuse the jury and will be unfairly prejudicial and should be excluded under Rule 403.

Further, Rule 403 is properly applied where the expert is "acting as an advocate, and not as an objective evaluator of evidence." <u>JMJ Enterprises</u>, 1998 U.S. Dist. LEXIS 5098 at * 27. Rose is little more than a hired gun acting as a mouthpiece for plaintiff's legal arguments. For example, he attacks UNUM's decision to have a psychiatrist review the medical records to determine the degree of psychiatric impairment and claims that "[b]ringing in a psychiatrist, 2 years after the disability, can only be regarded as a delaying action by UNUM" (App., Exh. H, July 11, 2002 report). Rose's criticism, especially when based upon the incorrect assumption that plaintiff's alleged anxiety was not relevant to his claim of disability, is nothing more than an inaccurate argument that will mislead the jury.

Rose claims in his report that he is "at a loss to know why the company did not request an [IME]". (Ex. A, p. 9). However, Rose is not qualified to determine whether an IME is needed in this case. Only a physician is qualified to determine whether additional medical evidence is needed. This is certainly true here because Dr. Bower did not testify that Plaintiff's back or heart condition

25

caused his disability and instead claimed that his psychiatric condition caused his disability. Rose's testimony on this issue would only confuse the jury.

Rose also concluded that since he qualified for Social Security benefits he would similarly satisfy the definition of disability under the New York Life policy. As noted above, Rose could not have known of this fact when he prepared his reports because the SSDI decision was issued on July 25, 2002, after he prepared his reports. In addition, as discussed in Defendants' summary judgment brief, the Administrative Law Judge apparently did not consider the deposition testimony of Dr. Bower who testified that Plaintiff's back condition was not disabling. Moreover, as outlined in Defendants' motion for summary judgment, the ALJ's decision applied different standards than apply under Third Circuit law under which plaintiff must be unable to perform all of the duties of his occupation, or have returned to work part-time, to receive either total or residual benefits. <u>Russell v. Paul Revere Life Ins. Co.</u>, 288 F.3d 78 (3d Cir. 2002). Having plaintiff's hired gun, non-lawyer expert render opinions about the significance of the SSDI award (assuming the award itself is admissible) would plainly violate Rule 403.

Rose's conclusion that Defendants engaged "in a series of steps that continued to delay the claim" is also misleading and not supported by the record. (Ex. A, p. 9). Even though Plaintiff claims his disability began in July, 2000 he did not submit his claim forms until December 15, 2000 (App. Exh. B at 550; Exh. D

26

at 11-12).  Defendants initiated an investigation of his claim and reached a

determination by April 20, 2001 that he was not disabled (App. Exh. B at 369-

370).  Thus, the investigation took only four months.  A delay of four months is not

evidence of bad faith.  See e.g., Federated Life Ins. Co. v. Walker, 1997 U.S. Dist.

LEXIS 566 *40-41 (E.D. Pa. Jan. 21, 1997), aff'd. 1997 U.S. App. LEXIS 33417

(3d Cir. Oct. 27 1997) (as a matter of law, delay of 5 months in making payments

to insured not bad faith because payment contingent upon insured satisfying

requirements of proof of loss.); Kosierowski v Allstate Ins. Co., 51 F. Supp. 2d

583, 592-93(E.D. Pa. 1999) (11 month delay not bad faith), aff'd. without op., 234

F.3d 1265 (3d Cir. 2000); ; Segall v Liberty Mutual Ins. Co., 2000 U.S. Dist.

LEXIS 16382, *6-7 (E.D. Pa. Nov. 9, 2000) (11 month delay not bad faith); and

Williams v Hartford Casualty Ins. Co., 83 F. Supp. 2d 567 (E.D. Pa. 200) (15

month delay not bad faith), aff'd without op., 2001 U.S. App. LEXIS 8687 (3d Cir.

April 4, 2001).  These claims involved delays in processing UM/UIM claims

where generally liability is not an issue but rather the value of the claim is at issue.

