Case 1:01-cv-01157-CCC    Document 25    Filed 08/12/2002    Page 1 of 7



**ORIGINAL**

FILED
HARRISBURG, PA

AUG 1 2 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>    Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>    Defendants | JUDGE KANE<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT ON BEHALF OF PLAINTIFF VINCENZO MAZZAMUTO**

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

This is an action for bad faith based on the failure of Defendants to pay disability benefits pursuant to New York Life Disability Income Policy No. H3 236 167 issued June 28, 1993. Mr. Mazzamuto, at the time he applied for and was issued the New York Life policy was an owner/operator of a pizza restaurant in Carlisle, Pennsylvania. Unbeknownst to him, Mr. Mazzamuto had a spinal stenosis or progressively debilitating back condition. Mr. Mazzamuto experienced back pain after a fall on ice in 1996, and he subsequently made a claim for payments under his policy with New York Life. During the investigation of that claim for benefits, New York Life and Mr. Mazzamuto became aware that he had been diagnosed with spinal stenosis in 1992. The stenosis was aggravated in 1996 as a result of the fall on ice. Although initially

denying the claim as a pre-existing condition, ultimately, New York Life concluded that it had no basis to deny the 1996 claim and paid same.

Mr. Mazzamuto's condition improved to the extent that he could and did return to work from late 1996 until July 2000. Mr. Mazzamuto, however, continued to require medical treatment primarily consisting of nerve blocks for pain.

However, his stenosis back problem was one that one would be expected to and it did worsen over time. In addition, in July 2000, Mr. Mazzamuto had a heart attack. On the way to the hospital, jarring in the ambulance re-injured his back. After his discharge from the hospital, Mr. Mazzamuto attempted to return to work. In his deposition, he explained what happened thereafter:

> Right after I had the heart attack, I go back and try to do something but I was too hyper. I think the heart attack got to my head and then my back got hurt at the same time while the ambulance was taking me from Carlisle to Orwigsburg [sic]. I not accuse the ambulance, you know, but it happened in the bed, whatever you call, kind of slide back and forth and the back I felt snap. Since then this has been really more painful that it has ever been. I did try because it is boring to stay home, you know, all day.
>
> Now, because of my temper, I notice me and my wife were not getting along because I was upset. I couldn't stand in front of the cash register like I used to because my legs were getting weak and numb. I couldn't lift anything. I couldn't even bend. Most of the time I kind of have to stand straight. This time has been real painful in my back.
>
> Whatever we discuss about all of this operation, you can't stand in front of the cash register with real painful back. I noticed that is not good for me and all of the other stuff, you know, so I didn't – I noticed and I stay home.

**Exhibit M**, pp. 21-22.

Mr. Mazzamuto recovered from his heart attack, but his back pain did not abate. He must frequently change position, whether he is sitting or standing. Lifting is restricted, and he takes pain medication. His treating physician testified that Mr. Mazzamuto's back pain interferes with concentration on tasks. In addition, his depression and anxiety about his heart condition and fear

of having another heart attack render him short tempered and he is quick to anger with employees. His treating physician, Dr. Bower explained:

> His heart condition while not in any way disabling at this point unfortunately I believe triggered a lot of this anxiety. You know, up until that point he was a tough Italian guy who could do anything and he could smoke and he could run his restaurant. His back bothered him. This heart event I think showed in his mortality. His dad I think died of heart disease or vascular disease of some kind. So the heart problem is only there in that if [sic] fuels his anxiety. Again, his back problem is a big limitation. You know, this is not a guy who programs computers for a living. He doesn't do brain work as his primary job so there's lots of physical things I think he can't do because of his back, but, you know, again, my opinion and I've stated it several times is it's his psychiatric problems right now that are his primary limiting factor. His back problem runs a close second. His heart other than being an impetus to his anxiety, again his heart works fine right now. That's not an issue. It's not he's going to have a heart attack if he picks up a can of tomatoes.
>
> . . . So I think there's lots of scenarios where as the combination of his back and his mental state that he would not be a good supervisor at this point.

**Exhibit E**, p. 58, 63. <u>Also see</u>, Dr. Bower's letter of November 3, 2000. **Exhibit C**.

When asked if it was medically reasonable for another physician to look at Mr. Mazzamuto's records and deliver an opinion that Mr. Mazzamuto could perform sedentary or light duty work, Dr. Bower responded, "I don't think it would be reasonable. . ." **Exhibit E**, p. 53.

Mr. Mazzamuto initially applied for disability benefits in November 2000, but it was not until April 20, 2001, that Defendants denied same on the basis that they felt he could do his job as a pizza owner/operator. **Exhibit O**.

