35
8/27/02
JL

ORIGINAL

FILED
HARRISBURG, PA

AUG 2 6 2002

MARY E. D'ANDREA, CLERK
Per _____

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>　　　　Plaintiff, | CIVIL ACTION – LAW |
| | NO. 1:CV-01-1157 |
| 　　v. | |
| | JUDGE KANE |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>　　Defendants | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF MATERIAL FACTS**

1.　　　Admitted that Plaintiff's Complaint alleges breach of contract and bad faith based upon Defendants' <u>handling</u>, <u>denying</u> and continuing with their denial of his claim for total disability based upon his deteriorating back condition coupled with anxiety that prevented him from doing "the substantial and material duties of his or her regular job," "regular job being [t]he occupation … in which the Insured was engaged when a disability starts." <u>See</u>, Policy Definitions. Defendants' Appendix in Support of Motion for Summary Judgment, Volume I, Exhibit A, p. 5, 0699. **DMSJ, Ex. A**, p. 5. Plaintiff also contends that Defendants are guilty of bad faith in their legal defense of his claim which includes the expert reports filed and the Motion for Summary Judgment and Motion in Limine to which Plaintiff's counsel has had to

devote considerable time and expense to respond.  Plaintiff contends that Defendants have no basis whatsoever in filing these spurious motions as will become clear from reviewing the 119 responses plus briefs.  Defendants throughout their Statement of Material Facts take words or statements out of context and force Plaintiff's counsel to go into considerable detail in response.  See, newspaper article "Doctor's Suit Asserts UnumProvident Had Policy of Denying Claims" supplied on 8/22/02 by fax from Plaintiff's expert.  Exhibit C to Plaintiff's Appendix Contra Motion for Summary Judgment (**App**).

2.    Admitted that Defendants have sought summary judgment in this action without any basis whatsoever.

3.    Admitted that the deadline for submitting expert reports in this case was June 28, 2002, but that deadline is irrelevant for treating doctors and as treating physicians who are not included under Rule 26(a)(2)(b) and, furthermore, Defendants have been supplied with reports and records from Drs. Bower, Kosenske, and Schneider going back to 1996.  See, Plaintiff's Motion for Partial Summary Judgment, Statement of Undisputed Facts, and Appendix referenced.

4.    Denied.  See, answer to Para. 3, supra.

5.    Admitted that as expected Plaintiff relies on testimony from his treating physician, Dr. Douglas Bower, a board certified internist, who has treated him for the past ten years, the last six years for his deteriorating back condition and last two years for his anxiety and cardiac condition.  Dr. Bower is an expert by education, training, and treatment of many patients with similar back and anxiety conditions, as well as submitting physician statements to insurance companies.  One would certainly expect that a patient would rely upon his treating physician and an individual's claim would be suspect if an individual did not call his treating physician.  At one

time, an adverse inference instruction would be proper if an individual did not call the physician who treated him and would be most knowledgeable of the patient's condition. Furthermore, one would not expect that one would engage a treating physician with litigation in mind and, therefore, treating physicians are considered differently than experts hired for litigation such as Defendants' experts. Dr. Bower "take[s] care of most chronic adult illnesses that don't require surgery. . . . [He] see[s] a lot of people for acute problems such as . . . sprains and strains and colds in addition to taking care of chronic medical conditions . . ." **DMSJ Ex. G**, p. 6. Dr. Bower treats older adults who have back problems and anxiety, and is an expert in the care of these patients. **DMSJ Ex. G**, p. [Dr. Bower was indicated as an individual likely to have discoverable information that the disclosing party may use to support its claims in "Plaintiff's Initial Disclosures as Required by Fed.R.Civ.P. 26]. As Dr. Bower is not an expert who was "retained or specially employed to provide expert testimony in the case," Rule 26(a)(2), an expert report, as such, is not required.

6.      Admitted.

7.      Plaintiff is unaware of the corporate inter-relationship of the Defendants. Plaintiff bought a New York Life policy, and was told in correspondence that the other Defendants were acting as New York Life's agents and/or administrators in administering New York Life's disability policies. See, letter from New York Life dated September 29, 2000 (**DMSJ Ex. B**) and letterhead of UNUM which describes UNUM and Paul Revere as "administrator for New York Life" dated November 1, 2000 (**DMSJ Ex. B**, WYLCL00551).

8.      Admitted.

9.      Admitted.

10.      Admitted.

11.    Admitted with qualifications.  Defendants have a duty to promptly provide forms to their insureds and expeditiously request medical information as required by their own Manual referencing the Pennsylvania Unfair Insurance Practices Act and Regulations.  Defendants had all the information that was necessary to make a decision in November 2000, when Dr. Bower, Mr. Mazzamuto's treating physician, opined that Mr. Mazzamuto had not been able to return to work since July 22, 2000, because he "cannot be in stressful situations, no prolonged standing, no lifting," and had not been released from Dr. Bower's care.  Exhibits C and S in Support of Plaintiff's Motion for Partial Summary Judgment (**PMSJ**).  Under any circumstance, Defendants had all of the necessary information as of December 15, 2000, when their UNUM representative admitted to having Plaintiff's application, physician statements, etc. **App Ex. A**, p. 49.

