ORIGINAL

43
9-10-02

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO,<br>Plaintiff, | : | CIVIL ACTION<br>NO. 1:CV-01-1157 |
| v. | : | FILED<br>HARRISBURG, PA |
| UNUM PROVIDENT<br>CORPORATION, et al.,<br>Defendants | : | JUDGE KANE    SEP 0 9 2002<br>MARY E. D'ANDREA, CLERK<br>Per _____ Deputy Clerk |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION IN LIMINE TO PRECLUDE THE
TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES**

**I.    INTRODUCTION**

Defendant UNUM Provident Corporation, Paul Revere Insurance Company and New York Life Insurance Company ("Defendants"), filed a motion in limine to preclude the expert testimony of Gordon K. Rose, CLU on the issue of bad faith and to preclude the expert or opinion testimony of Dr. Douglas Bower. Defendants' argued that under the Court's gatekeeping rule pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Rule 702, that Dr. Bower's expert or opinion testimony should be precluded. Dr. Bower acknowledged that he is not an expert in back conditions and he is not a practicing psychiatrist or psychologist and is not board certified in those areas. Defendants also argued that his testimony should be excluded because plaintiff has not identified him as an expert in this case.

1

SL1 289395v1/10305.060

Next, Defendants argued that plaintiff's bad faith expert must be precluded from testifying because his testimony will not assist the jury pursuant to Rule 702. Defendants also argued that the expert's testimony is factually inaccurate and should be excluded on that basis. Finally, Defendants argued that the bad faith expert's testimony is inadmissible under Rule 403 of the Rules of Evidence because of the danger that it will confuse the issues or mislead the jury.

In plaintiff's Brief in Opposition to Defendants' Motion in Limine, plaintiff argued that Dr. Bower is qualified to testify as an expert because Dr. Bower treated the plaintiff (Plaintiff's Brief pp. 3-4) and because Dr. Bower changed his opinion as to the cause of plaintiff's disability the very same day that Dr. Bower was deposed by defendants. (Plaintiff's Brief p. 3). Plaintiff also cavalierly states that the mandates set forth in <u>Daubert</u> do not apply to this case or to Dr. Bower's testimony. (Plaintiff's Brief p. 6). The case law plaintiff cites in reliance on this theory were all decided prior to the <u>Daubert</u> decision. (Plaintiff's Brief p. 8).

With respect to the testimony of Mr. Rose, plaintiff argues that he has specialized knowledge with respect to plaintiff's claim of undue delays and inadequate grounds to deny the claim and that the expert can interpret statutes such as the Unfair Insurance Practices Act, 40 Pa.C.S.A. § 1117.1 et. seq., to examine the reasonableness of an insurance company's action (Plaintiff Brief pp. 9-13). Plaintiff's arguments are without merit. In addition, plaintiff's failure to respond to

many of defendants' arguments suggests his agreement with Defendants' arguments.

## II. ARGUMENT

### A. Daubert and Rule 702 Preclude the Admission of Dr. Bower's Expert or Opinion Testimony.

In plaintiff's haphazard response to Defendants' arguments that Dr. Bower's expert or opinion testimony must be precluded pursuant to Daubert and Rule 702, plaintiff first responds to Defendants' alternative argument that Dr. Bower's testimony must be precluded as a result of his failure to disclose the identity of his expert and failure to provide a report from his expert pursuant to Rule 26(a)(2). (Plaintiff's Brief pp. 5-6). Plaintiff violated this Court's prior order by not identifying his expert.

In response, plaintiff argues that he does not have to provide a written report from Dr. Bower. Assuming, for purposes of this argument, that plaintiff is correct it still does not excuse plaintiff's failure to abide by this Court's order to identify his expert. Moreover, plaintiff has failed to comply with the other requirements of Rule 26 and list the other cases in which Dr. Bower has testified in the preceding four years and identify the compensation to be paid for his testimony. Rule 26(a)(2)(B). Subsection C of this rule requires that the disclosures be made at the times and in the sequence directed by the Court. Plaintiff has failed to do this and the failure to identify an expert is grounds to have

3

the testimony precluded as a sanction under Rule 37. <u>Stein v. Foamex International, Inc.</u>, 2001 U. S. Dist. LEXIS 12211, *20 (E.D. Pa. August 15, 2001).

