IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| v. | : | |
| UNUM PROVIDENT CORPORATION, et al., | : | JUDGE CONNER |
| Defendants | : | |



FILED
HARRISBURG, PA
OCT 0 3 2002
MARY E. D'ANDREA, CLE[RK]
Per _____
Deputy Clerk

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION IN LIMINE**

## I. INTRODUCTION

Defendants UNUMProvident Corporation, Paul Revere Insurance Company and New York Life Insurance Company ("Defendants") file this memorandum of law in support of their motion in limine to exclude certain evidence at trial consisting of the following: (1) Plaintiff's receipt of Social Security Disability benefits; (2) testimony of, or evidence regarding, Dr. McSharry; (3) testimony of, or evidence regarding, Dr. Schneider; (4) evidence of correspondence between counsel; and (5) the waiver of life insurance premiums by New York Life.

## II. PROCEDURAL HISTORY

Plaintiff is a restaurant owner who has asserted claims for bad faith, under 42 Pa. C.S.A. § 8371, and breach of contract arising from the denial of his claim for disability benefits under a disability policy based on alleged back and psychiatric conditions. After Defendants moved for summary judgment and after

1

the deadlines for designation of experts and discovery had passed, plaintiff identified Dr. McSharry and Dr. Schneider as potential expert witnesses.

## III. FACTUAL HISTORY

Defendants incorporate herein in its entirety, the detailed factual history contained in their summary judgment brief.

### Dr. McSharry

Detailed facts regarding Dr. McSharry, a former employee of UNUMProvident Corporation, are set forth in Defendant's response in opposition to plaintiff's motion to extend the expert report deadline, which is incorporated herein in its entirety. In summary, however, Dr. McSharry is a former employee of UNUMProvident who claims he was fired for complaining about how UNUMProvident subsidiaries such as Paul Revere conduct internal medical reviews. He has apparently made similar allegations in the past about other former employers such as a the Tennessee Blue Cross and Blue Shield Plan.

There is no evidence that McSharry has any knowledge of this case or, for that matter, has ever visited the Worcester, Massachusetts facility where plaintiff's claim was reviewed. Although plaintiff has identified McSharry as an expert, he has yet to produce any report or comply with Rule 26; instead, plaintiff seeks to introduce McSharry's deposition transcript from a different case.

### Dr. Schneider

Plaintiff also seeks to use Dr. Schneider as an expert although plaintiff did not designate him as an expert until well after the deadlines for discovery and

2

SL1 295222v1/10305.060

expert reports had passed. Further, plaintiff and has yet to comply with Rule 26's disclosure requirements regarding Dr. Schneider, a non-treating psychiatrist who examined plaintiff in connection with his claims for SSDI benefits.

### Correspondence Among Counsel

Although not listed in plaintiff's exhibit list, plaintiff's counsel threatened to offer into evidence copies of correspondence between counsel purportedly to support plaintiff's bad faith claim. While there is nothing in the correspondence (or anything else in this case) to suggest bad faith, the correspondence should be excluded because it is irrelevant and otherwise inadmissible under Rule 403.

### Award of SSDI Benefits

Plaintiff also seeks to offer into evidence a decision by the Social Security Administration awarding Social Security Disability Income ("SSDI") benefits. This decision is based on different legal standards and a vastly different factual record than is present here and should be excluded because it is irrelevant and will confuse the jury.

### NYL Waiver of Life Insurance Premiums

Finally, plaintiff seeks to introduce evidence concerning a decision by NYL to waive premiums under a separate and distinct life insurance policy. Exclusion is proper because different legal standards apply to the determination of the request for a waiver of life insurance premiums and a request for disability benefits.

SL1 295222v1/10305.060

## IV. QUESTIONS PRESENTED

### A. Whether Plaintiff's Untimely Experts Should Be Excluded.

[Suggested Answer: Yes].

### B. Whether Evidence Of The Award Of Social Security Benefits, The Waiver Of Life Insurance Premiums By New York Life, And Correspondence Between Counsel Should Be Excluded.

