

FILED
HARRISBURG, PA

OCT 1 5 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION IN LIMINE**

## I. INTRODUCTION

Plaintiff, Vincenzo Mazzamuto, by and through his counsel, Richard C. Angino, Angino & Rovner, P.C., hereby opposes Defendants' Motion in Limine and requests the Court to deny Defendants' Motion and permit admission of evidence of Plaintiff's Social Security disability benefits, the testimony of Dr. Patrick McSharry, testimony, records and report of Dr. Schneider, correspondence between counsel and evidence of the waiver of life insurance premiums by New York Life insurance company.

## II. **PROCEDURAL HISTORY**

Plaintiff has already filed briefs with respect to the relevancy of Social Security and New York Life's finding that Mr. Mazzamuto is totally disabled, as well as the inapplicability of expert report deadlines with respect to fact experts who have not been specifically engaged to provide testimony at trial.

## III. **FACTUAL HISTORY**

Dr. Schneider examined Mr. Mazzamuto in connection with the investigation by the Social Security Administration of Mr. Mazzamuto's claim for Social Security disability benefits. Through discovery, Defendants obtained all of Mr. Mazzamuto's Social Security records, including the report and findings of Dr. Schneider that led to the Social Security Administration finding of Mr. Mazzamuto's total disability. Plaintiff has relied upon Dr. Schneider's findings as to Plaintiff's claim of disability and bad faith. Pursuant to Fed.R.C.P. 26(a)(2)(A), Dr. Schneider and his report have been identified as a witness and exhibit.

Dr. McSharry was not discovered until August 2002. As indicated in Plaintiff's Motion for Extension of Time to Supply Expert Report, Plaintiff's expert, Mr. Rose, found reference to Dr. McSharry's lawsuit against UNUM regarding UNUM's practices regarding denial of disability benefits in a July 29, 2002 magazine article. Dr. McSharry's deposition was taken in other UNUM Provident Paul Revere cases in which Defendants participated. Dr. McSharry testified extensively as to UNUM Providence's practices and procedures with respect to reviewing disability cases. McSharry and his deposition have been disclosed pursuant to Fed.R.C.P. 26(a)(2)(A) as a potential witness and exhibit.

IV. **ARGUMENT**

A. **Dr. Schneider and Dr. McSharry Are Fact Experts Not Retained or Engaged To Give Expert Testimony And, As Such, Not Governed by Fed.R.C.P. 26(a)(2)(B) And Their Identities And Proposed Testimony Have Been Supplied To Defendants Pursuant to Fed.R.C.P. 26(a)(2)(A).**

Dr. McSharry's deposition was taken on September 4, 5 and 6, 2002, by six plaintiffs' attorneys in six cases proceeding against Defendants. Defendants engaged counsel who cross-examined Dr. McSharry in great detail. The direct examination took 365 pages and cross-examination took 679 pages.

Defendants contend that Dr. McSharry's deposition should be excluded because of Plaintiff's failure to timely file an expert report and his lack of knowledge of the facts of this specific case.

Defendants contend that Dr. Schneider's reports and/or testimony should be excluded because of Plaintiff's failure to file a timely expert report.

Neither Dr. McSharry's nor Dr. Schneider's testimony is constrained by the Rule 26 requirement of expert reports because neither Dr. Schneider nor Dr. McSharry was retained or employed to give expert testimony in this proceeding. Rule 26 (a)(2)(B) requires "with respect to a witness who is <u>retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony</u>, be accompanied by a written report prepared and signed by the witness." (emphasis supplied). See, <u>Miller v. The Brass Rail Tavern, Inc.</u>, 541 Pa. 474, 485, 486, 664 A.2d 525, 530, 531 (1995) referencing <u>Neal v. Lu</u>, 365 Pa. Super. 464, 530 A.2d 103 (1987); Fed.R.C.P. 26(b)(4); <u>Harasimowicz v. McAllister</u>, 78 F.R.D. 319, 320 (1978), citing <u>Wright & Miller</u>, 8 Fed. Practice and Procedure §2033 (1970).

Rules precluding the late filing of expert reports are intended to prevent surprise and not to preclude relevant testimony where opposing counsel has not been prejudiced. Miller, supra, at 541 Pa. 485, 664 A.2d at 525.

Rule 26 (a)(2)(A) requires a party to disclose to other parties the identity of any person who may be used at trial to present evidence. Plaintiff did, in accordance with Judge Kane's case management order, in September identify Dr. McSharry and Dr. Schneider.

