**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | |
| | : | |
| Plaintiff | : | Case No. 1:01-CV-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | |
| CORPORATION, PAUL REVERE | : | |
| LIFE INSURANCE COMPANY and | : | |
| NEW YORK LIFE INSURANCE | : | JUDGE CONNER |
| COMPANY, | : | |
| | : | |
| Defendants | : | |

FILED
HARRISBURG, PA

OCT 21 2002

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION IN LIMINE**

I.  **PROCEDURAL HISTORY**

Plaintiff alleges claims for bad faith, under 42 Pa. C.S.A. § 8371, and a breach of contract arising from the denial of his claim for disability benefits based on back and psychiatric conditions. Defendants UNUMProvident Corporation ("UNUMProvident"), The Paul Revere Life Insurance Company ("Paul Revere") and New York Life Insurance Company ("NYL") have filed a motion for summary judgment. Although this disability case involves questions about plaintiff's ability to function, plaintiff has filed a motion in limine to prevent the jury from hearing about the vast amount of stock trading he has been personally conducting while claiming it would be too stressful for him to return to work (even part-time) at his restaurant. Because this evidence it so plainly

1

relevant, defendants oppose plaintiff's motion and file this brief in support of their opposition.

## II. FACTUAL HISTORY

Defendants have filed a detailed summary judgment motion which reviews the facts of this case and, therefore, defendants incorporate the factual history from their summary judgment brief here and will review only those facts most critical to the current motion.

A critical issue in this case is whether plaintiff can satisfy his burden of proof under applicable law on "occupational" disability policies that provide both total and residual disability benefits. As defendants explained in their summary judgment papers, plaintiff must prove that he cannot perform any of the substantial and material duties of his occupation. No benefits are payable if plaintiff can perform some of the duties of his occupation but has not returned to work part-time.

Plaintiff claims he cannot work in his restaurant because of a combination of back and psychological problems. Plaintiff argues that the jury should not be allowed to hear of his extensive stock trading because he claims his "stock trading is not relevant as it cannot assist to establish or negate his back pain, anxiety or inability to perform the regular duties of his job as owner/operator of a pizza restaurant." (Plaintiff's Brief, p. 2).

As detailed in defendants' summary judgment papers (and addressed below), many of plaintiff's occupational duties involve executive and administrative duties which are sedentary in nature such as ordering supplies, preparing schedules and paying bills. Even plaintiff's physician, Dr. Bower, has conceded that if plaintiff's back was the only problem, he could perform the occupational duties he described to Paul Revere (i.e., 20% bookkeeping, 20% office duties and 60% supervising employees). [Summary Judgment Appendix, Exh. G at 54-57 and 59].

Instead, Dr. Bower, who is neither a psychiatrist nor a psychologist, has opined that plaintiff's biggest problem is his psychological stress and anxiety he has suffered following his heart attack. [Id. at 44]. As a result of this alleged stress, Dr. Bower claims plaintiff suffers from anxiety which is "unrelenting" and would "interfere with his concentration," and cause "difficulty with memory."[1] [Id. at 54-55].

Thus, Dr. Bower's testimony places squarely at issue plaintiff's ability to handle stress and to concentrate. Plaintiff's stock trading activity addresses these very points.

---

[1] Of course, none of these opinions have a valid basis under Daubert because the foundation is lacking. Instead of proper neuropsychological testing for cognitive deficits, plaintiff offers only the off-the-cuff opinion of his internist.

3

While plaintiff claims it is too stressful for him to do bookkeeping, pay bills and order supplies, he engaged in close to $6 million in stock trades in 2000 alone. [Summary Judgment Appendix, Exh. C at 49-51; App., Exh. I].[2] And while Dr. Bower opines (based on his views as an internist) that plaintiff would have difficulties with concentration and memory, plaintiff confirmed he made these investment decisions on his own, followed the market closely and made his trades by computer. [Exh. C at 49, 53-54]. Indeed, many stocks were held for as little as a day or two. [Id. at 49].

Plaintiff lost over $300,000 in 2000 and over $75,000 in 2001. [App., Exh. I]. While plaintiff claims that working at his restaurant is too stressful, he claims that losing this much money did not bother him and made him neither anxious nor angry. [App., Exh. C at 54]. This, of course, calls into question his position that he could not handle the alleged stress of tasks like ordering supplies for his restaurant.

