# ORIGINAL

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO, <br> Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION; PAUL REVERE LIFE INSURANCE COMPANY; and NEW YORK LIFE INSURANCE COMPANY <br> Defendants | JUDGE CONNER <br><br> JURY TRIAL DEMANDED |

**FILED**
**HARRISBURG, PA**

OCT 2 9 2002

MARY E. D'ANDREA, CLE
Per _____
Deputy Clerk

### PLAINTIFF'S COUNSEL'S AFFIDAVIT IN SUPPORT
### OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AND IN RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | S.S. |
| COUNTY OF DAUPHIN | : | |

I, Richard C. Angino, depose and say that:

1.    Plaintiff and Defendants have filed cross Motions for Summary Judgment.

2.    In support of Plaintiff's Motion for Summary Judgment and in opposition to Defendants' Motion for Summary Judgment and as "evidence" for trial, Plaintiff's counsel has ordered a "day in the life" film depicting the requirements of Plaintiff's job.

3.    This video is relevant both in support of Plaintiff's Motion for Summary Judgment and in opposition to Defendants' counter motion and also as "evidence" at trial.

4.    Defendants have taken the position that Mr. Mazzamuto is not disabled in terms of the policy language and have persisted in that position to the present on the basis of certain language provided in Mr. Mazzamuto's original policy application and claim application while

ignoring other language in Mr. Mazzamuto's application that Mr. Mazzamuto has to stand almost all the time at his job.

5.    Defendants have persisted in their position without assigning anyone the task and/or ignoring any information whatsoever as to the basic day-to-day requirements of Mr. Mazzamuto's job.

6.    Defendants have persisted in their position in the face of contradictory testimony from Mr. Mazzamuto, Mrs. Mazzamuto, Mr. Mazzamuto's family physician, the unequivocal medical records, and the finding of total disability by the Social Security Administration and Defendant New York Life with respect to Mr. Mazzamuto's life insurance policy.

7.    Plaintiff's counsel has time and time again written to defense counsel asserting that Defendants intransigent position is unequivocal bad faith.  Copies of other letters in this regard are attached as **Exhibit A.**

8.    Plaintiff's counsel has supplied defense counsel with two copies of the day-in-the-life film, one for himself and one for his physician, as well as a copy of this Affidavit and a letter again emphasizing Defendants' bad faith.  Copy of letter is attached as **Exhibit B**.  Copy of video is attached as **Exhibit C**.

_____
Richard C. Angino, Esquire

Sworn to and subscribed
before me this 29th day of
October, 2002

_____
Notary Public

My Commission Expires:

Notarial Seal
Tiffany M. Patrick, Notary Public
City Of Harrisburg, Dauphin County
My Commission Expires Dec. 12, 2005
Member, Pennsylvania Association Of Notaries

## CERTIFICATE OF SERVICE

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing

**PLAINTIFF'S COUNSEL'S AFFIDAVIT IN SUPPORT OF PLAINTIFF'S MOTION**

**FOR SUMMARY JUDGMENT AND IN RESPONSE TO DEFENDANTS' MOTION FOR**

**SUMMARY JUDGMENT** was served by United States first-class mail, postage prepaid, upon

the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA 19603-0679
     Counsel for Paul Revere Life Insurance Company and New York Life Insurance
     Company


                                                  Richard C. Angino

Dated: 10/29/02

*A*

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA  17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:    RCA@ANGINO-ROVNER.COM

| | |
|---|---|
| RICHARD C. ANGINO | MICHAEL E. KOSIK |
| NEIL J. ROVNER | RICHARD A. SADLOCK |
| JOSEPH M. MELILLO | JOSEPH M. DORIA |
| TERRY S. HYMAN | JAMES DECINTI |
| DAVID L. LUTZ | JOAN L. STEHULAK |

October 9, 2002

**VIA FAX**

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

        Re:    *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

        I am writing to you to make our negotiation position unequivocally clear.  We will accept $5.0 million in total settlement of both our disability claim and our bad faith action provided that your clients accept this offer within thirty (30) days of the date of this letter.

        In the alternative, your clients can and should pay disability benefits owed, plus interest, plus the premium payments which Mr. Mazzamuto has made over the past 2-1/2 years.  We would request that you recalculate the loss to date with "the date" November 8, 2002.

                                Very truly yours,

                                *Richard C. Angino (sc)*

                                Richard C. Angino

RCA/sc
DICTATED BUT NOT READ

251872.1\RCA\SC

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:    RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO          MICHAEL E. KOSIK
NEIL J. ROVNER          RICHARD A. SADLOCK
JOSEPH M. MELILLO          JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DeCINTI
DAVID L. LUTZ          JOAN L. STEHULAK

August 19, 2002


**VIA FAX**

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

      Re:   *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

      Enclosed is letter dated August 15, 2002, from New York Life to Mr. Mazzamuto reapproving his claim for waiver of premium disability benefits beyond August 3, 2002.

          All future premiums will be waived while you are totally disabled, as defined in your policy.

      New York Life's denial of disability benefits under the disability policy, while approving waiver of premium disability benefits under New York Life's policy, will certainly be considered by the jury as being "bad faith" of a type that should result in substantial punitive damages. Your filing a Motion for Summary Judgment, as well as your Motion in Limine constitute additional acts of bad faith. You have not filed any statement of undisputed facts. You yourself admit by your filing a Statement of Facts rather than a statement of undisputed facts that the selected facts you reference are not undisputed. Your briefs appear to be form briefs reproduced from other bad faith cases that have nothing at all to do with the facts and circumstances of this case. Challenging the qualifications of a treating internist under circumstances where the insurance carriers sent medical statements to the internist for him to complete is unbelievable. If your carriers felt that Dr. Bower was not qualified to express an opinion, why didn't they tell their insured that at the beginning and why did they continue to send requests for physicians statements for two years? If Dr. Bower, a board certified internist, is unqualified to express an opinion, what makes your carriers' in-house staff and Dr. Clarke qualify. Why was Mr. Mazzamuto never referred to a "qualified" orthopedist or a "qualified" psychiatrist?

