

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, <br>     Plaintiff, | : | CIVIL ACTION <br> NO. 1:CV-01-1157 |
| v. | : | |
| UNUMPROVIDENT <br> CORPORATION, et al., <br>     Defendants | : | (JUDGE CONNER) |

FILED
HARRISBURG, PA

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION IN LIMINE

OCT 31 2002

MARY E. D'ANDREA, CL
Per _____
    Deputy Clerk

Dated: October 31, 2002

STEVENS & LEE

By _E. Thomas Hennefer_____
E. Thomas Hennefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants UNUM Provident
Corporation, Paul Revere Insurance Company,
and New York Life Insurance Company

## I. INTRODUCTION

Defendants UNUMProvident Corporation, Paul Revere Insurance Company and New York Life Insurance Company ("Defendants") file this reply brief in support of their Motion in Limine.

## II. ARGUMENT

### A. The Untimely "Experts" Should Be Excluded

The Court has discretion to deny plaintiff's use of McSharry and Schneider as experts. Oliver v. Ingber, No. 96-4471, 1998 U.S. Dist. LEXIS 2799 at *3-4, (E.D. Pa. Mar. 9, 1998). Exclusion is proper because the proposed testimony is inadmissible and the late disclosure is prejudicial. In fact, plaintiff's inconsistent arguments about whether these witnesses are fact or expert witnesses underscores how defendants would be prejudiced if plaintiff is allowed to ignore both the rules of evidence and the Court's scheduling order by presenting these witnesses.

There is no question that plaintiff failed to timely disclose McSharry and Schneider – despite plaintiff's disingenuous claim that he complied with Rule 26(a)(2)(A) "in accordance with Judge Kane's case management order." [Plaintiff's Brief in Opposition, p. 4]. The amended case management order extended the deadline for expert reports to June 28, 2002. Neither Schneider nor McSharry were designated as fact or expert witnesses until long after (a) discovery had closed and (b) the deadline for disclosure of experts had passed.

Plaintiff acknowledge that an expert report should be provided for McSharry by filing a motion (presumably with a good faith basis under Rule 11) to extend the

1

deadline for expert reports to September 30, 2002. As defendants predicted, September 30, 2002 came and went with no expert report from McSharry.

Having failed to secure a report from this so-called "expert," plaintiff now argues (for the first time in response to defendants' motion in limine) that <u>both</u> McSharry and Schneider are "fact" witnesses. But plaintiff offers only internally inconsistent and contradictory arguments that waffle between whether Schneider and McSharry are fact witnesses or experts.[1]

In short, any defendant in any case would be prejudiced by the untimely disclosure of two witnesses and the added uncertainty of whether they will offer testimony about "facts" "opinions" as experts. Plaintiff's default is particularly suspect in the case of Schneider because plaintiff knew of Schneider for roughly a year before the discovery deadline yet never disclosed him as a possible witness until after (a) the discovery deadline had passed, (b) plaintiff failed to designate any expert on psychiatric issues (and his bad faith expert opined there were no psychiatric issues in the case), and (c) defendants produced a report from an expert psychiatrist. Simply put, defendants are entitled to rely on the notion that this plaintiff would follow the rules and scheduling order (rather than attempting to sandbag defendants) in preparing their case. Allowing plaintiff to offer a new witness, who has not been deposed, to rebut a defense expert is plainly prejudicial.

---

[1] While claiming they are "fact" witnesses, plaintiff cites to Rule 26(a)(2)(A) which, of course, deals with expert witnesses, claims McSharry is both a fact and expert witness and baldly claims McSharry qualifies as an expert. [Plaintiff's brief, p. 10-11.]

2

Allowing McSharry to testify (either live or through his deposition) would also be prejudicial. Apart from the fact that defendants have not been able to depose McSharry about this case (of which he has zero knowledge), plaintiff is offering McSharry to support a new theory based on the ludicrous notion that defendants have a pattern and practice of denying claims. While such allegations are spurious and should not be allowed, it suffices to say that defendants would have prepared for a different case, both in terms of fact and expert witnesses, had there been a timely disclosure of a pattern and practice claim.

