IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | JUDGE CONNER |
| CORPORATION, et al., | : | |
| Defendants | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO SUPPLEMENT EXPERT REPORT**

Dated: November 1, 2002         STEVENS & LEE

                         By _____
                             E. Thomas Henefer
                             Attorney I.D. No. 55773
                             111 North Sixth Street
                             P.O. Box 679
                             Reading, Pennsylvania 19603
                             (610) 478-2000

                         Attorneys for Defendants

SL1 303985v1/10305.060

## I. INTRODUCTION

Defendants UNUMProvident Corporation, Paul Revere Insurance Company and New York Life Insurance Company ("Defendants") file this memorandum of law in opposition to Plaintiff's motion to permit a supplemental expert report. As explained below, Plaintiff's motion should be denied because the proposed expert testimony would be inadmissible.

## II. PROCEDURAL HISTORY

Plaintiff alleges claims for bad faith, under 42 Pa. C.S.A. § 8371, and breach of contract arising from the denial of his claim for disability benefits based on back and psychiatric conditions. Defendants have moved for summary judgment and Plaintiff has filed a motion for partial summary judgment.

Discovery is closed and the deadline for expert reports was <u>June 28, 2002</u>. Although Plaintiff claims to be medically disabled, he has not designated any medical expert but has, instead, opted to rely on one treating physician (who is not properly qualified to opine as to plaintiff's alleged orthopedic and psychiatric problems) and a so-called expert on insurance practices. Plaintiff then filed a motion to extend the deadline for expert reports until September 30, 2002 to designate a new expert witness, Dr. McSharry ("McSharry"), a former employee of UNUMProvident Corporation who has filed a wrongful discharge lawsuit in which he has made spurious allegations about how disability claims are reviewed by UNUMProvident's subsidiaries such as Paul Revere. Having failed to secure an

1

expert report from McSharry, plaintiff now attempts to incorporate McSharry's testimony into Gordon Rose's opinion. This evidence is inadmissible and plaintiff's motion must be denied.

## III. FACTUAL HISTORY

Plaintiff is attempting to introduce deposition testimony from McSharry (through the report of Gordon Rose) that in his opinion Paul Revere tried to pressure doctors to provide unfounded medical opinions to support claim denials. McSharry testified about UNUMProvident's claims handling practices in broad general terms based solely on his experience as an employee for a period of thirteen months from November 2000 to January 8, 2002, when he was fired for poor performance. McSharry testified that he worked only in UNUMProvident's General Medical impairment unit in Chattanooga (not Worcester, Massachusetts where Mazzamuto's claim was handled). For this reason, his knowledge of the approximately 90 other doctors, 325 nurses and 2,500 customer care specialists who worked in other impairment units and/or at other UNUMProvident claims handling sites was extremely limited or nonexistent. (Exh. 2, McSharry Tr. 102:20-104:19). McSharry never went to the Worcester, Massachusetts facility. (McSharry Tr. 756:8-16).

Further, he admitted a complete lack of any factual knowledge regarding any case he did not review, which would include Mazzamuto's claim. (McSharry Tr. 753:17-22; 760:5-11; 762:7-763:8; 768:5-10; 770:12-18). McSharry has no

knowledge of Mazzamuto's claim, the physicians in Worcester that reviewed this claim and the grounds upon which the claim was denied.

Moreover, McSharry at least implicitly concedes there was no uniform practice to deny claims even in the Chattanooga General Medical impairment unit where he worked. McSharry himself did not deny all claims that came to him for review, nor did he assert that other doctors did so. Further, he did not testify that all doctors were willing to change their medical opinion to support a denial. Rather, he grouped approximately 20 doctors with whom he was familiar (of the approximately 100 employed by UNUMProvident) in three categories and offered his opinion regarding: 1) those who would just do what the company wanted them to do; 2) those who didn't want to just give into the company; and 3) those who simply would not change their opinion under any circumstances. (McSharry Tr. 839:3-24; 843:10-16; 849:12-14).

