ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>    Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>    Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S SECOND MOTION TO SUPPLEMENT RECORD

Richard C. Angino, Esquire, of Angino & Rovner, on behalf of Plaintiff Vincenzo Mazzamuto, moves Your Honorable Court to permit the supplementation of the present record to add an additional report dated December 4, 2002, from Plaintiff's expert Gordon K. Rose (**Exhibit A**).

Respectfully submitted,

ANGINO & ROVNER, P.C.

Richard C. Angino, Esquire
I.D. No. 07140
4503 N. Front Street
Harrisburg, PA 17110
(717) 238-6791
Attorney for Plaintiff

Date: 12/5/02

254183.1\RCA\SC

Gordon K. Rose, CLU, ChFC
735 Virginia Rail
Kiawah Island
SC 29455
Ph 843 768 6669
Fax 843 768 0344
E-Mail GKROSECLU@aol.com

Exh A

Richard C. Angino
Angino & Rovner, P.C.
4503 N. Front Street
Harrisburg, PA 17110-1708

Dec 4, 2002

Re: Vincenzo Mazzamuto- Supplemental Report

Dear Mr. Angino:

I have had an opportunity to review the following documents, that you had forwarded to me.

Judge James Larson's order denying judgment as a matter of law or new trial.
Dr. William Feist deposition 3-8-99
Dr. William Feist deposition 1-25 99
Set of documents Exhibit A through I

I wish to add the following statements to my previous reports on the Mazzamuto case.

Dr. Feist's depositions provide a clear insight to Provident Life and Accident, now Unum Provident's approach to claims. When the new CEO Mr. Chandler came in to run the company, he concluded that disability insurance claims were too high, and they had to be reduced. In 1995 the company had to transfer over $300 million to a reserve for disability claims. Mr. Mohney, Vice President of claims was charged with the responsibility of reducing the total claim pay out on disability insurance. This was a tragic mistake as it ignored the duty of the company to pay all legitimate claims. The company had sold disability policies with an "own occupation" and "lifetime" definition of disability. They had become the countries leading disability income insurer by promoting sales using that promise to their insureds.

One way to reduce total claims was to review claims that had high levels of benefits. A new level of claims handling, called "roundtables" was started with the purpose of finding reasons to discontinue benefits for existing claims. Although the idea of getting opinions of several professionals (Medical Doctors, Attorneys, and other experienced claims people) to review claims can be helpful, Providents approach had flaws.

1. The people attending the roundtable meetings were aware that the objective was to close the claim. They were expected to be team players and go along.
2. The amount of the total reserve for each claim reviewed, was mentioned at the beginning of the discussion, thus providing an incentive and a bias to the reviewers.
3. Claims that had been paid for long periods of time were brought to the roundtable, even though there had been no change in the insureds condition.

Page 2

The companies culture of judging each claim on its merits, had been changed to "improve the bottom line".

The fact that the company discontinued issuing policies with the above definition of disability, does not release them from honoring the policies on the books.

I noted on page 314 of the Feist deposition dated 1-25-99 that Henry Dowdle, CLU, ChFC had submitted a document stating "Without a doubt, because of his (Dr. Thompson) limitations he knew continuing to practice as he had was not a possibility." I know Henry Dowdle and he has a prestigious national reputation as a professional in disability insurance. The company was so intent on reducing claims, that they did not take the word of one of their leading agents.

In the claims process, the company has the option of getting an Independent Medical Exam, (IME). Provident's attorney asked Dr. Feist page 112 in the 3-8-99 deposition if there is anything wrong with the company requesting an IME. Dr. Feist responded "that is a time honored tradition". This time honored tradition was ignored in the Mazzamuto case, thus depriving Mr. Mazzamuto of that opportunity to prove the validity of his claim.

There are several specific reasons to obtain an SME.
1. The insured should be getting better, and is not
2. The condition does not normally disable the insured.
3. Insureds activities are inconsistent with the claimed disability.

Unum Provident had terminated Mr. Mazzamuto's claim, using several arguments including these three, and yet never requested an IME. It would lead one to believe that they thought if they had an IME, they would have to pay the claim.

Provident has reported that fraudulent claims total $1.5 Billion per year. There has been much written about fraudulent claims. We do not know if the $1.5 Billion is the annual disability benefit or the total reserve that must be set up each year. It should also be noted that it is the insurance companies that are deciding which claims are fraudulent. Is any claim denied to be considered fraudulent? Was Mr. Mazzamuto's claim added to the amount of fraudulent claims? We need to know more, before we conclude that the public is increasingly committing fraud.

I agree with the decision in the California case of awarding future benefits as well as past benefits. The rationale was simple. Why should the insured be subject to harassment by the insurance company in the future? In the Mazzamuto case it will be a simple matter to calculate the present value of the future benefits, based on length and amount of the benefit, assuming an interest rate. The interest rate assumed should be low as interest on conservative investments is low.

I was also interested in the comment that one of the benefits the insured is supposed to get when they purchase a disability insurance policy is "Peace of Mind"! This benefit has been taken away from Mr. Mazzamuto.

Page 3.

Please advise if you have any questions about these materials or comments.

Very truly yours

*[signature]*

Gordon K. Rose

## CERTIFICATE OF SERVICE

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing PLAINTIFF'S SECOND MOTION TO SUPPLEMENT RECORD was served by United States first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA 19603-0679
    Counsel for Paul Revere Life Insurance Company and New York Life Insurance Company

                                                             Richard C. Angino

Dated: 12/5/02

254183.1\RCA\SC