●JUDGE'S COPY●

FILED
HARRISBURG, PA
DEC 23 2002
MARY E. D'ANDREA, CLERK
Per _____
    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | JUDGE CONNER |
| CORPORATION, et al., | : | |
| Defendants | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S SECOND MOTION TO SUPPLEMENT RECORD**

### I.   INTRODUCTION

Defendants hereby oppose plaintiff's second motion to supplement the record, another in a series of attempts by plaintiff to introduce extrinsic, irrelevant, and inaccurate information long after the discovery and expert report deadlines have passed. As with his earlier efforts, his goal is to shift the focus from his own case, which should not survive summary judgment because, as extensive discovery has revealed, plaintiff cannot satisfy his burden of proof under Third Circuit law.

In this latest effort, plaintiff attempts to introduce a supplemental expert report based on speculation and suppositions derived from irrelevant and unreliable

1

deposition testimony from unrelated cases. Plaintiff's latest so-called expert report is based almost exclusively on the deposition testimony of Dr. William Feist, whose testimony is both unreliable and inadmissible and is not information an expert may rely upon under the federal rules.

## II. PROCEDURAL HISTORY

Plaintiff alleges claims for bad faith and breach of contract arising from the denial of his claim for disability benefits. The deadlines for both discovery and expert reports expired in <u>June 2002</u>. Timely summary judgment motions were filed by both parties. Now, long after the deadlines have passed, plaintiff has once again sought to introduce inaccurate, irrelevant, and inadmissible information into the case through an untimely expert report.

## III. FACTUAL HISTORY

Plaintiff cannot satisfy his burden of proof, so he continues to divert attention from the merits of his own claim. As detailed in defendants' summary judgment brief, plaintiff claims his alleged back and psychological problems render him unable to perform his occupational duties as a restaurant owner.

For years he consistently described those duties as sedentary duties such as "executive, office duties only" and related tasks such as managing employees, preparing work schedules, keeping the books and ordering food supplies. (Sum. Judgment Appendix, Exh. B at 42-43, 330, 539 and 549). The undisputed facts do

not support plaintiff's claim that he cannot perform his occupational duties. Indeed, even Dr. Bower conceded -- among other things -- that if plaintiff's back was the only problem, he could perform the occupational duties he described to Paul Revere. (Id., Exh. G at 54-57 and 59).

Also instructive are plaintiff's non-occupational activities, such as Internet stock trading. While plaintiff claims it is too stressful for him to do bookkeeping, pay bills and order supplies, he engaged in close to $6 million in stock trades in 2000 alone. (Id., Exh. C at 49-51; Exh. I). He made these investment decisions on his own, followed the market closely, and traded by computer. (Id. at 49, 53-54). Many stocks were held for as little as a day or two. (Id. at 49). And, while plaintiff claims working at his restaurant is too stressful, he says losing over $375,000 in two years in stock trades did not bother him, or make him either anxious or angry. (Id. at 54).

Because his case is so weak, plaintiff has made a series of attempts to shift the focus away from his own claim to irrelevant and inaccurate allegations by third parties unrelated to this case. These efforts are outlined in greater detail in defendants' response to plaintiff's motion to reopen discovery.

In his latest motion, plaintiff attempts more slight-of-hand tactics to continue his strategy of misdirection. First, he has reshaped and remolded the irrelevant and unreliable information from the Feist depositions and filtered them through his

chosen expert, Gordon Rose. Second, Rose, who has no legal training, notes his approval of a Magistrate Judge's order from an unrelated suit in California. Hangarter v. The Paul Revere Life Insurance Co., No. C99-5286 JL, 2002 U.S. Dist. LEXIS 21780, (N.D. Cal. Nov. 13, 2002). The Hangarter decision, however, is under appeal, and any reference to Hangarter as "evidence" will undoubtedly lead to a mini-trial, further distracting the Court from the merits (or lack of merits) of Plaintiff's claim. The Court should reject Plaintiff's efforts for the reasons outlined below.

