UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>    Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>    Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANTS' MOTION TO STRIKE AFFIDAVIT OF PLAINTIFF'S COUNSEL RICHARD C. ANGINO**

**I.    PROCEDURAL HISTORY**

| | |
|---|---|
| 8/9/02 | 1) defendants' motion for summary judgment<br>2) brief in support, appendix in support of motion<br>3) statement of material facts, motion in limine and brief in support |
| 8/12/02 | 1) plaintiff's motion for partial summary judgment<br>2) brief in support and statement of undisputed facts |
| 8/20/02 | Defendant's supplemental appendix in support of motion for summary judgment |
| 8/26/02 | 1) plaintiff's response to defendants' statement of material facts<br>2) motion to extend deadline for expert reports<br>3) brief in support of motion<br>4) plaintiff's brief contra defendants' motion in limine<br>5) plaintiff's brief contra defendants' motion for summary judgment |
| 8/30/02 | 1) defendants' response in opposition to plaintiffs motion for summary judgment<br>2) appendix in opposition<br>3) defendants' response to plaintiff's statement of material facts |
| 9/9/02 | reply brief in support of plaintiff's motion for summary judgment |
| 9/10/02 | 1) defendants' reply brief in support of motion for summary judgment<br>2) defendants' reply memorandum in support of motion in limine |
| 9/13/02 | Plaintiff's exhibit list, witness list, statement of undisputed facts, and jury instructions |

| Date | Filing |
|---|---|
| 9/16/02 | 1) defendants' response in opposition to plaintiff's motion to extend deadline for expert reports<br>2) memo in support thereof |
| 9/30/02 | Defendants' proposed jury instructions |
| 10/2/02 | Plaintiff's summary of facts, law, and damages |
| 10/3/02 | Defendant's Motions in limine and briefs in support |
| 10/4/02 | Plaintiff's motion in limine re stock trading & brief in support |
| 10/7/02 | Plaintiff's Motion for recusal & brief in support |
| 10/15/02 | Plaintiff's response to defendants' motion in limine & brief in opposition thereto |
| 10/17/02 | Plaintiff's motion to permit supplemental expert report and brief in support |
| 10/21/02 | 1) defendants' response in opposition to plaintiff's motion for recusal<br>2) defendants' memo of law in support of response in opposition to motion for recusal<br>3) defendants' answer to plaintiff's motion in limine<br>4) defendants' brief in opposition to plaintiff's motion in limine |
| 10/24/02 | Order scheduling trial, revising deadlines |
| 10/28/02 | Order denying motion for recusal |
| 10/29/02 | 1) motion to bring to court's attention to recently-filed affidavit in support of motion for summary judgment<br>2) plaintiff's counsel's affidavit re day-in-life video |
| 11/1/02 | 1) defendant's reply brief in support of defendant's motion in limine re expert reports<br>2) defendants' memo of law in opposition to plaintiff's motion to supplement expert report |
| 11/19/02 | Plaintiff's motion to reopen discovery, etc. & brief in support |
| 12/5/02 | plaintiff's second motion to supplement record |
| 12/9/02 | 1) defendants' motion for permission to submit supplemental expert report and to use such report in support of defendants' motion for summary judgment<br>2) defendants' response in opposition to plaintiff's motion to reopen discovery, file an amended complaint, and extend deadlines<br>3) defendants' memo of law in opposition to plaintiff's motion to reopen discovery. etc |
| 12/10/02 | order granting Defendant's Motion to Supplement Expert Report |
| 12/10/02 | 1) plaintiff's response to defendants' motion for permission to submit supplemental expert report<br>2) plaintiff's reply to defendants' memo of law in opposition to plaintiff's motion to reopen discovery |

| | |
|---|---|
| 12/12/02 | 1) defendants' memo of law in opposition to plaintiff's motion to supplement record<br>2) defendants' memo of law in opposition to plaintiff's motion to add additional authority |
| 12/18/02 | defendants' supplemental appendix in support of msj |
| 12/18/02 | plaintiff's reply brief to defendants' memo of law in opposition to plaintiff's motion to supplement record |
| 12/23/02 | affidavit of Plaintiff's counsel, Richard Angino re article |
| 12/26/02 | defendants' memo of law in opposition to plaintiff's second motion to supplement record |
| 1/13/03 | defendant's motion requesting leave to file sur reply and memo in support |
| 1/13/03 | motion to strike affidavit of Plaintiff's counsel |
| 1/23/03 | order of court revising the pretrial/trial schedule with pretrial memoranda to be filed on or before 12 p.m. on Wednesday, April 26, 2003 and trial to take place during the May 2003 trial term with jury selection commencing on Monday, May 5, 2003 |

