# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,                    :    CASE NO. 1:01-CV-1157

      Plaintiff                          :

                      :    (Judge Conner)

      v.                                 :

UNUM PROVIDENT CORPORATION;            :
PAUL REVERE LIFE INSURANCE
COMPANY; NEW YORK LIFE                 :
INSURANCE COMPANY,                     :

      Defendants                         :

**FILED**
HARRISBURG, PA

FEB 07 2003

MARY E. D'ANDREA, CLERK
Per _____
      Deputy Clerk

## M E M O R A N D U M

      Before the court are the following motions: 1) defendants' motion in limine concerning plaintiff's proposed experts (Doc. 18); 2) plaintiff's motion to extend deadline for filing expert report (Doc. 31); 3) plaintiff's motion to permit supplemental expert report (Doc. 59); 4) plaintiff's motion to bring to the court's attention recently filed affidavit (Doc. 69); 5) plaintiff's motion to supplement the record (Doc. 76); 6) plaintiff's motion to add additional authority in support of his motion for summary judgment and opposing authority to defendants' motion for summary judgment (Doc. 77); and 7) plaintiff's second motion to supplement the record (Doc. 78). The matters are ripe for disposition.

## I.      Background

      This case arises from defendants UNUM Provident Corporation, Paul Revere Life Insurance Company, and New York Life Insurance Company's denial of plaintiff, Vincenzo Mazzamuto's ("Mazzamuto") claim for long term disability benefits based on back and psychiatric conditions. Plaintiff filed the instant complaint on June 26, 2001. (Doc. 1). In his complaint, Mazzamuto alleges common

law breach of contract and statutory bad faith pursuant to 42 Pa. C.S.A. § 8371. (Doc. 1).

## II.    Defendants' Motion in Limine

### A.    Background

Plaintiff seeks to admit the expert testimony of Dr. Douglas Bower and Mr. Gordon K. Rose, CLU. Dr. Bower serves as Mazzamuto's treating physician, and intends to testify that plaintiff's physical and psychiatric conditions render him "disabled" as defined by defendants' insurance policy. (Doc. 22, Ex. G). In addition, Mazzamuto proffers the testimony of Mr. Rose, a purported expert in insurance claims practices. Mr. Rose plans to opine that defendants' actions during the claims investigation process constitute statutory bad faith. (Doc. 33, Ex. B).

### B.    Discussion

#### 1. Applicable Law

Trial courts must perform a "gatekeeping" function in order to ensure that all expert testimony heard by the factfinder is both relevant and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993); Oddi v. Ford Motor Co., 234 F.3d 136, 144 (3d Cir. 2000); Hamilton v. Emerson Electric Co., 133 F.Supp. 2d 360, 366 (M.D.Pa. 2001). Federal Rule of Evidence 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . " FED. R. EVID. 702. This requirement applies to traditional scientific experts like Dr. Bower, and experts in technical and other

2

specialized knowledge, like Mr. Rose. <u>See Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 141 (1999).

A proposed expert must satisfy three requirements before the court permits his or her testimony to be heard by the factfinder. First, the court must deem the expert "qualified." <u>Elcock v. Kmart Corp.</u>, 233 F.3d 734, 741 (3d Cir. 2000); <u>Oddi</u>, 234 F.3d at 145; <u>In re Unisys Savings Plan Litigation</u>, 173 F.3d 145, 155 (3d Cir. 1999). Second, the evidence must be based on "reliable" methodology. <u>Id.</u> Finally, the proposed expert testimony must "fit" with the subject matter of the case, or "assist the trier of fact" in resolving disputed factual issues. <u>Id.</u> Appellate courts review a trial court's decision to admit or exclude expert testimony for abuse of discretion. <u>Kumho Tire</u>, 526 U.S. at 152, <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 143 (1997); <u>Elcock</u>, 233 F.3d at 740-41.

