FILED
HARRISBURG, PA

FEB 1 8 2003

MARY E. D'ANDREA, CLERK
Per _____

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,
    Plaintiff,

    v.

UNUM PROVIDENT CORPORATION;
PAUL REVERE LIFE INSURANCE
COMPANY; and NEW YORK LIFE
INSURANCE COMPANY
    Defendants

CIVIL ACTION – LAW

NO. 1:CV-01-1157

JUDGE CONNER

JURY TRIAL DEMANDED

## <u>PLAINTIFF'S MOTION FOR RECONSIDERATION</u>

Plaintiff, Vincenzo Mazzamuto, by and through counsel, Richard C. Angino, Angino & Rovner, P.C., pursuant to Local Rule 7.10, hereby respectfully requests this Honorable Court to reconsider its order of February 7, 2003, excluding expert witness Gordon Rose's expert testimony at trial, and in support states as follows:

    1.    Plaintiff's counsel supplied to defense counsel a curriculum vitae and expert reports from Gordon K. Rose, CLU, CHFC, as follows:

    a.    Mr. Rose's CV (**Exhibit A**)

    b.    Report dated June 13, 2002 (**Exhibit B**)

    c.    Report dated June 21, 2002 (**Exhibit C**)

    d.    Report dated June 21, 2002 (**Exhibit D**)

    e.        Report dated July 11, 2002 (**Exhibit E**)

    f.         Report dated October 14, 2002 (**Exhibit F**).

    g.        Report dated November 19, 2002 (**Exhibit G**)

    h.        Expert Report dated December 4, 2002 (**Exhibit H**)

2.      Mr. Rose's education includes a BS from Penn State in 1950, a CLU degree from the American College in 1957, an agency management diploma TAC in 1961, agency officer's school – LIAMA – 1967, and his ChFC, TAC, degree in 1982. <u>See</u>, C.V. **Exhibit A**.

3.      Mr. Rose's CV also includes a highly credentialed employment, teaching, and professional history, including being the vice president of the American College, class instructor on law and the life insurance contracts, and president of Society of Insurance Trainers and Educators. <u>See</u>, C.V. **Exhibit A**.

4.      Mr. Rose is a <u>licensed</u> professional in the insurance field. <u>See</u>, C.V. **Exhibit A**.

5.      Mr. Rose's June 13, 2002, report references <u>29 sources that he reviewed</u>, including the pertinent New York Life Disability Income Policy, the application for the policy, the 1997 claim file, the procedure notes of 15 visits to Dr. Ted Kosenske from July 10, 1996, to October 18, 2000, numerous communications between Mr. Mazzamuto and Defendants, and Mr. Mazzamuto's medical history. <u>See</u>, Report of June 13, 2002, **Exhibit B**.

6.      Based upon information from the <u>29 sources that he reviewed</u>, Mr. Rose on page 5 of his June 13, 2002, report opines that Defendants engaged in unnecessary delays in processing Mr. Mazzamuto's claim and improperly denied his claim. **Exhibit B**. At trial, Mr. Rose would be asked questions dealing with the 29 sources that constituted the bases for his expert opinions.

7.    On June 21, 2002, Mr. Rose submitted two additional expert reports dealing with Ms. Sindelar of Defendant New Life Insurance Company letter dated June 14, 2002, concluding that Mr. Mazzamuto was totally disabled as to his life insurance policy, discussing the similarity of the New York Life and disability policies and concluding that "total disability" under the New York Life disability policy should be the same as "total disability" under New York Life's insurance policy. Consequently it would be inappropriate to find total disability under the life policy but not under the disability policy. **Exhibits C and D**.

8.    Mr. Rose filed a supplemental report dated July 11, 2002 (**Exhibit E**) commenting upon the medical expert reports of Drs. Steinman and Hostetter, as well as the report from the Pennsylvania Bureau of Disability Determination by Dr. Schneider in the context of insurance practice. Mr. Rose discusses the handling of disability claims and the differences of the definition of disability under the Social Security Administration and life and disability policies in this case.

9.    Mr. Rose submitted a report on October 14, 2002 (**Exhibit F**) with respect to his review of volumes I, II, and III of Dr. McSharry's deposition and Defendants' Exhibits 102, 103, and nos. 106-125 and discussed UNUM/Provident's procedure and practices as reported by Dr. McSharry, a physician employed by UNUM/Provident. At trial, Mr. Rose would testify as to how UNUM's practice differs from the practice of other companies and proper insurance practices.

10.    Mr. Rose's report of November 19, 2002 (**Exhibit G**) discusses UNUM/Provident's disability claim procedures as revealed in the national media, including:

> UNUM's practice of providing incentives to claims people for "closing" a given $ amount of claims each month is outrageous, and is contrary to public policy. (Closing is a nice word for denial) … UNUM/Provident used a lengthy delaying process in many claims, including Mr. Mazzamuto's claim… "As reported on 60

Minutes, the claims people also knew which medical doctors would cooperate on denying claims….

11.     Mr. Rose, in his report of December 4, 2002 (**Exhibit H**) discusses William Feist's depositions and various document exhibits with respect to UNUM/Provident's unfair insurance practices.

12.     On August 9, 2002, Defendants filed a Motion in Limine to preclude testimony of treating physician Dr. Bower and Mr. Rose with a supporting brief.

13.     On August 26, 2002, Plaintiff filed a Brief Contra Defendants' Motion in Limine.

14.     Defendants' brief in support of their Motion in Limine concerning Mr. Rose's testimony commences on page 18.   The cases relied upon by Defendants are <u>Dattilo v. State Farm Insurance Co.</u>, 1997 WL 644076 (E.D. Pa. October 17, 1997); <u>Bergman v. United Services Automobile Association</u>, 742 A.2d 1101, 1105 (Super. Ct. 1999); <u>Fechter v. Connecticut General Life Insurance Co.</u>, 800 F.Supp. 182, 187, n. 12 (E.D. Pa. 1992; and <u>Ciba-Geigy Corp. v. Crompton & Knowles Corp.</u>, 1991 U.S. Dist. Lexis 18369, *6 (E.D. Pa. Dec. 30, 1991).

15.     Plaintiff's brief filed on August 26, 2002, on page 10 distinguishes <u>Dattillo</u> and <u>Bergman</u>:

> In <u>Dattilo</u>, plaintiffs offered the testimony of an expert who did not look at Defendant's file, and did not offer any reason for his opinion that State Farm acted in bad faith.

p. 10.

> In <u>Bergman</u>, the issue presented was whether expert testimony should be <u>required</u> in bad faith cases.

Plaintiff pointed out that <u>Bergman</u> involved a bench trial.  It was specifically noted that an expert may be necessary and certainly helpful when a jury is involved:

> [I]t is a different analysis as to whether or not you need an expert [in Federal Court] because you have a jury that may not be familiar with the handling of claims, procedures involved in claims …

742 A.2d at 1110, p. 12 of Plaintiff's brief.

Plaintiff's brief referenced <u>Kraeger v. Nationwide</u>, 1997 U.S. Dist. LEXIS 2726 (E.D. Pa. 1997) <u>plus Plaintiff's Brief Contra Defendants' Motion for Summary Judgment</u>.

16.    Plaintiff's Brief Contra Defendants' Motion for Summary Judgment discusses in detail commencing at page 12 UNUM/Provident's bad faith practices, including (a) failing to follow its own claims manual, (b) failing to follow the practices required and the Unfair Claims Settlement Practice Act, (c) failing to follow Defendants' "own guidelines for evaluating an occupation," including material and substantial duties, how the insured spent his time, what activities generated income, (d) failing to utilize referenced sources to establish an insured's occupation, (e) failing to follow the guidelines as to "contractual provisions," "claim activities," "occupational duties," "financial information," plus and most importantly (f) failing to request and obtain an independent medical examination or a functional capacity evaluation.

17.    Plaintiff's Brief Contra Defendants' Motion for Summary Judgment discusses <u>Krisa v. The Equitable Life Assurance Society</u>, 113 F. Supp.2d 694, 700 (M.D. Pa. 2000). Specific reference is also made to <u>Simon v. UnumProvident Corp.</u>, 2002 U.S. Dist. LEXIS 9331 (E.D. Pa. May 23, 2002), a similar Unum/Provident case where the district judge denied UNUM/Provident's motion for summary judgment.

18.    On Page 18 of Plaintiff's Brief Contra Defendants' Motion for Summary Judgment, Plaintiff's counsel specifically referenced <u>Polselli v. Nationwide Mut. Fire Ins. Co.</u>, 23 F.3d 747, 752 (3d Cir. 1994); <u>Dinner v. United Services Automobile Ass'n Cas. Ins. Co.</u>, 2002 U.S. App. LEXIS 3408; 29 Fed. Appx. 823 (3d Cir. 2002); <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230-233 (3d Cir. 1997); and <u>Syracuse Exploration Company v. Northbrook Property & Cas. Ins. Co.</u>, 216 F.3d 1077 (3d Cir. 2000).    Plaintiff's counsel

specifically pointed out that in the Middle District cases of <u>Klinger</u> and <u>Syracuse</u> experts were used. As a point of fact, defendant in <u>Syracuse</u>, over plaintiff's counsel's objection, was permitted to call a lawyer who was the author of a bad faith textbook to testify that the defendant insurance company was not guilty of bad faith. The lawyer defense expert was permitted to testify over plaintiff's counsel's objection that (a) he was an authority on "bad faith," (b) lawyers and judges rely upon his book, (c) his book is cited by judges, and (d) in his opinion, the insurance company in the <u>Syracuse</u> case was not guilty of bad faith. <u>See</u>, Judge Caldwell's opinion (**Exhibit I**). The Third Circuit's affirmance, Exhibit F, and the U.S. Supreme Court's refusal to grant certiorari.

19.    There have been countless numbers of cases where experts have been permitted to testify in bad faith cases, *e.g.*, <u>see</u>, McGonigle, Jr. Insurance Bad Faith in Pennsylvania, Third Edition, § 8:06 Using Experts to Prove Bad Faith, p. 195, *et seq.*:

> In the area of bad faith litigation, it is not uncommon for experts to be utilized by counsel for the policyholder, the insurer, or both. Such so-called "bad faith experts" may be active or retired claims professionals, or attorneys or other individuals familiar with insurance litigation. The use of such experts has been controversial. A growing number of states have held that expert testimony is not <u>mandated</u> in <u>all</u> bad faith cases. <u>One</u> Pennsylvania federal court decision has <u>suggested</u> that the concept of bad faith does not <u>require</u> the scientific, technical or specialized knowledge of an expert. The Pennsylvania Superior Court has held that a policyholder in a bad faith action is not <u>required</u> to present expert testimony, and the admission or exclusion of expert testimony in bad faith cases remains a matter <u>within the sound discretion of the trial court</u>. (emphasis supplied)

<u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.2d 230 (3d Cir. 1977) and <u>Smokowicz v. Motorist Mut. Ins. Co.</u>, No. 94-3400 (3d Cir. May 22, 1995). <u>See</u>, printout attached as **Exhibit J**.

20.    There has been a number of cases in the Middle District where the trial judge has permitted expert testimony in bad faith cases, including both Klinger and Syracuse, which involved the same trial counsel as involved in the instant case. Also see, **Exhibit J**

21.    On February 7, 2003, Judge Conner issued a Memorandum Order precluding any and all expert testimony from Mr. Rose. **Exhibit K**.

22.    The trial judge discusses his bases for precluding Mr. Rose's testimony commencing at page 8 of his Memorandum.

23.    At the outset, the trial judge states: Mr. Rose seeks to testify as an insurance expert, and intends to opine that Defendants' insurance practices qualify as statutory bad faith. Defendants first argue that Mr. Rose's proffered testimony does not "fit" the subject matter of the case, or "assist the trier of fact" in resolving factual issues (emphasis supplied).

24.    The trial judge states appropriately

> In order to assist the fact finder in resolving factual dispute present in the case, the subject matter of proposed expert testimony must fall outside the jury's understanding.

Memorandum, p. 8, emphasis supplied.

* * *

> Defendants contend that the average jury can comprehend bad faith insurance law without the aid of an expert witness. They further argue that Mr. Rose's testimony consists solely of impermissible legal conclusions.

Memorandum, p. 8, emphasis supplied.

25.    The trial court properly states that the admission or exclusion of expert testimony lies within the trial court's discretion and goes on to reference cases where expert testimony has been excluded in insurance bad faith actions. Memorandum, pp. 8-9.

26.    The trial judge, however, does not distinguish Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230-233 (3d Cir. 1997); Syracuse Exploration Company v. Northbrook

Property & Cas. Ins. Co., 216 F.3d 1077 (3d Cir. 2000); Krisa v. The Equitable Life Assurance Society, 113 F. Supp.2d 694, 700 (M.D. Pa. 2000) or the numerous other cases where expert testimony has been permitted in Federal and State Courts.

27.    The trial judge does not in any way discuss the substance or subject matter of Plaintiff's proposed expert reports or the factual or legal issues in the case, but rather generalizes:

> The uncomplicated subject matter of the present action, combined with the conclusory nature of Mr. Rose's report, leads the court to believe that the proffered expert testimony will provide little probative value.

Memorandum, p. 10.

28.    It is patently clear that Plaintiff's proposed expert reports from Mr. Rose discuss insurance practices which are beyond a layman's expertise including:: (a) the definition of "total disability;" (b) the similarity or dissimilarity of the definition of "total disability" in the context of the Social Security Administration, a life insurance policy, a disability policy, etc.; (c) proper and improper insurance practices with respect to timeliness; (d) proper and improper insurance practices as far as investigations; (e) proper and improper insurance practices as to reviewing, evaluating and according appropriate weight to treating physician reports versus in-house reports versus independent medical examiners versus reports based upon treatment versus reports based upon records; (f) pointing out the differences between an occupation specific disability policy and other types of disability policies; (g) UNUM/Provident's practices based upon financial incentives, in-house reviewers, definitions of disability, emphasis upon applications for life insurance rather than actual activities, of one's job or occupation; (h) discussion of Defendants' insurance manual and the part it plays in investigating claims and accepting or denying claims.

29.    Mr. Rose is a licensed individual with substantial experience and a teaching background.  A teacher accumulates considerable information, and a good teacher is able to take this substantial information, summarize it, and make it understandable to less knowledgeable.

30.     The trial court fails to reference anything in the record to support his conclusion that the subject matter of the present action is "uncomplicated" and/or is any more or less complicated than dozens of other bad faith cases where experts were permitted to testify and/or that everything in Mr. Rose's reports are "conclusory [-in] nature and/or that there is little if anything that Mr. Rose can testify about at trial from his years of teaching experience and the 29 plus sources relied upon that would assist the lay jury in understanding the facts and issues in the case. As a matter of practicality, all expert reports generally provide a very small fraction of the subject matter to be covered by the expert's testimony at trial.

31.     An expert can testify at trial as to matters upon which experts customarily rely in expressing opinions. The matters in which an expert customarily relies cannot easily be introduced at trial without an expert.

32.     To attempt to substitute for expert testimony will at least require numerous witnesses instead of one, adverse witnesses rather than an independent witness, and, as a result, Plaintiff will be severely prejudiced in presenting his case.

33.     Instead of precluding Mr. Rose as a witness, it would be fairer and more in keeping with the goals of justice in judicial proceedings to permit Mr. Rose to testify in areas where such testimony is appropriate and helpful and to limit Mr. Rose in any areas which would be improper. This is the function of the trial judge and is what generally happens in most trials involving expert testimony.

WHEREFORE, Plaintiff requests Your Honorable Court to reconsider your February 7, 2003, holding and permit Mr. Rose to testify generally subject to properly placed objections at trial.

Respectfully submitted,

ANGINO & ROVNER, P.C.

Richard C. Angino, Esquire
I.D. No. 07140
Joan L. Stehulak, Esquire
I.D. No. 29496
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Attorney for Plaintiff

Date: 2/18/2003

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

CERTIFICATE OF CONCURRENCE / NONCURRENCE

On February 18, 2003, I telephoned the office of Thomas Henefer, Esquire, counsel for

Defendants in this matter to discuss the foregoing motion and inquire whether counsel would

concur in the motion.  As of the time of this filing, Mr. Henefer had not returned the call.

Respectfully submitted,

ANGINO & ROVNER, P.C.

Richard C. Angino, Esquire
I.D. No. 07140
Joan L. Stehulak, Esquire
I.D. No. 29496
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Attorney for Plaintiff

Date: 2/18/2003

256926.1\JLS\JLS

A

# ●rdon K. Rose, CLU, C●C

*735 Virginia Rail*
*Kiawah Island*
*SC 29455*
*Ofc. Ph ●●3 768 9060*
*Fax ●●5 768 0344*
*843*

## EMPLOYMENT

1989 - Present.   **Self-Employed**, Insurance Education Consulting

1969- 1989       **The American College**, Vice President

1963- 1969       **Columbus Mutual Life Insurance Company**
                 **2 years**, Director, Education and Training
                 **4 years**, Agency Department Officer

1951- 1963       **New York Life Insurance Company**
                 **5 years, sales agent**
                 **5 years, agency management**
                 **2 years**, Home Office

## EDUCATION

**B.S. Penn State**- 1950
**CLU, The American College**- 1957
**Agency Management Diploma, TAC** 1961
**Agency Officers School- LIAMA**- 1967
**ChFC, TAC, 1982**

## TEACHING EXPERIENCE

1965 - 1995      **CLU/ChFC Class Instructor**- Primarily classes in ...
                 **Law and the Life Insurance Contract**
                 **Life Insurance**
                 **Employee Benefits**
                 **Agency Law**
                 **Financial Planning**

                 **CIC Class Instructor** in Life Insurance Section

i

**Page 2**

## PROFESSIONAL ACTIVITIES

**1988- 1989**    President, Society of Insurance Trainers and Educators (a National Association of 600 insurance trainers and educators, from 300+ companies.) Member since 1969.

**1965, Present**    Board Member, Griffith Foundation for Insurance Education.

**Member, American Society** CLU/ChFC for 40 years, and a member of ASCLU/ChFC Directors Council.

**Member, International** Foundation Employee Benefit Plans

**Past President-** Rotary Club of Ardmore, PA

## FAMILY

**Married-** Aug 15, 1953 to Sally Winder Rose

**Daughter-** Pat Rose Larkowich- Publicist in San Fran, CA

**Son- Ted Rose-** Film Editor- Hollywood, CA

**Six Grandchildren**

## HOBBIES

Golf and Bridge

# DEPOSITIONS AND COURT APPEARANCES

The following is a complete list of all my depositions and court appearances

Prudential V. C.J. Simon
Retained by Plaintiffs Attorney
Shanley and Fisher, Morristown, New Jersey
Court testimony, June 1985

Zinberg V. Federal Kemper
Retained by Plaintiffs Attorney
Harry S. Rosenthal, Jenkintown, PA
Deposition and Court testimony April 1986

Norma L. Williams V. Mass Mutual Life Insurance Company
Retained by Plaintiffs Attorney
Williams and Blizzard, Houston, Texas
Deposition October 1986

Gerald Cooney V. Colorado Bar Association
Retained by Plaintiffs Attorney
Bell and Pollock, Littleton, Colorado
Deposition Sept. 1989

Thomas E. Craig V. Indiana, Michigan Electric Co
Retained by Plaintiffs Attorney
Lawrence and Schletker, Covington, Kentucky
Deposition December 1989

Vernon R. Berg Sr. V Transamerica Insurance Co. et al
Retained by Defendants Attorney
Terwilliger, Wakeen, Piehler and Conway, Stevens Point, WI
Deposition and Court testimony Feb. 1990

Yoon V Investors Life Insurance Co.
Retained by Plaintiffs Attorney
Oppenheimer, Wolff and Donnelly, Chicago. IL
Court testimony June 1990

Shepard V Cal Farm Insurance
Retained by Plaintiffs Attorney
Thorsnes, Bartolotta and McGuire, San Diego, CA
Deposition Sept. 1990

page 2

Niess V. Northern Life
Retained by Defendants Attorney
Buckingham, Doolittle and Burroughs  Akron, Ohio
Deposition and Court Testimony  Oct. 1991

Park V. The Equitable Life Assurance Society
Retained by Plaintiffs Attorney
Frank and Rocca   Phila. PA
Court testimony  October 1992

June S. Rose V. Allstate Insurance Company
Retained by Defendants Attorney
Comstock, Springer and Wilson  Youngstown, Ohio
Deposition  June 1993

Minnesota Mutual V. Judith C. Loring
Retained by Defendants Attorney
King and Blackwell  Orlando, Florida
Deposition  May, 1993

Jacqueline Raines Dunlap V. Sun Life Assurance Co. of Canada and
                                  Great West Life Assurance Company
Retained by Plaintiffs Attorney
Sharpe and Buckner  Rockingham, NC
Deposition  May, 1994

Whipple V. Brubaker
Retained by Plaintiffs Attorney
Tunney Lee King  Columbus, Ohio
Deposition  April 1995

Castle V. Modern Life Insurance Co.
Retained by Plaintiffs Attorney
Shughart, Thomson and Kilroy  Kansas City, MO
Deposition  June, 1995

VEBA of Independent Electric Supply V Stephen R. Ross et al.
Retained by Plaintiffs Attorney
Littler, Mendelson, Fastiff, Tichy & Mathiason ( Bill Terheyden )
Deposition Jan. 1996

Page 3.

Darling V. Savers Life
Retained by Plaintiff's Attorney
Drose, Davidson & Bennett
Charleston, SC
Deposition, July 1996

Hagley V. Paul Revere Insurance Company
Retained by Plaintiff's Attorney
Forry, Ullmam, Ullman & Forry
Reading, PA
Video taped testimony for Court
October, 1996

Thomas Kaleel, et al. V. James Menighan
Retained by Defendant's Attorney
Comstock, Springer & Wilson
Youngstown, Ohio
Deposition, Dec. 1996

Robert White V. Lang Kruke et al.
Retained by Life Agent Kruke's Attorney
Brewer, Cooney & Lane
Hamilton, Ohio
Deposition, Jan. 1997

Migliaccio Rand V. Acacia Mutual Life Insurance Company
Retained by Acacia's Attorneys- Peabody & Brown
Washington, DC
Deposition Dec. 1997

Page 4.

Mark Solomon, Etc. V. Mass Mutual Life Insurance Company
Retained by Plaintiffs Attorney
Greenfield & Rifkin , Ardmore, PA
Court Testimony- December, 1998

Burkert v. The Equitable Assurance Society of the U.S.
Retained by Plaintiff's Attorney
Abraham, Bauer & Spalding
Philadelphia, PA
Deposition September, 2000

Beever v. Cincinnati Insurance Company
Retained by Defendant's Attorney
Litchfield & Cavo
Chicago, Illinois
Deposition, Aug. 15, 2001

Worrell v. American States
Retained by Plaintiff's Attorney
LaBarre & Young
Springfield, Illinois
Deposition, April 3, 2002

**Gordon K. Rose, CLU, ChFC**
**735 Virginia Rail**
**Kiawah Island**
**SC 29455**
**Ph 843 768 9060**
**Fax 843 768 0344**
**E-Mail GKROSECLU@aol.com**

Richard C. Angino                                       June 13, 2002
Angino & Rovner, P.C.
4503 North Front St.
Harrisburg, PA 17110-1708

     Re:  Vincenzo Mazzamuto

Dear Mr. Angino:

I have reviewed the materials you sent to me on the above case. You requested a comprehensive report and the following report includes my opinions.

The materials I have reviewed are as follows.....

