FILED
HARRISBURG, PA

FEB 1 8 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>    Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>    Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

### PLAINTIFF'S PETITION TO FILE AMENDED COMPLAINT

Plaintiff, by his attorney, Richard C. Angino, requests Your Court's permission to file an amended complaint for the following reasons:

1.    The Complaint was filed on June 26, 2001.  **Exhibit A**.

2.    Plaintiff's Complaint averred a chronology commencing July 22, 2000, and concluding with Defendants' denial of Mr. Mazzamuto's claim on or about April 20, 2001.

3.    Since April 20, 2001, Defendants have persisted in their denial of Plaintiff's claim despite Defendants' receipt of the following information:

5/8/01 – Mr. Angino wrote a letter to Defendants summarizing Mr. Mazzamuto's claim and suggesting that Defendants would be guilty of bad faith if they did not pay the claim on the basis of the existing record.

7/12/01 – Dr. Schneider submitted report for Social Security Administration

4/16/02 – Defendants took Dr. Bowers' deposition

6/13/02 – Plaintiff filed first expert report

6/14/02 – Defendant New York Life agreed Mr. Mazzamuto was totally disabled as to his life insurance premium payments

6/27/02 – Defendant Dr. Steinman submitted an expert report without ever examining the patient opining from the records that Mr. Mazzamuto could do his work with accommodations

6/28/02 – Defendant Dr. Hostetter submitted a report to the effect that he could not express an opinion as to Mr. Mazzamuto's claim of disability from emotional causes

7/11/02 – Plaintiff filed a second expert report

7/25/02 – Mr. Mazzamuto was found to be totally disabled by the Social Security Administration

8/15/02 – Defendant New York Life reconfirmed that Mr. Mazzamuto was totally disabled and need not pay his life insurance premium

8/22/02 – Plaintiff's counsel filed the first of various articles, depositions, opinions from courts to the effect that UNUM/Provident had been engaging in unfair insurance practices for a n umber of years with respect to disability specific occupation policies which UNUM/Provident had found to be unprofitable

10/29/02 – Plaintiff's counsel supplied Defendants' counsel with a copy of a "day in the life" film of Mr. Mazzamuto

11/25/02 – Plaintiff filed a Motion to Add Additional Authority and a Motion to Supplement the Record.  Plaintiff's Motion to add additional authority referenced relevant cases against UNUM/Provident.  Plaintiff's Motion to Supplement

Record sought to add an additional report from Plaintiff's expert dated November 19, 2002, as well as two depositions of Dr. William Feist, a prior employee of Defendant UNUM/Provident.

12/5/02 – Plaintiff filed a Second Motion to Supplement the Record to add an additional report dated December 4, 2002, from Plaintiff's expert Gordon K. Rose

12/23/02 – Plaintiff's counsel filed an Affidavit

1/27/03 – Plaintiff's counsel responded to Defendants' Motion to Strike Affidavit and Plaintiff's Memo of Law opposing Defendants' Motion to Strike

2/12/03 – Plaintiff's counsel filed a Motion to Add Authority to Summary Judgment Motions

2/12/03 – Plaintiff's counsel supplied defense counsel with up-to-date medical records from Dr. Bower and the Pain Management Clinic

2/12/03 – Sent updated medical records to defense counsel

4.       Plaintiff contends that Defendants are guilty of bad faith for the way they handled Mr. Mazzamuto's claim from July, 2000 to the present, as well as engaging in a course of practice whereby (a) they utilized in-house employee reviewers, (b) the reviewers were motivated to deny large claims and particularly occupation specific disability policies, (c) Defendants taught their employees to reference Plaintiff's application job description rather than the specific requirements of his actual job, (d) Defendants specifically declined and/or failed to consider Plaintiff's actual occupational activities, (e) Defendants failed to follow the company manual of seeking independent medical examinations, (f) Defendants declined Plaintiff's claim on the basis of in-house office review rather than an independent medical examination, (g) Defendants persisted in declining Plaintiff's claim despite a finding of total disability by the Social Security Administration with a more demanding definition of "total disability," as well as

Defendant New York Life, with respect to Plaintiff's life insurance policy with a similar definition of "total disability" and in the face of court decisions and jury awards in similar cases finding Defendants guilty of bad faith and unfair insurance practice actions and after juries had imposed millions of dollars and Defendants were ordered to cease and desist in their unfair insurance practices.

     5.     Defendants have been advised and are well aware of all of the proposed amended facts and Plaintiff's legal position with respect to the additional Amended Complaint factual allegations and have had many months to prepare to defend same.

     6.     As a direct and proximate result of Defendants' bad faith conduct, Mr. Mazzamuto has been damaged and is entitled to recover his damages, including the underlying disability claim, interest on his claim, attorney's fees and costs, and punitive damages pursuant to 42 Pa.C.S.A. §8371.

     WHEREFORE, Plaintiff requests Your Honorable Court's grant of an order permitting the filing of an Amended Complaint adding the factual history that has developed since the time of the filing of the original Complaint and Plaintiff's reliance upon these additional facts in support of his contractual and bad faith claims.  Plaintiff' suggested Amended Complaint is attached as **Exhibit B**.  A black-lined copy of the Amended Complaint is attached as **Exhibit C**.

     Respectfully submitted,

     ANGINO & ROVNER, P.C.

     Richard C. Angino, Esquire
     I.D. No. 07140
     Joan L. Stehulak, Esquire
     I.D. No. 29496
     4503 N. Front Street
     Harrisburg, PA  17110
     (717) 238-6791
     Attorney for Plaintiff

Dated: 2/19/03

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>       Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM    PROVIDENT    CORPORATION;<br>PAUL    REVERE    LIFE    INSURANCE<br>COMPANY;   and   NEW   YORK   LIFE<br>INSURANCE COMPANY<br>       Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

## CERTIFICATE OF CONCURRENCE/NONCONCURRENCE

On February 12, 2003, I Joan L. Stehulak, contacted Thomas Henefer, counsel for

Defendants, seeking concurrence/nonconcurrence in the foregoing Petition.  Counsel does not

concur.

_Joan L. Stehulak_

Joan L. Stehulak

Exh A

# 1 : CV- 01 - 1157

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>　　　Plaintiff,<br><br>　　　v.<br><br>UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>　　　Defendants | CIVIL ACTION – LAW **FILED**<br>**HARRISBURG**<br>NO.<br><br>JUDGE: JUN 2 6 2001<br><br>JURY TRIAL DEMANDED MARY E. D'ANDREA, CLERK<br>Per_____<br>DEPUTY CLERK |

## COMPLAINT

1.　　Plaintiff Vincenzo "Vincent" Mazzamuto is an adult individual residing at 501 Limestone Road, Carlisle, Cumberland County, Pennsylvania.

2.　　Defendant UNUM Provident Corporation (hereinafter "UNUM") is an insurance company with its principal place of business in Worcester, Massachusetts.

3.　　Defendant Paul Revere Insurance Company (hereinafter "Paul Revere") is an insurance company with a principal place of business in Worcester, Massachusetts.

4.　　Defendant New York Life Insurance Company (hereinafter "New York Life") is an insurance company with a principal place of business in New York, New York.

5.    It is believed by Plaintiff and, therefore, averred that Paul Revere is a subsidiary of UNUM and that Paul Revere is the administrator for New York Life.

6.    Jurisdiction is vested in this Court by virtue of 28 U.S.C. §1332.

7.    Venue in the Middle District of Pennsylvania is proper because Defendants are licensed to do business in the Commonwealth of Pennsylvania and regularly conduct business in the Middle District.

8.    Plaintiff Mr. Mazzamuto is a long-time policyholder with Defendant New York Life with disability insurance policies for his position as owner/president of Vinny's Restaurant dating back to the early 1990's.

9.    Specifically, Mr. Mazzamuto was and is an insured under disability policy number H3236167 issued by Defendant New York Life. A copy of policy number H3236167 is attached as **Exhibit A**.

10.    In exchange for Mr. Mazzamuto's annual premiums, the before mentioned policy provided for the payment of monthly benefits during times of disability when Mr. Mazzamuto was incapable of performing his duties as owner/president of Vinny's Pizzeria:

> **Total Disability.** From the start of a total disability until two years after the Income Starting Date, disability means the that the Insured can not do the substantial and material duties of his or her regular job and is not working at any other gainful job.
>
> The cause of the total disability must be an injury or a sickness.
>
> * * *
>
> **Residual Disability.** Residual Disability under the terms of Plaintiff's Policy is satisfied when, during the elimination period, as a result of an injury or sickness, the insured:
>
> > a.    is not able to do one or more of the substantial and material duties of his or her regular job; or

b.    directly and apart from any other cause, has a loss of income of at least 20%.

11.    In and around July 22, 2000, Plaintiff Vincent Mazzamuto suffered a heart attack.

12.    At that time, while being transported to the emergency room for physician care, Vincent Mazzamuto aggravated a pre-existing back injury.  Because of his resulting lower back pain, Mr. Mazzamuto is not able to bend or stand for prolonged periods of time.

13.    As a result of his heart attack, Mr. Mazzamuto underwent cardiac catheritization and cardiac rehabilitation.

14.    As a result of his aggravated lower back problems, Mr. Mazzamuto continues to receive continuous medical care and treatment.

15.    As a result of Mr. Mazzamuto's heart condition and subsequent lower back problems, as noted by his treating physician, Douglas J. Bower, M.D., in the Attending Physician's Statement submitted to Paul Revere/New York Life, Mr. Mazzamuto required disability because of his inability to cope with the stressful atmosphere of work, perform heavy lifting and withstand the long periods of standing required by Mr. Mazzamuto's profession as owner/president of Vinny's Restaurant.

16.    After providing verbal notice to UNUM/Paul Revere/New York Life of his disability claim, in or around November of 2000, Mr. Mazzamuto filed his disability claim with UNUM/Paul Revere/New York Life.

17.    In or around November of 2000, Mr. Mazzamuto's treating physician, Douglas J. Bower, M.D., submitted a letter to UNUM/Paul Revere/New York Life to clarify facts about Plaintiff's condition because the physician found the medical forms provided by Defendants to be insufficient to properly describe Mr. Mazzamuto's several medical problems.  Within his letter Dr. Bowers clearly describes Mr. Mazzamuto's heart condition and subsequent back

problems resulting from his July 22, 2000, admittance into the hospital. Dr. Bowers noted that "it is unlikely [Mr. Mazzamuto] will be able to return to work in the foreseeable future" as a result of his cardiac problems which manifest with the significant anxiety that he experiences while at work as well as the before mentioned back problems.

18.    Within his Statement of Occupational Duties and Employment form submitted by Mr. Mazzamuto to New York Life in or around November of 2000, he noted that his work activities require 4.5 hours of walking and standing. Furthermore, Mr. Mazzamuto noted in an Occupational Description form submitted to New York Life in or about January of 2001, that his job required him to stand most of the time which aggravated his loser back condition and that his job was stressful which caused chest pain and shortness of breath and aggravated his lower back condition.

19.    Approximately <u>six months</u> after Mr. Mazzamuto submitted his disability claim, and after several letters from his counsel in or about  March of 2001, demanding a decision on the status of his claim, Defendant UNUM/Paul Revere/New York Life denied Mr. Mazzamuto's claim on or about April 20, 2001.  During the six month interlude, Plaintiff was utterly confused and discouraged by the claims handling process in which delays were caused by 1) requests for Plaintiff to provide medical documentation and statements concerning both his back and heart conditions; 2) numerous phone interviews and discussions with claims handlers; and 3) requests by several of Defendant's different departments for various job description forms and monthly progress reports.  Many of Defendants' requests during this six-month period resulted in Mr. Mazzamuto providing duplicative information.

20.    Defendants' handling of Mr. Mazzamuto's claim for total disability was in bad faith because Defendants had no reasonable basis for denying Mr. Mazzamuto the benefits under

his disability policy, and Defendants knew of and/or recklessly disregarded its lack of a reasonable basis in denying Plaintiff's claim.

21.    As a direct and proximate result of Defendants' bad faith conduct, Mr. Mazzamuto has been damaged and is entitled to recover his damages, including the underlying disability claim, interest on his claim, attorney's fees and costs, and punitive damages pursuant to 42 Pa.C.S.A. §8371.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of $150,000, exclusive of interest and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

ANGINO & ROVNER, P.C.

Richard C. Angino, Esquire
I.D. No. 07140
James DeCinti, Esquire
I.D. No. 77421
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Attorneys for Plaintiff

Dated:  6/26/01

| INSURED: | **VINCENZO MAZZAMUTO** |
|---|---|
| POLICY NUMBER: | **H3 236 167** |
| POLICY DATE: | **JUNE 28, 1993** |

# Disability Income Policy

**New York Life Insurance Company** will pay the benefits of this policy in accordance with its provisions. The pages which follow, including any exceptions and limitations, are also a part of this policy.

