UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>     Plaintiff, | CIVIL ACTION – LAW |
|     v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>     Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN SUPPORT OF
HIS MOTION FOR RECONSIDERATION**

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff has filed a Complaint and recently has requested Your Court's permission to file

an Amended Complaint in support of his contractual claim for disability benefits, as well as his

extra-contractual claim for bad faith damages.  In support of his bad faith claim, Plaintiff has

supplied defense counsel with a number of expert reports from Gordon K. Rose, CLU, CHFC.

Exhibits B-H of Plaintiff's Motion.  Defendants previously filed a Motion in Limine seeking to

exclude <u>any</u> testimony <u>whatsoever</u> at trial from Gordon Rose.  Following an exchange of briefs,

Your Honorable Court on February 7, 2003, issued a Memorandum Opinion granting

Defendants' Motion in Limine as to <u>any</u> and <u>all</u> testimony <u>whatsoever</u> from Mr. Rose.  **Exhibit

A to this Brief.**

Your Court's Memorandum Opinion appropriately discussed the "gatekeeping" function

of trial courts to insure that all expert testimony heard by fact finders is both <u>relevant</u> and

<u>reliable</u>, pp. 2 and 3.

Your Memorandum Opinion addresses Mr. Rose's testimony commencing on page 8 and

continuing through page 10.  Your Memorandum Opinion does not find that Mr. Rose's

proffered testimony is not <u>relevant</u> and <u>reliable</u> or that Mr. Rose is not <u>qualified</u> to express an opinion as to disability insurance practices.

Your Court notes that Defendants "... argue[d] that Mr. Rose's proffered testimony does not '<u>fit</u>' the subject matter of the case, or '<u>assist the trier of fact</u>' in resolving disputed factual issues." p. 8. (emphasis supplied)

Your Court's Opinion went on to state:

> In order to assist the factfinder in resolving factual disputes present in the case, the subject matter of proposed expert testimony <u>must fall outside the jury's understanding</u>. (citing authority) ... Defendants contend that the average jury can comprehend bad faith insurance law without the aid of an expert witness. They further argue that Mr. Rose's testimony consists solely of impermissible legal conclusions.

**Exhibit A**, p. 8, emphasis supplied. [Not true, <u>see</u>, Rule 702.]

Your Court's Opinion concluded:

> Examination of Mr. Rose's expert reports persuades the court that exclusion of this evidence is proper (doc. 33, Exhibit B). <u>Much</u> of the report consists of <u>mere recitation of the facts</u> of the case or the <u>reports</u> of other witnesses, which plaintiff <u>can present to the factfinder without the aid of an expert witness</u>. *Id.* In addition, this report was <u>largely conclusory</u>. (citing authority)

**Exhibit A**, p. 9, emphasis supplied. [Not true, <u>see</u>, Motion and Brief.]

Your Court did not in any way reference the portions of Mr. Rose's reports that were "mere recitation of the facts," "reports of other witnesses," or explain how insurance practices could be explained by other witnesses.

Because Plaintiff's counsel is of the opinion that Mr. Rose's testimony will assist the factfinder at trial and Mr. Rose's proffered testimony "fit[s]" the subject matter of the case, Plaintiff filed on February 18, 2003, a Motion for Reconsideration. This Brief is being filed in support of that Motion.

## II.    ISSUES

Should Not The Court Reconsider Its February 7, 2003, Memorandum Order Excluding All Testimony of Mr. Rose And Instead Permit Mr. Rose To Testify In Areas Where His Expert Testimony May Be Of Assistance To The Jury To Understand the Evidence Or To Determine A Fact In Issue?

## III.    ARGUMENT

Contrary to Your Court's statement that "proposed expert testimony must fall outside the jury's understanding," (**Exhibit A**, p. 8), Fed.R.Evid. 702 TESTIMONY BY EXPERTS states:

If scientific, technical, or other specialized knowledge will <u>assist the trier of facts to understand the evidence or to determine a fact in issue</u>, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise,   (emphasis supplied)

33A Fed Proc, L Ed Section 80:203, *et seq.*, Witnesses, B. Testimony by Experts discusses F.R.E. 702 commencing at page 258.

Section 80:212 discusses "expert testimony as assisting trier of fact."

If the witness qualifies as an expert, the proponent must still show that the scientific, technical, or other specialized knowledge to which the expert is privy will <u>assist the trier of fact to understand the evidence or to determine a fact in issue</u>.  In determining whether such evidence will assist the jury, the District Court must make a <u>common-sense inquiry</u> into whether <u>the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute</u>.  This requirement is satisfied --

-- where the testimony is closely connected to such <u>specialized knowledge</u> as to lie beyond the <u>knowledge and experience of a lay jury, such as trade and business usages</u>...

-- where such specialized knowledge <u>adds precision</u> to the jury's conclusions about subjects lying within common experience, ...

* * *

Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.  A trial court should exclude an expert opinion only if it is so fundamentally unsupportable that it cannot help the factfinder.

N O T E

§80:212, pp. 269-273, emphasis supplied.

There is also an ALR Annotation, Debra T. Landis, Annotation: *When Will Expert Testimony 'Assist Trier Of Fact' So As To Be Admissible At Federal Trial Under Rule 702 of Federal Rules of Evidence*, 75 ALR Fed., p. 461, *et seq.* (1985).

§2 references Advisory Committee's Note (see, 28 USCS Appendix, Federal Rules of Evidence, Appendix 6, Rule 702):

> … the test for determining whether expert testimony would assist the trier of fact is whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having specialized understanding of the subject, and the fields of knowledge that may be drawn on extend to all "specialized" knowledge.

75 ALR Fed., p. 468, emphasis supplied.

Section 4 of 75 ALR Fed. discusses *Customs, practices, procedures, or specialized terminology of particular business, industry, or profession.*  p. 473, *et seq.*  Under Section 4, specific cases are referenced dealing with accounting practices, security and exchange practices, bank customs, economic reports, film distribution.  The Third Circuit case of First Nat'l State Bank v. Reliance Electric Co., 668 F.2d 725 (3d Cir. N.J. 1981) is cited for affirming the trial judge's admission of expert testimony to inform the jury of bank customs whereas In Re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238 (3d Cir. Pa. 1983) reversed the trial court for failing to permit expert opinions of economists with respect to an alleged conspiracy to drive all American manufacturers of television receivers out of business.

There is no question that the practice of insurance is a scientific, technical, or other specialized area, that Mr. Rose is eminently qualified to speak on the scientific, technical, or otherwise specialized area of insurance practice, that lay jurors would not be "qualified to determine intelligently and to the best possible degree without enlightenment" good or bad insurance practices, that Mr. Rose can "assist lay jurors or enlighten or add precision" to the

factual issues as to good and bad insurance practices, and that if Mr. Rose is not permitted to testify, Plaintiff will be limited in presenting his case to the jury.

Mr. Rose's report of June 13, 2002 (Exhibit B to Plaintiff's Motion for Reconsideration) references the materials which Mr. Rose has reviewed.

