**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | JUDGE CONNER |
| CORPORATION, et al., | : | |
| Defendants | : | |

FILED
HARRISBURG,
MAR 0 7 200
MARY E. D'ANDREA

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT

**I.  INTRODUCTION**

Defendants hereby oppose plaintiff's motion to file an amended complaint. Extensive discovery has revealed that plaintiff does not have a viable claim under Third Circuit law because he cannot satisfy his contractual burden of proof to recover either total or partial disability benefits. Expert reports have been exchanged, the parties have filed detailed cross-motions for summary judgment, and the case is scheduled for trial in May 2003.

Rather than focus on his own claim, plaintiff seeks to file an amended complaint that would shift the focus of the case from where it belongs (i.e., on the "merits" of plaintiff's claim) to a broad attack on defendant's corporate culture focusing on spurious allegations about how defendants have handled other claims.

Plaintiff's proposed amendment would be both prejudicial and futile. Moreover, UNUMProvident sharply disputes plaintiff's allegations and, if they are

introduced into the case, additional delays will result as discovery and additional evidence at trial would be needed to create an accurate factual record. The Court should therefore deny plaintiff's motion.

## II. PROCEDURAL HISTORY

Plaintiff alleges claims for bad faith, under 42 Pa. C.S.A. § 8371, and breach of contract arising from the denial of his claim for disability benefits. The deadlines (already extended once) for both discovery and expert reports expired in June 2002. Within the deadlines, experts reports were exchanged and substantial discovery, including numerous depositions, was conducted.

Both the discovery and expert phases of the case were framed by the allegations of the complaint, which focused on plaintiff's own claim and not on unfounded allegations of a "pattern and practice" of denying claims. Summary judgment motions were filed by both parties, again addressing plaintiff's own claim. Plaintiff raised his pattern and practice allegations for the first time after discovery; after expert reports; and after the summary judgment motions.

## III. FACTUAL HISTORY

### The Facts On Plaintiff's Own Claim Support Defendants' Position

As outlined in detail in defendants' summary judgment brief, plaintiff claims he is disabled by back and psychological problems. The critical issue is whether he can perform his occupational duties as a restaurant owner. For years he consistently described those duties as sedentary:

2

- "[E]xecutive, office duties only" (Sum. Judgment Appendix, Exh. B at 330).
- "[M]anage employees, work schedules; book work; deal with food companies; phone; and administration and office duty" (Id. at 42-43).
- "Executive - 50%" and "Office - 50%" (Id. at 549).
- He "occasionally" had to lift or carry five-pound objects (Id. at 539).
- He had to sit for 3.5 total hours (as opposed to at a time), stand for 3.5 hours and walk for 1 hour (Id.).

The facts do not support plaintiff's claim that he cannot perform his occupational duties. Indeed, even Dr. Bower conceded -- among other things -- that if plaintiff's back was the only problem, he could perform the occupational duties he described to Paul Revere (i.e., 20% bookkeeping, 20% office duties and 60% supervising employees). (Id., Exh. G at 54-57 and 59).

Also instructive are plaintiff's non-occupational activities, such as Internet stock trading (which plaintiff has predictably tried to exclude from evidence), which prove he can perform his occupational duties. While plaintiff claims it is too stressful for him to do bookkeeping, pay bills and order supplies, he engaged in close to $6 million in stock trades in 2000 alone. (Id., Exh. C at 49-51; Exh. I). Plaintiff made these investment decisions on his own, followed the market closely and made his trades by computer. (Id. at 49, 53-54). Many stocks were held for as little as a day or two. (Id. at 49). And, while plaintiff claims working at his restaurant is too stressful, he says losing over $375,000 in two years in stock trades did not bother him, or make him either anxious or angry. (Id. at 54).

