UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>    Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION; PAUL REVERE LIFE INSURANCE COMPANY; and NEW YORK LIFE INSURANCE COMPANY<br>    Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY BRIEF RE PLAINTIFF'S
MOTION TO FILE AN AMENDED COMPLAINT**

**I.   INTRODUCTION**

Rather than focus upon the facts and law relevant to Plaintiff's Motion to File an Amended Complaint, Defendants' Memorandum of Law avers that "[e]xtensive discovery has revealed that plaintiff <u>does not have a viable claim</u> under Third Circuit law because he cannot satisfy <u>his contractual burden of proof</u> to recover either total or partial disability benefits."  p. 1.

      Rather than focus on his own claim, plaintiff seeks to file an amended complaint that would shift the focus of the case from where it belongs (<u>i.e.</u>, on the "merits" of plaintiff's claim) to a broad attack on defendant's corporate culture focusing on spurious allegations about how defendants have handled other claims.

      Plaintiff's proposed amendment would be both prejudicial and futile. Moreover, UNUMProvident sharply disputes plaintiff's allegations and, if they are introduced into the case, additional delays will result as discovery and additional evidence at trial would be needed to create an accurate factual record. The Court should therefore deny plaintiff's motion.

pp. 1 and 2.

Whether or not Plaintiff has a viable claim or can satisfy his contractual burden of proof are not relevant considerations with respect to Mr. Mazzamuto's Petition to Amend his original Complaint. F.R.C.P. 15(a) permits motions to amend a complaint at any time and requires that leave should be freely given when justice so requires. Rule 15(b) permits amendments of pleadings to <u>conform to the evidence</u> at any time, even at trial <u>or after judgment</u>. Rule 15(d) permits supplemental pleadings for events that have occurred <u>since the last pleading</u>, and 15(c) relates all pleadings back to the original pleading.

Contrary to Defendants' assertion, Plaintiff's Motion to File an Amended Complaint does focus on his own claim. Mr. Mazzamuto has an occupation specific policy. He contends that he is totally disabled from operating his pizza restaurant as he did before. The Social Security Administration, with a very broad definition of total disability, has found that he is totally disabled from <u>any and all</u> occupations for which he is suited. New York Life Insurance Company, the company that sold Mr. Mazzamuto his disability policy, as well as a life insurance policy, and one of the Defendants in the instant case also with a broader definition of total disability, agrees that Mr. Mazzamuto is totally disabled with respect to his life insurance policy. New York Life actually paid disability benefits in 1996 and 1997 <u>under the same policy</u> when Mr. Mazzamuto was first off of work as a result of his back condition. <u>Mr. Mazzamuto's occupation and job did not change from 1997 to 2000</u>. Plaintiff's proposed Amended Complaint seeks to add the decisions of the Social Security Administration, New York Life as to Mr. Mazzamuto's life insurance policy, and other facts that have developed <u>through the passage of time and/or were learned through discovery since the filing of the original Complaint</u>. F.R.C.P. 15(d).

Among the facts that have developed or Plaintiff has learned since the filing of the original Complaint is that in August of 2002, Plaintiff's counsel and expert learned that Defendant UNUM Provident Corporation was a defendant in numerous lawsuits and had been found guilty of unfair insurance practices with respect to other purchasers of occupation specific disability policies.  <u>As a point of fact, UNUM Provident had been ordered to cease and desist in its unfair insurance practices with respect to occupation specific disability insureds</u> under circumstances similar to those in the instant case.  Plaintiff contends in his Motion to File an Amended Complaint that he has been a victim of the same or similar unfair insurance practices that UNUM Provident has committed with other occupation specific insureds for which it has been ordered to cease and desist.  Plaintiff contends that the cease and desist orders apply to UNUM Provident's treatment of Mr. Mazzamuto.

