# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO,<br>Plaintiff, | : | CIVIL ACTION<br>NO. 1:CV-01-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT<br>CORPORATION, et al.,<br>Defendants | : | JUDGE CONNER |

FILED
HARRISBURG

APR 0 7 2003

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER

## I.    INTRODUCTION

Defendants UNUM Provident Corporation, Paul Revere Insurance Company and New York Life Insurance Company ("Defendants"), hereby oppose Plaintiff's motion for reconsideration.  Plaintiff's motion should be denied because Plaintiff fails to offer newly discovered evidence requiring the Court's review and fails to demonstrate a manifest error of law.  Instead, the Court properly applied the applicable law and correctly held, based on the undisputed facts, that Defendants were entitled to judgment as a matter of law on Plaintiff's bad faith claim.

1

## II.   PROCEDURAL HISTORY

Plaintiff alleges claims for bad faith and breach of contract arising from the denial of his claim for disability benefits.  On August 9, 2002, Defendants filed a motion for summary judgment.  Plaintiff filed his brief in opposition on August 26, 2002.  On March 17, 2003, after consideration of the parties' submissions, the Court issued an order granting in part Defendants' motion for summary judgment with regard to Plaintiff's bad faith claim.

Now, despite the Court's detailed opinion explaining the basis for its ruling, Plaintiff filed a motion for reconsideration contesting the Court's reasoning and judgment.

## III.   COUNTERSTATEMENT OF THE FACTS

In ruling on Defendant's motion for summary judgment, the Court found that there was sufficient record evidence indicating that Defendants had a reasonable basis for denying Plaintiff's claim for benefits.  Mazzamuto v. UNUM Provident Corp., No. 1:CV-01-1157, at 6 (M.D. Pa. March 17, 2003) (hereinafter "Opinion").  Therefore, the Court properly held that Plaintiff cannot meet his burden of proving, by clear and convincing evidence, a lack of a reasonable basis for denying benefits under the policy. [Id. at 6].

In a detailed opinion, the Court explained the summary judgment standard, the legal authority establishing Plaintiff's burden of proof, and the factual basis for

2

finding that Plaintiff could not meet that burden.  Specifically, the Court cited 42 Pa. C.S.A. § 8371, and reasoned that to preclude summary judgment, Plaintiff must show <u>by clear and convincing evidence</u> that Defendants (1) had no reasonable basis for denying benefits under the policy, and (2) knew or recklessly disregarded the lack of a reasonable basis.  [Opinion, p. 6].  As explained below, there is no question that this is the proper standard.

The Court then set forth the factual basis for holding that Defendants had a reasonable basis for denying Plaintiff's claim for benefits.  First, the Court noted that there was an abundance of conflicting evidence in the record regarding the restrictions and limitations allegedly arising from Plaintiff's physical and mental condition.  [Opinion, p. 7].  Second, the Court acknowledged that no less than three medical experts opined that Plaintiff is not disabled under the terms of the policy. [Opinion, p. 7].  Third, the Court found that Defendants reviewed the relevant medical records, spoke with Mr. Mazzamuto, went to see his restaurant, and "conducted an independent medical investigation." [Opinion, p. 7].  Based upon this evidence, the Court found that Defendants conducted an adequate investigation and there was a reasonable basis for denying Plaintiff's disability claim. [Opinion, p. 7].  Thus, the Court held that Plaintiff could not meet his burden of showing a lack of a reasonable basis by clear and convincing evidence and properly granted Defendants motion summary judgment on Plaintiff's bad faith claim.

3

Although he now seeks reconsideration, Plaintiff fails to provide newly discovered evidence requiring the Court's reconsideration. He also fails to identify a manifest error of law. Instead, Plaintiff merely rehashes legal authority cited by the Court and focuses on a single statement in the Court's opinion without acknowledging that the rest of the Court's opinion clearly sets forth proper grounds for granting summary judgment.

