UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>　　　　Plaintiff, | CIVIL ACTION – LAW |
| 　　v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION;<br>PAUL REVERE LIFE INSURANCE<br>COMPANY; and NEW YORK LIFE<br>INSURANCE COMPANY<br>　　　　Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S PRETRIAL MEMORANDUM**

Date conference was held by counsel:  April 15, 2003

**A.**　　**A brief statement as to federal court jurisdiction.**

Federal court jurisdiction is based on amount in controversy and diversity of citizenship,

28 U.S.C. § 1332.

**B.**　　**A summary statement of facts and contentions as to liability.**

Plaintiffs initiated this action alleging breach of a contract to pay disability proceeds on a

policy of insurance issued by New York Life, and bad faith.

**1993** – Mr. Mazzamuto purchased his New York Life disability policy.

**1996/97** – Mr. Mazzamuto made a 1996 disability claim based upon the aggravation of a pre-

existing back condition and eventually was paid in 1997 by New York Life.

**1997–7/22/00 –** Mr. Mazzamuto continued to be treated for worsening back condition but continues to work.

**7/22/00 –** Mr. Mazzamuto incurs heart attack and aggravation of back condition when transported by ambulance to hospital

**9/06/00 –** Notice of claim

**9/27/00 –**Second notice of claim

**10/10/00 –** Mr. Mazzamuto's claim was assigned to Melissa Mulry

**10/11/00 –** Confirmation of receipt of "claims materials" by Paul Revere Life Insurance Company and acknowledgment that Melissa Magner (Mulry) was claims representative

**10/19/00 –** Defendants indicated in two notes that Mr. Mazzamuto's file was missing

**11/3/00 –** At Defendants' request, Mr. Mazzamuto's doctor Bower sent a report to <u>both:</u>

| | |
|---|---|
| Paul Revere Life Insurance Company | New York Life Insurance Company |
| New York Life Customer Care Center | 51 Madison Avenue |
| P. O. Box 15001 | New York, New York 10010 |
| Worcester, MA  00615-001 | |

long history of low back pain and in fact for many years has undergone numerous treatments and physical therapy and MRI in the past did reveal central spinal stenosis which gradually worsened to a maximum at the L3-L4 level and extends from L2 to L5.   This has given him periodic problems with lower back discomfort, symptoms of radiculopathy and urinary irritability.   Prolonged standing and heavy lifting have aggravated it.   He has been seen in physical therapy, treated in a local Pain Clinic with local injections as well as prescription analgesics, non-steroidal anti-inflammatory agents and other atypical chronic pain medications.

Mr. Mazzamuto's condition was complicated this year when he was admitted to the hospital on July 22nd with new onset angina and a small subendocardial myocardial infarction …

As the patient has attempted to return to work after his recovery from his heart attack, his back has worsened again, also the stress and anxiety which has been provoked because of his recent cardiac problems and manifested themselves with significant anxiety when he is back in a work situation.

\* \* \*

At the present time he is not able to do the work required in running his restaurant because he cannot stand for a prolonged period of time, has difficulty bending, and is restricted from heavy lifting.  It is unlikely he will be able to return to work in the foreseeable future.

Mrs. Mulry testified that she did not receive this letter sent to Paul Revere and New York Life until Mr. Mazzamuto's lawyer sent it to her in a packet of claim materials received on December 15, 2000.

Mr. Mazzamuto states:

10.     Cannot perform my duties under the stressful situation.  My chest is painful and I am fearful for my life.

**12/15/00** – Mrs. Mulry admits receipt of UNUM application and physician's statement plus November 3, 2000, Bower report.

**1/09/01** – Mrs. Mulry requests and receives 1996/1997 claim file.  Learned "low back pain with a central spinal stenosis back in April the 13th of '96".  Received entire 1996 claim file including all medical records.

Since we can't deny on PE [physical exam] or rescind on fraud provision, I am recommending we accept liability for the period of the td.

No question that Mr. Mazzamuto was doing same work in 2000 as he was in 1996.

**1/18/01** – When asked "how has the disability interfered with the performance of your job" and "please describe sitting, standing and walking requirements and limitations."  Mr. Mazzamuto said:

My job requires me to stand most of the time.  I am always stressed which causes tightness in my chest.  Then I have chest pain and shortness of breath.  Also by standing my back problem is aggravated.  I have been under treatment for back pain since 1996.