In the present case, the issue to investigate is an issue of liability, that is, whether

Plaintiff satisfies the definition of disability in the policy.  The right to investigate

whether an insured satisfies these provisions is undisputed.  Cantor v The

Equitable Life Assurance Soc., 1999 U.S. Dist. LEXIS 4805 (E.D. Pa. April 13,

1999); and Walker, Id. at *9.  Moreover, "if delay is attributable to the need to

investigate further or even to simple negligence, no bad faith has occurred."
<u>Williams, Id.</u> at 572.

At the very most, Defendant's investigation of four months may be evidence of negligence but it is not evidence of bad faith. <u>Segal, Id.</u>, at *6-7. Interestingly, had Defendants immediately denied Plaintiff's claim without conducting an investigation, it is certain that Plaintiff would claim bad faith because Defendants did not conduct a thorough investigation.

Rose also claims that New York Life's decision to waive the premiums under a separate life insurance policy is evidence that Plaintiff "is definitely disabled under the disability policy." (App. Ex. H). However, as discussed in Defendant's Summary Judgment Brief, a waiver of premiums based on disability under a life insurance policy does not prevent an insurer from denying benefits on a separate disability policy. <u>Books v Reliance Standard Life Insurance Company</u>, 2000 U.S. APP. LEXIS 11456 (6th Cir. May 12, 2000); and <u>Gonyea v. John Hancock Life Insurance Company</u>, 812 F. Supp. 445 (D. Vt. 1993). Thus, Rose's testimony will mislead the jury.

Rose also claims that UNUM ignored Plaintiff's statement that his "job requires me to stand most of the time" and that it was clear that his job required standing for prolonged periods of time (App. Exh. H). Once again, Rose is swinging the bat as an advocate and not as an expert witness. Rose is attempting to establish improper claims handling on Defendant's part because Defendant

28

allegedly ignored this fact. However, if Rose were to objectively analyze this claim file, he would find that his statement is not accurate.

The facts regarding his job duties are described in detail in Defendants' Memorandum in Support of Summary Judgment. A quick review of these facts establishes on the policy application, that Plaintiff outlined his duties as administrative and executive duties only. Similarly, his application for benefits lists his duties as executive, supervisory, and food preparation. The explanation of his duties on the "Description of Occupation" form is similar. Plaintiff testified in his deposition that he would rarely seat a customer, would have to cook once every one or two months, would order supplies, welcome customers, take food orders and pay bills. (App, Exh. C at 17-18). This evidence is far from Rose's assumption that he stood all day. Thus, Rose's testimony is not accurate and would mislead the jury.

In sum, Rose's status in this proceeding is little more than that of a puppet, being controlled by the advocate of Plaintiff, who is attempting to mislead the factfinder by confusing the issues and offering testimony that is not based on facts in this record. In Dinner v United Services Automobile Ass'n. Casualty Ins. Co., 2002 U.S. App. LEXIS 3408, *9-11 (3d Civ. Feb. 27, 2002), the court held that an expert could not testify about conduct that is irrelevant in determining the issue of bad faith because of the potential for improper influence on the jury.



Similarly, Rose's testimony is not relevant to this issue and may improperly influence the jury.

He also engages in pejorative attacks on UNUM by, for example, referring to its investigation of Plaintiff's heart condition as a "waste of time," that UNUM committed "inordinate delays," and claiming that the denial of benefits "requires the application of 'bad faith laws' to this case" (6/13/02 Report, attached at Exhibit A). In short, Rose is not an objective evaluator of the evidence; instead, he intends to make plaintiff's legal (and unfounded) arguments from the witness stand with the unearned aura of an expert witness. His testimony should therefore be precluded under Rule 403. Id.

## IV.    CONCLUSION

For the foregoing reasons, UNUM respectfully requests this Court to grant its motion in limine.

Dated: August 9, 2002          STEVENS & LEE

By E. Thomas Henefer

E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603
(610) 478-2000

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, ESQUIRE, certify that on this date, I

served a certified true and correct copy of the foregoing memorandum of law upon

the following counsel of record, by hand delivery as follows:

Richard C. Angino, Esquire
Angino & Rovner, P.C.
4503 N. Front Street
Harrisburg, PA  17110

Date: 8/9/02