Defendants denied Mr. Mazzamuto's claim based upon internal review primarily based upon in-house Dr. Clarkes opinion. Though Mr. Mazzamuto had recovered from his heart attack, Dr. Clarke did not consider or conclude that Mr. Mazzamuto was not disabled from his back condition and anxiety resulting from the heart attack. **Exhibit P**.

Defendants never obtained an independent medical examination or even have a doctor review the medical records until the discovery deadline for expert reports. Two doctors reviewed the records and submitted reports dated June 27 and June 28, 2002. Dr. Steinman submitted a report as to Mr. Mazzamuto's <u>back</u> condition and stated that Mr. Mazzamuto could return to work <u>under certain circumstances</u>. **Exhibit Q**. Defendants' psychiatrist admitted that without examining Mr. Mazzamuto, he could not express an opinion as to Mr. Mazzamuto's being able to return to work. **Exhibit R**. Defendants thereby do not have an expert to testify that Mr. Mazzamuto is not disabled in keeping with the New York Life policy definition of disability.

Mr. Mazzamuto, however, has been found to be disabled by both the Social Security Administration (**Exhibit G**) and Defendant New York Life as to his life insurance policy. **Exhibit H**.

## II. ISSUE

Whether Plaintiff is entitled to a determination that he is disabled within the definition of his policy of disability insurance where there is no contested issue of fact, and Defendant New York Life has found him disabled as to his life policy which has the same definition of disability.

## III. ARGUMENT

### A. Plaintiff is entitled to a determination that he is disabled within the definition of his policy of disability insurance.

As set forth by the United States Supreme Court,

> summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' . . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

249091.1\JLS\JLS                    4

> . . . One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . .

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-2553 (1986).

Plaintiff has asserted his total disability. The "disability" insurance policy defines total disability as:

> **Total Disability**   From the start of a total disability until 2 years after the Income Starting Date, total disability means that the Insured can not do the substantial and material duties of his or her regular job.
>
> After 2 years from the Income Starting Date, if a new period of disability does not apply, total disability will then mean that the Insured can not do the substantial and material duties of his or her regular job and is not working at any other gainful job.

Mr. Mazzamuto has life insurance with New York Life. The definition of total disability under the New York Life "life" insurance policy is quite simple:

> "Total Disability" means that, because of disease or bodily injury, the Insured can not do any of the essential acts and duties of his or her job, or of any other job for which he or she is suited based on schooling, training, or experience. If the Insured can do some but not all of these acts and duties, disability is not total and premiums will not be waived. If the Insured is a minor and is required by law to go to school, "Total Disability" means that, because of disease or bodily injury, he or she is not able to go to school.

Fact discovery in this case is closed. Plaintiff has produced abundant evidence that he is unable to return to his regular job--running his Italian restaurant, including records and deposition testimony from his family physician, the Social Security doctor and the Social Security Administration's determination and Defendant New York Life as to Mr. Mazzamuto's life insurance policy. Defendants never had Mr. Mazzamuto examined, relied upon an in-house doctor whose opinion was limited to Mr. Mazzamuto's heart condition. Two expert reports produced for trial do not contend that Mr. Mazzamuto is not disabled in keeping with the terms of the New York Life Disability Policy.

All that is required for Mr. Mazzamuto to recover under his insurance policy is a determination that he is unable to "do the substantial and material duties of his . . . regular job." The construction of a policy of insurance, like that of any other written contract, is for the court. Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563 (1983). When interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, the court must give effect to the language of the contract. The Travelers Casualty & Surety Company v. Castegnaro et al., 565 Pa. 246; 772 A.2d 456; (2001) (citing Bateman v. Motorists Mutual Inc. Co., 527 Pa. 241, 590 A.2d 281, 283 (Pa. 1991)(citing Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563 (Pa. 1983)). Where a policy is ambiguous, the policy or contract of insurance is to be construed liberally in favor of the insured and strictly as against the insurer who drew the contract. Lititz Mutual Insurance Co. v. Steely, 567 Pa. 98; 785 A.2d 975(2001), rearg. denied, 2002 Pa. LEXIS 210 (Pa. Jan. 25, 2002); Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563 (Pa. 1983).

<div style="text-align:right">
Respectfully submitted,

ANGINO & ROVNER, P.C.

Richard C. Angino, Esquire
I.D. No. 07140
4503 N. Front Street
Harrisburg, PA 17110
(717) 238-6791
Attorney for Plaintiff
</div>

Date: 8/12/02

## CERTIFICATE OF SERVICE

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON BEHALF OF PLAINTIFF VINCENZO MAZZAMUTO** was served by United States first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA  19603-0679
    Counsel for Defendants

_____
Richard C. Angino

Dated: 8/12/02