12.    Admitted, and such notice was first supplied on September 6, 2000, and when there was no response, repeated on September 27, 2000. **DMSJ Ex. B**, NYLCL00556, 557.

13.    Admitted and Paul Revere admitted receipt of same on October 11, 2000. **DMSJ Ex. B**, NYLCL00552.

14.    Admitted, and Plaintiff's physician Dr. Bower completed reports and statements on November 3, November 15, and November 22, 2000, plus on numerous occasions thereafter.

15.    Admitted.

16.    Denied.  Plaintiff's application was completed by a New York Life agent, and he provided the language in the policy.

17.    Denied. See, response to Para. 16.

18.    Plaintiff admits to a history of a debilitating back condition that never was successfully treated so as to remove the associated pain and limitation with respect to standing, lifting, bending, etc.

19.    Admitted that Mr. Mazzamuto fell two times on ice in 1996 which aggravated his pre-existing back condition and resulted in his inability to work in 1996 which led to a claim for disability being filed with New York Life and paid by New York Life.

20.    Admitted that Plaintiff completed a New York Life form where he gave certain answers in writing that <u>generally</u> described his duties but did not <u>specifically</u> state the <u>day-to-day activities</u> of his job.

21.    Admitted, and in truth he was mistaken as can be verified by numerous witnesses.

22.    This testimony relates to Defense Exhibit M-11, NYLCL 00042-43.

23.    Admitted, and New York Life eventually paid Plaintiff on the basis of that statement.  It should be noted that there is no dispute that the duties of Mr. Mazzamuto were the same in 1996 and 2000.

24.    Admitted.

25.    Admitted.

26.    Admitted that New York Life, after receiving information from the agent who sold the New York Life policy that it was <u>he</u> and not Mr. Mazzamuto who completed the policy and supplied the information as to Mr. Mazzamuto's job classification, duties, and pre-existing condition, determined that New York Life had no basis to rescind and no medical basis to refute Dr. Bower's statement and Mr. Mazzamuto's claim and, therefore, paid Mr. Mazzamuto's 1996 claim for disability in 1997. **DMSJ Ex. B**, p. NYLCL00216, 217.

27.    Plaintiff is without sufficient information to either admit or deny whether there was a medical review of the numerous records that the New York Life agent requested and obtained with respect to Mr. Mazzamuto's 1996 claim for disability, **DMSJ Ex. B** p. NYLCL00021-188 references 167 pages that appear to be quite similar to the types of records

requested and supplied in the instant case. The 2000 claim mirrors the 1996 claim <u>plus</u> anxiety <u>plus</u> heart attack and yet Defendants refuse to pay the 2000 claim.

28.    Admitted.

29.    Admitted that Mr. Mazzamuto's back was aggravated by a bounce in the ambulance on the way to the hospital, but Plaintiff does not contend that he is totally disabled as a result of that incident but rather it was just another factor that led to his total disability.

30.    Admitted that notice was given by phone on September 6, 2000, and repeated on September 27, 2000. **DMSJ Ex. B**, NYLCL00556, 557.

31.    Admitted, and Paul Revere admitted receipt of the documents <u>on October 11, 2000</u>. **DMSJ Ex. B**, NYLCL00552.

32.    Denied as stated. **DMSJ Ex. B,** p. NYLCL000552, indicates that Paul Revere received Mr. Mazzamuto's claim materials <u>by October 11, 2000</u>. Additionally, claim forms were sent out by UNUM and New York Life. Dr. Bower completed forms for Paul Revere, UNUM, and New York Life, plus sent a report dated November 3, 2000, to both Paul Revere and New York Life and yet UNUM relies upon the date of <u>one</u> application with a <u>December 15, 2000</u> receipt date to assert December 15, 2000, as the date of receipt of Mr. Mazzamuto's claim. **DMSJ Ex. B**, pp. 553-554. It should be noted that Defendants' records acknowledge that Mr. Mazzamuto's file was missing as of <u>October 19, 2000</u>, eight days after Paul Revere acknowledged receipt of Mr. Mazzamuto's claim material. These documents are still missing, and no receipt dates appear on the remaining New York Life or Paul Revere claim documents.

33.    Admitted, but <u>see</u>, Mr. Mazzamuto's description of his duties as of 1/18/01 when he was asked how his disability interfered with his performance of his job. Mr. Mazzamuto stated:

> <u>My job requires me to stand most of the time</u>. I am always stressed which causes tightness in my chest. Then I have chest pain and shortness of breath. <u>Also by standing my back problem is aggravated. I have been under treatment for back pain since 1996.</u> (emphasis supplied)

**DMSJ Ex. B**, NYLCL00345

34.    Admitted, but <u>see</u>, answer to Para. 33. Mr. Mazzamuto explained that his duties as president might mean different things to different people. **DMSJ Ex. C**, p. 69. Some presidents might do physical work, some might not. Executive duties might involve sitting at a big desk or standing behind a pizza counter.