Next, in a very cavalier fashion, plaintiff dismisses Defendants' argument pursuant to <u>Daubert</u> by claiming that <u>Daubert</u> "has absolutely nothing to do with this case". (Plaintiff's Brief p. 6). Plaintiff makes no attempt to explain why <u>Daubert</u> is not pertinent to this case. Instead, plaintiff responds by speculating as to the type of reports Dr. Bower "undoubtedly" prepared for numerous other patients and by speculating as to the type of treatments and diagnostic tests that Dr. Bower may have ordered for his patients (Plaintiff's Brief p. 6). Apparently, plaintiff believes that speculation as to Dr. Bower's treatment of other patients establishes that he is an expert witness. Plaintiff, in his antiquated view of the law, is attempting to bypass the Court's role as gatekeeper pursuant to <u>Daubert</u>.

Plaintiff attempts to argue that Dr. Bower's experience is enough to qualify him as an expert and lists three cases that were decided well prior to the <u>Daubert</u> opinion (see Plaintiff's Brief p. 8). Although plaintiff may wish it were not so, the <u>Daubert</u> opinion does apply in this case and this Court cannot abdicate its role as a gatekeeper to ensure that all scientific testimony or evidence admitted is not only relevant but reliable. <u>Daubert</u>, <u>Id</u>. at 509 U. S. 589. Moreover, a few of the factors suggested by the <u>Daubert</u> Court to review in determining if the evidence is reliable (the qualifications of the expert witness, whether the methodology is generally accepted in the relevant scientific community and the existence of

4

standards controlling the technique's operation) are pertinent in this case. <u>Daubert</u>, 509 U. S. at 592-594. These factors establish that Dr. Bower's testimony must be precluded.

Dr. Bower has admitted that he is not an expert in back conditions and he is not a practicing psychiatrist or psychologist and is not board certified in these areas. (Bower Dep. pp. 6, 7, 36). Although Dr. Bower "thinks" that he is qualified to treat back and anxiety conditions, and express an opinion as to whether a patient is disabled from one of these conditions, this Court need not admit opinion evidence which is connected to the facts only by Dr. Bower's <u>ipse dixit</u> approach. <u>General Electric Co. v. Joyner</u>, 522 U. S. 136, 146 (1977).

In support of its argument, Defendants cited numerous cases for the proposition that expert testimony is inadmissible where the expert is not qualified to testify in that case. In <u>Burton v. Danek Medical, Inc.</u>, 1999 U. S. Dist. LEXIS 2619 (E. D. Pa. March 1, 1999), the Court granted summary judgment and refused to admit the expert testimony. The Court found that a board certified neurologist could not establish that the use of pedicle lumbar screws caused plaintiff's injuries because the physician never performed surgery, had no training in or ever observed spinal fusion surgery, and had never treated a patient with spinal fusion surgery. <u>Id</u>. at *7-8, 10-11, 15-16. The Court also found that the physician was not familiar with the techniques of spinal fusion surgery and had no expertise of devises used in such surgery (<u>Id</u>. at *11). As a result, the Court found that the doctor was not

5

qualified to testify as an expert because he did not possess sufficient knowledge in the area of spinal surgery through training, education or experience. Id. See also, In re: Diet Drugs Products Liability Litigation, 2000 U. S. Dist. LEXIS 9661 (E. D. Pa. June 28, 2000) (Court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness' area of expertise" and that "an expert's opinion must be based on scientific, technical or specialized knowledge and not on "subjective belief or unsupported speculation"); and Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 374 (D.N.J. 1995) (Physician's lack of experience and familiarity with the literature and lack of exposure treating patients suffering from the condition rendered his opinions unreliable).

Plaintiff has chosen to ignore the Supreme Court's opinion in Daubert and the opinions from the District Courts in the Third Circuit by simply claiming that Daubert does not apply to this case. Although plaintiff's reason for ignoring Supreme Court precedent is unclear, what is clear is that he ignores Daubert and its progeny at his own risk because Daubert applies to all experts, including treating physicians who testify as experts.[1] Amorgianos v. National Railroad Passenger Corporation, No. 01-7508, 2002 U.S. App. LEXIS 17792, (2nd Cir. Aug. 28, 2002) (applying Daubert to treating physician); Meister v. Medical Engineering Corp.,

---

[1] Equally clear is that Rule 702 applies as well. In light of the recent amendments to Rule 701 Dr. Bower may not offer "opinion" testimony as a "lay" witness on matters involving scientific, technical or other specialized knowledge..."