[Suggested Answer: Yes].

## V. ARGUMENT

### A. The Untimely "Experts" Should Be Excluded

The Court has discretion to deny plaintiff's use of Dr. McSharry and Dr. Schneider as experts. Oliver v. Ingber, No. 96-4471, 1998 U.S. Dist. LEXIS 2799 at *3-4, (E.D. Pa. Mar. 9, 1998). See also, Lanni v. State of New Jersey et al., 177 FRD 295, 301 (DNY 1998). Exclusion is proper because the proposed testimony is inadmissible and the late disclosure is prejudicial.

#### (1) Allowing the Late Designation of Experts is Unduly Prejudicial

Plaintiff's late identification of the experts is unfairly prejudicial, especially because plaintiff apparently intends to use McSharry's frivolous accusations to launch a new legal theory consisting of a broad-based "pattern and practice" attack on defendants. When plaintiff identified Dr. McSharry and Dr. Schneider, discovery had closed and the deadline for expert reports had passed. The pretrial preparation for this case involved extensive discovery and the designation of expert witnesses all within the confines of the deadlines established by the Court (with

4

one extension previously granted). These pretrial efforts culminated in the submission of detailed summary judgment papers.

Simply put, the defendants were entitled to make informed strategic choices in defending this action based on the pretrial preparation that took place within the deadlines. Discovery made it clear that this case has always been about plaintiff's individual claim. Plaintiff should not be allowed to undermine that preparation by using McSharry to present a new legal theory (i.e., a "pattern and practice" argument) well after the discovery and summary judgment deadlines.

The same can be said for Dr. Schneider. Again, discovery had long been concluded, and the deadline for expert reports had passed, before plaintiff ever sought to designate Dr. Schneider as an expert. Indeed, plaintiff's decision appears to be a knee-jerk response to defendants' designation of an expert psychiatrist.

There is no question that plaintiff's late designation of Dr. Schneider represents an eleventh-hour sift in strategy which is unfairly prejudicial. This is confirmed by the report of plaintiff's so-called expert on insurance practices expert, Gordon Rose, who opined that this case involves <u>no</u> psychological issues and that defendants acted in "bad faith" by designating a psychiatrist as an expert (even though plaintiff wants to do the same thing, albeit after the deadline has passed).

### (2) <u>The Proposed Testimony of McSharry Is Inadmissible</u>

When the Court considers the "importance" of McSharry's proposed testimony, the Court should grant Defendants' motion because the proposed

5

testimony would not be admissible. Scopia Mortgage Corp. v. Greentree Mortgage Corp., 194 F.R.D. 526, 529 (D.N.J. 1998) (in deciding whether to allow untimely designation of witness, Court should consider importance of proposed testimony).

### (a) McSharry's Testimony Would Not Satisfy Rule 702

Federal Rule of Evidence Rule 702 imposes three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit. In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania Transp. Auth., 35 F.3d 717, 741-42 (3d Cir. 1994) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 at 587-591 (1993)). McSharry's proposed testimony would not satisfy at least two of those requirements (fit and reliability).

The "fit" requirement under rule 702 is designed to ensure that the expert's testimony will assist the trier of fact (i.e., it must "fit" the subject matter at issue). Daubert, 509 U.S. at 591. That is, there must be a connection between the opinion and the facts of the case. Heller v. Shaw Industries, Inc., 167 F.3d 146, 159 (3d Cir. 1999). In this way, Rule 702 contains a fundamental requirement that expert testimony must be helpful to the jury to be admissible. Fed. R. of Evid. 702; JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 at *14 (E.D. Pa. Apr. 14, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999).