Dr. Schneider was not employed or retained by Plaintiff at all. He was chosen by the Social Security Administration to evaluate Mr. Mazzamuto in connection with Mr. Mazzamuto's claim for Social Security disability. Dr. Schneider's identity and report of findings were known to defendants at least since March 2002 when Defendants obtained and provided Social Security documents to Plaintiff in response to Plaintiff's request for discovery.

Defense is also aware of Dr. McSharry's testimony as well having fully participated in the taking of Dr. McSharry's deposition. Dr. McSharry was deposed in a consolidated deposition of six plaintiffs[1] against UNUM and/or Paul Revere on September 4, 2002. Defendants were necessarily represented at that deposition, and Defendants have Dr. McSharry's testimony.

Dr. McSharry's testimony is relevant to this proceeding because of his employment as a medical consultant by UNUM/Provident. UNUM had merged with Provident Insurance Company and owns Paul Revere Insurance Company. They had a reinsurance agreement with New York Life, the other Defendant in the instant action.

---

[1] Those cases are Randall Chapman v UNUMProvident Corporation, Joyce A. Kakkis v Provident Mutual Life Insurance Company of Philadelphia, et al, Robert L. Carr v UNUMProvident Corp., The Paul Revere Life Insurance Co., Simon Zemel v Provident Life and Accident Insurance Company, Robert D. Ligorsky v The Paul Revere Life Insurance Company, et al, Catherine Kelly v. The Equitable Life Assurance Society, et al.

In his deposition, Dr. McSharry testified about claims handling practices at offices in Chicago, Portland, Maine, Glendale, California, Worcester, Massachusetts, and Chattanooga, Tennessee. Depo McSharry, p. 104. Mr. Mazzamuto's claim was processed by personnel in Worcester, Massachusetts.

Dr. McSharry is a medical doctor who reviewed files, made notations, and expressed opinions according to a format prescribed by UNUM, McSharry depo. pp. 81-82. Dr. McSharry saw policies of all the companies, McSharry depo, p. 106. The various geographic sites were set up similarly, to behave similarly. McSharry depo, p. 112. "They were as far as I know set up the same." McSharry depo. p. 112. The goal was uniformity across all areas, McSharry depo. p. 113, 243. When Dr. McSharry fell behind in his file review, his files were shipped to Worcester, McSharry depo, p. 119.

Dr. McSharry was expected to review 3-4 files per day, or 20 per week, McSharry, depo. pp. 124-125, but Dr. McSharry was unable to do a full and fair file review at that rate, McSharry depo. p. 194. <u>Managers' bonuses were awarded based on how many claims they denied</u>, McSharry depo. p. 136.

> [T]here's two ways that an insurance company makes money. One is from the investments that they make on the claimants' policies, and the second area is on claims management. That's the two areas, and these impairment heads were very responsible for getting results from claims management.

McSharry depo. p. 143.

Dr. McSharry testified that he never saw any "customer care representative" care for a customer. McSharry depo. p. 146. Employees who were "doing well" were not approving claims, McSharry depo. p. 161-162. Dr. McSharry was asked to sign off on claims whether he agreed with the result or not, McSharry depo. p. 186. Dr. McSharry was not "part of the team" when he made it difficult to close a claimant's file by denying the claim, McSharry depo. p. 163.

251810.1\JLS\JLS                                5

As a result, Dr. McSharry was told that he had fallen off the career path at UNUM, McSharry depo. p. 189. However, nobody ever complained when Dr. McSharry supported denials, McSharry depo. p. 179.

Dr. McSharry got in trouble for disagreeing with nurses' conclusions that the claimants were not impaired, McSharry depo. p. 192. Claims consultants were hired based on their past work record for closing, i.e., denying claims, McSharry depo. p. 198. McSharry was discouraged from ordering independent medical tests because it slowed the review process, McSharry depo. p. 206, and cost money, depo. p. 272, 316.

Dr. McSharry also noted problems handling claimants with multiple physical problems, in that all of the claimant's problems were not reviewed. "[I]f that person has three or four different problems, they may have physical restrictions and limitations from, say, an orthopedic condition. They may have what I call cognitive and psychological restrictions and limitations from either a functional disorder of [sic] a psychiatric disorder. And really, you have to look at all of those restrictions and limitations to really comment on whether the person's impaired or not. <u>But we were told only to look at the physical restrictions and limitations from the general medical condition.</u> . . . So the person really only essentially got their general medical condition reviewed, the physical aspects of it." McSharry depo. pp. 213-214.

Dr. McSharry apparently recognized what the companies do not:

[D]isability or impairment is about what the person can do on their job, and jobs demand all sorts of abilities, cognitive, psychological, and you know, the ability to handle stress is a psychological, cognitive, is the ability to think on the spot or make judgments, decisions, and physical is the actual fact that you can move your arm. So if you only look at the fact that whether they can move their arm or not and don't decide, don't look at the cognitive and decide if that is affecting their job, then you haven't really given the person a fair whack.