Moreover, the sedentary nature of computer stock trading, coupled with the incredible volume of trading activity demonstrate that plaintiff has the ability to perform sedentary activities (like those he described for defendants in describing his occupational duties). In other words, plaintiff's stock trading is relevant because the activities he was performing while purchasing and selling

---

[2] Exhibit I contains the Schedule D from plaintiff's 2000 and 2001 individual tax returns.

4

stock are very similar to the activities that amounted to 80% of his job duties in the occupation of a restaurant owner.

### III. STATEMENT OF QUESTION PRESENTED

A. **WHETHER EVIDENCE OF PLAINTIFF'S STOCK TRADING IS RELEVANT IN DETERMINING WHETHER PLAINTIFF WAS CAPABLE OF PERFORMING THE ADMINISTRATIVE AND EXECUTIVE DUTIES OF HIS OCCUPATION?**

[Suggested Answer: Yes.]

### IV. ARGUMENT

A. **EVIDENCE OF PLAINTIFF'S STOCK TRADING IS RELEVANT, NOT PREJUDICIAL, AND ADMISSIBLE BECAUSE IT ESTABLISHES THAT PLAINTIFF WAS CAPABLE OF PERFORMING THE MATERIAL AND SUBSTANTIAL DUTIES OF HIS OCCUPATION.**

Rule 401 of the Federal Rules of Evidence states that relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." All relevant evidence is admissible unless specifically prohibited by another rule or by certain other grounds. Fed. R. of Evid. 402. As detailed below, the evidence is plainly relevant and no exception to admissibility applies here.

#### 1. Evidence Of Post-Disability Activities Is Relevant

At the outset, it is important to recognize that the basic question presented in this case, like most other disability claims, is not whether plaintiff has

5

a particular diagnosis, but rather whether plaintiff has restrictions and limitations ("R&Ls") that prevent him from performing his occupational duties. Unlike other types of insurance (like health benefits), disability insurance does not pay benefits based on a diagnosis alone. Rather, disability benefits are payable when the diagnosed condition results in R&Ls that sufficiently limit the ability to perform the relevant occupational duties. E.g., Cini v. Paul Revere Life Ins. Co., 50 F. Supp. 2d 419 (E.D. Pa. 1999)(granting summary judgment where diagnosis was not contested but condition did not impose R&Ls sufficient to preclude occupational activities).

Because the focus is necessarily on the claimant's functional ability, courts have routinely found that evidence of activities the plaintiff engages in after claiming to be disabled is relevant evidence. Indeed, at least two disability cases decided by the Third Circuit expressly referred to such evidence in evaluating the claim.

Most recently, this issue was addressed in Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392, 404 (D. Del. 2001), aff'd, 288 F.3d 78 (3d Cir. 2002), a case involving both an ERISA policy and an individual disability policy. The District Court held that the decision to deny the claim was properly supported by reference to the plaintiff's post-disability claim activities:

> The Court finds that hunting, albeit undertaken intermittently, requires a level of exertion equal to or greater than that required by any of Russell's important

6

> sedentary job duties. In addition, surveillance of errand running (to gun shops, among other places), loading and unloading of luggage of various sizes, and participation in a computer class of several hours in duration, also tend to call into doubt the severity of Russell's disabling condition.

148 F. Supp. 2d at 409. Significantly, the Third Circuit affirmed the District Court's opinion and specifically referenced the District Court's consideration of "Russell's admitted level of participation in non-job related activities as inconsistent with a finding of total disability." 288 F.3d at 81.

The Third Circuit also addressed the issue of whether post-disability activities are relevant in Orvosh v. Program of Group Insurance for Salaried Employees of Volkswagen of America, Inc., 222 F.3d 123 (3d Cir. 2000). There, the Court affirmed a decision to deny benefits based on, among other things, evidence that after claiming disability, the plaintiff continued to engage in activities like cleaning dishes, cooking, household cleaning, walking his dog, hunting and driving his wife home from work. 222 F.3d at 127.

Other courts have also held that post-disability claim activities are relevant and properly considered when evaluating a plaintiff's disability claim. In Rowan v. UNUM Life Insurance Company of America, 119 F.3d 433 (6th Cir. 1997), the Court reversed the District Court's entry of summary judgment for the plaintiff finding that disputed issues of material fact about a continuing disability precluded summary judgment. The Court specifically held that surveillance of

7

post-disability claim activities that was inconsistent with plaintiff's claimed R&Ls was relevant (although not determinative). Id. at 436-437.