249390.1\RCA\SC

E. Thomas Henefer, Esquire
August 19, 2002
Page 2


You may tell your carriers that they have ten days and ten days only to pay what they owe. After ten days, I am going to request that the Court impose sanctions for your frivolous filings.

Very truly yours,

Richard C. Angino

RCA/sc
Enclosure
cc:   Gordon K. Rose

249748.1\RCA\SC

 NEW YORK LIFE INSURANCE COMPANY
NEW YORK LIFE INSURANCE COMPANY AND ANNUITY CORPORATION
(A DELAWARE CORPORATION)
NYLIFE INSURANCE COMPANY OF ARIZONA
(Not licensed in Every State)
PO BOX 6916, CLEVELAND OH 44101, (800) 695-9873
*The Company You Keep*

August 15, 2002

Vincenzo Mazzamuto
501 Limestone Rd
Carlisle PA 17013

Policy: 44 904 932
Claim: 368 799

Dear Mr.Mazzamuto:

Thank you for sending us the information we requested. I am pleased to advise you that we have re-approved your claim for Waiver of Premium Disability Benefits beyond August 3, 2002.

A check for the refund of the August 2002 Annual premium has been sent under separate cover. All future premiums will be waived while you are totally disabled, as defined in your policy.

Please let us know if you return to work or if your total disability ends. If you have any questions regarding this claim, please let me know.

Sincerely,

Therese A. Sindelar
Ext 8724

cc: Salvatore Ferrigno V44
    Richard C Angino

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:   RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO          MICHAEL E. KOSIK
NEIL J. ROVNER      RICHARD A. SADLOCK
JOSEPH M. MELILLO          JOSEPH M. DORIA
TERRY S. HYMAN              JAMES DECINTI
DAVID L. LUTZ            JOAN L. STEHULAK

July 16, 2002

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

     Re:   *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

     You will note from our expert's reports that he continues to reference the applicable policy's definition of disability – "cannot do the substantial and material duties of his or her regular job." Your carrier has ignored the policy's definition and seeks to add a new definition. The tenor of the depositions which you have taken, the questions that you have asked, the testimony given by your clients' employees, and your experts' reports all ignore the insurance policy's definition of disability. I have to periodically remind myself that this is not a case requiring an employer to accommodate a disabled employee, but rather a case of a worker who bought insurance and who can't do the job as he did it before because of disabling injuries and/or degenerative disk disease. Unless your carrier promptly admits responsibility, I will be forced to file a motion for partial summary judgment based upon the insurance policy's definition of disability and your inability to produce evidence that Mr. Mazzamuto is not disabled under the terms of the insurance policy. Since the interpretation of an insurance contract is a question of law, it is appropriate for summary judgment. Please give me your carrier's position on this issue within the next week to avoid the time and expense of filing the appropriate motion.

     Thank you.

Very truly yours,

Richard C. Angino

RCA/sc

248311.1\RCA\SC

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:   RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO          MICHAEL E. KOSIK
NEIL J. ROVNER          RICHARD A. SADLOCK
JOSEPH M. MELILLO          JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DECINTI
DAVID L. LUTZ          JOAN L. STEHULAK

July 9, 2002

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

Re:    *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

I am writing this letter separate and apart from my letter responsive to your July 3, 2002, letter because of its negotiation nature and the Federal Rules of Evidence pertaining to such communications.

The issues that will be presented at trial include:

(1)    Mr. Mazzamuto's disability or inability to work as per his disability insurance contract;

(2)    If the jury finds that Mr. Mazzamuto is disabled, UNUM's "bad faith" in initially contesting Mr. Mazzamuto's disability claim and/or bad faith in persisting in denying the claim;

(3)    UNUM's bad faith in its investigation of Mr. Mazzamuto's claim;

(4)    UNUM's bad faith in claims handling;

(5)    Assuming bad faith, the compensation issues of interest, attorney's fees, and punitive damages.

It is clear that an insurer must accord the interest of its insured the same faithful consideration it gives its own interest. <u>Cowden v. Aetna Cas. & Sur. Co.</u>, 389 Pa. 459, 134 A.2d 223, 227-228 (1957). <u>Also see</u>, <u>Gray v. Nationwide Mut. Ins. Co.</u>, 422 Pa. 500, 223 A.2d 8 (1966); <u>Dercoli v. Pennsylvania Nat. Mut. Ins.</u>, 520 Pa. 471, 554 A.2d 906 (1989):  "the utmost fair dealing should characterize the transactions between an insurance company and the insured." <u>Fedas v. Insurance Company of State of Pennsylvania</u>, 300 Pa. 555, 151 A. 285 (1930).

The Third Circuit in <u>Polselli v. Nationwide Mut. Fire Ins. Co.</u>, 126 F.3d 524 (3d Cir. 1997) summarizes the law of "bad faith".  <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230 (3d Cir. 1997), a case that I argued, states that an insurance company can be held to be guilty of "bad faith" it lacks a reasonable basis for refusing to pay its insureds. <u>Romano v. Nationwide Mut. Fire Ins. Co.</u>, 435 Pa. Super. 545, 646 A.2d 1228

E. Thomas Henefer, Esquire
July 9, 2002
Page 2

(1994) is particularly important precedent with respect to the utilization of the violations of the Unfair Insurance Practices Act (UIPA).  40 P.S. §1171, particularly 40 P.S. §1171.5(a)(10) as evidence of bad faith.

> Insurance.  "bad faith" on the part of an insurer is any frivolous or unfounded refusal to pay proceeds of a policy.

*Black's Law Dictionary*, 139 (6th Ed. 1990).  Also, 3 Appelman *Insurance Law and Practice*, §1612 at 368 (1967 & Supp. 1991) (bad faith means a frivolous or unfounded refusal to pay, lack of good faith investigation into fact, and failure to communicate with the claimant).  Also see, 1 Pa.C.S.A. §1921 (vii prohibits insurers from "[c]ompelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount due and ultimately recovered in actions brought by such persons.... We find that the rules of statutory constructions permit a trial court to consider either *sua sponte* or upon the request of a party, the alleged conduct constituting violations of the UIPA or the regulations in determining whether an insurer like Nationwide acted in bad faith."  Romano, 646 A.2d at 1232-1233.