### B. The Proposed Testimony of McSharry Is Inadmissible

#### 1. Rules 401 and 403

There is no evidence that McSharry has any knowledge of plaintiff's claim. Nevertheless, plaintiff seeks to introduce deposition testimony from McSharry concerning his review of <u>other</u> claims. His purpose is to prejudice and mislead the jury by asking them to speculate that what McSharry <u>claims to have witnessed</u> in the General Medical impairment unit in Chattanooga, Tennessee, has some bearing on what on what happened on plaintiff's claim in Worcester, Massachusetts.

### The Proffered Testimony Is Irrelevant

Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further, Rule 402 provides that "[e]vidence which is not relevant is not admissible."

3

At the outset, McSharry concedes he has a complete lack of any factual knowledge regarding any case where he did not do a review, which would include the claim that is the subject of this litigation. (Exh. 2, McSharry Tr. 753:17-22, 760:5-11; 762:7-763:8; 768:5-10; 770:12-18). Evidence about what might have happened in reaching claims determinations in 2000 in the General Medical impairment unit in Chattanooga where McSharry worked has no relevance to the facts at issue in this case. It has no tendency to prove that the denial of Plaintiff's claim was a breach of contract or done in bad faith. It is analogous to employment discrimination cases where courts often exclude as irrelevant evidence of other cases of alleged discrimination.[2]

In short, evidence of alleged wrongdoing unrelated to Plaintiff's claim is simply irrelevant and has no probative value with respect to what happened in this case, the only one before this Court.

### The Testimony Should Be Excluded Under Rule 403

As stated in Defendants' Memorandum of Law, McSharry's testimony a classic example for use of Rule 403 because of the very real prospect that allowing his deposition into evidence will confuse the jury and result in a "mini-trial" over his allegations. [Exhibit 1, p. 8.] Indeed, for the jury to consider McSharry's allegations, even about the cases in which he was involved, we would need to try

---

[2]   See Goff v. Continental Oil Co., 678 F.2d 593, 597 (5th Cir. 1982); Seymore v. Shawyer & Sons, Inc., 111 F.3d 794, 801 (10th Cir. 1997); Haskell v. Kaman Corp., 743 F.2d 113, 122 (2d Cir. 1984); Schrand v. Federal Pac. Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988).

4

each case. In fact, McSharry's deposition confirms that defendants would need to pursue many issues, unrelated to this case, to impeach McSharry such as:

<u>McSharry's employment history</u>. McSharry worked for three different insurance companies in three years. (McSharry Tr. 583:21-584:5). His 13 month stint at UNUMProvident was the longest of the three. While employed with Blue Cross he was slated to be terminated for poor performance and disruptive behavior, but after initially refusing the option of resigning to save face, he was escorted off the premises by security. (McSharry Tr. 495:24-498:7; Def. Ex. 102, 110).

<u>McSharry's Employment at UNUMProvident</u>. Defendants will have to introduce substantial evidence of McSharry's numerous performance problems while at UNUMProvident to enable the jury to assess his motivation to lie about the Company. For example, after he was given a performance warning in writing, he began consulting with a lawyer, and only thereafter did he begin to raise purported concerns about the Company's claims practices. (McSharry Tr. 381:8-19; 382:22-383:13; 659.16-660:2; 678:2-679:4).

<u>Specific Instances of Alleged Improper Claims Handling</u>. To rebut McSharry's claims of allegedly improper claims handling, UNUMProvident may be forced to introduce evidence concerning the specific cases on which McSharry relies (some of which is addressed below). This creates a risk of mini-trials on the merits of unrelated claims, greatly prolonging trial and distracting the jury.

5

<u>The Accused Doctors in the Chattanooga General Medical Unit</u>. McSharry has accused a certain number of his former colleagues in Chattanooga of changing medical opinions to support denial of claims. The individuals in question vehemently deny this very serious accusation and at a minimum would have the right to testify at trial to defend their professional reputation.

Each of these areas could become a sideshow to this trial. For all these reasons, McSharry's testimony, if admitted, will inevitably serve to mislead and/or confuse the jury and draw their attention away from the real issues in this case.

### 2. McSharry Is Not Competent To Testify

Despite plaintiff's arguments that McSharry is a fact witness, the limitations underlying Federal Rule of Evidence 602 preclude the use of his deposition. Rule 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Again, he has no personal knowledge of the plaintiff's claims, and thus is not competent to testify.