In addition, McSharry acknowledged that the medical and claims professionals he dealt with in the Appeals Unit made fair and valid assessments of claims. (McSharry Tr. 887:6-19, Def. Ex. 122). At one point McSharry even testified that on several occasions he disagreed with claims representatives who wanted to pay claims that McSharry believed were not supported by the record. (McSharry Tr. 258:10-22).

Despite the admitted lack of any uniform practice, Plaintiff, through Gordon Rose, seeks to admit McSharry's personal opinions concerning Defendants'

3

practices, in which he uses sweeping terms to contend that UNUMProvident looked for ways to deny and delay claims. Plaintiff is undeterred by the fact that McSharry is not a witness in this case and that McSharry's opinion is based only on a limited number of specific incidents that occurred in Chattanooga and which are sharply disputed. Instead, Plaintiff would ask a jury to believe that Rose's view of McSharry's testimony (and thus McSharry's testimony) must be true company-wide. The fact that any such inference would be based on pure speculation is not an obstacle from plaintiff's point of view. But the Rules of Evidence are. Rose's testimony based on McSharry's pure speculation is plainly inadmissible. It should therefore be excluded on multiple, overlapping grounds as outlined below.

## IV. ARGUMENT

### A. PLAINTIFF'S EXPERT CANNOT RELY ON "EVIDENCE" WHICH IS INADMISSIBLE AND UNRELIABLE

Rule 702 imposes three distinct restrictions on admission of expert testimony: qualifications, reliability and fit. In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania Transp. Auth., 35 F.3d 717, 741-42 (3d Cir. 1994) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 at 587-591 (1993)). As outlined below, defendants have demonstrated in their other briefs on McSharry that his testimony is wholly unreliable, is based on (at best) his own speculation and financial incentives, and in no way addresses the facts concerning the review of plaintiff's claim in this case. The underlying objectives of Rule 702 and Daubert and its progeny would be undermined completely if an expert could

4

simply parrot the speculative accusations of another witness whose testimony was found unreliable and inadmissible.

For example, in <u>In Re: Diet Drugs Products Liability Litigation</u>, MDL Docket No. 1203, 2001 U.S. Dist. LEXIS 1174, (E.D. Pa. Feb. 1, 2001), the Court addressed the situation where an expert relied on the opinion of another expert whose opinion was inadmissible. The court held: "[b]ecause the court has already determined that Dr. Bloor's report is unreliable, any opinion by Dr. Gueriguian based on that report is also unreliable and should be excluded." 2001 U.S. Dist. LEXIS 1174 at * 60. Thus, because McSharry's testimony is unreliable and inadmissible, Rose cannot use it as a basis for an expert opinion under Rule 702.

## B. MCSHARRY'S TESTIMONY IS INADMISSIBLE

### 1. McSharry Does Not Satisfy The Standards For Expert Testimony

When plaintiff initially sought to extend the deadline for expert reports, defendants detailed why McSharry's testimony was inadmissible under Rule 702 or <u>Daubert</u> and its progeny. [A copy of Defendants' brief in opposition to plaintiff's motion is filed concurrently as Exhibit 1]. Defendants also noted that McSharry's testimony on other claims is irrelevant (and therefore does not satisfy the "fit" requirement of Rule 702) as demonstrated by numerous cases holding that discovery of other claims is impermissible in bad faith actions. E.g., <u>Cantor v. Equitable Life</u>, 1998 U.S. Dist. LEXIS 8435 at * 10-11 (E.D. Pa. 1998). Further, defendants explained why McSharry's testimony should be excluded (even if

5

relevant) under Rule 403 because it would confuse the jury and would lead to delays as defendants would be required to present facts which are wholly unrelated to this action but demonstrate that McSharry is (at best) an unreliable witness.