## IV. ARGUMENT

### A. IRRELEVANT AND UNRELIABLE INFORMATION DOES NOT SATISFY PLAINTIFF'S BURDEN OF PROOF

In his latest motion, Plaintiff continues his strategy of legal and factual misdirection. By offering untimely, irrelevant, and unreliable information, Plaintiff hopes to lead the Court away from focusing on the unavoidable flaw in his case: he cannot satisfy his burden of proof.

As stated in prior papers, the focal point of this case is Plaintiff's burden of proof for total disability. In the Third Circuit, Plaintiff must prove that he "cannot perform any of the important duties of his position." Russell v. Paul Revere Life Ins. Co., 288 F.3d 78, 82 (3d Cir. 2002)(emphasis added). Russell undermines plaintiff's claim thoroughly because the facts show that he has the ability to perform -- at least -- many of his occupational duties, such as bookkeeping and

4

office duties, but has not returned to work (at a restaurant he owns). Under Russell, plaintiff is entitled to neither total nor partial disability benefits. Id. at 82 ("As for benefits on partial disability, they are not payable unless the insured is working.").

Plaintiff has tried several strategies to deal with Russell such as ignoring it altogether and subsequently claiming it is irrelevant because it is an ERISA case. But the applicable part of Russell is not the ERISA arbitrary and capricious standard of review but the holding on plaintiff's contractual burden of proof and contract interpretation.[1] Plaintiff's most recent strategy is to try to shift the Court's focus from his burden of proof to a tabloid-style attack on UNUMProvident. But the fact that plaintiff cannot satisfy his burden of proof is no reason to allow him to interject untimely, inaccurate and irrelevant claims into the case.

## B. THE LATEST EXPERT REPORT SHOULD BE STRICKEN

### 1. Experts Cannot Rely On Unreliable "Evidence" That Does Not Fit The Facts Of This Case.

Rule 702 imposes three distinct restrictions on admission of expert testimony: qualifications, reliability and fit. In re Paoli Railroad Yard PCB Litig. v. Southeastern Pennsylvania Transp. Auth., 35 F.3d 717, 741-42 (3d Cir. 1994)

---

[1] Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392, 404-05 (D. Del. 2001) (finding that "the policy language places upon the employee the initial burden to demonstrate that he or she can not perform any of the important duties of his position") aff'd, 288 F.3d 78 (3d Cir. 2002); see also Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264 (4th Cir. 2002); McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 588 (8th Cir. 2002); Yahiro v. Northwestern Mutual Life Ins. Co., 168 F. Supp. 2d 511, 517-518 (D. Md. 2001).

5

(citing <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 at 587-591 (1993)). The underlying objectives of Rule 702 and <u>Daubert</u> and its progeny would be undermined completely if an expert could simply parrot the speculative accusations of another witness whose testimony was found unreliable and inadmissible. <u>In Re: Diet Drugs Products Liability Litigation</u>, MDL Docket No. 1203, 2001 U.S. Dist. LEXIS 1174 at *60, (E.D. Pa. Feb. 1, 2001)(excluding expert opinion which relied on another expert whose opinion was inadmissible).

Rose's latest "opinion" is deficient in at least two respects: (1) it does not "fit" the case; and (2) it is based on unreliable information.

**(a)    Rose's Opinions Do Not Fit This Case.**

Although this case involves a dispute over Paul Revere's decision in 2001 to deny plaintiff's claim for benefits, plaintiff now asks the Court, five months after the close of discovery, for permission to introduce yet another expert report based on deposition testimony of a former employee of Provident Life and Accident Insurance Company who (1) has no knowledge of Mazzamuto's claim, (2) never worked for Paul Revere, (3) never reviewed any Paul Revere file, (4) left Provident before it acquired Paul Revere, and (5) had little knowledge of even Provident's claim handling while employed there. Feist's testimony itself is irrelevant and Rose's opinion based on this testimony cannot satisfy Rule 702's "fit" requirement.