> 5. Prior to the commencement of trial, counsel shall submit three (3) complete exhibit lists and two (2) complete sets of exhibits for the court's use, in addition to the original which will be offered into evidence.

## II. **FACTUAL HISTORY**

As is apparent from the procedural history, there are currently before the Court cross-motions for summary judgment, motions in limine, motions to file supplemental expert reports, motions to supplement the record, motions to extend deadlines, etc. and responses to same.

Succinctly stated, Mr. Mazzamuto was on owner/operator of a pizza restaurant who applied for and obtained an occupation-specific disability policy. The policy was issued by New York Life. Unbeknownst to Mr. Mazzamuto, he had a pre-existing back abnormality which was aggravated by a fall or falls in the mid-1990s and resulted in a rather lengthy period of disability.

New York Life initially sought to rescind the policy on the basis of the undisclosed back condition. When the New York agent who sold Mr. Mazzamuto his policy, Salvatore Ferrigno,

supported Mr. Mazzamuto's position. New York Life acknowledged that it had no defense and consequently paid Mr. Mazzamuto's disability claim.

Mr. Mazzamuto returned to work. His back condition continued to worsen. In July of 2000, Mr. Mazzamuto had a heart attack and as a result of the emotional response from that heart attack plus primarily his degenerating back condition. Mr. Mazzamuto was unable to return to work following his July 2000 heart attack..

In September of 2000, Mr. Mazzamuto made a claim for disability benefits. Mr. Mazzamuto's treating physician, Dr. Bower, as well as the physician who treated Mr. Mazzamuto by giving him injections, Dr. Kasenske, completed physician statements and provided documentary proof that Mr. Mazzamuto was disabled under his occupation-specific disability policy, i.e. operating a pizza restaurant.

The original New York Life policy obligation was transferred to the other Defendants in the case, namely Unum Provident and Paul Revere. The record shows that claim applications and documentary support of disability were requested by and completed for various Defendants. No Defendant ever had Mr. Mazzamuto physically examined. Mr. Mazzamuto's claim was processed in-house, and his claim was denied on the basis that his original application indicated that he was the president of a first-class Italian restaurant, and Defendants took the position that such a president did not have to do the type of physical activities that Mr. Mazzamuto actually had to do as an owner/operator of a pizza restaurant, e.g. standing for long periods of time, lifting, bending, stooping, moving, etc.

Incredibly, Defendants took that position even though Mr. Mazzamuto was paid in the mid 1990s for his earlier back disability claim and the evidence indicates that Mr. Mazzamuto's

back worsened from 1996-2000 and his duties never changed from the time of the application and the time of the 1996 and 2000 claims.

It has been Plaintiff's position that Defendants wrongfully denied Mr. Mazzamuto's claim by Defendants' refusal to accept the opinions of the treating physicians, failing to obtain an independent medical examination, processing Mr. Mazzamuto's claim in-house with individuals desirous to support the bottom line by denying as many claims as possible, by relying upon the initial application's description of duties rather than Mr. Mazzamuto's actual duties as an owner/operator of a pizza restaurant, by attempting to contend that the occupation-specific disability policy was really a policy that permitted denial if the insured was able to perform any function of his job. The record reveals that Defendants' employees disregarded totally Mr. Mazzamuto's statement that he had to stand for long periods of time at his job. Defendants also disregarded their own adjuster's statement detailing Mr. Mazzamuto's substantial disabilities.

Mr. Mazzamuto was forced to engage an attorney. His attorney attempted to point out to Defendants their lack of bases for denying Mr. Mazzamuto's claim. Defendants persisted in their denial position. Mr. Mazzamuto was forced to start suit.