### 2. Dr. Bower's Testimony

Defendants argue that Dr. Bower is not qualified to opine that Mazzamuto is disabled from his back and psychiatric conditions. (Doc. 19). Dr. Bower is board certified in internal medicine, and identifies himself as a general internist, which is "basically the non-surgical adult medical practice." (Doc. 22, Ex. G, p. 4). He concedes that he is not board certified in psychiatry nor an expert in back conditions. <u>Id.</u> at pp. 4-5. Plaintiff argues that Dr. Bower's experience treating patients suffering from back conditions and psychiatric problems, combined with the eight years he served as plaintiff's primary treating physician, qualify him to render an opinion on plaintiff's condition. (Doc. 33).

Before a trial court permits a witness to testify as an expert, that witness must be qualified by virtue of specialized expertise. <u>Elcock</u>, 233 F.3d at 741; <u>Hamilton</u>, 133 F.Supp. 2d at 367-68; <u>Burton v. Danek Medical, Inc.</u>, 1999 WL 118020 at

*3 (E.D.Pa. 1999). The basis of this specialized knowledge can be formal education, practical experience, or technical skill. See Elcock, 233 F.3d at 741; Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 114 (3d Cir. 1987); Hamilton, 133 F.Supp. 2d at 367-68. Courts are required to construe the requirements of Rule 702 liberally, however an expert witness must possess, at minimum, skill or knowledge beyond the understanding of the average layperson. See Elcock, 233 F.3d at 741; Aloe Coal, 816 F.2d at 114; Hamilton, 133 F.Supp. 2d at 368.

Defendants contend that Dr. Bower, a general practitioner, does not possess sufficient knowledge of mental illnesses or back disorders to render an opinion on Mazzamuto's disability. (Doc. 19). A court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." In re Diet Drugs Products Liability Litigation, 2000 U.S. Dist. LEXIS 9661 at *9 (E.D.Pa. 2000). Dr. Bower testifies that he regularly treats individuals with psychiatric and chronic back conditions. (Doc. 22, Ex. G, pp. 4, 36). The court concludes that Dr. Bower's practical experience as an internist, combined with his lengthy treatment relationship with plaintiff places Mazzamuto's back and psychiatric conditions squarely within his area of expertise. See id.

In an analogous case, the United States Court of Appeals for the Third Circuit allowed expert testimony from a general practitioner on a specific health condition. Holbrook v. Lykes Bros. Steamship Co., Inc., 80 F.3d 777, 783 (3d Cir. 1996). In Holbrook, the court permitted the plaintiff's treating physician, who specialized in internal medicine, to testify as an expert concerning a cancer diagnosis. Id. The court qualified this expert despite the fact that he was not a pathologist, oncologist, or cancer specialist. Id. See also Kosberg v. Washington Hospital Center, Inc., 394 F.2d 947, 949 (D.C. Cir. 1968) ("The fact that an internist is not a specialist in

4

psychiatry or neurology does not preclude him from testifying about the physical effects of electroshock therapy. . .").  The liberal qualification rules of the Third Circuit do not require an expert to be the best qualified, or to specialize in the most appropriate field.  See Hamilton, 133 F.Supp.2d at 368; Holbrook, 80 F.3d at 782; In re Diet Drugs, 2000 U.S. Dist. LEXIS 9661 at *18.  Therefore, the court will deem Dr. Bower qualified to testify as an expert about Mazzamuto's psychiatric and back conditions.

Defendants' psychiatric expert, Dr. Abram Hostetter, contests the reliability of Dr. Bower's methodology, arguing that Dr. Bower never conducted an adequate mental status examination. (Doc. 22, Ex. K).  Without this exam, Dr. Hostetter was unable to form an opinion about Mazzamuto's alleged psychiatric disability.  Id.  The Supreme Court and the Third Circuit have provided trial courts with a list of flexible factors to consider when evaluating the reliability of a proffered expert's methodology.[1]  Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369.  However, these factors do not constitute a mandatory checklist, and courts may inquire into the reliability of a potential expert's methodology without strictly adhering to the aforementioned factors.  See Kumho Tire, 526 U.S. at 150-51; Daubert, 509 U.S. at 593-94.  Defendants appear to argue that the methodology employed by Dr. Bowers in arriving at his psychiatric diagnosis is not generally accepted in the scientific community and does not contain standards

---

[1]These include: 1) whether a method consists of a testable hypothesis; 2) whether the method has been subject to peer review; 3) the known or potential rate of error; 4) the existence and maintenance of standards controlling the technique's operation; 5) whether the method is generally accepted; 6) the relationship of the technique to methods which have been established to be reliable; 7) the qualifications of the expert witness testifying based on the methodology; and 8) the non-judicial uses to which the method has been put.  Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369.

controlling its operation because he did not perform a mental status examination.
(Doc. 19). See Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133
F.Supp.2d at 369.