1. New York Life disability income policy #H8520057 issued March 2, 1993 on the life of Mr. Mazzamuto.
2. The application for the policy and the New York Life underwriting file.
3. The 1997 claim file following Mr. Mazzamuto's first claim for benefits.
4. The Procedure notes of 15 visits to  Dr. Ted Kosenske from July 10, 1996 to Oct 18, 2000
5. Sept 28, 2000 letter from UNUM advising where to present claim.
6. Sept. 29, 2000 letter from New York Life advising to send claim to Paul Revere.
7. Oct. 11, 2000 letter from Paul Revere confirming receipt of claim materials.
8. Nov. 1, 2000 letter from Ms. Magner , stating that the claim form had not been received.
9. Nov. 3, 2000 letter from Dr. Bowers to Paul Revere.
10. The completed claim form and authorization to release information.
11. UNUM Action log, set up on Jan 4, 2001.
12. Ms. Magner letter to Mr. Mazzamuto dated Jan. 15, 2001
13. Occupational description completed by Mr. Mazzamuto Jan. 18, 2001
14. Carlisle Hospital reports, requested Jan 22, 2001.
15. Rehabilitation review completed by Jack Fogerty Feb 2, 2001
16. Claim department phone memo, Feb. 13, 2001
17. Letter from Peter J. Russo, Mar. 19, 2001
18. Magner response to Russo, Mar. 20, 2001
19. Letter from Russo to Magner, Mar. 26, 2001
20. 5 page letter from Magner to Russo, Apr. 20, 2001
21. Letter from Richard Angino to Ms. Magner, May 8, 2001
22. Letter from Magner to Angino  May 23, 2001
23. Carlisle Hospital admission records, July 22, 2000

Page 2.

24. Complaint filed June 26, 2001
25. Deposition of Melissa Ann Mulroy
26. Deposition of Dr. Clarke.
27. Deposition of John W. Fogarty
28. Deposition of Dr. Douglas Bower.
29. Dr. Taylor file

It is my understanding that the following events occurred. Mr. Mazzamuto had made the timely payment of premiums to keep the insurance policy in force. In 1996, Mr. Mazzamuto fell on the ice and injured his back. A claim was submitted to New York Life. After first denying the claim, New York Life decided that they did not have grounds to deny and paid the claim.

After a relatively short period of time Mr. Mazzamuto returned to work full time. However, he continued to suffer from back pain and often visited his Doctor. In July 2000, Mr. Mazzamuto had a heart attack. While being taken to the hospital in an ambulance, Mr. Mazzamuto's back was re injured. After being discharged from the hospital Mr. Mazzamuto attempted to return to work. However, Dr. Bower was clear in his advice that Mr. Mazzamuto not go back to work. Mr. Mazzamuto has not returned to work and filed a claim for disability benefits.

The transfer of the New York Life disability insurance business to Paul Revere and the ensuing mergers of companies, caused a great deal of confusion. Mr. Mazzamuto was a victim of this confusion. For example, Mr. Mazzamuto was informed by Paul Revere in a letter dated Oct. 11, 2000 that claim materials had been received. Ms. Magner wrote to Mr. Mazzamuto on Nov 1, 2000 that the claim form had not been received. At one point the company claimed that the claim file had been lost. This confusion continued from Sept. 28, 2000 until Jan 4, 2001 when UNUM finally set up the "Action Log" for the claim process. None of this confusion was the fault of Mr. Mazzamuto, who by this time should have been receiving benefits from his policy.

Ms Magner wrote to Mr. Mazzamuto on Jan 15, 2001. She stated that with the 90 day elimination period, benefits would begin to accrue on Oct 20, 2000. Ms. Magner stated " Your policy requires that written notice of claim must be given to us within 30 days after a disability starts or a covered loss occurs.." An insured, who knows they have a 90 day elimination period, may reasonably assume that no "covered loss has occurred" until the end of the 90 day period. Mr. Mazzamuto already had confirmation from Paul Revere that claim materials had been received prior to Oct. 20. Ms. Magner attempted to use the "notice clause" to explain why the evaluation of the claim may be delayed. Note: the claim had already been delayed almost 3 months when she wrote the letter.

Page 3.

The Jan. 15, 2001 letter also mentioned that they were requesting medical records from Dr. Bower. Dr. Bower had written on Nov. 3, 2000 and had given a complete description of Mr. Mazzamuto's condition, including the statement "At the present time he is not able to do the work required in running his restaurant because he can not stand for a prolonged period of time, has difficulty bending, and is restricted from heavy lifting. It is unlikely that he will be able to return to work in the foreseeable future." It was clear that the disability was due to the back problem rather than the heart condition.

An "Occupational Description" form was also enclosed in the Jan. 15, 2001 letter. Mr. Mazzamuto completed the form on Jan. 18, 2001. In the last section of the first page Mr. Mazzamuto states, "My job requires me to stand most of the time. I am also stressed-which causes tightness in my chest then I have chest pain and shortness of breath. Also by standing my back problem is aggrevated. I have been under treatment for back pain since 1996."

UNUM requested Carlisle hospital records. A rehabilitation review was conducted by Jack Fogerty. After considerable delay Ms. Magner wrote to Peter Russo on March 20, 2001. In my 50+ years in the life and health insurance business and insurance education, I have heard many excuses for delay. The excuse for delay contained in the second paragraph sets a new low standard for excuses. "The reason you have not heard from us is because Mr. Mazzamuto's claim file is still with our medical department. We apologize for the delay, however, please note that the physician who will be reviewing Mr. Mazzamuto's claim file works a part time schedule." This is now 5 months after benefits should have been paid.

Although Ms. Magner promised immediate attention on March 20 it was April 20 before the decision to deny was sent.

The following opinion of UNUM's denial is based on my review of the documents and my extensive experience with disability insurance, which includes the following.

A field agent with New York Life when they entered the disability field in 1951.

The New York Life Agency Instructor in Erie PA which included disability insurance training.

New York Life's Regional Sales Supervisor for disability insurance, conducting seminars in New York Life offices in PA, NJ, MD and DE.

Supervisor of Accident and Health Insurance Sales in New York Life's Home Office which included a close working relationship with A&H Underwriters and Claims people.

As Director of Education for Columbus Mutual, in the Home Office in Columbus Ohio, was responsible for Disability Insurance training of agents and liaison between agents and Home Office Underwriters and Claims people.

Instructed CLU courses that included disability income for 25+ years.

While a Vice President of the American College In Bryn Mawr, PA I was often called on to lead seminars on Disability Insurance for other professionals, primarily CPA firms.

Attached is a list of cases in which I have given depositions or court testimony. 6 involve disability insurance.

As we discussed my fee is a flat $175 per hour for any time spent on a case, plus regular travel expenses.

Page 4.

It is my opinion that this claim should have been approved as early as November 2000 with back payments plus interest to October 2000, for the following reasons....

1. Notice of claim had been sent in during the elimination period.
2. Dr. Bowers letter was clear that Mr. Mazzamuto could not return to his job.
3. The definition of total disability in the policy is stated on page 5 of the policy under TOTAL DISABILITY "From the start of a total disability until 2 years after the income starting date, total disability means that the insured can not do the substantial and material duties of his or her regular job." This definition is one of the more liberal definitions of disability found in the disability insurance business. It was used to aid in the sale of disability insurance as it stressed "his or her regular job" . It does not refer to the job the insured had when he applied for the policy. It does not refer to his job title. It simply and clearly states "substantial and material duties" and Mr Mazzamuto's job required standing a substantial part of the time, and he and his Doctor said he could not do that.
4. If the claims people were unwilling to take the word of the insured and his Doctor, they should have requested another medical opinion. See page 9 of the policy under the heading EXAMINATION of the INSURED- "While a claim under this policy goes on, we have the right to have the insured examined, at our expense, by physicians approved by us, as often as reasonably required." I am at a loss to know why the company did not request an Independent Physical Exam. Getting IPE's is a common practice and could have served to bring a quick decision with grounds for denying the claim if Mr. Mazzamuto and Dr. Bowers were lying or avoiding a needless waste of time and money if they were telling the truth.
5. The fact that the Social Security Administration has approved Mr. Mazzamuto's claim for disability is significant. It is general knowledge that the Social Security definition of disability is very narrow. If Mr. Mazzamuto qualifies for Social Security disability, there is no question that he qualified under the New York Life definition, at the time he submitted the claim.

Rather than paying the claim, the company embarked on a series of steps that continued to delay the claim.

1. In January 2001 an investigator was assigned to visit the site and talk to Mr. Mazzamuto. It was 2 and one-half months later when the investigator finally visited. There should have been at least a weekly follow up urging the investigator to complete the assignment.
2. The claims people engaged in lengthy discussions about Mr. Mazzamuto's heart condition. This was a waste of time, because it was irrelevant whether it was a back problem or a heart problem. The only relevant question was, could Mr. Mazzamuto perform the regular duties of his job, and the answer was, no.
3. The company challenged the claim on the basis of an occupational form and completely ignored Mr. Mazzamuto's statement on that form that "My job requires me to stand most of the time".

Page 5.

4. The 5 page April 20, 2001 letter from Ms Magner to Mr. Russo is filled with irrelevant discussion and ignores the basis for the claim.

   a. The first page goes into "Residual disability" when the claim is for "Total disability".
   b. The last paragraph on page one and the first four paragraphs on page two discuss Mr. Mazzamuto's occupation in terms of titles and ignores the fact that he has to stand most of the time.
   c. The heart condition is discussed at great length on pages two and three. This was not the issue.
   d. Page three gets to the issue of the back problem. The last paragraph on page four can be read as an admission that Mr. Mazzamuto is disabled. ..."his physicians restrict him from prolonged standing or walking, heavy lifting, and bending. His job does not appear to involve lifting"  (No one ever claimed that it did) "The degree to which he is required to stand or walk for a prolonged, uninterrupted period of time, over 15-20 minutes at a time, is not clear."  After all the months of investigating and questioning it should have been clear that Mr. Mazzamuto's job required standing for prolonged periods of time and he was unable to do so.
   e. The first paragraph on page five "Based on all medical information in Mr. Mazzamuto's claim file...". Again, this completely ignores Dr. Bowers and Mr. Mazzamuto's statements that he could not and should not go back to work.

New York Life issued the policy and paid a claim for Mr. Mazzamuto's back problem. The back condition is worse and UNUM has denied the claim.

The inordinate delays by UNUM in processing this claim, and then denying the claim without grounds for denial, is an example of why insurance companies do not have the faith of the public. Although I am not a Lawyer, I am familiar with Bad Faith laws that states have enacted to deal with this problem. In my opinion those laws should apply in this case.

Very truly yours,

Gordon K. Rose

Gordon K. Rose, CLU, ChFC
735 Virginia Rail
Kiawah Island
SC 29455
Ph 843 768 9060
Fax 843 768 0344
E-Mail GKROSECLU@aol.com

Richard C. Angino                                        June 21, 2002
Angino & Rovner, P.C.
4503 North Front Street
Harrisburg, PA 17110-1708

          Re:  Ms. Sindelar letter to Mr. Mazzamuto

Dear Mr. Angino:

I am concerned about some of the statements Ms. Sindelar has made in her letter of June 14, 2002.

In paragraph 2 her phrase "..or any other job for which you are suited based on schooling, training or experience. If you are able to do some, but not all of these acts and duties, disability is not total." This is a definition of disability that is found in some disability insurance policies, but it is not found in Mr. Mazzamuto's policy.

The so called "liberalization" found in the third paragraph, is the definition found in the policy. It is not a liberalization that allows them to waive the premium. She further states that they will under this liberalization waive premiums for 2 years. The policy has no such limitation.

I believe this letter must be challenged because this August they might say," We told you we were only waiving premiums to Aug. 2002".

Very truly yours,

Gordon K. Rose

**Gordon K. Rose, CLU, ChFC**
**735 Virginia Rail**
**Kiawah Island**
**SC 29455**
**Ph 843 768 9060**
**Fax 843 768 0344**
**E-Mail GKROSECLU@aol.com**

Richard C. Angino                                        June 21, 2002
Angino & Rovner, P.C.
4503 North Front Street
Harrisburg, PA 17110-1708

      Re:   Vincent Mazzamuto

Dear Mr. Angino:

I have read the letter, to Mr. Mazzamuto, from Therese A Sindelar of the New York Life Insurance
Company, dated June 14, 2002. Due to the contents of that letter, I wish to add the following to my report,
dated June 13, 2002.

As stated in my June 13 report the definition of disability is found on page 5 of the policy. …"total disability
means that the insured can not do the substantial and material duties of his or her regular job."

The Waiver of Premium Benefit found on page 7 of the policy states in part…..."We will waive those
premiums that fall due on or after that income starting date and during that disability"  Since disability is
defined only once in the policy, the same definition of disability applies to the waiver of premium benefit as
applies to the disability income benefit.

Although Ms. Sindelar is mistaken when she quotes a different definition of disability in the second
paragraph of her letter, she does come back to the policy definition in her third paragraph.

New York Life has decided that Mr. Mazzamuto was disabled on July 22, 2000. They have agreed to waive
the premium and have refunded all premiums paid since August, 2000.

The disability policy on Mr. Mazzamuto is a New York Life policy. New York Life has decided that Mr.
Mazzamuto has been disabled as Mr. Mazzamuto has claimed. It is outrageous that UNUM has refused to
pay this claim. The delays in the claim handling by UNUM were well below industry standards and fell short
of the promises for timely handling of claims as stated in the policy.  The Social Security Administration has
decided that Mr. Mazzamuto is disabled. UNUM has no basis for denying this claim.

Very truly yours,

Gordon K. Rose

E

**Gordon K. Rose, CLU, ChFC**
● **735 Virginia Rail** ●
**Kiawah Island**
**SC 29455**
**Ph 843 768 6669**
**Fax 843 768 0344**
**E-Mail GKROSECLU@aol.com**

Richard C. Angino                                        July 11, 2002
Angino & Rovner
4503 N. Front St.
Harrisburg, PA 17110-1708

    RE: Vincenzo Mazzamuto

Dear Mr. Angino:

I have received and reviewed the reports from Drs. Steinman and Hostetter. The following will be a supplement to my June 13, 2002 report and the previous supplement dated June 21, 2002.

Dr. Hostetter concluded his report by stating, "Therefore as noted above, it would be necessary to have Mr. Mazzamuto seen in person by a psychiatrist in order to determine his degree of psychiatric impairment." Neither Mr. Mazzamuto, nor his representatives have claimed that his disability was due to a mental condition. Mr. Mazzamuto had mentioned he was apprehensive about returning to work, but it was clear his inability to stand for periods of time, due to his back condition, was the cause of the disability. The definition of disability in the policy as discussed in my report, clearly covers Mr. Mazzamuto's situation. Bringing in a psychiatrist, 2 years after the disability, can only be regarded as a delaying action by UNUM.

Dr. Steinman wrote his report without examining Mr. Mazzamuto. As I read Dr. Steinman's report, the Dr. is suggesting that Mr. Mazzamuto is disabled when he states, "Mr. Mazzamuto should lean on the counter with his forearms"…"Also place a bar stool with a back support". As previously stated the definition of disability in the policy is "the insured can not do the substantial and material duties of his regular job". To do his regular job, Mr Mazzamuto must stand behind the counter, not lean on it or sit on a stool.

I have also reviewed the report from the Pennsylvania Bureau of Disability Determination. I was under the impression earlier that Mr. Mazzamuto had been approved for Social Security Disability benefits. At this point I do not know if he has been approved or not. However, page 6 of the report of Stanley E. Schneider, EDD under II  MAKING PERFORMANCE ADJUSTMENTS

    1. Understand, remember and carry out complex job instructions…………………….. Poor/none
    2. Understand, remember and carry out detailed, but not complex job instructions……..Poor/none
    3. Understand, remember and carry out simple job instructions………………………….Poor/none

It would appear that Dr. Schneider is of the opinion that Mr. Mazzamuto is disabled.

Page 2.

Whether or not Social Security approves the claim does not alter the fact that the disability policy owned by Mr. Mazzamuto has a much more liberal definition of disability than the definition used by the Social Security Administration.

New York Life has granted Waiver of Premium benefits on a life policy owned by Mr. Mazzamuto. In my June 21, 2002 addendum to my report I mistakenly thought the premiums had been waived on the disability policy. It is true that a decision to waive premiums on a life policy does not automatically mean that disability benefits under a disability policy will be paid. However, in this case the definition of disability is more liberal in the disability policy, than the definition of disability in the life policy. If Mr. Mazzamuto is disabled under the life policy definition, he is definitely disabled under the disability policy. Claims people at UNUM are very familiar with these definitions, but still continue to deny the claim.

For 2 years UNUM has deliberately delayed this claim, by requesting additional information. UNUM spent a great deal of time, investigating the heart condition, even though the claim was due to a back injury.  Now they have spent time getting information regarding a mental condition. For 2 years, UNUM has had the right to call for an Independent Medical Exam, and they have not done so. This would have been standard procedure when they did not believe the statements of Dr. Bowers.

To continue to deny this claim, even after New York Life decided Mr. Mazzamuto was disabled under the Waiver of Premium for Disability clause, and Dr. Schneider has answered "Poor/None" on all 3 questions is truly outrageous behavior. It is this type of behavior by some insurance companies, that has led to the passage of Bad Faith Laws.

Very truly yours,

Gordon K. Rose

**Gordon K. Rose, CLU, ChFC**
**735 Virginia Rail**
**Kiawah Island**
**SC 29455**
**Ph 843 768 6669**
**Fax 843 768 0344**
**E-Mail GKROSECLU@aol.com**

Richard C. Angino                                    Oct. 14, 2002
Angino & Rovner, P.C.
4503 N. Front St.
Harrisburg, PA 17110-1708

          Re:   Vincenzo Mazzamuto

Dear Mr. Angino:

I have had an opportunity to review the materials you sent under your cover letter of Oct. 8, 2002. Those materials are.....
          Volumes I, II, and III of Dr. McSharry's deposition.
          Defendant's Exhibits 102, 103 and numbers 106 through 125.

You requested a supplement to my report of July 11, 2002.

I would like to add the following to my report.

According to Dr. McSharry, UNUM Provident has taken a macro approach to handling claims. The claims people are charged with the responsibility of closing (denying) a set number of claims or a fixed amount of claim dollars each month, to keep total claim payments within company guidelines. Dr. McSharry testified that, UNUM Provident used a system of compensation, bonuses and success with the company, as incentives to the Doctors, Nurses, and other claims employees to keep total claim payments within the prescribed guidelines. Some of the practices involved may be acceptable when dealing with "managed care insurance", but incentives for employees to deny claims on individual disability policy claims is totally unacceptable. The individual policy is an indemnity contract and the contract provisions and the condition of the insured are the determinants of the claim, and each claim must be judged on its merits. Financial rewards or job security for denying claims creates a bias against the claimant. The individual policies were sold at a guaranteed premium, with guaranteed policy provisions, and if the company was too generous with these provisions as a sales incentive, it is their loss if claims run above expectations.

Page 2.

In my earlier report page 2 paragraph 3 I discussed UNUM's deliberate delay of the Mazzamuto claim. Dr. McSharry's testimony explains how delays are built in to the UNUM claims process.

1.  A claims person will send file to one of several areas of specialty. The Doctor receiving the file may be too busy or away from the office and not see it for some number of days. When the Doctor does see it, they may decide it is not in their area and return it to be referred to some one else.

2.  Morbidity is the length of the disability and the severity of the disability. Statistics are useful in determining the morbidity of any single condition, however it becomes much more complex when more than one condition is involved. With these specialty offices, the co morbidity problem is not addressed. This was the way the Mazzamuto claim was delayed for such a long time. The problem was the back injury and the claims people referred the case to a heart specialist. The heart specialist decided that the heart condition was not serious enough to cause disability. Later they noticed that Mr. Mazzamuto might have a nervous condition, so they sent the file to a psychologist. That Doctor decided the mental condition did not cause disability. A Doctor who considers all of Mr. Mazzamuto's conditions would have to agree that Mr. Mazzamuto is disabled. Such a Doctor was not consulted by UNUM.

3.  If the specialist believed that additional information was needed, they had to convince the claims person to order the additional tests or whatever was required. The claims person wanted to close the file. Dr. McSharry had been advised to not look any further if what was in the file could justify declining the claim.

4.  Dr. McSharry further testified that the appeals process is not separated from the claims area. Each claim is to receive a "Full and Fair Review". This is not accomplished without separation from claims.

5.  In my earlier report, I mentioned the role of IME's (Independent Medical Examiners). It is interesting to note that UNUM maintains a panel of IME's. The whole idea of Independent rulings is undermined when the "Independent" Doctors are hand picked by UNUM and if their opinions do not agree with the claims people, they can be removed from the panel. It is a good thing that Mr. Mazzamuto was not examined by one of these "Independent" Doctors.

I believe Dr. McSharry's testimony on page 215 sums up the above very well. He was asked if he had heard of the concept that the whole is greater than its parts. He responded, "Well, you know, really disability or impairment is about what the person can do on their job, and jobs demand all sorts of abilities, cognitive, psychological, and, you know, the ability to handle stress is a psychological, cognitive, is the ability to think on the spot or make judgments, decisions, and physical is the actual fact that you can move your arm. So if you only look at the fact that whether they can move their arm or not and don't decide, don't look at the cognitive and decide if that is affecting their job, then you haven't really given the person a fair whack."

The purpose of a claims department is to pay valid claims and defend the company against invalid claims.

Page 3.

The defense attorney asked Dr. McSharry if he was aware that over 400,000 claims were filed and 90% of those claims were paid. I believe it would be important to get the answers to some follow up questions on that statistic, since 40,000 claims apparently were denied.

1. Were they paid in full or was a total disability reduced to a residual benefit?
2. Were small claims paid in higher proportion than large claims?
3. How many claims were paid only after an attorney represented the insured?

Dr. McSharry was asked if he knew that 22% of the Fortune 500 companies were insured by UNUM Provident. He was also asked if he thought those companies were unsophisticated and buy poor products? This leaves 78% who are not insured by UNUM Provident which has become the largest disability insurer through the merger of Provident Life and Accident, UNUM and Paul Revere. Does this suggest that 78% of the Fortune 500 are unsophisticated and buy poor products?

In summary, Dr. McSharry's testimony explains the process that led to the tremendous delay and declination of Mr. Mazzamuto's valid claim. UNUM's system of providing incentives to claims employees to deny claims created a bias against claimants that tends to prevent a "Full and Fair Review".

Please advise, if you wish any further explanations for any of the above.

Very truly yours,

Gordon K. Rose

G

**Gordon K. Rose, CLU, ChFC**
**735 Virginia Rail**
**Kiawah Island**
**SC 29455**
**Ph 843 768 6669**
**Fax 843 768 0344**
**E-Mail GKROSECLU@aol.com**

Richard C. Angino                                           Nov. 19, 2002
Angino & Rovner, P.C.
4503 N. Front St.
Harrisburg, PA 17110-1708

            Re:  Vincenzo Mazzamuto

Dear Mr. Angino:

On Sunday evening, Nov. 17, the CBS network show "60 Minutes" included a segment on UNUM Provident's disability insurance claims procedures. As I watched this segment, I realized a direct relationship existed between the company's practices, as being reported by several former employees of UNUM Provident, and Mr. Mazzamuto's claim.