**10 day free examination period.** Please examine this policy. Within 10 days after delivery, the policy can be returned to the Company or to the agent through whom it was purchased, with a written request for a full refund of premium. Upon such a request, the policy will be void from the start, and any premium paid will be refunded.

**Pre-existing condition limitations.** Benefits for a disability caused by a pre-existing condition, as defined in this policy, will not be provided unless the disability starts after the policy has been in force for 2 years.

However, if a condition is excluded from coverage by name or specific description, no benefits will be provided for a loss that results from that condition even after these 2 years.

**Renewability.** This policy is non-cancellable and guaranteed renewable to the policy anniversary nearest the Insured's 65th birthday as stated in the Right to Renew Policy section.

After that anniversary, the policy may be renewed as long as the Insured is gainfully employed full time. During this time, the Company can change the table of premium rates that applies to this policy. See the Right to Renew Policy section for details.

**Important notice concerning statements in the application for this insurance.** Please read the copy of the application attached to this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied or the policy to be rescinded, subject to the Incontestability provision of this policy. Carefully check the application and write to the Company within 10 days after delivery if any information shown is not correct and complete. The application is part of this insurance policy and this insurance policy was issued on the basis that the answers to all questions and any other material information shown are correct and complete.

This policy is executed as of 12:01 A.M. on the policy date.

Coverage ends as of 11:59 P.M. on the last date this policy is in effect. These times are based on the Insured's place of residence.

**Disability Income Policy**

Non-Cancellable and Guaranteed Renewable to Age 65 - No Increase in Premium Rates

Conditionally Renewable From Age 65 For Life Subject to Change in Premium Rates

This is a participating policy.

President

Secretary



9132 PA

| | | | |
|---|---|---|---|
| **INSURED** | VINCENZO MAZZAMUTO | **AGE** | 38 |
| **POLICY NUMBER** | H3 236 167 | | |
| **POLICY DATE** | JUNE 28, 1993 | | |
| **OWNER** | INSURED | | |

## BENEFITS

PRIMARY MONTHLY INCOME BENEFIT FOR TOTAL DISABILITY:        $2,000
(IF TOTAL DISABILITY STARTS AT/AFTER AGE 75, ONE-HALF OF BENEFIT PAYABLE BEFORE AGE 75)

ELIMINATION PERIOD: 180 DAYS OF DISABILITY - AS DESCRIBED IN THIS POLICY

MAXIMUM BENEFIT TERM:  TO AGE 65 OR 2 YEARS, WHICHEVER IS LONGER; ONE YEAR, IF TOTAL DISABILITY STARTS AT OR AFTER AGE 75.

SUPPLEMENTARY BENEFITS:

COST OF LIVING BENEFIT (COLB)        5%

RESIDUAL DISABILITY

PRIMARY AUTOMATIC BENEFIT INCREASE (PABI)**

INCOME PURCHASE OPTION (IPO) UNITS        3

** REFER TO THE SCHEDULE FOR AUTOMATIC BENEFIT INCREASE

# SCHEDULE
## FOR
## PRIMARY AUTOMATIC BENEFIT INCREASE

INSURED:  VINCENZO MAZZAMUTO                    POLICY NUMBER:   H3 236 167

$ 100   WILL BE AUTOMATICALLY ADDED TO YOUR PRIMARY MONTHLY INCOME BENEFIT AMOUNT WITHOUT EVIDENCE OF INSURABILITY.  THIS WILL BE DONE ON EACH EFFECTIVE DATE OF INCREASE.

THESE INCREASES ARE SUBJECT TO THE TIMELY PAYMENT OF THE PROPER PREMIUM.  THESE PREMIUMS ARE BASED UPON YOUR ATTAINED AGE ON THE EFFECTIVE DATE OF INCREASE. THEY ARE LISTED BELOW.  IF ALL INCREASES GO INTO EFFECT, YOUR  MONTHLY    PREMIUM WILL INCREASE BY    $39.42.

| EFFECTIVE DATE OF INCREASE | MONTHLY   PREMIUM INCREASE |
|---|---|
| 06-28-1994 | $7.36 |
| 06-28-1995 | $7.64 |
| 06-28-1996 | $7.89 |
| 06-28-1997 | $8.14 |
| 06-28-1998 | $8.39 |

A BENEFIT INCREASE WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE EFFECTIVE DATE OF INCREASE.  IT WILL NOT APPLY TO A CONTINUATION OF A PRIOR DISABILITY. IF THE PREMIUM FOR THE POLICY IS BEING WAIVED ON THE EFFECTIVE DATE OF INCREASE, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED. WHEN YOU RESUME PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO START PAYING THE PREMIUM FOR THE INCREASE.

YOU MAY REFUSE AN INCREASE BY NOTIFYING US IN WRITING 45 DAYS PRIOR TO THE EFFECTIVE DATE OF INCREASE. YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE REMAINING AUTOMATIC BENEFIT INCREASES.

PRIOR TO AGE 60, YOU MAY APPLY FOR ADDITIONAL AUTOMATIC BENEFIT INCREASES.  YOU CAN DO THIS BY MAKING FORMAL APPLICATION WITHIN THE PERIOD OF 60 DAYS PRIOR TO AND 31 DAYS AFTER THE LAST EFFECTIVE DATE OF INCREASE SHOWN ABOVE. APPROVAL WILL BE SUBJECT TO OUR UNDERWRITING GUIDELINES IN EFFECT AT THE TIME OF THE APPLICATION FOR RENEWAL.

In this policy, the words "we", "our" or "us" refer to New York Life Insurance Company and the words "you" or "your" refer to the Owner of this policy.

When writing to us, please include the Insured's full name, current address, and the policy number.

## CONTENTS

**POLICY DATA** — 10 day free examination period; Pre-existing condition limitations; Renewability; Important notice concerning statements in the application for this insurance; Policy identification and specifications **/ 1-2**

**DEFINITIONS** — Age; Benefit Term; Elimination Period; Income Starting Date; Injury and Sickness; Nursing Care Facility; Physician; Pre-existing Condition; Regular Job; Total Disability **/ 4-6**

**BENEFITS** — Benefits for Disability; Monthly Income Benefit for Total Disability; New Period of Disability; Nursing Facility Benefit; Waiver of Premium Benefit; Rehabilitation; When Benefits Not Payable **/ 7-8**

**CLAIMS** — How and when to file a claim **/ 9**

**PREMIUMS** — Payment of premiums; What happens if a premium is not paid; Suspension during military duty; Reinstatement of a lapsed policy **/ 10**

**RIGHT TO RENEW POLICY** — How the policy is renewed **/ 11**

**GENERAL PROVISIONS** — Misstatement of Age; Policy Ownership; Change of Ownership; Entire Contract; Application; Incontestability; Policy Dates; Dividends; Assignment; Protection Against Creditors; Payments to Company; Conformity with Statutes; Voting Rights **/ 12-13**

**APPLICATION** — Attached to the policy.

**RIDERS OR ENDORSEMENTS (IF ANY)** — Attached to the policy.

## DEFINITIONS (continued)

(3)  a Custodial Care Facility which:

    (a)  provides custodial care under the supervision of a Registered Nurse (R.N.); and

    (b)  can accommodate three or more persons.

The facility must be licensed and operated according to the law of the jurisdiction in which it is located.

A Nursing Care Facility is not:

(1)  an acute care unit of a hospital;

(2)  any place operated primarily to treat mental illness, chemical dependency or alcoholism;

(3)  an educative or rehabilitative facility;

(4)  a facility owned or operated by a member of the Insured's or the Owner's immediate family.

**Physician**  A licensed practitioner of the healing arts acting within the scope of his or her license in treating an injury or a sickness. The following are not physicians for the purpose of this policy: the Owner of this policy; the Insured; a member of the Owner's or the Insured's family (spouse, natural or adopted child, mother, father, sister or brother); a member of the Owner's or the Insured's business; any employee of the Owner or the Insured.

**Pre-existing Condition**  A bodily injury or sickness of the Insured which a Physician has treated or for which a Physician has advised treatment within 2 years before the policy date.  A condition which was fully disclosed in the application but not excluded from coverage is not considered to be a pre-existing condition. However, a normal pregnancy which began before the effective date of this policy is considered to be a pre-existing condition whether or not it was fully disclosed in the application.

**Regular Job**  The occupation, or occupations if more than one, in which the Insured is engaged when a disability starts.

**Total Disability**  From the start of a total disability until 2 years after the Income Starting Date, total disability means that the Insured can not do the substantial and material duties of his or her regular job.

After 2 years from the Income Starting Date, if a new period of disability does not apply, total disability will then mean that the Insured can not do the substantial and material duties of his or her regular job and is not working at any other gainful job.

The cause of the total disability must be an injury or a sickness.

Total disability also means the Insured's total loss of one or more of the following, without regard to the Insured's ability to work:

(a)  the sight of both eyes;

(b)  the use of both hands, both feet, or one hand and one foot;

(c)  speech;

(d)  hearing in both ears.

## BENEFITS

**Benefits for Disability**  This policy provides monthly income benefits for disability. When the term "disability" is used alone, it means total disability, as defined in this policy.

**Monthly Income Benefit for Total Disability**  This benefit becomes payable as follows: premiums must be paid as called for in the Premiums section and the Elimination Period must be satisfied.

Then, beginning with the Income Starting Date and while disability goes on continuously, we will pay the Monthly Income Benefit for Total Disability, for each full month of total disability. The benefit is payable at monthly intervals during the benefit term. If the Insured is totally disabled for part of a month, we will pay 1/30th of the monthly benefit for each day of total disability. The amount of the monthly income benefit will not change if total disability results from more than one cause. In no event will the Insured be considered to have more than one disability at the same time.

The Monthly Income Benefit for Total Disability is shown on the Data page. For a total disability which starts at or after age 75, the Monthly Income Benefit for Total Disability will be 1/2 of the amount shown on the Data page.

**New Period of Disability**  If the Insured recovers from a disability for which monthly income benefits were paid, any later period of disability will be treated as a new period of disability when at least one of the following conditions is met while this policy is in force. First, the cause of the later period of disability must not be related in any way to the cause of any prior period of disability. Second, for at least 6 months in a row after recovery, the Insured must have worked full time at a gainful job. There must not have been any disability for which a benefit was payable during this 6 month period. A new Maximum Benefit Term and a new Elimination Period will apply to each new period of disability.

It may happen that neither of these conditions is met. In this case, if the later period of disability begins while this policy is in force, it will be a part of and an extension of the prior period of disability, with no new Elimination Period and no new Maximum Benefit Term.

**Nursing Facility Benefit**  We will pay an additional benefit for a period during which the Insured is confined in a Nursing Care Facility during a benefit term for total disability. The additional benefit for a period of confinement is 50% of the Monthly Income Benefit for Total Disability we pay for the same period. The confinement must be:

(1) prescribed by the Insured's Physician; and

(2) for a period of at least 24 consecutive hours.

The additional monthly benefit will not be payable beyond the end of the benefit term.

**Waiver of Premium Benefit**  We will start to waive the premiums for this policy when the Elimination Period has been satisfied and all premiums have been paid. We will waive those premiums that fall due on or after that Income Starting Date and during that disability until age 65 or until the end of the Maximum Benefit Term, whichever is later. We will also waive premiums which become due during the 3 months after the disability ends, but only if they fall due before age 65.

We will refund any premium which was paid and which fell due on a day of disability used to satisfy the Elimination Period.

Premiums will be waived based on the interval of payment which is in effect when the period of disability starts. A premium which is waived will not be deducted from any monthly income benefits or other proceeds.

## CLAIMS

**Notice of Claim**  A written notice of claim must be given to us at our Home Office, New York Life Insurance Company, 51 Madison Avenue, New York, NY 10010, or to one of our authorized agents. The notice must be given within 30 days after a disability starts or a covered loss occurs, or as soon as this can reasonably be done. It must include the name of the Insured and the policy number.

**Claim Forms**  When the notice is received, claim forms will be sent to the claimant to be filled out and returned to us. If the claimant does not receive these forms within 15 days after giving a notice of claim, he or she may instead give a complete written account of the facts that we need.

**Proof of Disability or Loss**  This policy provides for periodic payment for a continuing disability. You must give us written proof of disability within 90 days after the end of each period for which a benefit is payable. For any other loss, written proof must be given within 90 days after such loss occurs. Failure to give the proof within that time is not a basis for us to reduce or deny the claim, if the following 3 conditions are met. First, it must not be reasonably possible to give the proof within that time. Second, the proof must be given as soon as reasonably possible. Third, the proof must be given within one year from the time that proof is otherwise required, except in the absence of legal capacity.

**Time of Payment of Claim**  A claim will be payable when all information that is necessary for us to make a decision is received.

**Payment of Claim**  While the Insured is living, any benefits will be payable to you. If any of these benefits have not been paid at the Insured's death, they will be paid to you or to your estate.