Mr. Rose states that he reviewed Mr. Mazzamuto's New York Life disability income policy. Undoubtedly, Mr. Rose could assist lay individuals in understanding the content, terms, and conditions of the New York Life disability income policy, including its definition of total disability and how that definition compares to the definition of total disability in Mr. Mazzamuto's New York Life policy, as well as the definition of total disability utilized by the Social Security Administration.

Mr. Rose states that he reviewed the application for Mr. Mazzamuto's policy and the New York Life underwriting file. Again, can one candidly assert that Mr. Rose would be of no assistance in explaining what an application is, as well as what is an underwriting file and the relevance and importance or lack of importance between the initial application and the later disability income policy that was issued?

How many members of the future lay jury are going to be knowledgeable as to a claim file and to be able to determine the portions of Mr. Mazzamuto's 1997 claim file that is relevant to Mr. Mazzamuto's 2000 claim?

Again, who other than Mr. Rose is there to put into a bad faith insurance context  the procedure notes of 15 visits to Dr. Ted Kosenske from July 10, 1996, to October 18, 2000; the communications commencing with September 28, 2000, and May 23, 2001; the Carlisle Hospital admission records of July 22, 2000, or the relevant aspects of the deposition of Melissa Ann Mulry, Dr. Clarke, John Fogarty, Dr. Douglas Bower, and Dr. Taylor's file?  How does

Plaintiff's counsel get the relevant portions of those depositions before the jury in a good faith/bad faith insurance context without an expert?

At trial, Mr. Rose would be expected to testify for hours and potentially an entire day as to items 1-29 explaining to the jury the relevance of each and every one of these 29 items as to a good faith or bad faith practice. Who other than Mr. Rose is (1) to tell the jury the responsibility of an insurance company to timely respond and what is a timely response to Mr. Mazzamuto's claim notices of September 28 and 29, 2000; (2) to testify as to the unnecessary delay from September 28 and 29, 2000, to UNUM's action log of January 4, 2001; (3) to testify as to the appropriateness or inappropriateness of the in-house review of Jack Fogarty on February 2, 2001; (4) to testify as to the responsibility and duty of an insurance company to properly investigate a claim; (5) to say what a proper investigation would entail; (6) to discuss Defendants' office manual; (7) , to discuss the need for an independent medical examination; (8) and the need for a thorough investigation as to what is required by Mr. Mazzamuto's job?

Mr. Rose's report on page 2 summarizes the history that he gleaned from hours and days of reviewing and analyzing the 29 referenced documents. Will not his summary and the discussion of the 29 referenced documents potentially assist the jury?

Mr. Rose in the first full paragraph of page 2 of his report discusses items 1-3 concerning Mr. Mazzamuto's 1997 claims file, how it was handled by Defendants, the bad faith implications of New York Life's handling of the 1997 claim, and the relevancy to Mr. Mazzamuto's 2000 claim.

It is true that the factual context of page 2 of Mr. Rose's report could be communicated to a jury and undoubtedly will be communicated to a jury through testimony of Dr. Bower, but that is not a basis for excluding Mr. Rose's discussion of Dr. Bower's letters and records in an insurance practice context.

Certainly the content of paragraph 3 of page 2 of Mr. Rose's report dealing with the transfer of the New York Life disability insurance business to Paul Revere and the ensuing mergers of companies and the confusion that resulted can be best communicated by Mr. Rose. Certainly Mr. Rose's testimony will assist the fact finders as to the delay from September 28 until January 4, 2001, when UNUM finally set up the "action log." How many jurors know what an "action log" is? Who other than Mr. Rose is to testify that "by this time [Mr. Mazzamuto] should have been receiving benefits from his policy." Is a jury expected to know what is or is not a reasonable amount of time to respond?

As to the fourth paragraph of page 2 of Mr. Rose's report, who other than Mr. Rose is to provide (1) the Plaintiff's version of a 90-day elimination period; (2) when benefits began to accrue or should have begun to accrue; (3) notice provisions; (4) covered losses, etc.

The first paragraph of page 3 of Mr. Rose's report notes that Defendants, as of January 15, 2001, were requesting medical records, whereas Dr. Bower had already written to them on November 3, 2000, and given a complete description of Mr. Mazzamuto's condition. Who other than Mr. Rose is to testify that this is good or bad faith practice? Who other than Mr. Rose is to testify as to the importance of Dr. Bower's statement "At the present time he is not able to do the work required in running his restaurant because he cannot stand for prolonged periods of time, has difficulty bending, and is restricted from heavy lifting. It is unlikely that he will be able to return to work in the foreseeable future." Who other than Mr. Rose is to state such language would indicate that the disability was due to the back problem rather than the heart condition and that Defendants were engaging in bad insurance practices in focusing on Mr. Mazzamuto's heart condition in denying Mr. Mazzamuto's claim?

The second full paragraph of page 3 of Mr. Rose's report discusses an "occupational description" form. Again, with more than 50 years of education, training, experience, and

teaching individuals in the insurance field, wouldn't Mr. Rose be helpful in explaining what an "occupational description" form is, how important it is, and the part that it played in Plaintiff's contention that Defendants are guilty of unfair insurance practices and bad faith.

Paragraph 3 of page 3 discusses UNUM's requesting Carlisle Hospital records, again, after they had long since had Dr. Bower's report of November 3, 2000. Who other than Mr. Rose is to discuss what a rehabilitation review is and the inappropriateness of the review being conducted by in-house employee Jack Fogarty? Who other than Mr. Rose is to discuss the fact that Mr. Fogarty relied upon Mr. Mazzamuto's job description in his application rather than his actual job activities and that Mr. Fogarty utilized Mr. Mazzamuto's heart attack rather than his back condition in denying his claim? Mr. Rose states that in his 50+ years of experience he has heard many excuses for delay "the excuse for delay contained in the second paragraph sets a new low standard for excuses." How is a jury to know that Defendants' excuse was not appropriate? How is a jury to understand what was meant when Mr. Mazzamuto was told that his "claim file is still with our medical department?" What about the appropriateness or inappropriateness good faith/bad faith, fair/unfair insurance practices of stating that "the physician who will be reviewing Mr. Mazzamuto's claim file works on a part-time schedule?" What about this occurring five months after the time when benefits should have been paid? Who other than Mr. Rose is in the better position to state when benefits should have been paid? <u>Who is to counter all of Defendants' experts on insurance law</u>?

On page 4, Mr. Rose states that Mr. Mazzamuto's claim should have been approved as early as November, 2000 with back payments plus interest to October, 2000. If Mr. Rose is not permitted to testify, who is going to tell the jury this fact or express this opinion? Certainly, Defendants are not going to admit to same.

Mr. Rose on page 4 discusses and reaches conclusions from the documents he reviewed and from his 50+ years of experience. Who is to say that Mr. Rose's testimony in this regard would not be helpful to assist the jury as to good faith or bad faith insurance practices?

Who other than Mr. Rose is going to state and understand that Mr. Mazzamuto's notice of claim had been sent during the elimination period? What is a "notice of claim?" What is the "elimination period?"