3

SL1 333925v1/10305.060

## Plaintiff's Efforts To Shift The Focus Away From His Claim

Plaintiff has made a series of attempts to shift the focus away from his own dubious claim to irrelevant and inaccurate allegations by third parties (such as disgruntled former employees and television tabloids) unrelated to this case. All of these efforts by plaintiff have been the subject of extensive motion practice including motions in limine, some of which are still pending.

Now, roughly eight months after the discovery and expert deadlines have passed, and with little more than two months left before trial, plaintiff seeks leave to amend his complaint to allege, among other things, a "pattern and practice attack" on defendants based on dubious allegations of a bad corporate "character" and how other claims have been handled. As described below, this latest effort to distract from the so-called merits of plaintiff's individual claim should be denied.

## IV. ARGUMENT

### A. STANDARDS APPLICABLE TO PLAINTIFF'S MOTION

Whether plaintiff's motion should be granted is a question left to the Court's discretion. Cureton v. National Collegiate Athletic Assoc., 252 F.3d 267, 272 (3d Cir. 2001). Leave to amend is properly denied where (a) there has been undue delay in seeking the proposed amendment, (b) the opposing party would be prejudiced, or (c) the proposed amendment would be futile. Id. at 273.

4

### 1. Standards Governing Undue Delay

Late amendments are properly given close scrutiny. As the Third Circuit noted in <u>Cureton</u>, "we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." <u>Id.</u> at 273.

The Third Circuit has long recognized that a lengthy delay can place "an unwarranted burden on the court" and therefore be considered "undue." <u>Cureton</u>, 252 F.3d at 273 (<u>citing</u> <u>Adams v. Gould, Inc.</u>, 739 F.2d 858, 868 (3d Cir. 1984)). Similarly, in <u>Berger v. Edgewater Steel Co.</u>, 911 F.2d 911, 924 (3d Cir. 1990), the Court held that leave to amend was properly denied where it would add a "new and substantially broader claim [that] would put an unwarranted burden on the trial court and be likely to result in prejudice" to the opposing party. Thus, the Court has discretion to consider <u>both</u> prejudice to the adverse party and additional burdens on the overall management of the case.

### 2. Procedural Posture of Case and Changes in Tactics or Theories Causing Prejudice Justifying Denial of Amendment

In terms of prejudice, courts have long recognized that the status and procedural posture of the case can be key. For example, in <u>Cureton</u>, the Third Circuit affirmed the denial of leave to amend because, among other things, the "amendment would lead to further discovery requests and significant new preparation." 252 F.3d at 274.

5

SL1 333925v1/10305.060

Amendments are often denied after the close of discovery. One example is Berger, where the Third Circuit affirmed the denial of leave to amend after the discovery deadline because the proposed amendment "would inject new issues into the case requiring extensive discovery." 911 F.2d at 924; see also, Oy Tilgmann, AB v. Sport Publishing International, Inc, 110 F.R.D. 68, 70-71 (E.D. Pa. 1986)(denying leave to amend after discovery deadline because opposing party would either be prejudiced by lack of discovery or by additional costs of re-opening discovery).

Likewise, courts have rejected the notion that discovery is not relevant where the amendment involves actions of the adverse party. For example, in Sternberg v. Satco Casting Service, Inc., No. 95-7084, 1996 U.S. Dist. LEXIS 19021, (E.D. Pa. Dec. 20, 1996), the plaintiff claimed the discovery deadline was irrelevant because the defendant possessed the facts about its own conduct. The Court rejected this argument holding that the defendant "should be entitled to discover from plaintiffs the facts that make up the basis of their claim" and "should not be forced to proceed by guesswork to conjure up what plaintiffs intend to advance at a later stage of this already-well-seasoned litigation." Id. at *6, n.4.

Prejudice also arises where the proposed amendment would create "undue difficulty litigating a case as a result of a change in tactics or theories by the other party." Hewlett-Packard Co. v. Arch Assoc. Corp., 172 F.R.D. 151, 153-54 (E.D. Pa. 1997); see also, Young v. City of Philadelphia, No. 01-1678, 2001 U.S. Dist.