Unfair insurance practices utilized in the other cases have been utilized by UNUM Provident in the instant case.  UNUM Provident attempts to rely upon Mr. Mazzamuto's general job description that appeared in his original application for insurance and/or other claims documents while ignoring Mr. Mazzamuto's statement that his job requires that he stand virtually all of the time.  Defendants in their original denial and persist with that denial to ignore the <u>actual</u> demands of Mr. Mazzamuto's job.  The language of Mr. Mazzamuto's 1992 application on some claim forms is irrelevant.  What is the issue in this case are the actual requirements of Mr. Mazzamuto's job.  The video presented in the instant case clearly shows that Mr. Mazzamuto's job requires standing virtually all of the time and/or bending or lifting or performing other tasks that Mr. Mazzamuto, his wife, and doctors assert that he cannot perform.

A second practice and procedure utilized by UNUM Provident, which has been found to be an unfair insurance practice with respect to occupation specific policies, is UNUM Provident's utilization of an internal review process and rewarding employees who save the

company money by rejecting potentially high cost claims. This is exactly what happened with respect to Mr. Mazzamuto. Defendants rejected his claim based solely upon internal reviews by the company physician, company therapist, and company nurse.

Thirdly, Defendants denied Mr. Mazzamuto's claim without requesting an independent medical examination even though the company manual strongly suggested such examinations to support any denials and even though an independent medical examination seems to be the sine qua non in the denial of any and all major disability claims. Defendants have to this point never secured an independent medical examination.

Defendants' reliance upon an orthopedic surgeon who merely reviewed Mr. Mazzamuto's records and then opined that Mr. Mazzamuto could do his job with accommodation again is still another outlawed unfair insurance practice committed by UNUM Provident.

F.R.C.P. 15(a) states that leave to amend a pleading "shall be freely given when justice so requires"; "this mandate is to be heeded." <u>Foman v. Davis</u>, 371 U.S. 178, 182, 9 L.Ed. 222, 83 S. Ct. 227 (1962). The only bases for denying a motion to amend is "prejudice" to the other party.

The word "prejudice" is discussed in 27A Fed Proc L Ed §62:279, pp. 54, *et* seq. Prejudice "must be undue or substantial prejudice since almost every amendment of a pleading will result in some 'practical prejudice'." Fed Proc L Ed, p. 55. In addition, the mere fact that an amendment changes Plaintiff's theory of the case is not sufficient reason to deny a motion to amend.

> The test has been stated to be whether allowing the amendment would produce a grave injustice to the opposing party, or whether it would cause the opposing party undue difficulty in prosecuting or defending the case. It has been stated in this regard that the trial court, in exercising its discretion, must balance the general policy behind FRCP 15(a), that a controversy should be decided on its merits, against the prejudice that might result from an amendment, and that a

> motion to amend should be denied only in those instances where the prejudice outweighs the right to have the case tried on its merits.
>
> The burden is upon the opposing party to assert and demonstrate that it will be substantially prejudiced by the proposed amendment; its mere statement that it will be prejudiced if the amendment is allowed is not a sufficient reason for denying leave to amend.
>
> Generally, a party will not be prejudiced by an amended pleading if the amendment relates to the same conduct, transaction, or occurrence alleged in the original pleading,…

Id. at 55-57.

Defendants cannot seriously contend that adding the facts that have occurred or which Plaintiffs have learned or a claim made based upon those facts "would produce a grave injustice" to Defendants or causae "undue difficulty" in "defending the case." The burden is on the defense to demonstrate that it will be substantially prejudiced by the amendment.

It is clear from what has been learned in the last six months that UNUM Provident has been on notice through other claims and other actions that its company-wide practices are improper and constitute unfair insurance practices. UNUM Provident not only has been on notice. UNUM Provident has actually been required to defend numerous allegations pertaining to its unfair insurance practices. UNUM Provident has not only had to defend, it has lost a number of cases and is presently under a cease and desist order with respect to the types of unfair practices utilized with respect to Mr. Mazzamuto's claim.

As to the proposed Amended Complaint allegations concerning company-wide unfair insurance practices, UNUM Provident is better prepared than Plaintiff's counsel would be to litigate that issue of company-wide unfair practices. Clearly, UNUM Provident doesn't need to have discovery with respect to <u>its own</u> alleged unfair insurance practices. The principal witnesses who would be called are UNUM Provident employees who have in many instances already testified with respect to the same issues. Defendants have been aware from Plaintiff's

filings, including the filings of supplemental expert reports since August and September of 2002 of Plaintiff's claim of company-wide unfair insurance practices as to Mr. Mazzamuto's claim. As a point of fact, Defendants received notice virtually at the same time that Plaintiff's counsel and Plaintiff's expert learned of the numerous cases against UNUM Provident and the cease and desist order that emanated from the San Francisco court case.