## IV.  COUNTER STATEMENT OF THE QUESTION PRESENTED

**A.  Should the Court deny Plaintiff's motion for reconsideration where there is no newly discovered evidence and no manifest error?**

[Suggested Answer:  Yes.]

## V.  ARGUMENT

There are very few accepted reasons for reconsideration, and none are present here. A motion for reconsideration should be granted <u>only</u> to correct manifest errors of law or fact or to present newly discovered evidence. <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985). Courts in the Third Circuit apply a stringent standard for determining whether to grant a motion for reconsideration. <u>Petruzzi's, Inc. v. Darling Delaware Co., Inc.</u>, 983 F.Supp. 595, 611 (M.D. Pa. 1997). Reconsideration is an "extraordinary remedy" and should be denied "when the motion is merely a re-styling or rehash of issues previously

4

presented." <u>GFL Advantage Fund, Ltd. v. Colkitt</u>, No. 4:97-CV-0526, 2000 U.S. Dist. LEXIS 21747, at *4 (M.D. Pa. July 17, 2000).

The court should not consider "new evidence or a new legal theory which could have been presented on the original motion. <u>Id.</u> at *5. "Mere disagreement with the court is a ground for appeal, not a motion for reconsideration." <u>Id.</u>

Here, Plaintiff fails to (1) present new evidence not previously available, or (2) to demonstrate a need to correct a clear error of law or prevent a manifest injustice. Instead, Plaintiff appears to be arguing that the Court applied the wrong standard for determining whether Defendants had a reasonable basis for denying his claim. In effect, Plaintiff argues that the Court erred by focusing only on the facts and circumstances relevant to his claim for benefits. But this is not so, and for the reasons explained below, Plaintiff's motion should be denied.

## A.   PLAINTIFF FAILS TO PRESENT NEWLY DISCOVERED EVIDENCE NOT PREVIOUSLY AVAILABLE

Plaintiff may not resubmit and rely upon evidence available before the Court's ruling, and the Court may properly disregard any such evidence. <u>Harsco</u>, 779 F.2d at 909; <u>Plaisted v. Geisinger Medical Center</u>, 210 F.R.D. 539, 542 (M.D. Pa. 2002) (court is justified in refusing to consider evidence that could have been submitted with the original motion). Here, Plaintiff presents nothing new for the Court to reconsider. In fact, Plaintiff refers to record evidence (albeit without citation) and to the Court's opinion, but fails to identify any new fact or law

5

warranting the Court's attention.  Specifically, Plaintiff alleges that other courts in other jurisdictions submitted the question of bad faith to a jury.  [Plaintiff's Motion, ¶¶ 1, 3, 4, 5, 7].  Plaintiff further alleges that information from other cases about other claims was submitted for the Court's consideration in Plaintiff's Motion to Amend the Complaint. [Plaintiff's Motion, ¶ 2].  By doing so, Plaintiff acknowledges that this information is not newly discovered but, in fact, was part of the record.

Moreover, the Court granted Plaintiff's Motion to Add Additional Authority which included additional caselaw and a newspaper article.  [Opinion, p. 5].  The Court expressly stated it examined "all relevant legal authority."  [Opinion, p. 5]. Thus, Plaintiff's Motion for Reconsideration is not warranted on the basis of newly discovered evidence.

## B.  THERE WAS NO MANIFEST ERROR

The Court properly stated and applied the standard for proving bad faith under 42 Pa. C.S.A. § 8371, as well as Plaintiff's burden of proof for avoiding summary judgment. To prevail on his claim of bad faith, Plaintiff "must prove that defendants: (1) did not have a reasonable basis for denying benefits under the policy, and (2) knew or recklessly disregarded the lack of reasonable basis in denying the claim." [Opinion, ¶ 6 (citing the Pennsylvania's bad faith statute, Keefe v. Prudential Property and Casualty Ins. Co., 203 F.3d 218, 225 (3d Cir.

6

2000) and <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997))].