Ignoring what Mr. Mazzamuto told them, without a physical exam and/or any knowledge of what Mr. Mazzamuto had to do in the day-to-day running of his pizza restaurant, UNUM took

the position that the <u>general</u> duties of bookkeeping, office work, employee administration noted

on Mr. Mazzamuto's application and other forms <u>did not require standing</u>.  UNUM relied upon

an in-house disability case manager, nurse, and vocational occupational individual all of whom

ignored Mr. Mazzamuto's statement <u>that he had to stand most of the time to do his job in</u>

<u>denying his claim</u>.

**3/19/01** –Mr. Mazzamuto's attorney wrote to Defendants as to the reasons why the investigation

was taking so long.

In-house physician Dr. Clarke expressed an opinion as to non-disability related to Mr.

Mazzamuto's <u>cardiac</u> condition.  He did, however, note:

> With respect to his back pain, Mr. Mazzamuto has a long history of lower back
> pain in association with a degree of spinal stenosis on MRI.  In the absence of
> radiculopathy on physical exam or other studies, this appears to be soft tissue in
> origin.

> He indicates that the pain increased with prolonged standing and his physician has
> restricted him from prolonged standing.

Mrs. Mulry said that she denied the claim "because I do not feel his occupation required

prolonged standing or walking or heavy lifting or bending … because he did mostly managerial

and administrative duties, and I feel that those could be performed sitting…   I didn't ignore

it[what he said that he had to stand all the time or most of the time] but I feel that his – he could

perform the duties of his occupation sitting."

**3/28/01** –Mr. Mazzamuto's attorney called Defendants stating "he [Mr. Mazzamuto] is only one

of two cooks and does everything at the restaurant."

**4/4/01** – Defendants' adjuster, in his field report noted Mr. Mazzamuto was described as

"limping", favoring his right leg, hunched forward, out of breath, majority of weight was on left

side, pleasant, cooperative, answered questions fully, father had a stroke and three heart attacks

and afraid he might have one and die "While working at the business, he gets nervous and

sometimes loses his temper."  "He's afraid if that happens he may have another heart attack."

"Secondly, he stated that when he was put in an ambulance when he had his heart attack and was

transported to the hospital, he re-injured his back."  "Claims that his back is as bad now as it was

in 1996."  They paid in 1996 but won't pay now."

> Q.      Says he has numbness in his right leg. … can't bend … when he sleeps, he
> sleeps on his stomach with pillows under his stomach, ankle, and head … as far as
> sitting, standing or walking, he stated he can only do these activities for about 20
> or 30 minutes before changing positions….
>
> Mrs. Mulry's answer::
>
> I believe that again based on the duties of his occupation, and based on the
> restrictions and limitations that Dr. Bower placed on Mr. Mazzamuto, I believe
> that he could perform the duties of his occupation perhaps with accommodations,
> he could sit performing the duties.
>
> * * *
>
> He may have stood most of the time but, again, I believe he could perform those
> duties sitting.  I don't see why he couldn't.

Mrs. Mulry admitted that she did not know where Mr. Mazzamuto worked and what his duties

were or that he stood behind a tall counter and that he couldn't sit behind a tall counter and

function effectively or that he took money at the cash register.

> So you turned down this man, and he has not been able to collect any disability
> insurance, for which he paid, for almost two years without you even knowing
> where he had to stand, is that right?
>
> * * *
>
> A.      Correct.
>
> Did you ever send him to some doctor to have him examined?
>
> A.      No, we did not.
>
> So you denied his claim without even having him examined, is that right?
>
> A.      Correct.

**4/20/01** – Mrs. Mulry sent letter denying Mr. Mazzamuto's disability claim.

**5/8/01** – Mr. Angino wrote a letter to Mrs. Mulry summarizing Mr. Mazzamuto's claim and suggesting that Defendants would be guilty of bad faith if they did not pay the claim on the basis of the existing record.

**5/23/01** – Without any investigatory action responsive to Plaintiff's counsel's 5/8/01 letter, Mrs. Mulry stated that Defendants were sticking with their April 20, 2001, position.