35.    Admitted, but <u>see</u>, answer to paras. 33, 34.. By way of further answer, in his deposition, Mr. Mazzamuto explained: "I would do everything. I decided what employee would be worth and what we would be worth." **DMSJ Ex. C**, p.14. In addition to salary decisions, Mr. Mazzamuto ordered supplies, <u>Id</u>, pp. 9, 16, cooked when the cook wasn't there, <u>Id</u>, p. 16, made pizza when the pizza man wasn't there, <u>Ibid</u>, waited on customers at the counter, <u>Id</u>, p. 17, replaced employees who didn't come to work, <u>Ibid</u>, welcomed customers, <u>Ibid</u>, operated the cash register, <u>Ibid</u>, paid bills, Ibid, seated customers, <u>Id</u>. at p. 18, took food orders, <u>Id</u>., p. 19, took care of the shrubs, <u>Id</u>, p. 20, plowed snow, <u>Ibid</u>, helped unload deliveries, <u>Ibid</u>.

36.    Admitted, but <u>see</u> paras. 33-35. By way of further answer, Mr. Mazzamuto explained at his deposition that a case of tomatoes averages 25 pounds, case of flour is 50 pounds, and the pizza dough could go up to 80 pounds. **DMSJ Ex. C**, p. 62.

37.    Admitted, but <u>see</u>, paras. 32-36.

38.    Admitted, but <u>see</u>, paras. 32-36.

39.    Admitted. <u>Also see</u>, paras. 32-36.

40.    Admitted.

41.    Admitted.

42.    Admitted that the cited reference indicates same. Dr. Bower, however, had sent a report to both Paul Revere and New York Life at their respective addresses on November 3, 2000. By way of further answer, Dr. Bower prepared monthly reports for Mr. Mazzamuto on November 15 and 21, 2000, and on numerous other occasions. **DMSJ Ex. B,.** p. NYLCL00548.

43.    Admitted that Dr. Bower has <u>always</u> said in <u>all</u> of his reports that Mr. Mazzamuto's back condition was disabling. All of Dr. Bower's reports should be read in their entirety to understand the full meaning..

44.    Admitted but object to the word "finally." By way of further answer, the letter reads in pertinent part: "his back has worsened again, also the stress and anxiety which has been provoked because of his recent cardiac problems, and manifested themselves with significant anxiety when he is back in a work situation." **DMSJ, Ex. B**, p. NYLCL00532. The letter speaks for itself and should be read in its entirety.

45.    Admitted that the reference cited shows that UNUM wrote to plaintiff about the status of his claim on January 15, 2000. Denied that Mr. Mazzamuto was in any way responsible for the delay in filing the claim forms or that Mr. Mazzamuto and his doctor did not file forms that were lost by Defendants. Mr. Mazzamuto gave Defendants notice of his claim on September 6 and again on September 27. Paul Revere acknowledged receipt of claim information on October 11, 2000. Paul Revere also acknowledged that Mr. Mazzamuto's application was lost or missing as of October 19, 2000. Dr. Bower wrote to Paul Revere and New York Life on November 3, 2000. Applications and physician's statements were also completed on November 15 and 22 by Mr. Mazzamuto and Dr. Bower. UNUM acknowledged receipt of Mr. Mazzamuto's claim as of December 15, 2000, by referencing a date on just <u>one</u> set of documents <u>with the heading "UNUM"</u> and has ignored all of the other sets of documents

completed for Paul Revere and New York Life, including those that are acknowledged as "missing." **App Ex. A,** Depo. Mulry, p. 23.

46.     Admitted but <u>see</u>, answer to Para. 45.

47.     Admitted that Paul Revere requested a <u>second</u> document to be completed in January 2001 describing Plaintiff's duties.

48.     Admitted.

49.     Admitted that a fact finder might perceive some inconsistencies in the statements. In reality, the January 18, 2001, statement is specific rather than general and can be proved by corroborating statements of Mrs. Mazzamuto, other employees, customers, etc.  It is Defendants' duty to resolve the inconsistencies by going to the site, requesting records, talking to potential witnesses, taking pictures, obtaining statements, getting records, etc.  <u>See</u>, Defendants' claims manual.  **App Ex. D.**  Also note difference between "occupation" and "job."  <u>See</u>, policy language and UNUM's claims manual.  **App Ex. D**.  Defendants cannot rely upon language inserted by New York Life's agent in an application of similar, generally descriptive language that does not provide the specifics of Mr. Mazzamuto's job.

50.     <u>See</u>, response to Para. 49.  Inconsistent statements do not provide a basis for summary judgment, or all defendants and/or plaintiffs could obtain summary judgment in virtually all cases.

51.     See response to Para. 49.  Defendants keep repeating the same arguments that there may be inconsistencies in statements and actual work, but those inconsistencies are for a jury not bases for a summary judgment motion.

52.     Admitted that the record cited indicates that UNUM requested Carlisle Hospital medical records on January 22, 2001.  Plaintiff is without information to either admit or deny

when those records were received.  Defendants had previously received records from Carlisle Hospital as to Mr. Mazzamuto's 1996 claim.

53.    Plaintiff is without information to admit or deny the date when Paul Revere received the recited records from Dr. Bower's office.  Dr. Bower had previously sent a report to New York Life and Paul Revere on November 3, 2000, and completed numerous physician reports prior to March 2001.   Plaintiff signed medical authorizations at least as early as November 2000 and presumably earlier when Paul Revere acknowledged receipt of medical records as of October 11, 2000.  Any delay in the receipt of Dr. Bower's records is the sole responsibility of Defendants.