6

267 F.3d 1123 (D.C. Cir. 2001) (same); Turner v. Iowa Fire Equipment Co., 229 F.3d 1202 (8th Cir. 2000) (same).

Applying Daubert and Rule 702 to Dr. Bower's testimony, is clear that his belief that he is qualified to opine that plaintiff is disabled by a back condition, a psychiatric condition, or both is insufficient to overcome his admissions that he is neither an expert on back problems nor board certified or trained in psychiatric medicine. Thus, his opinions are outside his area of expertise and not reliable. Dr. Bower's opinions are not based upon specialized knowledge or experience of psychiatric and spinal conditions and whether they are disabling, but rather on his "subjective belief and unsupported speculation." In re: Diet Drugs, 2000 U.S. Dist. LEXIS 9661 at *12. The fact that Dr. Bower "thinks" that he can render such an opinion does not make it reliable.

The reliability of Dr. Bower's testimony is further undermined by his own conduct the very day he was deposed. Dr. Bower testified that plaintiff could work with his back condition but for his psychiatric condition (Bower Dep. at p. 59). Dr. Bower then drafted a letter to Trudy McGraw wherein he opined that plaintiff was unable to work as a result of his back condition. (See Plaintiff's Brief Exh. "A"). It appears that Dr. Bower's opinion of plaintiff's condition is dependent upon the forum in which it will be reviewed. This type of behavior should convince the Court that his testimony is not reliable.

The extent of Dr. Bower's inability to render a reliable psychiatric opinion is confirmed by his April 16, 2002 correspondence. Dr. Bower states: "[b]ecause of his severe anxiety, he is unable to even consider the possibility of back surgery as he is extremely fearful that the surgery will render him either paralyzed or induce further myocardial infarction." (See Plaintiff's Brief Exh. "A") Apparently, Dr. Bower finds plaintiff's irrational decision acceptable and he has made no attempt to refer him to a psychiatrist to have his irrational feelings or anxieties appropriately treated. At the very least, Dr. Bower could explain to the plaintiff that his fears are so unrealistic that he should not become anxious about them. In any event, this statement clearly reflects Dr. Bower's inability to appropriately treat plaintiff's psychiatric condition and render an opinion as to whether that condition is disabling.

It is also notable that Dr. Bower has not referred plaintiff to a psychologist or psychiatrist claiming (improbably) there are none in Central Pennsylvania. Dr. Bower's "treatment" therefore undermines any notion of a severe psychiatric condition.

But perhaps most importantly, under Daubert, the Court must consider whether Dr. Bower's "methodology" is generally accepted in the relevant scientific community and the existence of standards controlling the technique's operation. Daubert 509 U. S. at 592, 594. Dr. Abram Hostetter, M.D., a psychiatrist, reviewed the medical records and unequivocally concluded that he cannot

conclude that plaintiff is psychiatrically disabled from Dr. Bower's treatment records and deposition testimony because Dr. Bower has not done a thorough mental status evaluation of plaintiff. (See Defendants' Appendix Exh. "K"). Dr. Hostetter further concluded that the only way to give a more definitive opinion on the issue of disability is to conduct a full mental status evaluation. Id. Because Dr. Bower did not conduct a full mental status examination, a prerequisite to a psychiatric opinion, his testimony is not reliable.

### B.   The Testimony of Plaintiff's Bad Faith Expert Must Be Precluded

In Defendants' Motion in Limine, Defendants argue that plaintiff's insurance practices expert, Gordon Rose, should be excluded for three reasons. First, Rose cannot offer testimony that will assist the trier of fact. Second, Rose's testimony should be excluded under Rule 403 because his testimony has no probative value and the probative value would be outweighed by the unfair prejudicial effect of the testimony and it's likelihood to confuse the jury. Finally, Rose's testimony is based on factual assumptions that are, in fact, without any factual support. Once again, plaintiff has chosen to not respond to some of Defendant's arguments. Plaintiff does argue that Rose has specialized knowledge that will assist the trier of fact and that in virtually every bad faith case both plaintiffs and defendants use insurance experts (Plaintiff's Brief p. 9). While Rose may have specialized knowledge, it is not relevant and not needed in this case.