Here, plaintiff apparently intends to use McSharry to cobble together a "pattern and practice" type of argument to support his bad faith claim. But such an approach would rely on irrelevant arguments and testimony because the question

6

of whether there was bad faith (which there was not) turns on whether plaintiff can prove, by clear and convincing evidence, that Paul Revere lacked a reasonable basis for its actions *based on the circumstances of this case*. Keefe v. Prudential Property and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000). Indeed, courts have routinely denied discovery seeking information on other claims because such information is irrelevant. E.g., Cantor v. Equitable Life, 1998 U.S. Dist. LEXIS 8435 at * 10-11 (E.D. Pa. 1998); North River Ins. Co. v. Greater New York Mutual Ins. Co., 872 F. Supp. 1411, 1412 (E.D. Pa. 1995).

Finally, Rule 702, like Daubert, requires reliability. Expert testimony is only reliable if the proponent establishes that the proposed expert bases his or her opinions and conclusions on "good grounds." Paoli Railroad, 35 F.3d at 748; see also Daubert, 509 U.S. at 590. A witness' "subjective belief or unsupported speculation" does not constitute "good grounds" for the proposed expert's conclusions or opinions. Daubert, 509 U.S. at 590.

Here, it is apparent that McSharry's testimony would be unreliable. Again, McSharry is pursing his own lawsuit against UNUMProvident for personal financial gain and his claim apparently depends in large measure on the success of his allegations. Thus, he has a financial incentive, quite unlike those typically found with expert witnesses, to advocate a position. McSharry is therefore not in a position to provide reliable testimony.

### (b) <u>McSharry's Testimony Is Inadmissible Under Rule 403</u>

Fed. R. of Evid. 403 prohibits admission of evidence (which would otherwise be admissible) if (1) its probative value is substantially outweighed by the danger of confusion of the issues, (2) it misleads the jury, <u>or</u> (3) it would result in "undue delay" or "waste of time." This applies to expert testimony. <u>JMJ Enterprises</u>, 1998 U.S. Dist. LEXIS 5098 at *14 (E.D. Pa. Apr. 14, 1998).

This is a classic example for use of Rule 403 because of the very real prospect that allowing McSharry to testify will result in a "mini-trial" over his allegations. This will require cross examination about specific claims in which he was involved, his total lack of knowledge of the facts of this case and the circumstances surrounding the termination of his former employment with BCBS (where he made similar allegations). Thus, allowing McSharry to testify will violate Rule 403's objectives of avoiding "undue delay" or "waste of time."

Allowing McSharry to testify will also violate Rule 403 by causing the jurors to become confused or mislead about the issues. Again, information about what happened on other claims is irrelevant. E.g., <u>Cantor</u> 1998 U.S. Dist. LEXIS 8435 at * 10-11 (E.D. Pa. 1998). Allowing a so-called "expert" to testify about irrelevant information will obviously confuse and mislead the jury who may believe he has knowledge of this case.

Further, Rule 403 is properly applied where the expert is "acting as an advocate, and not as an objective evaluator of evidence." <u>JMJ Enterprises</u>, 1998

8

U.S. Dist. LEXIS 5098 at * 27. McSharry has no option but to act as an advocate given his lawsuit and direct financial incentive to advocate a position consistent with the allegations of his lawsuit, regardless of the facts of this case.

### (c) The Daubert Standard

Without a report, defendants cannot assess whether McSharry could satisfy the Daubert standards. Defendants therefore reserve the right to assert additional objections to any actual proposed testimony.

### (d) McSharry's Deposition Transcript

It appears that plaintiff merely intends to offer into evidence the transcript of his deposition taken in a series of cases, of which this case was not one. The Court should exclude the transcript for the reasons outlined above pursuant to Rules 702 and 403 of the Federal Rules of Evidence. Exclusion of the transcript is also proper based on the prejudice that would arise by depriving defendants the chance to cross examine McSharry about the circumstances of this case. Defendants obviously did not have an opportunity to cross examine McSharry about the facts of this case because the Court in Tennessee allowed his deposition to go forward only a limited number of cases (which did not include this case).

Without such cross examination, the introduction of McSharry's testimony would be unfairly prejudicial because the jury would, at worst, be mislead into thinking that McSharry had personal knowledge of this case or, at least, never understand the minimal weight (if any) to assign to McSharry's testimony. Under

9

these circumstances, depriving defendants of the opportunity for cross examination would be unfairly prejudicial and improper under concepts of due process.