Depo. p. 215.

251810.1\JLS\JLS                                6

Dr. McSharry testified that any unwillingness to go along with denials affected promotion prospects for claim handlers, and nurses, depo. pp. 223-224. McSharry was pressured by claim handlers and consultants to deny claims, depo. pp. 236-239. "Everybody knows and every doctor who's worked has mentioned and knows that we're totally nonvaluable to the company unless we're able to support the denial of claims, and that is the end game." McSharry depo. p. 242-3. Keeping the claims people happy meant denying claims, depo. p. 246.

Mr. Mazzamuto has multiple problems: he had a heart attack, he has back pain and he has anxiety. According to Dr. McSharry, the review policy at UNUM and its related companies precluded review of multiple physical problems. That's exactly what happened in this case. UNUM's Dr. Clarke said Mr. Mazzamuto's heart didn't keep him from working and ignored Mr. Mazzamuto's back condition and anxiety. This was the position taken by the in-house nurses and rehabilitation experts involved in this case. The claims representative denied Mr. Mazzamuto's claim based upon the single focus <u>heart</u> condition ignoring Mr. Mazzamuto's back problems and anxiety.

Dr. McSharry's testimony about UNUM's practices in denying applications for disability is relevant. It is probative as to the procedure followed in denying Mr. Mazzamuto's claim, as well as Defendants' bad faith. The unwritten procedure is even more important than the written manual disclosed in discovery. In <u>Bonenberger v. Nationwide Mut. Ins. Co.</u>, 2002 PA Super 14, 791 A.2d 378 (2002), the Pennsylvania Superior Court held that a company's manual is relevant to establish an insurance company's practices and procedures. <u>Also see</u>, <u>Kraeger v. Nationwide Mut. Ins. Co.</u>, 1997 U.S. Dist. LEXIS 2726 (E.D. Pa. 1997).

Claims, operations, procedures, and training manuals are relevant and likely to lead to relevant, admissible evidence. In <u>Robertson v. Allstate Insurance Company</u>, No. 98-4909, 1999

U.S. Dist. LEXIS 2991 (E.D. Pa. 1999), the court recognized the relevance of internal claims and procedure manuals. "Information contained in the manuals is relevant because they contain instructions concerning procedures used by Allstate employees in handling UIM claims such as plaintiff's claim." *Ibid*, Slip Op. pp. 18-19, 1999 U.S. Dist. LEXIS 2991, p. 9. The <u>Robertson</u> decision cited with approval <u>Kaufman v. Nationwide Mut. Ins. Co.</u>, 1997 U.S. Dist. Lexis 18530, 1997 WL 703175, at 2, n. 2 (E.D. Pa. Nov. 12, 1997) (in bad faith case, insurer ordered to produce information in claims manuals concerning procedures used by insurer's employees in handling UIM claims). <u>See also</u>, <u>Conway v. State Farm Fire & Casualty Co.</u>, 1998 U.S. Dist. LEXIS 20137 (1998).

Obviously, the Superior Court of Pennsylvania agrees that claims manuals can constitute relevant evidence in an action for insurer bad faith. In <u>Bonenberger v. Nationwide Mutual Insurance Company</u>, 2002 PA Super 14 (decided January 23, 2002), the Superior Court affirmed a trial court finding of insurer bad faith where the insurer's representatives were guided by the terms of its Pennsylvania Best Claims Practices Manual which contained the company's overall philosophy, including reduction of the average claim payment to a level first consistent with, then lower than major competitors, and to be a "defense-minded" carrier in the minds of the legal community. Both Superior Court and the trial court concluded that the philosophy did not encourage reasonable case-by-case evaluation of claims. The manual was relevant evidence and supported the court's ultimate finding of bad faith. Slip Op., p. 7.

Plaintiff intends to use Dr. McSharry's deposition in the trial of the matter sub judice. Rule 32 of the Federal Rules of Civil Procedure specifically provides for the use of a deposition in a proceeding where the deposition was taken in or for a different state or federal proceeding. Rule 32 states in part:

> [W]hen an action has been brought in any court of the United States or of any State and another action involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefore. A deposition previously taken may also be used as permitted by the Federal Rules of Evidence.

Admittedly the parties are not identical here, because matter sub judice involves a different Plaintiff. It is the non-represented Plaintiff who seeks to use Dr. McSharry's deposition testimony, and Defendants, who were represented by counsel and had an opportunity to cross-examine Dr. McSharry in the matter concerning UNUM's, Provident's and Paul Revere's practices and consequently cannot claim prejudice.