The same conclusion was reached in Piscottano v. Metropolitan Life Insurance Company, 118 F. Supp. 2d 200 (D. Conn. 2000), where the plaintiff claimed she was disabled from a history of back problems. Plaintiff's claim for continued benefits was denied after MetLife uncovered evidence of post-claim activities (including two political campaigns and raising five children) that was inconsistent with the claim of disability. The court granted summary judgment in favor of MetLife holding, among other things, that "[e]vidence of physical activity that appears inconsistent with a finding of total disability by a treating physician, such as the surveillance tapes involved here, while not dispositive, is nonetheless relevant for the administrator to consider." Id. at 214.

Contrary to plaintiff's motion in limine, the applicable case law, including two Third Circuit cases, therefore confirms that evidence of plaintiff's post-claim activities is relevant.

### 2. Plaintiff's Stock Trading Is Relevant Because It Undermines His Claim

One of the issues in this case is whether plaintiff can perform any of the substantial and material duties of his occupation. As detailed in defendants' summary judgment papers, because the policy provides for both total and partial disability benefits, plaintiff's burden of proof under Russell is to show that he

8

cannot perform any of his occupational duties. 288 F.3d at 82. Further, the mandate of Russell provides that no benefits are payable if plaintiff can perform some of the duties of his occupation (such as bookkeeping and office duties), but does not return to work part-time. Indeed, the Russell Court could not have been clearer: "As for benefits on partial disability, they are not payable unless the insured is working." 288 F.3d at 82.

It is undisputed that a large portion of the substantial and material duties of plaintiff's occupation were executive and administrative. Consistent with Federal Rule of Evidence 401, evidence of plaintiff's stock trading has a tendency to make it more probable that he was capable of performing the administrative and executive duties of his occupation. It also undermines (or makes "less probable") plaintiff's claims that anxiety and resulting problems with memory and concentration prevent him from performing his occupational duties. Thus, the evidence is relevant.

### Plaintiff's Occupational Duties

There is no question that a material and substantial part of plaintiff's occupational duties involved sedentary tasks not dissimilar from (and indeed less demanding than) computer stock trading. For example, when plaintiff applied for the NYL policy in 1993, he stated that his occupation as "President of First Class Restaurant." [Summary Judgment Appendix, Exhibit B at 330]. In the application, plaintiff described his duties as "executive, office duties only." [Id.].

SL1 300068v1/10305.060

When plaintiff later applied for disability benefits after two slip and fall incidents in 1996, he listed his important duties as "manage employees, work schedules, book work, deal with food companies, phone, and administration and office duties." [Id. at 42-43].

When plaintiff submitted his current claim form, he described the duties of his occupation at the time of his disability as "executive – 50%" and "office – 50%." [Id. at 549]. Plaintiff further described his occupation as President and that his duties were 50% executive duties and 50% office duties. [Id. at 547-48].

He also described his occupational duties as involving 40 hours a week with 50% of his time supervising employees, 25% of his time spent in bookkeeping, and 25% in other office duties. [Id. at 540].

Plaintiff also claimed that he had to sit for a total of 3.5 hours, stand for a total of 3.5 hours and walk for a total of 1 hour. [Id. at 539]. At that time, plaintiff certified that all of his answers were complete and true. [Id. at 539].

In his deposition testimony, plaintiff confirmed that the restaurant has a room with a desk where he handles paperwork like ordering supplies. [Summary Judgment Appendix, Exhibit C at 9-11]. This room also has a window from which plaintiff can observe customers and his employees. [Id. at 10, 81]. Plaintiff described a typical day in which he would welcome customers, operate the cash

SL1 300068v1/10305.060

register, pay bills, order supplies, and take food orders from customers. [Id. at 17-19].

Plaintiff testified that he would rarely, such as once a month, have to seat a customer at a table. [Id. at 18]. Plaintiff further confirmed that he only had to fill in cooking "once a month maybe, once every two months" if an employee did not show up. [Id. at 19].

For the purposes of this motion, the Court can accept plaintiff's certified statements contained in his claim forms that he spends 50% of his time supervising employees, 25% of his time engaged in bookkeeping and 25% in other office duties. The Court could also accept as true plaintiff's deposition testimony regarding his job duties. It simply does not matter which evidence the Court accepts as true (for purposes of this motion) because in either event it is obvious that a significant portion of his material and substantial duties are administrative or executive. Therefore, the pertinent issue is whether Plaintiff's stock trading activities tends to establish the capacity to perform the administrative or executive duties of his occupation.