There are various provisions of UIPA which may apply in the instant case:

(i)     Misrepresenting pertinent facts or policy or contract provisions related to coverage at issue.

(ii)    Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.

* * *

(iv)    Refusing to pay claims without conducting a reasonable investigation based upon all available information.

* * *

(vi)    Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

(vii)   Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons.

40 P.S. §1171.5

Also see, possible violations of the Insurance Department Regulations, 31 Pa. Code §146.1:

E. Thomas Henefer, Esquire
July 9, 2002
Page 3

### § 146.1. Scope.

This chapter defines certain minimum standards...

### § 146.7. Standards for prompt, fair and equitable settlements applicable to insurers.

    (a)    <u>Acceptance or denial of a claim shall comply with the following</u>:

        (1)    <u>Within 15 working days</u> after receipt by the insurer of properly executed proofs of loss, the first-party claimant <u>shall be advised of the acceptance or denial of the claim by the insurer</u>. An insurer may not deny a claim on the grounds of a specific policy provision, condition or exclusion unless reference to the provision, condition or exclusion is included in the denial. The denial shall be given to the claimant in writing and the claim file of the insurer shall contain a copy of the denial.

* * *

    (b)    If a claim is denied for reasons other than those described in subsection (a) and is made by any other means than writing, an appropriate notation shall be made in the claim file of the insurer.

31 Pa. Code §§146, <u>et seq</u>.

On March 9, 1999, the Superior Court in <u>Birth Center v. St. Paul Companies, Inc.</u>, 727 A.2d 1144 (Pa. Super. 1999) held that an insurance company could be held liable under Section 8371 for a position which it <u>initially took in 1986 and "adhered to</u> throughout the remaining six years of the Norris case litigation." <u>Birth Center</u>, 727 A.2d at 1149.

The Superior Court said the following as to an insurance company's duties with respect to settlement:
> [A] decision not to settle must be a thoroughly honest, intelligent and objective one. It must be a realistic one when tested by the necessarily assumed expertise of the company. This expertise must be applied, in a given case, to a consideration of *all the factors* bearing upon the advisability of a settlement for the protection of the insured. *While the view of the carrier or its attorney as to liability is one important factor, a good faith evaluation requires more.* It includes consideration of the anticipated range of a verdict, should be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness, and likely appeal of the claimant, the insured, and the witnesses at trial.

*Shearer, supra* at 638 (citations omitted) (emphasis in original). *Accord Brown, supra; Hall, supra.* The *Shearer* standard compels an insurer <u>to make an intelligent and objective appraisal of the case by considering all the factors bearing upon the advisability of settlement</u>.

E. Thomas Henefer, Esquire
July 9, 2002
Page 4


<u>Birth Center</u>, 727 A.2d at 1155-1156 (emphasis supplied).  <u>See</u>, "Bad Faith Cases."

Although <u>Birth Center</u> involved an insured defendant in a third-party liability case, the Superior Court made it clear that Section 8371 which went into effect on July 1, 1990, applied.  <u>Birth Center</u>, 727 A.2d at 1157, <i>et seq.</i>  Pre-1990 history was relevant and St. Paul was liable for post-1990 bad faith statute actions.  A carrier must continue to re-evaluate its position following the passage of time, changed circumstances, additional information, recommendations from its attorney, etc.

The Superior Court in <u>O'Donnell v. Allstate Insurance Co.</u>, 734 A.2d 901, 1999 Pa. Super. 161 (1999). considered as a matter of first impression an insurance company's "bad faith" actions following a lawsuit.  The Superior Court held:

> ¶ 12  It is well settled that an insurer is obligated to act in good faith and fair dealing with its insured.  See <i>Kilmore v. Erie Ins. Co.</i>, 595 A.2d 623, 626 (Pa. Super. 1991), appeal denied, 529 Pa. 664, 604 A.2d 1030 (1992).  However, in <i>D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.</i>, 494 Pa. 501, 431 A.2d 966 (1981), our Supreme Court noted that "[a]lthough the seriousness of **'bad faith'** conduct by insurance carriers cannot go unrecognized," id. at 505, 431 A.2d at 969, a judicially created cause of action is unnecessary since the provisions of the Uniform Insurance Practices Act **(UIPA)**, enforced by the state Insurance Commissioner, are sufficient to deter **bad faith** conduct.  <i>Id.</i> at 507, 431 A.2d at 970.

* * *

> ¶ 15  Generally, success in bringing a claim of **bad faith** requires the insured to present clear and convincing evidence that "the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim." <i>MGA Ins. Co. v. Bakos</i>, 699 A.2d 751, 754 (Pa. Super. 1997).  <u>It is now clear, however, that section 8371 is not restricted to an insurer's **bad faith** in denying a claim.  An action for **bad faith** may also extend to the insurer's investigative practices.</u>

> <u>... Specifically, our Court noted that conduct which constitutes a violation of the **UIPA** may also be considered when determining whether an insurer acted in **bad faith** under the statute.</u>  <i>Id.</i>  See 40 P.S. 1171.5  **(UIPA--Unfair methods of competition and unfair or deceptive acts or practices defined).**  For example, under the **UIPA**, unfair claim settlement or compromise practices includes <u>"[d]elaying investigation or payment of claims by requiring the insured ... to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information."</u>  <i>40 P.S. § 1171.5(10)(xii).</i>

> ¶ 17  The few cases from this Commonwealth which address the applicability of section 8371 have arisen either from conduct of the insurer prior to litigation or its conduct following the entry of an arbitration or appraisal award.  See, <i>e.g., MGA Ins. Co.</i>, 699 A.2d at 754 (challenging trial court's award of attorney's fees pursuant to finding that insurer acted in **bad faith** in petitioning

E. Thomas Henefer, Esquire
July 9, 2002
Page 5

to vacate/modify an arbitration award); Terletsky, 649 A.2d at 688 (alleging that insurer's low settlement offers prior to the uninsured motorists arbitration were indicative of bad faith); Romano, 646 A.2d at 1230 (demanding counsel fees for **bad faith** where insurer refused to pay full amount of umpire's award stemming from an appraisal provision of insurance contract, thereby forcing insured to hire counsel to file suit to enforce award). However, Appellant argues that "[g]iven the expanding applicability of the **bad faith** statute it is now clear ... that **bad faith** suits are not restricted to the denial of claims," but, rather, may extend to the misconduct of an insurer during the pendency of litigation. (Appellant's Brief at 15). We agree.