### 3. The Proffered Lay Opinion Testimony Of McSharry Is Inadmissible Under Rule 701

Plaintiff states that he proposes to use the McSharry deposition as evidence of "UNUM's practices in denying applications for disability" and specifically "as to the procedure followed in denying Mr. Mazzamuto's claim." [Plaintiff's Brief in Opposition, p. 7.] While plaintiff argues that McSharry's testimony "is probative," such a purpose can only be probative because it is, in effect, McSharry's <u>opinion</u>

6

regarding plaintiff's bad faith claims. If plaintiff is to be believed, and McSharry is really intended to be a "fact witness," then use of the testimony would result in McSharry rendering an improper opinion or inference in violation of Rule 701.

McSharry's testimony cannot be deemed to be <u>rationally based on the perception of the witness</u> as it relates to the facts of this case. Instead, the witness must have perceived with his senses the matters on which his opinion is based, and there must be a rational connection between the witness's opinions and his perceptions. Rule 701, like Rule 602, therefore requires personal knowledge (which McSharry lacks). Where lay opinion testimony is not based on personal knowledge or is considered to be speculative, such testimony is routinely excluded. <u>See</u> <u>e.g.</u> <u>SEC v. Infinity Group Co.</u>, 212 F.3d 180, 197 (3d Cir. 2000).

McSharry has no personal knowledge about the decision on plaintiff's claim, he never reviewed plaintiff's file, knows nothing about the basis for plaintiff's disability claim or the reasons for its denial, never worked in the impairment unit in Worcester, Massachusetts, and apparently does not even know Dr. Clarke who reviewed plaintiff's medical records.

The requirement that the opinion be "rationally based on the perception of the witness" demands more than that the witness perceived something firsthand. It also requires a logical connection between the perception and the opinion. Accordingly, the courts look to the validity of proposition that the witness used to

7

link perception to his opinion and reject opinions where there is little or no validity to the linkage. See e.g., Hester v. Bic Corp., 225 F.3d 178, 184 (2d Cir. 2000).

Here, McSharry fails to offer any linkage -- let alone a reasonable one -- between the individual and hotly contested instances where he complains that claims were mishandled and his opinion that there purportedly existed a company-wide practice of denying valid claims. In the absence of any such linkage, his inflammatory opinions are not evidence and should be excluded under Rule 701.

McSharry's testimony also must be <u>helpful to the trier of fact</u> to be admitted under Rule 701. This requires the court to balance the benefits of the testimony against its costs. When lay opinion testimony saves time or provides information not conveyed by testimony limited to the facts, it provides a benefit. However, where the proffered testimony does little more than "tell the jury what result to reach," it is not helpful and will be excluded. See U.S. v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992); See also Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6255. Where the proffered lay opinion testimony is offered without adequate supporting factual detail, it amounts to little more than "choosing up sides" and should be excluded, particularly where it concerns a crucial issue in the case. See Connell v. Bank of Boston, 924 F.2d 1169, 1177-78 n. 7 (1st Cir.) cert. denied, 501 U.S. 1218 (1991).

Here, there is no evidence that McSharry has personal knowledge about the challenged claim denial and/or the decision-makers involved. Further, he has not

testified about any uniform practice of improper claims handling, but instead testified that, in his experience, some doctors would compromise their opinions and others would not, some claims representatives pushed for denials that McSharry could not support and others wanted to pay claims that McSharry did not believe were valid. (McSharry Tr. 839: 3-24; 843:10-16; 849:12-14; 258:10-22).

McSharry could offer only limited specific concrete examples of the practices he claimed were designed to encourage claims denial, each of which is sharply disputed. For example, McSharry offered only two examples of "doctor shopping," where he contended that claims professionals had deliberately sought opinions from doctors other than him.

In one case, he pointed to a case of a woman with acute leukemia where he had done a preliminary review of whether there was a pre-existing condition that would preclude insurance coverage. In the course of his preliminary review, McSharry had told the nurse responsible for the claim that the Company should not even consider the pre-existing condition "because this person is very sick. And there really was no doubt that this [paying the claim] was the humane thing to do." (McSharry Tr. 699:13-14). This was consistent with his general view that benefits should be paid not in accordance with the insurance contract provisions, but according to principles of morality. (McSharry Tr. 700:16-701:8) ("The spirit of the contract is morality.") For understandable reasons, following this exchange, the claims reviewer doubted McSharry's ability to provide an objective opinion

9

about whether a pre-existing condition existed. Accordingly, another doctor was asked to review the full file and found a clearly documented pre-existing condition. (McSharry Tr. 690:24-691:1; 698:24-701:14; 702:22-705:2).