McSharry's deposition testimony is now available and confirms that he cannot satisfy either Rule 702 or Daubert because his testimony is based on nothing more than his own speculation about UNUMProvident's practices. Again, expert testimony is only reliable if the proponent establishes that the proposed expert bases his or her opinions and conclusions on "good grounds." Paoli Railroad, 35 F.3d at 748; see also Daubert, 509 U.S. at 590. A witness' "subjective belief or unsupported speculation" does not constitute "good grounds" for the proposed expert's conclusions or opinions. Daubert, 509 U.S. at 590. See Parkway Garage, Inc. v. City of Phila., 1994 U.S. Dist. LEXIS 10900, *31 (E.D. Pa. Aug. 3, 1994) (testimony based on "pure speculation" is unreliable).

Yet speculation (apparently driven out of the financial desire to prevail in his wrongful discharge claim) is all McSharry offers. Indeed, far from supporting a "pattern and practice" argument, McSharry has not testified about any uniform practice of improper claims handling. Instead, he testified that, in his opinion, some doctors would allegedly compromise their opinions and others would not, some claims representatives pushed for denials that McSharry could not support -- and others wanted to pay claims that McSharry did not believe were valid. (Exh. 2, McSharry Tr. 839:3-24; 843:10-16; 849:12-14; 258:10-22). McSharry could

6

offer only limited specific concrete examples of the practices he claimed were designed to encourage claims denial, each of which is sharply disputed by defendants. Thus, his opinions that UNUMProvident "looked for ways to deny claims" and generally obstructed the fair review of claims are pure speculation.

McSharry's opinions therefore offer the jury no facts to assist it in reaching its own conclusion on the questions before it -- whether the claims denial in this case was a breach of contract or amounted to bad faith. Instead, McSharry simply takes sides by telling the jury that in his opinion, UNUMProvident is a bad company. This amounts to nothing more than McSharry acting as an advocate (of his own financial interests) and his testimony is properly excluded. JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc., No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 at *27 (E.D. Pa. Apr. 14, 1998), aff'd, 178 F.3d 1279 (3d Cir. 1999)(expert testimony properly excluded where the expert is "acting as an advocate, and not as an objective evaluator of evidence.").

Finally, defendants outlined why the late designation of McSharry as an expert witness would be unfairly prejudicial in that plaintiff was now seeking to add a new theory to the case based on an alleged pattern or practice of denying claims. The addition of such a theory after discovery had closed and the deadline for expert reports had passed is plainly prejudicial because had plaintiff presented this theory timely, defendants could have focused their discovery efforts on it and

7

could have prepared to rebut it through expert or other testimony. These same considerations would apply if Rose is allowed to act as McSharry's mouthpiece.

## C. MCSHARRY'S "FACT" TESTIMONY IS INADMISSIBLE

After defendants filed their motion in limine to preclude the use of McSharry's deposition testimony, plaintiff argued (for the first time) that McSharry would be presented as a fact witness. Defendants' reply brief in support of their motion in limine [Copy attached as Exhibit 3], outlines in detail why McSharry's testimony as a "fact witness" is inadmissible. As noted in the attached reply brief, McSharry's testimony is inadmissible, or should be excluded, because:

- His testimony is not relevant to this case because McSharry concedes he has a complete lack of any factual knowledge regarding the claim that is the subject of this litigation.

- He is not qualified to testify under Rule 602.

- He cannot meet the requirements of Rule 701 for lay opinion.

- His testimony would confuse the jury about the issues in this case and lead to a trial within a trial over McSharry's spurious allegations making exclusion under Rule 403 proper.

- His testimony would not be admissible under Rule 804 or Federal Rule of Civil Procedure 32.

In short, McSharry's testimony is not admissible either as an expert or as a fact witness.

## D. THE SUPPLEMENTAL OPINION SHOULD BE EXCLUDED UNDER RULE 403.

Fed. R. of Evid. 403 prohibits admission of evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it misleads

8

the jury. This applies to expert testimony. <u>JMJ Enterprises</u>, 1998 U.S. Dist. LEXIS 5098. Thus, even if the Court were to find that the proffered evidence had some marginal relevance, which Defendants dispute, the inquiry is not ended. Rather, in addition to analyzing the disputed issues in the case and the precise manner in which the evidence tends to prove them (the relevance analysis), the Court must then consider the length and nature of the chain of inferences that must be made to link the evidence to the claims.