12/23/02/SL1 316356v1/10305.060

Feist starting working for Provident as an assistant medical director in 1982. See Exh. "A," (Excerpts from Feist's Deposition in Provident Life and Acc. Ins. Co. v. Fallor, No. A:99-2522 (C.D. Cal.)) at 8:22-24). He left Provident in February of 1996. Id. at 9:1-5. Feist had little to do with Provident's claims handling during his tenure. Instead, his responsibilities focused on medical evaluations in the Underwriting Department. Id. at 11:14-12:8. But in April of 1995, Feist was asked to step back into the disability claims area and take on a significant number of new job responsibilities. Id. at 17:2-9. He performed these additional responsibilities for ten months, feeling taken advantage of the entire time, until finally in February 1996, he left Provident to work with another insurance company. Id. at 103:13-23.

Since leaving Provident, Feist has given a number of depositions in which he has been critical of how Provident handled "round-tables," which are a fairly common practice in the insurance industry of bringing together a number of different medical and claims resources to evaluate claims. But because Provident purchased Paul Revere in March 1997, long after Feist was gone, he could not possibly have ever reviewed a Paul Revere claim file, much less Mazzamuto's file which was handled in 2000 and 2001. See Exh. "A" at 79:1-81:7.

Significantly, several courts have held that Feist's testimony is irrelevant to claims that came after his tenure with Provident. One example is Hyatt v. UNUM

7

Life Ins. Co. of America, No. 00-613-JJF, 2001 U.S. Dist. LEXIS 10366, at *14 n.7 (D. Del. July 11, 2001), where the Court found his testimony irrelevant because he worked for Provident before its merger in 1999 with UNUM and because his employment ended in February 1996 (in Hyatt, the injury occurred in 1998; here, Mazzamuto's alleged disability did not arise until 2000).

Similarly, in Yumukoglu v. Provident Life and Acc. Ins. Co., 131 F. Supp. 2d 1215 (D. N.M. 2001), Feist's testimony was insufficient to create a genuine issue of material fact under Fed. R. Civ. P. 56 where the claim arose after Feist left Provident. The Court held that while Feist might arguably be competent to testify about Provident's practices before he left the company, "it is evident from his deposition that his general impressions are inapplicable to this case and are therefore irrelevant." Id. at 1227.

Here, there is a similar lack of relevance. As in Hyatt, Feist left Provident long before it acquired Paul Revere and his views of Provident are therefore irrelevant to how Paul Revere handled Mazzamuto's claims. And, similar to both Hyatt and Yumukoglu, Feist's testimony is irrelevant to a claim that arose in 2000, <u>more than four years after he left Provident</u>. As a result, Rose's report, based on Feist's depositions, should be excluded.

This is true as well of Rose's reference to the Magistrate Judge's finding of a violation of California insurance laws in Hangarter. Rose is not a

8

lawyer and lacks the necessary qualifications to render an opinion based on a legal opinion. Allowing Rose to "opine" about <u>Hangarter</u> will also lead to delays and confusion, as Defendants will need to present their side of that case. Thus the Court will be asked to hear a case within a case.

Furthermore, Rose's opinion that future benefits is a proper remedy based on <u>Hangarter</u> is contrary to Pennsylvania law, which does not allow a claimant to recover future benefits where, as here, the policy requires periodic proof of ongoing disability. <u>O'Shea v. Mutual Life Ins. Co. of New York</u>, No. 01-2505, 2002 U.S. Dist. LEXIS 11826, at * 4 (E.D. Pa. January 23, 2002). Not only does Rose seek to usurp the Court's role of instructing the jury, he plans to give them legally incorrect information.

Further, to refute the impression of Defendants Rose is trying to create, Defendants will have introduce evidence about the majority of the lawsuits in which their claims handling decisions have been affirmed by courts. The resulting mini-trial over the merits of an unrelated case in another jurisdiction will further serve to confuse the fact-finder.

Rose's speculation based on Feist's irrelevant testimony does nothing more than confuse the proper issue in this case: plaintiff's claim of total disability. Speculation, expert or not, adds nothing.