After the suit was brought, Mr. Mazzamuto was deemed totally disabled by the Social Security Administration which as requirements much more demanding than Mr. Mazzamuto's occupation-specific disability policy. He was also deemed totally disabled by New York Life with respect to a life insurance policy issued to Mr. Mazzamuto. New York Life is the same company that issued Mr. Mazzamuto's disability policy and is one of the Defendants in the instant matter.

Even after Mr. Mazzamuto brought his lawsuit, Defendants have never requested a physical examination. Instead they have relied upon two doctors who never saw Mr. Mazzamuto

and were expressing opinions after the fact based upon records given to them. The orthopedic doctor contends that Mr. Mazzamuto can do his job with the accommodations for his back problems. The doctor who was engaged to express an opinion as to Mr. Mazzamuto's emotional condition stated candidly that he would be unable to express an opinion without seeing the patient and Defendants never set up an appointment for Mr. Mazzamuto to see him.

Plaintiff engaged an expert who expressed an opinion as to Defendants' bad faith actions. After the initial discovery period and the filing of expert report deadline had expired, it came to Plaintiff's bad faith expert's attention and the attention of various publication that Unum Provident had sold a number of these occupation-specific disability policies in the 1980s and these policies had turned out to be non-profitable, and when a new president took over in the early 1990s, he set about developing ways to get around and/or to deny payment on these occupational-specific disability policies. When Plaintiff's counsel learned of this policy, Plaintiff filed various motions and/or affidavits in support of utilizing this company-wide practice as still another element of bad faith in this case. A motion to extend deadlines and the actual filing of supplemental expert reports beyond the original deadline dealing with this newly discovered bad faith allegation is part of numerous filings commencing August 26, 2002, i.e. Motion to Extend Deadline for Expert Reports and continuing to and including Affidavit of Plaintiff's Counsel which Defendants desire to strike.

## III. ARGUMENT

The Eastern District in the recent case of Simon v. Unum Provident Corp., 2002 U.S. Dist. Lexis 9331 (E.D. Pa. 2002), denied Unum Provident's motion for summary judgment with respect to Michael Simon's bad faith claim against Unum Provident.

Like Mr. Mazzamuto, Michael Simon had purchased an occupation-specific disability policy. He was employed as a floor trader at the Philadelphia Stock Exchange, applied for and received long-term disability benefits based upon severe anxiety and depression. Four years later Unum Provident terminated his benefits after the carrier obtained two independent medical examination reports which indicated he was not disabled from work. Again, like Mr. Mazzamuto, Mr. Simon sued under alleged breach of contract and bad faith.

In the <u>Simon</u> case, Unum Provident contended that it did not commit bad faith <u>because it relied upon the two independent medical examinations</u>.

In the instant case, Unum Provident <u>never did set up one, let alone two, independent medical examinations</u>. Unum Provident <u>never had Mr. Mazzamuto examined</u>. Unum Provident does not contend that Mr. Mazzamuto is not disabled based upon what his duties were at the pizza restaurant, but rather on the basis of the general language of his initial application. At best Unum Provident was able to get a doctor to say he was of the opinion that Mr. Mazzamuto could do his job with accommodations. There is nothing in the occupation-specific disability policy that provides that if someone can do a job with accommodations he is not disabled. The clear wording of the occupation-specific disability policy as to "disability" is just the opposite.

Since August 26, 2002, Plaintiff's counsel has been supplying the Court with expert reports and documentary evidence upon which Plaintiff's expert has expressed his opinion including actual court cases, depositions taken pertaining to actual court cases involving Unum Provident. Plaintiff's counsel has also supplied the lengthy opinion from the California case finding Unum Provident to be guilty of bad faith in their handling of occupational-specific disability policies such as Mr. Mazzamuto's.

The Affidavit filed by Plaintiff's counsel on December 23, 2002, was just one more item of the type that experts generally rely upon in expressing opinions.