Defendants deposed Dr. Bower. (Doc. 22, Ex. G). At the deposition, Dr.
Bower frequently referred to Mazzamuto's symptoms of depression. Id. In addition,
Dr. Bower discusses the psychiatric medications prescribed to plaintiff. Id. at p. 36.
While Dr. Bower did fail to conduct a mental status examination, his diagnosis is
based on scientific method, and not mere speculation. See Elcock, 233 F.3d at 745.
The court is unaware of any Third Circuit precedent requiring treating physicians to
administer a mental status examination before proffering expert testimony about a
patient's psychiatric condition. "The test of admissibility is not whether a particular
scientific opinion has the best foundation or whether it is demonstrably correct."
Oddi, 234 F.3d at 145-46.

"An expert's opinion is reliable if it is based on the "methods and
procedures of science" rather than on 'subjective belief or unsupported speculation
. . .'" Elcock, 233 F.3d at 745. Dr. Bower's diagnosis of Mazzamuto's depression is
based on knowledge obtained during his tenure as plaintiff's treating physician. (Doc.
22, Ex. G, p. 36). Patient contact is perhaps the most dominant methodology
employed by physicians when formulating diagnoses. See Walker v. Consolidated
Rail Corp., 111 F.Supp. 2d 1016, 1018 (N.D. In. 2000) (holding that psychological
expert could reasonably rely on patient's self-reported history in formulating opinion
regarding patient's mental state).

While Dr. Hostetter may feel that a mental status examination would
result in a more accurate diagnosis, he may express this opinion at trial. "Vigorous
cross-examination, presentation of contrary evidence, and careful instruction on the

6

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 576. Dr. Bower's deposition assures this court that Mazzamuto's psychiatric diagnosis is based on reliable methodology.

Finally, defendants contend that plaintiff has failed to comply with Federal Rule of Civil Procedure 26(a)(2), which requires parties to identify all proposed expert witnesses. The rule further provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, **with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony**, be accompanied by a written report prepared and signed by the witness. FED. R. CIV. P. 26(a)(2)(B).

Plaintiff has not produced an expert report in compliance with this rule, and defendants argue that such failure creates grounds for exclusion. (Doc. 19).

However, case law fails to support defendants' proposition. The above procedural rule applies only to experts retained for the **sole** purpose of providing expert testimony at trial. Treating physicians need not submit such reports, provided their testimony concerns information obtained "not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit." Bucher v. Gainey Transportation Svc. of Indiana, Inc., 167 F.R.D. 387, 390 (M.D.Pa. 1996) (quoting FED. R. CIV. P. 26 (a)(2)(B) advisory committee's notes). Dr. Bower has served as plaintiff's treating physician since 1994 or 1995, and his testimony is based on observations made in the course of this treatment relationship. (Doc. 22, Ex. G, p. 6). As a result, the court will hold that the Federal Rules of Civil Procedure do not require plaintiff to produce an expert report from Dr. Bower. The court will deny defendants' motion in limine with respect to Dr. Bower's expert testimony.

### 3. Mr. Rose's Testimony

Defendants also ask the court to exclude Mr. Gordon Rose's testimony. (Doc. 19). Mr. Rose seeks to testify as an insurance expert, and intends to opine that defendants' insurance practices qualify as statutory bad faith. (Doc. 33, Ex. B). Defendants first argue that Mr. Rose's proffered testimony does not "fit" the subject matter of the case, or "assist the trier of fact" in resolving disputed factual issues. Elcock, 233 F.3d at 741; Oddi, 234 F.3d at 145; In re Unisys Savings Plan, 173 F.3d at 155. Defendants contend that the lack of "fit" between Mr. Rose's proffered testimony and the facts of the present matter compel exclusion pursuant to Federal Rules of Evidence 702 and 403. See FED R. EVID. 702, 403.[2]