UNUM's practice of providing incentives to claims people for "closing" a given $ amount of claims each month is outrageous, and is contrary to public policy. (closing is a nice word for denial)

Claims departments of insurance companies are charged with the responsibility of paying claims that are justified and denying those that are not justified. UNUM Provident's claims department was charged with the responsibility of denying claims, so the total claims pay out would meet predetermined goals. Whether the claim was justified was irrelevant.

UNUM Provident used a lengthy delaying process in many claims, including Mr. Mazzamuto's claim. (See my June 13, 2002 report Pages 4 and 5.)

As reported on 60 minutes the claims people also knew which Medical Doctors on staff would cooperate on denying claims.  If they needed to close a given claim, they knew which Doctor should review the claim. Dr. McSharry was interviewed by CBS. He had refused to cooperate and his employment was terminated. (See my supplemental report of Oct 14, 2002)

UNUM Provident's claims procedures casts a cloud over the entire insurance business. How can the public trust insurance companies when they learn that a claim will be denied, simply because the company's total pay out this month is running too high? Insurance companies sell policies that promise certain benefits in the event of a defined disability. They collect the premiums, as insureds are willing to pay those premiums, so they will be protected in the case of unforeseen events. Then after paying premiums for a number of years, the insured learns that their claim is denied, because there are too many claims this month.

Page 2.

In my 50 plus years in insurance and insurance education, I have not seen a situation as blatant as UNUM Provident's claims procedures. I trust the courts will correct this situation.

Please advise if you have any questions.

Sincerely



Gordon K. Rose

**ordon K. Rose, CLU, ChFC**
**735 Virginia Rail**
**Kiawah Island**
**SC 29455**
**Ph 843 768 6669**
**Fax 843 768 0344**
**E-Mail GKROSECLU@aol.com**

Richard C. Angino                                                    Dec 4, 2002
Angino & Rovner, P.C.
4503 N. Front Street
Harrisburg, PA 17110-1708

    Re:   Vincenzo Mazzamuto-  Supplemental Report

Dear Mr. Angino:

I have had an opportunity to review the following documents, that you had forwarded to me.

        Judge James Larson's order denying judgment as a matter of law or new trial.
        Dr. William Feist deposition 3-8-99
        Dr. William Feist deposition 1-25 99
        Set of documents Exhibit A through I

I wish to add the following statements to my previous reports on the Mazzamuto case.

Dr. Feist's depositions provide a clear insight to Provident Life and Accident, now Unum Provident's approach to claims. When the new CEO Mr. Chandler came in to run the company, he concluded that disability insurance claims were too high, and they had to be reduced. In 1995 the company had to transfer over $300 million to a reserve for disability claims. Mr. Mohney, Vice President of claims was charged with the responsibility of reducing the total claim pay out on disability insurance. This was a tragic mistake as it ignored the duty of the company to pay all legitimate claims. The company had sold disability policies with an "own occupation" and "lifetime" definition of disability. They had become the countries leading disability income insurer by promoting sales using that promise to their insureds.

One way to reduce total claims was to review claims that had high levels of benefits. A new level of claims handling, called "roundtables" was started with the purpose of finding reasons to discontinue benefits for existing claims. Although the idea of getting opinions of several professionals (Medical Doctors, Attorneys, and other experienced claims people) to review claims can be helpful, Providents approach had flaws.
    1.  The people attending the roundtable meetings were aware that the objective was to close the claim. They were expected to be team players and go along.
    2.  The amount of the total reserve for each claim reviewed, was mentioned at the beginning of the discussion, thus providing an incentive and a bias to the reviewers.
    3.  Claims that had been paid for long periods of time were brought to the roundtable, even though there had been no change in the insureds condition.

Page 2

The companies culture of judging each claim on its merits, had been changed to "improve the bottom line".

The fact that the company discontinued issuing policies with the above definition of disability, does not release them from honoring the policies on the books.

I noted on page 314 of the Feist deposition dated 1-25-99 that Henry Dowdle, CLU, ChFC had submitted a document stating "Without a doubt, because of his (Dr. Thompson) limitations he knew continuing to practice as he had was not a possibility." I know Henry Dowdle and he has a prestigious national reputation as a professional in disability insurance. The company was so intent on reducing claims, that they did not take the word of one of their leading agents.

In the claims process, the company has the option of getting an Independent Medical Exam, (IME). Provident's attorney asked Dr. Feist page 112 in the 3-8-99 deposition if there is anything wrong with the company requesting an IME. Dr. Feist responded "that is a time honored tradition" . This time honored tradition was ignored in the Mazzamuto case, thus depriving Mr. Mazzamuto of that opportunity to prove the validity of his claim.

There are several specific reasons to obtain an SME.
  1. The insured should be getting better, and is not.
  2. The condition does not normally disable the insured.
  3. Insureds activities are inconsistent with the claimed disability.

Unum Provident had terminated Mr. Mazzamuto's claim, using several arguments including these three, and yet never requested an IME. It would lead one to believe that they thought if they had an IME, they would have to pay the claim.

Provident has reported that fraudulent claims total $1.5 Billion per year. There has been much written about fraudulent claims. We do not know if the $1.5 Billion is the annual disability benefit or the total reserve that must be set up each year. It should also be noted that it is the insurance companies that are deciding which claims are fraudulent. Is any claim denied to be considered fraudulent? Was Mr. Mazzamuto's claim added to the amount of fraudulent claims? We need to know more, before we conclude that the public is increasingly committing fraud.

I agree with the decision in the California case of awarding future benefits as well as past benefits. The rationale was simple. Why should the insured be subject to harassment by the insurance company in the future? In the Mazzamuto case it will be a simple matter to calculate the present value of the future benefits, based on length and amount of the benefit, assuming an interest rate. The interest rate assumed should be low as interest on conservative investments is low.

I was also interested in the comment that one of the benefits the insured is supposed to get when they purchase a disability insurance policy is "Peace of Mind"! This benefit has been taken away from Mr. Mazzamuto.

Page 3.

Please advise if you have any questions about these materials or comments.

Very truly yours

Gordon K. Rose

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SYRACUSE EXPLORATION COMPANY,     :
      Plaintiff

                        :

        vs.          :   CIVIL ACTION NO. 1:CV-97-1405

NORTHBROOK PROPERTY &                 :
CASUALTY INSURANCE COMPANY,
      Defendant                     :

**FILED**
HARRISBURG, PA

SEP 2 8 1999

M E M O R A N D U M

MARY E. D'ANDREA, CLERK
Per _____
        Deputy Clerk

I.        <u>Introduction</u>

        Plaintiff, Syracuse Exploration Company ("Syracuse"),
has filed a motion for new trial.  This was a bad faith claim in
which the jury exonerated Defendant's ("Northbrook") handling of
Plaintiff's insurance claim.  <u>See</u> 42 Pa. Cons. Stat. Ann. § 8371
(West 1998).  Plaintiff alleges that the court made errors in
ruling on motions in limine, admitting or excluding evidence at
trial, and in instructing the jury.  As discussed below, we
conclude that these claims of error do not warrant the relief
sought.

        In addition, Defendant has filed a motion to strike
certain post-trial affidavits submitted by the Plaintiff
concerning several occurrences during the trial.  We well deny
that motion because those filings are authorized by Fed. R. Civ.
P. 59.

II.      Background

Syracuse was insured by Northbrook for damage to its
construction equipment.  On September 16, 1997, Syracuse commenced
this action claiming that Northbrook acted in bad faith in
handling a claim involving damage to a drill rig.  Syracuse
alleged that Northbrook unreasonably delayed paying its claim for
damage to the rig; canceled the policy following submission of the
claim; took an improper deduction for depreciation; and that the
handling of the claim caused Syracuse to sustain lost profits.
The only question at trial was whether Syracuse proved by clear
and convincing evidence that Northbrook's handling of Syracuse's
claim was done in bad faith.  The jury returned a verdict in favor
of the Defendant on June 9, 1999.

III.     Standard of Review

A motion for a new trial under Fed. R. Civ. P. 59 may be
granted "if required to prevent injustice or to correct a verdict
that was against the weight of the evidence."  American Bearing
Co., Inc. v. Litton Indus., 729 F.2d 943, 948 (3d Cir. 1984);
Alexander v. Morning Pride Mfg., Inc., 913 F. Supp. 362, 372 (E.D.
Pa. 1995).  A new trial may be necessary where the verdict is so
contrary to the weight of the evidence that it represents "a
miscarriage of justice" or "cries out to be overturned or shocks
our conscience."  Williamson v. Consolidated Rail Corp., 926 F.2d
1344, 1353 (3d Cir. 1991); Delli Santi v. CNA Ins. Co., 88 F.3d

2

AO 72A

192, 201 (3d Cir. 1996).  "Injustice" requiring a new trial may include the improper exclusion of evidence, or a jury instruction that misstates the law, so long as the error "appears to the cour inconsistent with substantial justice."  Fed. R. Civ. P. 61; Bailey v. Atlas Powder Co., 602 F.2d 585, 588 (3d Cir. 1979).

IV.    Discussion

    A.  *Evidentiary Rulings Before Trial*

      Prior to trial Defendant submitted several motions in limine, all of which were granted.  Two of these motions stemmed from a partial summary judgment that was granted to the Defendant The court determined that Plaintiff had failed to produce evidence, first, that the depreciation calculation used by Defendant was unreasonable or was reached in bad faith and, second, that Plaintiff had sustained lost profits due to Defendant's handling of its claim.  Accordingly, we granted Defendant's motion in limine to exclude evidence as to lost profits or the method it used to determine depreciation.

      Plaintiff argues that the jury should have been permitted to consider evidence of lost profits and Defendant's handling of the depreciation item.  However, because Plaintiff failed to produce evidence, in response to Defendant's summary judgment motion of any losses it sustained, or that Defendant's calculation of depreciation was done in bad faith, Plaintiff

3

forfeited these claims.  Inasmuch as these allegations could no longer serve as a basis for Plaintiff's bad faith claim, we find no error in excluding this evidence at trial.

In response to a third motion in limine by Defendant, we excluded evidence of Defendant's decision not to renew Plaintiff's insurance policy based on Plaintiff's loss history.  Renewal of the policy was not relevant to the issue of the Defendant's handling of Plaintiff's claim.  Plaintiff now argues that the non-renewal was itself evidence of bad faith.

Plaintiff's argument is not supported by decisions interpreting the Pennsylvania bad faith statute.  See Perschau v. USF Ins. Co., 1999 WL 162969, at *4 n.6 (E.D. Pa. Mar. 22, 1999) (sending notice of non-renewal to insured not evidence of bad faith); Belmont Holdings Corp. v. Unicare Life & Health Ins. Co., 1999 WL 124389, at *3 (E.D. Pa. Feb. 5, 1999) (holding that bad faith statute applies to handling of insurance claims and not to contract disputes, including threats not to renew policy); Kurtz v. American Motorists Ins. Co., 1997 WL 117008, at *2-3 (E.D. Pa. Mar. 12, 1997) (reviewing case law and holding that bad faith statute does not apply to non-renewal of automobile policy); see also U.S. Metal & Coin Jewelry, Inc. v. Jewelers Mut. Ins. Co., 1996 WL 494149 (E.D. Pa. Aug. 26, 1996) (allowing claim of bad faith based on the non-renewal of a policy, but finding none where decision was legitimately based on insured's loss history).  The cases cited by Plaintiff are not persuasive because they do not

4

relate to the Pennsylvania bad faith statute or to non-renewal of insurance based on loss history. Accordingly, we conclude there was no error, and certainly no prejudice, in excluding this evidence.

A final pre-trial ruling challenged by the Plaintiff is our order of December 31, 1998, sanctioning Plaintiff for submitting an expert report three and one-half months after the deadline for submitting such reports. We ordered that the expert's report be stricken from the record. Plaintiff correctly points out that before imposing the sanction of striking proposed testimony by a witness we must consider:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified,
> (2) the ability of that party to cure the prejudice,
> (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and
> (4) bad faith or willfulness in failing to comply with the court's order.

Meyers v. Pennypack Woods Home Ownership Assn., 559 F.2d 894, 904-05 (3d Cir. 1977), overruled on other grounds, Goodman v. Lukens Steel, 777 F.2d 113 (3d Cir. 1985), aff'd, 482 U.S. 656, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987); see also Elf Atochem N. Am., Inc. v. United States, 882 F. Supp. 1497, 1498 (E.D. Pa. 1995). Although we did not require Defendant to establish that admitting the expert's proposed testimony would cause prejudice, nor whether such prejudice could be cured, we did determine that

5

Plaintiff's behavior was in disregard of the rules of civil procedure and the case management plan for this case. Furthermore, although Plaintiff characterized the expert as a "rebuttal expert," his report contained an analysis of Defendant's handling of Plaintiff's insurance claim.  There was no excuse for Plaintiff awaiting the report by Defendant's expert before presenting its own witness.  To allow the Plaintiff to introduce opinion evidence which could have (and should have) been produced initially would have affected the orderly prosecution of the case. Following the Plaintiff's disregard of the discovery deadline (through a request for production of documents), we conclude that the sanction imposed was a valid exercise of our authority under Fed. R. Civ. P. 37.

    B.   *Evidentiary Rulings During Trial*

       When the president of Syracuse began to testify about the company's debts we sustained Defendant's objection that this testimony was not relevant to the bad faith issue.  In arguing that this testimony was admissible to establish bad faith, Plaintiff cites two cases where the insurer's knowledge of its insured's difficult financial condition may have been a factor in proving bad faith.  See Polselli v. Nationwide Mut. Fire Ins. Co., 1995 WL 430571 (E.D. Pa. July 20, 1995) (holding that insurer acted in bad faith in delaying payment of living expenses when insurer knew that insured had no place to live after fire

destroyed home); <u>South Park Aggregates v. Northwestern Nat'l Ins.</u>
<u>Co. of Milwaukee</u>, 847 P.2d 218, 225 (Colo. App. 1992) (holding
that insurer's awareness of financial consequences to insured in
denying claim was evidence of bad faith).  However, Plaintiff
never offered to show that Defendant knew of the Plaintiff's
financial status.  Because an insured's financial condition,
standing alone, cannot establish bad faith on the part of the
insurer, there was no error in excluding this evidence.

Plaintiff contends that admitting testimony by the
Defendant's expert, a lawyer who handles insurance claims, was
error because the testimony included an opinion concerning the
question for the jury, i.e., whether Defendant acted in bad faith.
We find no error.  First, Federal Rule of Evidence 704 permits
testimony as to the ultimate issue.  Second, the expert testified
primarily about the facts of the case and whether particular
actions were acceptable practice within the insurance industry.
Defendant's expert did not testify regarding decisions or
interpretations of the law as did the attorney expert in <u>Nieves-</u>
<u>Villanueva v. Soto-Rivera</u>, 133 F.3d 92 (1st Cir. 1997), on which
the Plaintiff relies.  On those few occasions where the expert's
testimony appeared to veer in the direction of offering a legal
opinion, the court sustained Plaintiff's objections.  For example,
the expert was not permitted to testify as to the difference
between bad faith and a mistake.  (Tr. at 412.)  Accordingly, we
believe the expert's testimony was properly admitted.

7

During trial, Defendant called as a witness an independent appraiser, Charles Stanford, who adjusted the claim on its behalf. Stanford testified from memory about his handling of the Plaintiff's claim, and on cross-examination Plaintiff's counsel asked to see Stanford's files. Stanford stated that he did not have them because counsel for the Defendant told him it was not necessary to bring them to court. (See Stanford Aff. ¶ 5; Zelle Aff. ¶ 8.)[1] Plaintiff contends that defense counsel violated Rule 3.4 of the Rules of Professional Conduct[2] and that this behavior is grounds for granting a new trial.

This argument lacks merit. In its initial disclosures in December 1997, the Defendant informed Plaintiff that Stanford was involved in handling the Plaintiff's claim. (Zelle Aff. ¶ 3.) Defendant also indicated in its pre-trial memorandum that Stanford would testify at trial. Because Stanford is not an employee of

---

[1] The court allowed Defendant additional time to submit affidavits in response to Plaintiff's arguments concerning Stanford's testimony. Plaintiff argues that we lacked the authority to grant an extension. Contrary to Plaintiff's position, the court did have discretion under Fed. R. Civ. P. 6(b) to extend Defendant's time for filing affidavits under Fed. R. Civ. P. 59(c). Although Rule 6(b) lists specific rules for which the time periods may not be extended, Rule 59(c) does not appear in this list.

[2] Rule 3.4(a) provides that "[a] lawyer shall not:
    (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act.
Pennsylvania Rules of Professional Conduct Rule 3.4(a).

AO 72A
(Rev.8/82)

the Defendant, his files were not in the possession or control of

Defendant and they were not produced in response to a request for

documents. <u>See</u> Fed. R. Civ. P. 34. However, Plaintiff had ample

opportunity to subpoena Stanford's files. The failure to do so

cannot be blamed on the Defendant nor provide a basis for a new

trial. <u>See</u> <u>Buchholz v. Rockwell Int'l Corp.</u>, 120 F.3d 146 (8th

Cir. 1997) (denying motion for new trial for failure to produce

documents where opposing party was aware of their existence one

year before trial). Furthermore, Plaintiff has not shown that the

failure to produce Stanford's files was prejudicial.

C.    *Jury Charge*

Plaintiff maintains that a new trial should be granted

because the court did not hold a charge conference and because

certain instructions he proposed were not given to the jury. A

jury charge conference is not required by the federal rules of

civil procedure. <u>See</u> Fed. R. Civ. P. 51. Furthermore, a new

trial will not be granted due to an incorrect jury instruction,

"unless the moving party brought the erroneous instruction to the

court's attention at trial." <u>Younis Bros. & Co. v. CIGNA</u>

<u>Worldwide Ins. Co.</u>, 899 F.Supp. 1385, 1398 (E.D. Pa. 1995), <u>aff'd</u>,

91 F.3d 13 (3d Cir. 1996) (citing Fed. R. Civ. P. 51). This can

be accomplished either by seeking a ruling on the proposed

instruction or by objecting after the jury is charged. <u>Smith v.</u>

<u>Borough of Wilkinsburg</u>, 147 F.3d 272, 275-77 (3d Cir. 1998). In

9

either case, the party must clearly state what portion of the charge is objected to and why it is objectionable.  Id at 277; Fed. R. Civ. P. 51.  Despite being provided with an opportunity to object, Plaintiff did not do so, and thus failed to preserve this issue as a basis for obtaining a new trial.

Although we need not consider Plaintiff's arguments regarding the jury instructions, we will nonetheless explain our decision not to include Plaintiff's proposed charges concerning the Unfair Insurance Practices Act ("UIPA").  See Pa. Stat. Ann. tit. 40, §§ 1171.1-.15 (West 1997 & Supp. 1999).  Plaintiff's proposed Points for Charge Numbers 5 and 6 listed specific provisions of the UIPA and the companion regulations.  Plaintiff's suggested charge would allow a jury to conclude that committing any act prohibited by the UIPA establishes bad faith on the part of the insurer.  We do recognize that establishing that an insurer committed acts mentioned in the UIPA may provide support for a bad faith claim.  See Romano v. Nationwide Ins. Co., 435 Pa. Super. 545, 554, 646 A.2d 1228, 1233 (1994).  Indeed, Plaintiff did introduce evidence that Defendant may not have complied with certain regulations, for example, in the timeliness of its response to Plaintiff's initial claim.  We believe, however, that instructing a jury on these regulations is inappropriate.  The UIPA is concerned with improper conduct that occurs so frequently as to rise to the level of a "business practice."  Pa. Stat. Ann.

10

tit. 40, § 1171.5. The bad faith statute, on the other hand, is concerned only with an insurer's actions in a specific case. See Hyde Athletic Indus. v. Continental Cas. Co., 969 F. Supp. 289, 307 (E.D. Pa. 1997) (observing that "[w]hat constitutes a reasonable set of business practices for the investigation and evaluation of claims is a question properly left to the Pennsylvania Insurance Commissioner, not a judge or a jury"). Instructing the jury on the UIPA might lead to confusion. We believe the better approach is to permit the introduction of evidence showing non-compliance with the UIPA, as the Plaintiff did here, but to allow the jury to decide whether this is evidence of bad faith as that term is defined in the law.

Plaintiff's remaining two grounds center on questions asked by the jury during the course of deliberations. We responded to those questions as we thought appropriate. The Plaintiff did not note any objections to the statements made to the jury and thus failed to preserve these matters for review.

We will issue an appropriate order denying Plaintiff's motion for a new trial.

William W. Caldwell
United States District Judge

Date: September 28, 1999

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SYRACUSE EXPLORATION COMPANY,     :
      Plaintiff

                        :

      vs.               :   CIVIL ACTION NO. 1:CV-97-1405

NORTHBROOK PROPERTY &     :
CASUALTY INSURANCE COMPANY,     :
      Defendant         :

**FILED**
HARRISBURG, PA

SEP 2 8 1999

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

O R D E R

AND NOW, this 28th day of September, 1999, upon consideration of Plaintiff's motion for a new trial, filed June 11, 1999 (Doc. No. 113), and Defendant's motion to strike post-trial affidavits, filed June 22, 1999 (Doc. No. 117), it is Ordered that the motions are denied.

William W. Caldwell
United States District Judge

1. Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co., N0. 01-1299, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, 29 Fed. Appx. 823; 2002 U.S. App. LEXIS 3408, January 24, 2002, Submitted Pursuant to Third Circuit LAR 34.1 (a), February 27, 2002, Filed, RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

... AUTOMOBILE ASSOCIATION CASUALTY INSURANCE COMPANY
... Automobile Association Casualty Insurance Company ("USAA") did not ...
... about the applicability of the Unfair Insurance Practice Act ("UIPA"), ...
... accident, Dinner had an auto insurance policy with USAA, which included ...
... condition. Two layers of insurance existed in front of ...
... USAA acted in bad faith within the meaning of 42 ...
... claim, Dinner offered the expert testimony of Barbara Sciotti. ...
... lay out the obligations of an insurance company in handling ...
... relevant because it would inform the jury that insurance companies have rules that govern "the ...
... USSA and held, the Uniform Insurance Practices Act's requirements are ...
... certain standards placed on insurance companies and on the insurance industry in general. And it is ...
... for plaintiffs alleging that their insurance company refused to pay ...
... 8371 entitled 'Actions on Insurance Policies,'" which creates a ...
... standard for determining whether an insurance company acted in ...
... particular meaning in the insurance context:"Bad faith" on ...
... Nationwide Mutual Fire Insurance Company, 646 A. ...
... practices" in the business of insurance. See 40 Pa. ...
... allowed Sciotti to testify, as an expert, about the substance of those actions of ...
... believed were committed in "bad faith." Sciotti was allowed to testify ...
... based on her knowledge of the case and the insurance industry. While she was not ...

2. Greater N.Y. Mut. Ins. Co. v. North River Ins. Co., No. 95-1484, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, 85 F.3d 1088; 1996 U.S. App. LEXIS 13773; 35 Fed. R. Serv. 3d (Callaghan) 556, March 11, 1996, Argued, June 10, 1996, Filed

... NEW YORK MUTUAL INSURANCE COMPANY v. THE NORTH RIVER INSURANCE COMPANY; CRUM AND FORSTER ...
... 05223); NORTH RIVER INSURANCE COMPANY v. GREATER NEW YORK MUTUAL INSURANCE COMPANY (D.C. Civil ...
... New York Mutual Insurance Company, Appellant
... purchased primary liability insurance from the Greater New York Mutual Insurance Company with a one ...
... excess general liability insurance from the North River Insurance Company, with coverage from one ...
... accident HUP's malpractice insurance consisted of three levels. As ...
... Lexington as the insurer.n4 "Insurance policies are risk-spreading ...
... part that maybe there was more bad faith that you could have added on to that one. So we felt -- we ...
... North River presented experts to support its claim of a bad faith refusal to settle. Perry ...
... York acted in bad faith in not evaluating the ...
... New York's own insurance expert, Walter Zimmer, ...
... idea of subrogation is that of substituting the insurance carrier for the insured ...
... R. Newman, Handbook on Insurance Disputes § 13.05 ( ...
... A New Twist on Insurance Litigation: Stowers Suits ...
... faith in connection with an insurance policy). Because a primary ...
... faith to each party to an insurance contract, including the insured. ...