A claim may become payable to your estate or to someone who can not give a valid release. In this case, up to $1,000 of that claim may be paid to the person whom we decide has the right to receive it. This person must be related by blood or marriage to you or to the person who could not give the release. Any payment made in good faith to that relative will release us to that extent.

**Examination of the Insured**  While a claim under this policy goes on, we have the right to have the Insured examined, at our expense, by physicians approved by us, as often as reasonably required.

**Legal Actions**  With respect to any claim under this policy, no legal action may be taken against us during the 60 days after receipt of the written proof, or after 3 years from the date proof is required to be given.

# RIDER

## PRIMARY AUTOMATIC BENEFIT INCREASE (PABI)

**Benefit**  The Primary Automatic Benefit Increase (PABI) provides for automatic increases to the Primary Monthly Income Benefit Amount for Total Disability, subject to the provisions of this rider. The amount shown on the Data page will be automatically added without evidence of insurability. This will be done on each Effective Date of Increase shown on the Data page.

A benefit increase will apply only to a disability which starts after the Effective Date of Increase. It will not apply to a continuation of a prior disability.

**Premiums**  Premiums for the Automatic Benefit Increases must be paid as called for in the Premiums section of the policy and are shown as Premium Increases on the Data page. Premiums are based upon the Insured's attained age on the Effective Date of Increase. If all increases go into effect, the premium will increase by the amount shown on the Data page.

If we are waiving premiums for the policy on the Effective Date of Increase, then the premium for the increase will also be waived. When premium payments for the policy resume, then the premium for the increase must also be paid.

**Refusal**  You may refuse any increase prior to the Effective Date of Increase. To do this, your signed notice must be sent to us 45 days prior to the Effective Date of Increase. Your refusal of an increase will not affect the remaining automatic benefit increases.

**Renewal**  On the last Effective Date of Increase shown on the Data page and prior to age 60, you may apply for a new Automatic Benefit Increase rider. You can do this by making formal application within the period of 60 days prior to and 31 days after the last Effective Date of Increase shown on the Data page. In no case will an automatic benefit increase be made beyond age 60.  Approval will be subject to our underwriting guidelines in effect at the time of the application for renewal.

**Contract**  This rider is made part of the policy, based on the application for this rider.

**Incontestability of Rider**  Except for a disability which starts before the end of 2 years from this rider's effective date, we have no right to contest the insurance provided by this rider after it has been in force during the lifetime of the Insured for 2 years from its effective date, excluding any period during which the Insured is disabled.

No misstatements, except fraudulent misstatements, in the application for this rider shall be used to void the insurance provided by this rider or to deny a claim for a disability commencing after the expiration of such 2 year period.

**Dates and Amounts**  When this rider is issued at the same time as the policy, we show the amount of the Automatic Benefit Increase, Effective Date of Increase, Premium Increase and the total of all Premium Increases if all increases go into effect. This rider will take effect on the policy date.

When this rider is added to a policy which is already in force, an Addition rider shows the effective date, the amount of the Automatic Benefit Increase, Effective Date of Increase, Premium Increase and the total of all Premium Increases if all increases go into effect.

(over)

# RIDER

## COST OF LIVING BENEFIT (COLB)

**Cost of Living Benefit**  While this rider is in effect, the Primary Monthly Income Benefit for Total Disability, as shown on the Data page, may be adjusted to reflect changes, if any, in the cost of living based on the CPI-U.  (The CPI-U is the Consumer Price Index for All Urban Consumers, All Items, as published and seasonally adjusted by the Bureau of Labor Statistics.)

For the purpose of determining any cost of living adjustment, we will measure years from the first day of the Elimination Period. In the first year, no adjustment will be made. In the second and each succeeding year, while the benefit term continues, adjustments will be made to the Primary Monthly Income Benefit for Total Disability in each of those years.

**Factor for Cost of Living Adjustments**  The adjustment to the Primary Monthly Income Benefit for Total Disability will be made by multiplying that benefit by the factor which applies for the year.  The factor will be determined by dividing the CPI-U for the third month prior to the first month of that year by the CPI-U for the third month prior to the start of the Elimination Period. The factor can not be less than 1.00.

While the same benefit term continues, the factor for a year can not exceed the limit below:

| Year | Factor Limit | Year | Factor Limit |
|------|--------------|------|--------------|
| 1st | 1.00 | 6th | 1.28 |
| 2nd | 1.05 | 7th | 1.34 |
| 3rd | 1.10 | 8th | 1.41 |
| 4th | 1.16 | 9th | 1.48 |
| 5th | 1.22 | 10th | 1.55 |

For each year beyond the 10th, the factor limit is determined by multiplying the factor limit for the prior year by 1.05.

However, if primary monthly income benefits are payable beyond age 65 for total disability, the factor in use on age 65 will be used for any future adjustments.

If the CPI-U, in our opinion, is no longer a valid index for the purpose of this provision, or is no longer published by the Bureau of Labor Statistics, we will use a new index. The new index will be one approved by the insurance supervisory official of the state in which this policy was delivered.

**Permanent Increase in Primary Monthly Income Benefit for Total Disability**  When a benefit term ends while this rider is in effect, the Primary Monthly Income Benefit for Total Disability will be increased by the amount of the cost of living adjustment applicable at the end of that benefit term. The amount of the permanent increase will be rounded to the nearer $10 and will remain in effect as long as the policy is in force. There will be no extra premium charge for the permanent increase.

**Contract**  This rider, when paid for, is made part of the policy, based on the application for the rider.

(over)

# RIDER

## RESIDUAL DISABILITY

1. The following is added to the Definitions section:

   **Residual Disability**  During the Elimination Period, residual disability means that due to an injury or a sickness as defined in this policy, the Insured:

   (a) is not able to do one or more of the substantial and material duties of his or her regular job; or

   (b) directly and apart from any other cause, has a loss of income as defined in this rider of at least 20%.

   After the Elimination Period has been satisfied, residual disability means the Insured has a loss of income as defined in this rider of at least 20%. The loss of income must result directly from the same or related injury or sickness used to satisfy the Elimination Period. The loss of income must not result from any other cause.

   In the case of pregnancy, other than a complication of pregnancy, residual disability means that the Insured, as a result of that pregnancy, can not do one or more of the substantial and material duties of her regular job and that, directly and apart from any other cause, she has a loss of income as defined in this rider of at least 20%. This applies both during the Elimination Period and after the Elimination Period has been satisfied.

2. The Benefits for Disability provision is deleted and the following is substituted:

   **Benefits for Disability**  This policy provides monthly income benefits for disability.  When the term "disability" is used alone, it means total disability or residual disability, as defined in this policy.

3. The following is added to the Benefits section:

   **Monthly Income Benefit for Residual Disability**  This benefit becomes payable as follows: premiums must be paid as called for in the Premiums section and the Elimination Period must be satisfied.

   Then, beginning with the Income Starting Date and while residual disability goes on continuously, we will pay a Monthly Income Benefit for Residual Disability for each calendar month of residual disability. This benefit is not payable:

   (a) if a Monthly Income Benefit for Total Disability is payable; or

   (b) after age 65.

   The benefit is payable at monthly intervals during the benefit term for each calendar month of residual disability. If the Insured is residually disabled for part of a month, we will pay 1/30th of the monthly income benefit for each day of residual disability.  The benefit is payable only after we receive the financial documentation we require.

   **Non-duplication of Benefits**  If the Insured is in an automobile accident and is eligible for first party disability benefits under automobile insurance or workers' compensation, any benefit payable under this rider for a residual disability will be reduced by the amount of benefits payable by the other coverage. The total amount payable under this rider, automobile insurance and workers' compensation will not exceed 100% of the residual disability benefit.

(over)

## RESIDUAL DISABILITY (continued)

**Normal and Usual Business Expenses** are those expenses incurred in the normal conduct of business and are generally allowable for federal income tax purposes. The method of depreciation used when determining Prior Monthly Income will also be used when determining Current Income. In addition, for purposes of determining Current Income, normal and usual business expenses must not be in excess of the comparable monthly expenses incurred within the twelve month period just prior to the start of the Elimination Period. Those expenses must be similar in type, allowing adjustments for normal price and utilization increases, if any. Salaries and other amounts paid to family members of the Insured who were not employees before the start of the Elimination Period are not considered normal and usual business expenses.

**Extraordinary Income** is special income, such as incentive stock options, non-qualified stock options, non-qualified deferred compensation and golden parachute payments.

**Prior Monthly Income** is equal to the greatest of:

(a) the highest average monthly income for any 2 consecutive years of the most recent 5 year period during which we paid no benefits under this policy; or

(b) the average monthly income for the 12 calendar months immediately preceding the Elimination Period; or

(c) the average monthly income for the 12 calendar months immediately preceding the Elimination Period, excluding any periods of at least 30 consecutive days of disability.

**Current Income** is the Insured's income during the month for which a monthly income benefit is to be paid.

**Indexing Adjustment** When a Monthly Income Benefit for Residual Disability is payable, the Prior Monthly Income that we use to determine that benefit may be adjusted to reflect changes, if any, in the cost of living based on the CPI-U. (The CPI-U is the Consumer Price Index for All Urban Consumers, All Items, as published and seasonally adjusted by the Bureau of Labor Statistics.)

For the purpose of determining any Indexing Adjustment, we will measure years from the first day of the Elimination Period. In the first year, no adjustment will be made. In the second and each succeeding year of the same benefit term, adjustments will be made which will affect the monthly income benefits we pay in each of those years.

The adjustment to the Prior Monthly Income for a year will be made by multiplying the Prior Monthly Income by the factor which applies for that year. The factor will be determined by dividing the CPI-U for the third month prior to the first month of that year by the CPI-U for the third month prior to the beginning of the Elimination Period. The factor can not be less than 1.00.

For any year, the factor can not exceed the limit below:

| Year | Factor Limit | Year | Factor Limit |
|------|------|------|------|
| 1st | 1.00 | 6th | 1.28 |
| 2nd | 1.05 | 7th | 1.34 |
| 3rd | 1.10 | 8th | 1.41 |
| 4th | 1.16 | 9th | 1.48 |
| 5th | 1.22 | 10th | 1.55 |

For each year beyond the 10th, the factor limit is determined by multiplying the factor limit for the prior year by 1.05.

(over)

Page 3
91-409

# RIDER

## INCOME PURCHASE OPTION (IPO)

**Benefit**  You may apply to increase the amount of the Primary Monthly Income Benefit for Total Disability, as shown on the Data page, on a Scheduled Option Date or Alternate Option Date, subject to the provisions of this rider. Proof of medical insurability is not required.

The increase purchased on any Scheduled Option Date or Alternate Option Date may not exceed the number of Option Units shown on the Data page times $1,000, less the total amount of the monthly income purchased on all prior option dates.

The minimum increase which may be purchased on any option date is $100. The amount purchased must be in multiples of $10.

Any increase purchased on an option date applies only when the primary monthly income benefit of the policy is payable for a disability which starts on or after that option date, or the date of the application, if later.

However, if the Primary Monthly Income Benefit for Total Disability is increased on a Scheduled Option Date which falls during a benefit term, an amount equal to the number of Option Units shown on the Data page times $100 will apply for the balance of that benefit term. And, if the Primary Monthly Income Benefit for Total Disability is then being adjusted by the terms of a Cost of Living Benefit rider, the same adjustment factor will apply to this increase.

**Scheduled Option Dates**  The Scheduled Option Dates are ages 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, 46, 48, 50 and 52, and on which this rider is in effect.  No increase in the Primary Monthly Income Benefit for Total Disability can be made on a Scheduled Option Date which has been canceled by a prior increase made on an Alternate Option Date.

**Alternate Option Dates**  An Alternate Option Date is the date on which any of the events listed below occurs and on which this rider is in effect.

    (a)  The marriage of the Insured.

    (b)  The birth of a living child or children to the Insured.

    (c)  The legal adoption of a child or children by the Insured.

We may require proof, acceptable to us, that the marriage, birth or adoption took place. No more than the maximum increase allowable on the next available Scheduled Option Date may be purchased on an Alternate Option Date.

Each increase in the Primary Monthly Income Benefit for Total Disability as of an Alternate Option Date cancels the next available Scheduled Option Date.

**Waiver of Premium Benefit**  If we are waiving the premiums for this policy, we will also waive the premiums for the increase in the Primary Monthly Income Benefit for Total Disability purchased under this rider.

**Increase in Monthly Income Benefit for Total Disability**  Your application, signed by the Insured, and the first premium must be given to us during the 60 days before or the 31 days after a Scheduled Option Date or Alternate Option Date.

(over)

## RIGHT TO RENEW POLICY

**Non-Cancellable and Guaranteed Renewable to Age 65**   While this policy is in force and if the Insured has not reached age 65, we can not take any of the actions listed below, without your consent.

(a) Refuse to let you renew the policy.

(b) Limit the policy by rider.

(c) Change any provisions of the policy.

(d) Change the table of premium rates.