Numbered paragraph 3 on page 4 clearly constitutes matters of insurance contract interpretation where Mr. Rose's testimony will assist the fact finder. What does it mean when a policy says "the insured can not do the substantial and material duties of her or her regular job?" Why is such a definition "one of the more liberal definitions of disability found in the disability insurance business?" Why should such a disability definition be used? Mr. Rose states that it was used to aid in the sale of disability insurance. What is the difference between "job" or "occupation?" What is "his or her regular job?" What are "substantial and material duties?" Did Mr. Mazzamuto's job require "standing a substantial part of the time?"

Numbered paragraph 4 on page 4 states clearly Defendants' responsibility to get another medical opinion if they were unwilling to take the word of Mr. Mazzamuto and his doctor. Who other than Mr. Rose is going to explain good faith/bad faith, appropriate/inappropriate insurance practices dealing with independent medical examinations? How important are they and the fact that Defendants' manual suggests same?

As to numbered paragraph 5 on page 4, who other than Mr. Rose is going to explain the relevance or significance of the actions of the Social Security Administration in terms of Defendants' acceptance or denial of Mr. Mazzamuto's claim?

In the balance of page 4, Mr. Rose discusses in an insurance context the delay in investigating Mr. Mazzamuto's condition, the inadequacy of the investigation, and the

inappropriateness of Defendants' challenging Mr. Mazzamuto's claim on the basis of an occupational form and totally and completely ignoring Mr. Mazzamuto's statement that "My job requires me to stand most of the time." Except through Mr. Rose, how is the standard of care to be conveyed to the jury?

On page 5, 4a-e, Mr. Rose, relying upon 29 sources of information and 50+ years of experience, discusses subjects such as "residual disability" and "total disability," the appropriateness or inappropriateness of relying upon occupation in terms of titles rather than actual required activity of standing most of the time, spending considerable time discussing Mr. Mazzamuto's heart condition which was not an issue, the ignoring of Dr. Bower's and Mr. Mazzamuto's statement.

In 1997, Mr. Mazzamuto made a claim and New York Life paid the claim based upon his back condition interfering with his ability to do his job. Mr. Mazzamuto's back condition was worse in 2000 and yet UNUM denied the claim. Certainly Mr. Rose should be able to discuss with the jury the appropriateness or inappropriateness, the logic or illogic, the good faith/bad faith of Defendants' actions.

Mr. Rose went on to submit additional reports (Exhibits C-H to Plaintiff's Motion for Reconsideration). These reports all discuss insurance issues, good faith/bad faith practices, fair and unfair insurance practices, explanations and discussions of total disability, the logic of New York Life's finding Mr. Mazzamuto totally disabled as to his life insurance policy and yet declaring that Mr. Mazzamuto was not disabled as to a more liberal disability definition policy. Mr. Rose discusses the inaccuracy of Ms. Sindelar's letter of June 14, 2002, and a clause called "liberalization" (Exhibit C to Plaintiff's Motion for Reconsideration. Also see, Exhibit D). Would Mr. Rose's discussion as appears in the June 21, 2002, report be helpful to a jury? Also see, other reports, particularly Exhibits F, G and H dealing with the pattern of unfair insurance

practices pertaining to occupation specific disability policies which were extensively marketed and which have turned out to be unprofitable and Defendants' practices and procedures in attempting to get out of claims made under these policies. Who other than Mr. Rose with his 50+ years of experience is in a better position to explain to the jury what these policies are, how they were marketed, why they turned out to be unprofitable, what has happened as a result, and explaining to the jury that Mr. Mazzamuto's policy is similar to others where there have been court decisions including the issuance of a cease and desist order?

It is clear from the above, as well as from Plaintiff's Motion for Reconsideration, that the Court is in error in stating:

> Much of the report consists of a mere recitation of the facts of the case or the reports of other witnesses, which plaintiff can present to the factfinder without the aid of an expert witness.

Your Court's Memorandum Opinion relied upon three cases: <u>Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co.</u>, 29 Fed. Appx. 823, 826 (3d Cir. 2002); <u>Bergman v. United Servs. Auto. Ass'n</u>, 742 A.2d 1101, 1107 (Pa. Super. 1999); and <u>Datillo v. State Farm Ins. Co.</u>, 1997 WL 644076 at 5 (E.D. Pa. 1997). Your Memorandum Opinion in a footnote referenced two contrary cases: <u>Kraeger and Kraeger v. Nationwide Mutual Ins. Co.</u>, 1997 U.S. Dist. LEXIS 2726 at *2-3 (E.D. Pa. 1997) and <u>Bonenberger v. Nationwide Mutual Ins. Co.</u>, 791 A.2d 378, 382 (Pa. Super. 2002). You failed to discuss any of the five cases.

<u>Dinner</u> involved an appeal from a jury verdict finding that defendant did not act in bad faith. Plaintiff argued that the District Court erred in precluding her expert witness from testifying about the applicability of the Unfair Insurance Practices Act or the regulations promulgated thereunder and the Unfair Claims Settlement Practices Regulations, 29 Fed. Appx. 823, at 824. It is clear that plaintiff was permitted to call an expert, but the expert was precluded from testifying <u>only</u> as to specific legislation and regulation.

The issue in <u>Bergman</u> is specifically stated as "whether expert testimony should be required in cases involving allegations of bad faith in the context of insurance practices." 742 A.2d 1101, at 1102, 1106, 1107. The Superior Court panel stated:

> Nevertheless, we hold that expert testimony is <u>not required</u> as a *per se* rule under Pennsylvania law in bad faith actions. In reaching this decision, we are persuaded by the rationale of the United States District Court for the Eastern District of Pennsylvania in *Dattilo v. State Farm Ins. Co.*, …

The Superior Court panel specifically referenced the factual circumstances supporting the denial of expert testimony in this particular case:

> Here, Appellant's case proceeded to a bench trial. After a thorough review of Dr. Gottheimer's report and qualifications, the trial court made several observations. First, the court noted that Dr. Gottheimer's qualifications to testify as an expert on the issue of bad faith were questionable. …

742 A.2d at 1107, 1108.

The third case reference by Your Court's Memorandum Opinion, <u>Dattilo</u>, involved the plaintiff's attempt to avoid summary judgment by offering a so-called expert:

> Finally, plaintiffs offered the testimony of an "expert," who without even looking at State Farm's file, was prepared to testify that in his opinion State Farm was acting in bad faith in handling the Dattilos' UIM claim. No reason is given except that State Farm had made "no fair offer," but there is not a clue as to what, in his judgment, a fair offer would have been.

<u>Dattilo</u>, 1997 U.S. Dist. LEXIS 16188, p. 11. Judge McGlynn goes on to assert in dicta that

> Bad faith is a legal concept of general application which does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact. The witness' opinion is nothing more than subjective speculation unsupported by any scientific or specialized knowledge."

<u>Dattilo</u>, 1997 U.S. Dist. LEXIS 16188, p. 12.

It is patently clear from Plaintiff's earlier discussion in this brief that Mr. Rose's proffered testimony would be something "more than subjective speculation unsupported by any scientific or specialized knowledge."