6

SL1 333925v1/10305.060

LEXIS 13499 at *11, (E.D. Pa. Aug. 27, 2001)(denying proposed new cause of action after discovery closed and defendants had prepared for trial based on original claims). This concern is particularly relevant where the case has progressed to the summary judgment stage. See Borough of Ellwood City v. Pennsylvania Power Co., 570 F. Supp. 533, 556 (W.D. Pa. 1983)(after summary judgment motions are filed leave to amend should only be granted if the proposed amendment has "substantial merit" and the moving party produces "substantial and convincing evidence" to support the new claims).

One example is Saini v. Bloomsburg Univ. Faculty, 826 F. Supp. 882 (M.D. Pa. 1993), where the plaintiff moved for leave to amend after the defendants had moved for summary judgment. The Court denied leave to amend holding:

> [P]laintiff now seeks to "shift horses in midstream" and assert an entirely different claim. His belated attempt would be unduly prejudicial to the defendants, who have conducted discovery and litigated this entire matter on the assumption that the claims in this case are those asserted in the original complaint, only to find out at the eleventh hour that plaintiff intends to introduce an entirely different claim. There is no excuse or justification for plaintiff's attempt to fend off summary judgment with a newly asserted claim, and we will deny his motion as untimely, lacking in good faith, and unduly prejudicial to the defendants.

826 F. Supp. at 890.

### 3. Futility As Grounds For Denial of Amendment

Finally, courts have long held that leave to amend is properly denied where the proposed amendment would be futile. Deily v. Waste Mgt. Of Allentown, No.

7

SL1 333925v1/10305.060

01-2956, 2003 U.S. App. LEXIS 1295, (3d Cir. Jan. 24, 2003). Futility was addressed in analogous circumstances in <u>Allied Erecting and Dismantling Co., Inc., v. United States Steel Corp.</u>, 786 F. Supp. 1223 (W.D. Pa. 1992):

> To allow a meritless claim to proceed to the motion to dismiss and motion for summary judgment stages is an abdication of judicial responsibility that serves neither justice nor efficiency. The duty to engage in a threshold inquiry regarding legal sufficiency is especially important in a case such as this one that is finally ready for trial after a lengthy, costly and exasperating pretrial history.

786 F. Supp. at 1228.

## B. AMENDMENT SHOULD NOT BE ALLOWED TO DIVERT ATTENTION FROM THE FACTS OF PLAINTIFF'S CASE

It is easy to see why plaintiff wants to distract the Court from the facts of this case: he cannot satisfy his burden of proof. Third Circuit law, as described in <u>Russell v. Paul Revere Life Ins. Co.</u>, 288 F.3d 78 (3d Cir. 2002), confirms that plaintiff's burden of proof for total disability benefits is <u>not</u> to prove that he cannot perform "some" of his occupational duties; instead, plaintiff has the burden of proving that he "<u>cannot perform any</u> of the important duties of his position." 288 F.3d at 82 (emphasis added). <u>Russell</u> also confirms that residual disability benefits are not payable if plaintiff does not return to work: "As for benefits on partial disability, they are not payable unless the insured is working." <u>Id.</u>

Russell undermines plaintiff's claim thoroughly. Again, the undisputed facts prove that plaintiff can perform most (if not all) of his alleged occupational duties (such as bookkeeping and office duties).