Granting Plaintiff's Petition to Amend need not result in additional delays as to discovery. The requirement of additional evidence at trial would not seem to be an appropriate basis for denying Plaintiff's Petition to Amend. This case has already been delayed through no fault of Plaintiffs, and even if there were some additional delay as a result of the Court's granting of Plaintiff's Motion to File an Amended Complaint, that delay would not seem to be sufficient to offset Plaintiff's entitlement to raise a legitimate issue in the fashion in which it was raised commencing in August and September of 2002 and culminating in Plaintiff's Motion to File an Amended Complaint. The appropriate time to consider as to notice is August and September of 2002 and not the date of the filing of the Petition.

## II.   PROCEDURAL HISTORY

Plaintiff references the comments under I. Introduction and again emphasizes that Defendants have been aware since August and September of 2002 of Plaintiff's practice and procedure claim and would not be "prejudiced" unfairly in being required to defend the unfair practices claim which was raised by Plaintiff's counsel and Plaintiff's expert in August and September of 2002 as soon as they became aware of same.

## III.   FACTUAL HISTORY

Defendants again attempt under III. Factual History to inappropriately argue the viability of Plaintiff's contractual claim on pages 2 and 3 of their Memorandum and claim prejudice when

they have been on notice since August and September of 2002 as to Plaintiff's claims as to company-wide unfair insurance practices.

Defendants assert prejudice and futility contending that Plaintiff's claim has no legal foundation.

As to "futility," Defendants in all of their briefs, including this one, reference <u>Russell v. Paul Revere Life Ins. Co.</u>, 148 F. Supp.2d 392 (D. Del. 2001), a case that originated in the U.S. District Court for the District of Delaware and was decided on June 8, 2001. <u>Russell</u> is an "ERISA" type case, and much of the discussion has to do with the standard of review of ERISA cases.

The factual and procedural history and background of the <u>Russell</u> case is completely different than the instant case. As pointed out, the <u>Russell</u> case reached the Delaware District Court following a <u>complete factual and legal administrative review</u> pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.* (the equivalent of a jury trial). The Delaware District Court was quite limited in reviewing the findings and decisions made in such cases.

In the <u>Russell</u> case, there was no dispute that Mr. Russell's "<u>occupational description</u>" in his claim form <u>conformed with the actual requirements of his job</u> and that Mr. Russell admitted that his job was "sedentary"..

> Paul Revere considered the selection [sedentary job description] an "admission" by Russell that his job was primarily sedentary in nature, and that ultimately Russell was not "totally disabled" from his "sedentary" occupation.

<u>Russell</u>, 148 F. Supp.2d at 397.

The available medical documentation included medical reports from Mr. Russell's own physician but <u>also reports from two independent medical examinations</u>. The medical documentation <u>failed to support total disability</u> from Mr. Russell's admitted sedentary

occupation. As a point of fact, there was virtually no objective test result confirming his complaint of "chronic abdominal pain, combined with periodic nausea, as well as frequent muscle [and] joint pain resulted in fatigue, difficulty concentrating [and an] inability to work for extended periods." 148 F.Supp., at 397.

There was also <u>private surveillance</u> of Russell's daily activities on selected occasions in October and December, 1995 and May and June, 1996, which compromised Mr. Russell's claim of total disability as to his sedentary job. Id. at 397, 398.

Unlike Mr. Mazzamuto, Russell's claim for Social Security disability benefits <u>was denied</u>. The District Court specifically referenced and discussed Mr. Russell's Social Security Administration disability claim. Id. at 398, 399. It should be noted that Defendants rely very heavily on <u>Russell</u>. Defendants have, however, filed briefs with Your Cour claiming that the Social Security Administration history in the <u>Mazzamuto</u> case should not be considered by either you or the jury as being relevant as to Mr. Mazzamuto's claim for total disability.