Also, the Court properly stated that Plaintiff had the burden of proving "both elements by clear and convincing evidence," [Opinion, p. 6 (citing <u>Klinger</u>, 115 F.3d at 233 and <u>Polselli v. Nationwide Mut. Fire Ins. Co.</u>, 23 F.3d 747, 750 (3d Cir. 1994))], sufficient to "enable a reasonable jury to find bad faith . . . ." [Opinion, p. 6 (citing <u>Simon v. UNUMProvident Corp.</u>, No. 99-6638, 2002 U.S. Dist. LEXIS 9331, at *19 (E.D. Pa. May 23, 2002) and <u>Krisa v. Equitable Life Assurance Soc.</u>, 113 F. Supp. 2d 694, 703 (M.D. Pa. 2000))].

Armed with the proper standard and the proper facts, the Court concluded that the evidence demonstrated that Defendants had a reasonable basis for denying Plaintiff's claim for benefits, and therefore Plaintiff could not prove by clear and convincing evidence the first element of his claim of bad faith.

## 1. The Court's Application of Precedent Was Not a Manifest Error.

In Plaintiff's Brief in Support of His Motion for Reconsideration, Plaintiff's sole argument is that the Court's "Opinion is both factually and legally erroneous" because the "cases referenced are factually and/or legally inappropriate." [Plaintiff's Brief, p. 2]. Nevertheless, an examination of the case law cited by the Court reveals that Plaintiff's argument has no merit.

7

First, Plaintiff argues that the Court's reference to <u>Keefe</u> was erroneous but fails to give clear reasons. [Plaintiff's Brief, p. 3]. Plaintiff appears to argue that the <u>Keefe</u> decision involves factual circumstances that differ from his claims and that somehow this amounts to an error. But reconsideration is not warranted because the Court cited <u>Keefe</u> as stating the proper definition of bad faith under Pennsylvania law and for the proposition that bad faith was more than "mere negligence or bad judgment." [Opinion, p. 6, 8 (quoting <u>Keefe,</u> 203 F.3d at 225 (citations omitted))]. In fact, the Third Circuit in <u>Keefe</u> reversed the lower court and held that <u>summary judgment was proper on plaintiff's bad faith claim</u>. Thus, the Court's citation of <u>Keefe</u> was not a manifest error and clearly supports the Court's grant of summary judgment here.

Second, Plaintiff appears to argue that the Court's citation of <u>Woody v. State Farm Fire and Casualty Co.</u>, 965 F. Supp. 691 (E.D. Pa. 1997), was erroneous for the similar reasons. Nevertheless, the Court cited <u>Woody</u> for properly defining bad faith and nothing more. [Opinion, p. 6]. While Plaintiff is correct that <u>Woody</u> held that a six year statute of limitations applies to bad faith actions, the holding is not relevant to the Court's reference to the <u>Woody</u> court's definition of bad faith, and this in itself does not amount to manifest error.

Third, the Court's cites <u>Simon v. UNUMProvident Corp.</u>, No., 99-6638, 2002 U.S. Dist. LEXIS 9331 (E.D. Pa. May 29, 2002), for the standard Plaintiff

must meet to avoid summary judgment on a bad faith claim.  Specifically,

"plaintiff must present evidence that would enable a reasonable jury to find bad

faith" by clear and convincing evidence.  [Opinion, p. 6; <u>Simon</u>, 2002 U.S. Dist.

LEXIS 9331, at *18-19].

    While Plaintiff argues that <u>Simon</u> "is directly on point," [Plaintiff's Brief, p.

3], Plaintiff's interpretation of Simon is mistaken and misses the point.  Plaintiff

states that the <u>Simon</u> court held that "the issue of bad faith must be submitted to the

jury <u>even when Unum has an independent medical examination</u>." [Plaintiff's Brief,

p. 3 (emphasis in the original)].  But <u>Simon</u> held no such thing.  In <u>Simon</u>, the

plaintiff claimed that the defendant had interfered with the IME process; it did not

hold that an IME is required or that summary judgment cannot be granted on a bad

faith claim.