**6/26/01** – Suit filed

**7/12/01** - Dr. Schneider submitted report for Social Security Administration find that Mr. Mazzamuto was disabled.

**4/16/02** –Dr. Bower testified in his deposition that Mr. Mazzamuto was disabled.

**6/13/02** - Plaintiff's filed first expert report concluding that Defendants were guilty of bad faith.

**6/14/02** - New York Life agreed Mr. Mazzamuto totally disabled as to his life insurance policy.

**6/27/02** - Defendant Dr. Steinman submitted expert report without examining Mr. Mazzamuto and opined that Mr. Mazzamuto could work from orthopedic standpoint with accommodations..

**6/28/02** - Defendant Dr. Hostetter submitted expert report stating could not express opinion without examining Mr. Mazzamuto.

**7/11/02** - Plaintiff's filed second expert report adding additional bases for Plaintiff's bad faith claim.

**7/25/02 -** Mr. Mazzamuto found totally disabled by Social Security Administration

**8/15/02** – New York Life re-confirmed that Mr. Mazzamuto is totally disabled and need not pay life insurance premiums.

**8/22/02** – Plaintiff's counsel received from bad faith expert Rose article from former UNUM employee:  "Doctor's Suit Asserts UnumProvident Had Policy Of Denying Claims:"

The suit, filed June 28, was brought by Patrick Fergal McSharry, a doctor who once worked as a medical director for UnumProvident in Chattanooga, Tennessee. He claims the company employed doctors "to provide language and conclusions supporting denial of claims."

Plaintiffs contend that the foregoing demonstrates breach of contract and bad faith failure to pay proceeds of insurance by the insurer. As this Court granted defendants' motion for summary judgment on the bad faith claim, only the breach of contract claim is before the trial court at this time.

**C.    A comprehensive statement of undisputed facts as agreed to by counsel at the conference of attorneys required by Local Rule 16.3. No facts should be denied unless opposing counsel expects to present contrary evidence or genuinely challenges the fact on credibility grounds. The parties must reach agreement on uncontested facts even though relevancy is disputed.**

1.    The NYL disability policy was issued on June 28, 1993.

2.    The NYL disability policy defines total disability as follows:

From the start of a total disability until 2 years after the Income Starting Date, total disability means that the Insured cannot do the substantial and material duties of his or her regular job. After 2 years from the Income Starting Date, if a new period of disability does not apply, total disability will then mean that the Insured can not do the substantial and material duties of his or her regular job and is not working in any other gainful job. The cause of the disability must be an injury or sickness.

3.    The NYL disability policy defines regular job as follows:

**"Regular Job** The occupation, or occupations if more than one, in which the Insured is engaged when a disability starts."

4.    Plaintiff gave notice of his claim in September 2000.

5.    Plaintiff subsequently submitted claim forms dated November 22, 2000.

6.    Plaintiff's claim was denied on April 20, 2001.

7.    Plaintiff's counsel submitted a request for reconsideration on May 8, 2001.

8.    By letter dated May 23, 2001, Paul Revere advised plaintiff that it abiding by the decision to deny the claim.

**D.    A brief description of damages:**

July 22, 2000 – August/September, 2001 - $5,000 per month – approximately $65,000.

less 90 day elimination period under policy - $15,000

Net for period - $50,000

August or September, 2001 – April, 2003 - $6,000 per month per Mr. Mazzamuto's selection of the $1,000 increase – approximately $120,000.

Total past benefits approximately $170,000 plus interest at 5% - approximately $177,750.

Mr. Mazzamuto's age – 45 at date of disability.

Mr. Mazzamuto's current age – 48

Years to age 65 - 17

$72,000 x  17 years = $1,224,000

total past $177,750 + future $1,224,000 = $1,401,750.

Courts have held that in cases of an improper denial, the insured is entitled to recover the total payout without any reduction to present worth.   In addition, Plaintiff claims the return of premiums paid since July 2000, the inception of Mr. Mazzamuto's disability, of $15,394.70, with interest at the legal rate = $1,403.05 for a total =  $16,797.75.

Total including return of premium = $1,418,547.75.