54.    Plaintiff admits that he had periodic epidural steroid injections for his back by Dr. Kosenske who treated Mr. Mazzamuto and dictated records as to Mr. Mazzamuto's condition, which records go back to 1996.

55.    Admitted but *see*, August 23, 2000, "Since last being seen, he has had some problems with some anxiety symptoms and becoming more emotionally labile when he tries to go into the restaurant so he has not yet really returned to work in any meaningful capacity . . . his lower back pain has bothered him quite a bit as well."  **DMSJ Ex. B**, p. NYLCL 00430; October 4, 2000: "now that he has quit smoking, he has gained weight and his back is bothering him quite a bit.  He wants to go back over to The Pain Clinic for another injection.  He has really not been at work.  He gets too stressed when he goes there and his back is bothering him as well . . .".  **DMSJ Ex. B**, p. NYLCL00431; October, 2000: "Follow-up here in 3 months.  Call sooner if he has problems in the interim."  **DMJS Ex. B**, p. NYLCL00432; December 19, 2000:  chronic low back pain – stable . . . See him back in the New Year as previously scheduled."  **DMSJ, Ex. B**, p. NYLCL00433; November 26, 2000: "chronic low back pain, . . . anxiety and cigarette

abuse . . .", **DMSJ, Ex. B**, p. NYLCL00434; January 11, 2001: "His back has been bothering

him and he thinks he is going to go back and get another steroid injection . . . chronic anxiety

stable . . .," **DMSJ, Ex. B**, . NYLCL00435.

      56.    Denied.  Dr. Bower's records indicate that Mr. Mazzamuto's back pain and

anxiety after his heart attack prevented his working, and did not improve.  See, e.g., **DMSJ Ex.**

**B**, NYLCL00430 indicating "Since last being seen, [Mr. Mazzamuto] has had some problems

with some anxiety symptoms and becoming more emotionally labile when he tries to go into the

restaurant so he has not yet really returned to work in any meaningful capacity. . . . his lower

back pain has bothered him quite a bit as well. . . . Chronic low back pain.  Chronic anxiety now

worse. . . . not clear [Mr. Mazzamuto] is going to be able to handle the stresses of his restaurant

long-term.  He is contemplating selling the business. May actually apply for disability down the

road if he does not bounce back. . ..;" NYLCL 00432, chronic low back pain worsening;

NYLCL00433 chronic low back pain stable as of December 19, 2000; NYLCL00434 chronic

low back pain and anxiety on November 26, 2000;  NYLCL00435, indicating chronic anxiety

stable on Jan. 11, 2001

      57.    Admitted that the words appear, but what does "successfully" mean?  Also see,

other notes.  Also see, response to Paras. 55 and 56.

      58.    Admitted as to cardiac condition, but see, response to Paras. 55-57.

      59.    Denied, as an impermissible conclusion not based upon facts alleged and no

reference is cited for conclusion.  It should be noted that Mr. Mazzamuto was not working after

July 22, 2000.

      60.    Admitted, but see, response to Paras. 55-59 and Carlisle Hospital records and note

that there is a difference between exercising and standing long hours at a pizza restaurant.

61.    Admitted that Defendants' in-house employee Dr. John Clarke performed some kind of review in evaluation of this disability claim.

62.    Admitted but see, his comments as to Mr. Mazzamuto's back condition and anxiety. **DMSJ Ex. P**, NYLCL00379. By way of further response, Dr. Bower's testimony is that the combination of his back pain and anxiety prevent Mr. Mazzamuto's return to work. **DMSJ Ex. G,** pp. 58-59.

63.    Admitted as stated; however, Dr. Clarke testified at his deposition that the cited report expressed no opinion as to whether Mr. Mazzamuto was disabled with regard to his back, nor did he express any opinion as to whether Mr. Mazzamuto's anxiety, nervousness or stress disabled him. Dr. Clarke merely opined that Mr. Mazzamuto was not disabled due to his cardiac condition. **PMSJ Ex. P**, pp. 11-12.

64.    Admitted.

65.    The demand letter speaks for itself.

66.    Admitted.

67.    Admitted.

68.    Admitted.

69.    Admitted.

70.    Admitted that after his heart attack and angioplasty in July 2000, Mr. Mazzamuto's "heart pumping functioning is normal." **DMSJ Ex. G**, p.14.

71.    Admitted.

72.    Admitted. By way of further response, Dr. Bower testified that Mr. Mazzamuto's

heart condition while not in any way disabling at this point unfortunately I believe triggered a lot of this anxiety. You know, up until that point he was a tough Italian guy who could do anything and he could smoke and he could run his restaurant. His back bothered him. This heart event I think

showed in his mortality. His dad I think died of heart disease or vascular disease of some kind. So the heart problem is only there in that if fuels his anxiety. Again, his back problem is a big limitation. You know, this is not a guy who programs computers for a living. He doesn't do brain work as his primary job so there's lots of physical things I think he can't do because of his back, but, you know, again, my opinion and I've stated it several times is it's his psychiatric problems right now that are his primary limiting factor. His back problem runs a close second. His heart other than being an impetus to his anxiety, again his heart works fine right now. . . . I think he would be uncomfortable again with sitting over a desk with the bookkeeping. You know, what can people do, pain tolerance and things like that are all individual. Again, with the back, if that was his only issue, could he muddle through further, he probably could. I think it's the whole constellation though. You can't just isolate a particular, you know, it's just the back or it's just the heart or it's just the anxiety. It's his work and his job and his life are one big milieu and I think his medical conditions all tie together. . . .