Plaintiff claims that the decision in <u>Dattilo v. State Farm Insurance Co.</u>, 1997 U.S. Dist. LEXIS 16188 (E.D. Pa. October 17, 1997) is inapplicable but plaintiff does not cite or refer to the actual holding of the case. In <u>Dattilo</u>, the District Court evaluated whether the expert witness would be permitted to testify if the case went to trial. (<u>Id</u>. at *12). The Court noted that the case did not involve a claim of malpractice in which the insurer's conduct would be judged by the standards of the insurance industry. Instead, bad faith is a legal concept which does not require scientific, technical or specialized knowledge or skill to assist the trier of fact. <u>Id</u>. The District Court noted that the expert witnesses' opinion was nothing more than subjective speculation unsupported by any scientific or specialized knowledge. (<u>Id</u>. at *12-13). Thus, although plaintiff is correct that the expert in <u>Dattilo</u> did not look at the insurer's file, that was not the reason the Court concluded that the expert would not be permitted to testify.

Although plaintiff reviews in detail the documents that Mr. Rose reviewed in preparing his opinion, he fails to contradict Defendants' argument that his testimony is factually inaccurate and should be excluded. As noted in its original brief, Rose claims that Paul Revere's denial of benefits in conjunction with plaintiff being awarded Social Security Disability income benefits was evidence of bad faith. However, since plaintiff was awarded Social Security benefits on July 25, 2002, Rose could not have know of this award when he drafted his earlier reports.

For obvious reasons, plaintiff also failed to raise a defense to Defendants' argument that Rose's opinion is factually inaccurate because Rose claims that Mr. Mazzamuto was not claiming that his disability was due to a mental condition. (Plaintiff's summary judgment papers leave no doubt that he is claiming disability, at least in part, from a mental condition.) Rose had relied upon the mistaken fact that plaintiff was not claiming a mental disability to "opine" (in truth, to argue) bad faith because Defendant retained a psychiatrist as an expert. Such a stunning error undermines any argument that Rose should be allowed to advocate his bad faith arguments based on incorrect facts.

Plaintiff also argues that Rose can assist the jury with respect to referencing and commenting on Pennsylvania's Unfair Insurance Practices Act, 40 Pa. C.S.A. § 1117.1 et. seq. (Plaintiff's Brief p. 11). However, an expert in bad faith cannot testify on matters regarding the Unfair Insurance Practices Act because it is not relevant in determining the issue of bad faith and would be prejudicial. See Dinner v. United Services Automobile Ass'n. Casualty Ins. Co., 2002 U.S. App. LEXIS 3408, *9-11 (3d. Cir. February 27, 2002); and Kraeger v. Nationwide Mutual Ins. Co., 1997 U.S. Dist. LEXIS 2726 *3 n.1 (March 7, 1997).

Plaintiff also fails to distinguish the holding in Bergman v. United Services Automobile Ass'n, 742 A.2d 1101, 1105 (Super. Ct. 1991), where the Superior Court held that the trial court had properly excluded the testimony of the plaintiff's bad faith expert. Although plaintiff correctly points out the definition of

SL1 289395v1/10305.060

an expert witness, he completely fails to distinguish the holding in Bergman. In Bergman, the court noted there was a growing trend among the various states to exclude such testimony and affirmed the exclusion of the expert testimony because the case did not involve highly sophisticated insurance concepts or practices or call for special knowledge, skill or experience to understand or analyze the insurance company's actions. (Id. at 742 A.2d 1107). The court in Bergman also found that the expert's report was conclusionary and invited abdication of the court's duty as a fact finder. Id.