### (e) Newspaper Article and Complaint

Plaintiff also seeks to introduce a newspaper article regarding McSharry's case and McSharry's complaint. This "evidence" is inadmissible hearsay under Fed. R. of Evid. 801(c) and 802. E.g., Wright v. Montgomery County, No. 96-4597, 2002 U.S. Dist. LEXIS 9442, (E.D. Pa. May 20, 2002). This evidence should also be excluded for the same reasons (outline above) that McSharry should not be allowed to testify and his deposition transcript should not be admitted into evidence. E.g., Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991) ("mere allegations in . . . an unverified complaint" are not "evidence which would be admissible at trial").

### B. The Social Security Decision, Evidence of the Waiver of Life Insurance Premiums by New York Life and Correspondence Between Counsel should be excluded.

#### The Social Security Award

Plaintiff seeks to offer into evidence his July 25, 2002 award of SSDI benefits to support his claim. But this award is based on different standards and a vastly different factual record and is therefore irrelevant to this case.

For example, the SSDI standards do not incorporate the Third Circuit standard in Russell v. Paul Revere Life Ins. Co., 288 F.3d 78 (3d Cir. 2002), under which no benefits are payable where (a) the policy provides residual disability benefits; (b) the claimant has a residual disability; and (c) the claimant does not

10

return to work. Here, the ALJ found plaintiff could, among other things, "sit 4 hours per 8-hour workday with a sit/stand option." (Summary Judgment App., Exh. J at 14). Such restrictions would not preclude plaintiff from performing some of his occupational duties (like bookkeeping and office duties) and, therefore, the ALJ's decision undermines plaintiff's position under Russell.

Likewise, the Social Security award is based on a factual record far different from that presented to either Paul Revere or this Court. For example, it does not appear that Dr. Bower's deposition testimony was ever submitted to the ALJ. If it had been, the ALJ would have seen that Dr. Bower has opined that plaintiff's back condition alone does not prevent him from performing his occupational duties. (Summary Judgment Exh. F at 54 –57 and 59 (where Dr. Bower opined: "Again, with the back, if that was his only issue, could he muddle through further, he probably could."). Instead, the ALJ had Dr. Bower's letter (written April 16, 2002, the day of his deposition, but not produced in discovery until August 8, 2002) which implies that the back condition alone is disabling. ( Id., Exh. J at 10 ("Despite this aggressive therapy, Mr. Mazzamuto is still severely limited in his ability to stand, bend or sit for prolonged periods of time and is unable to work.")).

For these reasons (different standards and different factual records) numerous courts have found that an award of SSDI is not germane to a disability insurance dispute. E.g., Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 186-87 n. 4 (1st Cir. 1998). Justice Ginsburg dealt with this issue while on the Court of

11

Appeals for the District of Columbia Circuit. Block v. Pitney Bowes, Inc., 952 F.2d 1450 (D.C. Cir. 1992). Rejecting a plaintiff's argument that an SSDI award rendered a denial of disability benefits arbitrary, Judge Ginsburg noted that the evidentiary records may be different in the two proceedings and, therefore, the Court would "accord no weight" to the SSDI award. Id. at 1455-56.

Further, even if the evidence had some minimal relevance (which it does not), it would be properly excluded under Rule 403 because it will confuse the issues and mislead the jury which may be unable to understand that where different legal standards are applied, and different factual records considered, a person can quite logically be found disabled for one purpose but not for another. E.g., Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999) (noting that a finding of disability under Social Security Act is not necessarily inconsistent with a claim that one can work with "reasonable accommodation" under Americans with Disabilities Act). This evidence should therefore be excluded.