Dr. McSharry's testimony is based on his employment at UNUM and his knowledge of UNUM's claims handling practices. He is both a fact and expert witness. He knows what was done at UNUM, what he was told to do, how one received bonuses, and how one reached a dead end. As a medical doctor he also possessed specialized knowledge.

The standard is whether the expert has any specialized knowledge which will assist the trier of fact to understand the evidence or determine a fact in issue.

The pertinent Federal Rules of Evidence provide:

Rule 702. Testimony by Experts

> If scientific, technical, <u>or other specialized knowledge</u> will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 704. Opinion on Ultimate Issue

> (a) Except as provided in subdivision (b) [not applicable here as it applies to mental state of a defendant in a criminal case], testimony in the form of an

> opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Likewise, in Pennsylvania, a witness is qualified to offer an expert opinion where the witness possesses more expertise than is within the ordinary range of training, knowledge, intelligence or experience, Miller v. Brass Rail Tavern, Inc., 541 Pa. 474, 481, 664 A.2d 525, 528 (1995). To be qualified to testify in a given field, a witness normally needs only to possess more expertise than is within the ordinary range of training, knowledge, intelligence or experience. Ordinarily, therefore, the test to be applied is whether the witness has a reasonable pretension to specialized knowledge on the subject matter in question. Id. at 480-481, 664 A.2d at 528. Under either Rule 702 or Pennsylvania law, Dr. McSharry is obviously qualified as an expert, aware of the professional standards with respect to medical matters and how an insurer should handle a claim for benefits under a policy.

Plaintiffs urge this Honorable Court to adopt the reasoning of the trial court in Bergman v. United Services Auto. Assoc., 1999 PA Super 300, 742 A.2d 1101 (1999) and of Judge Huyett in Kraeger v. Nationwide, 1997 U.S. Dist LEXIS 2726 (1997). Judge Huyett repeated the rule that

> In general, whether expert testimony is permitted depends on whether the expert's knowledge is likely to assist the trier of fact to arrive at the truth. F.R.E. 702; *Hines v. Consolidated Rail Corp., 926 F.2d 262, 272-73 (3d Cir. 1991)*. Testimony about how insurance claims are managed and evaluated and the statutory and regulatory standards to which insurance companies must adhere could be helpful to the jury in evaluating whether the claim in the instant case was handled in bad faith. . . . [The expert's] opinion, based upon his expertise and experience, that Defendant had no reasonable basis for its actions could be helpful to the jury.
>
> . . . Defendant claims that [the expert] is not qualified to testify as an expert in the area of bad faith insurance claim handling practices. The Court of Appeals for the Third Circuit has held "a broad range of knowledge, skills, and training qualify an expert as such" and has "eschewed imposing overly rigorous

251810.1\JLS\JLS                    10

requirements of expertise." *United States v. Velasquez, 33 V.I. 265, 64 F.3d 844 (3d Cir. 1995).*

      Defendant argues that Daubert restricts [the expert's] testimony. [The expert's] testimony is not 'scientific' or 'technical' pursuant to F.R.E. 702, but consists of 'specialized knowledge.' The factors listed in Daubert do not apply to this type of testimony. However, the rationale behind Daubert, that a foundation and relevance must be demonstrated for testimony to be admissible, remains true.

1997 U.S. Dist. LEXIS 2726, PP. 1-2.

Dr. McSharry qualifies. His testimony is relevant and his identification to defense was timely. McSharry's testimony is as relevant as manuals. The trier of fact can assess McSharry's credibility as it does every other witness's. <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993) is inapplicable to this analysis as Dr. McSharry's testimony does not involve application of scientific or quantitative testing. Dr. McSharry's testimony relates to the actual practices in evaluating disability claims at UNUM.

Contrary to Defendants' assertion in brief, the defendants in the consolidated deposition had ample opportunity to cross-examine Dr. McSharry. The deposition took 3 days and the transcript is 1045 pages long. Defense cross-examination of Dr. McSharry took two days and nearly 670 pages!

Plaintiff's counsel also intends to use Dr. McSharry's deposition in questioning and impeaching Defendants' witnesses involved in this case.

The McSharry article was brought to Plaintiff's attention by Plaintiff's expert Rose who has been supplied with Dr. McSharry's deposition and is presently preparing a supplemental report based upon same. Experts commonly rely on deposition testimony, such as Dr. McSharry's, in expressing opinions as to disability and bad faith.