### Plaintiff's Stock Trading Proves He Has Capacity To Perform Many Of His Occupational Duties

While plaintiff claims it is too stressful for him to do bookkeeping, pay bills and order supplies, he engaged in close to $6 million in stock trades in 2000 alone. [Summary Judgment Appendix, Exh. C at 49-51; App., Exh. I]. And while Dr.

11

Bower opines (based on his views as an internist) that plaintiff would have difficulties with concentration and memory, plaintiff confirmed he made these investment decisions on his own, followed the market closely and made his trades by computer. [Exh. C at 49, 53-54]. The fact that plaintiff held many of the stocks for as little as a day or two proves that he was very focused and concentrating heavily on his stock portfolio (rather than performing his duties at the restaurant). [Id. at 49]. This evidence is therefore relevant because it makes less probable Dr. Bower's opinion about problems with anxiety, concentration and memory. Piscottano, 118 F. Supp. 2d at 214 ("Evidence of physical activity that appears inconsistent with a finding of total disability by a treating physician ...while not dispositive, is nonetheless relevant for the administrator to consider.").

Plaintiff lost over $300,000 in 2000 and over $75,000 in 2001. [App., Exh. I]. While plaintiff claims that working at his restaurant is too stressful, he claims that losing this much money did not bother him and made him neither anxious nor angry. [App., Exh. C at 54]. The jury should be allowed to weigh plaintiff's position that tasks like ordering food supplies for his restaurant is too stressful against his concession that day trading of $6 million dollars in transactions, and losing close to $400,000, did not cause him anxiety.

Moreover, the sedentary nature of computer stock trading, coupled with the incredible volume of trading activity demonstrate that plaintiff has the ability to perform sedentary activities (like those he described for defendants in

12

describing his occupational duties). In other words, plaintiff's stock trading is relevant because the activities he was performing while purchasing and selling stock are very similar to the activities that amounted to 80% of his job duties in the occupation of a restaurant owner.

In short, this evidence of stock trading is relevant because it has a tendency to establish that plaintiff is capable of the executive and/or administrative duties and, of course, these facts are of consequence to the determination in this action. <u>Russell</u>, 288 F.3d at 82 ("As for benefits on partial disability, they are not payable unless the insured is working."). Rule 401 is therefore satisfied.

### 3. There Is No Basis For Exclusion Under Rule 403.

Plaintiff argues that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or is misleading to the jury. But there is no danger of unfair prejudice and confusion of the issues. And any minimal danger is substantially outweighed by the probative value of the evidence which (a) shows plaintiff can perform sedentary tasks; (b) undermines his physician's claims that plaintiff has problems with concentration and memory; and (c) undermines plaintiff's position that working at the restaurant would be too stressful.

First, there would be no confusion. Rather, the jury would hear about plaintiff's activities after claiming to be disabled and could evaluate those activities

13

against his claims of disability. This goes to very heart of what the jury should do in determining whether plaintiff is disabled.

Next, plaintiff never directly identifies the basis for the alleged prejudice but it appears that he is afraid that if the jury hears how much money he has lost, they will conclude that he is wealthy and be less inclined to award his disability benefits. [Plaintiff's motion at ¶ 21]. More likely, however, is that the jury will question whether plaintiff would rather receive disability benefits (that greatly exceed the salary he took from his restaurant) to make up for his investment losses. This sort of credibility issue may be prejudicial to plaintiff's claim, but it is certainly not "unfairly" prejudicial and any prejudice is outweighed by the undeniable probative value of the evidence.

SL1 300068v1/10305.060

## V. CONCLUSION

Based upon the above, the defendants respectfully request that plaintiff's motion in limine to exclude evidence of plaintiff's stock trading be denied.

Dated: October 21, 2002

STEVENS & LEE

By *E. Thomas Henefer*
E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants

SL1 300068v1/10305.060

## CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Defendants' Brief in Opposition to Plaintiff's Motion in Limine upon the following counsel of record, by hand delivery addressed as follows:

>Richard C. Angino, Esquire
>Angino & Rovner, P.C.
>4503 N. Front Street
>Harrisburg, PA  17110

*[signature: E. Thomas Henefer]*

Date:  October 21, 2002

SL1 300068v1/10305.060