¶ 18  Our rules of statutory construction dictate that generally "provisions of a statute shall be liberally construed to effect their objects and to promote justice." *1 Pa.C.S.A. § 1928(c)*. The plain language of the section 8371 clearly reveals the lack of any restrictive language limiting the scope of **bad faith** conduct to that which occurred prior to the filing of a lawsuit. By enacting this statute, the legislature specifically responded to our Supreme Court's refusal to create a common law remedy, *see D'Ambrosio, supra*, and implicitly rejected the Court's conclusion that the provisions of the **UIPA** are sufficient to define and deter **bad faith** conduct by insurers. Therefore, we find that the broad language of section 8371 was designed to remedy all instances of **bad faith** conduct by an insurer, whether occurring before, during or after litigation. In so finding, we refuse to hold that an insurer's duty to act in good faith ends upon the initiation of suit by the insured.

¶ 19  Over six years ago, in *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104 (E.D. Pa. 1992), the federal district court attempted to predict the course of Pennsylvania law on this very issue. There, the insured brought an action against Continental to recover the proceeds of her deceased husband's life insurance policy, raising, *inter alia*, a claim for **bad faith** pursuant to section 8371 for conduct of the insurer during the pendency of litigation. [FN6] Continental filed a motion in limine claiming the evidence of **bad faith** was precluded since "there is no evidence that the drafters of section 8371 intended the tort of **bad faith** to apply to the conduct of an insurer in the litigation arena." *Id.* at 1109. The court denied the motion in limine, reasoning that there was nothing in Pennsylvania caselaw or section 8371 itself which either suggested or held that the statute is limited to pre-litigation conduct. Rather, the court concluded that such a narrow construction of section 8371 "runs counter to [the] rule of liberal statutory construction and would defeat, rather than effectuate, the purpose of the statute, and would hinder, rather than promote, justice." Id. at 1110.  ¶ 20 We find the reasoning of *Rottmund* persuasive and, for the reasons set forth above, we now hold that the conduct of an insurer during the pendency of litigation may be considered as evidence of **bad faith** under section 8371.

O'Donnell, 1999 Pa. Super. 161, ¶¶ 11, 12, 15, 16, 17, 18, 19, 20 (emphasis supplied).

The Supreme Court of Idaho at the end of 2000 decided a case that has been subject to nationwide discussion in "bad faith" circles. Robinson v. State Farm Mut. Auto. Ins. Co., 2000 WL 1877745 (S. Ct. of Idaho Dec. 28, 2000).

Robinson involved a first-party claim arising from an automobile accident:

E. Thomas Henefer, Esquire
July 9, 2002
Page 6

While she experienced no immediate symptoms, Robinson later began to notice pain in her back and within a few days sought medical attention. Robinson was treated conservatively in January and early February and was eventually diagnosed as having a herniated disc for which she underwent surgery in February 1992.

Robinson reported the incident to State Farm in April 1992, and requested payment of the medical bills under the MPC provision of her policy. After an initial review, State Farm paid $1,662 of pre-surgery medical bills in July of 1992, but declined to pay any bills related to the surgery due to questions over causation.

State Farm sent Robinson's file to Medical Claims Review Service (MCRS), a medical records review company on State Farm's list of approved reviewers, asking for an opinion as to whether Robinson's herniated disc was causally related to the January 17 incident. State Farm routinely used the paper review services provided by MCRS in lieu of conducting more costly independent medical exams. MCRS issued a report to State Farm indicating that its review of the medical documentation did not support a causal relationship between the January 17 incident and the subsequent medical care for disc herniation.

Robinson was subsequently examined by a physician chosen by State Farm and a forensic chiropractor of her choosing. The results of both exams were sent to MCRS who again indicated a lack of causal relationship with the automobile incident. Based upon the review by MCRS, State Farm denied Robinson's claim for the surgery.

* * *

In March 1995, Robinson's claim was reassigned to another claim representative. After review of her medical records by an orthopedic surgeon indicated a causal relationship between her injuries and the automobile incident, State Farm paid the remaining limits of Robinson's policy to her medical care providers.

At trial, Robinson introduced evidence that State Farm had engaged in a practice of referring claims to MCRS and other paper review companies, knowing that these companies would return a review favorable to State Farm. In addition, evidence was presented that State Farm failed to conduct a reasonable investigation of Robinson's claim prior to denying payment under the policy …

The jury returned a verdict in favor of Robinson, finding that State Farm had breached its insurance contract with Robinson, that it had acted in bad faith in delaying payment of Robinson's claim, and that its acts or omissions warranted the imposition of punitive damages. Damages were assessed at $102,250 compensatory and $9,500,000 punitive.

Robinson, 2000 WL 1877745 at *1.

E. Thomas Henefer, Esquire
July 9, 2002
Page 7

The Idaho Supreme Court specifically discussed the issues of burden of proof, and the reasonableness of the punitive damage award.

Idaho like Pennsylvania recognizes the existence of a claim for first-party insurer bad faith separate from the insured's contract claim. The Idaho Supreme Court noted that the relevant inquiry into whether an insurer has acted in bad faith to an insured is a question of "reasonableness under the circumstances of the case."

...[T]he insured must show the insurer "<u>intentionally and unreasonably denies or delays payment</u>."

\* \* \*

Liability to a plaintiff who has made out a prima facie case for first-party bad faith may be avoided by an insurer who can demonstrate the validity of the insured's claim was reasonably in dispute and therefore fairly debatable or the delay was the result of an honest mistake. Therefore, whether a first-party claim is fairly debatable <u>is an affirmative defense available for an insurer to offer in first-party bad faith cases</u>.

\* \* \*

It would be unwise for the law to impose the burden of proving an insurer's intent on the insured as State Farm suggests. In cases of bad faith insurance claims it would be difficult for the insured to prove the insurer's state of mind concerning claim denial or payment. Therefore, the fairly debatable assertion is more appropriately <u>an affirmative defense</u> of the insurance company, since it possesses the facts regarding its own claim-handling policies and practices. (emphasis supplied)

<u>Robinson</u>, 2000 WL 1877745 at \*5.