In the only other instance of alleged doctor shopping, McSharry pointed to the case of "Mr. J," who had been receiving disability benefits for five years and claimed to be totally disabled to the point where he required extended rest after performing such tasks as shaving, taking a shower, or getting dressed (Exh. 3, Def. Ex. 124; McSharry Tr. 939:17-940:1). McSharry ignored a surveillance video that revealed the claimant building a dock and engaging in prolonged, vigorous yard work over the course of several days, activities far more strenuous than his doctors indicated he was capable of doing. (McSharry Tr. 914:20-915:19; 920:18-921:4; 941:2-20). Under these circumstances, the specialist was amply justified in questioning McSharry's objectivity.

In any event, these opinions offer the jury no facts to assist it in reaching its own conclusion on the questions before it -- whether the claims denial <u>in this case</u> was a breach of contract and/or made in bad faith. Instead, McSharry simply takes sides by telling the jury that in his opinion, UNUMProvident is a bad company. This is precisely the kind of opinion testimony that is inadmissible under Rule 701.

Finally, Plaintiff argues persistently that McSharry's testimony is based on "<u>other specialized knowledge</u>." [Plaintiff's Brief in Opposition, p. 9]. But, again, if

SL1 303906v1/10305.060

McSharry is a "fact witness not an expert," [Plaintiff's response, ¶ 3], Rule 701 prohibits opinions or inferences based on specialized knowledge.

### 4. McSharry's Testimony Would Not Satisfy Rule 702

As stated above, McSharry's testimony and/or deposition does not fit the facts of this case, and the concern over McSharry's personal financial interest renders it unreliable. [Exhibit 1 pp. 6-7.] Thus, regardless of whether plaintiff chooses to shroud McSharry in expert clothing, his testimony and deposition does not satisfy Rule 702.

### 5. Plaintiff's Use Of McSharry's Deposition Pursuant To Rule 32 Is Improper.

Plaintiff stated that he intends to use McSharry's deposition at trial pursuant to Federal Rule of Civil Procedure 32. However, plaintiff justified his use of Rule 32 by fast-forwarding to the end of subsection 32(a)[3] without first addressing the general provisions which allow for use of a deposition so far as admissible under the rules of evidence . Fed. R. Evid. 32. As noted above, McSharry's testimony is not admissible under the rules of evidence.

While Rule 32 appears largely inapplicable, defendants can only assume that Plaintiff intends to invoke subsection 32(a)(3) which roughly corresponds to the definition of unavailability for the hearsay exceptions provided under Federal Rule

---

[3] Instead, Plaintiff quotes from a portion of Rule 32(a) that deals with the substitution of parties and the use of depositions in matters brought by the same parties or their representatives, or successors in interest. Plaintiff was not a party to Dr. McSharry's suit, nor is he a substituted party, a representative or a successor in interest.

11

of Evidence 804. While plaintiff has not raised Rule 804, defendants note, out of an abundance of caution, that Rule 804 too is inapplicable.

Under Rule 804, assuming plaintiff can demonstrate that McSharry is unavailable, the only applicable use would fall under the subsection governing former testimony. Fed. R. Evid. 804(b)(1). But contrary to the requirements of the Rule, defendants did not have an opportunity and similar motive to examine McSharry during the deposition for his wrongful discharge case and certainly had no opportunity to inquire regarding about <u>the facts of this case</u>. Plaintiff cannot argue in good faith that the defendants had an opportunity or similar motive to develop testimony about Mr. Mazzamuto's disability claim during a deposition for another lawsuit about an employment matter.

### C. The Social Security Decision, Evidence Of The Waiver Of Life Insurance Premiums By New York Life And <u>Correspondence Between Counsel Should Be Excluded.</u>

#### 1. The Social Security Award

As stated in Defendants' Memorandum, evidence of plaintiff's SSDI benefits should be excluded as irrelevant because the award is based on different standards and a vastly different factual record. [Exhibit 2, pp. 10-12.]