Rule 403 presents the issue of whether or not the search for the truth will be helpful or hindered by the interjection of evidence that, while relevant, is distracting, confusing or emotionally charged. In discussing the basis for exclusion later codified in Rule 403, Wigmore noted that the addition of peripheral issues, "will be such that the jury will lose sight of the main issue, and the whole evidence will be only a mass of confused data from which it will be difficult to extract the kernel of controversy." 2 Wigmore, Evidence, 3d ed. 1940, § 443, p. 428.

Courts frequently exercise their discretion to exclude collateral evidence that, at best, possesses marginal relevance, like the testimony proffered here, because the dangers of unfair prejudice, confusion of the issues, misleading the jury and undue delay and waste of time outweigh the probative value of the evidence. <u>See e.g.</u>, <u>U.S. v. Sellers</u>, 906 F.2d 597, 602-03 (11th Cir. 1990).

There is no question that allowing Rose to parrot McSharry's allegations will lead to confusion and delays. If Rose is allowed to rely on McSharry, defendants

9

will be forced to pursue many issues, unrelated to this case, to impeach McSharry (the source of Rose's opinions) which, as outlined in defendants' reply brief in support of their motion in limine [Exhibit 3] would include:

- McSharry's employment history;
- McSharry's employment at UNUMProvident;
- Specific instances of alleged improper claims handling; and
- Testimony of doctors McSharry accuses of improper reviews.

Each of these areas could become a sideshow to this trial in its own right, provoking both a mini-trial of McSharry's wrongful termination claim and mini-trials of several other disability claims that McSharry alleges were mishandled. Taken together, it is certain that Rose's use of McSharry's opinion will overshadow the central issues in this case that concern Plaintiff's claim for disability benefits. Additionally, McSharry's deposition testimony is exceedingly confusing given his apparent inability to answer a direct question in any sort of clear and concise fashion, as any random sampling of his testimony reveals.

For all these reasons, McSharry's testimony, if admitted, or Rose's reliance upon this testimony, will inevitably mislead and/or confuse the jury and draw their attention away from the real issues in this case -- whether defendants breached their agreement with plaintiff by denying his claim. Furthermore, because defendants will be forced to introduce a parade of witnesses who otherwise had no involvement in plaintiff's claim, Rose's reliance upon McSharry's testimony will

10

SL1 303985v1/10305.060

necessary prolong the trial and waste this Court's time. Given the lack of probative value of McSharry's testimony, it should be excluded under Rule 403.

### E. ROSE'S TESTIMONY DOES NOT SATISFY RULE 703

Plaintiff will likely argue that Rose may rely on McSharry under Rule 703 even though McSharry's testimony is inadmissible. However, "the standard [under Rule 703] is equivalent to Rule 702's reliability requirement -- there must be good grounds on which to find the data reliable." In re Paoli Railroad Yard, 35 F.3d at 748. Rule 703 is inapplicable because McSharry's testimony is unreliable.

Further, Rule 703 applies only where the inadmissible evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences." But no reasonable expert would accept McSharry's deposition testimony at face value given the amount of speculation contained in his testimony and his financial incentive to fabricate his testimony. Rather, a reasonable expert would want to consider other evidence that would either tend to corroborate or refute McSharry's point of view. Indeed, this is the hallmark of what an expert is required to do under Daubert and its progeny which requires that "the process or technique the expert used in formulating the opinion is reliable." In re Paoli Railroad Yard, 35 F.3d at 742.

Here, Rose's "process or technique" is to put blinders on an latch onto anything he can find to support his attack on defendants. This is consistent with his approach of acting as an advocate rather than an expert as exemplified by,

11

among other things, his allegation that defendants acted in bad faith by retaining a psychiatrist as an expert witness (based on Rose's view that there are no psychiatric issues in the case) when plaintiff has always contended (at least in the lawsuit) that he has psychiatric limitations and has now made an untimely effort to present psychiatric testimony through Dr. Schneider. Rose's approach is akin to asking a judge or jury to render reach a verdict after hearing only the plaintiff's case.