### (b) Rose's Opinion Is Based On Unreliable Information.

Roses opinion fails to satisfy the reliability requirement of Rule 702 because he blindly relies upon Feist's allegations while ignoring Feist's lack of personal knowledge of plaintiff's claims  But even apart from the fact that Feist never worked for Paul Revere, and has zero knowledge of this case, his allegations are beyond the scope of even his own experience.  Rose's reliance on Feist results in nothing more than inference upon inference.

Perhaps most importantly for this case, Feist admitted he was never present for any meetings regarding Paul Revere claims. Exh. "A" at 79:1-81:7.  Again, he has no knowledge of Mazzamuto's claim or how Paul Revere handled it.

And even the theories he espouses (about Provident) are inconsistent with the facts.  For example, while Feist implies that Provident used round-table meetings to improperly deny claims, he testified in <u>Thompson v. Provident Life and Acc. Ins. Co.</u>, No. A:98-CA-407-55 (W.D. Tex.) that the majority of the round-table reviews did not involve any improper action on the part of Provident. <u>See</u> Exh. "B" (Excerpts of Feist Deposition in <u>Thompson</u>) at 241:21-243:02.  Rose overlooks Feist's concession regarding round-tables, and instead concludes that "Providents [sic] approach had flaws."  This bald conclusion is unjustifiable for at least two reasons.  First, Dr. Feist's impression of Provident Life round-tables back in the mid-1990s does not relate to Paul Revere's claims processing in 2000 and

2001. Second, Dr. Feist, who regularly fell asleep during round-table discussions, is not a reliable source of for the efficacy of the roundtable process.

Feist has also admitted (1) that he is *not* a claims expert (Exh. "B" at 228:16-229:13); (2) that where a claims representative had a question as to whether a claim was payable, it was appropriate to raise the question before the round-table; (3) that there are legitimate reasons to cease paying claims other than just the question of whether a claimant is medically disabled; (4) that Provident *did not do anything improper* in the great majority of claims; and (5) that he was *unaware* of what the company ultimately did with Provident claim reviews in which he was involved, and, thus, he did not know if those claims were terminated or otherwise. Id. at 241:21-251:02. In fact, Feist cannot recall a single episode where he recommended that a Provident claim be paid but his advice was disregarded. Id. at 258:11-259:10. See Exh. "C" (Excerpts from Feist deposition in Knee v. Provident Life and Acc. Ins. Co., CV-97-3771 (Ala.) at 73:2-74:2. All of this apparently escapes (probably by design) Rose's attention.

Rose either ignores or simply fails to recognize that Feist had very minimal exposure even to Provident's claims department prior to Spring 1995. Exh. "B" at 200:20-201:20; Exh. "C" at 21:8-22:6. Feist did not begin sitting in on the round-table meetings until Spring of 1995. Id. Feist has also testified that he saw only a total of about 75 claims or about 1/1000th of the claims that Provident

11

processed each month during the 10 month period he participated in round table sessions. Exh. A at 126:9-127:10 and 107:9-20. He even concedes that <u>he regularly fell asleep during these meetings</u>. Exh. A at 106:18-107:7.

Even Rose's report exposes the deficiency of Dr. Feist's testimony. Regarding Feist's mention of the "time honored tradition" of Independent Medical Exams ("IME"), Rose offers a remarkably unhelpful and confusing equivocation: "It would lead one to believe that they thought if they had an IME, they would have to pay a claim." Hardly an expert opinion, Rose's report is simply guess-work. No qualified expert would rely on such unreliable information. As a result, Rose's report is based on unreliable information and should be excluded.

**(c)     Rose bases his conclusions on Feist, whose testimony should be excluded under Rule 403.**

In his depositions in completely unrelated cases, Feist obviously could not have connected his version of events from the April 1995 to February 15, 1996 time period to the handling of Mazzamuto's claim in 2001. For this reason, Rose's attempt to do so under the guise of an expert opinion will create a danger of undue prejudice, confuse the issues, and mislead the jury, thereby substantially outweighing any probative value of the testimony.