The Eastern District denied Liberty Mutual's motion for summary judgment of Plaintiff's bad faith claim based upon alleged independent medical examination improprieties in <u>Atiyeh v. Liberty Mutual Fire Insurance Co.</u>, 185 F.Supp.2d 436 (E.D. Pa. 2002). Again Liberty Mutual held that it could not be found guilty of bad faith because it relied upon independent medical examinations. The Eastern District Court in <u>Atiyeh</u> was of the opinion that summary judgment is not appropriate because there are <u>issues of fact</u> as to the truly independent nature of the medical examination reports that led to the termination of benefits. It should be pointed out that Unum Provident in the instant case did not have any independent medical examination reports when it denied Mr. Mazzamuto's claim and in fact did not submit any expert reports whatsoever until the expert report deadline in the instant action. As pointed out earlier, the two reports did not constitute medical examination reports because the two doctors never examined Mr. Mazzamuto. Unum Provident's manual suggests independent medical examinations as a method of disputing treating physician's rights and yet Defendant sought no such examination. At this stage nothing is known as to the two experts whom Defendants consulted to review the records and give opinions at the time of the discovery deadline.

In a third case, the Eastern District of Pennsylvania denied summary judgment for a bad faith claim involving delay and inadequate communication between the carrier and the insured. <u>Kilmer v. Connecticut Indem. Co.</u>, 189 F.Supp.2d 237 (E.D. Pa. 2002). In the instant case, Mr. Mazzamuto first filed his claim in September of 2000. It is now almost February of 2003, and even after all of this history, Defendants have refused to pay or even acknowledge the

appropriateness of his claim. The delay in the Kilmer case was only eight months, whereas in the instant case it is two and one-half years.

Delay was also a factor in Levin v. Great American Ins. Co., 2001 U.S. Dist. Lexis 20100 (E.D. Pa. 2001). Great American, in support of its motion for summary judgment with respect to the bad faith claim, contended that it acted reasonably in denying M. S. Levin's claim because an independent medical examination physician had determined that M. S. Levin's disc herniations were degenerative and not traumatic in nature. It also contended that M. S. Levin's insistence upon policy limits for settlement purposes precluded any reasonable settlement offer. The Levin Eastern District judge denied the summary judgment motion finding that a reasonable jury could conclude that Great American committed bad faith. The issue of bad faith is a factual one for a jury to determine.

There have been a number of cases in 2002 where bad faith was found and substantial damage awarded. In Bonenberger v. Nationwide Mut. Ins. Co., 791 A.2d 378 (Pa. Super. 2002), the trial court and the Superior Court concluded that Nationwide "disregarded plaintiff's medical records, conducted no independent medical examination, and made no reasonable evaluation The trial court and Superior Court also agree that claims personnel did not understand or take steps to learn Mr. Bomberger's condition. The Superior Court upheld the trial court's utilization of Nationwide's claims manual in reaching its conclusion that Nationwide committed bad faith. Like the instant case and its factual background, the Nationwide manual spoke of reducing the average claim to a level consistent with and preferable lower than major competitors, being defense minded carrier in the minds of legal communities, aggressively using IMEs, attempting to catch claimants off-guard, and assigning cases to defense counsel who fully follow the adjuster's orders and who refrain from exercising independent judgment.

The Superior Court held that it was the responsibility of insurance carriers to treat their insureds fairly and properly evaluate any claims that they make, that the claims should be evaluated on merits alone and that insurers may not look to its own economic considerations or seek to limit its potential liability and operate in a fashion to "send a message."

A finding of bad faith occurred in a Western District case of <u>Anderson v. Nationwide Ins. Co.</u>, 2002 U.S. Dist. LEXIS 3369 (WD PA 2002). <u>Also see</u>, <u>Hollock v. Erie Ins. Exchange</u>, No. 6790-C-1999 (C.P. Luzerne, January 7, 2002). Judge Olszewski in a bench trial specifically noted that the insurer's conduct was inconsistent with the Unfair Insurance Practices Act (hereafter UIPA). The court awarded plaintiff $80,072 in interest, $162,952 in attorneys' fees, $35,800 in costs, and $2.8 million in punitive damages for a total verdict of $3,078,825. Judge Olszewski determined that 10% of Erie's net income would not hamper Erie's operation with $4.8 billion in assets.