In order to assist the factfinder in resolving factual disputes present in the case, the subject matter of proposed expert testimony must fall outside the jury's understanding. See Hamilton, 133 F.Supp. 2d at 374-75; Bergman, 742 A.2d at 1105. Defendants contend that the average jury can comprehend bad faith insurance law without the aid of an expert witness.[3] They further argue that Mr. Rose's testimony consists solely of impermissible legal conclusions. (Doc. 19). In bad faith insurance actions, the admittance or exclusion of expert testimony lies within the trial court's

---

[2]This rule provides for the exclusion of evidence if "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

[3]Under Pennsylvania law, "bad faith" is defined as  any frivolous or unfounded refusal to pay proceeds of an insurance policy.  Keefe v. Prudential Property and Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000); Woody v. State Farm Fire and Casualty Co., 965 F. Supp. 691, 693 (E.D.Pa. 1997); Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994) (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)). The elements of the cause of action include: 1) lack of reasonable basis for denying benefits under the policy, and (2) knowing or reckless disregard of the lack of reasonable basis in denying the claim. See Keefe, 203 F.3d at 225; Klinger v. State Farm Mutual Automobile Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997); Terletsky, 649 A.2d at 688.

discretion. See Aloe Coal, 816 F.2d at 114; Dinner v. United Svcs. Automobile Assoc.

Casualty Ins. Co., 29 Fed. Appx. 823, 826 (3d Cir. 2002); Bergman v. United Svc.

Automobile Assoc., 742 A.2d 1101, 1107 (Pa. Super. 1999).

 Numerous courts have excluded expert testimony in insurance bad faith

actions. For example, the Third Circuit affirmed a trial court's exclusion of expert

testimony in an insurance bad faith action because "any relevance of [the expert's]

testimony was outweighed by the potential for prejudice to [the defendant]." Dinner,

29 Fed. Appx. at 12. The Eastern District of Pennsylvania has also excluded expert

testimony on insurance bad faith, explaining: "Bad faith is a legal concept of general

application which does not require that scientific, technical or specialized knowledge

be presented to assist the trier of fact. The witness' opinion is nothing more than

subjective speculation unsupported by any scientific or specialized knowledge."

Datillo v. State Farm Ins. Co., 1997 WL 644076 at *5 (E.D.Pa. 1997). See also

Bergman, 742 A.2d at 1108 (excluding expert testimony in a bad faith action because

the case did not involve highly sophisticated insurance concepts or practices or call

for special knowledge, skill or experience).[4]

 Examination of Mr. Rose's expert report persuades the court that

exclusion of this evidence is proper. (Doc. 33, Ex. B). Much of the report consists of

mere recitation of the facts of the case or the reports of other witnesses, which

plaintiff can present to the factfinder without the aid of an expert witness. Id. In

addition, this report was largely conclusory. Id. See also In re Diet Drugs, 2000 U.S.

Dist. LEXIS 9661 at *12 ("testimony of an expert that constitutes mere personal belief

---

[4]The court also recognizes those instances in which courts have allowed expert
testimony on bad faith insurance practices. See Kraeger and Kraeger v. Nationwide
Mutual Ins. Co., 1997 U.S. Dist. LEXIS 2726 at *2-3 (E.D.Pa. 1997); Bonenberger v.
Nationwide Mutual Ins. Co., 791 A.2d 378, 382 (Pa. Super. 2002).

as to the weight of the evidence invades the province of the jury"); <u>JMJ Enterprises Inc. v. Via Veneto Italian Ice, Inc.</u>, 1998 U.S. Dist. LEXIS 5098 at *27 (exclusion of expert testimony where witness acted as advocate, not objective observer); <u>Datillo</u>, 1997 WL 644076 at *5.

The uncomplicated subject matter of the present action, combined with the conclusory nature of Mr. Rose's report, leads the court to believe that the proffered expert testimony will provide little probative value. Juries often afford great weight to expert testimony, regardless of the quality of the evidence. This tendency could result in considerable prejudice to defendants. Because Mr. Rose's proposed testimony is of little probative value, and because the potential prejudice to defendants substantially outweighs its probative value, the court will exclude Mr. Rose's testimony.