3. General Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., No. 91-1497, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, 960 F.2d 377; 1992 U.S. App. LEXIS 5805, January 27, 1992, Argued, April 3, 1992, Filed, Petition for Rehearing In Banc Denied May 8, 1992, Reported at 1992 U.S. App. LEXIS 9955.

GENERAL STAR NATIONAL INSURANCE COMPANY, Appellant, vs. LIBERTY MUTUAL INSURANCE COMPANY

... in this case concerns an insurance company's duty of good ...

... reside elsewhere, and the contract of insurance was presumably delivered in ...

... not address the definition of bad faith. Kulak concerned the admissibility of expert testimony on the issue of damages; the ...

... in the record to find bad faith and remanded for a ...

... Meats, Inc. v. Insurance Co. of N. America, ...

... bad faith in insurance cases, the court has clearly ...

... customary privilege in the insurance industry. Thinking that Choice ...

... reached its conclusion of absence of bad faith by initially concluding that ...

... court primarily relied on the expert testimony of Albert Bricklin. On the ...

... argument that New York Insurance Law § 2601( ...

... Although the opinion refers to the Insurance Law, the court in the ...


4. McNally v. Nationwide Ins. Co., No. 86-5128, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, 815 F.2d 254; 1987 U.S. App. LEXIS 3671, August 20, 1986, Argued, March 20, 1987, Filed, As Amended, April 23, 1987.

... Appellee v. Nationwide Insurance Company, Appellant

... against his insurer, Nationwide Insurance Company. McNally contends that ...

... insured by CNA Insurance. McKelvey was driving approximately ...

... no assets other than his insurance policy with defendant Nationwide, which ...

... 400,000 ($100,000 from each insurance company for Mr. and ...

... money came ultimately from the insurance companies, which of course have deep ...

... both parties called expert witnesses to give their opinion on whether ...

... acted unreasonably or in bad faith by failing to settle or ...

... 1981 deadline. McNally's expert, John E. Sandbower, ...

... 1605A-1612A. Nationwide's expert, Edmund N. Carpenter, ...

... not act in bad faith or negligently or fail to perform their ...

... plaintiff's conduct, the   liability of an insurance carrier to its policyholder in ...

... based on the tortious conduct of the insurance carrier, which under the policy has ...

... John Allen Appleman, Insurance Law and Practice §   ...

... excess of the combined applicable insurance coverages of $200,000. I am ...

... offered to settle with the driver's insurance company for an amount ...

... limit. The State Compensation Insurance Fund, however, which had paid unemployment ...

... remained able to sue the insurance company for the payments the ...

... payment made by the insurance company to the victim's estate, the insurance company could not have been certain that all ...

... settle could not be based on the insurance company's refusal to accept an ...

... made jointly to two insurance companies, "the Batons would not have been ...

... other than the condition that two insurance companies respond to it together, the ...

... money to a claimant, an insurance company may not ...

... claimant's settlement offer, insurance companies therefore must attribute ...

... John Allen Appleman, Insurance Law and Practice §   ...

... a reasonably prudent insurance company would exercise under the ...

... Casson v. Nationwide Insurance Co., 455 A. ...

... a suit charging that an insurance company has failed in ...


5. Joy Mfg. Co. v. Sola Basic Industries, Inc., Nos. 81-2694, 81-2695, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, 697 F.2d 104; 1982 U.S. App. LEXIS 22932; 12 Fed. R. Evid. Serv. (Callaghan) 381, September 16, 1982, Argued, December 30, 1982, Decided

... v. Metropolitan Life Insurance Co., 598 F. ...

... v. Metropolitan Life Insurance Co., 598 F. ...

6. United States v. Certain Parcels of Land, No. 11273, UNITED STATES COURT OF APPEALS, THIRD CIRCUIT, 215 F.2d 140; 1954 U.S. App. LEXIS 2815, April 19, 1954, Argued, August 12, 1954, Decided

... designated by the government experts. As we have indicated a court ...
... deposited in the absence of bad faith. Bad faith is not charged here. The grounds ...
... Insurance870.00870.00870.00 ... Insurance500.00500.00500.00

7. Miziker Entm't Group, Ltd. v. Clarendon Nat'l Ins. Co., CIVIL ACTION NO. 01-CV-3219, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2002 U.S. Dist. LEXIS 19391, October 1, 2002, Decided, October 1, 2002, Filed, Entered

... v. CLARENDON NATIONAL INSURANCE COMPANY, and NORTH AMERICAN ...
... For CLARENDON NATIONAL INSURANCE COMPANY, DEFENDANT: WILLIAM ...
... Defendant Clarendon National Insurance Company's Motion for ...
... Defendant Clarendon National Insurance Company ("Clarendon" or "Defendant") is a stock insurance corporation, organized and existing ...
... purchased three separate insurance policies from Clarendon: (1) ...
... Errors & Omissions Liability Insurance policy (the "Errors & Omissions ...
... Miziker and Company sought insurance coverage in connection with its ...
... claim to Clarendon through its insurance broker on April 17, ...
... Clarendon policy of liability insurance, including, but not ...
... Company stating that there was no insurance coverage available under any of the ...
... law is a possibility ... because the insurance policy was probably negotiated ...
... 1368 (Pa. 1987). "An insurance company is obligated to defend an ...
... Cir. 1985)).When interpreting an insurance policy, this Court must ...
... content. Errors and Omissions insurance generally is "a specialized form of insurance which typically protects ...
producers ... from ...
... Cir. 1991). In the insurance context, "to work an estoppel, there ...
... not act in bad faith.H. Motion to Preclude ...
... P. Murphy, Esquire, as an Expert on Behalf of Clarendon and to Compel ...
... Defendant Clarendon National Insurance Company on all claims.Finally, ...
... Behalf of Clarendon National Insurance Company and to Compel Discovery of ...

8. M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Civil Action No. 97-1568 (JAG), UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, 205 F. Supp. 2d 306; 2002 U.S. Dist. LEXIS 16630, May 31, 2002, Decided, June 3, 2002, Filed

... Astro acted in bad faith, S&G submits an expert report and a supplemental ...
... Standard Security Life Insurance Company of New York, ...

9. Simon v. UnumProvident Corp., CIVIL ACTION NO. 99-6638, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2002 U.S. Dist. LEXIS 9331, May 23, 2002, Decided, May 28, 2002, Filed; May 29, 2002, Entered

... PAUL REVERE LIFE INSURANCE COMPANY, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, THE PROVIDENT COMPANIES, ...
... Provident Life and Accident Insurance Company and the Paul Revere Life Insurance Company's Motion for ...
... Defendant Paul Revere Insurance Company ("Paul Revere"). At the ...
... benefits under the disability insurance policy. Plaintiff named ...
... Provident Life and Accident Insurance Company ("Provident Life") and ...
... not parties to the original insurance contract. See Defs.' ...
... Life are non signatories to the insurance contract which is the fulcrum of this dispute, nor does ...
... rights under his disability insurance contract." Pl.'s ...

... Pa. 1992) (holding that "an insurance contract is governed by the ...
... companies had a duty to the insurance company, this duty did not ...
... Exchange purchased disability insurance from Paul Revere in ...
... section 155 of the Illinois Insurance Code. See    Brennan, ...
... Section 155 of the Illinois Insurance Code provides that:   a ...
... insurer and had not entered into the insurance contract. See    Brennan, ...
... Revere as full time insurance agents prior to the merger with ...
... licensed to conduct business as an insurance company. The record at bar, however, is ...
... bad faith on the part of insurance companies. See 42 ...
... action arising under an insurance policy, if the court finds that the ...
... cause of action for bad faith under Pennsylvania law because ...
... reports of independent medical experts in terminating Plaintiff's ...
... case, it is undisputed that the disability insurance policy issued to Plaintiff was an ...
... Defendants acted in bad faith in its investigation of Plaintiff's ...
... dealings with independent medical experts upon whose reports they allegedly ...
... offer total disability insurance with a lifetime monthly ...
... Provident Life and Accident Insurance Company and the Paul Revere Life Insurance Company's Motion for ...

10. Kilmer v. Conn. Indem. Co., 3:CV-99-0275, UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA, 189 F. Supp. 2d 237; 2002 U.S. Dist. LEXIS 3445, February 28, 2002, Decided

... benefits payable under its insurance policy. Connecticut Indemnity ...
... 1998, the Kilmers entered into an insurance contract with Connecticut Indemnity ...
... purchased through the Kerwick Insurance Agency. According to defendant, Mr. Kilmer's insurance broker, Joe
Kerwick, was ...
... in the application for insurance, such as the description of the building and the classification of ...
... Kilmers' application for insurance, Kerwick admitted that he had made ...
... possibility of misstatements on the application of insurance, Roberts took a ...
... process referenced in the insurance policy. The Kilmers maintain that they ...
... fire, surety or casualty insurance and the rights created thereby are determined ...
... in Pennsylvania; (2) the insurance policy in question was ...
... in Pennsylvania; (5) the insurance company who issued the policy is ...
... in Pennsylvania; (6) the insurance company who issued the policy is competing with other insurance companies
domiciled and doing ...
... argument by pointing to the insurance policy. In two ...
... conduct in completing the insurance application and the other concerning the ...
... property covered under the insurance policy was subject to New York's property insurance laws.In General ...
... Pennsylvania requirements when administering insurance policies to Pennsylvania residents, ...
... conclusion, the court stated:   An insurance company that conducts business with ...
... bad faith with respect to the insurance policy. Of course, if a ...
... Id. at 855.The fact that the insurance policy refers to New ...
... in Pennsylvania; (2) the insurance policy in question was ...
... in Pennsylvania; and (5) the insurance company who issued the policy is ...
... residents/insured from overreaching insurance companies." Celebre v. ...
... residents from possible misconduct of insurance carriers operating within its ...
... in its handling of the Kilmers' insurance claim. Accordingly, the Kilmers ...
... action arising under an insurance policy, if the court finds that the ...
... produced a report from an insurance practices expert on the appropriateness of ...
... highly unreasonable manner." (Expert Rep. of Barbara Sciotti at ...
... n12 The Kilmers also contend that bad faith is shown by the fact that ...
... in the resolution of Kilmers' insurance claim, n13 Connecticut ...
... unsettling. Finally, there is the report of the insurance practices expert, who opines that ...

11. Snodgrass v. Ford Motor Co., Civ. Action No. 96-1814(JBS), UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, 2001 U.S. Dist. LEXIS 18555, August 31, 2001, Decided, September 4, 2001, Filed, NOT FOR PUBLICATION

... for State Farm Insurance Company, the insurer for ...
... statements from garage owners and insurance investigators--has yet to be discovered ...
... filed an unsuccessful claim with her insurance company. In May ...
... regardless of the existence or nonexistence of insurance coverage available in ...
... Affairs representative, who informed her that her insurance company is responsible for any ...

12. Kiss v. Kmart Corp., CIVIL ACTION NO. 97-7090, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2001 U.S. Dist. LEXIS 6744, May 22, 2001, Filed

... USA.  For CNA INSURANCE COMPANY, CNA INSURANCE COMPANIES, RSKCO., MOVANTS: ...
... may be reversible error. . . . An expert may testify beyond the ...
... report absent surprise or bad faith." Fritz v. Consolidated ...

13. Total Containment, Inc. v. Dayco Prods., Inc., CIVIL ACTION NO. 1997-cv-6013, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2001 U.S. Dist. LEXIS 5971, May 3, 2001, Decided

... rather than expand it. See Insurance Co. of N. Am. v. ...
... a letter to TCI's insurance carrier, he stated, "it is generally ...

14. Tse v. Ventana Med. Sys., C.A. No. 97-37-GMS, JURY TRIAL DEMANDED, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, 123 F. Supp. 2d 213; 2000 U.S. Dist. LEXIS 19255; Fed. Sec. L. Rep. (CCH) P91,313, November 22, 2000, Decided, November 22, 2000, Filed

... see also Rudinger v. Insurance Data Processing, Inc., ...
... see also Rudinger v. Insurance Data Processing, Inc., ...
... 2578 (1993)). Moreover, an expert's opinion cannot establish ...
... clearly rebuts an inference of bad faith. See In re ...

15. Estate of Richard Schoch v. Amerisure Ins. Co., CIVIL ACTION No. 99-6254, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2000 U.S. Dist. LEXIS 5424, April 24, 2000, Decided, April 25, 2000, Filed

... Plaintiff, vs. AMERISURE INSURANCE CO., Defendant.
... USA.  For AMERISURE INSURANCE COMPANY, DEFENDANT: ALLAN ...
... a policy of automobile insurance issued by Defendant, which ...
... in paying Plaintiff's insurance claim was reasonable, and do not ...
... made payment on Plaintiff's insurance policy until December ...

16. Krisa v. Equitable Life Assur. Soc'y, 3:CV-97-1825, UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA, 113 F. Supp. 2d 694; 2000 U.S. Dist. LEXIS 15693, April 6, 2000, Decided, April 6, 2000, Filed

... concerns two disability insurance policies purchased by ...
... sold an Equitable disability insurance policy by Joseph ...
... another disability income insurance policy. Charles Rader was the ...
... competent evidence that those selling the insurance lead him to believe that inability to ...
... trial practice would entitle him to insurance benefits. Moreover, he has presented ...
... for determining issues of insurance coverage is the reasonable expectations of the ...
... most cases, 'the language of the insurance policy will provide the ...
... must examine 'the totality of the insurance transaction involved to ascertain the ...
... Farm Mutual Automobile Insurance Co., 513 Pa. ...

... a specific type of insurance coverage and the insurance carrier failed to honor that  ...
... lack thereof inherent in an insurance policy, courts should insure that the  ...
... claim for disability insurance against an insurance company do not compel  ...
... a customer, and on understanding of insurance matters or readily available  ...
... in understanding and procuring insurance." Id at 904 n. ...
... bad faith on the part of insurance companies. Section 8371 of  ...
... action arising under an insurance policy, if the court finds that the  ...
... case, it is undisputed that the disability insurance policies issued to Krisa  ...
... Krisa insists that the report of his insurance practices expert, John Klagholz, is sufficient to  ...
... issue of triable fact on his bad faith claim. A careful  ...
... in the context of the terms of the insurance policies and the nature of the investigation undertaken by the insurance company. Thus, even where a court has concluded that an insurance company was obligated under its  ...
... in the context of disability insurance claims, Judge Kelly  ...
... Courts repeatedly have held that an insurance company's substantial, thorough investigation, based upon which the insurance company refuses to make or  ...
... plaintiff was still disabled, the insurance company had a reasonable  ...
... Pa. 1993)(finding an insurance company's extensive investigation was  ...
... cases show is that for an insurance company to show that it had a reasonable basis, an insurance company is not required to   ...
... likely than not was accurate. The insurance company also is not required to  ...
... odds with its conclusion. Rather an insurance company simply must  ...
... for total disability insurance benefits as of the time this action was  ...

17. Saracco v. Vigilant Ins. Co., CIVIL ACTION NO. 99-3502, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2000 U.S. Dist. LEXIS 1685, February 22, 2000, Decided, February 22, 2000, Filed

... w v. VIGILANT INSURANCE CO.
... favor of defendant Vigilant Insurance Company and against plaintiffs  ...
... USA.  For VIGILANT INSURANCE COMPANY, a member of the CHUBB GROUP OF INSURANCE COMPANIES, DEFENDANT: FRANCIS  ...
... 22, 2000 When Vigilant Insurance Company refused to pay insurance benefits for a  ...
... promptly notified Vigilant, their insurance carrier, of the loss and submitted  ...
... happened to have salvaged from the fire was their insurance policy.   - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - ...
... alleging that Vigilant breached the insurance contract and acted in  ...
... counterclaim under the Pennsylvania Insurance Fraud Act. As noted at the  ...
... Count I: Breach of Insurance ContractCount I of the  ...
... alleges that Vigilant breached the insurance policy. In their summary  ...
... conducted its investigation in bad faith, and (2) unreasonably waited  ...
... deny the claim, arguing that its expert's testimony is inadmissible under  ...
... A. The Arson DefenseThe insurance policy contains the following  ...
... loss will benefit from this insurance. An intentional act is one whose  ...
... Pennsylvania law, n6 an insurance company that asserts an arson  ...
... Under Pennsylvania law, an insurance contract is void for  ...
... lied on an application for insurance. Courts in this circuit have, however,  ...
... concealment or misrepresentation during an insurance company's investigation of a  ...
... statements in support of his insurance claim, Saracco included  ...
... going to keep (and therefore submit an insurance claim for) the piano and all of the  ...
... See also Long v. Insurance Co. of N. Am., 670  ...
... material if a reasonable insurance company, in determining its  ...
... burn the house and collect the insurance payout." Def.'s  ...
... agree that a reasonable insurance company would attach importance to an  ...
... Concealment condition in the insurance policy.Count II:  ...
... for violation of the Pennsylvania Insurance Fraud Act, 18  ...

... favor of defendant Vigilant Insurance Company and against plaintiffs ...

18. Williams v. Hartford Cas. Ins. Co., CIVIL ACTION No. 99-1732, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 83 F. Supp. 2d 567; 2000 U.S. Dist. LEXIS 1686, February 22, 2000, Decided, February 22, 2000, Filed

... v. HARTFORD CASUALTY INSURANCE COMPANY, Defendant.
... defendant Hartford Casualty Insurance Company and against plaintiffs ...
... For HARTFORD CASUALTY INSURANCE COMPANY, DEFENDANT: THOMAS ...
... defendant Hartford Casualty Insurance Company, alleging bad ...
... in question and the tortfeasor's insurance company settled Mr. ...
... 1996.The plaintiffs had UIM insurance with Travelers/Aetna Insurance Co. (Travelers), their personal ...
... ordinary part of legal and insurance work" do not constitute ...
... claim). In Klinger, the insurance company failed to settle ...
... statute "is meant to dissuade an  insurance company from using its economic ...
... 88 at 18-20 (Expert Report of Barbara Sciotti). Because the ...
... claim did not constitute bad faith, the report does not raise ...
... by the injured party's insurance carrier to its insured. Kriner ...
... under a policy of insurance other than a life insurance policy as a result of ...
... benefits and his employer's UIM insurance benefits. See Warner, ...
... sustain a claim of bad faith. Hartford could properly rely on the ...
... Mrs. Williams. Plaintiffs' expert report, which simply states that ...
... violated Pennsylvania's Unfair Insurance Practices Act (UIPA) and applicable insurance regulations do not amount to
...
... not arise out of an insurance contract until the insurer ...
... defendant Hartford Casualty Insurance Company and against plaintiffs ...

19. Bostick v. ITT Hartford Group, Inc., CIVIL ACTION NO. 97-CV-6296, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 56 F. Supp. 2d 580; 1999 U.S. Dist. LEXIS 11300, July 27, 1999, Decided, July 27, 1999, Filed, Entered

... HARTFORD, and/or THE HARTFORD, and HARTFORD INSURANCE COMPANY OF THE MIDWEST, Defendants, ...
... HARTFORD, and/or THE HARTFORD, HARTFORD INSURANCE COMPANY OF THE MIDWEST, DEFENDANTS: ...
... J, Letter from Hartford Insurance Denying Coverage. Significantly, however, the ...
... 17 of 18. For insurance purposes, damages "occur" when they " ...
... Equipment v. Reliance Insurance Company, 369 Pa. ...
... D'Auria v. Zurich Insurance Company, 352 Pa. ...
... based on the realization that the purpose of insurance is to protect insureds against unknown risks." Appalachian Insurance Company v. Liberty Mutual Insurance Company, 676 F. ...
... holding that a flood insurance policy did not cover ...
... limitations contained within the insurance policy. See Schreiber ...
... Lardas v. Underwriters Insurance Co., 426 Pa. ...
... Authority v. Planet Insurance Company, 464 Pa. ...
... remedy . . . ." See MGA Insurance Company v. Bakos, ...
... action arising under an insurance policy, if the court finds that the ...
... meaning to the term within the insurance context: Insurance. "Bad faith" on [the] part of [an] ...
... Nationwide Mutual Fire Insurance Co., 949 F. ...
... Farm Mutual Automobile Insurance Co., 939 F. ...
... Claim. Whether or not the defendants' expert correctly assessed the cause of ...
... Hartford acted unreasonably. Bad faith cannot be found where the insurer's ...
... but incorrect interpretation of the insurance policy and the law. See ...
... Company v. Allstate Insurance Company, 534 Pa. ...
... Hartford, and/or The Hartford, and Hartford Insurance Company of the Midwest for ...

20. Kosierowski v. Allstate Ins. Co., CIVIL ACTION NO. 98-5221, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 51 F. Supp. 2d 583; 1999 U.S. Dist. LEXIS 8247, June 4, 1999, Decided

... Plaintiff, v. ALLSTATE INSURANCE CO., Defendant.
... USA.  For ALLSTATE INSURANCE COMPANY, DEFENDANT: MARSHALL ...
... alleging that defendant Allstate Insurance Company acted in ...
... Allstate acted in bad faith; (3) plaintiff has no ...
... actions; and (4) plaintiff's expert opinion does not provide ...
... action arising under an insurance policy, if the court finds that the ...
... Prudential Property and Casualty Insurance Company, 437 Pa. ...
... timely manner. According to the insurance policy governing this claim, if the ...
... ordinary part of legal and insurance work. There is no evidence from which ...
... hand. In Klinger, the insurance company offered its insureds ...
... 3d at 232-33. The insurance company in this case did ...
... top priority on all agendas. The insurance company in Klinger ...
... a clear claim; the insurance company in this case did ...
... not inappropriate for an insurance company to attempt to resolve all ...
... claims was appropriate for insurance company as long as company did ...
... a violation of the Unfair Insurance Practices Act in the discussion of the expert report itself. - - - - - - - - - - - - - - - -
End ...
... Two of plaintiff's claims of bad faith deal with requests by ...
... information was bad faith, as the insurance policy itself obliges ...
... appropriateness of considering broader insurance industry practice in the ...
... plaintiffs to attack an entire insurance industry; rather, it "addresses ...
... reference to the Pennsylvania Unfair Insurance Practices Act (UIPA) and ...
... UIPA and even Department of Insurance Regulations in demonstrating ...
... n.9 (discounting expert report because opinion ignored the ...
... for its actions in bad faith claim).  III. Conclusion ...
... send a message to insurance companies that they may properly ...
... insureds by giving insurance companies an incentive to adhere to ...
... favor of the defendant Allstate Insurance Company and against the plaintiff, ...

21. Bunting v. Ryder Truck Rental, Inc., CIVIL ACTION NO. 96-3683, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1999 U.S. Dist. LEXIS 566, January 14, 1999, Decided, January 15, 1999, Filed

... NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ...