**Renewability of Policy from Age 65**   Starting at age 65, if this policy is then in force, it may be renewed for the life of the Insured, as long as he or she works full time at a job and gets paid for that job, and the premiums for this policy are paid when due. Full time means 30 or more hours per week.  We have the right to ask for proof that the Insured is working full time at a gainful job. Proof will be needed as often as once each year.

When the Insured's job ends after age 65, except as a result of a total disability which starts at or after age 65, this policy will not stay in force beyond the end of the policy month in which that job ends. We will refund the part of a premium which is paid for the period after that policy month. The payment of a benefit for a total disability that started before the end of that policy month will not be affected.

We have the right to change the table of premium rates which applies to this policy at or after age 65. The premium rates will be changed on a class basis only. The premium rate that applies to this policy, in the changed table, will be based on the age of the Insured at the time of the change.

If the rates are changed, the new rates will take effect for this policy on the anniversary that follows the date of the change.

## GENERAL PROVISIONS (continued)

**Assignment**  You can assign this policy or any interest in it. In that case, your interest, and anyone else's, is subject to that of the assignee. An assignee may not change the Owner. You still have the rights of ownership that have not been assigned.

We must have a copy of any assignment. We will not be responsible for the validity of an assignment. The assignment will be subject to any payment made or other action taken by us before it was recorded.

**Protection Against Creditors**  Except as stated in the Assignment provision, payments made under this policy are, to the extent the law permits, exempt from the claims, attachments, or levies of any creditors.

**Payments to Company**  Any payment made to us by check or money order must be payable to New York Life. When asked, a receipt, signed by our President or Secretary, will be given for any premium paid.

**Conformity with Statutes**  This policy is subject to all laws which apply.

**Voting Rights**  Each year there is an election of persons to our Board of Directors. You have the right to vote in person or by mail if this policy is in force, and has been in force for at least one year after the policy date. To find out more about this, you should write to:  Secretary, New York Life Insurance Company, 51 Madison Avenue, New York, NY 10010.

# NEW YORK LIFE INSURANCE COMPANY

### New York, New York 10010

### CHECK-O-MATIC PREMIUM ARRANGEMENT

This policy is issued under the New York Life Insurance Company's Check-O-Matic arrangement under which the Company is authorized to draw checks monthly to be charged against a designated bank account for the purpose of collecting premiums payable under this policy. The premium shown in this policy is based on the Company's Check-O-Matic premium rate.

The Check-O-Matic arrangement may be terminated with respect to this policy by the policyowner or by the Company upon written notice. If the arrangement is terminated,

(1) premiums falling due under this policy after such termination shall be payable directly to the Company monthly, at the Check-O-Matic premium rate, until the first policy anniversary which follows by at least two months the date of such termination, and

(2) premiums falling due under this policy on and after said anniversary shall be payable directly to the Company at the quarterly rate if the quarterly premium would be at least $12.50, at the semi-annual rate if the semi-annual premium would be at least $15 and the quarterly rate is not available, and otherwise at the annual premium rate.

By _____

Secretary

72-602

# ● AMENDMENT ●

NAME:    MAZZAMUTO

NUMBER:    H3 236 167    **NOTE:** This requirement must not be changed or modified in any way, but remain as made out by the Home Office

APPLICATION DATED:    JUNE 3, 1993

The **NEW YORK LIFE INSURANCE COMPANY** will please accept the following answers in lieu of the answers to the corresponding questions in my application for insurance dated as indicated above.

| QUESTION No. 7 (A) | DISABILITY INCOME | PRIMARY PLAN    Monthly Benefit $2000<br>SIS Rider $ _____ , COLB 5% ☒  71/2% ☐  IPO ____ UNITS<br>Elim. Per. (days)    30 ☐    60 ☐    90 ☐    180 ☒    365 ☐    730 ☐<br>Benefit Term:    2 years ☐    5 years ☐    To Age 65 ☒    To Age 67 ☐<br>Lifetime ☐<br>Premiums:    Level ☒    or Step Rate ☐<br><br>SECONDARY PLAN    Monthly Benefit $ _____<br>Elim. Per. (days)    30 ☐    60 ☐    90 ☐    180 ☐    365 ☐    730 ☐<br>Benefit Term: 2 years ☐ 5 years ☐    To Age 65 ☐    To Age 67 ☐ Lifetime ☐<br><br>ARDI    Monthly Benefit $ _____<br>Elim. Per. (days)    30 ☐    60 ☐    90 ☐    180 ☐    365 ☐    730 ☐<br>Benefit Term:    To Age 65 ☐    To Age 67 ☐    Lifetime ☐<br><br>RIDERS:    Residual ☒    Unrestricted Own Occ ☐    Other _____<br><br>Exercise Automatic Benefit Increase options?    Yes ☒    No ☐ |
|---|---|---|
|  | OVERHEAD EXPENSE | Max. Monthly Benefit $ _____    12 X ☐    24 X ☐<br>IPO ___ UNITS    Elim Per (days)    30 ☐    60 ☐    90 ☐ |
|  | DISABILITY BUY-OUT | Buy-Out Benefit $ _____    IMB ___ UNITS<br>Elim Per (months)    12 ☐    24 ☐    36 ☐ |
|  | KEY EMPLOYEE | Monthly Benefit $ _____    IPO ___ UNITS<br>Elim Per (days)    30 ☐    60 ☐    90 ☐ |
| QUESTION No. 3L |  | OF PART II SHOULD BE ANSWERED INTENDED TO BE YES. |

And I hereby agree that the above answers shall form a part of my said application for insurance, the agreement in which I hereby renew and confirm, and shall apply to any policy issued thereon.

Dated _____ , 19 _____    _____ Proposed Insured

Witness _____    _____ Applicant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Forwarded to the Central Records Division from  CONSTITUTION _____ General Office

_____ , 19 _____

156-B 1-89 Printed in U.S.A.

702765

# DISABILITY INCOME INSURANCE APPLICATION PART I

NEW YORK LIFE INSURANCE COMPANY 51 Madison Ave., New York, N.Y. 10010

We hereby apply for insurance on the following representations:

| not an application for a New Policy check one: | |
|---|---|
| ☐ Add Rider to Policy No._____ | ☐ Converting ARDI in Policy No._____ |
| ☐ Change in Policy No._____ | ☐ Amend Application No._____ |
| ☐ Application to Reinstate Policy No._____ | ☐ Exercising Option in Policy No._____ |
| | ☐ Upgrade Policy No._____ |

1. (a) PROPOSED INSURED _Vincenzo Mazzamuto_ (b) Soc. Sec. No. 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  (c) Sex M ☑ F ☐

(d) Date of Birth Mo. 05 Day 25 Year 1955 (e) Place of Birth State _____ (f) Country _Italy_

(g) ADDRESS (Complete street address including any apt. no. and Zip; do not only give P.O. Box)   (iv) Time at Address
   (i) Residence _501 Limestone Rd_ _____ Zip 17013  6 Yrs. ____M
   _Carlisle, PA_                                                        (v) Mail Address
   (ii) Telephone number(s) and best time to call Res. (717) 243-0383 A.M. 9:00 P.M. ____  Res. ☑ Bus.☐
   (iii) Bus. (717) 249-6417 A.M. ____ P.M. 2:00 If Proposed Insured cannot be reached by telephone, explain reas

(h) Has the Proposed Insured smoked cigarettes in the last 12 months?    Yes ☐  No ☑

2. (a) OCCUPATION _President of First Class Restaurant_
   (i) Exact duties, including percentage of time spent performing any manual or supervisory duties and traveling _____
   _Executive, office duties only_

(b) Does the proposed Insured have any other occupations?  Yes ☐  No ☑  If "Yes", describe _____
   _____   Check if a Federal Govt. Employee
(c) EMPLOYER _Vinny's Restaurant Inc._   Check if a Municipal Govt. Employee
   (i) Address of Employer _330 South Hanover St_ _____ (ii) Time with Employe
   _Carlisle, PA  17013_  13 Yrs. ____M

(d) Former Employer (within 2 years) _____
   (i) Address of Former Employer _____

(e) Does the Proposed Insured own any portion of the business?  Yes ☑  No ☐  If "Yes", complete the Supplement to Applicati
   Part I.

| | | Yes | No |
|---|---|---|---|
| 3. (a) | Within the last 2 years, has the Proposed Insured engaged in: motorized racing, scuba or sky diving, ballooning, hang-gliding, ultra-light flying, stunt flying, mountain climbing, or rodeo riding, or does he or she intend to do so? If "Yes", complete Form 7663. | ☐ | ☑ |
| (b) | been convicted for 3 or more motor vehicle moving violations or been charged with driving under the influence of alcohol or drugs? If "Yes", complete CPHQ-Form 17480. | ☐ | ☑ |
| (c) | been declined for issue, renewal or reinstatement, rated or charged an extra premium for any type of Life or Health Insurance? If "Yes", give company and reasons, if known, in question 12. | ☐ | ☑ |
| 4. | If cash is to be paid with this application, has the Proposed Insured, within the last 2 years | | |
| (a) | been medically treated in, or been advised to seek medical treatment in a hospital, sanitarium or clinic other than for childbirth? | ☐ | ☑ |
| (b) | been medically diagnosed as having or received medical treatment for heart trouble, cancer (other than skin cancer), AIDS or AIDS-related complex (ARC), elevated blood pressure requiring medication, had any abnormal blood test results or had an electrocardiogram made for any cause other than a routine physical examination? | ☐ | ☑ |
| (c) | had an unexplained weight loss or swollen glands, recurring diarrhea, fever or infection, persistent cough, insomnia or thrush? | ☐ | ☑ |
| | If "Yes" to either (a), (b) or (c) above, cash may not be paid. Also give details in question 12. | | |
| 5. | Is it agreed that cash will be received subject to the terms of the attached receipt, that no coverage will be provided under the receipt unless all conditions to coverage are met, and that any such coverage will be temporary and limited in amount? If "No", cash may not be paid | ☑ | ☐ |
| | CASH PAID $ 0 | | |

a 91-607

91607

PT702765  ●  ●

## APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY (Continued)

⌐. Answer if APPLICANT ☐ and/or OWNER ☐ (check one or both, as appropriate) is not Proposed Insured.

(a) Name ................................................................ (b) Soc. Sec. No. or Emp. ID No. ..........................

(c) Residence Address ................................................................................ Zip ...............

(d) Business Address ................................................................................ Zip ...............

(e) Mailing Address  Residence ☐  Business ☐  Other ........................................................

(f) Date of Birth (or date of incorporation, if a corporation) ................................................

7. (a) PLAN OF INSURANCE AND OPTIONAL BENEFITS

---

**DISABILITY INCOME**

PRIMARY PLAN
Monthly Benefit $ *2000*  SIS Rider $ ....................,  COLB 5% ☒  7½% ☐  IPO *3*  UN
Elim. Per. (days)  30 ☐  60 ☐  90 ☐  180 ☒  365 ☐  730 ☐;  Premiums Level ☑ or Step Rate ☐
Benefit Term  2 years ☐  5 years ☐  To Age 65 ☒  To Age 67 ☐  Lifetime ☐

SECONDARY PLAN
Monthly Benefit $ ........................  Elim Per (days)  30 ☐  60 ☐  90 ☐  180 ☐  365 ☐  730
Benefit Term  2 years ☐  5 years ☐  To Age 65 ☐  To Age 67 ☐  Lifetime ☐

ARDI
Monthly Benefit $ ........................  Elim Per (days)  30 ☐  60 ☐  90 ☐  180 ☐  365 ☐  730
Benefit Term  To Age 65 ☐  To Age 67 ☐  Lifetime ☐

RIDERS (Apply to Primary Plan, Secondary Plan, and ARDI)  Residual ☒  Unrestricted Own Occ ☒  Other ...........

Exercise Automatic Benefit Increase options? (Applies only to Primary Plan and Secondary Plan)  Yes ☒  No ☐

OVERHEAD EXPENSE  12 × ☐  24 × ☐  IPO ............ Units
Max. Monthly Benefit $ ........................  Elim Per (days) 30 ☐  60 ☐  90 ☐

DISABILITY BUY-OUT  Elim Per (months)  12 ☐  24 ☐  36 ☐  IMB ............ Units
Buy-Out Benefit  $ ........................

KEY EMPLOYEE DISABILITY  Elim Per (days)  30 ☐  60 ☐  90 ☐  IPO ......... Units
Monthly Benefit $ ........................

---

Complete (b) and (c) below if the Proposed Insured is a non-owner employee. If the Proposed Insured owns any portion of t
business, complete (c) below and the Supplement to Application Part I.

(b) EARNED INCOME — Earned income consists of wages, commissions and other amounts received for personal services,
reportable for personal federal income tax purposes, after deducting normal business expenses.

   (i) What is the Proposed Insured's earned income at the current annual rate? $ ...............

   (ii) What was the Proposed Insured's earned income for the prior calendar year? $ ...............