The three decisions referenced by Your Honorable Court do not support Your preclusion of any and all testimony from Mr. Rose's expert testimony. There are literally dozens of cases, many of which originated in the Middle District and were authored by Your Honorable Court's colleagues, which support Plaintiff's position.

The clearest case in this regard is Syracuse v. Northbrook Property & Casualty Insurance Co. 216 F.3d 1077 (3d Cir. 2000). See, Plaintiff's Motion for Reconsideration and Exhibit I.

The oft cited case of Klinger v. State Farm Mutual Automobile Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997) also originated in Plaintiff's counsel's office. Expert testimony was permitted in that case. President Judge Vanaskie in Krisa v. The Equitable Life Assurance Society, 113 F.Supp.2d 694 (M.D. Pa. 2000) discusses the standard for assessing insurer bad faith with respect to a disability insurance policy. 113 F.Supp.2d at 702, et seq. Judge Vanaskie specifically discusses the factual context of plaintiff's proposed expert's report. 113 F.Supp.2d at 703, 704.

Bonenberger v. Nationwide Mut. Ins. Co., 791 A.2d 378 (Pa. Super. 2002) is a Superior Court case and in a diversity case Your Court must follow the state appellate courts. Nationwide in the Bonenberger case contended that the earlier Superior Court case of Bergman v. U.S.A.A., supra, held that expert testimony in bad faith cases was not necessary and, therefore, not admissible. The Superior Court disagreed:

> Contrary to Nationwide's characterization of the decision, Bergman holds that the admission or exclusion of expert testimony in actions on insurance policies based on a claim of bad faith remain a matter within the sound discretion of the trial court. To suggest that *Bergman* holds that expert testimony is not admissible in a bad faith claim is a misstatement of the law.
>
> In *Bergman* this court considered whether "expert testimony should be required in bad faith actions." *Id.* at 1106 (emphasis added.) It noted that there is a growing trend among states in favor of holding that expert testimony is not mandated in all bad faith cases. *Id.*. It further noted that other courts have held that expert testimony, although not required, is admissible where the trial court deems it relevant.

791 A.2d 378, at 382. <u>Also see</u>, <u>O'Donnell v. Allstate Ins. Co.</u>, 734 A.2d 901, 907-908 (Pa. Super. 1999):

> Preliminarily we note that the existence of many "red flags" as identified and explained by Allstate's expert …

<u>Also see</u>, <u>The Birth Center v. St. Paul Cos.</u>, 727 A.2d 1144, 1166 (Pa. Super, 1999). <u>Also see</u>, the Third Circuit opinion of <u>McNally v. Nationwide Insurance Company</u>, 815 F.2d 254, 258 (3d Cir. 1987) where both parties at trial called expert witnesses to give their opinion on whether Nationwide acted unreasonably or in bad faith by failing to settle or implead their limits into court by a specific deadline.

Judge Huyett of the Eastern District in <u>Kraeger v. Nationwide Mut. Ins. Co.</u>, 1997 U.S. Dist. LEXIS 2726 (E.D. Pa. 1997) at 3 referencing the Third Circuit opinion in <u>United States v. Velasquez</u>, 64 F.3d 844 (3d Cir. 1995) held:

> [A] broad range of knowledge, skills and training qualify an expert as such…. eschewed imposing overly rigorous requirements of expertise.

Judge Huyett held that insurance knowledge is "specialized knowledge." Judge Huyett denied defendant's motion in limine regarding the testimony of plaintiff's expert stating "Defendant may make appropriate objections at trial concerning the testimony of this expert."

Judge Joyner of the Eastern District in <u>Thomson v. Prudential Property and Casualty Ins. Co.</u>, 1992 U.S. Dist. LEXIS 12627 (E.D. Pa. 1992) denied defendant's motion in limine pertaining to expert testimony as premature. The Court's attention is also directed to the following additional cases: <u>Wood v. Allstate Ins. Co.</u>, 1997 U.S. Dist. LEXIS 14663, p. 4 (E.D. Pa. 1997). <u>Also see</u>, <u>Greco v. Paul Revere Life Ins. Co.</u>, 1999 U.S. Dist. LEXIS 110 (E.D. Pa. 1999); <u>Kilmer v. he Connecticut Indemnity Co.</u>, 189 F.Supp.2d 237 (2002); <u>Kosierkowski v. Allstate Insurance Co.</u>, 51 F.Supp.2d 583 (E.D. Pa. 1999), particularly 5. *Pattern and Practice* and C. Plaintiff's Expert Opinion. <u>Id</u>. at 594, 595, 596. <u>Greater New York Mut. Ins. Co. v.</u>

North River Ins. Co., 85 F.3d 1088, 1093, 1094 (3d Cir. 1996); p. 1093.  General Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 384 (3d Cir. 1992); Williams v. Hartford Cas. Ins. Co., 83 F.Supp.2d 567, 573 (E.D. Pa. 2000).

The Court's attention is particularly directed to the Luzerne County case of Hollock v. Erie Ins. Exch., 54 Pa. D. & C. 4th 449 (2002) where Judge Olsewski meticulously goes through 543 paragraphs of findings of fact and conclusions of law in reaching his verdict.  This opinion discusses in detail all of the factual and legal issues pertaining to a bad faith insurance claim. Also see, the Montgomery case of Lefever v. Penn Treaty Life Ins. Co., No. 95-20991 (CP Montgomery 2000).  **Exhibit B**.

Although it is often stated that the admission or exclusion of expert testimony lies within the discretion of the trial judge and trial court's opinion will not be reversed unless abused, the basis for that legal privilege presupposes that the trial judge has better access to the facts which the trial judge does not have in the instant case.

## IV.    CONCLUSION

It is clear that the trial court erred in precluding any and all testimony from Mr. Rose. The Court should reconsider its prior Opinion and Order, rescind same and replace it with an order permitting Mr. Rose to testify subject to objections at trial.

Respectfully submitted,

ANGINO & ROVNER, P.C.

Richard C. Angino, Esquire
I.D. No. 07140
Joan L. Stehulak, Esquire
I.D. No. 29496
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Attorney for Plaintiff

Date: 2/21/03

Exhibit #100
2/7/03
WM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,

        Plaintiff

           v.

UNUM PROVIDENT CORPORATION;
PAUL REVERE LIFE INSURANCE
COMPANY; NEW YORK LIFE
INSURANCE COMPANY,

        Defendants

CASE NO. 1:01-CV-1157

(Judge Conner)

FILED
HARRISBURG, PA

FEB 07 2003

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## MEMORANDUM

Before the court are the following motions: 1) defendants' motion in limine concerning plaintiff's proposed experts (Doc. 18); 2) plaintiff's motion to extend deadline for filing expert report (Doc. 31); 3) plaintiff's motion to permit supplemental expert report (Doc. 59); 4) plaintiff's motion to bring to the court's attention recently filed affidavit (Doc. 69); 5) plaintiff's motion to supplement the record (Doc. 76); 6) plaintiff's motion to add additional authority in support of his motion for summary judgment and opposing authority to defendants' motion for summary judgment (Doc. 77); and 7) plaintiff's second motion to supplement the record (Doc. 78). The matters are ripe for disposition.