Plaintiff has tried a number of strategies to deal with Russell. For example, he has argued that Russell is irrelevant because it is an ERISA case. But, as defendants noted, the applicable part of Russell is not the ERISA arbitrary and capricious standard of review but the holding which involves plaintiff's contractual burden of proof and contract interpretation. Russell v. Paul Revere Life Ins. Co., 148 F. Supp. 2d 392, 404-05 (D. Del. 2001) (finding that "the policy language places upon the employee the initial burden to demonstrate that he or she can not perform any of the important duties of his position") aff'd, 288 F.3d 78 (3d Cir. 2002).[1]

Indeed, Russell is consistent with Pennsylvania law on total disability. For example, in Ditommasso v. Union Central Life Ins. Co., 1991 U.S. Dist. LEXIS 17079 (E.D. Pa. Nov. 25, 1991), aff'd, 972 F. 2d 1330 (3d Cir. 1992), the Court, applying Pennsylvania law, held that an osteopathic physician was not totally disabled where he was still practicing medicine but was not performing all of the procedures he performed before his alleged disability. The Court noted that its

---

[1] Courts in other Circuits have applied the same rules of contract interpretation, McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 588 (8th Cir. 2002), even when the policy in question was not subject to ERISA, Yahiro v. Northwestern Mutual Life Ins. Co., 168 F. Supp. 2d 511, 517-518 (D. Md. 2001); See also, Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264 (4th Cir. 2002)(September 2002 decision applying standard analogous to Russell).

conclusion was supported not only by the language of the total disability provision but also by the presence of a residual provision in the policy which would have been rendered meaningless if total disability benefits were available to an insured who could perform some but not all of his occupational duties.

In Cobosco v. Life Assur. Co. of Pennsylvania, 213 A.2d 369 (Pa. 1965), the Court held total disability does not exist where the insured can perform some of the pre-disability occupational duties so long as they were more than "a few trivial and desultory acts or light work of a limited character and at irregular intervals." 213 A.2d at 373. The Court further noted that total disability will not be found merely because the insured cannot "personally do everything required in carrying on the occupation, or do all things he did before his disability, or do the things he did before in precisely the same manner...." Id.

Similarly, in Moskowitz v. Prudential Ins. Co. of America, 35 A.2d 567, 569 (Pa. Super. 1944), the Court held that "when an insured owns a business to which he is able to contribute substantial physical and mental capacities, or either, he cannot be said to be totally disabled." Finally, in a 1985 decision, the Pennsylvania Superior Court held that: "'Total Disability' does not mean helplessness or complete disability, but it includes more than that which is partial." Bundy v. National Safety Life Ins. Co., 503 A.2d 417, 423 (Pa. Super. 1985).

In short, plaintiff's motivation for seeking leave to amend is readily apparent. He has presented a deficient claim for benefits because he cannot satisfy

10

his burden of proof under Russell. Accordingly, he now wants to embark on a dubious attack on defendants' corporate culture after all of the pretrial preparation is complete. Plaintiff's inability to satisfy his burden of proof is no reason to allow an untimely amendment of the complaint.

### C. LEAVE TO AMEND SHOULD BE DENIED BASED ON UNDUE DELAY AND PREJUDICE

#### 1. Prejudice from Change in Tactics

Plaintiff's motion suggests he can, in a cavalier fashion, simply change his approach to the case to pursue a new strategy (i.e., pattern and practice) after discovery is closed, expert reports are exchanged and summary judgment motions filed. But the facts and law demonstrate why plaintiff should not be permitted to amend his complaint at this late stage.

It should be readily apparent that defendants' pretrial preparation would have been vastly different if, at some point prior to the expiration of all significant pretrial deadlines, plaintiff had presented his misguided pattern and practice allegations. For example, issues could have been narrowed through the use of additional discovery devices such as requests for admission. Additional questions would have been asked in depositions to elicit admissions by plaintiff and his medical providers about his pattern and practice allegations.

Moreover, at the end of this process, defendants likely would have been in a position to move for summary judgment on these issues. Thus, defendants could

have obtained timely pretrial rulings on these issues rather than be forced to guess about the claims to be presented as the parties begin the trial.

In short, this is a classic example where leave to amend, sought at the very last stage of the case, would infuse new claims and issues into a case causing prejudice to the defendants' ability to prepare and present a defense. The Court should therefore deny plaintiff's motion. Berger, 911 F.2d at 924; Hewlett-Packard, 172 F.R.D. at 153-54; Saini, 826 F. Supp. at 890.