The Delaware District Court discusses the standard of review in ERISA cases commencing at 399 and continuing for several pages.

The basis for which Paul Revere denied Mr. Russell's total disability claim, which was upheld by the District Court, appears at page 403:

> Specifically, citing the policy language, Russell's occupational description, and the medical documentation submitted by his doctors, Paul Revere noted that it was "unable to determine <u>any</u> restrictions and/or limitations that would prevent [him] from returning to [his] <u>sedentary</u> occupation.

<u>Russell</u>, 148 F. Supp.2d at 403, emphasis supplied.

Defendants take <u>out of context</u> the group disability policy which defines total disability as:

> 1. Because of injury or sickness, the employee cannot perform the important duties of his own occupation; and

* * *

Id. at 404.

> The policy provides that an employee is totally disabled when that "employee cannot perform the important duties of his own occupation." It is unclear, however, what the employee must not be able to perform <u>any or all</u> of the important duties in order to be deemed totally disabled. The court finds the answer in the section of the Individual and Group policies entitled "Residual Disability." Among other things, the language of this section provides that a person may be found to be disabled if he or she "is unable to perform <u>one or more</u> of the important duties of [his or her] occupation." (emphasis added). As implied by this language, a "residual disability" is the disability remaining after recovery of the employee from the circumstances that rendered him or her disabled. See Webster's 3d New Int'l Dict. The employee who suffers a residual disability is entitled to a lesser benefit than the totally disabled employee. Thus, it would seem there is an expectation that the former will continue to work, in some capacity, in his or her occupation.
>
> It is reasonable to assume that the employee who is totally disabled receives a greater benefit because he or she is completely unable to perform their job related responsibilities. That is, in the case of the totally disabled employee, it would seem reasonable to conclude that there is no ability to perform any of the important duties of his or her occupation. Simply put, the employee will not continue to work for the employer in any capacity in his or her occupation.
>
> Finally, the court also finds that the policy language places upon the employee the initial burden to demonstrate that he or she can not perform any of the important duties of his position.

Id. at 404-405.

Defendants contend that the Delaware District Court's language stands for the proposition that if an individual is able to perform <u>one or more</u> of the important duties of his occupation, he is not totally disabled. If this were the case, the Delaware District Court could very easily have decided the case in a page or two because Mr. Russell could (1) negotiate with major anchor tenants, (2) oversee any expansion – renovation plans, (3) serve as a liaison with local officials, (4) be involved in the approval process of budgets, marketing plans, and lease plans, (5) be involved in some way in approval of lease requirements and lease adjustments, etc., and/or (6) analyze properties with a view to purchase. <u>Id</u>. at 397. <u>The Delaware District Court</u>

<u>does not, however, hold that, since Mr. Russell can do one or more or all of the six principal duties admitted to that he is, therefore, not totally disabled</u>.

The Delaware District Court discusses Mr. Russell's entire medical history weighing and balancing the reports from his family physicians with the reports from the physicians who did independent medical examinations for the defense actually giving significant weight to the attending physicians:

> Certainly, the opinions of Russell's attending physicians should be given significant weight as they have had the greatest opportunity to examine him and monitor his condition.  However, these opinions should also be balanced against the body of medical documentation presented in support of Russell's claim.  The court's review of this documentation as a whole does not suggest to it that a compelling case exist which would support a finding of total disability.  In fact, as previously noted, the vast majority of examination results provide neither a diagnosis of the cause of Russell's symptoms or explanation for their severity.  Thus, the court, looking objectively at the medical evidence and the policy terms, finds it difficult to conclude that Russell was totally disabled from performing all of the important duties of his occupation as a Real Estate Asset Manager.
>
> * * *
>
> Furthermore, as noted in the letters to Russell, his admitted level of participation in non-job-related activities also appears inconsistent with a finding of total disability….
>
> Finally, the findings of the administrative law judge have no bearing on this court's determination whether the decision to deny benefits was arbitrary and capricious….
>
> Although the court believes that the aforementioned evidence, taken as a whole, demonstrates that Russell's chronic pain likely hindered many of his important job duties, the court does not find that at any one time Russell was precluded from performing all of his important duties as defined under the Individual and Group policies.  Therefore, the court concludes that Paul Revere's decision to deny Russell long-term disability benefits, initially on January 16, 1996, and on appeal, on June 20 and 28, 1996, was not arbitrary and capricious under the law.