    Thus, the <u>Simon</u> court held that the defendant was not entitled to summary

judgment because the plaintiff had "adduced sufficient evidence from which a jury

could find under the clear and convincing standard that Defendants acted in bad

faith . . . ."  2002 U.S. Dist. LEXIS 9331, at * 22-23.  In other words, the plaintiff

in <u>Simon</u> did what Plaintiff here has not:  established by clear and convincing

evidence that a reasonable jury could find bad faith.  The Court here recognized

this distinction, and properly granted summary judgment.

9

Fourth, Plaintiff argues that the Court's application of <u>Klinger</u>, 115 F.3d 230, <u>Polselli</u>, 23 F.3d 747, and <u>Krisa</u>, 113 F. Supp. 2d 694, constitutes an error because those Courts submitted bad faith to the jury. [Plaintiff's Brief, p. 3]. The Court, however, cited these cases not for the particular outcome on the merits but to set forth the standard for proving bad faith and the standard for avoiding summary judgment on bad faith. [Opinion, p. 6]. In all three case, the Court accurately set forth the standard and properly applied the standard.

Particularly curious is Plaintiff's argument that the <u>Krisa</u> court "reserved an issue of bad faith for the jury." [Plaintiff's Brief, p. 3]. While the <u>Krisa</u> court did allow the jury to consider the conduct of investigators arising from a counterclaim, the <u>Krisa</u> court actually granted summary judgment for the insurer on the plaintiff's bad faith claim. <u>Krisa</u>, 113 F. Supp. 2d at 705 (holding that plaintiff failed to adduce sufficient clear and convincing evidence on which a jury could find bad faith). Thus, far from constituting a manifest error, the Court's citation and application of these cases supports summary judgment on Plaintiff's bad faith claim.

In short, there is nothing about bad faith claims that insulate such claims from Rule 56. Rather, if the standards for summary judgment are met, then "the judgment sought shall be rendered forthwith" as contemplated by Rule 56(c).

10

Finally, underlying much of Plaintiff's argument is the notion that the Court should have focused on matters unrelated to Plaintiff's claim (such as tabloid news coverage about Defendants) rather than focus on the specific facts of Plaintiff's claims. Yet, what Plaintiff fails to acknowledge is that in each of the cases he cites, the courts examined each of the respective plaintiffs' bad faith claims based on the facts and circumstances of the individual's claim for benefits. None of these courts found it necessary to delve into other unrelated claims, news articles, or irrelevant deposition testimony. In fact, under Pennsylvania law, evidence of other bad faith claims is not relevant. E.g., Cantor v. Equitable Life, 1998 U.S. Dist. LEXIS 8435 at * 10-11 (E.D. Pa. 1998); Kaufman v. Nationwide Mutual Ins. Co., 1997 U.S. Dist. LEXIS 18530 at * 6 (E.D. Pa. 1997); Shellenberger v. Chubb Life, 1996 U.S. Dist. LEXIS 2375 (E.D. Pa. Feb. 22, 1996); North River Ins. Co. v. Greater New York Mutual Ins. Co., 872 F. Supp. 1411 (E.D. Pa. 1995). Instead, disability disputes are determined by the applicable policy language, the applicable case law, and the facts which are unique to each claim.

An example of this focused approach is found in a recent Eastern District decision, which excluded evidence of unrelated claims and irrelevant deposition testimony from other lawsuits and shed light on why courts should do so in bad faith claims. See Mann v. UNUM Life Ins. Co. of America, No.02-1346, slip op., (E.D. Pa. Mar. 19, 2003), attached hereto as Exhibit 1.

11

The <u>Mann</u> court found that bad faith under the Pennsylvania statute involves only an assessment of "whether the insurer acted recklessly or with ill will towards the plaintiff in a particular case, not whether the defendant's business practices were generally reasonable."  No. 02-1346, at 3 (granting motion in limine to exclude).  <u>See also</u> <u>Athletic Indus. Inc. v. Continental Casualty Co.</u>, 969 F. Supp.289, 307 (E.D. Pa. 1997).  Thus, the Court here was correct in focusing on the facts and circumstances particular to Plaintiff's claim.  There was no error of law in the Court's application of the above-cited cases and Plaintiff's Motion for Reconsideration should be denied.