**E.    Names and addresses of witnesses, along with the specialties and qualifications of experts to be called.**

Plaintiff's witnesses:

**Fact Witnesses**

Plaintiff Vincenzo Mazzamuto
501 Limestone Road
Carlisle, PA  17013

Gerarda Mazzamuto
501 Limestone Road
Carlisle, PA  17013

Melissa Mulry
18 Chestnut Street
Worcester, MA
UnumProvident employee

John Clarke, M.D.
Unum consultant

John W. Fogarty
18 Chestnut Street
Worcester, MA (UnumProvident employee)

Antonino Mazzamuto
501 Limestone Road
Carlisle, PA  17013

Francesco Mazzamuto
501 Limestone Road
Carlisle, PA  17013

Angelo Mazzamuto
Indiana University of Pennsylvania
c/o 501 Limestone Road
Carlisle, PA  17013

Antonia Tripoli
22 Carlisle Street
New Bloomfield, PA  17068

Pam Hagerich
432 Limestone Road
Carlisle, PA  17013

Vincenzo Randazzo
52 East Penn Street
Carlisle, PA  17013

James S. Marshall
1003 Forge Road
Carlisle, PA  17013

Therese A. Sindelar
New York Life
PO Box 6916
Cleveland, OH 44101

Salvatore Ferrigno
3993 Huntington Pike, Suite 105
Huntington Valley, Pennsylvania 19006
(215-938-0572)

**Expert Witnesses**

Douglas Bower, M.D.
Masland Associates
220 Wilson St, Suite 109
Carlisle, PA 17103
specialty:  internist – Mr. Mazzamuto's treating physician

Stanley E. Schneider, Ed.D.
412 Erford Rd.
Camp Hill, PA 17011
specialty:  psychological disability (Social Security Disability exam)

Robert C. Steinman, M.D. **(as on cross)**
Defendant expert
Lancaster Neuroscience Associates
1671 Crooked Oak Dr.
Lancaster, PA 17601
specialty:  physiatrist

Abram Hostetter, M.D. **(as on cross)**
Defendant expert
Hershey Psychiatric Associates
928 E. Chocolate Ave.
Hershey, PA 17033
specialty – psychiatry

Ted Kasenske, M.D.
The Pain Management Clinic
  of Carlisle Hospital
5 Sprint Drive
Carlisle, PA  17013
specialty:  pain clinic doctor – Mr. Mazzamuto's treating physician

F.    **Summary of testimony of each expert witness**

Douglas Bower, M.D., Mr. Mazzamuto's treating physician, will testify that Mr. Mazzamuto is unable to perform the requirements of his job as the owner operator of a pizza restaurant.

Stanley E. Schneider, Ed.D., a psychologist utilized by the Social Security Administration in evaluating disability claims, will testify that Mr. Mazzamuto has generalized anxiety disorder with related depressive features, has difficulty concentrating, is irritable, and has sleep problems; that Mr. Mazzamuto's activities of daily living are somewhat more restricted than they were prior to his heart attack; he is socially intolerant and withdrawn, and has impaired concentration, persistence and pace.

Robert C. Steinman, M.D. **(as on cross)** will testify that Mr. Mazzamuto could return to work under certain circumstances.

Abram Hostetter, M.D. **(as on cross),** Defendants' psychiatrist will admit that without examining Mr. Mazzamuto, he could not express an opinion as to Mr. Mazzamuto's being able to return to work.

Ted Kasenske, M.D., Mr. Mazzamuto's treating physician, will testify regarding Mr. Mazzamuto's back pain and repeated required treatments since 1996.

G.    **Special comment about pleadings and discovery, including depositions and the exchange of medical reports.**

H.    **A summary of legal issues involved and authorities relied upon.**

A contract is a legally enforceable agreement between two or more competent parties who have each promised to do, or refrain from doing, some lawful act. An insurance policy is a contract and must be interpreted in accordance with its terms and conditions. If there is any uncertainty as to the meaning of any terms or conditions, the terms and conditions should be

construed against the insurance company who drafted the policy and liberally in favor of the insured, the plaintiff in this case. Lititz Mutual Insurance Co. v. Steely, 567 Pa. 98; 785 A.2d 975(2001), rearg. denied, 2002 Pa. LEXIS 210 (Pa. Jan. 25, 2002); Standard Venetian Blind Co. v. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563 (Pa. 1983).