**DMSJ Ex. G,** pp. 58-59.

73.    Admitted that Dr. Bower is not an "expert" in terms of being an orthopedic specialist. By way of further answer, Dr. Bower testified that he is expert by education, training, and experience in treating patients with back problems to express the opinions he expressed in his various reports. **DMSJ Ex,** p.68.

74.    Admitted that the records note that when Mr. Mazzamuto is not standing at work for long periods, his back problems can be kept "stable" or controlled by medication. The specific records speak for themselves. Defendants do not reference specific records in support of their conclusory statement.

75.    Admitted. By way of further response, Dr. Bower explained that abnormalities causing symptoms could be there one day and not there the next depending upon what the abnormality is.

Besides hard structures such as bones, and, you know, a disc which may or may not be ruptured, there are surrounding tissues. There's things that can be strained and there's things that swell so it is possible. Again, very often people .with arthritis of the lower back, you can get an X-ray on Monday and on Wednesday in

> the following month and their arthritis is always there but their back pain symptoms are not stable and sometimes some activity or exertion can strain the soft tissues and they could have a marked change in their symptoms even though the X-ray is the same this month as it was last month because not all of those things show up on X-rays.

**DMSJ Ex. G**, p. 29.

76.     Admitted.

77.     Denied.  Dr. Bower testified that he had been a customer in Mr. Mazzamuto's restaurant, and he observed the activity in the restaurant over many years.

> Having seen the restaurant, you know, there's food stuffs on various shelves, there's pizza ovens that are up high, there's things down below the counter.  I would assume it's a constant motion . . .  [S]ince bending without lifting anything is a problem, obviously if you have to lift something of light weight, just the fact that you had to bend to lift it would be a problem in and of itself.

**DMSJ Ex.**, pp 50-51.

78.     Denied as stated.   Regarding bookkeeping, Dr. Bower testified that Mr. Mazzamuto can push a button on a calculator but his back pain might prevent concentration for long periods of time. **DMSJ Ex. G**, p. 54.  Dr. Bower testified that Mr. Mazzamuto's anxiety would interfere with concentration for bookkeeping, would cause Mr. Mazzamuto to lose his temper with suppliers and employees and make him a very poor supervisor. **DMSJ Ex. G**, pp 54-57.

79.     Denied as stated.  When asked whether Dr. Bower had treated individuals with similar type of back problems that Mr. Mazzamuto has that continue to work he responded:

> I have people who have back pain who continue to work.  It's hard to say that they have, you know, the same as, you know, as Mr. Mazzamuto has.  . . . My impression of Mr. Mazzamuto is that he has fairly significant back pain and probably I don't have people with his degree of discomfort that hold down physical jobs, you know, physically demanding jobs . . . I probably have people with his level of discomfort who at times can hold down light jobs though others because of even sitting causing problems end up in difficulty and end up having to restrict their work because of that.

**DMSJ Ex.**, pp 51-52. In addition, Mr. Mazzamuto's job was such that he could not return to <u>his</u> job. The New York Life policy defines total disability as inability to perform duties associated with the <u>insured's job</u> which in Mr. Mazzamuto's case is <u>running a pizza restaurant that requires a great deal of standing and anxious periods</u>.

80.    Denied as stated. Dr. Bower testified that while anything is possible, it would not be medically reasonable for another physician to look at Mr. Mazzamuto's records and deliver an opinion that he is able to perform light or sedentary work. More importantly, the proper test is Mr. Mazzamuto's ability to return to his job running a pizza restaurant, not performing light or sedentary work. **DMSJ Ex. G**, p 53. In any event, this misperceives the issue in the case, as the question is whether Mr. Mazzamuto is capable of performing "the substantial and material duties of his . . . regular job." Disability Income Policy. **DMSJ Ex. A**, p. 699. <u>Disputed</u> issues are for juries or other fact finders and not for summary judgment.

81.    Denied as stated. Mr. Rose is not Plaintiff's only purported witness. Mr. Rose says, "Neither Mr. Mazzamuto, nor his representatives have claimed that his disability was due to a <u>mental</u> condition." **DMSJ Ex. H,** July 11, 2002, letter p. 1. Dr. Bower, who is expert enough to treat patients with back pain and anxiety testified that Mr. Mazzamuto is disabled as a result of the combination of his <u>"back pain" and "anxiety."</u> <u>See,</u> Para. 72, <u>supra</u>.

82.    Denied. <u>See,</u> Dr. Bower's November 3, 2000, report, various physicians' statements and Dr. Bower's deposition. <u>Also see,</u> Dr. Bower's April 16, 2002, report attached as **Ex. A**.