Although plaintiff correctly cited the case of Kraeger v. Nationwide Mutual Ins. Co., 1997 U.S. Dist. LEXIS 2726 *3n.1 (E.D. Pa. March 7, 1997), for the proposition that it is within the Court's discretion to allow expert testimony in a claim for bad faith, Judge Huyett in Kraeger warned the plaintiff that his expert cannot testify that defendant "violated 42 Pa. C.S.A. § 8371" or that defendant acted in "bad faith". (Id. at *3). In the present case, this is actually what Mr. Rose is attempting to do. Indeed, Rose sets forth in his reports that Defendants unduly delayed the decision in this matter, requested a review from a psychiatrist to delay this matter, and that since plaintiff qualifies for Social Security disability benefits he would satisfy the definition of disability under the New York Life Policy as evidence that Defendants acted in bad faith. Not only can Rose not testify that Defendants' conduct was in bad faith, but many of Rose's assumptions were

factually incorrect. Moreover, the facts he is discussing are not complicated and can easily be understood by the jury.

In addition, plaintiff relies upon a concurring opinion in the <u>Bergman</u> decision as precedent where one judge stated that the use of an expert in a bench trial may be different than the need for a bad faith expert in a jury trial. (<u>Id</u>. at 742 A.2d 1110). The majority of the court did not express the same opinion as expressed in the concurring opinion. Instead, the court excluded the expert testimony on bad faith because the case did not involve highly sophisticated insurance concepts or practices or call for special knowledge, skill or experience to understand or analyze the insurance company's actions. (742 A.2d at 1107). If a jury can understand the issues before it without the need for an explanation of highly sophisticated insurance concepts or practices, such an expert is not needed. Moreover, the jury can easily conclude whether, as plaintiff alleges, the defendants engaged in dilatory practices or procedures. In this case, the issues involve general insurance concepts and practices, which the jury can easily comprehend and evaluate. In addition, the facts underlying Rose's opinion can be fully and accurately described to the jury by the plaintiff and representatives of the Defendants. Special knowledge or training is not needed.

Plaintiff also failed to respond to Defendants' argument that Rose's testimony is inadmissible under Rule 403. This Rule prohibits the admission of evidence if its probative value is substantially outweighed by the danger of

confusion of the issues or if it misleads the jury. This applies to expert testimony. <u>J&J Enterprises, Inc. v. Via Veneto Italian Ice, Inc.</u>, 1998 U.S.Dist. LEXIS 5098 (E.D. Pa. April 14, 1998), <u>aff'd</u>, 178 F.3d 1279 3d. Cir. 1999). In this case, Rose's testimony will mislead the jury and create confusion. Rose has no medical qualifications to render an opinion as to the cause of plaintiff's disability and his testimony is based on inaccurate factual assumptions. He is also not a lawyer yet purports to offer numerous legal opinions (which are incorrect and would interfere with the Court's role of instructing the jury on the law). Thus, his testimony will confuse the jury and interfere with the Court's role to charge the jury on the law. His testimony has no probative value and will be unfairly prejudicial and should be excluded.

Rose is nothing more than an advocate in this proceeding and not an objective evaluator of the evidence. Rule 403 is properly applied to prohibit such testimony. <u>J&J Enterprises, Inc.</u>, 1998 U.S.Dist. LEXIS 5098 at *27. Defendants detailed the numerous examples in their original memorandum establishing Rose's role of advocate verses objective evaluator. Apparently, plaintiff does not contest Defendants' argument because plaintiff did not brief this issue. Once again, he does so at his peril. In short, Rose's status in this proceeding is that of an advocate or, even worse, a hired gun being controlled by plaintiff's advocate. As a result, his testimony should be precluded under Rule 403.

14

## III. CONCLUSION

For the foregoing reasons, UNUM respectfully requests this Court to grant its motion in limine.

Dated: September 9, 2002

STEVENS & LEE

By _E. Thomas Henefer_
E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants, UNUM Provident Corporation, Paul Revere Insurance Company, and New York Life Insurance Company

15

## CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Defendant's Reply Memorandum in Support of its Motion in Limine to Preclude the Testimony of Plaintiff's Expert Witnesses upon the following counsel of record, by depositing the same in the United States mail, postage prepaid, addressed as follows:

>Richard C. Angino, Esquire
>4503 North Front Street
>Harrisburg, PA 17110-1708

E. Thomas Henefer

Date: September 9, 2002

SL1 289395v1/10305.060