### NYL Waiver of Life Insurance Premiums

Plaintiff also intends to offer evidence of NYL's waiver of premiums under the separate Life Policy. But a waiver of life insurance premiums based on disability does not estop an insurer from denying benefits on a separate disability policy. Bucks v. Reliance Standard Life Ins. Co., No. 99-3398, 2000 U.S. App. LEXIS 11456 (6th Cir. May 12, 2000); Gonyea v. John Hancock Life Ins. Co., 812 F. Supp. 445 (D. Vt. 1993). Notably, these cases involved claim decisions by the

same company. Here, plaintiff's argument is even weaker because the life insurance premium waiver was by NYL, a company separate and distinct from Paul Revere. [See Hardin Affidavit attached to Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment].

But even more fundamentally, plaintiff's argument ignores his burden of proof under Russell. Like the SSDI award, the decision to waiver premiums is not governed by the Russell standard under which the Court must consider the partial or "residual" disability provisions of the Disability Policy, and may not find in plaintiff's favor unless he can prove that he cannot perform any of his occupational duties. NYL's decision to waive premiums under a separate life insurance policy is therefore irrelevant and inadmissible. Fed. R. of Evid. 401 and 402. In the alternative, it is properly excluded under Rule 403 because any minimal probative value is substantially outweighed by the danger of confusing the issues and misleading the jury especially given the different standards that apply.

### Correspondence Between Counsel

Plaintiff has threatened to introduce a letter drafted by defense counsel explaining that the waiver by NYL of life insurance premiums was not relevant to the issue of disability benefits. This fact is not critical to plaintiff's case and, even if it was, the evidence can be obtained in other ways. For example, Defendants could stipulate that they continued to deny disability benefits notwithstanding NYL's waiver of life insurance benefits. This evidence is therefore inadmissible.

Cf., <u>Peerless Heater Company et al. v. Mestek, Inc. et al.</u>, 2000 U.S. Dist. LEXIS 1409 at *7, (Feb. 7, 2000 E.D. Pa.).

More importantly, the position expressed by counsel in defending this lawsuit is not evidence of bad faith. <u>Slater v. Liberty Mutual Ins. Co.</u>, 1999 U.S. Dist. LEXIS 3753 at *5, (E.D. Pa. March 30, 1999) (Section 8371 provides a remedy for bad faith conduct by an insurer in its capacity as an insurer and not as a legal adversary in a lawsuit filed against it); <u>O'Donnell v. Allstate Ins. Co.</u>, 734 A.2d 901, 909 (Super. Ct. 1999) (discovery disputes are not evidence of bad faith).

In addition, the use of counsel's correspondence as evidence of bad faith would directly conflict with counsel's role as an advocate under the Rules of Professional Conduct. Rule 1.3 requires that a lawyer shall act with reasonable diligence and the comment to the rule requires that an attorney represent a client with "zeal in advocacy." <u>See</u> Comment to Rule 1.3. If counsel's letters or actions could be used as evidence of bad faith it would greatly reduce or eliminate counsel's role as required by these Rules.

Such evidence should also be excluded under Rule 403 of the Rules of Evidence because counsel's letters to opposing counsel may cause unfair prejudice and confuse the jury. It is not proper to have a jury comprised of laypersons evaluating correspondence of counsel in litigation. This is especially so when the evidence can easily be obtained by other means (assuming it were otherwise

14

relevant and admissible which it is not). Accordingly, Defendant's motion in limine must be granted.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to grant their Motion in Limine.

Dated: October 2, 2002                     STEVENS & LEE

                                           By *E. Thomas Henefer*
                                           E. Thomas Henefer
                                           Attorney I.D. No. 55773
                                           Kirk L. Wolgemuth
                                           Attorney I.D. No. 45792
                                           111 North Sixth Street
                                           P.O. Box 679
                                           Reading, Pennsylvania 19603
                                           (610) 478-2000

                                           Attorneys for Defendants

SL1 295222v1/10305.060

## CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Memorandum of Law upon the following counsel of record, via Federal Express, addressed as follows:

        Richard C. Angino, Esquire
        4503 North Front Street
        Harrisburg, PA  17110-1708

                                          E. Thomas Henefer

Date:  October 2, 2002