**B.    The Social Security Benefits Award Is Admissible In This Proceeding.**

Contrary to Defendants' assertion, the Social Security Administration's Administrative Law Judge found, inter alia,

> 5.    The claimant retains the residual functional capacity to lift or carry and push or pull 2-3 pounds occasionally and no weight frequently, stand or walk 1 hour per 8-hour workday and sit 4 hours per 8-hour workday with a sit/stand option. Additionally, he is only able to engage in bending, stooping kneeling, climbing, crawling, or crouching on an occasional basis. Based on these limitations, the claimant retains the residual functional capacity for significantly less than the full range of sedentary work.

> 6.    The claimant is unable to perform the requirements of his past relevant work.

* * *

> 10.    The claimant has a skilled work background. However, considering the nature and extent of the claimant's functional limitations, it is reasonable to conclude that there are no occupations to which the claimant's acquired work skills could transfer.

* * *

> 12.    The claimant has been under a disability, as defined in the Social Security Act, since July 22, 2000 (20 CFR sec. 404.1520(f)

The ALJ concluded: "It is my decision that, based on the application protectively filed on April 24, 2001, the claimant is entitled to a period of disability commencing July 22, 2000, and to disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act." (p. 5) In reaching his conclusion, the ALJ considered only Mr. Mazzamuto's back and cardiac conditions, not Mr. Mazzamuto's anxiety. The ALJ had the benefit of Dr. Bower's evaluation of Mr. Mazzamuto: "I have given significant weight to the above-mentioned opinion dated April 16, 2002, of Dr. Bower finding the claimant unable to work . . . as it is supported by the clinical findings contained in the record as well as the degree of treatment required." (p. 3)

Under the terms of his disability policy, Mr. Mazzamuto need only be unable to "do the substantial and material duties of his . . . regular job." This is a far more liberal standard than Social Security's, as the ALJ also evaluated Mr. Mazzamuto's fitness for other work. Even so, the ALJ awarded Mr. Mazzamuto disability benefits. Admission of the Social Security Administration's decision is proper.

Defendants' reference to Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181 (1st Cir. 1998); Block v. Pitney Bowes, Inc., 952 F.2d 1450 (D.C. Cir. 1992); Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999); and Russell v. Paul Revere Life Ins. Co., 288 F.3d 78 (3d Cir. 2002) is inappropriate because each of these cases deal with appeals under ERISA where the courts were required to affirm where the findings were reasonable. None deal with the relevance of the Social Security Administration's determination or the factual issues of disability and/or bad faith.

### C. The Finding Of Total Disability Under New York Life's Policy Is Relevant And, Therefore, Relevant In The Instant Action

Defendant's argument about waiver of life insurance premiums based on Mr. Mazzamuto's disability is disingenuous. New York Life issued the income disability policy, New York Life has not paid benefits under the disability income policy and yet at the same time New York Life has waived the life insurance premiums based on Mr. Mazzamuto's disabled condition. The actions of New York Life are admissible. Gonyea v. John Hancock Mut. Life Ins. Co., 812 F. Supp. 445 (D. Vt. 1992) and Bucks v. Reliance Standard Life Ins. Co., No. 99-3398, 2000 U.S. App. LEXIS 11456 (6th Cir. May 12, 2000) again are ERISA cases, deal with issues such as "waiver" rather than relevance of such evidence and fail to hold that the finding of total disability by a defendant in a life insurance contract is irrelevant in a disability context.

### D. The Exchange Of Letters Between Counsel Is Admissible

An insurer's bad faith may continue through litigation. <u>Birth Center v. St. Paul Companies</u>, 567 Pa. 386, 787 A.2d 376 (2001); <u>O'Donnell v. Allstate Ins. Co.</u>, 1999 PA Super 161, 734 A.2d 901 (1999). Throughout the litigation, Plaintiff's counsel has requested payment of disability benefits based upon numerous facts and law, including the finding of total disability by the Social Security Administration and New York Life's definition of disability. New York Life's waiver of life insurance premium due to Mr. Mazzamuto's disability while denying disability income under the disability policy shows bad faith, and counsel's letter is evidence of that bad faith. So are similar letters.

Respectfully submitted,

ANGINO & ROVNER, P.C.

*[signature]*

Richard C. Angino, Esquire
I.D. No. 07140
4503 N. Front Street
Harrisburg, PA 17110
(717) 238-6791
Attorney for Plaintiff

Date: 10/15/02

## CERTIFICATE OF SERVICE

I, Joan L. Stehulak, Esquire, hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE** was served by United States first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA  19603-0679
    Counsel for Paul Revere Life Insurance Company and New York Life Insurance Company

_____
Joan L. Stehulak

Dated: 10/15/02