There are numerous cases dealing with attorney's fees and cost of litigation. <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989); <u>Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161 (3d Cir. 1973); <u>In Re Fine Paper</u>, 751 F.2d 562 (3d Cir. 1984); <u>The Birth Center v. The St. Paul Companies, Inc.</u>, 727 A.2d 1155 (Pa. Super. 1999).

The Third Circuit created a task force which recommended changes to implement factors. Multipliers continue to be used, and where appropriate, percentages have been used even in fee shifting cases. <u>Newberg on Class Actions</u>, 3d Ed. Vol. 3 (December 2000 Cumulative Supplement).

The use of the term "attorneys' fees" has been held to include paralegal time. <u>Missouri v. Jenkins</u>, 109 S. Ct. 2463 (1989). <u>Also see</u>, <u>Churchill v. Star Enterprises</u>, 1998 WL 254080 (1998); <u>Zeffiro v. First Pennsylvania Bank</u>, 581 F. Supp. 811 (1983).

E. Thomas Henefer, Esquire
July 9, 2002
Page 8

Richard L. McMonigle, Jr. recently published his second edition of "Insurance Bad Faith in Pennsylvania." He has chapters dealing with all of the relevant issues in bad faith cases. Also see, PaTLA's "Insurance Bad Faith Practice," pub. no. 233-2001. There are numerous seven figure settlements, jury verdicts and judicial awards in Pennsylvania and throughout the country.

As I view this case, you are looking at a six figure amount owed for two years of non-payment of disability benefits, plus interest, plus attorney's fees. There is also the anticipated payment of similar amounts for Mr. Mazzamuto's life. The present value of this amount is in seven figures. Then there is interest on the amount currently due and owing. There is the issue of attorney's fees. I have on numerous occasions obtained judicial awards of attorney's fees on the basis of $1,000 per hour. Very recently, a Middle District judge awarded me 40% of the total amount recovered. I have recovered six and seven figure amounts in bad faith settlements and verdicts.

We are at the stage of the instant case where each side must either "fish or cut bait." Your carrier must either "pay up" or take its chances with jury and judge. I feel we have an excellent case and an excellent judge.

I suggest two alternative methods of resolving this case. The first method is to pay what is currently due plus interest, plus a lump sum for attorney's fees and punitive damages. The second is to pay a lump sum based upon "current value" of past and future disability amounts plus a separate amount for interest, attorney's fees, and punitive damages. I would recommend to my client the following:

1.    Under alternative 1, the payment of past benefits plus interest plus the commitment to pay all future benefits plus $1.5 million for attorney's fees and punitive damages.

2.    Under the second alternative, or lump sum payment of $2.5 million.

I will recommend to my client that, if UNUM does not settle this case within the next thirty days, we proceed to trial with each side taking his or its chances on the jury and judge.

I suggest that it is time for UNUM to decide whether this is a case to settle or not. If it feels it is a case to settle, then an offer along the lines of alternative 1 or 2 should be made promptly.

Very truly yours,

Richard C. Angino

RCA/sc
Enclosure

# ..NGINO & RC.VNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA  17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:    RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO          MICHAEL E. KOSIK
NEIL J. ROVNER          RICHARD A. SADLOCK
JOSEPH M. MELILLO          JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DECINTI
DAVID L. LUTZ          JOAN L. STEHULAK

July 8, 2002

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

           Re:    *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

           I call your attention to the following deadlines:

           6/14/02 – close of fact discovery
           6/28/02 – expert reports due
           7/12/02 – response reports to expert reports due

As you are well aware, one must commence discovery so that same will be completed by the discovery deadline.  Up until now, I have ignored that fact and also the discovery deadline.  We are, however, not only past the discovery deadline but past the time for submitting expert reports.  I am not inclined to permit any inspection of the Mazzamuto restaurant at this point.  Such an inspection would be fact discovery which would then involve either fact or expert witnesses, all of which should have been done prior to declining Mr. Mazzamuto's claim and certainly long before the discovery and expert deadlines.

           UNUM contested disability more than a year ago upon the basis of very limited information.  It is locked into that position.  It could have but did not do what you are attempting to do, which is after the fact, attempt to create some basis for its actions.

           As to your various comments dealing with my factual assumptions:

1.         I point out that discovery has revealed and my expert has noted that as of mid-December, 2000, and certainly by early January, 2001, UNUM had in its file medical evidence supporting Mr. Mazzamuto's claim and no contrary reports.  UNUM also had a history of Mr. Mazzamuto's back condition that in and of itself was sufficient in 1996 to support a claim of total disability.

           UNUM did not even attempt to develop a basis for declining Mr. Mazzamuto's claim until February of 2001.  You are well aware as to the limited nature and deficient basis for declining Mr. Mazzamuto's claim.  No independent medical examination was sought.  UNUM relied upon Mr.

E. Thomas Henefer, Esquire
July 9, 2002
Page 2

Mazzamuto's recovery from the heart condition to deny his claim. Mr. Mazzamuto's back condition and psychological problems were not addressed in house. UNUM also relied upon the general category of an owner/manager rather than Mr. Mazzamuto's own words that he had to stand at his job. As to the recent expert reports, your orthopedist has never met Mr. Mazzamuto. Your psychological expert states that he cannot express an opinion. On the other side, Mr. Mazzamuto has his family physician and the Social Security Administration, as well as the life insurance company's agreement that Mr. Mazzamuto is totally disabled from his particular occupation.

You were not forced to subpoena social security records. I did not represent Mr. Mazzamuto in his social security claim. I accordingly did not have Mr. Mazzamuto's social security records. Whether or not the Social Security Administration concluded that Mr. Mazzamuto is capable of light work , from my understanding it has approved his claim for total disability.