First, plaintiff argues that the Third Circuit standard from <u>Russell v. Paul Revere Life Ins. Co.</u>, 288 F.3d 78 (3d Cir. 2002), is inapplicable because it was an ERISA case and as such "courts were required to affirm where the findings were reasonable." [Plaintiff's Brief in Opposition, p. 13.]

12

SL1 303906v1/10305.060

But the applicable part of <u>Russell</u> is not the ERISA arbitrary and capricious standard of review but the holding which involves <u>plaintiff's contractual burden of proof and contract interpretation</u>. <u>Russell v. Paul Revere Life Ins. Co.</u>, 148 F. Supp. 2d 392, 404-05 (D. Del. 2001) (finding that "the policy language places upon the employee the initial burden to demonstrate that he or she can not perform any of the important duties of his position") <u>aff'd</u>, 288 F.3d 78 (3d Cir. 2002). Courts in other Circuits have applied the same rules of contract interpretation, <u>McOsker v. Paul Revere Life Ins. Co.</u>, 279 F.3d 586, 588 (8th Cir. 2002), <u>even when the policy in question was not subject to ERISA</u>, <u>Yahiro v. Northwestern Mutual Life Ins. Co.</u>, 168 F. Supp. 2d 511, 517-518 (D. Md. 2001) (looking to the language of the contract for the standard to apply for determining residual disability in non-ERISA policy). Plaintiff has offered no reason why these straightforward principles of contract interpretation should be different in an ERISA case than here.

Second, plaintiff does not dispute that the record available to the Social Security Administration ("SSA") was vastly different from that presented to Paul Revere of this Court. [Exhibit 2, p. 11.] Once again, plaintiff points out that the SSA relied upon Dr. Bowers's letter dated April 16, 2002. [Plaintiff's Brief in Opposition, p. 12.] Given his response, it is clear that the ALJ did not have Dr. Bower's deposition (from the same day), which contained contrary findings.

13

### 2. New York Life Waiver of Life Insurance Premiums

As stated in Defendant's Memorandum, New York Life's ("NYL") waiver of life insurance premiums is not relevant and likely to confuse and mislead the jury. [Exhibit 1, pp. 12-13.] Nevertheless, plaintiff again merely sidesteps the argument and points blindly in the direction of ERISA. [Plaintiff's Brief in Opposition, p. 13.] For the same reasons as stated above, the Russell arbitrary and capricious standard does not apply to the contractual burden of proof required. The salient point, completely overlooked by plaintiff, is that the standard applicable to waiving life insurance premiums for disability under the NYL policy is simply not the same as the standard required under the Paul Revere disability policy. [Exhibit 1, p. 13.]

Moreover, plaintiff refuses to acknowledge that it is Paul Revere and not NYL, who administers the disability policy and pays benefits under valid disability claims. NYL is responsible only for plaintiff's life insurance policy. Paul Revere has a separate and distinct claims review policy, a separate and distinct claims review process, and a separate and distinct claims review staff. Thus, a finding of disability under a NYL policy for the purpose of waiving a NYL life insurance premium does not mandate a finding of disability for the purpose of paying benefits under the disability policy.

Thus, evidence of NYL's waiver of life insurance premiums should be excluded because it is not relevant and likely to confuse and mislead the jury.

### 3. Correspondence Between Counsel

Plaintiff's argument for the admissibility of counsel correspondence is without substance. Boiled down to its basic premise, plaintiff's argument for the relevance of the correspondence says little more than "plaintiff demanded payment, but defendant said plaintiff is ineligible." If all similar communication between counsel regarding demands for settlement were admissible as evidence of bad faith, very little in the way of productive dialogue could ever be expected.

## III. CONCLUSION

For the foregoing reasons, defendants respectfully request this Court to grant their Motion in Limine.

Dated: October 31, 2002

STEVENS & LEE

By *E. Thomas Henefer*
E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants

SL1 303906v1/10305.060

15

## CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, Esquire, certify that on this date, I served a certified true and correct copy of the foregoing reply brief upon the following counsel of record, by depositing the same in the United States mail, postage prepaid, addressed as follows:

> Richard C. Angino, Esquire
> 4503 North Front Street
> Harrisburg, PA 17110-1708

*E. Thomas Henefer* (signature)
E. Thomas Henefer

Date: October 31, 2002

SL1 303906v1/10305.060