Finally, Rule 703 prohibits experts from disclosing facts to the jury that are otherwise inadmissible unless the court finds their probative value substantially outweighs their prejudicial effect. Again, McSharry's testimony has no probative value and the prejudicial effect would be substantial; therefore, plaintiff cannot use Rose as a back-door means of presenting McSharry's allegations.

### F. EVIDENCE OF ALLEGED UNRELATED BAD ACTS IS AN IMPROPER USE OF CHARACTER EVIDENCE

Finally, Rose's testimony should be excluded because is nothing more than "character evidence" which is inadmissible under Rule 404(b). Indeed, the only reason plaintiff would attempt to offer evidence that claims were allegedly wrongfully denied in McSharry's unit would be to raise the inference that defendants had a propensity for claims denial, and therefore defendants must have wrongfully denied plaintiff's disability claim in this case. These tactics are clearly impermissible under Rule 404(b).

It should be noted that it is unclear if corporations like defendants can even be considered to have a "character." Accordingly, it can be argued that proof

12

involving corporate reputation or conduct should be admitted or excluded on general principles of relevance, without resort to notions of "character," and that so-called prior corporate "bad acts" are simply not admissible under Rule 403 even where they are arguable introduced for one of the permitted purposes enumerated in Rule 404(b). According to Wright and Miller, this "means that a party wishing to prove a fact by the regularity of corporate behavior would have to lay a foundation for such proof by expert testimony on bureaucratic theory, since the courts are unlikely to take judicial notice that the conduct of bureaucratically organized persons follows predictable patterns." Wright & Miller, 22 Fed. Prac. & Proc. Evidence § 5233, p. 361 n. 73. McSharry's proffered testimony would not be admissible under this standard.

Assuming *arguendo* that defendants can be said to possess a character, unless McSharry's testimony is directed toward something at issue other than defendants' alleged propensity to commit the acts charged, and similar enough and close enough in time to be relevant to a matter at issue, it must be excluded under Rule 404(b). See J & R Ice Cream Corp. v. California Smoothie Licensing Corp., 31 F.3d 1259, 1268-69 (3d Cir. 1994) (district court abused its discretion by allowing testimony in fraud case about defendant's prior misrepresentations made to others besides plaintiff; the evidence improperly sought "to establish the defendants' propensity to commit the charged act").

Accordingly, plaintiff should not be able to introduce any testimony of McSharry or permit Rose's reliance upon that testimony that would invite the jury to infer that because certain agents of defendants purportedly committed "bad acts" on some other occasion, that defendants did so with respect to Plaintiff.

## V.  CONCLUSION

McSharry's inflammatory opinions and Rose's reliance upon them should be excluded from this trial.  They lack the essential anchors of a factual basis and personal knowledge which are required by the Rules of Evidence.  They lack any relevance and threaten to substantially prolong the trial and distract the jury as it considers a lengthy sideshow related to aberrational claims from a disgruntled former employee.  They are fundamentally a resort to evidence of other bad acts proscribed by Rule 404(b).  Finally, admitting the testimony without affording defendants the right to conduct cross-examination concerning the facts of this case would seriously compromise defendants' due process rights.  For all these reasons, plaintiff's motion must be denied.

Dated:  November 1, 2002            STEVENS & LEE

By _____
E. Thomas Henefer
Attorney I.D. No. 55773
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603
(610) 478-2000
Attorneys for Defendants

14

## **CERTIFICATE OF SERVICE**

I, E THOMAS HENEFER, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Memorandum of Law upon the following counsel of record, by hand delivery addressed as follows:

> Richard C. Angino, Esquire
> 4503 North Front Street
> Harrisburg, PA  17110-1708

_____
E. Thomas Henefer

Date:  November 1, 2002