Similarly, allowing Feist's testimony, in the form of Rose's post-hoc reflections, will lead to a host of issues that will bog down the jury including credibility issues because Feist is not a trustworthy witness. In fact, Feist *admitted*

12

in the <u>Fallor</u> case that he submitted a false affidavit regarding his ability to review certain claims file in another case. Exh. "A" at 79:13-81:5-7.

Bias will be another area of inquiry which will distract the jury from evaluating the merits of Mazzamuto's claim. Before Feist was ever asked to attend any round-table discussions, he was already unhappy with his job and began looking for other employment. Exh. "A" at 88:15-89:24; Exh. "B" at 268:14-272:23.

As a result of being asked to sit in on the round-table discussions in the Spring of 1995 Feist, a corporate officer, was required to work a few more hours each week without additional compensation. Exh. "B" at 210:23-212:23. And, Feist began to feel "like [Provident was] taking advantage" of him. Exh. "A" at 103:13-23. In short, Feist left because he was a disgruntled employee.

For all these reasons, Rose's supplemental report will inevitably mislead and/or confuse the jury and distract them from the real issue in this case -- whether plaintiff can satisfy his burden of proof under <u>Russell</u>. Given the lack of probative value of Rose's supplemental opinion, it should be excluded under Rule 403.

### 2. Experts Cannot Rely On Inadmissible Evidence Unless There Are Good Grounds To Find The Data Reliable.

Lay opinion testimony or inferences are limited under Rule 701 to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witnesses' testimony or the

13

determination of a fact in issue. Lay opinions cannot be based on speculation. <u>U.S. vs. .59 Acres of Land</u>, 109 F.3d 1493, 1495-1496 (9th Cir. 1997); <u>Walton vs. Jennings</u>, 999 F.3d 277, 283-84 (7th Cir. 1993). Feist's speculative allegations are nothing more than inadmissible lay opinions. Plaintiff cannot get around Rule 701 by using Rose to repeat Feist's inadmissible opinions.

Instead, Rule 703 (reliance by an expert on inadmissible evidence) is not satisfied here because "the standard [under Rule 703] is equivalent to Rule 702's reliability requirement -- there must be good grounds on which to find the data reliable." <u>In re Paoli Railroad Yard</u>, 35 F.3d at 748. As discussed above, Feist's depositions are unreliable, and Rose's reliance unjustified.

Further, Rule 703 applies to evidence "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences." No reasonable expert would simply accept Feist's testimony about unrelated events that occurred over six years ago without other evidence that could either corroborate or refute Feist's point of view. This is what an expert is required to do under <u>Daubert</u> and its progeny which requires that "the process or technique the expert used in formulating the opinion is reliable." <u>In re Paoli Railroad Yard</u>, 35 F.3d at 742.

But Rose's only "process or technique" is to blindly latch onto anything he can find to support his attack on defendants. This follows his approach of acting as an advocate not an expert; an approach inconsistent with applicable law.

Finally, Rule 703 prohibits experts from disclosing facts to the jury that are otherwise inadmissible unless the court finds their probative value substantially outweighs their prejudicial effect. Again, the Feist depositions have no probative value and the prejudicial effect would be substantial; therefore, plaintiff cannot use Rose as a back-door means of presenting these allegations.

## V. CONCLUSION

For the reasons set forth above, the Court should deny plaintiff's second motion to supplement the record.

Dated: December 23, 2002          STEVENS & LEE

By: E. Thomas Hanefer
E. Thomas Hanefer
Attorney I.D. No. 55773
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants

# **CERTIFICATE OF SERVICE**

I, E THOMAS HENEFER, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Memorandum of Law upon the following counsel of record, by first class mail, postage prepaid, addressed as follows:

> Richard C. Angino, Esquire
> 4503 North Front Street
> Harrisburg, PA  17110-1708

*E. Thomas Henefer*
E. Thomas Henefer

Date:  December 23, 2002