An insurance policy is a contract and must be interpreted in accordance with its terms and conditions. If there is any uncertainty as to the meaning of any terms or conditions, the terms and conditions should be construed against the insurance company who drafted the policy and liberally in favor of the insured, the plaintiff in this case. <u>Lititz Mut. Ins. Co. v. Steely</u>, 567 Pa. 98; 785 A.2d 975(2001), rearg. denied, 2002 Pa. LEXIS 210 (Pa. Jan. 25, 2002); <u>Standard Venetian Blind Co. v. American Empire Ins. Co.</u>, 503 Pa. 300, 469 A.2d 563 (Pa. 1983).

Bad faith is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, bad faith imports a dishonest purpose and means a breach of a known duty of good faith and fair dealing through some motive of self-interest or ill will. <u>Terletsky v. Prudential Property and Casualty Insurance Company, 437 Pa. Super. 108, 649 A.2d 680 (1994)</u>.

Under Pennsylvania law, an insurer has an obligation to exercise good faith in its handling of a claim with its insured, and it is liable for bad faith if it does not. <u>Cowden v. Aetna Casualty and Surety</u>, 389 Pa. 459, 468, 134 A.2d 223, 227 (1957).

> Implicit in the duty of good faith and fair dealing is the insurer's obligation to be fair and honest with its insured and to give equal consideration to the insured's interests.

Appleman, *Insurance Law and Practice*, §8878 (2002 Cum. Supp. at 35). Further,

> The duty of good faith and fair dealing that an insurer owes an insured obligates the insurer to refrain from (1) engaging in unfounded refusal to pay policy proceeds, (2) causing unfounded delay in making payment, (3) deceiving the insured, and (4) exercising any unfair advantage to pressure an insured into settlement of the insured's claim.

Appleman, *Insurance Law and Practice*, §8878 (2002 Cum. Supp., at 35).

The Pennsylvania Unfair Insurance Practices Act, 40 Pa.C.S.A. §1171.1 *et seq.* and regulations define unfair methods of competition and unfair or deceptive acts or practices in the insurance business and provide guidance in defining bad faith. <u>O'Donnell v. Allstate Ins. Co.</u>, 1999 Pa. Super. 161, 734 A.2d 901 (1999). See, <u>MacFarland v. United States Fidelity and Guarantee Co.</u>, 818 F.Supp. 108, 110 (E.D. Pa. 1993); <u>Coyne v. Allstate Insurance Co.</u>, 771 F.Supp. 673, 678 (E.D. Pa. 1991); and <u>Romano v. Nationwide Mut. Fire Ins. Co.</u>, 435 Pa. Super. 545, 646 A.2d 1228-1332 (1994). The following insurance practices are prohibited:

> (i) Misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue.
>
> (ii) Failing to acknowledge and act promptly upon written or oral communications with respect to claims arising under insurance policies.
>
> * * *
>
> (iv) Refusing to pay claims without conducting a reasonable investigation based upon all available information.
>
> * * *

(vi) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear.

(vii) Compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons.

* * *

(xiv) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim …

40 P.S. §1171.5.

Where the evidence shows that Defendants intentionally or recklessly disregarded any of the prohibited provisions of the insurance law or regulations, a verdict for Plaintiff is required.

Plaintiff's counsel's affidavit is relevant because its attachment is such that Plaintiff's bad faith expert can testify that he is familiar with same and it and various other items that he has read are the types of items that experts generally rely and based upon all of these documents and items of information and depositions and court orders and court opinions, he is of the opinion that Defendants are guilty of bad faith.

WHEREFORE, Plaintiff requests that this Honorable Court deny Defendants' Motion to Strike.

Respectfully submitted,

ANGINO & ROVNER, P.C.

_____
Richard C. Angino, Esquire
I.D. No. 07140
4503 N. Front Street
Harrisburg, PA 17110
(717) 238-6791
Attorney for Plaintiff

Date:   January 27, 2003

## CERTIFICATE OF SERVICE

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Strike Affidavit was served by United States first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA 19603-0679
    Counsel for Paul Revere Life Insurance Company and New York Life Insurance Company

                                                   Richard C. Angino

Dated: January 27, 2003