**III.       Plaintiff's Motion to Extend Deadline for Filing Expert Report**

Plaintiff has filed a motion to extend the deadline for filing expert reports until September 30, 2002. (Doc. 31). Because this date has passed, the court will dismiss this motion as moot.

**IV.       Plaintiff's Motion to Permit Supplemental Expert Report**

Plaintiff filed a motion to supplement Mr. Gordon Rose's expert report. (Doc. 59).[5] As discussed above, the court will exclude Mr. Rose's testimony because expert testimony is not necessary to assist the factfinder in the present matter, and the potential prejudice to defendants substantially outweighs its probative value.

---

[5]The proffered report contains Mr. Rose's evaluation of the deposition of Dr. McSharry, a former employee of defendants who has brought suit alleging improper business practices. (Doc. 59).

10

Therefore, the court will deny plaintiff's motion for leave to supplement Mr. Rose's expert report.

## V.          Plaintiff's Motion to Bring Affidavit to the Court's Attention

Plaintiff filed a motion to bring an affidavit and attached exhibits filed by plaintiff's counsel, Richard C. Angino, to the court's attention. (Doc. 69). This affidavit refers to "day in the life" film of Mazzamuto's work-related activities. Defendants failed to contest this motion. The court duly notes this affidavit. (Doc. 68). Therefore, plaintiff's motion to bring affidavit to the court's attention will be granted.

## VI.         Plaintiff's Motion to Supplement the Record

Plaintiff filed a motion to supplement the present record with an additional report from Mr. Gordon Rose, and two depositions of Dr. William Feist, a former employee of defendants. (Doc. 76, Exs. A - C). This motion was dated November 25, 2002. Id. Plaintiff failed to submit a brief in support of this motion. United States District Court for the Middle District of Pennsylvania Rule of Court 7.5 ("Local Rule 7.5") provides:

> Within ten (10) days after the filing of any motion filed prior to trial, the party filing the same shall file an original and two (2) copies of a brief with the clerk and shall serve copies thereof on all parties. . . . Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule such motion shall be deemed to be withdrawn.

L.R. 7.5. Because plaintiff's counsel failed to submit a brief in support of this motion within ten days of the filing date, the court will deem the motion withdrawn.[6]

## VII.        Plaintiff's Motion to Add Additional Authority

---

[6]As noted above, the court will exclude Mr. Rose's expert testimony on bad faith insurance practices. Therefore, plaintiff's motion to add this supplemental report from Mr. Rose would be denied.

Plaintiff submitted a motion to add additional authority in support of his motion for summary judgment and as opposition authority to defendants' motion for summary judgment. (Doc. 77). The desired additions to the record consist of ten (10) specific cases involving defendants, summary judgment, and deposition testimony concerning defendants' insurance practices. (Doc. 77, Exs. A-J). Plaintiff has also failed to file a brief in support of this motion.

Although he neglected to submit an initial brief in support, plaintiff did file a reply brief in support of this motion. (Doc. 88). Two articles are attached to the reply brief, both dealing with defendants' business practices. (Doc. 88, Exs. A, B). The court will disregard these articles because they were not submitted to the court through a proper brief in support of the original motion. The court did not receive a brief in support of the motion to add additional authority. Therefore, the court will deem the motion withdrawn.[7]

**VIII.      Plaintiff's Second Motion to Supplement the Record**

Plaintiff filed a second motion to supplement the record with a further report from Mr. Gordon Rose, the plaintiff's proposed bad faith insurance expert. The court has previously stated that it will exclude all testimony of Mr. Rose. (Doc. 78). In addition, as discussed in connection with the above two motions, plaintiff's counsel failed to comply with Local Rule 7.5, which requires litigants to brief all pretrial motions. L.R. 7.5.

---

[7]The court reassures counsel that it will examine all relevant legal authority during disposition of the summary judgment motions.

Hence, the court will deem the plaintiff's second motion to supplement the record withdrawn.

CHRISTOPHER C. CONNER
United States District Judge

Dated:    February 7th, 2003