22. Greco v. Paul Revere Life Ins. Co., CIVIL ACTION NO. 97-6317, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1999 U.S. Dist. LEXIS 110, January 12, 1999, Decided, January 12, 1999, Filed

... PAUL REVERE LIFE INSURANCE COMPANY
... PAUL REVERE LIFE INSURANCE COMPANY, DEFENDANT: PLATTE ...
... Paul Revere Life Insurance Company ("Paul Revere"), terminated disability insurance payments to Greco, it breached its ...
... violated Pennsylvania's Unfair Insurance Practices Act, and acted ...
... application for and was issued the insurance policy in question ...
... Attachment A, 1988 Insurance Policy, P 1.9, ...
... counselor." Id., 1988 Insurance Policy Application, Part ...
... biased in favor of insurance companies to conduct the independent ...
... disability under the terms of the insurance policy; defendant was reckless ...
... action arising under an insurance policy, if the court finds that the ...

... bad faith in the insurance context: 'Bad faith' on ...
... each of the cited cases, the insurance company denied benefits or rescinded the insurance policy because of misrepresentations made ...
... discovering that insured had lied on insurance application). Paul Revere, however, does ...
... Barbara J. Paull, an insurance claims consultant and expert witness, in which she states that attributing any meaning to blanks on an insurance form would constitute bad faith on the part of an insurance company. Pl.'s ...
... 1. Paull also submits that "if an insurance company develops information that ...
... adverse claims action, the insurance company as fiduciary, has an obligation to its ...

23. Lentz v. Mason, CIVIL ACTION NO. 96-2319, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, 32 F. Supp. 2d 733; 1999 U.S. Dist. LEXIS 3424; 43 Fed. R. Serv. 3d (Callaghan) 297, January 11, 1999, Decided

... National Mutual Casualty Insurance Co., and sample portions of the ...
... National Mutual Casualty Insurance Company" (the "Stipulation of Dismissal"), and " ...

24. Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P., Civil Action No. 94-1197 (JBS), UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, 184 F.R.D. 526; 1998 U.S. Dist. LEXIS 22061, November 17, 1998, Decided, November 17, 1998, Filed

... CORP. and FEDERAL DEPOSIT INSURANCE CORP., as Receiver of Security ...
... Esquire, FEDERAL DEPOSIT INSURANCE CORPORATION, New York ...
... Cir. 1997); Reliance Insurance Company v. Louisiana ...

25. Smith v. Goschenhoppen-Home Ins. Group, CIVIL ACTION NO. 97-2034, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1998 U.S. Dist. LEXIS 15928, October 5, 1998, Decided, October 6, 1998, Filed; October 6, 1998, Entered

... v. GOSCHENHOPPEN-HOME INSURANCE GROUP and OLD GUARD INSURANCE COMPANY
... GOSCHENHOPPEN-HOME MUTUAL INSURANCE COMPANY, DEFENDANT: MATTHEW ...
... GOSCHENHOPPEN-HOME MUTUAL INSURANCE COMPANY, OLD GUARD INSURANCE GROUP, DEFENDANTS: MICHAEL ...
... For OLD GUARD INSURANCE GROUP, DEFENDANT: ROBERT ...
... defendant is a Pennsylvania insurance company located in ...

26. Thurston v. Liberty Mut. Ins. Co., Civil Action No. 97-31 MMS, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE, 16 F. Supp. 2d 441; 1998 U.S. Dist. LEXIS 11327, July 2, 1998, Argued, July 17, 1998, Decided

... v. LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts ...
... against Liberty Mutual Insurance Co. ("Liberty") on January ...
... assigned to plaintiff by the insurance company erroneously told the ...
... doctors.Plaintiff's dealings with the insurance company, the problems associated with ...
... compensation contracts between insurance carriers and employers, employees are ...
... Liability," states:   (A) An insurance carrier or self-insurer ...
... accident was received by the insurance carrier or self-insured ...
... claim is accepted by the insurance carrier or self-insured ...
... claim is denied by the insurance carrier or self-insured ...
... denial; or (4) State that the insurance carrier or self-insured ...
... claimant allege to the Board that the insurance carrier or self-insured has ...
... a hearing. The claimant and the insurance carrier or self-insured ...
... Pennsylvania Manufacturers Association Insurance Company, 618 F. ...
... Hostetter v. Hartford Insurance Co., 1992 Del. ...
... may determine that, if one of the insurance adjusters refused treatment ...
... Liberty Mutual Fire Insurance Co., 898 S.W. ...

... patient expects an employee of the insurance company to falsely inform ...
... inexcusable it was for an employee of the insurance company to mislead plaintiff's ...
... Liberty Mutual Fire Insurance Co. v. Crane, ...
... App. 1995) (holding that the insurance carrier's continuous pursuit of ...
... doctors and of the carrier's own expert in order to achieve the ...
... claim could support a bad faith claim but not ...

27. McGuinn v. Allstate Ins. Co., C.A. NO. 97-5661, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1998 U.S. Dist. LEXIS 5720, April 13, 1998, Decided, April 13, 1998, Filed

... w VS. ALLSTATE INSURANCE COMPANY
... USA.  For ALLSTATE INSURANCE COMPANY, DEFENDANT: MATTHEW ...
... time and expense of securing an expert to explain its position to a ...
... complex and the claims for bad faith and punitive damages are equally ...

28. Guesnt v. Western Pac. Mut. Ins. Co., CIVIL ACTION NO. 97-4704, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1998 U.S. Dist. LEXIS 4037, March 30, 1998, Decided, March 30, 1998, Filed

... WESTERN PACIFIC MUTUAL INSURANCE COMPANY, Defendant, v. ...
... Western Pacific Mutual Insurance Company's Motion for ...
... WESTERN PACIFIC MUTUAL INSURANCE COMPANY, DEFENDANT: JOHN ...
... WESTERN PACIFIC MUTUAL INSURANCE COMPANY, THIRD-PARTY ...
... Western Pacific Mutual Insurance Company's Motion for ...
... Western Pacific Mutual Insurance Company ("WPMIC") is the insurer which ...
... action arising under an insurance policy, if the court finds that the ...
... own does not constitute bad faith, and that the quality of its investigation into the plaintiffs' ...
... precludes a finding of bad faith. While perhaps WPMIC's experts' testimony as to the adequacy of WPMIC's ...
... held to apply with respect to insurance contracts, "only malfeasance, the ...
... Western Pacific Mutual Insurance Company's Motion for ...

29. Dattilo v. State Farm Ins. Co., CIVIL ACTION No. 97-1842, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1997 U.S. Dist. LEXIS 16188, October 17, 1997, Decided, October 17, 1997, Filed; October 27, 1997, ENTERED
... v. STATE FARM INSURANCE COMPANY
... defendant State Farm Insurance Company and against the plaintiffs ...
... For STATE FARM INSURANCE COMPANY, DEFENDANT: EARL ...
... under two automobile insurance policies issued by ...
... a policy of automobile insurance issued by Allstate, which ...
... action arising under an insurance policy, if the Court finds that the ...
... provided by the contract of insurance to obtain Mrs. Dattilo's ...
... plaintiffs offered the testimony of an "expert," who without even looking at ...
... Farm was acting in bad faith in handling the Dattillos' ...
... offers were not indicative of bad faith.  - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -In ...
... serious question as to whether this so-called expert should be permitted to testify. He qualified as ...
... judged by the standards of the insurance industry. Bad faith is ...
... defendant State Farm Insurance Company and against the plaintiffs ...

30. Wood v. Allstate Ins. Co., CIVIL ACTION NO. 96-4574, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1997 U.S. Dist. LEXIS 14663, September 19, 1997, Decided, September 19, 1997, Filed
... WOOD v. ALLSTATE INSURANCE COMPANY
... USA.  For ALLSTATE INSURANCE CO., DEFENDANT: KEVIN ...
... Wood ("Plaintiff") had an automobile insurance policy with Defendant Allstate Insurance Company ("Defendant" or "Allstate"). On ...

... supplemental instruction to the jury on bad faith confused and misled the jury and ...
... Defendant, and (c) Plaintiff's expert violated the Court's order ...
... about Pennsylvania's Unfair Insurance Practices Act and Unfair ...
... 15,000 of which was paid by the insurance company for the driver who ...
... statement of the two-part bad faith test contained in ...
... 3. The Testimony of Plaintiff's Expert During trial, Defendant ...
... Practices Act or the Unfair Insurance Practices Act. The Court ...
... Practices Act or Unfair Insurance Practices Act. Finally, as ...

31. Thomas v. Massachusetts Cas. Ins. Co., CIVIL ACTION NO. 96-0758, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1997 U.S. Dist. LEXIS 8695, June 17, 1997, Decided, June 18, 1997, FILED
... v. MASSACHUSETTS CASUALTY INSURANCE COMPANY, Defendant Massachusetts Casualty Insurance Company's Motion for ...
... For MASSACHUSETTS CASUALTY INSURANCE COMPANY, DEFENDANT: SANDRA ...
... before the court in this insurance coverage dispute are Defendant Massachusetts Casualty Insurance Company's ("Defendant") Motion ...
... Paul Revere Life Insurance Company. (Pl.'s ...
... claims of breach of contract, insurance bad faith under ...
... no common law insurance bad faith claim ...
... case that did not address bad faith. - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -Plaintiff argues that because Defendant's expert, Sadoff, concluded that he was totally ...
... Defendant acted in bad faith by failing to pay the ...
... Defendant Massachusetts Casualty Insurance Company's Motion for ...

32. KRAEGER v. NATIONWIDE MUT. INS. CO., CIVIL ACTION No. 95-7550, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1997 U.S. Dist. LEXIS 2726, February 28, 1997, Decided, March 7, 1997, FILED
... v. NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant
... Kraeger ("Plaintiffs") have offered an expert witness, Michael S. Barranco, in this insurance bad faith case.Plaintiffs originally ...
... four topics about which this expert might testify: (1) that Defendant Nationwide Mutual Insurance Company ("Defendant") acted in bad faith in the instant case; ( ...
... practice; (3) how insurance claims are managed and evaluated; and ( ...
... statutory and regulatory standards to which insurance companies must adhere. At ...
... in his experience within the insurance industry, for the actions of ...
... in limine to preclude this expert, making several arguments. ...
... no recognized body of experts in the area of bad faith insurance claims handling. There is no requirement that an expert's field of expertise be one ...
... a recognized body of experts exists. See F.R.E. ...
... Testimony about how insurance claims are managed and evaluated and the statutory and regulatory standards to which insurance companies must adhere could be ...
... certain statutes, such as the Unfair Insurance Practices Act, would not ...
... not qualified to testify as an expert in the area of bad faith insurance claim handling practices. The ...
... skills, and training qualify an expert as such" and has "eschewed imposing overly ...
... resume shows that he qualifies as an expert on the issue of bad faith insurance claims handling. n2 - - - - - - - - - - - - - - - - - - ...
... reveals that he has attended the College of Insurance and the Royal-Globe Insurance Companies' Claim and Loss ...
... attorney in the field of insurance litigation; worked at insurance companies holding various ...
... Currently, Mr. Barranco is an insurance and reinsurance consultant. - - - - - - - - - - - - - - - -End ...
... not of the type upon which experts in bad faith would rely and they are not cited ...
... relied upon by experts" in the field if they are otherwise ...
... 703. It would be reasonable for experts in bad faith insurance practices to look to the relevant ...

33. Guadagnini v. Lagioia, CIVIL ACTION No. 92-1323, UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA, 1996 U.S. Dist. LEXIS 11104, July 29, 1996, Decided, July 31, 1996,
FILED, ENTERED
... P. LaGIOIA, CHAPEL INSURANCE ASSOCIATES, INC. and FIREMAN'S FUND INSURANCE CO.
... P. LAGIOIA, CHAPEL INSURANCE ASSOCIATES, INC., DEFENDANTS: ...
... For FIREMAN'S FUND INSURANCE COMPANY, DEFENDANT: JOHN ...
... Sandra Guadagnini filed this insurance action in the Court of ...
... Remus LaGioia and Chapel Insurance Associates removed this action to ...
... LaGioia"), President of Chapel Insurance Associates, Inc. ("Chapel"), ...
... contacted LaGioia to obtain insurance coverage for the property. ( ...
... Chapel obtained two insurance policies for Plaintiffs, ...
... allege, in the alternative, that the insurance policy should be modified in such ...
... Plaintiffs have failed to establish that insurance was available that would have covered the loss ...
... fee claim in an insurance action lies in ...
... action arising under an insurance policy, if the court finds that the ...
... third-party damages which their insurance policy would have covered, but ...
... for a claim of bad faith with regard to the application of the "earth ...
... address Defendants' contention that expert testimony is necessary for ...
... in the position they would have occupied had the insurance contract been fulfilled as expected.    ...
... by an insured to enforce the insurance contract. (Defendants' Supplemental ...
... 914(2) to actions on the insurance contract for failure to ...
... Caldwell v. Keystone Insurance Co., 212 Pa. ...

34. Klinger v. State Farm Mut. Auto. Ins. Co., CIVIL ACTION NO. 1:CV-94-1393, CIVIL ACTION No. 1:CV-94-
1469, UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA, 895 F. Supp.
709; 1995 U.S. Dist. LEXIS 12233, August 21, 1995, Decided, August 21, 1995, FILED
... FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant; LINDA ...
... FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant
... FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, defendant: Robert ...
... connection with its handling of Plaintiffs' insurance claims. We are considering the Defendant's ...
... Farm Mutual Automobile Insurance Company ("State Farm"). ...
... insured by Allstate Insurance Company ("Allstate"). Allstate ...
... fact. Thus, State Farm's expert should be permitted to testify about ...
... for purposes of a bad faith claim pursuant to 42 ...
... contract. We have examined Klinger's insurance policy, as well as the relevant ...
... action arising under an insurance policy, if the court finds that the ...
... Prudential Property & Casualty Insurance Co., 437 Pa. ...
... Nationwide Mutual Fire Insurance Co., 23 F. ...
... Serubo v. Home Insurance Co., 1995 U.S. ...
... Cigna World Wide Insurance Co., 1995 U.S. ...
... Montgomery v. Federal Insurance Co., 836 F. ...
... otherwise covered by insurance on his health, life, or property. The " ...
... citations omitted). Klinger's insurance policy defines an "insured" ...
... individuals who actually purchase insurance from maintaining an action against the ...
... Pennsylvania National Mutual Insurance Co., 520 Pa. ...
... policyholder where she was an "insured" under the insurance policy). There is nothing in the ...
... under the insurer's policy of insurance. - - - - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - n6 If the
drafter's ...
... action for the purchasers of insurance, they could have used the term "named ...
... State Farm Mutual Insurance Co., 415 Pa. ...
... suit against the tortfeasor's insurance company under section ...
... good faith arises from the insurance policy and is owed to the insured, ...
... Dercoli   the court found the insurance company's duty to deal ...
... recover on the basis of the defendant insurance company's duty to bargain with ...
... See Utica Mutual Insurance Co. v. Contrisciane, ...

... 1984); General Accident Insurance Co. v. St. ...
... alleged violation of the Unfair Insurance Practices Act ("UIPA"), ...
... Farm Mutual Automobile Insurance Co., 800 F. ...
... wit, that the reckless handling of his insurance claims amounted to misfeasance. However, ...
... Farm's failure to pay insurance benefits in a ...
... Hardy v. Pennock Insurance Agency, Inc., 365 ...

35. Montgomery v. Federal Ins. Co., Civil Action No. 92-0041, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 836 F. Supp. 292; 1993 U.S. Dist. LEXIS 15574, November 2, 1993, Decided, November 3, 1993, Filed; November 4, 1993, Entered
... Plaintiff, v. Federal Insurance Co., Defendant.
... PA.   For FEDERAL INSURANCE COMPANY, DEFENDANT: ERIC ...
... For CHUBB GROUP OF INSURANCE COMPANIES, DEFENDANT: THOMAS ...
... judgment of defendant, Federal Insurance Company, pursuant to Rule ...
... pursuant to defendant's denial of an insurance claim made by plaintiff. Plaintiff filed the insurance claim when part of his collection of ...
... suit, pursuant to the Pennsylvania Insurance Fraud Statute, 18 ...
... in order to obtain insurance coverage, and therefore has violated the concealment and fraud clause of the insurance policy, as well as Pennsylvania ...
... Fourth, plaintiff paid the insurance premiums out of a ...
... now pay out the insurance proceeds owed to him. According to defendant, plaintiff has committed insurance fraud by concealing the ...
... by now filing an insurance claim for the stolen ...
... 1990, plaintiff filed an insurance claim with defendant, claiming that ...
... defendant denied plaintiff's insurance claim.Discussion  I. ...
... defendant was entitled to rescind the insurance policy due to plaintiff's ...
... First, plaintiff asserts that the insurance policy is a "valued" ...
... clause contained in the insurance policy which states "We do not ...
... plaintiff's argument on valued insurance policies need not ...
... In order to rescind an insurance policy for fraud or ...
... able to ascertain the amount of insurance coverage needed because it could not ...
... a material misrepresentation on an insurance policy when the plaintiff failed to inform the insurance company that the same person who had ...
... true in policies of insurance which have traditionally called for ...
... people, including those he considered to be experts in German medals, ...
... auction houses were not experts in German medals.  - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -
II. Bad Faith Claim   Defendant next ...
... judgment is warranted on plaintiff's bad faith claim because the compelling evidence of ...
... basis to deny plaintiff's insurance claim. In response, ...
... material misrepresentations relating to insurance and that there had been no actual loss) were ...
... possible because it was a valued insurance policy. He then claims that because defendant has ...
... rescission of a valued insurance policy under similar ...
... not have a valued insurance policy statute, and as such, plaintiff's ...
... before plaintiff made his insurance claim, defendant did not ...
... parties belongs to Chubb Insurance.  - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - Again, this ...
... a contract for insurance is a false statement of ...
... honor its obligation under the insurance contract at the time the contract was ...
... payments from plaintiff for the insurance coverage. Plaintiff further ...
... defendant did not comply with the insurance contract. That alone does not ...
... intent to violate defendant's insurance obligation at the time the renewal ...
... defendant's act of accepting the insurance premiums cannot amount to ...
... technically turn on the issue of whether an insurance company that refuses to pay ...
... return, plaintiff received the insurance policy. As defendant correctly ...
... merely accepting the payment of insurance premiums by plaintiff could ...
... plaintiff's claim under the insurance contract for the stolen ...

... claiming damages because defendant insurance company had refused to pay ...
... defendant had converted the proceeds of the insurance policy by refusing to ...
... court stated "To hold that an insurance company had willfully converted ...
... pay out on plaintiff's insurance claim, a mere ...
... motion of defendant, Federal Insurance Company, for summary ...

36. Blancato v. Saint Mary Hosp., CIVIL ACTION NO. 91-4114, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1993 U.S. Dist. LEXIS 9840, July 12, 1993, Filed

... apparently covered by an insurance carrier. n17 Nevertheless, this ...

37. Asplundh Tree Expert Co. v. Pacific Employers Ins. Co., CIVIL ACTION NO. 90-6976, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1992 U.S. Dist. LEXIS 19171, December 8, 1992, Decided, December 9, 1992, Filed

... NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, ...
... v. PACIFIC EMPLOYERS INSURANCE COMPANY, Defendant.
... NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., ...
... For PACIFIC EMPLOYERS INSURANCE COMPANY, DEFENDANT: PETER ...
... excess products liability insurance issued by Pacific Employers Insurance Company ("Pacific Employers") to the ...
... National Union Fire Insurance Company of Pittsburgh, PA (" ...
... n1 claim that the excess insurance policy issued by ...
... Asplundh, the parties to the disputed insurance contract, was clearly that defense ...
... See Pacific Employers Insurance Company's Answer with Counterclaim ...
... Pacific Employers excess insurance policy ("the Policy"). During the ...
... Asplundh maintained primary insurance in the form of a ...
... Employers issued the excess insurance policy currently in ...
... not a party to the insurance policy at issue. National ...
... page of the Certificate of Excess Insurance of the Policy states, in ...
... Item 4. Primary Insurance -- ...
... 5. Description of Primary Insurance --    Completed operations and products ...
... 6. Description of Excess Insurance --    Completed operations and products ...
... 5 above.    5. Insurance Agreement B on the second page of the Certificate of Excess Insurance of the Policy provides:  NOW, this ...
... exclusions and conditions of the primary insurance for excess loss as ...
... 6 (Description of Excess Insurance) of the declarations.  6. Insuring ...
... in relevant part that    the insurance afforded by this certificate shall follow that of the primary insurance except:. . . .(3) where amended ...
... states as follows:    Self Insurance Following Form of I.S.O. ...
... insured coverages as if the self insurance was fully for coverages ...
... Operations and Products Liability Insurance L 6391  8. The ...
... Operations and Product Liability Insurance," which states on the reverse side of this ...
... B. property damage  to which this insurance applies, caused by an ...
... policy with the Ideal Mutual Insurance Company ("Ideal Mutual"). ...
... a member of the Risk and Insurance Management Society for ...
... possible, find adequate insurance coverage for the risks ...
... in coverage, as the excess insurance program which had been in force with ...
... Union required this amount of insurance coverage before National ...
... requisite $ 500,000 excess insurance, Heile used the services of Peter O'Connor ("O'Connor"), an insurance broker in the Philadelphia ...
... A"), a national insurance brokerage firm. O'Connor, ...
... more than ten (10) insurance carriers to find the coverage ...
... C to issue binding insurance policies on Pacific Employer's ...
... C could provide the needed insurance on behalf of Pacific Employers if ...
... turn, inform Asplundh that insurance coverage was bound. On August ...

... communications with local counsel, and that the insurance carriers, such as Pacific Employers and ...
... cases without interference from the insurance carriers and that the carriers follow the ...
... June 1987 which of the two insurance carriers, Pacific Employers or ...
... instructions with respect to which of the two insurance companies will be directing the ...
... a party to the policy of insurance between Asplundh and Pacific ...
... rules guiding the construction of an insurance contract in Pennsylvania are ...
... settled. The interpretation of the terms of an insurance contract is a question of ...
... Hamilton Bank v. Insurance Co. of N. America, ...
... interpreting the various clauses of an insurance contract, the court must ...
... in the Certificate of Excess Insurance in the Policy, including the ...
... Union's contention that the excess insurance policy issued by ...
... in the Certificate of Excess Insurance. Thus, Paragraph C of the Insuring ...
... page of the Certificate of Excess Insurance, provides that the Policy is a " ...
... form of the underlying primary insurance. Here, the primary insurance is Asplundh's SIR, under the ...
... exclusions and conditions of the primary insurance . . . ." This reference to "applicable insuring ...
... page of the Certificate of Excess Insurance (the first page of the Policy). ...
... 6, which describes the excess insurance (Pacific Employer's policy), ...
... in the Certificate of Excess Insurance and in I.S.O. Form ...
... in the context of disputed insurance contracts states that ambiguous ...
... obtaining the products liability insurance coverage needed by this ...
... parties to the Pacific Employers insurance contract, Asplundh and Pacific ...
... my conclusion that the parties to this insurance contract intended to have defense ...
... Union's layer of excess insurance had not yet been invaded. ...
... 43) years in the insurance industry, it simply did not ...
... managing claims in the insurance industry. Accordingly, I ...
... See Pacific Employers Insurance Company's Answer with Counterclaim ...
... Pacific Employers excess insurance policy. See Conclusion of ...
... defendant Pacific Employers Insurance Company and against plaintiffs ...
... National Union Fire Insurance Company of Pittsburgh, PA on ( ...
... 3) the plaintiffs' claim of bad faith in Count II of the ...
... plaintiffs Asplundh Tree Expert Company ("Asplundh") and National Union Fire Insurance Company of Pittsburgh, PA (" ...
... defendant Pacific Employers Insurance Company ("Pacific Employers") on ...