   (iii) Does the Proposed Insured ever receive more than 30% of his or her annual earned income in a single month?
       Yes ☐  No ☐  If "Yes", explain in question 12.

(c) UNEARNED INCOME AND NET WORTH

   (i) What is the Proposed Insured's annual unearned income (include interest, dividends, rent, etc.)?
       None ☑  Other $ ........................

   (ii) Is the Proposed Insured's net worth (assets minus liabilities) over $4,000,000?  No ☑  Yes ☐
       If "yes" complete section 2 of Supplement to Application Part I.

F. 702765

## APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY (Continued)

(d) OTHER INCOME PROTECTION COVERAGE ON THE PROPOSED INSURED

   (i) Will the employer continue salary in the event of an inability to work due to disability?   Yes ☐   No ☑

      If "Yes", salary of $ ----------------- will be continued for ------------------months.

   (ii) List below other income coverage in force or pending on the Proposed Insured. Indicate type: (1) Individual
      (2) Association (3) Group (4) Employer Sick Pay (5) Overhead (6) Buy-Out.

| Company or Source | Type 1,2,3,4, 5 or 6 | Policy or Certificate # | Effective Date | Monthly Income | Elim. Per. | Ben. Term | Will this coverage be replaced? | Date coverage will be terminated? |
|---|---|---|---|---|---|---|---|---|
| ------------------ | ------ | ------------ | --------- | $ ---------- | -------- | -------- | Yes ☐ No ☐ | ------------------ |
| ------------------ | ------ | ------------ | --------- | $ ---------- | -------- | -------- | Yes ☐ No ☐ | ------------------ |
| ------------------ | ------ | ------------ | --------- | $ ---------- | -------- | -------- | Yes ☐ No ☐ | ------------------ |
| ------------------ | ------ | ------------ | --------- | $ ---------- | -------- | -------- | Yes ☐ No ☐ | ------------------ |

(e) PREMIUM PAYER

   (i) If employer is to pay all or part of the premium, indicate the percentage: ----------%

3. PREMIUM MODE   Annual ☐   Semiannual ☐   Quarterly ☐   C-O-M ☑   Nyl-A-Plan ☐
CHECK IF LIST BILLING APPLIES ☐

9. POLICY DATE ----------------, 19 ------ if no date is specified, the policy date is: the later date of Parts I and II if cash is paid wi
this application; or the date of issue, if cash is not paid. If cash is not paid and the policy has not been issued by the date specified
he policy date will be the date of issue.

0. IF AMENDING APPLICATION PREVIOUSLY SUBMITTED: Since the date of the application for the policy (including any Part I
has the Proposed Insured:

   (a) been admitted to a hospital, sanitarium or other medical facility?   Yes ☐No ☐ If "Yes", submit a new application Part I

   (b) had any illness, injury, or consulted any physician or practitioner for any reason, including routine checkup examination?
      Yes ☐   No ☐ If "Yes", give full details ----------------------------------

1. (a) IF AMOUNT OF BENEFIT IS BEING INCREASED UNDER AN OPTION: (IPO, IMB)
     Amount of Increase $ ---------------   (b) Option Date----------,19 --------   (c) Scheduled ☐ or Alternate (Special) ☐
     If Alternate (Special) Option Date, give: Date of marriage ☐, Birth ☐ or Adoption ☐   Mo.----------- Day----------- Yr.---------

   (b) IF ARDI IS BEING CONVERTED
     Amount of coverage being converted   $----------------------------

12. ADDITIONAL DETAILS AND SPECIAL REQUESTS (incl. Question Number, where applicable).
   Ques. No.

9160

PT 702765 

## APPLICATION PART I TO NEW YORK LIFE INSURANCE COMPANY (Continued)

**THOSE WHO SIGN THIS PART I AGREE THAT:**

- l of the statements in the application are correctly recorded, and are complete and true to the best of the knowledge and belief of those who made them.

2. No agent or medical examiner has any right to accept risks, make or change contracts, or give up any of the Company's rights or requirements.

3. "Cash Paid" with the application with respect to a new policy or additional benefit provides a limited amount of temporary coverage for up to 60 days, if the terms and conditions of the receipt are met. If an option to increase the amount of income protection is being exercised, it must be available in the policy indicated, and no coverage will be provided before the Option Date. Temporary coverage is not provided if reinstatement of a policy is applied for.

4. To put a policy or benefit issued in response to this application into effect, the policy or written evidence of the benefit

Dated at _Carlisle, PA_

on _6/3_ , 19 _93_

I certify I have truly and accurately recorded all answers given to me.

Witness _[signature]_      **Agent**

_____
Countersigned by Licensed Resident Agent (if required)

must be delivered to the Applicant and the full first premium paid. If temporary coverage with respect to a policy or ben... is not in effect at time of delivery, there must not have be... any material change in the insurability of the Proposed Insur... as described by the application's written statements; t... means that these statements would still be complete and tr... if made at time of delivery.

5. If this application is in connection with a reinstatement, it... agreed that payment of the overdue premium to New Yo... Life Insurance Company will be applied to a period betwee... the date the policy lapsed and the date of reinstatement...

6. Under penalties of perjury, it is certified that: (a) The Soc... Security or tax numbers shown in this application are corre... taxpayer identification numbers; and (b) the holders of sa... numbers are not subject to any backup withholding of U... Federal income tax.

_[signature]_      **Signature of Applica...**

_____
**Signature of Proposed Insured if other than Applica...**

91-607

91607

## SUPPLEMENT TO APPLICATION PART 1 TO NEW YORK LIFE INSURANCE COMPANY

Proposed Insured _Vincenzo Mazzamuto_ ............................................ Soc. Sec. No. _196-56-574_

### SECTION 1 - BUSINESS OWNER'S STATEMENT - must be completed if Proposed Insured owns any portion of the business.

**COMPLETE QUESTIONS 1 THROUGH 5 FOR ALL PLANS OF INSURANCE**

1. Name of Business _Vinny's Restaurant, Inc_ ...............................................

2. Structure of Business:  Sole Proprietor ☐ **Nm.**  Partnership ☐  S Corp. ☐  Corp. ☑

3. Date the business was formed (if Corp or S Corp., give date of incorporation) _1980_ ...............

4. Percent of Business owned by Proposed Insured _100_ %

5. Is the Proposed Insured's spouse employed by the same employer?  Yes ☐  No ☑

**COMPLETE QUESTIONS 6 THROUGH 10 WHEN APPLYING FOR OVERHEAD EXPENSE**

6. How many partners or co-owners are there (including the Proposed Insured)? ............

7. Is the Proposed Insured actively employed full-time in the business ?  Yes ☐  No ☐    If "No", explain ...............
   ................................................................................................................................

8. Number of full-time employees (including Proposed Insured) ............

9. Would the absence of the Proposed Insured result in a substantial loss of income to the firm?  Yes ☐  No ☐

10. Can the Proposed Insured's duties be performed by an individual presently employed by the firm?  Yes ☐  No ☐

**COMPLETE QUESTIONS 11 THROUGH 15 ONLY WHEN APPLYING FOR DISABILITY BUY-OUT**

11. How many partners or co-owners are there (including the Proposed Insured)? ............

12. Is the Proposed Insured actively employed full-time in the business ?  Yes ☐  No ☐    If "No", explain ...............
    ................................................................................................................................

13. Number of full-time employees (including Proposed Insured) ............

14. Is there Disability Buy-Out coverage applied for (or already in force) on each partner or co-owner?  Yes ☐  No ☐
    If "No", explain reason ...............................................................................................

15. Is it understood that as a requirement for the payment of benefits, a Buy-Out Agreement must be in effect and a Buy-Out effected?  Yes ☐  No ☐

**NOTE: THE PROPOSED INSURED CANNOT BE THE OWNER OF A DISABILITY BUY-OUT POLICY. THE OWNER MUST BE NAMED IN QUESTION 6 OF PART I OF THE APPLICATION**

### SECTION 2 - FINANCIAL INFORMATION

**EARNED INCOME** — Complete the chart below if the Proposed Insured owns any portion of the business. Fill in amounts as reportable for Federal income tax purposes.

| | Current Annual Rate | Actual Last Year 19_92_ | Actual 2 Years Ago 19_91_ |
|---|---|---|---|
| (i) Proposed Insured's share of Gross Business Receipts | $184,494 | $184,494 | $384,521 |
| (ii) Proposed Insured's share of Business Expenses (Include all salaries and contributions to deductible Pension or Profit Sharing Plans; do not include IRA or Keogh Plan contributions) | $131,455 | $131,455 | $303,783 |
| (iii) For a Corporation, Proposed Insured's salary, wages, commissions, bonuses from the business, that are included in (ii) above | $ / | $ / | $ / |
| (iv) Contributions to any Pension or Profit Sharing Plan on Proposed Insured's behalf included in (ii) above | $ / | $ / | $ / |
| (v) Earned income from other sources, after deducting business expenses | $ / | $ / | $ / |
| (vi) Total Income (i) – (ii) + (iii) + (iv) + (v) | $53,039 | $53,039 | $40,738 |

Is 30% or more of (i) above ever generated in a single month?    Yes ☐  No ☑

## SUPPLEMENT TO APPLICATION PART 1 TO NEW YORK LIFE INSURANCE COMPANY (Continued)

EARNED INCOME — Complete the chart below if the Proposed Insured is a non-owner employee

|  | Current Annual Rate | Actual Last Year 19........ | Actual 2 Years Ago 19........ |
|---|---|---|---|
| (i) Salary, Fees, Commissions & Bonus from primary occupation | $ | $ | $ |
| (ii) Pension and Profit Sharing Contributions | $ | $ | $ |
| (iii) Income from other occupations | $ | $ | $ |
| (iv) Total Earnings | $ | $ | $ |
| (v) Business Expenses from all occupations | $ | $ | $ |
| (vi) Net Earned Income (iv-v) | $ | $ | $ |

NET WORTH — Fill in the details of the Proposed Insured's net worth, if over $4,000,000

Total Net Worth $ 1,500,000

| | |
|---|---|
| Cash Savings, Stocks, Bonds | $ |
| Interest in Business | $ |
| Personal Property | $ |
| Real Estate - Residence only | $ |
| Other Real Estate | $ |
| Other - give details below | $ |

Details of other Net Worth _____

_____

THOSE WHO SIGN THIS SUPPLEMENT AGREE THAT

1. All of the statements in the supplement are correctly recorded and are complete and true to the best of the knowledge and be of those who made them.

2. This supplement will become part of the application for insurance on the Proposed Insured.

Dated at _Carlisle, PA_____

on _____ 6/3 , 19 93

I certify I have truly and accurately recorded all answers given to me.

Witness _____ Agent

_____
Signature of Applicant

_____
Signature of Proposed Insured if other than Applicant

Countersigned by Licensed Resident Agent (if required)

91-600 SUPP.                                                              91600

NON-MED.



☒ NEW YORK LIFE INSURANCE COMPANY
☐ NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION (A Delaware Corp.)
51 Madison Avenue, New York, N.Y. 10010

[ ] Number
(Own)?

Answers to Insurer forming Part II of Application for
Insurance. (Please print or type.)

Full information on all persons proposed for coverage in Question 1. (Use Question 11 for all details requested in Questions 2-11.)

PROPOSED INSURED? Vincenzo Mazzamuto ____ Height? 5 ft. 6 in.; Weight? 195
b. SPOUSE, if proposed for coverage? ____ Height? ___ ft. ___ in.; Weight? ___
c. CHILDREN, if proposed for coverage (give full names)? ____

2. Personal physicians (give consultation details in Ques. 11) Name?   Address and Phone No.?   Date last consulted?
a. For Proposed Insured  Masland Medical Associates 220 Wilson St Ste 109   1 month ago
b. For Spouse named in Ques. 1  (717)249-1929  Carlisle, PA 17013

Answer Questions 3-11, so far as known, for all persons in Ques. 1. (If "Yes" to Ques. 6, submit CPHQ Form 17480 for that person, and give name in Ques. 11.)