**I.      Background**

This case arises from defendants UNUM Provident Corporation, Paul Revere Life Insurance Company, and New York Life Insurance Company's denial of plaintiff, Vincenzo Mazzamuto's ("Mazzamuto") claim for long term disability benefits based on back and psychiatric conditions. Plaintiff filed the instant complaint on June 26, 2001. (Doc. 1). In his complaint, Mazzamuto alleges common

law breach of contract and statutory bad faith pursuant to 42 Pa. C.S.A. § 8371. (Doc. 1).

**II.    Defendants' Motion in Limine**

    **A.    Background**

        Plaintiff seeks to admit the expert testimony of Dr. Douglas Bower and Mr. Gordon K. Rose, CLU. Dr. Bower serves as Mazzamuto's treating physician, and intends to testify that plaintiff's physical and psychiatric conditions render him "disabled" as defined by defendants' insurance policy. (Doc. 22, Ex. G). In addition, Mazzamuto proffers the testimony of Mr. Rose, a purported expert in insurance claims practices. Mr. Rose plans to opine that defendants' actions during the claims investigation process constitute statutory bad faith. (Doc. 33, Ex. B).

    **B.    Discussion**

        **1. Applicable Law**

        Trial courts must perform a "gatekeeping" function in order to ensure that all expert testimony heard by the factfinder is both relevant and reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993); Oddi v. Ford Motor Co., 234 F.3d 136, 144 (3d Cir. 2000); Hamilton v. Emerson Electric Co., 133 F.Supp. 2d 360, 366 (M.D.Pa. 2001). Federal Rule of Evidence 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . . " FED. R. EVID. 702. This requirement applies to traditional scientific experts like Dr. Bower, and experts in technical and other

specialized knowledge, like Mr. Rose. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

A proposed expert must satisfy three requirements before the court permits his or her testimony to be heard by the factfinder. First, the court must deem the expert "qualified." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000); Oddi, 234 F.3d at 145; In re Unisys Savings Plan Litigation, 173 F.3d 145, 155 (3d Cir. 1999). Second, the evidence must be based on "reliable" methodology. Id. Finally, the proposed expert testimony must "fit" with the subject matter of the case, or "assist the trier of fact" in resolving disputed factual issues. Id. Appellate courts review a trial court's decision to admit or exclude expert testimony for abuse of discretion. Kumho Tire, 526 U.S. at 152, General Electric Co. v. Joiner, 522 U.S. 136, 143 (1997); Elcock, 233 F.3d at 740-41.

### 2. Dr. Bower's Testimony

Defendants argue that Dr. Bower is not qualified to opine that Mazzamuto is disabled from his back and psychiatric conditions. (Doc. 19). Dr. Bower is board certified in internal medicine, and identifies himself as a general internist, which is "basically the non-surgical adult medical practice." (Doc. 22, Ex. G, p. 4). He concedes that he is not board certified in psychiatry nor an expert in back conditions. Id. at pp. 4-5. Plaintiff argues that Dr. Bower's experience treating patients suffering from back conditions and psychiatric problems, combined with the eight years he served as plaintiff's primary treating physician, qualify him to render an opinion on plaintiff's condition. (Doc. 33).

Before a trial court permits a witness to testify as an expert, that witness must be qualified by virtue of specialized expertise. Elcock, 233 F.3d at 741; Hamilton, 133 F.Supp. 2d at 367-68; Burton v. Danek Medical, Inc., 1999 WL 118020 at

3

*3 (E.D.Pa. 1999). The basis of this specialized knowledge can be formal education, practical experience, or technical skill. See Elcock, 233 F.3d at 741; Aloe Coal Co. v. Clark Equipment Co., 816 F.2d 110, 114 (3d Cir. 1987); Hamilton, 133 F.Supp. 2d at 367-68. Courts are required to construe the requirements of Rule 702 liberally, however an expert witness must possess, at minimum, skill or knowledge beyond the understanding of the average layperson. See Elcock, 233 F.3d at 741; Aloe Coal, 816 F.2d at 114; Hamilton, 133 F.Supp. 2d at 368.

Defendants contend that Dr. Bower, a general practitioner, does not possess sufficient knowledge of mental illnesses or back disorders to render an opinion on Mazzamuto's disability. (Doc. 19). A court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." In re Diet Drugs Products Liability Litigation, 2000 U.S. Dist. LEXIS 9661 at *9 (E.D.Pa. 2000). Dr. Bower testifies that he regularly treats individuals with psychiatric and chronic back conditions. (Doc. 22, Ex. G, pp. 4, 36). The court concludes that Dr. Bower's practical experience as an internist, combined with his lengthy treatment relationship with plaintiff places Mazzamuto's back and psychiatric conditions squarely within his area of expertise. See id.

In an analogous case, the United States Court of Appeals for the Third Circuit allowed expert testimony from a general practitioner on a specific health condition. Holbrook v. Lykes Bros. Steamship Co., Inc., 80 F.3d 777, 783 (3d Cir. 1996). In Holbrook, the court permitted the plaintiff's treating physician, who specialized in internal medicine, to testify as an expert concerning a cancer diagnosis. Id. The court qualified this expert despite the fact that he was not a pathologist, oncologist, or cancer specialist. Id. See also Kosberg v. Washington Hospital Center, Inc., 394 F.2d 947, 949 (D.C. Cir. 1968) ("The fact that an internist is not a specialist in

4

psychiatry or neurology does not preclude him from testifying about the physical effects of electroshock therapy. . ."). The liberal qualification rules of the Third Circuit do not require an expert to be the best qualified, or to specialize in the most appropriate field. See Hamilton, 133 F.Supp.2d at 368; Holbrook, 80 F.3d at 782; In re Diet Drugs, 2000 U.S. Dist. LEXIS 9661 at *18. Therefore, the court will deem Dr. Bower qualified to testify as an expert about Mazzamuto's psychiatric and back conditions.

Defendants' psychiatric expert, Dr. Abram Hostetter, contests the reliability of Dr. Bower's methodology, arguing that Dr. Bower never conducted an adequate mental status examination. (Doc. 22, Ex. K). Without this exam, Dr. Hostetter was unable to form an opinion about Mazzamuto's alleged psychiatric disability. Id. The Supreme Court and the Third Circuit have provided trial courts with a list of flexible factors to consider when evaluating the reliability of a proffered expert's methodology.[1] Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369. However, these factors do not constitute a mandatory checklist, and courts may inquire into the reliability of a potential expert's methodology without strictly adhering to the aforementioned factors. See Kumho Tire, 526 U.S. at 150-51; Daubert, 509 U.S. at 593-94. Defendants appear to argue that the methodology employed by Dr. Bowers in arriving at his psychiatric diagnosis is not generally accepted in the scientific community and does not contain standards

---

[1]These include: 1) whether a method consists of a testable hypothesis; 2) whether the method has been subject to peer review; 3) the known or potential rate of error; 4) the existence and maintenance of standards controlling the technique's operation; 5) whether the method is generally accepted; 6) the relationship of the technique to methods which have been established to be reliable; 7) the qualifications of the expert witness testifying based on the methodology; and 8) the non-judicial uses to which the method has been put. Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369.

controlling its operation because he did not perform a mental status examination. (Doc. 19). See Daubert, 509 U.S. at 593-95; Elcock, 233 F.3d at 745-46; Hamilton, 133 F.Supp.2d at 369.