### 2. The Burden on The Court

It should also be noted that the proposed amendment would impose a significant additional burden on the Court in at least two respects. First, the Court has already ruled on one motion in limine and currently has before it cross-motions for summary judgment as well as other motions dealing with, among other things, evidentiary issues for trial. These motions have been prepared on the basis of the claim asserted in the original complaint which was an individual claim for disability benefits rather than a broad (and misguided) attack on the defendants' corporate culture. Plaintiff's motion seeks to alter the landscape of the case after considerable work has already been done.

Second, if the proposed amendment is allowed, there will be additional delays at trial. For example, if plaintiff is allowed to make allegations against defendants' "character," the defendants will be left with no choice but to present evidence demonstrating the truth about their claims practices. Similarly, if plaintiff

12

is allowed to present evidence of results of other lawsuits, defendants will be compelled to present evidence about such other cases, thereby raising the threat of collateral disputes over cases having nothing to do with this case.

All of these concerns are heightened by the "eleventh hour" nature of plaintiff's motion. If the so-called "claims" were asserted at the beginning of the case, or even before the expiration of deadlines for discovery, experts and dispositive motions, plaintiff's spurious allegations could have been addressed through pretrial motions narrowing (or more likely eliminating) the claims before the parties and the Court are engaged in the trial. Thus, the additional burden on the Court supports the denial of the plaintiff's motion. Cureton, 252 F.3d at 273

### 3. The Proposed Amendment is Futile

It should also be noted that many of the proposed allegations in the proposed amended complaint are futile. For example, plaintiff apparently wants to plead that defendants are in bad faith because they have denied plaintiff's claim in a manner allegedly similar to other cases where courts have reversed defendants' denial of a claim for disability benefits.

But other lawsuits are not relevant -- even for discovery purposes -- to support "pattern and practice" allegations in the bad faith context. E.g., Cantor v. Equitable Life, 1998 U.S. Dist. LEXIS 8435 at * 10-11 (E.D. Pa. 1998); Kaufman v. Nationwide Mutual Ins. Co., 1997 U.S. Dist. LEXIS 18530 at * 6 (E.D. Pa. 1997); Shellenberger v. Chubb Life, 1996 U.S. Dist. LEXIS 2375 (E.D. Pa. Feb.

13

22, 1996); <u>North River Ins. Co. v. Greater New York Mutual Ins. Co.</u>, 872 F. Supp. 1411 (E.D. Pa. 1995).

These same considerations underscore why plaintiff's motion should be denied. Again, the relevant issue here is whether plaintiff is disabled under the policy and <u>Russell</u>. What happened in other cases is simply not relevant and should not be discoverable, let alone used as grounds to reopen discovery.

Similarly, plaintiff seeks to amend the complaint to raise a number of futile issues involving policies or programs other than the disability insurance policy at issue. These issues (such as the award of SSDI benefits and New York Life's decision to waive life insurance premiums) are inadmissible, for reasons outlined more fully in defendants' motion in limine, and should not be the subject of an amended complaint.

## V. CONCLUSION

For the reasons set forth above, the Court should deny plaintiff's motion to amend his complaint.

Dated: March 6, 2003             STEVENS & LEE

By _E. Thomas Hoenefer_ (signature)
E. Thomas Hoenefer
Attorney I.D. No. 55773
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants

14

## CERTIFICATE OF SERVICE

I, E THOMAS HENEFER, ESQUIRE, certify that on this date, I served a certified true and correct copy of the foregoing Memorandum of Law upon the following counsel of record, by first class mail, postage prepaid, addressed as follows:

>Richard C. Angino, Esquire
>4503 North Front Street
>Harrisburg, PA 17110-1708

*E. Thomas Henefer*
E. Thomas Henefer

Date: March 6, 2003

SL1 333925v1/10305.060