<u>Supra</u>, at 408, 409.

Defendants also reference <u>DiTommaso v. The Union Central Life Ins. Co.</u>, 1991 U.S. Dist. LEXIS 17079 (E.D. Pa. 1991).  In that case, the plaintiff was an osteopathic physician and

surgeon who had permanently injured his index finger preventing him from performing manipulations and minor surgery. His claim for total disability was denied on the basis that his regular occupation at the time of his disability was that of an osteopathic physician and not as a surgeon.

Defendants also reference the Supreme Court opinion in <u>Cobosco v. Life Assurance Co. of Pennsylvania</u>, 419 Pa. 158, 213 A.2d 369 (1965). Since this is a diversity case, Your Court must follow the law of Pennsylvania, which has been expressed by the Supreme Court in <u>Cobosco</u>. There is no District Court or Third Circuit or federal law as to what is or is not "total disability."

First of all it should be noted that the policy in the <u>Cobosco</u> case was not occupation specific as in the <u>Mazzamuto</u> case. Nevertheless, the Supreme Court upheld a jury finding of total disability of Mrs. Cobosco as a "hardware merchant" even though Mrs. Cobosco could and did "come to the store on three days of the week, on each of these days she could remain there for one to three periods lasting from twenty minutes to one hour, during which time she could do light selling, dictate policy, and supervise others. " <u>Cobosco</u>, 213 A.2d at 371. Selling, dictating policy, supervising employees are part of the job description of an owner/operator of a hardware store or pizza shop. The requirements of a pizza owner/manager are even more demanding. <u>See</u>, Mr. Mazzamuto's video. Mr. Mazzamuto has not come to work or done any work of any kind since his claimed disability date of July 2000.

Like the Mazzamuto factual situation, most of which Mrs. Cobosco formerly did by herself was done by others, including her mother, sister, and particularly her son.

The pertinent clause of the Cobosco insurance contract provided:

> [T]he term 'total disability' as herein defined, shall, when used in this policy contract, be construed as and be co-extensive with the terms totally disabled, disabled and disability, and shall mean such inability of the Insured to perform

> duties of any gainful occupation for which he may be reasonably fitted by reason of training, experience and accomplishment.

Cobosco, 213 A.2d at 371. It is quite clear that the Cobosco insurance contract of total disability was much more restrictive than Mr. Mazzamuto's occupation specific policy and more akin to the Social Security Administration's definition of "total disability." The Supreme Court discussed in great detail the meaning of "totally disabled:"

> … Mrs. Cobosco stated her occupation as a "hardware merchant." However, under her policy, she would not necessarily be entitled to "total disability" benefits merely because she was "totally disabled" as a hardware merchant. Her policy requires her to be "totally disabled" with respect to "any gainful occupation for which [she] may be reasonably fitted by reason of training, experience and accomplishment." The wording of this clause reflects, to some extent, the rule that clauses in total disability insurance policies, which relate to the occupation to be considered in determining whether the insured is entitled to benefits, will not be literally construed or applied when, to do so, would make recovery of benefits unreasonably impossible in all or practically all cases.

Cobosco, 213 A.2d at 372. It is interesting that the Supreme Court footnote 2 states:

> Of course, an insured and insurer <u>might</u> contract, if they so desire, to insure against "total disability" to engage in a particular occupation only and, therefore, benefits might be recoverable regardless of the insured's ability to perform other occupations.

Id. at 372, emphasis in original. This is the exact situation that occurred in the instant case.

> … Moreover, if the evidence reasonably supports the conclusion that Mrs. Cobosco is totally disabled from being a hardware merchant in connection with a store owned by her, then it also reasonably supports the conclusion that she is totally disabled from performing such occupation in connection with a hardware store owned by someone else.

Id. at 372.