### 2.  The Court's Reference to Dr. Clarke's Review of Plaintiff's Disability Claim Was Not a Manifest Error.

As stated above, the Court acknowledged Defendants conducted an adequate investigation into Plaintiff's disability claim.  [Opinion, p. 7].  The Court recounted that the investigation included a review of Plaintiff's medical records, speaking with the Plaintiff, visiting his place of employment, and an independent medical investigation.  [Opinion, p. 7].  Yet, Plaintiff in his Motion and Brief devotes considerable effort dwelling on a single statement in the Opinion in which the Court labeled Dr. Clarke's Medical Review as an "examination."  [Opinion, p. 3; Plaintiff's Motion, ¶¶ 9, 10, 15; Plaintiff's Brief, pp. 1-2].[1]  Plaintiff excises this

---

[1]    While Plaintiff's Motion includes repeated references to the "examination" and Plaintiff mentions it in the "Factual and Procedural History" to his Brief, Plaintiff fails to include any reference to this point in his argument.

12

single statement, out of the context of the Court's full analysis and opinion, and appears to assert that this is sufficient to warrant reconsideration to the entire bad faith analysis. Nonetheless, a proper reading of the entire opinion makes clear the Court understood that Dr. Clarke's contribution to the comprehensive evaluation of Plaintiff's claim for benefits was not a personal examination but rather was to participate as part of the medical "investigation" and review. [Opinion, p. 7].

In addition, Plaintiff mentions in his motion that Dr. Clarke never rendered an opinion with regard to Plaintiff's back condition.[2] Plaintiff appears to be raising this as an error and grounds for reconsideration. Nevertheless, a proper reading of Dr. Clarke's report (attached as Exhibit B to Plaintiff's Motion) shows that Dr. Clarke found no reason to find Plaintiff totally disabled as a result of his intermittent back pain. In fact, Dr. Clarke opined that Plaintiff's intermittent back pain was the result of specific "episodes of trauma," and over time Plaintiff had demonstrated the ability to return to work. [Plaintiff's Motion, Exhibit B]. Thus, there was no manifest error.

---

[2] Again, Plaintiff mentions this point in his Factual History but fails to make an argument.

13

# VI.  CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motion for reconsideration.

Dated:  April **4**, 2003

STEVENS & LEE

By _____
E. Thomas Henefer
Attorney I.D. No. 55773
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603
(610) 478-2000

**Attorneys for Defendants**

A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM A. MANN,                    :        CIVIL ACTION
              Plaintiff             :
                                    :
        v.                          :
                                    :
UNUM LIFE INSURANCE COMPANY         :
OF AMERICA, at al.                  :
              Defendants            :        NO. 02-1346

## ORDER

AND NOW, this 19th day of March, 2003, upon

consideration of the plaintiff's motion in limine (Docket # 19),

the plaintiff's renewed motion to compel (Docket # 26), and the

defendants' motion for a protective order (Docket # 31), and

following oral argument on January 23, 2003, IT IS HEREBY ORDERED

that, for the reasons explained in a memorandum of today's date,

the motion in limine is DENIED, the motion to compel is DENIED,

the portion of the motion for a protective order that relates to

the plaintiff's requests for reserve information is GRANTED, and

the portion of the motion for a protective order that relates to

the timeliness of the corporate designee notice is DENIED AS

MOOT.

BY THE COURT:

MARY A. MCLAUGHLIN,   J.