Mr. Mazzamuto's disability insurance policy is a contract and in that contract "total disability" and "regular job" are defined as:

> **Total Disability**     From the start of a total disability until 2 years after the Income Starting Date, total disability means that the Insured can not do the substantial and material duties of his or her regular job.
>
> After 2 years from the Income Starting Date, if a new period of disability does not apply, total disability will then mean that the Insured can not do the substantial and material duties of his or her regular job and is not working at any other gainful job.
>
> **Regular Job**     The occupation, or occupations if more than one, in which the Insured is engaged when a disability starts.  [emphasis supplied]

The principal factual issues that the jury will have to decide are:

(1) what was Mr. Mazzamuto's "regular job" in July of 2000 when he had his heart attack?

(2) what were the substantial and material duties of his regular job?

(3) Was Mr. Mazzamuto able to do the substantial and material duties of his regular job after his heart attack in July 2000?

It is not disputed that Mr. Mazzamuto, although initially disabled as a result of a heart attack, recovered from the heart attack, but Plaintiff contends that he was thereafter disabled as a result of a debilitating back condition and anxiety from his heart attack.

Mr. Mazzamuto and others will testify that in July of 2000, Mr. Mazzamuto was an owner/operator of a pizza restaurant in Carlisle.  Mr. Mazzamuto and others will describe Mr.

Mazzamuto's responsibilities as ordering supplies, cooking, making pizza, welcoming customers and waiting on customers at the counter, taking food orders and seating customers, replacing employees who don't come to work, operating the cash register, paying bills, taking care of the shrubs, clearing away snow and helping to unload deliveries.  Mr. Mazzamuto and others have also testified that most of his duties require standing for long periods of time and some bending and lifting.

Dr. Bower, Mr. Mazzamuto's regular doctor, has testified via videotape that Mr. Mazzamuto's back pain prevents him from sitting or standing for extended periods of time, from bending and lifting, and from concentrating.  Dr. Bower also testified that Mr. Mazzamuto's anxiety makes him moody and impatient with employees.  There is also evidence that Mr. Mazzamuto has been determined to be totally disabled by New York Life and the Social Security Administration.

In civil cases such as this one, the plaintiff has the burden of proving those contentions which entitle him to relief.

Here the plaintiff has the burden to prove by a fair preponderance of the evidence that there was a contract for disability income insurance, the terms of the disability contract, and the breach by Defendants of the contract. The evidence establishes a contention by a fair preponderance of the evidence if the fact finder is persuaded that it is more probably accurate and true than not.

**I.      Stipulations desired.**

Use of exhibits without authentication.

**J.      Estimated number of trial days.**

five

**K.     Any other matter pertinent to the case to be tried.**

(a)     Plaintiff requests defense to produce on the first day of trial all of the people under their control, *e.g.*, Melissa Mulry, John Clarke, M.D., John W. Fogarty, and Therese Sindelar.

(b)     There are numerous open motions pending at this time, including:  Plaintiff's motion in limine regarding stock trading, Plaintiff's petition to file amended complaint; Plaintiff's motion for reconsideration of the Court's decision to exclude Plaintiff's witness Rose from offering expert testimony; Defendant's motion in limine to exclude nine of Plaintiff's witnesses, and Plaintiff's motion for reconsideration of the Court's decision to grant summary judgment for Defendants on the bad faith question.

(c)     After discussion on April 15, 2003, as Defense counsel will only agree to certain facts, the parties are not submitting joint points for charge as directed in this Court's order of January 23, 2003.

**L.     Pursuant to Local Rule 16.3 append to this memorandum is a prenumbered schedule of exhibits, with brief identification of each, on the clerk's Exhibit Form.**

Counsel are exchanging same and will have copies for the Court prior to the commencement of trial.

**M.     Append any special verdict questions which counsel desires to submit.**

Attached.

**N.     Defense counsel must file a statement that the person or committee with settlement authority has been notified of the requirements of and possible sanctions under Local Rule 16.2.**

**O.     Certificate must be filed as required under Local Rule 30.10 that counsel have met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolved objections, and other matters not necessary for consideration by the trier of fact.**

In process.

**P.     In all trials without a jury, requests for findings of both fact and law shall be submitted with this Memorandum as required under Local Rule 48.2.**

Not applicable to this case.

.                                                        Respectfully submitted,

ANGINO & ROVNER, P.C.


_____s/Richard C. Angino_____
Richard C. Angino, Esquire
I.D. No. A07140
Joan L. Stehulak, Esquire
I.D. No. A29496
4503 N. Front Street
Harrisburg, PA  17110
(717) 238-6791
Attorney for Plaintiff

Date:  April 16, 2003