83.    Admitted that Dr. Bower is not a psychologist or psychiatrist. Dr. Bower testified that he is expert enough to treat lots of patients and treats many patients with anxiety. **DMSJ Ex. G**, p. 68. Dr. Bower treats many patients for anxiety and depression because, "Psychiatric

availability in Cumberland County is terrible so we see the lion share of people when it comes to at least the initial presentation of anxiety and depression, panic. It's very very hard to get anyone to see a psychiatrist in this neck of the woods. They're in a very short supply and we end up taking care of lots of psychiatric conditions as a result of that." **DMSJ Ex. G**, p. 36.

84.    Admitted.

85.    Admitted.

86.    Admitted that the statement was made in a deposition, but see, other reports, statements, and Dr. Bower's report of April 16, 2002.

87.    Admitted.

88.    Admitted.

89.    Admitted but note that Mr. Mazzamuto was required to stand in doing most of his activities. **PMSJ Ex. M**.

90.    Admitted, but see, response to Para 89 that Mr. Mazzamuto was required to stand in doing most of his activities.

91.    Admitted, but see, response to Para 89.

92.    Admitted, but see, response to Para 87.

93.    Admitted.

94.    Admitted.

95.    Admitted, but Defendants' manual specifically states it is the responsibility of the insurance company to conduct an investigation as to the actual activity that the insured does in his job. **App. Ex. D**. Some owners might sit at a desk while owners of pizza shops rarely have the luxury of a large windowed office on the 64th floor. There are few people who by the time they are 5 or 6 years of age could not describe what owners of pizza shops or parlors do.

96.    Admitted, but <u>see</u>, response to Para. 95.

97.    Admitted, but note that his job requires standing most of the time not 15 to 30 minutes.

98.    Admitted, but his job requires standing most of the time behind the counter and not walking.

99.    Admitted, but totally irrelevant.

100.    Admitted, but totally irrelevant.

101.    Admitted, but totally irrelevant.

102.    Admitted, but totally irrelevant.

103.    Admitted, but totally irrelevant.

104.    Admitted, but totally irrelevant.

105.    Admitted.  By way of further response, Mr. Schneider's report indicates:

DIAGNOSIS:
Generalized anxiety disorder, DSM-IV 300.02, with related depressive features. This man presents with anxiety and worry which he reports experiencing on a daily basis and has no success in controlling.  He reports being easily fatigued, has difficulty concentrating, reports being irritable (confirmed by his wife) and indicates having a sleep problem.
. . .
Mr. Mazzamuto's activities of daily living are somewhat more restricted than they were prior to his heart attack.  He does not help his wife with cleaning around the house.  He will do some simple prep cooking at home and will also do some simple shopping if she requests him to do so.  She has assumed responsibility for basically maintaining the residence and paying the bills. . . .

Socially, he has become more intolerant and withdrawn from both family as well as friends.

Concentration, persistence, and pace are more impaired since the heart attack.  He has little tolerance for doing anything . . .

**DMSJ Ex. J**.  <u>See</u>, Para. 72 & 78 , <u>supra</u>.

106.    Admitted that Plaintiff's counsel faxed the July 25, 2002 Social Security decision when he received it.  Plaintiff's counsel had advised defense counsel that he was expecting a favorable decision and Plaintiffs' expert referenced the possibility of a favorable decision..  **DMSJ Ex. H**.

107.    Admitted, but found that Mr. Mazzamuto was totally disabled.

108.    Admitted, but found that Mr. Mazzamuto was totally disabled.

109.    Admitted.   By way of further response, Mr. Angino did not represent Mr. Mazzamuto in his social security claim and, therefore, did not have any knowledge of Dr. Bower's April 16, 2002, report until it was received and faxed to defense counsel.

110.    The report speaks for itself.   After noting that his back condition limits Mr. Mazzamuto's ability to stand, bend or sit for prolonged periods of time rendering him unable to work, Dr. Bower continues:

> His second, and perhaps most severe problem, is that of his chronic anxiety and depression.  This has become especially manifest over the last several years and has proved to be somewhat refractory to multiple medical interventions.  This problem was complicated by his third problem which is that of coronary artery disease.  As the result of his heart problems, Mr. Mazamutto [sic] is extremely fearful of suffering a heart attack and dying.
>
> At the present time I feel that Mr. Mazamutto is being treated maximally but the combination of the three previously mentioned conditions still renders him unable to work. . . .I feel we have probably plateaued in our abilities to improve his level of function.  As such, it has  been our recommendation that he not return to work.

**DMSJ Ex. J**, p. J-10-11.

111.    Dr. Bower's letter speaks for itself and supplies information requested.

112.    Admitted.

113.    Dr. Hostetter's letter speaks for itself.  He says that he cannot determine whether Mr. Mazzamuto is or is not psychiatrically disabled without seeing him in person.  By way of

further answer, Dr. Bower, Mr. Mazzamuto's treating physician, meets with Mr. Mazzamuto regularly. **DMSJ Ex. G**, passim. Defendant's claim file indicates that Mr. Schneider saw Mr. Mazzamuto "on July 12, 2001, beginning at 10:15 am." **DMSJ Exhibit J**, p. J-5 and attached hereto as **Ex. B**. Finally, it is not Plaintiff's contention that Mr. Mazzamuto has a psychiatric disability, but rather his "anxiety" contributes to his disability. See Paras. 72 & 110, supra. It should be noted that Defendants denied Plaintiff's claim and persisted in the denial for 2 years before Dr. Hostetter was asked to review any records and, therefore, could not serve as a basis for their denial.