As to what Mr. Mazzamuto told Paul Revere, you will have to admit that Paul Revere's agent summarized her conversation with Mr. Mazzamuto in such a way as to favor Paul Revere, and the records clearly note that Mr. Mazzamuto has to stand virtually all the time at his job and that his back and psychological condition preclude his being able to work at the restaurant. This information was in UNUM's file long before there was any lawsuit. I also again emphasize what UNUM knew or didn't know when it declined Mr. Mazzamuto's claim for disability benefits.

2.    I have been told that Mr. Mazzamuto has been approved for SSDI. If I am mistaken, then obviously I will not rely upon that contention. Since we provided you with an authorization and/or you subpoenaed Mr. Mazzamuto's social security records, we request that you supply us with a copy of all of the records which you have received. I assume you have given the records appropriate Bate stamp numbers.

3.    You reference a Sixth Circuit opinion, Bucks v. Reliance Standard, and a District of Vermont opinion, Gonyea v. John Hancock, for the assertion that a waiver of premiums based on disability under a life insurance company does not estop an insurer from denying benefits on a separate disability policy. These decisions obviously are not binding upon the Third Circuit and the Middle District. More importantly, however, the determination of a life insurance company on the issue of waiver of premiums is certainly relevant information for a jury to consider both as to the issue of disability, but also as to the issue of bad faith. New York Life might be a company separate and distinct from Paul Revere, but you and I know the history of the relationship between and among UNUM, New York Life, and Paul Revere with respect to the submission of claims applications and the handling of claims.

4.    The Pennsylvania Bad Faith Statute is quite clear as authorizing interest, attorney's fees, and punitive damages. UNUM's actions from the beginning and continuing up until and including your letter of July 3, 2002, support the imposition of substantial punitive damages. You can rest assured that I will be relying upon your July 3, 2002, letter and this response in my argument to the jury that it should award substantial punitive damages.

E. Thomas Henefer, Esquire
July 9, 2002
Page 3

It is now two years since Mr. Mazzamuto's heart attack which was the commencement of his disability claim. UNUM still at this point, even after discovery has been completed, expert reports exchanged, records obtained from the Social Security Administration, New York Life's decision to waive premiums, your obtaining orthopedic and psychological expert reports, and has refused to pay Mr. Mazzamuto's claim.

The Pennsylvania Unfair Insurance Practices Act states quite specifically how claims are to be handled with definite timetables. UNUM has failed miserably to conform with those timetables and the actions required at the various time intervals.

UNUM is guilty of bad faith with respect to its investigation, its claims practice, its initial declination of Mr. Mazzamuto's claim and its persistence in denying Mr. Mazzamuto's claim to the present time.

Individuals buy life and disability insurance in order to provide for themselves and their families when certain events occur. When certain events occurred with respect to Mr. Mazzamuto in 1995 and 1996, UNUM attempted to deny coverage. When similar events occurred in 2000, UNUM attempted to do the same thing. I call your attention specifically to the exchange of letters between the agent who sold Mr. Mazzamuto the disability coverage and UNUM back in 1995, 1996, 1997, my request to take his deposition, your agreement to produce him, but then your failure to do so within the discovery time period. It is the agent's language that UNUM has relied upon rather than Mr. Mazzamuto's quoted words for denying Mr. Mazzamuto's claim.

You state that you are "exploring the circumstances behind the letter [New York Life June 18, 2002] and will get back to [me] at the appropriate time." It is now July 8, 2002. It is my understanding that the same claim agents who handled Paul Revere and UNUM also handle New York Life. It should not be difficult for you to "explore the circumstances behind the letter", and I expect that you will get back to me promptly in this regard.

Thank you.

Very truly yours,

Richard C. Angino

RCA/sc

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA  17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:    RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO         MICHAEL E. KOSIK
NEIL J. ROVNER      RICHARD A. SADLOCK
JOSEPH M. MELILLO         JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DECINTI
DAVID L. LUTZ         JOAN L. STEHULAK

June 24, 2002

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

Re:    *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

Enclosed is a supplemental report from our expert based upon Theresa A. Sindelar of New York Life Insurance Company's letter dated June 14, 2002.  I call your attention to the final paragraph:   "It is outrageous that UNUM has refused to pay this claim."   The two-year anniversary of the claim is less than a month away.  People like Mr. Mazzamuto buy disability insurance for the purpose of providing an income when they are disabled.  It is outrageous that UNUM did not p ay the claim in November of 2000 and certainly by January of 2001.

Very truly yours,

Richard C. Angino

RCA/sc
Enclosure
cc:    Mr. and Mrs. Mazzamuto

247577.1\RCA\SC

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA  17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:   RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO          MICHAEL E. KOSIK
NEIL J. ROVNER          RICHARD A. SADLOCK
JOSEPH M. MELILLO          JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DECINTI
DAVID L. LUTZ          JOAN L. STEHULAK

June 18, 2002

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

      Re:   *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

      Enclosed is June 14, 2002, letter from New York Life to Vincenzo Mazzamuto re Mr. Mazzamuto's claim for waiver of premium disability benefits on his life insurance policy. You will note that the waiver is effective "from July 22, 2000, the first date we have evidence of your total and continuous disability (under the liberalized terms stated above), to the premium due August 4, 2002."

      New York Life has accepted Mr. Mazzamuto's evidence of total and continuous disability from July 22, 2000. UNUM's failure to accept the same evidence of Mr. Mazzamuto's total and continuous disability for the same time period has been and continues to be evidence of UNUM's bad faith. I insist that UNUM immediately pay Mr. Mazzamuto his disability benefits, plus interest, from July 22, 2000, to date. I am also willing to discuss either a lump sum or structured pay-out with respect to Mr. Mazzamuto's lifetime disability benefits and his bad faith claim. You and your client must recognize that every week and month that Mr. Mazzamuto's rightfully entitled benefits are denied increases the value of Mr. Mazzamuto's punitive damage claim.

                Very truly yours,

                Richard C. Angino

RCA/sc
Enclosure
cc:   Mr. and Mrs. Mazzamuto

247409.1\RCA\SC

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:    RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO           MICHAEL E. KOSIK
NEIL J. ROVNER          RICHARD A. SADLOCK
JOSEPH M. MELILLO           JOSEPH M. DORIA
TERRY S. HYMAN               JAMES DECINTI
DAVID L. LUTZ              JOAN L. STEHULAK

June 4, 2002

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

        Re:    *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

        The discovery deadline is rapidly approaching.  We will have our expert report to you prior to the June 28th deadline.  We expect that you will conform to the discovery deadline, as well as the deadline for your expert's report and the other deadlines, including the trial in November.