38. Thomson v. Prudential Property & Casualty Ins. Co., Civil Action No. 91-4073, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1992 U.S. Dist. LEXIS 12627, August 20, 1992, Decided, August 24, 1992, Filed and Entered
... Prudential Property and Casualty Insurance Company, Defendant.
... PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, DEFENDANT: STEVEN ...
... Prudential Property and Casualty Insurance Company ("Prudential" or "defendant") ...
... delayed paying Thomson insurance benefits and that the delay constituted bad faith and intentional infliction of emotional ...
... court to (1) exclude the expert testimony of Allan D. ...
... allow plaintiff to present her bad faith claim including evidence of ...
... liability under Weiss' insurance policy, but refused to ...
... 26, 1987 from Weiss' insurance agent. On that same day, ...
... Prudential Property and Casualty Insurance Company, 1992 U.S. ...
... faith claim against an insurance company. Kauffman v. ...
... National Mutual Casualty Insurance Co., 494 Pa. ...
... § 8371. Actions on Insurance PoliciesIn an action arising under an insurance policy, if the court finds that the ...
... Farm Mutual Automobile Insurance Co., 1992 U.S. ...
... v. State Farm Insurance Company, 1992 U.S. ...
... support of the substantive claims of bad faith and intentional infliction of emotional ...
... Plaintiff's Motion to Exclude Expert Witnesses    Plaintiff filed ...
... light of the conflicting and confusing insurance laws at issue in this ...

39. Ostroff v. Security Sav. Bank, CIVIL ACTION NO. 90-6920, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1992 U.S. Dist. LEXIS 12322, August 8, 1992, Decided, August 18, 1992, Filed and Entered

    ... Oil Co. v. Insurance Co. of North America,  ...
    ... testified to by plaintiff's expert. Moreover, and more importantly, the  ...
    ... in a finding of bad faith because the Bank never honored that  ...

40. Forstater v. State Farm Ins. Co., CIVIL ACTION NO. 91-6539, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1992 U.S. Dist. LEXIS 3628, March 23, 1992, Decided, March 23, 1992, Filed; March 24, 1992, Entered

    ... V. STATE FARM INSURANCE COMPANY and, WORLDWIDE: AUDITING  ...
    ... FOR STATE FARM INSURANCE COMPANY AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANTS, JAMES  ...
    ... Farm Mutual Automobile Insurance Company, defendant, seeks  ...
    ... for further discovery of an expert is to satisfy itself that the procedure is  ...
    ... defendant Worldwide; she has alleged bad faith, conspiracy and tortious interference of  ...
    ... complaint. "Discovery of reports of experts,  including reports embodying  ...

41. Batoff v. State Farm Ins. Co., CIVIL ACTION No. 90-6420, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1992 U.S. Dist. LEXIS 3501, March 19, 1992, Decided, March 20, 1992, Filed; March 23, 1992, Entered

    ... V. STATE FARM INSURANCE COMPANY
    ... FOR STATE FARM INSURANCE COMPANY, DEFENDANT, JOSEPH  ...
    ... Farm Mutual Automobile Insurance Company seeks dismissal of  ...
    ... Farm Mutual Automobile Insurance Company. Dr. Batoff  ...
    ... Farm refused in bad faith to pay him for his services (  ...
    ... Paul, Ed.D., as an expert and conspired with him to interfere with Dr.  ...
    ... under two Pennsylvania insurance statutes: the Pennsylvania Motor  ...
    ... A. Dr. Batoff's Insurance Claims.Dr. Batoff's  ...
    ... v. Pennsylvania National Insurance Company, 431 A.  ...
    ... action between providers and insurance companies. See Danton  ...
    ... Farm Mutual Automobile Insurance Co., No. 91-  ...
    ... action between providers and insurance companies, and I agree with the  ...
    ... action arising under an insurance contract, if the court finds that the  ...
    ... v. ITT Hartford Insurance Group, No. 91-  ...
    ... apply if an insurer revokes insurance without proper cause.It is therefore  ...
    ... State Farm Mutual Insurance Co., No. 91-  ...
    ... In Liberty Mutual Insurance Co. v. Paper  ...
    ... American Franklin Life Insurance Co. v. Galati,  ...
    ... Farm Mutual Auto Insurance Co., 763 F.  ...
    ... v. Liberty Mutual Insurance Co., No. 90-  ...
    ... applies when parties enter into an insurance contract before July  ...
    ... Coyne v. Allstate Insurance Co., 771 F.  ...
    ... McAlister v. Sentry Insurance Co., No. 91-  ...
    ... parties' obligations under the insurance contract. Even before  ...
    ... not impair existing insurance contracts, therefore; it simply supplied  ...
    ... insured must allege the insurance company actually denied  ...
    ... Dr. Batoff's statutory insurance claims fail because he does not  ...

42. Syntex Pharmaceuticals International, Ltd. v. K-Line Pharmaceuticals, Ltd., Civil Action Nos. 85-2814, 85-2949, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, 1988 U.S. Dist. LEXIS 11420, October 14, 1988, Decided and Filed
... Similarly, in Petroleum Insurance Agency v. Hartford ...
... Court, like the Petroleum Insurance court, refuses to impose ...
... preclude Syntex from utilizing these experts at trial to support the theories ...
... close of discovery illustrates bad faith.Syntex counters that it fully ...

43. Regalbuto v. Republic Ins. Co., Civil Action No. 88-3430, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1988 U.S. Dist. LEXIS 9454, August 23, 1988, Decided; August 25, 1988, Filed and Entered
... REGALBUTO v. REPUBLIC INSURANCE CO.
... suit on a Homeowner's Insurance Policy which plaintiffs by their ...
... v. Bellefonte Underwriters Insurance Co., 91 F.R.D. ...
... statements made to or by the insurance company after an incident were ...
... investigation conducted by the insurance carrier is in the ordinary ...
... lawsuit alleges that Republic Insurance has waived its right to obtain ...
... months and that defendants demonstrated bad faith in failing to secure an expert to examine plaintiffs' property ...
... 70-100,000. The tort of bad faith goes to the reasonableness of Republic's ...
... may be able to depose the insurance adjusters and other claims ...

44. FLEET POWER GMC TRUCKS v. ASSOCIATES COMMER. CORP., NO. 85-0987, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1986 U.S. Dist. LEXIS 29736, February 3, 1986
... finance charges and less any insurance premium refund payable ...
... infer, without the benefit of expert testimony, that the Minatees were not ...
... creditworthy was negligent and in bad faith.n3 See 13 ...
... In these circumstances, without expert testimony, the court found, however, that ...
... statement without the assistance of expert testimony that Associates' decision was negligent or in bad faith.Secondly, Fleet argued that ...

45. WILLIAM SHAPIRO, ESQ., P.C. v. AMERICAN HOME ASSUR. CO., No. 82-3739, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1985 U.S. Dist. LEXIS 15026, October 11, 1985
... plaintiff, who had a malpractice insurance policy with defendant. Defendant's ...
... party acted in bad faith by maintaining action when in possession of expert report showing no ...

46. County of Bergen v. Dole, No. 82-4065, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, 620 F. Supp. 1009; 1985 U.S. Dist. LEXIS 15063, October 10, 1985

... Farm Mutual Automobile Insurance Co., 463 U.S. ...
... credit the opinions of plaintiffs' experts over those of defendants' experts absent a showing that ...
... faulty or performed in bad faith. See County of Suffolk, ...

47. SNYDER v. KUTSHER'S COUNTRY CLUB, CIVIL ACTION NO. 83-5999, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 1985 U.S. Dist. LEXIS 21733, March 15, 1985
... Corp. v. Lexington Insurance Co., C.A. No. ...
... not identified the significance of an expert in hotel management.The court should also determine whether there has been bad faith or willfulness in failing to ...
... deadlines. Obviously, evidence of bad faith or willfulness will seldom ...

48. P. Liedtka Trucking, Inc. v. James H. Hartman & Son, Inc., Civ. A. No. 81-1776, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 537 F. Supp. 381; 1982 U.S. Dist. LEXIS 13268, January 11, 1982
... INC. and Bankers and Shippers Insurance Company of New York, ...

... v. CAROLINA CASUALTY INSURANCE COMPANY, Third-Party ...
... Plaintiff Bankers and Shippers Insurance Company of New York, ...
... against Carolina Casualty Insurance Company ("Carolina"), insurer of ...
... not act in bad faith was Carolina's averment that it had evidence which ...
... Statements made by the expert Hill; 3. This was a ...
... Carolina acted in bad faith by continuing its action ...
... Fruehauf when it had possession of the report of the expert Hill, and the deposition of Townsend. ...

49. Clark v. Interstate Nat'l Corp., Civ. A. No. 78-1273, UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 486 F. Supp. 145; 1980 U.S. Dist. LEXIS 10536, March 6, 1980

... against a liability insurance company by its insured and the ...
... by State Automobile Insurance Association.  In addition, ...
... Plaintiffs produced two expert witnesses, R. H. ...
... opinions, Interstate was guilty of bad faith in the manner in which it ...
... Now, under such circumstances the insurance company must consider ...
... rigid standard but the insurance company must accord the ...
... same weight and consideration that the insurance company gives its own ...
... fide belief by the insurance company based on all the circumstances of the ...
... another way of saying the insurance company doesn't have to guess ...
... by negligent conduct.  An insurance company owes its insured the ...
... Farm Mutual Automobile Insurance Co., 410 Pa. ...
... insurer by the liability insurance relationship.  Concerning the insurer's ...
... v. Nationwide Mutual Insurance Co., 422 Pa. ...

50. Northwestern Inst. of Psychiatry, Inc. v. Travelers Indem. Co. (In re Northwestern Inst. of Psychiatry, Inc.), Chapter 11, Bankruptcy No. 00-33364DWS (Jointly Administered with Bankruptcy Nos. 00-33365DWS and 00-33369DWS), Adversary No. 01-0656, UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, 2001 Bankr. LEXIS 1243, September 14, 2001, Decided

... a declaratory judgment that the insurance policy (the "Policy") issued ...
... by the National Flood Insurance Program, for which coverage is ...
... acted reasonably because they secured expert advice as to the property's location before declining coverage.
However, the bad faith alleged in the Complaint is ...

1. Batoff v. State Bd. of Psychology, No. 85 Middle District Appeal Docket 1999, SUPREME COURT OF PENNSYLVANIA, 561 Pa. 419; 750 A.2d 835; 2000 Pa. LEXIS 1239, November 16, 1999, Argued, May 18, 2000, Decided

... in his testimony during insurance litigation n4 and second, that he ...
... insureds. The charges arose from insurance claims submitted by Batoff to State Farm Insurance Company (State Farm) ...
... psychological evaluations he submitted to the insurance company and to administer the underlying ...

2. Kituskie v. Corbman, No. 0030 E.D. Appeal Docket 1997, No. 0031 E.D. Appeal Docket 1997, SUPREME COURT OF PENNSYLVANIA, 552 Pa. 275; 714 A.2d 1027; 1998 Pa. LEXIS 1649, December 8, 1997, Argued, August 7, 1998, Decided

... behalf against Trapp's insurance carrier, California State ...
... Corbman learned that Trapp's insurance policy had a limit of $ ...
... claim against his father's insurance carrier for underinsured ...
... testimony by Kituskie's expert that CSAA would likely not have ...
... by reason of CSAA's bad faith refusal to settle for the ...
... Corbman and the Garfinkle's firm expert about what CSAA would have done if ...
... admits that he already has prepared an expert to discuss the possibility of collecting ...
... full judgment because of an insurer's bad faith in anticipation that collectibility would be an ...

3. Wells Whip Co. v. Tanners' Mut. Fire Ins. Co., No. 265, Supreme Court of Pennsylvania, 209 Pa. 488; 58 A. 894; 1904 Pa. LEXIS 655, May 16, 1904, Argued, June 15, 1904

... Tanners Mutual Fire Insurance Company, Appellant
... Tanners Mutual Fire Insurance Company. Affirmed. Assumpsit on a policy of fire insurance. Before W. F. ...
... in conformity with the contract of insurance: Stevenson v. Hoy, ...
... 47,988.55. The aggregate of appellee's insurance in different companies was $ ...
... not warrant the conclusion that there was any bad faith shown or any misrepresentation made ...
... Soon after the fire an expert accountant representing the insurance companies, including appellant's ...

4. Bonenberger v. Nationwide Mut. Ins. Co., No. 1637 WDA 2000, SUPERIOR COURT OF PENNSYLVANIA, 2002 PA Super 14; 791 A.2d 378; 2002 Pa. Super. LEXIS 23, October 2, 2001, Argued, January 23, 2002, Filed

... v. NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant
... Appellant, Nationwide Mutual Insurance Company (Nationwide) and in ...
... faith in the context of insurance litigation has been defined as "any frivolous or ...
... trial court's analysis. An insurance company does owe its insured ...
... for which recovery is sought. An insurance company may not ...
... Individuals make payments to insurance carriers to be insured in the ...
... in evaluating a bad faith claim. Nationwide next ...
... in allowing the admission of expert testimony on the issue of whether Nationwide had engaged in bad faith. It inaccurately describes a ...
... law clearly holds that expert testimony in this type of ...
... holds that the admission or exclusion of expert testimony in actions on insurance policies based on a claim of bad faith remain a matter ...
... suggest that Bergman holds that expert testimony is not admissible in a bad faith claim is a misstatement of the ...
... Bergman this court considered whether "expert testimony should be required in bad faith actions." Id. at 1106 ( ...
... in favor of holding that expert testimony is not mandated in all bad faith cases. Id. It further ...
... other courts have held that expert testimony, although not ...
... a witness to testify as an expert on bad faith is one that rests within the ...

... matter permitted the admission of this expert to aid the court in its ability to evaluate the bad faith claim. The trial court, as it ...
... Bonenberger and Nationwide Mutual Insurance Company. The importance of every ...
... action arising under an insurance policy, if the court finds that the ...
... action arising under an insurance policy." It is Nationwide's position that the ...
... separate and distinct claim from the insurance policy contract claim and as such it does not "arise under an insurance policy." We find Nationwide's ...
... Bonenberger arising under an insurance policy. It is absurd to argue that ...

5. Corrado v. Thomas Jefferson Univ. Hosp., No. 1463 EDA 2000, SUPERIOR COURT OF PENNSYLVANIA, 2001 PA Super 363; 790 A.2d 1022; 2001 Pa. Super. LEXIS 3513, May 22, 2001, Argued, December 19, 2001

    ... Center v. Erie Insurance Group, 2000 PA ...

6. Bergman v. United Servs. Auto. Ass'n, No. 1824 Philadelphia 1998, SUPERIOR COURT OF PENNSYLVANIA, 1999 PA Super 300; 742 A.2d 1101; 1999 Pa. Super. LEXIS 4107, January 12, 1999, Argued, December 6, 1999, Filed

    ... appeal we must determine whether expert testimony should be required in cases involving allegations of bad faith in the context of insurance practices. Essentially, Appellant, ...
... se rule requiring expert testimony in all bad faith actions by an insured ...
... hold that the admission or exclusion of expert testimony in actions on insurance policies for bad faith remains a matter ...
... case arose out of the insurance assessment of a vehicular ...
... allow [Appellant]'s insurance expert to testify at trial." ...
... Nationwide Mutual Fire Insurance Co., 646 A. ...
... quoting  American States Insurance Company v. Maryland ...
... proposed testimony about insurance industry practices, whether USAA had ...
... not acting as it did, and how insurance claims are appropriately managed and ...
... action arising under an insurance policy, if the court finds that the ...
... particular meaning in the insurance context:  Insurance. "Bad faith" on [the] part of [an] ...
... impression for this Court as to whether expert testimony should be required in bad faith actions. Our examination of case ...
... in favor of holding that expert testimony is not mandated in all bad faith cases. See generally ...
... Minn. 1985)) (explaining that insurance is not so highly technical ...
... issue of standard of care of an insurance agent in negligence ...
... establish standard of care of insurance broker);  Shamalon Bird ...
... 554 (Or. 1968) (explaining that expert testimony not required where ...
... distinction between "good" and "bad" faith). These cases also emphasize that, generally, it is ...
... finder, unaided by expert testimony, to assess whether an insurer acted in bad faith or breached its duty of care. Thus, ...
... consistently refused to require expert testimony as a necessary prerequisite to the submission of bad faith claims. Other courts have held that expert testimony on the issue of bad faith or an insurer's duty of care, ...
... App. 1998) (allowing expert testimony on adequacy of insurer's ...
... other jurisdictions, that there may be bad faith cases in which expert testimony might be helpful. ...
... complex or highly technical insurance issues and concepts, the trial ...
... consider)   Nevertheless, we hold that expert testimony is not required as ...
... Pennsylvania law in bad faith actions. In reaching this ...
... in Dattilo proffered "expert" testimony to the effect that their insurance company had acted in bad faith in handling their UIM ...
... effectiveness of allowing the insureds' expert to testify because, although the expert "qualified as a person ...
... judged by the standards of the insurance industry." 1997 U.S. ...
... Dattilo court reasoned that the [expert] witness' opinion [was] nothing ...
... Dattilo court held, "bad faith is a legal concept of ...
... Gottheimer's qualifications to testify as an expert on the issue of bad faith were questionable. n1 Second, the ...
... things are viewed within the insurance industry." (Id. at 291- ...

... Appellant's attorney for the insurance claim), and Michael Greenberg, Esq. (USAA's attorney on the insurance claim). Appellant's counsel ...

... USAA had acted in bad faith in handling his UIM ...

... decision to exclude Appellant's expert testimony is supported by the ...

... involve highly sophisticated insurance concepts or practices, or call ...

... n5 A copy of the expert's report was not part of the ...

... found that Appellant exhibited bad faith in his unreasonable demands ...

... se rule requiring expert testimony in bad faith actions. To the contrary, we hold that the admission or exclusion of expert testimony in bad faith cases remains a ...

... se rule requiring expert testimony in insurance bad faith actions, which the majority declines to ...

... court precluded the testimony of his insurance expert. The majority cites ...

... qualified as an expert in insurance claims handling. However, I do ...

... apart from any expert in insurance claims handling. Even if the ...

... want to bring forth an expert in later cases. Should an insurance company wish to put an expert on the stand to address insurance-related matters in a bad faith case, it, too, would fail to meet ...

... both cases relate to whether an expert witness for an insured in a bad faith case is needed. In Dattilo, the court decided the expert "qualified" as an expert, but also decided his testimony would ...

... Dr. Gottheimer qualified as an expert, as the court positively decided ...

... distinction between the admissibility of experts in bad faith cases versus malpractice ...

... judged by the standards of the insurance industry. Dattilo at 4. Therefore, ...

... in malpractice cases, where an expert in insurance matters would be helpful and necessary to the factfinder? Even if the expert qualifies as such, as Dr. Gottheimer would not have, a bad faith case is not a ...

... judged by the standards of the insurance industry, as it would in a ...

... adjuster against that of the entire insurance industry, it is even more understandable why an expert would be precluded from testifying. n8 Experts in the insurance claims handling industry ...

... in cases alleging bad faith.  - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -n8 Another ...

... law. It appears that in bad faith cases the trial court ...

... hold the discretionary call as to whether an expert will be needed to testify on these ...

... judge will admit the expert's testimony. Never will ...

... a decision as to whether to admit an expert in a bad faith case for the assistance of ...


7. O'Donnell v. Allstate Ins. Co., No. 3390 Philadelphia 1998, SUPERIOR COURT OF PENNSYLVANIA, 1999 PA Super 161; 734 A.2d 901; 1999 Pa. Super. LEXIS 1881, April 28, 1999, Argued, June 30, 1999, Filed


... Appellant v. ALLSTATE INSURANCE COMPANY, Appellee

... against her insurer, Allstate Insurance Company (Allstate). For the ...

... under a homeowner's insurance policy. On July 17, ...

... Oath, customary in the insurance industry, is akin to a ...

... parties presented evidence and expert testimony. Allstate claimed that it did not act in bad faith, reasoning that certain "red- ...

... taken under oath, and whether the insurance company should have had to pay based on that. ...

... institution of the lawsuit, the conduct of the insurance company prior to the point where we ...

... faith' conduct by insurance carriers cannot go ...

... since the provisions of the Uniform Insurance Practices Act (UIPA), enforced by the state Insurance Commissioner, are sufficient to deter ...

... action arising under an insurance policy, if the court finds that the ...

... applicable in the context of insurance: "Bad faith" on part of ...

... stemming from an appraisal provision of insurance contract, thereby forcing insured to ...

... deceased husband's life insurance policy, raising, inter ...

... pendency of trial is in bad faith. We disagree. Preliminarily, we note the ...

... explained by Allstate's expert, that arose before the filing of the ...

... protracted investigation by the insurance provider. n7 For ...

... bad faith handling of an insurance claim." Id. at *6. There, ...

... by virtue of the parties' insurance policy. Id. at *3. That ...

8. Birth Ctr. v. St. Paul Cos., No. 2379 Philadelphia 1997, No. 2380 Philadelphia 1997, No. 2659 Philadelphia 1997, No. 2670 Philadelphia 1997, SUPERIOR COURT OF PENNSYLVANIA, 1999 PA Super 49; 727 A.2d 1144; 1999 Pa. Super. LEXIS 188, January 28, 1998, Argued, March 9, 1999, Filed, Petitions for Allowance of Appeal Granted and Limited March 1, 2000, Reported at: 2000 Pa. LEXIS 520.

... claim within her liability insurance policy's limits and was released from the ...
... a professional liability insurance policy issued by ...
... 1,000,000.00) professional liability insurance policy. St. Paul ...
... obligated to pay the amount of the insurance policy, and that St. Paul had ...
... faith here. I think the insurance company is not proceeding ...
... case . . . I think this insurance company has operated in ...
... JURY VERDICT FINDING AN INSURANCE COMPANY IN BAD ...
... IMPROPER AND REVERSIBLE ERROR WHERE THE INSURANCE COMPANY NEVER MADE ANY ...
... DAMAGED INFANT CASE, AND THE INSURANCE COMPANY HAS BEEN ADVISED BY ITS ...
... INSURED IMPLICIT IN AN INSURANCE POLICY; AND ARE NOT THE INSURER'S ...
... ACTIONS, THEREFORE, BREACHES OF THE CONTRACT OF INSURANCE (I.E. THE INSURANCE POLICY), AS WELL AS BAD ...
... FAITH IS NULLIFIED OR EXTINGUISHED WHERE THE INSURANCE COMPANY EVENTUALLY PAYS AN ...
... NOT THE ADMISSION BY AN INSURANCE COMPANY, IN ITS OWN ...
... A BREACH OF THE CONTRACT OF INSURANCE AND ALSO A BREACH OF THE FIDUCIARY ...
... OWED TO THE INSURED BY THE INSURANCE COMPANY?  SHOULD NOT AN INSURED BE ...
... Under a liability insurance contract, an insurer undertakes ...
... insurer's assumption in the insurance contract of the right to handle all ...
... fair dealing applies to all insurance policies).  - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -  ...
... § 8371. Actions on insurance policies.  In an action arising under an insurance policy, if the court finds that the ...
... relationship arising out of the insurance contract is based upon the ...
... asked to determine whether it had breached its insurance contract with Birth Center. ...
... virtue of its assertion in the insurance contract of the right to handle all ...
... under a liability insurance contract, i.e., the duty to defend and the ...
... National Grange Mutual Insurance Co., 167 F.R.D. ...
... suit is brought against an insurance carrier for unreasonable ...
... amount in excess of the insurance coverage. Here discovery and inspection should be ...
... Paul was acting in bad faith and had breached its fiduciary obligations to its insured, were improperly admitted as an expert opinion and were unduly prejudicial. We ...
... fifty-seven dollar insurance premium. We disagree.   A ...
... Birth Center's liability insurance premium has no bearing on the ...
... obligations established under the insurance policy and the issues presented ...
... premium charged and the amount of insurance purchased is a fact inherent in the nature of the insurance business and ought not to be ...