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| 3. In last 10 years, has such person consulted a physician or practitioner for, been treated for, had, or been informed that he or she had | | | | 5. In last 2 years, has any such person had any of the following: | | |
| a. heart trouble, angina, stroke, murmur or irregular pulse? | ☐ | ☒ a | | a. unexplained weight loss or swollen glands; recurring diarrhea, fever or infection; persistent cough, pneumonia, or thrush? | ☐ | ☒ |
| b. diabetes or elevated blood sugar? | ☐ | ☒ b | | b. chest discomfort, edema, transient visual loss, muscle weakness, shortness of breath, or internal bleeding? | ☐ | ☒ |
| c. chronic bronchitis, emphysema, asthma or other lung disorder? | ☐ | ☒ c | | | | |
| d. cancer, tumor, lymphoma; lupus or collagen disorder; rheumatoid arthritis or muscular disease? | ☐ | ☒ d | | 6. In last 10 years, has any such person been counselled, treated or hospitalized for any psychiatric, emotional or mental health condition, or for the use of alcohol or drugs? (If yes, submit CPHQ.) | ☐ | ☒ |
| e. pancreatitis; urine sugar; hepatitis; cirrhosis or liver trouble? | ☐ | ☒ e | | | | |
| f. AIDS, AIDS-related complex (ARC), or other immune deficiency? | ☐ | ☒ f | | 7. Other than as stated, has any such person during past 2 years had | | |
| g. elevated blood pressure; thrombophlebitis, embolism or other circulatory disorder; kidney disease; albumin or blood in urine? | ☐ | ☒ g | | a. treatment or surgery in a hospital or other facility? | ☐ | ☒ |
| h. ulcerative colitis, ileitis or other chronic intestinal disorder? | ☐ | ☒ h | | b. an electrocardiogram, x-ray or other diagnostic test, or an examination for checkup or other purpose? | ☐ | ☒ |
| i. seizures, dizziness or fainting; other nervous system disorder? | ☐ | ☒ i | | c. advice about any treatment, surgery or diagnostic testing which was not completed? | ☐ | ☒ |
| j. anemia, thyroid or other blood or gland disorder? | ☐ | ☒ j | | | | |
| k. ulcer; hernia; varicose veins; gall bladder disorder; kidney stones? | ☐ | ☒ k | | 8. Has any such person, for physical or mental health reasons, ever received disability benefits, compensation or pension; or been rejected for, or discharged from, military service? | ☐ | ☒ |
| l. back, spine, joint or bone disorder; eye, ear or skin disorder? | ☐ | ☒ l | | | | |
| m. (if a male) disorder of prostate or reproductive organs? (if a female) disorder of pelvic organs, breasts, menses or pregnancy, or is she now pregnant? | ☐ | ☒ m | | 9. Any history of angina, heart trouble or stroke before age 60 among natural parents, brothers or sisters of any such person? If "Yes", give relationship, age at onset and subsequent history. | ☒ | ☐ |
| 4. Is any such person now taking prescription medication? | ☐ | ☒ | | 10. Has Prop. Insured smoked any cigarettes in the past 12 months? | ☐ | ☒ |

11. GIVE FULL DETAILS FOR EACH "YES" ANSWER IN QUESTIONS 3-5, 7-9, AND LAST CONSULTATION WITH PERSONAL PHYSICIAN IN PAST 2 YEARS

| a. Ques. No. | b. Name of Person to whom "Yes" applies | c. Reason — nature and severity of condition? (Include frequency, treatment, medication, surgery and results.) | d. Onset? Mo. Yr. | e. Recovery? Mo. Yr. | f. Names and Addresses of Physicians, Hospitals or Medical Facilities? |
|---|---|---|---|---|---|
| 9 | father | stroke prior to age 60 | | | |
| | | PI last consulted Dr Robinson | 4/93 | See | Knee |
| | | injury — fully recovered — no further treatment need | | | |

HE UNDERSIGNED DECLARE THAT, to the best of their knowledge and belief, all answers given in this Part II are correctly recorded, complete and true.

Dated at Carlisle, PA on 6/3 , 19 93     _Vince Mazz_
I certify I have truly and accurately recorded all answers given to me.                                    Signature of Proposed Insured

Witnessed by _Jonathan Kirns_ Agent     Signature of Spouse, if proposed for coverage;
Signature of Parent or Guardian, if Prop. Insured under 14 years 6 months

JUN 09 '93  04:25PM NY LIFE CONST GEN OFFICE                                    P.2

☐ MED.    ☐ NEW YORK LIFE INSURANCE COMPANY
          ☐ NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION (A Delaware Corp.)
          51 Madison Avenue, New York, N.Y. 10010

Policy Number (if known)?

Answers to the Paramedical Examiner, forming Part II o
Application for Insurance. Complete this form in private

| | | | |
|---|---|---|---|
| Name of Person Examined? | Vincenzo Mazzocato | b. Date of Birth? Mo: 5 Day: 25 Yr: 55 | c. Soc. Sec. or Soc. Ins. No.? 196 56 5744 |

Personal Physician { if none, or if not consulted in last yrs., so state,

a. Name? Masland Associates (Terry Robinson D.O.) Carlisle Pa. 17013
b. Address and Phone No.? Same as above
c. Last consulted: Date? ≈1 month   Reason? Knee injury   N/A
d. Treatment; Type? Evaluation   Medication? N/A

Give the following information, so far as known, for the person being examined. If "Yes" to any question, give full details in Question 11.

| | Yes | No |
|---|---|---|
| Last 10 years, has such person consulted a physician or practitioner been treated for, had, or been informed that he or she had | | |
| heart trouble, angina, stroke, murmur or irregular pulse? | ☐ | ☒ a |
| diabetes or elevated blood sugar? | ☐ | ☒ b |
| chronic bronchitis, emphysema, asthma or other lung disorder? | ☐ | ☒ c |
| cancer, tumor, lymphoma; lupus or collagen disorder; rheumatoid arthritis or muscular disease? | ☒ | ☐ d |
| pancreatitis; urine sugar; hepatitis, cirrhosis or liver trouble? | ☐ | ☒ e |
| AIDS, AIDS-related complex (ARC), or other immune deficiency? | ☐ | ☒ f |
| elevated blood pressure; thrombophlebitis, embolism or other circulatory disorder; kidney disease; albumin or blood in urine? | ☐ | ☒ g |
| ulcerative colitis, ileitis or other chronic intestinal disorder? | ☐ | ☒ h |
| seizures, dizziness or fainting; other nervous system disorder? | ☐ | ☒ i |
| anemia, thyroid or other blood or gland disorder? | ☐ | ☒ j |
| ulcer; hernia; varicose veins; gall bladder disorder; kidney stones? | ☐ | ☒ k |
| back, spine, joint or bone disorder; eye, ear or skin disorder? | ☐ | ☒ l |
| (if a male) disorder of prostate or reproductive organs? | | |
| (if a female) disorder of pelvic organs, breasts, menses or pregnancy, or is she now pregnant? | ☐ | ☒ m |
| Any such person now taking prescription medication? | ☐ | ☒ |

5. In last 2 years, has any such person had any of the following:
a. unexplained weight loss or swollen glands; recurring diarrhea; fever or infection; persistent cough, pneumonia, or thrush?   ☐ ☒ a
b. chest discomfort, edema; transient visual loss, muscle weakness, shortness of breath, or internal bleeding?   ☐ ☒ b

6. In last 10 years, has any such person been counselled, treated or hospitalized for any psychiatric, emotional or mental health condition, or for the use of alcohol or drugs?   ☐ ☒

7. Other than as stated, has any such person during past 2 years had
a. treatment or surgery in a hospital or other facility?   ☐ ☒ a
b. an electrocardiogram, x-ray or other diagnostic test, or an examination for checkup or other purpose?   ☐ ☒ b
c. advice about any treatment, surgery or diagnostic testing which was not completed?   ☐ ☒ c

8. Has any such person, for physical or mental health reasons, ever received disability benefits, compensation or pension; or been rejected for, or discharged from, military service?   ☐ ☒

9. Any history of angina, heart trouble or stroke before age 60 among natural parents, brothers or sisters of any such person?   ☒ ☐
If "Yes", give relationship, age at onset and subsequent history.

10. Has such person smoked any cigarettes in the past 12 months?   ☐ ☒

**11. GIVE FULL DETAILS FOR EACH "YES" ANSWER IN QUESTIONS 3-10**

| a. ues. o. | b. Reason — nature and severity of condition? (Include frequency, treatment, medication, surgery and results.) | c. Onset? Mo. Yr. | d. Recovery? Mo. Yr. | e. Names and Addresses of Physicians, Hospitals or Medical Facilities? |
|---|---|---|---|---|
| 9 | Father: Stroke prior to age 60 | | | |

(If more space needed, use another s

THE UNDERSIGNED DECLARE THAT, to the best of their knowledge and belief, all answers given in this Part II are correctly recorded, complete and tru

Dated at Carlisle Pa.   on 5-19   , 19 93     X Vince [signature]
I certify I have truly and accurately recorded all answers given to me.     N/A                          Signature of person examin

Witnessed by [signature] J.H. Conod REMTD
          Signature & title of person completing Questionnaire     Signature of Parent or Guardian, if person examined is under 14 years 6 mont

0885

# ⬤ AMENDMENT ⬤

**1E:**     MAZZAMUTO

**NUMBER:**    H3 236 167          **NOTE:**    This requirement must not be changed or modified in any way, but remain as made out by the Home Office

**APPLICATION DATED:**     JUNE 3, 1993

The **NEW YORK LIFE INSURANCE COMPANY** will please accept the following answers in lieu of the answers to the corresponding questions in my application for insurance dated as indicated above.

| QUESTION No. 7 (A) | DISABILITY INCOME | PRIMARY PLAN     Monthly Benefit $2000<br>SIS Rider $ _____,  COLB 5% ☒   71/2% ☐   IPO ___ UNITS<br>Elim. Per. (days)     30 ☐     60 ☐     90 ☐   180 ☒   365 ☐   730 ☐<br>Benefit Term:   2 years ☐   5 years ☐   To Age 65 ☒   To Age 67 ☐<br>                      Lifetime ☐<br>Premiums:  Level ☒   or Step Rate ☐ |
|---|---|---|
| | | SECONDARY PLAN   Monthly Benefit $ _____<br>Elim. Per. (days)     30 ☐     60 ☐     90 ☐   180 ☐   365 ☐   730 ☐<br>Benefit Term:  2 years ☐  5 years ☐   To Age 65 ☐   To Age 67 ☐  Lifetime ☐ |
| | | ARDI   Monthly Benefit $ _____<br>Elim. Per. (days)     30 ☐     60 ☐     90 ☐   180 ☐   365 ☐   730 ☐<br>Benefit Term:   To Age 65 ☐     To Age 67 ☐           Lifetime ☐ |
| | | RIDERS:  Residual ☒  Unrestricted Own Occ ☐     Other _____ |
| | | Exercise Automatic Benefit Increase options?     Yes ☒     No ☐ |
| | OVERHEAD EXPENSE | Max. Monthly Benefit $ _____     12 X ☐     24 X ☐<br>IPO ___ UNITS   Elim Per (days)   30 ☐   60 ☐   90 ☐ |
| | DISABILITY BUY-OUT | Buy-Out Benefit $ _____     IMB ___ UNITS<br>Elim Per (months)   12 ☐  24 ☐  36 ☐ |
| | KEY EMPLOYEE | Monthly Benefit $ _____     IPO ___ UNITS<br>Elim Per (days)   30 ☐  60 ☐  90 ☐ |
| QUESTION No. __3L__ | | OF PART I. SHOULD BE ANSWERED INTENDED TO BE YES. |

And I hereby agree that the above answers shall form a part of my said application for insurance, the agreement in which I hereby renew and confirm, and shall apply to any policy issued thereon.

Dated _____ _8/28_ , 19 _93_     _Vinyp W. _____ ___ Proposed Insured

Witness _Salvatore Torres_ _____ Applicant

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Issued to the Central Records Division from _CONSTITUTION_____ General Office

_____, 19 _____

B 1-89 Printed in U.S.A.