Defendants deposed Dr. Bower. (Doc. 22, Ex. G). At the deposition, Dr. Bower frequently referred to Mazzamuto's symptoms of depression. Id. In addition, Dr. Bower discusses the psychiatric medications prescribed to plaintiff. Id. at p. 36. While Dr. Bower did fail to conduct a mental status examination, his diagnosis is based on scientific method, and not mere speculation. See Elcock, 233 F.3d at 745. The court is unaware of any Third Circuit precedent requiring treating physicians to administer a mental status examination before proffering expert testimony about a patient's psychiatric condition. "The test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct." Oddi, 234 F.3d at 145-46.

"An expert's opinion is reliable if it is based on the "methods and procedures of science" rather than on 'subjective belief or unsupported speculation . . .'" Elcock, 233 F.3d at 745. Dr. Bower's diagnosis of Mazzamuto's depression is based on knowledge obtained during his tenure as plaintiff's treating physician. (Doc. 22, Ex. G, p. 36). Patient contact is perhaps the most dominant methodology employed by physicians when formulating diagnoses. See Walker v. Consolidated Rail Corp., 111 F.Supp. 2d 1016, 1018 (N.D. In. 2000) (holding that psychological expert could reasonably rely on patient's self-reported history in formulating opinion regarding patient's mental state).

While Dr. Hostetter may feel that a mental status examination would result in a more accurate diagnosis, he may express this opinion at trial. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

6

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Daubert</u>, 509 U.S. at 576. Dr. Bower's deposition assures this court that Mazzamuto's psychiatric diagnosis is based on reliable methodology.

Finally, defendants contend that plaintiff has failed to comply with Federal Rule of Civil Procedure 26(a)(2), which requires parties to identify all proposed expert witnesses. The rule further provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, **with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony**, be accompanied by a written report prepared and signed by the witness. FED. R. CIV. P. 26(a)(2)(B).

Plaintiff has not produced an expert report in compliance with this rule, and defendants argue that such failure creates grounds for exclusion. (Doc. 19).

However, case law fails to support defendants' proposition. The above procedural rule applies only to experts retained for the **sole** purpose of providing expert testimony at trial. Treating physicians need not submit such reports, provided their testimony concerns information obtained "not in preparation for trial, but rather because he was an actor or viewer with respect to transactions or occurrences that are a part of the subject matter of the lawsuit." <u>Bucher v. Gainey Transportation Svc. of Indiana, Inc.</u>, 167 F.R.D. 387, 390 (M.D.Pa. 1996) (quoting FED. R. CIV. P. 26 (a)(2)(B) advisory committee's notes). Dr. Bower has served as plaintiff's treating physician since 1994 or 1995, and his testimony is based on observations made in the course of this treatment relationship. (Doc. 22, Ex. G, p. 6). As a result, the court will hold that the Federal Rules of Civil Procedure do not require plaintiff to produce an expert report from Dr. Bower. The court will deny defendants' motion in limine with respect to Dr. Bower's expert testimony.

7

### 3. Mr. Rose's Testimony

Defendants also ask the court to exclude Mr. Gordon Rose's testimony. (Doc. 19). Mr. Rose seeks to testify as an insurance expert, and intends to opine that defendants' insurance practices qualify as statutory bad faith. (Doc. 33, Ex. B). Defendants first argue that Mr. Rose's proffered testimony does not "fit" the subject matter of the case, or "assist the trier of fact" in resolving disputed factual issues. Elcock, 233 F.3d at 741; Oddi, 234 F.3d at 145; In re Unisys Savings Plan, 173 F.3d at 155. Defendants contend that the lack of "fit" between Mr. Rose's proffered testimony and the facts of the present matter compel exclusion pursuant to Federal Rules of Evidence 702 and 403. See FED R. EVID. 702, 403.[2]

In order to assist the factfinder in resolving factual disputes present in the case, the subject matter of proposed expert testimony must fall outside the jury's understanding. See Hamilton, 133 F.Supp. 2d at 374-75; Bergman, 742 A.2d at 1105. Defendants contend that the average jury can comprehend bad faith insurance law without the aid of an expert witness.[3] They further argue that Mr. Rose's testimony consists solely of impermissible legal conclusions. (Doc. 19). In bad faith insurance actions, the admittance or exclusion of expert testimony lies within the trial court's

---

[2]This rule provides for the exclusion of evidence if "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

[3]Under Pennsylvania law, "bad faith" is defined as any frivolous or unfounded refusal to pay proceeds of an insurance policy. Keefe v. Prudential Property and Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000); Woody v. State Farm Fire and Casualty Co., 965 F. Supp. 691, 693 (E.D.Pa. 1997); Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994) (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)). The elements of the cause of action include: 1) lack of reasonable basis for denying benefits under the policy, and (2) knowing or reckless disregard of the lack of reasonable basis in denying the claim. See Keefe, 203 F.3d at 225; Klinger v. State Farm Mutual Automobile Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997); Terletsky, 649 A.2d at 688.

discretion.  See  Aloe Coal, 816 F.2d at 114; Dinner v. United Svcs. Automobile Assoc. Casualty Ins. Co., 29 Fed. Appx. 823, 826 (3d Cir. 2002); Bergman v. United Svc. Automobile Assoc., 742 A.2d 1101, 1107 (Pa. Super. 1999).

Numerous courts have excluded expert testimony in insurance bad faith actions.  For example, the Third Circuit affirmed a trial court's exclusion of expert testimony in an insurance bad faith action because "any relevance of [the expert's] testimony was outweighed by the potential for prejudice to [the defendant]." Dinner, 29 Fed. Appx. at 12.  The Eastern District of Pennsylvania has also excluded expert testimony on insurance bad faith, explaining: "Bad faith is a legal concept of general application which does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact.  The witness' opinion is nothing more than subjective speculation unsupported by any scientific or specialized knowledge." Datillo v. State Farm Ins. Co., 1997 WL 644076 at *5 (E.D.Pa. 1997).  See also Bergman, 742 A.2d at 1108 (excluding expert testimony in a bad faith action because the case did not involve highly sophisticated insurance concepts or practices or call for special knowledge, skill or experience).[4]

Examination of Mr. Rose's expert report persuades the court that exclusion of this evidence is proper.  (Doc. 33, Ex. B).  Much of the report consists of mere recitation of the facts of the case or the reports of other witnesses, which plaintiff can present to the factfinder without the aid of an expert witness.  Id.  In addition, this report was largely conclusory.  Id.  See also In re Diet Drugs, 2000 U.S. Dist. LEXIS 9661 at *12 ("testimony of an expert that constitutes mere personal belief

---

[4]The court also recognizes those instances in which courts have allowed expert testimony on bad faith insurance practices.  See Kraeger and Kraeger v. Nationwide Mutual Ins. Co., 1997 U.S. Dist. LEXIS 2726 at *2-3 (E.D.Pa. 1997); Bonenberger v. Nationwide Mutual Ins. Co., 791 A.2d 378, 382 (Pa. Super. 2002).

as to the weight of the evidence invades the province of the jury"); JMJ Enterprises Inc. v. Via Veneto Italian Ice, Inc., 1998 U.S. Dist. LEXIS 5098 at *27 (exclusion of expert testimony where witness acted as advocate, not objective observer); Datillo, 1997 WL 644076 at *5.