> The Supreme Court expressed its opinion as to what constitutes "total disability:"
>
> In our opinion, where, as here, the question of "total disability" must be decided in the context of the ability of the insured to perform the acts or duties necessary to the operation of a business owned by him,, the cases hold that the insured must prove that the personal efforts that he himself is capable of making in the operation of the business are insubstantial and unimportant, by reason of their low quality or quantity, in relation to the character and amount of work required to carry on the business.

* * *

>In determining the substantiality and importance of the insured's contribution to his own business, the fact that the insured might not be able, because of his disability, to obtain employment in a similar business owned by someone else may be relevant, but it does not conclusively prove total disability. (citing authority) On the other hand, the fact that the business may be carried on by others, and that no one can prohibit the owner or proprietor from participating to whatever degree he is able and desires, does not bar the insured from recovering when, in fact, his participation is insubstantial and unimportant.

<u>Supra</u>, at 373.

>The insurance company has argued that we should consider the substantiality and importance of Mrs. Cobosco's efforts only in relation to the duties of supervising and managing the store rather than in relation to all the duties involved in the operation of the store. The argument is based upon the fact that, in her insurance application, Mrs. Cobosco noted her "duties" as "manager supervisory". Even if we were to accept the insurance company's argument, the jury might have reasonably concluded that the limited amount of time that she was able to spend in the store prevented Mrs. Cobosco from making a substantial and important contribution to the fulfillment of the duties of a manager and supervisor. Moreover, we do not agree with the insurance company's argument. Mrs. Cobosco was insured against her inability to "perform duties of any gainful occupation for which [she] may be reasonably fitted by reason of training, experience and accomplishment," which, under the facts of this case, means inability to perform duties of operating her hardware store. The occupation which Mrs. Cobosco noted in her insurance application was that of a "hardware merchant". This occupation reasonably implies the whole range of duties included in the operation of the hardware store and not just "manager supervisory" duties. (citing authority) Thus, both her occupation, in fact, and that stated in her policy includes more than manager supervisory duties.

<u>Cobosco</u>, 213 A.2d at 374.

Instead of supporting Defendants' position, <u>Cobosco</u> requires that the issue of Mr. Mazzamuto's total disability be submitted to a jury with Court instructions as delineated by the Supreme Court as modified by Mr. Mazzamuto's occupation specific disability policy. Any ambiguity in an insurance policy, as what was meant by the disability definition in Mr. Mazzamuto's policy, must be read in favor of the insured and against the insurer.

The discussion as to disability insurance policies emphasizes the importance of the Court reconsidering its decision to exclude Plaintiff's expert. How is a plaintiff going to present to a

jury the daily practices of insurance, including notice, investigation, interpretation of language, time tables, insurance manuals, independent medical examinations, in-house review, etc., without an expert?

Although Plaintiff's counsel has discussed in great detail the cases cited and relied upon by defense counsel, it should be noted and emphasized that <u>Russell</u>, <u>Ditommaso</u>, <u>Cobosco</u>, and <u>Moskowitz v. Prudential Ins. Co. of America</u>, 154 Pa. Super. 362, 35 A.2d 567 (1944) have nothing to do specifically with respect to Plaintiff's Petition to Amend his Complaint, which is controlled by F.R.C.P. 15(a), (b), (c), and (d).  The law is clear that Plaintiff's Petition should be granted unless Defendants can show unfair prejudice which clearly they cannot show.  They have known since August and September of 2002 of Plaintiff's claim of company-wide unfair insurance practices with respect to this claim, as well as the other bad faith actions averred in Plaintiff's proposed Amended Complaint.

    Respectfully submitted,

    ANGINO & ROVNER, P.C.


    <u>s/ Richard C. Angino</u>
    Richard C. Angino, Esquire
    I.D. No. PA07140
    Joan L. Stehulak, Esquire
    I.D. No. PA29496
    4503 N. Front Street
    Harrisburg, PA  17110
    (717) 238-6791
    Attorney for Plaintiff

Date:  March 17, 2003

## **CERTIFICATE OF SERVICE**

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S REPLY BRIEF RE PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT** was served by United States first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA  19603-0679
    Counsel for Paul Revere Life Insurance Company and New York Life Insurance Company

                                     s/ Richard C. Angino
                                          Richard C. Angino

Dated:  March 17, 2003