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WILLIAM A. MANN,
               Plaintiff        :        CIVIL ACTION
                               :
       v.                     :
                               :
UNUM LIFE INSURANCE COMPANY   :
OF AMERICA, at al.              :
               Defendants     :       NO. 02-1346

## MEMORANDUM

McLaughlin, J.                              March 19 , 2003

        Before the Court are three issues that have been raised by the plaintiff's motion in limine, the plaintiff's motion to compel, or the defendants' motion for a protective order. These issues are: whether the plaintiff should be allowed to introduce at trial the videotaped testimony of Dr. Patrick Fergal McSharry, a former employee at the Chattanooga office of one of the defendants; whether the defendants shall be required to produce statistical information about the defendants' handling of other claims; and whether the defendants shall be compelled to produce information about the impact of reserves on the defendants' profitability, the defendants' general reserve setting and release procedures, and the specific reserve amount set for the

1

plaintiff's claim[1].

Because the plaintiff has not shown that the testimony of Dr. McSharry is relevant and because its admission would violate other rules of evidence, the Court denies the motion in limine. The Court also denies the plaintiff's motion to compel statistical information. The Court grants the portion of the motion for a protective order that relates to the reserve information[2].

I. Motion in Limine- Dr. McSharry's Testimony

The plaintiff's complaint presents a claim of bad faith under 42 Pa. C.S.A. § 1871. To succeed on this claim, the plaintiff must prove that the defendant insurer lacked a reasonable basis for denying benefits to the plaintiff, and that the insurer knew of, or recklessly disregarded, its lack of a reasonable basis. Terletsky v. Prudential Property and Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994).

---

[1] The motion in limine seeks the admission of Dr. McSharry's testimony. The plaintiff's motion to compel requests the statistical information. The defendants raised the reserve information issues in their motion for a protective order in response to the plaintiff's requests for such information.

[2] The motion for a protective order also raised an issue regarding timeliness of the notice of the deposition at issue. The defendants have agreed to set aside this issue. In the order accompanying this memorandum, the Court denies this part of the motion for a protective order as moot.

The plaintiff has also pled and is pursuing a claim for breach of contract.  In order to prove this claim, the plaintiff must show that 1) there was a contract between the defendant and the plaintiff; 2) the defendant breached a duty imposed by that specific contract; and 3) damages resulted.  J.F. Walker Co. inc. v. Excalibur Oil Grp., 2002 Pa. Super. 39 (2002).

Both of these claims focus on the defendants' conduct towards the plaintiff specifically, not the defendants' general conduct.  The Court finds that the testimony of Dr. McSharry is not relevant to either of these claims because the testimony relates only to the general business practices of the defendants, not to the handling of the plaintiff's claim.

I agree with the reasoning of Judge Cahn in Hyde Athletic Indus. Inc. v. Continental Casualty Co., 969 F. Supp. 289, 307 (E.D. Pa. 1997).  The bad faith statue addresses only whether the insurer acted recklessly or with ill will towards the plaintiff in a particular case, not whether the defendants' business practices were generally reasonable.  This reasoning also applies to the plaintiff's breach of contract claim, which relates only to the terms of any contract between the parties and not the defendants' general business practices.  Unless the plaintiff can show a link between his specific case and the allegedly unreasonable general business practices, such practices

3

are irrelevant to the plaintiff's claim.  See Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583 (E.D. Pa. 1999)(granting summary judgment in bad faith case despite evidence of defendant's use of flawed computer program because no evidence of a link between the computer program and the handling of plaintiff's claim).

Dr. McSharry's testimony is relevant only to the general reasonableness of the defendants' procedures, not to the handling of the plaintiff's claim or to the purported breach of any contract between the parties.

It is undisputed that Dr. McSharry was not involved in and had no knowledge of the handling of the plaintiff's claim. The plaintiff argues that Dr. McSharry's testimony is still relevant, however, because it provides evidence of a company-wide policy in place in all of the defendants' offices, which was then applied to the plaintiff's claim.  There is no evidence that there was a company-wide policy or that such a policy was applied to the plaintiff's case.