114.    Admitted.

115.    Dr. Steinman's report speaks for itself. His report clearly notes that he has never examined Mr. Mazzamuto, has never been to his restaurant, and does not know what Mr. Mazzamuto's job requires. Dr. Steinman does not correlate Mr. Mazzamuto's disability with the definition of "total disability" and "job" in the New York policy. By way of further answer, Dr. Steinman's report does not dispute Dr. Bower's conclusion that Mr. Mazzamuto's inability to return to work results from a combination of factors, of which the back condition is only one, See Para. 72 and 110, supra. It should be noted that Defendants denied Plaintiff's claim and persisted in that denial for more than  a year before Dr. Steinman was asked to review Mr. Mazzamuto's records.

116.    Denied.  Plaintiff disclosed Dr. Douglas Bower, Mr. Mazzamuto's treating physician, in its Rule 26 disclosures. Dr. Bower has completed reports and physician's statements in support of Mr. Mazzamuto's claims since 1996. Defendants have requested and obtained Dr. Bower's records and took his deposition. Dr. Bower has sufficient expertise to treat patients with chronic back pain and anxiety and depression. See, Para. 5, supra. Mr.

Mazzamuto has also noted that Dr. Kosenske has treated him since 1996, and Defendants have obtained all of the Carlisle Hospital medical records since 1996. Defendants are also aware that Dr. Steinman has reviewed Mr. Mazzamuto's records and expressed medical opinions in those records.

117.   Denied. See, Para. 116, supra.

118.   Admitted.

119.   Mr. Rose's reports speak for themselves. Mr. Rose has indicated that Mr. Mazzamuto's back condition renders him unable to do the substantial and material duties of his regular job. By way of further answer, Mr. Rose also indicated that "New York Life has decided that Mr. Mazzamuto was disabled on July 22, 2000. They have agreed to waive the premium [for life insurance] and have refunded all premiums paid since August, 2000." **DMSJ Ex. H**. He also referenced the relevancy of the Social Security decision. Mr. Rose also opined that UNUM's delay and denial in paying Mr. Mazzamuto's claim are in bad faith. Ibid. See, his reports for the full substance of same.

Respectfully submitted,

ANGINO & ROVNER, P.C.

Richard C. Angino, Esquire
I.D. No. 07140
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Attorney for Plaintiff

Date: 8/26/02

# MASLAND ASSOCIATES, INC.
## INTERNAL MEDICINE

| MEDICAL ARTS BUILDING | 220 WILSON STREET, CARLISLE, PA  17013 | (717) 249-1929 |
|---|---|---|
| DAVID S. MASLAND, M.D. RETIRED | LARRY S. RANKIN, M.D., F.A.C.C. CARDIOLOGY | TERRY A. ROBISON, D.O. INTERNAL MEDICINE |
| JOSEPH F. BRAZEL, M.D. HEMATOLOGY | DEBRA D. TAYLOR, M.D. INTERNAL MEDICINE | PHILIP A. NEIDERER, D.O. INTERNAL MEDICINE |
| FRANK P. CASTRINA, M.D. PULMONARY | LESTER L. HIMMELREICH, III, M.D., F.A.C.P. INTERNAL MEDICINE | DOUGLAS J. BOWER, M.D. INTERNAL MEDICINE |

*April 16, 2002*

*Ms. Trudy McGraw*
*The Wellington*
*17 East High Street, Suite 101*
*Carlisle, PA  17013*

*Dear Ms. McGraw:*

*I'm writing to you in regards to my patient, Vincent Mazamutto, to clarify his current medical conditions.*

*As I mentioned to you in past correspondence, Mr. Mazamutto has three primary medical conditions. His first problem revolves around severe low back pain which has been chronic and unrelenting despite numerous aggressive interventions. He's been on multiple medications, received therapy from the pain clinic, received local epidural steroid injections and numerous prescription medications - all with only partial success. Despite this aggressive therapy, Mr. Mazamutto is still severely limited in his ability to stand, bend or sit for prolonged periods of time and is unable to work.*

*His second, and perhaps most severe problem, is that of his chronic anxiety and depression. This has become especially manifest over the last several years and has proved to be somewhat refractory to multiple medical interventions. This problem was complicated by his third problem which is that of coronary artery disease. As the result of his heart problems, Mr. Mazamutto is extremely fearful of suffering a heart attack and dying.*

*At the present time I feel that Mr. Mazamutto is being treated maximally but the combination of the three previously mentioned conditions still renders him unable to work. Because of his severe anxiety, he is unable to even consider the possibility of back surgery as he is extremely fearful that the surgery will render him either paralyzed or induce further myocardial infarction. As such, I*