        In another disability case which I settled earlier in the year, we settled for a lump sum, which included the lifetime anticipated disability payments, as well as a modest amount for the bad faith claim.  It appears to me that at $60,000 per year for a 30-year life expectancy plus punitive damages and counsel fees, you are facing a jury verdict that could cost you $3.0-$5.0 million.  Does you carrier have an interest in making an offer commensurate with its exposure?

                                Very truly yours,

                                Richard C. Angino

RCA/sc

246946.1\RCA\SC

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:    RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO          MICHAEL E. KOSIK
NEIL J. ROVNER          RICHARD A. SADLOCK
JOSEPH M. MELILLO          JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DECINTI
DAVID L. LUTZ          JOAN L. STEHULAK

May 15, 2002

**VIA FAX**

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

Re:   *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

Enclosed is a copy of the psychologist Dr. Schneider's report which I just received from Mr. Mazzamuto's social security lawyer Trudy McGraw.  You will note the confirmation of Dr. Bowers' "anxiety" diagnosis and the numerous check marks for poor/none with respect to Mr. Mazzamuto's ability to adjust to a job.

I.     <u>MAKING OCCUPATIONAL ADJUSTMENTS</u>

       3.     Deal with the Public
       5.     Interact with Supervisor(s)
       6.     Deal with Work Stresses
       8.     Maintain Attention/Concentration

II.    <u>MAKING PERFORMANCE ADJUSTMENTS</u>

       1.     Understand, remember and carry out complex job instructions
       2.     Understand, remember and carry out detailed, but not complex job instructions
       3.     Understand, remember and carry out simple job instructions

Please note the date of Dr. Schneider's report – 07/13/2001.  I specifically call to your attention the total lack of any medical or psychological opinion countering Dr. Bowers' diagnoses of back injury and anxiety.  Your in-house physician, as well as other consultants, provided your carrier with no bases for the denial of disability benefits and the continued refusal to pay disability benefits.  It is clear that Mr. Mazzamuto's job required him to deal with the

E. Thomas Henefer, Esquire
May 15, 2002
Page 2

public, deal with work stresses, maintain attention/concentration, understand, remember and carry out complex job instructions, not complex job instructions, and simple job instructions. I suggest that you recommend to your client that it immediately send me a check for Mr. Mazzamuto for disability benefits to date plus interest. Your company admitted back in 1997 that it had no basis for denying payments with respect to his back condition. It has substantially less basis for denying payments in 2000, 2001, and 2002 with respect to Mr. Mazzamuto's back condition and generalized anxiety disorder. A visit to the site of Mr. Mazzamuto's restaurant cannot in any way change the fact that Mr. Mazzamuto is totally disabled based on his back condition and generalized anxiety disorder.

Very truly yours,

Richard C. Angino

RCA/sc
Enclosure

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:   RCA@ANGINO-ROVNER.COMM

RICHARD C. ANGINO
NEIL J. ROVNER
JOSEPH M. MELILLO
TERRY S. HYMAN
DAVID L. LUTZ

MICHAEL E. KOSIK
RICHARD A. SADLOCK
JOSEPH M. DORIA
JAMES DECINTI
JOAN L. STEHULAK

May 10, 2002

**VIA FAX**

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P.O. Box 679
Reading, PA   19603-0679

     Re:   *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

    I have just learned that Mr. Mazzamuto has been declared totally disabled with respect to doing any type of work as a result of review by the Social Security Administration.   As you know, the demands by the Social Security Administration are the most stringent of all. Continuing to refuse to pay Mr. Mazzamuto his disability insurance benefits in the face of the Social Security determination will, in my opinion, increase substantially the punitive damage award.

                    Very truly yours,

                    Richard C. Angino

RCA/sc

246076.1\RCA\SC

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:   RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO        MICHAEL E. KOSIK
NEIL J. ROVNER       RICHARD A. SADLOCK
JOSEPH M. MELILLO        JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DeCINTI
DAVID L. LUTZ          JOAN L. STEHULAK

January 17, 2002

VIA FAX (610) 988-0803

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P.O. Box 679
Reading, PA   19603-0679

RE:    Mazzamuto v. Paul Revere

Dear Mr. Henefer:

On October 29, 2001, we mailed to your attention Plaintiff's Initial Disclosures Pursuant to Fed. R. Civ. P. 26 (a)(1).  We have not as yet received Defendant's Disclosures.  Therefore, I would appreciate receiving them as soon as possible.

Secondly, we desire to take the depositions of the following: Therese A. Sindelar, New York Life Claim Representative; Gloria E. Phelps, New York Life Claim Representative; Melissa Magner, UNUM Claim Representative: and Peter J. Russo, Esquire.  Please provide me with dates of availability so that we can schedule these depositions.

Very truly yours,

Richard C. Angino

RCA/sc

241262.1\RCA\SC

# ANGINO & RO⬤NER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:   RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO          MICHAEL E. KOSIK
NEIL J. ROVNER          RICHARD A. SADLOCK
JOSEPH M. MELILLO          JOSEPH M. DORIA
TERRY S. HYMAN          JAMES DECINTI
DAVID L. LUTZ

May 8, 2001

Melissa Magner, X6710
Claim Representative
The New York Life Insurance Company
UNUMProvident Corporation
18 Chestnut Street
Worcester, MA  01608-1528

Re:     Vincenzo Mazzamuto
        Claim No. 13-H3236167-002

Dear Ms. Magner:

Mr. and Mrs. Mazzamuto came to my office today and brought with them a 3-ring binder history of their involvement with New York Life.

As you know, Mr. Mazzamuto is an Italian immigrant who came to this country in August of 1976.  He immediately went to work in the restaurant industry at the MJ Mall in Carlisle, Pennsylvania.  By 1979, he was a partner in what became a small chain of Italian restaurants.  By 1983, he was the owner of his own restaurant.

Mr. Mazzamuto, his wife, and children have all worked very hard in making their restaurant successful.