9. Stewart v. Rossi, No. 03969 Philadelphia, 1995, SUPERIOR COURT OF PENNSYLVANIA, 452 Pa. Super. 120; 681 A.2d 214; 1996 Pa. Super. LEXIS 2522, June 5, 1996, Argued, August 8, 1996, Filed

... Piping, Inc. v. Insurance Co. of North America, ...

10. Kearns v. De Haas, No. 3189 Philadelphia, 1987, Superior Court of Pennsylvania, 377 Pa. Super. 200; 546 A.2d 1226; 1988 Pa. Super. LEXIS 2244, April 6, 1988, Argued, August 24, 1988, Filed

... not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, ...
... instant case, there was neither bad faith nor misrepresentation on the part of the plaintiffs.  Their change in experts was made necessary by ...
... Rosato v. Nationwide Insurance Co., 263 Pa. ...

11. Cooper v. Burns, Nos. 1144 Pittsburgh, 1987, 1145 Pittsburgh, 1987, Superior Court of Pennsylvania, 376 Pa. Super. 276; 545 A.2d 935; 1988 Pa. Super. LEXIS 2129, January 26, 1988, Argued, July 11, 1988, Filed, Reargument Denied August 22, 1988.

... surprise could have been cured;  (3) whether the expert testimony disrupted the trial or ...
... 4) whether the plaintiff exhibited bad faith or willfulness in failing to ...
... Phoenix Mutual Life Insurance Co. v. Radcliffe on the ...

12. Kaminski v. Employers Mut. Casualty Co., Superior Court of Pennsylvania, 338 Pa. Super. 400; 487 A.2d 1340; 1985 Pa. Super. LEXIS 5760, May 23, 1984, Argued, February 8, 1985, Filed

... Company, pursuant to their homeowners insurance policy.  Because appellant refused to make any insurance payments, appellees filed ...
... Catanzaro, a public insurance adjuster.  Both of these witnesses ...
... by appellees to prepare their insurance claim, and they testified as to the estimated ...
... provided for in the insurance policy, and averred in ...
... Defendant avers that the policy of insurance sued upon contains, ...
... fact or circumstance relating to this insurance. 14. The defendant avers that ...
... facts and circumstances concerning the insurance in question, the subject thereof and the ...
... for a breach of an insurance contract.  The Defendant can ...
... policy.  The provisions of the contract of insurance in question, as in the ...
... provisions required of all fire insurance policies by statute ...
... fact or circumstance relating to the insurance.  This is the provision in the contract, and ...
... Greenberg v. Aetna Insurance Co., 427 Pa. ...
... two separate fire insurance policies for losses ...
... answers to the complaint, the defendant-insurance companies denied liability on the ...
... not disclosing that information to the Insurance Company, but I have to ...
... Energy Liability-Property Insurance Association, 10 D. & ...
... surprise to Appellant from the  introduction of the expert testimony nor any bad faith on the part of Appellees, I ...
... majority finds that Appellees' experts should have been precluded from testifying under ...
... addition, the  majority infers bad faith by Appellees based on its ...
... Appellees accordingly should have retained experts prior to trial who would then have been identified ...
... not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, ...
... Appellees acted in bad faith by not disclosing their experts prior to trial or in not obtaining arson experts prior to trial. The basis of the majority's finding of bad faith is solely that Appellees should have been on notice from the ...
... Appellant, they expeditiously secured expert witnesses and made their presence known prior to the experts' testimony. n1 There is no ...
... infer a finding of bad faith much less a ...
... arson which it attempted to do through expert testimony. It was only on rebuttal that ...
... felt it necessary to utilize expert testimony. Under the facts, ...
... unusual, and certainly not bad faith, that Appellees waited until necessary to retain an expert. - - - - - - - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - - Since ...
... trial court's decision on the expert testimony, I would also reach the ...

13. Feingold v. Southeastern Pennsylvania Transp. Authority, Superior Court of Pennsylvania, 339 Pa. Super. 15; 488 A.2d 284; 1985 Pa. Super. LEXIS 5674, May 9, 1984, Argued, January 30, 1985, Filed

... Phoenix Mutual Life Insurance Co. v. Radcliffe on the ...
... seasonably to disclose the identity of an expert witness and the substance of the expert's report, prejudice to the complaining ...
... not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, ...
... appellants with an opportunity to depose the expert; and the appellants had been able to  present ...
... appellees did not demonstrate such bad faith as to require the drastic sanction of precluding" the expert's testimony. Id., 332 ...

14. J.A. Jones Constr. Co. v. Workers' Comp. Appeal Bd. (Nelson), No. 3079 C.D. 1999, COMMONWEALTH COURT OF PENNSYLVANIA, 784 A.2d 280; 2001 Pa. Commw. LEXIS 719, April 20, 2000, Submitted on Briefs, October 2, 2001, Filed, Petition for Allowance of Appeal Denied March 19, 2002, Reported at: 2002 Pa. LEXIS 467.

... Jones Construction Company and its insurance carrier, Aetna Life & ...
... Allied Maintenance and Travelers Insurance Company), 545 Pa. ...
... credible the testimony of the claimant's expert that the claimant, after his operation, was ...
... refused to undertake in bad faith. In the present case, the ...
... found credible Employer's expert, who testified that, as of February 19, ...

15. Green Constr. Co. v. Department of Transp., NO. 137 C.D. 1993, NO. 251 C.D. 1993, COMMONWEALTH COURT OF PENNSYLVANIA, 164 Pa. Commw. 566; 643 A.2d 1129; 1994 Pa. Commw. LEXIS 275, December 16, 1993, ARGUED, June 7, 1994, FILED

... in and against Green and its insurance company. The Board noted that the ...
... Chapin against Green and its insurance company, where no witnesses were ...
... not acted in bad faith and has not misrepresented the existence of an expert expected to be called at trial, ...

16. Harrell v. Workmen's Compensation Appeal Bd. (Circle HVAC), No. 1660 C.D. 1991, COMMONWEALTH COURT OF PENNSYLVANIA, 151 Pa. Commw. 8; 616 A.2d 1051; 1992 Pa. Commw. LEXIS 692, December 13, 1991, Submitted on Briefs, April 15, 1992, Decided, April 15, 1992, Filed, Memorandum Opinion Redesignated Opinion and Ordered Published November 12, 1992.

... Libby and State Workmen's Insurance Fund), 133 Pa. ...
... Board (Baltimore Life Insurance Co.), 516 Pa. ...
... employer acts in bad faith, the entire subsequent chain of ...
... Stackhouse, CHVAC's rehabilitation expert, acted in good ...

17. Schoffstall v. Nationwide Ins. Co., no. 1994-SU-04190-01, COMMON PLEAS COURT OF YORK COUNTY, PENNSYLVANIA, 58 Pa. D. & C.4th 14; 2002 Pa. D. & C. LEXIS 62, June 28, 2002, Decided, Schoffstall v. Nationwide Insurance Company
... insurer, defendant Nationwide Insurance Company, assigned staff ...
... ruled on the precise issue of whether an insurance company engages in the ...
... insurer under the terms of an insurance policy represents both the ...
... outside attorney who depends on an insurance company for a ...
... defendant Nationwide Mutual Insurance Company's cross-motion ...
... insurer, Nationwide Mutual Insurance Company, for alleged ...
... sued Mr. Schoffstall whose insurance policy carried a $ ...
... umbrella of the standard for insurance bad faith. The first ...
... Prudential Property and Casualty Insurance Co., 437 Pa. ...
... National Mutual Casualty Insurance Company, 494 Pa. ...
... action arising under an insurance policy, if the court finds that the ...
... proceed with bad faith insurance claims under section ...
... bad faith" within the insurance context:"Insurance. 'Bad faith' on part of ...
... similar subjects. MGA Insurance Co. v. Bakos, ...
... Nationwide Mutual Fire Insurance Co., 435 Pa. ...
... reference to analogous Pennsylvania insurance law. Romano, 435 ...
... section 1171.5 of the Unfair Insurance Practices Act that defines ...
... practices in the business of insurance. Id.In light of the ...
... ruled on the precise issue of whether an insurance company engages in the ...
... full-time employee of an insurance company to represent the company's ...
... Schoffstall also cites American Insurance Association v. Kentucky ...
... 521. In Gardner, the insurance company had appeared on behalf of ...
... In re Allstate Insurance Company, 722 S.W. ...
... Gardner. There, the court held that an insurance corporation does not engage ...

... court includes Cincinnati Insurance Co. v. Wills, ...
... attorney employed by an insurance company to represent insureds and ...
... California court recognized, "when an insurance company in California ...
... contractual duty to do so under an insurance policy (regardless of whether that law ...
... sufficient here to recognize (1) an insurance company has a direct ...
... upon a particular insurance company for a ...
... context of mandatory automobile insurance and extensive ethical rules ...
... insured under the terms of an insurance policy represents both the ...
... conflict of interest between an insurance company and an insured, especially ...
... Lawyers with Comments Appropriate to All Insurance Defense Counsel to be instructive to ...
... restrictions, imposed by the insurance company employer, upon the ...
... a contract between the insurance company and the insured-client which imposes upon the insurance company a duty to ...
... litigation held by the insurance company--and a duty to ...
... direct financial benefit to the insurance company in staff ...
... context of staff attorneys of insurance companies representing insureds. The ...
... factors look to see whether the insurance company has interfered with the legal ...
... relationship between the insured and the insurance company. The fourth factor ...
... staff trial attorneys and the insurance company would result in ...
... Superior Court has applied it to insurance companies that have acted in ...
... Birth Center recognized that an insurance company undertakes certain ...
... 8371. Specifically, under an insurance contract an insurer agrees to ...
... standard used when considering an insurance company's decision to litigate or ...
... faith claim against the insurance company. There are no facts ...
... in Birth Center where the insurance company refused to put ...
... in Birth Center, the insurance company's own counsel ...
... insured repeatedly requested its insurance company settle the case ...
... limits could have on its continued existence. The insurance company's claims representatives ...
... Since we believe the question of bad faith is first a question of ...
... disputes are presented, we disregard the "experts'" opinions since they create ...
... by merely opined what bad faith is given certain facts. - - - - - - - - - - - - - - - - - ...
... denied and defendant Nationwide Insurance Company's motion for ...

18. Hollock v. Erie Ins. Exch., no. 6790-C, COMMON PLEAS COURT OF LUZERNE COUNTY, PENNSYLVANIA, 54 Pa. D. & C.4th 449; 2002 Pa. D. & C. LEXIS 1, January 7, 2002, Decided, Hollock v. Erie Insurance Exchange
... court found defendant insurance company acted in ...
... Inconsistent positions   The defendant insurance company acted in ...
... notified plaintiff's automobile insurance carrier, defendant Erie Insurance Exchange, that plaintiff would be making ...
... claims. Contrary to unfair insurance practice regulations, Erie ...
... court further found that these experts rendered their opinions without ...
... Erie acted in bad faith by contesting whether the accident ...
... motorist carrier, Erie Insurance Exchange, on May 1, ...
... issued a policy of insurance to Jean Hollock, no. ...
... Hollock.)(6) Plaintiff had insurance policies with Erie since ...
... for each Erie Insurance claims handler to reinforce the ...
... A "reserve" in the insurance business is an amount set ...
... Under Hollock's auto insurance policy, Erie could be bound ...
... 53) Pursuant to its contract of insurance with Jean Hollock, upon ...
... c) Report of Allstate Insurance Company's independent medical ...
... 100,000, representing the amount of insurance coverage available to the tort- ...
... Erie Insurance Group (Records) 6/19/98$ 26.30
... Underinsured And Bad Faith Claim$ 35,803.40, (164) This ...
... accepts the testimony of plaintiff's expert, Jonathan Cunitz, regarding the ...
... a result of Erie's bad faith conduct, see P- ...

... surplus" is the "net worth" of an insurance company, using the conservative ...
... accounting method of the state insurance department by subtracting ...
... Prudential Property & Casualty Insurance Co., 437 Pa. ...
... denying the claim." MGA Insurance Co. v. Bakos, ...
... Nationwide Mutual Fire Insurance Co., 435 Pa. ...
... 1994). See also, MGA Insurance, supra.(7) Pennsylvania has at ...
... et seq.; the  Unfair Insurance Practices Act, 40 ...
... regulations for unfair insurance practices, 31 Pa. ...
... 8) Under the Unfair Insurance Practices Act, 40 ...
... practice in the business of insurance":"(10) (i) Misrepresenting ...
... claims arising under insurance policies;"(iii) Failing to ...
... claims arising under insurance policies;"(iv) Refusing to ...
... amounts due under an insurance policy by offering ...
... explanation of the basis in the insurance policy in relation to the ...
... 9) Pursuant to the Unfair Insurance Practices provision in the ...
... coverages or other provisions of an insurance policy or insurance contract under which a ...
... coverages or other provisions of an insurance policy or insurance contract when the benefits, coverages or ...
... insured. Fedas v. Insurance Co. of PA, 300 ...
... O'Donnell v. Allstate Insurance Co., 1999 PA ...
... taken by that same insurance company on the first-party ...
... insurer and its insured and the very nature of the insurance contract.  Romano v. ...
... claim is contractual and arises because the insurance company assumes a ...
... v. Nationwide Mutual Insurance Co., 422 Pa. ...
... court accepts as credible the expert opinions as testified to by plaintiff's expert, Peter Barnett, Esquire (P-122) with regard to the bad faith conduct exhibited by ...
... necessarily violated the Unfair Insurance Practices Act, 40 ...
... coverages, or other provisions of an insurance policy or insurance contract  under which a ...
... misapprehensions of coverage, is contrary to the insurance statutes and regulations governing their ...
... amounts due under an insurance policy by offering ...
... 1993), citing Puritan Insurance v. Canadian Universal, ...
... amounts due under the insurance policy by compelling ...
... amounts due under an insurance policy by offering ...
... Partnership v. Regis Insurance Co., 43 D.& ...
... fact, Erie's own "insurance expert," Dr. Kensicki, ...
... one of these scenarios is evidence of bad faith, since Erie either ...
... provide complete evidence to its expert, or allowed its expert to issue a report ...
... tort-feasor's insurance carrier, Allstate, that corroborated the ...
... Pennsylvania at the request of defendants and insurance companies to perform examinations, and ...
... retained a biomechanical expert to challenge causation.(68) An ...
... portions of the claim is evidence of bad faith.  Wood v. Allstate, ...
... Fleming v. CNA Insurance Companies, 409 Pa. ...
... conduct, since the same insurance carrier, for the same ...
... Under the Pennsylvania Unfair Insurance Practices Act, which this court ...
... amounts due under an insurance policy by offering ...
... Erie acted in bad faith in violation of 42 ...
... rejects the testimony of Erie's expert, Peter Kensicki and finds the ...
... terms and conditions of the Erie insurance policy and all conditions precedent and ...
... Nationwide Mutual Fire Insurance Co., 23 F. ...
... a breach of contract insurance with Ms. Hollock, (2) ...
... evidence the defendant, Erie Insurance Exchange, acted in ...
... against the defendant, Erie Insurance Exchange, and awards damages to ...

19. Sanders v. State Farm, nos. 95-4815, 97-16355, COMMON PLEAS COURT OF DELAWARE COUNTY, PENNSYLVANIA, 47 Pa. D. & C.4th 129; 2000 Pa. D. & C. LEXIS 121, July 27, 2000, Decided, Insurance law--Bad faith--Delay in investigation and payment--Reliance on expert report--Unfair Insurance Practices Act   An insurer's ...

... claim did not constitute bad faith where the facts and circumstances surrounding the ...
... not act in bad faith when it relied on an expert's report in denying ...
... defendant violated the Unfair Insurance Practices Act, 40 ...
... insurer, State Farm Insurance Company, civil action ...
... action arising under an insurance policy, if the court finds that the ...
... Prudential Property & Casualty Insurance Company, 437 Pa. ...
... Nationwide Mutual Fund Insurance Company, 23 F. ...
... Quaciari v. Allstate Insurance Company, 998 F. ...
... handling and investigating plaintiff's insurance claim. Further, it is the opinion of this ...
... failed to pay promptly his insurance claim for towing and ...
... Kosierowski v. Allstate Insurance Company, 51 F. ...
... Quaciari v. Allstate Insurance Company, 998 F. ...
... Farm Mutual Automobile Insurance Company, 939 F. ...
... O'Donnell v. Allstate Insurance Company, 1999 PA ...
... protracted investigation by the insurance provider. O'Donnell, 734 ...
... estimate of engine repair. An insurance company has a right ...
... contradict or countervail the two expert reports of Ms. Keri and ...
... Farm acted in bad faith when it relied on its experts in denying plaintiff's ...
... for summary judgment on the bad faith claim because the insurance company had relied on an expert report in denying ...
... stated:"Whether or not the defendants' expert correctly assessed the cause of the ...
... Hartford acted unreasonably. Bad faith cannot be found where the insurer's ...
... but incorrect interpretation of the insurance policy and the law." Id. at ...
... violated the Pennsylvania Unfair Insurance Practices Act, 40 ...
... National Mutual Casualty Insurance Company, 494 Pa. ...
... unavailable. As plaintiff has admitted however, his insurance contract with State Farm did ...
... v. Liberty Mutual Insurance Company, 1999 U.S. ...
... Corp. v. Transportation Insurance Co., 963 F. ...

20. Torres v. Gillick, no. 95-CV-1786, COMMON PLEAS COURT OF LACKAWANNA COUNTY, PENNSYLVANIA, 45 Pa. D. & C.4th 182; 1999 Pa. D. & C. LEXIS 28, December 21, 1999, Decided
... defaulting party's willfulness or bad faith; the number of discovery violations; and the ...
... plaintiff's late presentation of expert reports. This was plaintiff's first ...
... not accuse plaintiff of bad faith. Finally, the court noted that ...
... case, precluding plaintiff's expert testimony would be severely damaging, if ...
... v. State Farm Insurance Co., 719 A. ...
... plaintiff's late presentation of their expert reports. Nor have the defendants accused the plaintiff of bad faith. Furthermore, this is the first discovery ...
... case, to preclude the plaintiff's expert testimony would be severely damaging, if ...

21. New Castle Indus. v. Behm, no. 40219, COMMON PLEAS COURT OF LAWRENCE COUNTY, PENNSYLVANIA, 40 Pa. D. & C.4th 544; 1998 Pa. D. & C. LEXIS 175, December 23, 1998, Decided

... American Mutual Liability Insurance Co. v. Zion & ...

22. Kroack v. Allstate Ins. Co., no. 1092, COMMON PLEAS COURT OF MERCER COUNTY, PENNSYLVANIA, 30 Pa. D. & C.3d 275; 1983 Pa. D. & C. LEXIS 349, October 11, 1983, Decided, Kroack v. Allstate Insurance Company, No-fault Insurance Act -- Work loss -- ...
... Pennsylvania No-fault Insurance Act the following correlation ...
... may, in the absence of bad faith, rely on its own medical expert's conclusions in denying ...
... Pennsylvania No-fault Insurance Act, 40 P.S. ...
... before the court on the defendant insurance company's motion for ...
... insured by defendant insurance company and employed as an inventory ...
... fault Motor Vehicle Insurance Act. n1 Also included ...
... fault Motor Vehicle Insurance Act and is thus recoverable in an ...



... recoverable from the no-fault insurance carrier and/or as part of the damages ...
... v. Nationwide Mutual Insurance Co., 13 Pa. ...
... Anfuso v. Erie Insurance Group, 306 Pa. ...
... Act, is defined in the Insurance Department regulations as "the number of ...
... National Mutual Casualty Insurance Co., 293 Pa. ...
... v. Harleysville Mutual Insurance Co., 285 Pa. ...
... State Farm Automobile Insurance Co., 309 Pa. ...
... Anfuso v. Erie Insurance Group, 306 Pa. ...
... v. Donegal Mutual Insurance Co., 301 Pa. ...
... v. Nationwide Mutual Insurance Co., 306 Pa. ...
... State Farm Automobile Insurance Co., 309 Pa. ...
... v. Harleysville Mutual Insurance Co., 285 Pa. ...
... fault basis.'" Allstate Insurance Co. v. Heffner, ...
... fault Motor Vehicle Insurance Act, § 1:8.2 at ...
... Heffner v. Allstate Insurance Co., 265 Pa. ...
... State Farm Automobile Insurance Co., 309 Pa. ...
... v. Nationwide Mutual Insurance Co., 306 Pa. ...
... Anfuso v. Erie Insurance Group, 306 Pa. ...
... forth in Regulations of the Insurance Department, 31 Pa. ...
... Heffner v. Allstate Insurance Co., 265 Pa. ...
... intent of the legislature or the intendment of an insurance policy, we should err in ...
... CETA job. Erie Insurance Exchange v. Roule, ...
... v. Michigan Mutual Insurance Co., 105 Mich. ...
... Smith v. Harleysville Insurance Co., 275 Pa. ...
... Farm Mutual Automobile Insurance Co., 24 Pa. ...
... v. Federal Kemper Insurance Co., 13 Pa. ...
... v. National Casualty Insurance Co., 20 Pa. ...
... American Manufacturers Mutual Insurance Co., 24 Pa. ...
... may in the absence of bad faith rely on its own expert's opinions. See Brenna v. Nationwide Insurance Co., 294 Pa. ...
... Hayes v. Erie Insurance Exchange, 493 Pa. ...
... fault Motor Vehicle Insurance Act is granted.   Defendant's ...

23. Cohen v. Kutner Buick, Inc., no. 420, COMMON PLEAS COURT OF PHILADELPHIA COUNTY, PENNSYLVANIA, 27 Pa. D. & C.3d 421; 1981 Pa. D. & C. LEXIS 198, July 13, 1981, Decided

24. Myers v. Nationwide Ins. Co., No. 3216, No. 3216, COMMON PLEAS COURT OF PHILADELPHIA COUNTY, CIVIL DIVISION, 33 Phila. 372; 1997 Phila. Cty. Rptr. LEXIS 21, May 16, 1997, Decided, Petition for Allowance of Appeal Granted August 20, 1998, Reported at: 1998 Pa. LEXIS 1773.

... Myers v. Nationwide Insurance Company
... October, 1992, and her automobile insurance company therefore properly denied ...
... court credited the testimony of the insurance company's expert, who attributed ...
... Jackson, against her automobile insurance carrier, Nationwide Insurance Company.  The dispute relates to the ...
... End Footnotes- - - - - - - - - - - - - - - - Nationwide Insurance Company adamantly disputes these ...
... Sidone Leppler of Nationwide Insurance Company). While the wording ...
... Binczewski v. Centennial Insurance Co., 354 Pa. ...
... proffered by the plaintiffs' experts. His trial testimony is highly ...
... findings on causation, the plaintiffs' bad faith action against Nationwide ...