# NOTICE OF HEALTH INSURANCE CHANGE

CSO NAME *Cleveland* • FB • POLICY NO. *H3236167* • V • CSO SURNAME *MAZZAmuto* INSURED'S FIRST *Vincenzo* M.I. *V*

G.O. NAME *Constitution* AGENT *FeRR19ND* • DATE *080399* • NEW PREMIUM *2256.73* • SERIAL NUMBER *H21257*

ORIGINAL PAID TO DATE *.82899.* • CHANGED PAID TO DATE MO DAY YR • PREMIUM SUSPENSE CODE   AMOUNT • STATUS • EXCEPTION CODE • STOP ACTION CODE

CHANGE PENDING INDICATOR CODE MO DAY YR • SEE NOTE ● =

**NOTE:** ANY ITEM AFTER THE CHECK CHARACTER REQUIRES RESTATING OF THE FUTURE CHANGES AND MODE CHANGES, IF APPLICABLE.

• CZ *080399* • ED *082899* • DZ • KB • KC • KD • KE • NT

CHANGE REQUEST DATE | EFFECTIVE DATE OF CHANGE | DIV. CHANGE BASIS FROM YR. | COM. DAY FAM. STAT | OCCUPATION CLASS | OCCUPATION CODE | BENEFIT AMOUNT | ACTUAL TRANS C

## INSURED

DATE OF BIRTH MO DAY YR • EP | SEX STATUS • PB | PLANS COVERED | ATTAINED AGE • PC | EFFECTIVE DATE OF ADD OR DEL MO DAY YR • PD | AGENT ONE SHOT COMM CODE | SHARE • PA

## SPOUSE

DATE OF BIRTH MO DAY YR • EZ | SEX STATUS • PE | PLANS COVERED | ATTAINED AGE • PF | EFFECTIVE DATE OF ADD OR DEL MO DAY YR • PG | PREMIUM RATE • AB | METHOD OF COLLECTION • AC

## CHILDREN

TOTAL NUMBER OF CHILDREN COVERED • KH | • JL EFFECTIVE DATE OF CHILD'S ADD DEL

## FUTURE CHANGE DATA

TYPE | MO DATE YR | AMOUNT

FIRST • JA | DATE OF BIRTH MO DAY YR | SEX STATUS • JM | PLANS COVERED | • ER
SECOND • JB | • JN | • ES
THIRD • JC | • JP | • ET
FOURTH • JD | • JR | • EW | ADDITIONAL FUTURE CHG CODE • EX

## PREMIUM FROM EFFECTIVE DATE OF CHANGE

TOTAL *2256.73* S. Ann MODE

BASIC *674.9* INCL. BASIC EXTRA OF

1ST *157.40* INCL. RIDER *lolb* EXTRA OF *IPU*

2nd *419.20* INCL. RIDER *AmIo* EXTRA OF

3RD *740.25* INCL. RIDER *AmIo* EXTRA OF

## RIDERS

FIRST • LB *10 AMIo -65Ng* • LG *91* • LJ *37* • LP *44* • LR • LH • LC *6* • LE *1500*
AFTER PLAN AGE | INS FILES | STATE SOUS | INS ATTAINED AGE | SPOUSE'S ATTAINED AGE | NO CHILDREN COVERED | COM DAY FAM STAT | BENEFIT AMOUNT

• LD *2* • LF *082899* • LM | STATE CODE | • LN *022054* INS ATTAINED AGE | SPOUSE'S ATTAINED AGE | NO CHILDREN COVERED | • LS | • LK *74* • LL *1500*
DOC F | EFFECTIVE DATE OF RIDER | RIDER PLAN DATE | RIDER PLAN PREMIUM | AGENT CODE | SHARE | COMM LIMIT | STAND SUB SPECIAL CLASS | ADDITIONAL PLAN DATA

SECOND • MA • MB • MG • MJ • MP • MR • MH • MC • ME
• MD • MF • MM • MN • MS • MK • ML

INTERVAL PREMIUMS | DUE COMPANY FROM | TO | Pending health ins. change.
REFUND PREMIUM $ | DUE INSURED FROM | TO | *1596.96*

RIDER NO. *91-450* TO BE SIGNED BY INSURED. ORIGINAL TO BE RETURNED TO CENTRAL RECORDS DIVISION VGO. COPY TO BE ATTACHED TO POLICY.
RIDER NO. TO BE ATTACHED TO POLICY. ☐ COPY OF APPLICATION TO BE ATTACHED TO POLICY.
POLICY TO BE RETURNED FOR INDORSEMENT. ☐ IF TERMINATED CHILD DESIRES INDIVIDUAL POLICY, SECURE APP 62 501
PREMIUM NOTICES TO BE ADDRESSED TO

*8/28/99*

RIDER(S) EFFECTIVE
CHANGE

COMPLETED BY Pamela Ricketts

*Exercise  1500  Sch. opt*

SEX CLASS | EXPIRY YEAR | AMOUNT | APPLIES TO PLAN | SEX IMP CODE DES TYPE
1ST • NA | ▲ | • NB | • NC
IMPAIRMENT 2ND • ND | ▲ | • NE | • NF
EXCLUSION 3RD • NG | ▲ | • NH | • NJ
DATA 4TH • NK | • NL | • NM
RATING | HEIGHT FT IN | WEIGHT | BLOOD PRESSURE SYST DIAST | IMP EXCL
• NN | • NR | • NS | • NP >

COPY FOR CONTROLLER'S DEPARTMENT

# BENEFIT ADDITION RIDER

**Policy Number: H3 236 167**                **Insured: Vincenzo Mazzamuto**

The Benefit Addition rider and any rider(s) named below are added to this policy.  They are made part of the policy based on:

(1)  The application for them.

(2)  The payment of the amounts shown in (a) and (b) below:

      (a) $-0- payable as of **August 28, 1999**.  This is the effective date of this Benefit Addition Rider and the rider(s) named below.

      (b) **$2256.73** payable at **Semi-Annual** intervals, beginning as of **August 28, 1999**, subject to the terms of the policy.

| ADDITIONAL BENEFIT | PREMIUM AMOUNT |
|---|---|
| **Additional Monthly Optional** | **$740.25** |
| **income for $1500 added** | |

**Incontestability**  The Company can not contest the coverage under this rider after it has been in force during the lifetime of the insured for 2 years, except for a loss which starts before the end of those 2 years.

**Effective Date of this Rider**  This Benefit Addition Rider and any rider(s) named above will not take effect as of the policy date.  Instead, they will take effect on this rider's effective date, shown above. The additional benefits provided will not apply to any claim which results from an injury which occurs or a sickness which first manifests itself before the effective date of this rider.

**Change of Entire Contract Provision**  The Entire Contract provision of the policy is changed to include this statement.

"The attached copy of any application for additional benefits is part of the entire contract."

**NEW YORK LIFE INSURANCE COMPANY**

_PRESIDENT_

_Secretary_

Countersigned By _____
               Licensed Resident Agent if required by statue or regulation

91-450

 

**New York Life Insurance Company**

51 Madison Avenue, New York, NY 10010
A Mutual Company Founded in 1845

**Disability Income Policy**

Non-Cancellable and Guaranteed Renewable
to Age 65 - No Increase in Premium Rates

Conditionally Renewable From Age 65 For Life
Subject to Change in Premium Rates

This is a participating policy.



9132 PA

Exh B

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>        Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>        Defendants | JUDGE:<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

1.     Plaintiff Vincenzo "Vincent" Mazzamuto is an adult individual residing at 501 Limestone Road, Carlisle, Cumberland County, Pennsylvania.

2.     Defendant UNUM Provident Corporation (hereinafter "UNUM") is an insurance company with its principal place of business in Worcester, Massachusetts.

3.     Defendant Paul Revere Insurance Company (hereinafter "Paul Revere") is an insurance company with a principal place of business in Worcester, Massachusetts.

4.     Defendant New York Life Insurance Company (hereinafter "New York Life") is an insurance company with a principal place of business in New York, New York.

5.    It is believed by Plaintiff and, therefore, averred that Paul Revere is a subsidiary of UNUM and that Paul Revere is the administrator for New York Life.

6.    Jurisdiction is vested in this Court by virtue of 28 U.S.C. §1332.

7.    Venue in the Middle District of Pennsylvania is proper because Defendants are licensed to do business in the Commonwealth of Pennsylvania and regularly conduct business in the Middle District.

8.    Plaintiff Mr. Mazzamuto is a long-time policyholder with Defendant New York Life with disability insurance policies for his position as owner/president of Vinny's Restaurant dating back to the early 1990's.

9.    Specifically, Mr. Mazzamuto was and is an insured under disability policy number H3236167 issued by Defendant New York Life. A copy of policy number H3236167 is attached as **Exhibit A**.

10.    In exchange for Mr. Mazzamuto's annual premiums, the before mentioned policy provided for the payment of monthly benefits during times of disability when Mr. Mazzamuto was incapable of performing his duties as owner/president of Vinny's Pizzeria:

> **Total Disability**. From the start of a total disability until two years after the Income Starting Date, disability means the that the Insured can not do the substantial and material duties of his or her regular job and is not working at any other gainful job.
>
> The cause of the total disability must be an injury or a sickness.
>
>              * * *
>
> **Residual Disability**. Residual Disability under the terms of Plaintiff's Policy is satisfied when, during the elimination period, as a result of an injury or sickness, the insured:
>
> a.    is not able to do one or more of the substantial and material duties of his or her regular job; or

b.      directly and apart from any other cause, has a loss of income of at least 20%.

11.     In and around July 22, 2000, Plaintiff Vincent Mazzamuto suffered a heart attack.

12.     At that time, while being transported to the emergency room for physician care, Vincent Mazzamuto aggravated a pre-existing back injury.  Because of his resulting lower back pain, Mr. Mazzamuto is not able to bend or stand for prolonged periods of time.

13.     As a result of his heart attack, Mr. Mazzamuto underwent cardiac catheritization and cardiac rehabilitation.

14.     As a result of his aggravated lower back problems, Mr. Mazzamuto continues to receive continuous medical care and treatment.

15.     As a result of Mr. Mazzamuto's heart condition and subsequent lower back problems, as noted by his treating physician, Douglas J. Bower, M.D., in the Attending Physician's Statement submitted to Paul Revere/New York Life, Mr. Mazzamuto required disability because of his inability to cope with the stressful atmosphere of work, perform heavy lifting and withstand the long periods of standing required by Mr. Mazzamuto's profession as owner/president of Vinny's Restaurant.

16.     After providing verbal notice to UNUM/Paul Revere/New York Life of his disability claim, in or around November of 2000, Mr. Mazzamuto filed his disability claim with UNUM/Paul Revere/New York Life.

17.     In or around November of 2000, Mr. Mazzamuto's treating physician, Douglas J. Bower, M.D., submitted a letter to UNUM/Paul Revere/New York Life to clarify facts about Plaintiff's condition because the physician found the medical forms provided by Defendants to be insufficient to properly describe Mr. Mazzamuto's several medical problems.  Within his letter Dr. Bowers clearly describes Mr. Mazzamuto's heart condition and subsequent back

problems resulting from his July 22, 2000, admittance into the hospital. Dr. Bowers noted that "it is unlikely [Mr. Mazzamuto] will be able to return to work in the foreseeable future" as a result of his cardiac problems which manifest with the significant anxiety that he experiences while at work as well as the before mentioned back problems.

18.    Within his Statement of Occupational Duties and Employment form submitted by Mr. Mazzamuto to New York Life in or around November of 2000, he noted that his work activities require 4.5 hours of walking and standing. Furthermore, Mr. Mazzamuto noted in an Occupational Description form submitted to New York Life in or about January of 2001, that his job required him to stand most of the time which aggravated his loser back condition and that his job was stressful which caused chest pain and shortness of breath and aggravated his lower back condition.

19.    Approximately <u>six months</u> after Mr. Mazzamuto submitted his disability claim, and after several letters from his counsel in or about March of 2001, demanding a decision on the status of his claim, Defendant UNUM/Paul Revere/New York Life denied Mr. Mazzamuto's claim on or about April 20, 2001. During the six month interlude, Plaintiff was utterly confused and discouraged by the claims handling process in which delays were caused by 1) requests for Plaintiff to provide medical documentation and statements concerning both his back and heart conditions; 2) numerous phone interviews and discussions with claims handlers; and 3) requests by several of Defendant's different departments for various job description forms and monthly progress reports. Many of Defendants' requests during this six-month period resulted in Mr. Mazzamuto providing duplicative information.

20.    Since April 20, 2001, Defendants have persisted in their denial of Plaintiff's claim despite Defendants' receipt of the following information:

5/8/01 – Mr. Angino wrote a letter to Defendants summarizing Mr. Mazzamuto's claim and suggesting that Defendants would be guilty of bad faith if they did not pay the claim on the basis of the existing record.

7/12/01 – Dr. Schneider submitted report for Social Security Administration

4/16/02 – Defendants took Dr. Bowers' deposition

6/13/02 – Plaintiff filed first expert report

6/14/02 – Defendant New York Life agreed Mr. Mazzamuto was totally disabled as to his life insurance premium payments

6/27/02 – Defendant Dr. Steinman submitted an expert report without ever examining the patient opining from the records that Mr. Mazzamuto could do his work with accommodations

6/28/02 – Defendant Dr. Hostetter submitted a report to the effect that he could not express an opinion as to Mr. Mazzamuto's claim of disability from emotional causes

7/11/02 – Plaintiff filed a second expert report

7/25/02 – Mr. Mazzamuto was found to be totally disabled by the Social Security Administration

8/15/02 – Defendant New York Life reconfirmed that Mr. Mazzamuto was totally disabled and need not pay his life insurance premiums

8/22/02 – Plaintiff's counsel filed the first of various articles, depositions, opinions from courts to the effect that UNUM/Provident had been engaging in unfair insurance practices for a n umber of years with respect to disability specific occupation policies which UNUM/Provident had found to be unprofitable

10/29/02 – Plaintiff's counsel supplied Defendants' counsel with a copy of a "day in the life" film of Mr. Mazzamuto

11/25/02 – Plaintiff filed a Motion to Add Additional Authority and a Motion to Supplement the Record. Plaintiff's Motion to add additional authority referenced relevant cases against UNUM/Provident. Plaintiff's Motion to Supplement Record sought to add an additional report from Plaintiff's expert dated November 19, 2002, as well as two depositions of Dr. William Feist, a prior employee of Defendant UNUM/Provident.