The uncomplicated subject matter of the present action, combined with the conclusory nature of Mr. Rose's report, leads the court to believe that the proffered expert testimony will provide little probative value. Juries often afford great weight to expert testimony, regardless of the quality of the evidence. This tendency could result in considerable prejudice to defendants. Because Mr. Rose's proposed testimony is of little probative value, and because the potential prejudice to defendants substantially outweighs its probative value, the court will exclude Mr. Rose's testimony.

**III.     Plaintiff's Motion to Extend Deadline for Filing Expert Report**

Plaintiff has filed a motion to extend the deadline for filing expert reports until September 30, 2002. (Doc. 31). Because this date has passed, the court will dismiss this motion as moot.

**IV.     Plaintiff's Motion to Permit Supplemental Expert Report**

Plaintiff filed a motion to supplement Mr. Gordon Rose's expert report. (Doc. 59).[5] As discussed above, the court will exclude Mr. Rose's testimony because expert testimony is not necessary to assist the factfinder in the present matter, and the potential prejudice to defendants substantially outweighs its probative value.

---

[5]The proffered report contains Mr. Rose's evaluation of the deposition of Dr. McSharry, a former employee of defendants who has brought suit alleging improper business practices. (Doc. 59).

10

Therefore, the court will deny plaintiff's motion for leave to supplement Mr. Rose's expert report.

## V.   Plaintiff's Motion to Bring Affidavit to the Court's Attention

Plaintiff filed a motion to bring an affidavit and attached exhibits filed by plaintiff's counsel, Richard C. Angino, to the court's attention. (Doc. 69). This affidavit refers to "day in the life" film of Mazzamuto's work-related activities. Defendants failed to contest this motion. The court duly notes this affidavit. (Doc. 68). Therefore, plaintiff's motion to bring affidavit to the court's attention will be granted.

## VI.   Plaintiff's Motion to Supplement the Record

Plaintiff filed a motion to supplement the present record with an additional report from Mr. Gordon Rose, and two depositions of Dr. William Feist, a former employee of defendants. (Doc. 76, Exs. A - C). This motion was dated November 25, 2002. Id. Plaintiff failed to submit a brief in support of this motion. United States District Court for the Middle District of Pennsylvania Rule of Court 7.5 ("Local Rule 7.5") provides:

> Within ten (10) days after the filing of any motion filed prior to trial, the party filing the same shall file an original and two (2) copies of a brief with the clerk and shall serve copies thereof on all parties. . . . Unless otherwise ordered by the court, if supporting legal briefs are not filed within the time provided in this rule such motion shall be deemed to be withdrawn.

L.R. 7.5. Because plaintiff's counsel failed to submit a brief in support of this motion within ten days of the filing date, the court will deem the motion withdrawn.[6]

## VII.   Plaintiff's Motion to Add Additional Authority

---

[6]As noted above, the court will exclude Mr. Rose's expert testimony on bad faith insurance practices. Therefore, plaintiff's motion to add this supplemental report from Mr. Rose would be denied.

11

Plaintiff submitted a motion to add additional authority in support of his motion for summary judgment and as opposition authority to defendants' motion for summary judgment. (Doc. 77). The desired additions to the record consist of ten (10) specific cases involving defendants, summary judgment, and deposition testimony concerning defendants' insurance practices. (Doc. 77, Exs. A-J). Plaintiff has also failed to file a brief in support of this motion.

Although he neglected to submit an initial brief in support, plaintiff did file a reply brief in support of this motion. (Doc. 88). Two articles are attached to the reply brief, both dealing with defendants' business practices. (Doc. 88, Exs. A, B). The court will disregard these articles because they were not submitted to the court through a proper brief in support of the original motion. The court did not receive a brief in support of the motion to add additional authority. Therefore, the court will deem the motion withdrawn.[7]

## VIII.        Plaintiff's Second Motion to Supplement the Record

Plaintiff filed a second motion to supplement the record with a further report from Mr. Gordon Rose, the plaintiff's proposed bad faith insurance expert. The court has previously stated that it will exclude all testimony of Mr. Rose. (Doc. 78). In addition, as discussed in connection with the above two motions, plaintiff's counsel failed to comply with Local Rule 7.5, which requires litigants to brief all pretrial motions. L.R. 7.5.

---

[7]The court reassures counsel that it will examine all relevant legal authority during disposition of the summary judgment motions.

12

Hence, the court will deem the plaintiff's second motion to supplement the record withdrawn.

CHRISTOPHER C. CONNER
United States District Judge

Dated:    February 7th, 2003

FROM :                            FAX NO. :                    Feb. 19 2003 03:21PM P2

Exhibit

IN THE COURT OF COMMON PLEAS IN AND FOR

THE COUNTY OF MONTGOMERY, PENNSYLVANIA

CIVIL DIVISION

- - -

GORDON LEFEVER, EXECUTOR :   NO. 95-20991
OF THE ESTATE OF EDWARD   :
GRAY                      :
           vs.            :
                          :
PENN TREATY LIFE          :
INSURANCE COMPANY         :

- - -

Trial by Jury

- - -

Monday, April 3, 2000
Commencing at 10:30 a.m.

- - -

Courtroom 6
Montgomery County Courthouse
Norristown, Pennsylvania

- - -

BEFORE: THE HONORABLE RICHARD S. LOWE, SENIOR JUDGE
AND A JURY

- - -

COUNSEL APPEARED AS FOLLOWS:

        BARRY S. YACHES, ESQUIRE
        for the Plaintiff

        GORDON B. SIMMONS, ESQUIRE
        for the Defendant

- - -

1

2    You indicated it would not affect you.  That

3    certainly would be what I would have expected.  And

4    I have no objection to Your Honor sitting in the

5    case.

6                    THE COURT:  Well, to the extent

7    that I can claim neutrality, I must say that I'm

8    not affected by it either pro or con.

9                    It may be that this policy is a

10   very good policy.  But I've just decided that I

11   don't want to invest that much of my pension income

12   in that because we have other resources in the

13   family that I could turn to if absolutely

14   necessary, though I hesitate to do it.  But if I

15   must, I will.  So that having been said, we'll

16   proceed with the case now.

17                    There was, as counsel has

18   brought to my attention, one limine motion having

19   to do with an expert witness being called.  And

20   perhaps you would care to, for the record, state

21   what your precise position is with regard to that.

22                    MR. SIMMONS:  Thank you, Judge.

23                    As you know, I have presented

24   for the first time this morning a motion in limine

25   on behalf of defendant, Penn Treaty, to preclude

1

2   the testimony of plaintiff's bad faith expert

3   Barbara Sciotti.

4             The basis of my motion is the

5   recent court panel decision in *Bergman v. USA, 742*

6   *A.2d 1101.*  A 199 decision.  In short, it's our

7   position that the proffered testimony of Ms.