Dr. McSharry testified at length about the claim review practices employed by the Chattanooga office.  It is clear from Dr. McSharry's testimony that his knowledge relates only to his

personal experience in that office[3].  There is no evidence that
the unwritten patterns and practices followed by those in the
Chattanooga office were the general business practices of the
company as a whole.  Dr. McSharry does not state or allege that
the practices were based on company-wide policy or were engaged
in pursuant to orders from anyone outside the Chattanooga office.
The plaintiff has presented no other evidence that would indicate
that those reviewing the plaintiff's claim engaged in the same
practices about which Dr. McSharry testified.  Without any
indication of a link to the instant case, Dr. McSharry's
testimony is irrelevant and inadmissible.

     In addition to being irrelevant, Dr. McSharry's
testimony would inject several additional issues into the trial.
These issues include evidence about Dr. McSharry's employment and
termination, his own lawsuit against the defendants, and about
the patterns and practices of the Chattanooga office and those
with whom Dr. McSharry worked.  The undue delay, waste of time,
and potential confusion of the issues that would result far
outweigh any probative value the testimony has, mandating its
exclusion under Federal Rule of Evidence 403.

     Additionally, it is questionable whether the plaintiff

---

[3]The plaintiff's claim was not handled through that office
or by individuals associated with that office.

5

has met the requirements for the admission of hearsay deposition testimony under Federal Rule of Evidence 804(b).

Under this Rule, former testimony may be admitted if the declarant is unavailable. The plaintiff argues that Dr. McSharry is unavailable because Magistrate Judge Wulliam B. Mitchell Carter of the District Court for the Eastern District of Tennessee has issued an order stating that no further depositions of Dr. McSharry would be taken without the express prior permission of that court. In order to get this permission, the party wishing to depose Dr. McSharry must petition the court and show why the additional testimony is necessary.

The plaintiff has not petitioned Magistrate Judge Carter for permission to depose Dr. McSharry. Because the plaintiff has not explored this avenue of obtaining Dr. McSharry's testimony, it would be premature to find that the testimony cannot be procured by process or other reasonable means.

It is also questionable whether the plaintiff has demonstrated that the defendants had the motive and opportunity to develop the testimony of Dr. McSharry as required by Rule 804(b)(1). The deposition testimony at issue was taken as part of six separate lawsuits, unrelated to this case, filed against the defendants and other affiliates. The defendants allege that

cross-examination was cut off before it was complete, at the end of one and one-half days.  It is questionable whether one and one-half days is sufficient to fully develop the testimony of a witness who has been subpoenaed for deposition in at least twenty claims against the defendants.

In addition to showing that the defendants had the opportunity to develop Dr. McSharry's testimony, the plaintiff also has to show that "the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do at trial if the witness were available to be examined by the party."  Kirk v. Raymark Indus., 61 F.3d 147, 166 (3d Cir. 1995), cert. denied 516 U.S. 1145 (1996).  It is not clear that the defendants had the same motive to cross-examine Dr. McSharry during the deposition as they would have in this case, which involves a claimant, claim, and claims handling office that are different from those in the cases at issue in the deposition[4].

---

[5]The plaintiff also alleges that the testimony is admissible under Federal Rule of Civil Procedure 32.  Rule 32, however, allows the admission in one case of a deposition taken in a different case only where the parties and the subject matter of the two cases are the same.  Neither of these requirements are met in this case - the parties are different, as is the subject matter.  Some courts in other circuits have allowed deposition testimony to be introduced although these two requirements were not strictly met.  See Wright, et al., Federal Practice & Procedure, § 2150, n. 9 (collecting cases)  Even in those cases,

## II.   Motion to Compel - Statistical Information

The plaintiff seeks discovery of statistical information about numerous claims that are factually distinct from the claim at issue in this case.  Even if the plaintiff could use this statistical information to show that the defendants engaged in inappropriate behavior towards other claimants, this would be evidence only of a general business practice.  The statistical evidence, like Dr. McSharry's testimony, would have no bearing on the plaintiff's specific claim.  This information is therefore irrelevant and not discoverable.