*Trudy McGraw*
*April 16, 2002*
*Page 2*

*do not think it is wise to pursue this option.   We'll continue our efforts with medical therapy in an effort to improve Mr. Mazamutto's quality of life , but I feel we have probably plateaued in our abilities to improve his level of function.  As such, it has been our recommendation that he not return to work.*

*If you have any questions, concerns or other specific issues which you'd like me to address, please don't hesitate to call.*

*Sincerely,*

*Douglas J. Bower, M.D.*

*DJB/ro*





**BUREAU OF DISABILITY DETERMINATION**
COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF LABOR AND INDUSTRY
POST OFFICE BOX 8229
HARRISBURG, PENNSYLVANIA 17105

DIAL TOLL FREE
LOCAL TELEPHONE NUMBER:      783-3
FROM OTHER AREAS CALL:   800-932-0
TT #:   717-772-1

EXT. 286

VINCENZO MAZZAMUTO                     DATE: 06/06/01
501 LIMESTONE RD
CARLISLE PA 17013                      SSN: 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

DEAR VINCENZO MAZZAMUTO:

As you may already know, your claim for Social Security disability benefits
was sent to this office for a decision.  Since receiving your claim, we have
tried to obtain medical evidence to document your condition.

The evidence we have obtained is not complete enough for us to make a decision.
Therefore, we have arranged for you to be examined by the psychologist listed
below.  **This examination is designed to provide the specific medical
information we still need.  It may not include evaluation of all your
complaints.**  During the examination, it may be determined that other tests are
needed or that a scheduled test is not needed or should not be done.  We will
pay all authorized medical costs for this examination.

Psychologist Name:   GUIDANCE ASSOCIATES OF PA
                     Stanley E Schneider EdD
        Address:     412 ERFORD RD
                     CAMP HILL PA 17011
      Telephone:     (717) 732-2917 ext. 0000

TYPE OF EXAMINATION:   Mental Examination
TESTS(S):
Appointment Date:  07/12/01              Time:  10:15 AM

SPECIAL INSTRUCTIONS:
Please call the doctor's office to confirm this appointment.
An interpreter will be needed for this examination.  You may wish to bring an
adult friend or adult family member (other than your spouse).  This person
must be willing to sign a form at the doctor's office that says he or she has
no personal interest in your case.  If you want us to provide an interpreter
at no cost to you, please call us as soon as you receive this letter.

The psychologist will contact you about the appointment if a date and time is
not shown above.

                         Sincerely,


                         T Weaver/CLB
                         Disability Claims Adjudicator


F48198


ENCLOSURE: 123, 1001, Return Envelope, Pamphlet,
G1  4/95

0554

**APPOINTMENT CONFIRMATION - COMPLETE AND MAIL IMMEDIATELY**

Part 1 - **COMPLETE THIS PART IF AN APPOINTMENT HAS BEEN SCHEDULED FOR YOU.**    F481

Your appointment is scheduled for 07/12/01 @ 10:15 AM

_____✓_____ Yes, I will keep this appointment.
_____ No, I am unable to keep this appointment because _____

_____

Part 2 - **COMPLETE THIS PART IF YOU ARE TO CALL THE DOCTOR FOR AN APPOINTMENT.**

I called Dr. _____    _____

and my appointment is scheduled for _____ - _____ **Address** _____
                                          **Date**        @
_____ Yes, I will keep this appointment.                    **Time**
_____ No, I am unable to keep this appointment because _____

_____

I must be examined at a site "accessible to the handicapped".   Yes _____ No _____

Signature of Claimant _____
F48198                                              Date_____

**AUTHORIZATION FOR RELEASE OF CONSULTATIVE EXAMINATION REPORT**
**TO YOUR PHYSICIAN, MEDICAL CLINIC, OR REPRESENTATIVE**

NAME: VINCENZO MAZZAMUTO
SSN: 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                    CONSULTANT: GUIDANCE ASSOCIATES OF PA
                                    ADJUDICATOR: T Weaver

**IMPORTANT:   IF YOU WANT US TO SEND A COPY OF THE REPORT OF THIS EXAMINATION**
**TO YOUR DOCTOR OR REPRESENTATIVE, PLEASE COMPLETE THE FOLLOWING:**

I hereby authorize the Pennsylvania Bureau of Disability Determination for the
Social Security Administration to release a copy of the report of examination
scheduled with the consultant whose name appears above.
Please send a copy of this report to:

        Name: VINCENZO MAZZAMUTO

    Address: 501 LIMESTONE Rd
             CARLISLE PA 17013

Please fill in the name and address of the physician or representative to whom
you want the report sent.  If you want the report sent to more than one doctor or
representative, enter the additional names and addresses on the back of this form.

This authorization is valid for either 90 days from the date signed below, or
until acted upon, whichever occurs first, unless sooner revoked in writing by
the undersigned.

Signature of Claimant x Vinzo Mazzamuto    Date 6/8/01  Phone 717-243-0383

## CERTIFICATE OF SERVICE

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing

Plaintiff's Response to Defendants' Statement of Material Facts was served by United States

first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA  19603-0679
    Counsel for Paul Revere Life Insurance Company and New York Life Insurance
    Company

_____
Richard C. Angino

Dated: 8/26/02