In 1993, Mr. Mazzamuto bought a disability policy with New York Life.  He made a claim in 1996 and a second claim in 2000.

Your 5-page letter of April 20, 2001, addressed to Peter J. Russo, Esquire, states that you are not paying because you are of the opinion that Mr. Mazzamuto can do all of his duties at the restaurant.  You presume and reference statements that Mr. Mazzamuto has the type of job that can be done on a full-time basis even if one has a heart condition and bad back.

Anyone with any experience whatsoever with an owner of a family-run restaurant business knows that the owner must do everything.  He must work long hours.  He must stand on his feet and greet his guests.  He must circulate to see that the restaurant is run efficiently.  He must on occasion substitute for the cook, the waiter, and even the cleaning person.  He must lift and bend and at times do anything and everything that everyone else does.  The owner also has all of the headaches and worries.  New York Life knew this when it sold a disability policy to an owner of a small restaurant.

230768

Melissa Magner, X6710
May 8, 2001
Page 2


Mr. Mazzamuto has been told by his doctors that he cannot continue working. I presume you have letters from his doctors in this regard. I presume also you have all of the other papers and documents that were given to me by Mr. Mazzamuto in the 3-ring binder.

First of all, I would like for you to supply me with a copy of Mr. Mazzamuto's entire file. He is your insured and entitled to receive a copy of everything that you have, including intra-office communications, daily activity notes, etc. I certainly don't have to lecture you on your responsibilities to give Mr. Mazzamuto's interests the same weight as you give New York Life or UNUMProvident Corporation. I also need not lecture you on the bad faith law of Pennsylvania.

Pennsylvania passed the Bad Faith Statute in 1990. I have been involved in a number of cases which have helped to develop bad faith law in Pennsylvania. I feel that Mr. Mazzamuto has a case that entitles him to disability payments. I also feel that denying disability payments based upon the facts and circumstances of your April 20, 2001, letter constitutes "bad faith." I am asking you to reconsider.

I would appreciate receiving your entire file within the next ten days. I would also ask that following your reconsideration, you give me your legal position by May 31st. If you desire anything from either me or Mr. Mazzamuto, we would be happy to supply same to you.

Mr. Mazzamuto has signed a contingent fee agreement with me. If his case can be settled promptly through an exchange of correspondence, he will owe me relatively little by way of fee and virtually no expenses. If we are required to start suit, and certainly after we have proceeded through pleadings and discovery, our fee and the expenses will become quite substantial. Pennsylvania's Bad Faith Statute provides for the recovery of attorney's fees, including paralegal fees, and punitive damages.

I recognize that you receive many letters from many lawyers threatening "bad faith." You need to determine which ones have merit. I suggest to you that Mr. Mazzamuto's case has merit. A jury is going to like a self-made man such as Mr. Mazzamuto. It will not like New York Life and UNUM for taking the position that you took in your April 20, 2001, letter. They will not believe that Mr. Mazzamuto as an owner of an Italian restaurant just sits around and fills out papers and answers telephone calls. You don't believe that yourself and neither will any juror.

I look forward to receiving Mr. Mazzamuto's entire file. I also look forward to your position following reconsideration.

Very truly yours,


Richard C. Angino

RCA/sc
cc:    UNUMProvident

230768.1\RCA\SC

# ANGINO & ROVNER, P.C.

4503 NORTH FRONT STREET
HARRISBURG, PA 17110-1708

717/238-6791
FAX 717/238-5610

WWW.ANGINO-ROVNER.COM
E-MAIL:   RCA@ANGINO-ROVNER.COM

RICHARD C. ANGINO        MICHAEL E. KOSIK
NEIL J. ROVNER        RICHARD A. SADLOCK
JOSEPH M. MELILLO        JOSEPH M. DORIA
TERRY S. HYMAN        JAMES DeCINTI
DAVID L. LUTZ        JOAN L. STEHULAK
LISA M. BENZIE

October 29, 2002

E. Thomas Henefer, Esquire
STEVENS & LEE
111 North Sixth Street
P. O. Box 679
Reading, PA   19603-0679

Re:   *Mazzamuto v. Paul Revere*

Dear Mr. Henefer:

On Friday, October 25th, our office did a "day in the life" film of Mr. Mazzamuto.  The video starts at Mr. Mazzamuto's former place of employment and shows the type of activities he used to do before he became disabled.  The taller individual whom you see behind the counter taking orders, getting drinks, accepting money, and performing various related tasks is Mr. Mazzamuto's son who has basically taken over Mr. Mazzamuto's job.  The various tasks the son performs are the types of tasks that Mr. Mazzamuto performed before he became disabled.

This video supplements Mr. Mazzamuto's, his wife's, and his doctor's testimony as to his daily activities at the restaurant and supports their position that he is unable to do the principal tasks required by his job.

The last few minutes of the video show Mr. Mazzamuto at home and what he currently does on a daily basis.

I am filing a copy of this video, as well as my letter to you, by affidavit in support of my Motion for Summary Judgment and your counter Motion for Summary Judgment.  A copy of that affidavit accompanies this letter.

I am confirming by this letter that as of October 28, 2002, your carrier is still taking the position that Mr. Mazzamuto is not disabled in terms of the language of his disability policy.  I have pointed out time and time again that this intransigent position initially taken by your company and persisted in over the past two years constitutes unequivocal "bad faith."  How can one possibly look at the requirements of Mr. Mazzamuto's job and look at Mr. Mazzamuto and say that he is not disabled in terms of his disability policy?

252711.1\RCA\SC

E. Thomas Henefer, Esquire
October 29, 2002
Page 2

      I suggest that you provide a copy of this video to your orthopedic expert.  I am supplying you with an extra copy for your expert.  I am also supplying a copy to Mr. Mazzamuto's treating physician.  I expect to reference the video with respect to questions directed to Mr. Mazzamuto's treating physician, as well as to your expert.  You will recall that your expert has submitted a report stating that Mr. Mazzamuto can perform his job with the accommodation of a chair.  The video clearly demonstrates that that is impossible.

                    Very truly yours,

                    Richard C. Angino

RCA/sc
Enclosures

C

Video