25. LeBourgeois v. Firstrust Sav. Bank, No. 3378, COMMON PLEAS COURT OF PHILADELPHIA COUNTY, CIVIL TRIAL DIVISION, 27 Phila. 42; 1994 Phila. Cty. Rptr. LEXIS 15, January 31, 1994

... Co. v. American Insurance Co., 308 Pa. ...
... never even asked their expert, Professor Gorton, to compare the ...

... Plaintiffs also failed to prove bad faith on the part of Firstrust in  ...

26. Spuriel v. State Farm Ins. Co., No. 1338, Common Pleas Court of Philadelphia County, 20 Phila. 151; 1990 Phila. Cty. Rptr. LEXIS 1, January 18, 1990

... v. State Farm Insurance Co.
... defendant State Farm Insurance Company.  Plaintiff sustained  ...
... refusing to qualify one of his experts and in excluding the testimony on  ...
... DPW acted in bad faith and abused its discretion in  ...
... Company and State Farm Insurance Company and refusing to permit  ...
... Audit and State Farm Insurance Company." Worldwide Auditing  ...
... frequently hired by insurance companies to audit the claims of  ...

27. Sheppard Corp. v. City of Philadelphia, No. 3612, Common Pleas Court of Philadelphia County, 12 Phila. 223; 1985 Phila. Cty. Rptr. LEXIS 25, March 7, 1985

... in the court and, (4) bad faith or willfulness of failing to comply with the  ...
... 4) Court excluded expert testimony of three experts called by Plaintiff for failure to comply with expert discovery rules where admission of the  ...
... plaintiff had denied the existence of any insurance "covering losses to the property  ...
... filed a fire insurance claim.  This, also, had been a constant  ...
... in the court and (4) bad faith of [sic] willfulness of failing to  ...
... allowing the testimony of plaintiff's experts to be admitted into evidence would have materially  ...



# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,       :     CASE NO. 1:01-CV-1157

      Plaintiff               :

           v.                :       (Judge Conner)

UNUM PROVIDENT CORPORATION; :
PAUL REVERE LIFE INSURANCE    :
COMPANY; NEW YORK LIFE       :
INSURANCE COMPANY,          :

      Defendants           :

**FILED**
HARRISBURG, PA

FEB 07 2003

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## M E M O R A N D U M

Before the court are the following motions: 1) defendants' motion in limine concerning plaintiff's proposed experts (Doc. 18); 2) plaintiff's motion to extend deadline for filing expert report (Doc. 31); 3) plaintiff's motion to permit supplemental expert report (Doc. 59); 4) plaintiff's motion to bring to the court's attention recently filed affidavit (Doc. 69); 5) plaintiff's motion to supplement the record (Doc. 76); 6) plaintiff's motion to add additional authority in support of his motion for summary judgment and opposing authority to defendants' motion for summary judgment (Doc. 77); and 7) plaintiff's second motion to supplement the record (Doc. 78). The matters are ripe for disposition.

## I.       Background

This case arises from defendants UNUM Provident Corporation, Paul Revere Life Insurance Company, and New York Life Insurance Company's denial of plaintiff, Vincenzo Mazzamuto's ("Mazzamuto") claim for long term disability benefits based on back and psychiatric conditions. Plaintiff filed the instant complaint on June 26, 2001. (Doc. 1). In his complaint, Mazzamuto alleges common

law breach of contract and statutory bad faith pursuant to 42 Pa. C.S.A. § 8371. (Doc. 1).

## II.          Defendants' Motion in Limine

### A.      Background

Plaintiff seeks to admit the expert testimony of Dr. Douglas Bower and Mr. Gordon K. Rose, CLU. Dr. Bower serves as Mazzamuto's treating physician, and intends to testify that plaintiff's physical and psychiatric conditions render him "disabled" as defined by defendants' insurance policy. (Doc. 22, Ex. G). In addition, Mazzamuto proffers the testimony of Mr. Rose, a purported expert in insurance claims practices. Mr. Rose plans to opine that defendants' actions during the claims investigation process constitute statutory bad faith. (Doc. 33, Ex. B).

### B.      Discussion

#### 1. Applicable Law

Trial courts must perform a "gatekeeping" function in order to ensure that all expert testimony heard by the factfinder is both relevant and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993); Oddi v. Ford Motor Co., 234 F.3d 136, 144 (3d Cir. 2000); Hamilton v. Emerson Electric Co., 133 F.Supp. 2d 360, 366 (M.D.Pa. 2001). Federal Rule of Evidence 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . " FED. R. EVID. 702. This requirement applies to traditional scientific experts like Dr. Bower, and experts in technical and other

2

specialized knowledge, like Mr. Rose. <u>See</u> <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 141 (1999).

A proposed expert must satisfy three requirements before the court permits his or her testimony to be heard by the factfinder. First, the court must deem the expert "qualified." <u>Elcock v. Kmart Corp.</u>, 233 F.3d 734, 741 (3d Cir. 2000); <u>Oddi</u>, 234 F.3d at 145; <u>In re Unisys Savings Plan Litigation</u>, 173 F.3d 145, 155 (3d Cir. 1999). Second, the evidence must be based on "reliable" methodology. <u>Id.</u> Finally, the proposed expert testimony must "fit" with the subject matter of the case, or "assist the trier of fact" in resolving disputed factual issues. <u>Id.</u> Appellate courts review a trial court's decision to admit or exclude expert testimony for abuse of discretion. <u>Kumho Tire</u>, 526 U.S. at 152, <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 143 (1997); <u>Elcock</u>, 233 F.3d at 740-41.

### 2. Dr. Bower's Testimony

Defendants argue that Dr. Bower is not qualified to opine that Mazzamuto is disabled from his back and psychiatric conditions. (Doc. 19). Dr. Bower is board certified in internal medicine, and identifies himself as a general internist, which is "basically the non-surgical adult medical practice." (Doc. 22, Ex. G, p. 4). He concedes that he is not board certified in psychiatry nor an expert in back conditions. <u>Id.</u> at pp. 4-5. Plaintiff argues that Dr. Bower's experience treating patients suffering from back conditions and psychiatric problems, combined with the eight years he served as plaintiff's primary treating physician, qualify him to render an opinion on plaintiff's condition. (Doc. 33).

Before a trial court permits a witness to testify as an expert, that witness must be qualified by virtue of specialized expertise. <u>Elcock</u>, 233 F.3d at 741; <u>Hamilton</u>, 133 F.Supp. 2d at 367-68; <u>Burton v. Danek Medical, Inc.</u>, 1999 WL 118020 at

3

*3 (E.D.Pa. 1999). The basis of this specialized knowledge can be formal education, practical experience, or technical skill. See Elcock, 233 F.3d at 741; Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 114 (3d Cir. 1987); Hamilton, 133 F.Supp. 2d at 367-68. Courts are required to construe the requirements of Rule 702 liberally, however an expert witness must possess, at minimum, skill or knowledge beyond the understanding of the average layperson. See Elcock, 233 F.3d at 741; Aloe Coal, 816 F.2d at 114; Hamilton, 133 F.Supp. 2d at 368.

Defendants contend that Dr. Bower, a general practitioner, does not possess sufficient knowledge of mental illnesses or back disorders to render an opinion on Mazzamuto's disability. (Doc. 19). A court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." In re Diet Drugs Products Liability Litigation, 2000 U.S. Dist. LEXIS 9661 at *9 (E.D.Pa. 2000). Dr. Bower testifies that he regularly treats individuals with psychiatric and chronic back conditions. (Doc. 22, Ex. G, pp. 4, 36). The court concludes that Dr. Bower's practical experience as an internist, combined with his lengthy treatment relationship with plaintiff places Mazzamuto's back and psychiatric conditions squarely within his area of expertise. See id.

In an analogous case, the United States Court of Appeals for the Third Circuit allowed expert testimony from a general practitioner on a specific health condition. Holbrook v. Lykes Bros. Steamship Co., Inc., 80 F.3d 777, 783 (3d Cir. 1996). In Holbrook, the court permitted the plaintiff's treating physician, who specialized in internal medicine, to testify as an expert concerning a cancer diagnosis. Id. The court qualified this expert despite the fact that he was not a pathologist, oncologist, or cancer specialist. Id. See also Kosberg v. Washington Hospital Center, Inc., 394 F.2d 947, 949 (D.C. Cir. 1968) ("The fact that an internist is not a specialist in

4

psychiatry or neurology does not preclude him from testifying about the physical effects of electroshock therapy. . .”). The liberal qualification rules of the Third Circuit do not require an expert to be the best qualified, or to specialize in the most appropriate field. See Hamilton, 133 F.Supp.2d at 368; Holbrook, 80 F.3d at 782; In re Diet Drugs, 2000 U.S. Dist. LEXIS 9661 at *18. Therefore, the court will deem Dr. Bower qualified to testify as an expert about Mazzamuto's psychiatric and back conditions.

Defendants' psychiatric expert, Dr. Abram Hostetter, contests the reliability of Dr. Bower's methodology, arguing that Dr. Bower never conducted an adequate mental status examination. (Doc. 22, Ex. K). Without this exam, Dr. Hostetter was unable to form an opinion about Mazzamuto's alleged psychiatric disability. Id. The Supreme Court and the Third Circuit have provided trial courts with a list of flexible factors to consider when evaluating the reliability of a proffered expert's methodology.[1] Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369. However, these factors do not constitute a mandatory checklist, and courts may inquire into the reliability of a potential expert's methodology without strictly adhering to the aforementioned factors. See Kumho Tire, 526 U.S. at 150-51; Daubert, 509 U.S. at 593-94. Defendants appear to argue that the methodology employed by Dr. Bowers in arriving at his psychiatric diagnosis is not generally accepted in the scientific community and does not contain standards

---

[1]These include: 1) whether a method consists of a testable hypothesis; 2) whether the method has been subject to peer review; 3) the known or potential rate of error; 4) the existence and maintenance of standards controlling the technique's operation; 5) whether the method is generally accepted; 6) the relationship of the technique to methods which have been established to be reliable; 7) the qualifications of the expert witness testifying based on the methodology; and 8) the non-judicial uses to which the method has been put. Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369.

controlling its operation because he did not perform a mental status examination. (Doc. 19). See Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369.

Defendants deposed Dr. Bower. (Doc. 22, Ex. G). At the deposition, Dr. Bower frequently referred to Mazzamuto's symptoms of depression. Id. In addition, Dr. Bower discusses the psychiatric medications prescribed to plaintiff. Id. at p. 36. While Dr. Bower did fail to conduct a mental status examination, his diagnosis is based on scientific method, and not mere speculation. See Elcock, 233 F.3d at 745. The court is unaware of any Third Circuit precedent requiring treating physicians to administer a mental status examination before proffering expert testimony about a patient's psychiatric condition. "The test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct." Oddi, 234 F.3d at 145-46.

"An expert's opinion is reliable if it is based on the "methods and procedures of science" rather than on 'subjective belief or unsupported speculation . . .'" Elcock, 233 F.3d at 745. Dr. Bower's diagnosis of Mazzamuto's depression is based on knowledge obtained during his tenure as plaintiff's treating physician. (Doc. 22, Ex. G, p. 36). Patient contact is perhaps the most dominant methodology employed by physicians when formulating diagnoses. See Walker v. Consolidated Rail Corp., 111 F.Supp. 2d 1016, 1018 (N.D. In. 2000) (holding that psychological expert could reasonably rely on patient's self-reported history in formulating opinion regarding patient's mental state).

While Dr. Hostetter may feel that a mental status examination would result in a more accurate diagnosis, he may express this opinion at trial. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 576. Dr. Bower's deposition assures this court that Mazzamuto's psychiatric diagnosis is based on reliable methodology.

Finally, defendants contend that plaintiff has failed to comply with Federal Rule of Civil Procedure 26(a)(2), which requires parties to identify all proposed expert witnesses. The rule further provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, **with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony**, be accompanied by a written report prepared and signed by the witness. FED. R. CIV. P. 26(a)(2)(B).

Plaintiff has not produced an expert report in compliance with this rule, and defendants argue that such failure creates grounds for exclusion. (Doc. 19).

However, case law fails to support defendants' proposition. The above procedural rule applies only to experts retained for the **sole** purpose of providing expert testimony at trial. Treating physicians need not submit such reports, provided their testimony concerns information obtained "not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit." <u>Bucher v. Gainey Transportation Svc. of Indiana, Inc.</u>, 167 F.R.D. 387, 390 (M.D.Pa. 1996) (quoting FED. R. CIV. P. 26 (a)(2)(B) advisory committee's notes). Dr. Bower has served as plaintiff's treating physician since 1994 or 1995, and his testimony is based on observations made in the course of this treatment relationship. (Doc. 22, Ex. G, p. 6). As a result, the court will hold that the Federal Rules of Civil Procedure do not require plaintiff to produce an expert report from Dr. Bower. The court will deny defendants' motion in limine with respect to Dr. Bower's expert testimony.

### 3. Mr. Rose's Testimony

Defendants also ask the court to exclude Mr. Gordon Rose's testimony. (Doc. 19). Mr. Rose seeks to testify as an insurance expert, and intends to opine that defendants' insurance practices qualify as statutory bad faith. (Doc. 33, Ex. B). Defendants first argue that Mr. Rose's proffered testimony does not "fit" the subject matter of the case, or "assist the trier of fact" in resolving disputed factual issues. Elcock, 233 F.3d at 741; Oddi, 234 F.3d at 145; In re Unisys Savings Plan, 173 F.3d at 155. Defendants contend that the lack of "fit" between Mr. Rose's proffered testimony and the facts of the present matter compel exclusion pursuant to Federal Rules of Evidence 702 and 403. See FED R. EVID. 702, 403.[2]

In order to assist the factfinder in resolving factual disputes present in the case, the subject matter of proposed expert testimony must fall outside the jury's understanding. See Hamilton, 133 F.Supp. 2d at 374-75; Bergman, 742 A.2d at 1105. Defendants contend that the average jury can comprehend bad faith insurance law without the aid of an expert witness.[3] They further argue that Mr. Rose's testimony consists solely of impermissible legal conclusions. (Doc. 19). In bad faith insurance actions, the admittance or exclusion of expert testimony lies within the trial court's

---

[2]This rule provides for the exclusion of evidence if "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

[3]Under Pennsylvania law, "bad faith" is defined as any frivolous or unfounded refusal to pay proceeds of an insurance policy. Keefe v. Prudential Property and Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000); Woody v. State Farm Fire and Casualty Co., 965 F. Supp. 691, 693 (E.D.Pa. 1997); Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994) (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)). The elements of the cause of action include: 1) lack of reasonable basis for denying benefits under the policy, and (2) knowing or reckless disregard of the lack of reasonable basis in denying the claim. See Keefe, 203 F.3d at 225; Klinger v. State Farm Mutual Automobile Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997); Terletsky, 649 A.2d at 688.

discretion. See Aloe Coal, 816 F.2d at 114; Dinner v. United Svcs. Automobile Assoc.

Casualty Ins. Co., 29 Fed. Appx. 823, 826 (3d Cir. 2002); Bergman v. United Svc.

Automobile Assoc., 742 A.2d 1101, 1107 (Pa. Super. 1999).

    Numerous courts have excluded expert testimony in insurance bad faith

actions. For example, the Third Circuit affirmed a trial court's exclusion of expert

testimony in an insurance bad faith action because "any relevance of [the expert's]

testimony was outweighed by the potential for prejudice to [the defendant]." Dinner,

29 Fed. Appx. at 12. The Eastern District of Pennsylvania has also excluded expert

testimony on insurance bad faith, explaining: "Bad faith is a legal concept of general

application which does not require that scientific, technical or specialized knowledge

be presented to assist the trier of fact. The witness' opinion is nothing more than

subjective speculation unsupported by any scientific or specialized knowledge."

Datillo v. State Farm Ins. Co., 1997 WL 644076 at *5 (E.D.Pa. 1997). See also

Bergman, 742 A.2d at 1108 (excluding expert testimony in a bad faith action because

the case did not involve highly sophisticated insurance concepts or practices or call

for special knowledge, skill or experience).[4]

    Examination of Mr. Rose's expert report persuades the court that

exclusion of this evidence is proper. (Doc. 33, Ex. B). Much of the report consists of

mere recitation of the facts of the case or the reports of other witnesses, which

plaintiff can present to the factfinder without the aid of an expert witness. Id. In

addition, this report was largely conclusory. Id. See also In re Diet Drugs, 2000 U.S.

Dist. LEXIS 9661 at *12 ("testimony of an expert that constitutes mere personal belief

---

[4]The court also recognizes those instances in which courts have allowed expert
testimony on bad faith insurance practices. See Kraeger and Kraeger v. Nationwide
Mutual Ins. Co., 1997 U.S. Dist. LEXIS 2726 at *2-3 (E.D.Pa. 1997); Bonenberger v.
Nationwide Mutual Ins. Co., 791 A.2d 378, 382 (Pa. Super. 2002).

as to the weight of the evidence invades the province of the jury"); <u>JMJ Enterprises Inc. v. Via Veneto Italian Ice, Inc.</u>, 1998 U.S. Dist. LEXIS 5098 at *27 (exclusion of expert testimony where witness acted as advocate, not objective observer); <u>Datillo</u>, 1997 WL 644076 at *5.

   The uncomplicated subject matter of the present action, combined with the conclusory nature of Mr. Rose's report, leads the court to believe that the proffered expert testimony will provide little probative value.  Juries often afford great weight to expert testimony, regardless of the quality of the evidence.  This tendency could result in considerable prejudice to defendants.  Because Mr. Rose's proposed testimony is of little probative value, and because the potential prejudice to defendants substantially outweighs its probative value, the court will exclude Mr. Rose's testimony.

**III.**   **Plaintiff's Motion to Extend Deadline for Filing Expert Report**

   Plaintiff has filed a motion to extend the deadline for filing expert reports until September 30, 2002. (Doc. 31).  Because this date has passed, the court will dismiss this motion as moot.

**IV.**   **Plaintiff's Motion to Permit Supplemental Expert Report**

   Plaintiff filed a motion to supplement Mr. Gordon Rose's expert report. (Doc. 59).[5]  As discussed above, the court will exclude Mr. Rose's testimony because expert testimony is not necessary to assist the factfinder in the present matter, and the potential prejudice to defendants substantially outweighs its probative value.

---

[5]The proffered report contains Mr. Rose's evaluation of the deposition of Dr. McSharry, a former employee of defendants who has brought suit alleging improper business practices. (Doc. 59).

Therefore, the court will deny plaintiff's motion for leave to supplement Mr. Rose's expert report.

**V.          Plaintiff's Motion to Bring Affidavit to the Court's Attention**

Plaintiff filed a motion to bring an affidavit and attached exhibits filed by plaintiff's counsel, Richard C. Angino, to the court's attention. (Doc. 69). This affidavit refers to "day in the life" film of Mazzamuto's work-related activities. Defendants failed to contest this motion. The court duly notes this affidavit. (Doc. 68). Therefore, plaintiff's motion to bring affidavit to the court's attention will be granted.

**VI.          Plaintiff's Motion to Supplement the Record**

Plaintiff filed a motion to supplement the present record with an additional report from Mr. Gordon Rose, and two depositions of Dr. William Feist, a former employee of defendants. (Doc. 76, Exs. A - C). This motion was dated November 25, 2002. Id. Plaintiff failed to submit a brief in support of this motion. United States District Court for the Middle District of Pennsylvania Rule of Court 7.5 ("Local Rule 7.5") provides:

> Within ten (10) days after the filing of any motion filed prior to trial, the party filing the same shall file an original and two (2) copies of a brief with the clerk and shall serve copies thereof on all parties. . . . Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule such motion shall be deemed to be withdrawn.

L.R. 7.5. Because plaintiff's counsel failed to submit a brief in support of this motion within ten days of the filing date, the court will deem the motion withdrawn.[6]

**VII.          Plaintiff's Motion to Add Additional Authority**

---

[6]As noted above, the court will exclude Mr. Rose's expert testimony on bad faith insurance practices. Therefore, plaintiff's motion to add this supplemental report from Mr. Rose would be denied.

Plaintiff submitted a motion to add additional authority in support of his motion for summary judgment and as opposition authority to defendants' motion for summary judgment. (Doc. 77). The desired additions to the record consist of ten (10) specific cases involving defendants, summary judgment, and deposition testimony concerning defendants' insurance practices. (Doc. 77, Exs. A-J). Plaintiff has also failed to file a brief in support of this motion.

Although he neglected to submit an initial brief in support, plaintiff did file a reply brief in support of this motion. (Doc. 88). Two articles are attached to the reply brief, both dealing with defendants' business practices. (Doc. 88, Exs. A, B). The court will disregard these articles because they were not submitted to the court through a proper brief in support of the original motion. The court did not receive a brief in support of the motion to add additional authority. Therefore, the court will deem the motion withdrawn.[7]

## VIII.    Plaintiff's Second Motion to Supplement the Record

Plaintiff filed a second motion to supplement the record with a further report from Mr. Gordon Rose, the plaintiff's proposed bad faith insurance expert. The court has previously stated that it will exclude all testimony of Mr. Rose. (Doc. 78). In addition, as discussed in connection with the above two motions, plaintiff's counsel failed to comply with Local Rule 7.5, which requires litigants to brief all pretrial motions. L.R. 7.5.

---

[7]The court reassures counsel that it will examine all relevant legal authority during disposition of the summary judgment motions.

12

Hence, the court will deem the plaintiff's second motion to supplement the record withdrawn.


CHRISTOPHER C. CONNER
United States District Judge


Dated:    February 7th, 2003

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,                     :     CASE NO. 1:01-CV-1157
                                              :
       Plaintiff                             :     (Judge Conner)
                                              :
          v.                                    :
                                              :
UNUM PROVIDENT CORPORATION;            :
PAUL REVERE LIFE INSURANCE              :
COMPANY; NEW YORK LIFE                  :
INSURANCE COMPANY,                      :
                                              :
       Defendants                           :

**FILED**
HARRISBURG, PA

FEB 07 2003

MARY E. D'ANDREA, CLERK
Per _____ *VM* _____
                 Deputy Clerk

## ORDER

AND NOW, this 7th day of February, 2003, it is hereby ORDERED that:

1. Defendants' motion in limine (Doc. 18) will be GRANTED in part and
DENIED in part in accordance with the accompanying memorandum.

2. Plaintiff's motion to extend the time for filing expert reports (Doc. 31)
is DISMISSED as moot.

3. Plaintiff's motion to permit a supplemental expert report (Doc. 59) is
DENIED.

4. Plaintiff's motion to bring to the court's attention recently filed
affidavit (Doc. 68) is GRANTED.

5. Plaintiff's motion to supplement the record (Doc. 76) is deemed
WITHDRAWN.

6. Plaintiff's motion to add additional authority (Doc. 77) is deemed
WITHDRAWN.

7. Plaintiff's second motion to supplement the record (Doc. 78) is
deemed WITHDRAWN.

CHRISTOPHER C. CONNER
United States District Judge

Case No: 1:01-cv-1157    Document No: 101,   1 Copy Printed: Feb, 7, 2003  04:50 PM

Joan L. Stehulak
Angino & Rovner, P.C.
4503 N. Front Street
Harrisburg, PA 17110

Failed faxing to: 17172385610
Failure reason: QUE ID: 266347

## CERTIFICATE OF SERVICE

I, Joan L. Stehulak, Esquire, hereby certify that a true and correct copy of the foregoing

PLAINTIFF'S MOTION FOR RECONSIDERATION was served by United States first-class

mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA 19603-0679
     Counsel for Paul Revere Life Insurance Company and New York Life Insurance Company

 

 

Joan L. Stehulak

Dated: 2/18/2003