12/5/02 – Plaintiff filed a Second Motion to Supplement the Record to add an additional report dated December 4, 2002, from Plaintiff's expert Gordon K. Rose

12/23/02 – Plaintiff's counsel filed an Affidavit

1/27/03 – Plaintiff's counsel responded to Defendants' Motion to Strike Affidavit and Plaintiff's Memo of Law opposing Defendants' Motion to Strike

2/12/03 – Plaintiff's counsel filed a Motion to Add Authority to Summary Judgment Motions

2/12/03 – Plaintiff's counsel supplied defense counsel with up-to-date medical records from Dr. Bower and the Pain Management Clinic

21.    Plaintiff contends that Defendants are guilty of bad faith for the way they handled Mr. Mazzamuto's claim from July, 2000 to the present, as well as engaging in a course of practice whereby (a) they utilized in-house employee reviewers, (b) the reviewers were motivated to deny large claims and particularly occupation specific disability policies, (c) Defendants taught their employees to reference Plaintiff's application job description rather than the specific requirements of his actual job, (d) Defendants specifically declined and/or failed to

consider Plaintiff's actual occupational activities, (e) Defendants failed to follow the company manual of seeking independent medical examinations, (f) Defendants declined Plaintiff's claim on the basis of in-house office review rather than an independent medical examination, (g) Defendants persisted in declining Plaintiff's claim despite a finding of total disability by the Social Security Administration with a more demanding definition of "total disability," as well as Defendant New York Life, with respect to Plaintiff's life insurance policy with a similar definition of "total disability" and in the face of court decisions and jury awards in similar cases finding Defendants guilty of bad faith and unfair insurance practice actions and after juries had imposed millions of dollars and Defendants were ordered to cease and desist in their unfair insurance practices

22.     Defendants have been advised and are well aware of all of the proposed amended facts and Plaintiff's legal position with respect to the additional Amended Complaint factual allegations and have had many months to prepare to defend same.

23.     As a direct and proximate result of Defendants' bad faith conduct, Mr. Mazzamuto has been damaged and is entitled to recover his damages, including the underlying disability claim, interest on his claim, attorney's fees and costs, and punitive damages pursuant to 42 Pa.C.S.A. §8371.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of $150,000, exclusive of interest and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

ANGINO & ROVNER, P.C.

_____
Richard C. Angino, Esquire
I.D. No. 07140
James DeCinti, Esquire
I.D. No. 77421
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Attorneys for Plaintiff

Dated:  2/19/03

Exh C

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>Defendants | JUDGE:<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

1.      Plaintiff Vincenzo "Vincent" Mazzamuto is an adult individual residing at 501 Limestone Road, Carlisle, Cumberland County, Pennsylvania.

2.      Defendant UNUM Provident Corporation (hereinafter "UNUM") is an insurance company with its principal place of business in Worcester, Massachusetts.

3.      Defendant Paul Revere Insurance Company (hereinafter "Paul Revere") is an insurance company with a principal place of business in Worcester, Massachusetts.

4.      Defendant New York Life Insurance Company (hereinafter "New York Life") is an insurance company with a principal place of business in New York, New York.

5.      It is believed by Plaintiff and, therefore, averred that Paul Revere is a subsidiary of UNUM and that Paul Revere is the administrator for New York Life.

6.      Jurisdiction is vested in this Court by virtue of 28 U.S.C. §1332.

7.      Venue in the Middle District of Pennsylvania is proper because Defendants are licensed to do business in the Commonwealth of Pennsylvania and regularly conduct business in the Middle District.

8.      Plaintiff Mr. Mazzamuto is a long-time policyholder with Defendant New York Life with disability insurance policies for his position as owner/president of Vinny's Restaurant dating back to the early 1990's.

9.      Specifically, Mr. Mazzamuto was and is an insured under disability policy number H3236167 issued by Defendant New York Life. A copy of policy number H3236167 is attached as **Exhibit A**.

10.     In exchange for Mr. Mazzamuto's annual premiums, the before mentioned policy provided for the payment of monthly benefits during times of disability when Mr. Mazzamuto was incapable of performing his duties as owner/president of Vinny's Pizzeria:

> **Total Disability**. From the start of a total disability until two years after the Income Starting Date, disability means the that the Insured can not do the substantial and material duties of his or her regular job and is not working at any other gainful job.
>
> The cause of the total disability must be an injury or a sickness.
>
> * * *
>
> **Residual Disability**. Residual Disability under the terms of Plaintiff's Policy is satisfied when, during the elimination period, as a result of an injury or sickness, the insured:

——————————a.      is not able to do one or more of the substantial and material ~~duties~~ duties of his or her regular job; or

b.      directly and apart from any other cause, has a loss of income of at least 20%.

11.     In and around July 22, 2000, Plaintiff Vincent Mazzamuto suffered a heart attack.

12.     At that time, while being transported to the emergency room for physician care, Vincent Mazzamuto aggravated a pre-existing back injury.  Because of his resulting lower back pain, Mr. Mazzamuto is not able to bend or stand for prolonged periods of time.

13.     As a result of his heart attack, Mr. Mazzamuto underwent cardiac catheritization and cardiac rehabilitation.

14.     As a result of his aggravated lower back problems, Mr. Mazzamuto continues to receive continuous medical care and treatment.

15.     As a result of Mr. Mazzamuto's heart condition and subsequent lower back problems, as noted by his treating physician, Douglas J. Bower, M.D., in the Attending Physician's Statement submitted to Paul Revere/New York Life, Mr. Mazzamuto required disability because of his inability to cope with the stressful atmosphere of work, perform heavy lifting and withstand the long periods of standing required by Mr. Mazzamuto's profession as owner/president of Vinny's Restaurant.

16.     After providing verbal notice to UNUM/Paul Revere/New York Life of his disability claim, in or around November of 2000, Mr. Mazzamuto filed his disability claim with UNUM/Paul Revere/New York Life.

17.     In or around November of 2000, Mr. Mazzamuto's treating physician, Douglas J. Bower, M.D., submitted a letter to UNUM/Paul Revere/New York Life to clarify facts about Plaintiff's condition because the physician found the medical forms provided by Defendants to be insufficient to properly describe Mr. Mazzamuto's several medical problems.  Within his letter Dr. Bowers clearly describes Mr. Mazzamuto's heart condition and subsequent back

problems resulting from his July 22, 2000, admittance into the hospital. Dr. Bowers noted that "it is unlikely [Mr. Mazzamuto] will be able to return to work in the foreseeable future" as a result of his cardiac problems which manifest with the significant anxiety that he experiences while at work as well as the before mentioned back problems.

18.     Within his Statement of Occupational Duties and Employment form submitted by Mr. Mazzamuto to New York Life in or around November of 2000, he noted that his work activities require 4.5 hours of walking and standing. Furthermore, Mr. Mazzamuto noted in an Occupational Description form submitted to New York Life in or about January of 2001, that his job required him to stand most of the time which aggravated his loser back condition and that his job was stressful which caused chest pain and shortness of breath and aggravated his lower back condition.

19.     Approximately <u>six months</u> after Mr. Mazzamuto submitted his disability claim, and after several letters from his counsel in or about  March of 2001, demanding a decision on the status of his claim, Defendant UNUM/Paul Revere/New York Life denied Mr. Mazzamuto's claim on or about April 20, 2001.  During the six month interlude, Plaintiff was utterly confused and discouraged by the claims handling process in which delays were caused by 1) requests for Plaintiff to provide medical documentation and statements concerning both his back and heart conditions; 2) numerous phone interviews and discussions with claims handlers; and 3) requests by several of Defendant's different departments for various job description forms and monthly progress reports.  Many of Defendants' requests during this six-month period resulted in Mr. Mazzamuto providing duplicative information.

20.     ~~Defendants' handling of Mr. Mazzamuto's claim for total disability was in bad~~ ~~faith because Defendants had no reasonable basis for denying Mr. Mazzamuto the benefits under~~

his disability policy, and Defendants knew of and/or recklessly disregarded its lack of a reasonable basis in denying Plaintiff's claim.Since April 20, 2001, Defendants have persisted in their denial of Plaintiff's claim despite Defendants' receipt of the following information:

> 5/8/01 – Mr. Angino wrote a letter to Defendants summarizing Mr. Mazzamuto's claim and suggesting that Defendants would be guilty of bad faith if they did not pay the claim on the basis of the existing record.

> 7/12/01 – Dr. Schneider submitted report for Social Security Administration

> 4/16/02 – Defendants took Dr. Bowers' deposition

> 6/13/02 – Plaintiff filed first expert report

> 6/14/02 – Defendant New York Life agreed Mr. Mazzamuto was totally disabled as to his life insurance premium payments

> 6/27/02 – Defendant Dr. Steinman submitted an expert report without ever examining the patient opining from the records that Mr. Mazzamuto could do his work with accommodations

> 6/28/02 – Defendant Dr. Hostetter submitted a report to the effect that he could not express an opinion as to Mr. Mazzamuto's claim of disability from emotional causes

> 7/11/02 – Plaintiff filed a second expert report

> 7/25/02 – Mr. Mazzamuto was found to be totally disabled by the Social Security Administration

> 8/15/02 – Defendant New York Life reconfirmed that Mr. Mazzamuto was totally disabled and need not pay his life insurance premiums

8/22/02 – Plaintiff's counsel filed the first of various articles, depositions, opinions from courts to the effect that UNUM/Provident had been engaging in unfair insurance practices for a n umber of years with respect to disability specific occupation policies which UNUM/Provident had found to be unprofitable

10/29/02 – Plaintiff's counsel supplied Defendants' counsel with a copy of a "day in the life" film of Mr. Mazzamuto

11/25/02 – Plaintiff filed a Motion to Add Additional Authority and a Motion to Supplement the Record. Plaintiff's Motion to add additional authority referenced relevant cases against UNUM/Provident. Plaintiff's Motion to Supplement Record sought to add an additional report from Plaintiff's expert dated November 19, 2002, as well as two depositions of Dr. William Feist, a prior employee of Defendant UNUM/Provident.

12/5/02 – Plaintiff filed a Second Motion to Supplement the Record to add an additional report dated December 4, 2002, from Plaintiff's expert Gordon K. Rose

12/23/02 – Plaintiff's counsel filed an Affidavit

1/27/03 – Plaintiff's counsel responded to Defendants' Motion to Strike Affidavit and Plaintiff's Memo of Law opposing Defendants' Motion to Strike

2/12/03 – Plaintiff's counsel filed a Motion to Add Authority to Summary Judgment Motions

2/12/03 – Plaintiff's counsel supplied defense counsel with up-to-date medical records from Dr. Bower and the Pain Management Clinic

21.    Plaintiff contends that Defendants are guilty of bad faith for the way they handled Mr. Mazzamuto's claim from July, 2000 to the present, as well as engaging in a course of

practice whereby (a) they utilized in-house employee reviewers, (b) the reviewers were motivated to deny large claims and particularly occupation specific disability policies, (c) Defendants taught their employees to reference Plaintiff's application job description rather than the specific requirements of his actual job, (d) Defendants specifically declined and/or failed to consider Plaintiff's actual occupational activities, (e) Defendants failed to follow the company manual of seeking independent medical examinations, (f) Defendants declined Plaintiff's claim on the basis of in-house office review rather than an independent medical examination, (g) Defendants persisted in declining Plaintiff's claim despite a finding of total disability by the Social Security Administration with a more demanding definition of "total disability," as well as Defendant New York Life, with respect to Plaintiff's life insurance policy with a similar definition of "total disability" and in the face of court decisions and jury awards in similar cases finding Defendants guilty of bad faith and unfair insurance practice actions and after juries had imposed millions of dollars and Defendants were ordered to cease and desist in their unfair insurance practices

22.    Defendants have been advised and are well aware of all of the proposed amended facts and Plaintiff's legal position with respect to the additional Amended Complaint factual allegations and have had many months to prepare to defend same.

23.    As a direct and proximate result of Defendants' bad faith conduct, Mr. Mazzamuto has been damaged and is entitled to recover his damages, including the underlying disability claim, interest on his claim, attorney's fees and costs, and punitive damages pursuant to 42 Pa.C.S.A. §8371.

WHEREFORE, Plaintiff demands judgment against Defendant in excess of $150,000, exclusive of interest and costs and in excess of any jurisdictional amount requiring compulsory arbitration.

ANGINO & ROVNER, P.C.

_____

Richard C. Angino, Esquire
I.D. No. 07140
James DeCinti, Esquire
I.D. No. 77421
4503 N. Front Street—
Harrisburg, PA  17110
(717) 238-6791
Attorneys for Plaintiff

Dated:

## CERTIFICATE OF SERVICE

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing

**PLAINTIFF'S PETITION TO FILE AMENDED COMPLAINT** was served by United

States first-class mail, postage prepaid, upon the following:


E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA  19603-0679
      Counsel for Paul Revere Life Insurance Company and New York Life Insurance
Company


Richard C. Angino

2/19/03