8   Sciotti should not be permitted at the time of

9   trial.  Based on the indicia set forth in the

10   *Bergman* decision.

11             Specifically, that her

12   testimony is not necessary or required in this

13   rather straightforward bad faith allegation.

14             Secondly, that permitting her

15   to testify indicates she will invade the province

16   of the jury in that she herself concludes that Penn

17   Treaty engaged in bad faith.  That would simply

18   leave the jury nothing to do.  Next, that a great

19   majority of her written report and proposed

20   testimony is cumulative of other evidence.  And

21   next that it is based on no scientific or technical

22   basis which would support its admissibility as an

23   expert opinion.

24             Lastly, that her conclusions

25   beyond invading the province of the jury consists

1
2      of unsupported speculation in her own assessment of

3      the credibility of the evidence.

4                      Lastly, that Ms. Sciotti is not

5      qualified to render an opinion in the area of life

6      and health insurance generally or long-term care

7      specifically.  Her experience being exclusively in

8      the casualty, Workers' Compensation and commercial

9      liability fields.

10                     THE COURT:  Mr. Yaches.

11                     MR. YACHES:  I have reviewed

12     the *Bergman* decision and have filed a responsive

13     brief to Mr. Simmon's Motion.  In particular, the

14     *Bergman* case differs from the present matter in

15     several important aspects.

16                     No. 1, the Bergman case was

17     heard nonjury.  This case is being heard by a jury.

18     The Bergman case, the trial judge had the

19     opportunity to read the report and review the

20     qualifications of the expert in that case.

21                     In this particular case, if the

22     expert were -- if the expert were not allowed to

23     testify the jury would never see the report.

24                     Thirdly, on the issue of the

25     expert being cumulative, in fact in Bergman there

1

2    were two attorneys, one for the plaintiff in the

3    Bergman case; one, for the defendant in the Bergman

4    case in the underlying claim who had testified in

5    that case.

6                    And they had testified on the

7    same issue that the expert testified on.  So, one

8    of the reasons for excluding the report in Bergman

9    was that there had been a multitude of evidence

10   already on the issue of bad faith by two attorneys

11   who were talking about the legal issues in the

12   case.

13                   So that, in fact, the expert's

14   report was really cumulative.  In the present,

15   matter there won't be any evidence of that nature.

16   Other than the report of both the plaintiff's

17   expert and the defendant's expert.

18                   In Bergman, the issue is a

19   relatively simple issue.  It was an underinsured

20   motorist case.  The facts were straightforward and

21   there was no requirement -- the judge felt he could

22   certainly reach a decision in that case without the

23   necessity of expert testimony and, in fact, found

24   that there was no bad faith in that case primarily

25   because of the fact that the actions of the

9

1

2    plaintiff in that case were probably indicative of

3    bad faith of plaintiff in that case.

4                     In the present matter it is a

5    more complicated matter.  And while there are no --

6    I don't believe any factual issues in dispute there

7    are a number of legal issues including the

8    application of a statute, the Pennsylvania Unfair

9    Insurance Act.  And it solves -- there are sections

10   of that act that set forth a standard of care and

11   Ms. Sciotti is prepared to testify as to how the

12   conduct of the insurance company fell beneath that

13   standard of care and how the insurance company

14   failed to conform to the requirement of the

15   Pennsylvania Unfair Insurance Practices Act.

16                     So, those are the primary  --

17   finally, the standard that applies now is different

18   from what it was in the Bergman case.  That's

19   Pennsylvania Rule of Evidence 702, which was not

20   mentioned at all in the Bergman case.

21                     In Pennsylvania Rule of

22   Evidence 702, as I've cited in my brief, that

23   standard is a bit more relaxed than the state law

24   prior to Pennsylvania Rule of Evidence 702.  And

25   the standard is that the testimony of the expert

FROM :             FAX NO. :             Feb. 19 2003 03:22PM P8

10

1
2      can assist the jury in understanding the issues
3      that are involved, that under those circumstances
4      the testimony of the expert should be allowed.  And
5      the other factor to be considered is whether the
6      expert is testifying on factual issues or whether
7      they're really legal issues.
8                      In this case as I said the
9      factual issues are really not in dispute in this
10     case so the issues have to do with application of
11     fact to the appropriate law and appropriate
12     standard.
13                     So for all of the above, this
14     case is different from the Bergman case.  Again, in
15     Bergman, all Bergman said because the plaintiff in
16     that case was trying to get a per se ruling that
17     expert testimony was required in a bad faith case.
18     All the court says in Bergman is that it may not be
19     required in absolutely every case.  And perhaps the
20     Bergman case would have been one where expert
21     testimony wasn't required, especially because the
22     case was being heard nonjury.
23                     In this case, the issues are
24     certainly complex enough so that both experts will
25     assist the jury in reaching a decision in this

1

2      case.

3                      THE COURT:  We'll permit the

4      testimony.  But I think I should warn counsel that

5      the one pitfall we all must be careful of is that

6      when the expert reviews what the normal procedures

7      are, and how they were deviated from, if they were

8      deviated from here, that we should be careful that

9      that expert is not asked the question that would

10     pose to the jury -- pose to her the very question

11     that the jury will be obligated to answer.  Because

12     we can't let that happen.  We've got to be a little

13     circumspect in our interrogation of that witness to

14     see to it that we don't say, well, Ms. Sciotti, was

15     there fraud here.  Or was there misrepresentation

16     because that question goes to the jury.  I don't

17     think we can ask that.

18                     MR. YACHES:  I do have law on

19     that particular issue as to what's called the

20     ultimate issue questions.  And in the Commonwealth

21     of Pennsylvania and under Pennsylvania Rules of

22     Evidence ultimate issues questions are, in fact,

23     permitted under discovery rules of evidence.

24                     THE COURT:  Well, I think

25     you've got to be careful there.

1

2                            MR. YACHES:  Okay.

3                            THE COURT:  I would prefer that

4      we not get into that.  She can lay out her position

5      without answering that ultimate final question.

6                            The following takes place in

7      open court.

8                            (Voir dire of prospective

9      jurors.)

10                           THE COURT:  We can dismiss the

11     jurors and send them back to the marshalling room.

12     The remaining jurors please return to the jury

13     marshalling room.

14                           Mr. Yaches, are you satisfied

15     with the jurors impaneled seated in the box?

16                           MR. YACHES:  Yes, Your Honor.

17                           MR. SIMMONS:  Yes, I am, Your

18     Honor.

19                           THE COURT:  Let the jurors be

20     affirmed or sworn, please.

21                           (The jury is sworn by the

22     Clerk.)

23                           JURORS:  I will.

24                           THE COURT:  Mr. Yaches, would

25     you open for plaintiff, please.

## CERTIFICATE OF SERVICE

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR RECONSIDERATION** was

served by United States first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA  19603-0679
        Counsel for Paul Revere Life Insurance Company and New York Life Insurance
        Company

Dated:  2/23/03

                                                        Richard C. Angino