## III.   Motion to Quash - Reserve Information

The plaintiff seeks to discover information about: (1) the initial claim reserve set for the plaintiff's claim and any adjustments made to that reserve; and (2) information about the companies' general reserve setting policies, including information about reserve setting and release procedures and the impact of reserves on the companies' financial status.  The

---

however, the courts required that the proponent of the testimony show that the other had the same motive to cross-examine the witness in the deposition as they would have in the trial.  Id.

defendants have moved for a protective order to prevent the plaintiff from discovering this information.

The plaintiff argues that the amount of the individual reserve is relevant because it reflects the value that the defendants put on the claim.  He argues that the general reserve setting and release policies and the impact of reserves on the companies' financial status are relevant to show that the companies have an incentive to deny claims with a high reserve to improve its financial status.  The defendants argue that the reserve information sought is irrelevant and protected by the work product doctrine.

## A.    Specific Reserve Set for the Plaintiff's Claim

The defendants have stated, and the plaintiff does not dispute, that the reserve for the plaintiff's claim was initially set in accordance with the Pennsylvania Insurance Commissioner's regulations.  The amount of the initial reserve set is therefore irrelevant to the plaintiff's claim.  If the reserve was set according to the regulations, the defendants had no discretion in setting the amount of the reserve, and the reserve amount is not a reflection of the defendants' judgment about the value of the claim.  The amount of the reserve required by the regulations is not otherwise relevant to the plaintiff's bad faith or contract

claims.  The amount of the initial reserve is, therefore, not discoverable.

After the initial reserve was set, the reserve amount was adjusted as the case progressed.  The plaintiff seeks discovery of these modifications to the reserve.  This information is not discoverable because it is protected work product.

Materials prepared in anticipation of litigation that reflect the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation are not discoverable.  Fed. R. of Civ. P. 26(b)(3); see also Hickman v. Taylor, 329 U.S. 495 (1947).

The defendants have stated, and the plaintiff has not disputed, that any adjustments made to the reserve after the initial reserve was set were made upon input by the defendants' legal department.  The reserve adjustments reflect the thoughts and conclusions of the defendants' legal department or other employees about the value of the claim in light of the potential or pending litigation, including consideration of such factors as the likelihood of success in litigation and the cost of defending the claim.  Any adjustments to the initial reserve reflect the mental impressions, thoughts, and conclusions of the defendants' legal department and other employees.  Such information is

legal department and other employees.  Such information is
protected opinion work product and is not discoverable.  <u>See</u>
<u>Simon et al. v. G.D. Searle & Co.</u>, 816 F.2d 397, 401-02 (8th Cir.
1987)(reserve information is protected by the work product
doctrine); <u>Rhone-Poulenc Rorer, Inc. v. The Home Indemnity Co. et
al.</u> 139 F.R.D. 609, 614-15 (E.D. Pa. 1991)(same); <u>Leksi, Inc. v.
Federal Ins. Co. et al.</u>, 129 F.R.D. 99, 106 ( D. N.J.
1989)(same).


B.   <u>General Reserve Information</u>

The information about the defendants' general reserve
setting procedures and financial information is also not
discoverable.  This information would demonstrate the general
business practices of the defendants and would only be relevant
to the plaintiff's claim if he could demonstrate a link between
the reserve policies and the plaintiff's claim.  Because the
information about the specific reserve set in the plaintiff's
claim is not discoverable, there is no way that the plaintiff can
demonstrate this link.  Without the specific reserve information,
the general reserve information is irrelevant and not
discoverable.


An appropriate order follows.

11

## <u>CERTIFICATE OF SERVICE</u>

I, E THOMAS HENEFER, ESQUIRE, certify that on this date, I

served a certified true and correct copy of the foregoing Memorandum of Law

upon the following counsel of record, by first class mail, postage prepaid,

addressed as follows:

> Richard C. Angino, Esquire
> 4503 North Front Street
> Harrisburg, PA  17110-1708

E. Thomas Henefer

Date:  April 4, 2003