# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VINCENZO MAZZAMUTO,          :     Case No. 1:01-CV-1157
          Plaintiff          :
                        :
          v.          :
                        :
UNUM PROVIDENT          :
CORPORATION, PAUL          :
REVERE LIFE INSURANCE          :     JUDGE CONNER
COMPANY and NEW YORK          :
LIFE INSURANCE COMPANY,          :
                        :
          Defendants          :

**FILED**
**HARRISBURG, PA**

APR 1 6 2003

MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

## DEFENDANTS' PRETRIAL MEMORANDUM

STEVENS & LEE
E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania 19603
(610) 478-2000

Attorneys for Defendants

SL1 341717v1/10305.060

Date Conference Was Held By Counsel: April 15, 2003

## I.   FEDERAL COURT JURISDICTION

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## II.   SUMMARY OF STATEMENT OF FACTS AND CONTENTIONS AS TO LIABILITY

Plaintiff is a restaurant owner who seeks disability benefits under a disability policy (the "Policy") issued by New York Life Insurance Company ("NYL"). Pursuant to a reinsurance agreement, The Paul Revere Life Insurance Company ("Paul Revere") is responsible for administering claims under the Policy and paying any Policy benefits that may be owed. Paul Revere is a subsidiary of UNUMProvident Corporation ("UNUMProvident"). Plaintiff's bad faith has been dismissed leaving only his claim for breach of contract.

### A.   __The Policy__

Several policy provisions are particularly relevant to this case. First, the Policy insures against either "total" or "residual disability" based on the insured's "regular occupation." Total disability is defined, in relevant part, as:

> From the start of a total disability until 2 years after the Income Starting Date, total disability means that the Insured cannot do the substantial and material duties of his or her regular job.

The term "regular job" is defined by occupational duties: "**Regular Job** The occupation, or occupations if more than one, in which the Insured is engaged when a disability starts."

The Policy also provides for "residual" or partial disability where the insured is not totally disabled but, due to an injury or sickness, has a loss of income greater than 20%.

## B.   Plaintiff's Representations About His Occupational Duties

Plaintiff has provided many occupational descriptions to defendants, which largely conflict with the occupational duties he portrays for purposes of this lawsuit. For example:

- His 1993 policy application says his occupation was "President of First Class Restaurant" and his "[e]xact duties" were "executive, office duties only."

- In 1996 plaintiff told NYL he worked 40 hour weeks and listed his important duties as "manage employees, work schedules; book work; deal with food companies; phone; and administration and office duty."

- In 2000, plaintiff listed his occupational duties as "Executive - 50%" and "Office - 50%;" 40 hours a week, with 50% of his time supervising employees; 25% bookkeeping, and 25% other office duties; "occasionally" having to lift or carry five-pound objects; and sitting for 3.5 total hours (as opposed to at a time), stand for 3.5 hours and walk for 1 hour.

- In a January 18, 2001 occupational form, plaintiff claimed his job required him to stand most of the time yet his statement was inconsistent with both his prior statements and the descriptions of the specific duties plaintiff outlined on the same form which were (1) bookkeeping; (2) office duties; and (3) employee administration.

## C.   Plaintiff's 2000 Claim

Plaintiff claims that during transit to a hospital following a July 2000 heart attack, he injured his back when the ambulance hit a bump in the road. Dr. Bower,

2

plaintiff's physician, completed an Attending Physician Statement noting that plaintiff had "objective findings" of a cardiac catheterization, and "subjective symptoms" of "anxiety, worry, low back pain." Dr. Bower also identified restrictions and limitations of "no prolonged standing, no heavy lifting (2nd to back)" and "cannot work in a stressful situation."

On January 4, 2001, Paul Revere received a November 3, 2000 letter from Dr. Bower which said plaintiff's back problem (and not the cardiac condition) was disabling. Finally, Dr. Bower said plaintiff had "stress and anxiety which has been provoked because of his recent cardiac problems."

Additional medical records revealed that plaintiff had periodic epidural steroid injections for his back. For example, in October 2000 treatment notes, plaintiff's physician noted "[h]e has spinal stenosis and does reasonably well [with] an injection or 2 once a year."

After gathering medical records, Paul Revere arranged for a medical review by Dr. John Clarke, M.D.[1] Dr. Clarke found no cardiac impairment (stress-based or otherwise). He also noted no "significant structural change in his [back] condition associated with the recent exacerbation" as compared to prior periods when plaintiff had worked and had periodic epidural injections.

---

[1] Dr. Clarke is a part-time physician-consultant for Paul Revere. He is a graduate of Harvard Medical School who is board certified in sports medicine with an extensive background in rehabilitation medicine.

SL1 341717v1/10305.060

On April 20, 2001, Paul Revere denied the claim.  In May 2001 plaintiff appealed Paul Revere's decision and attempted to portray the occupational duties as far more strenuous than had previously been described (or as he would later describe them in his deposition).  On May 23, 2001 Paul Revere denied plaintiff's request for reconsideration.

### D. The Medical Evidence Provided By Dr. Bower.

Dr. Bower's trial testimony (recorded via videotape in March 2003) confirms that plaintiff's heart condition is not in any way disabling at this point.  As for the back condition, Dr. Bower concedes that he is not an expert in back conditions.  Further, he has now testified that plaintiff can do most, if not all, of the occupational duties he described for defendants.

As to the alleged psychological condition, Dr. Bower (a) failed to perform standard psychological tests to confirm diagnosis and restrictions; and (b) has not personally observed plaintiff's alleged symptoms which supposedly render him disabled.  Instead, Dr. Bower has done little more than accept plaintiff's subjective complaints of anxiety without testing to see if they are valid.

While Dr. Bower has previously referred patients with serious psychological conditions to psychiatrists, he has not done so here, claiming there were no psychiatrists in the relevant geographic area.  On cross examination, however, he had to concede there are many psychiatrists in the relevant geographic area.

4

Finally, Dr. Bower was unaware of plaintiff's extensive "on-line" stock trading activities (detailed below). He conceded these activities are inconsistent with his opinion that plaintiff's alleged psychological conditions rendered him disabled.

### E.     Plaintiff's Deposition Testimony.

Plaintiff's deposition, which may be used for any purpose at trial under Rule 32, confirms his occupational duties were not as strenuous as his lawyers claimed to Paul Revere. For example, the restaurant has a room with (a) a desk where he handles paperwork like ordering supplies and (b) a window from which he can sit and observe the customers and his employees. A "typical" day involves welcoming customers, operating the cash register, paying bills, ordering supplies, and taking food orders from customers.

Also, plaintiff would fill in cooking "once a month maybe, once every two months," if an employee did not show up. Plaintiff was not involved with cleaning. Plaintiff also testified that he can stand for intervals of 15 to 30 minutes. He can walk for 35-40 minutes on flat surfaces.

While plaintiff claims it is too stressful for him to pay bills, do bookkeeping and order supplies, his tax returns reveal he engaged in close to $6 million in stock trades in 2000 alone. He made these investment decisions on his own, followed the market closely and traded by computer. Many stocks were held for as little as a

5

day or two. And, while plaintiff lost over $375,000 in 2000 and 2001, he testified that losing this much money made him neither anxious nor angry.

## III.   STATEMENT OF UNDISPUTED FACTS

1.   The NYL disability policy was issued on June 28, 1993.

2.   The NYL disability policy defines total disability as follows:

From the start of a total disability until 2 years after the Income Starting Date, total disability means that the Insured cannot do the substantial and material duties of his or her regular job. After 2 years from the Income Starting Date, if a new period of disability does not apply, total disability will then mean that the Insured can not do the substantial and material duties of his or her regular job and is not working in any other gainful job. The cause of the disability must be an injury or sickness.

3.   The NYL disability policy defines regular job as follows:

"**Regular Job** The occupation, or occupations if more than one, in which the Insured is engaged when a disability starts."

4.   Plaintiff gave notice of his claim in September 2000.

5.   Plaintiff subsequently submitted claim forms dated November 22, 2000.

6.   Plaintiff's claim was denied on April 20, 2001.

7.   Plaintiff's counsel submitted a request for reconsideration on May 8, 2001.

8.    By letter dated May 23, 2001, Paul Revere advised plaintiff that it abiding by the decision to deny the claim.

## IV.   BRIEF DESCRIPTION OF DAMAGES

Plaintiff's alleged damages would be limited to an award of back benefits of $5,000 a month for periods, if any, in which he was found disabled after the satisfaction of the policy elimination period. Pennsylvania law does not provide for recovery of attorneys' fees or extra-contractual damages for a breach of contract claim. Pennsylvania law does not allow a claimant to recover future benefits which are contingent on ongoing proof of claim.[2]

## V.   NAMES AND ADDRESSES OF WITNESSES TO BE CALLED

1.    Melissa Mulry, c/o UNUMProvident Corporation, 18 Chestnut Street, Worcester, MA 01608

2.    John Clarke, M.D., c/o UNUMProvident Corporation, 18 Chestnut Street, Worcester, MA 01608

3.    John W. Fogerty, c/o UNUMProvident Corporation, 18 Chestnut Street, Worcester, MA 01608

4.    Dr. Robert T. Steinman, a board certified physiatrist, will testify as an expert witness. Address: 1671 Crooked Oak Drive, Lancaster, PA 17601

---

[2]   Shea v. Mutual Life Ins. Co. of New York, No. 01-2505, 2002 U.S. Dist. LEXIS 11826, (E.D. Pa. Jan. 23, 2002); Doe v. Provident Life and Acc. Ins. Co., 936 F. Supp. 302 (E.D. Pa. 1996); Solkolosky v. Occidental Ins. Co., 481 F. Supp. 36 (W.D. Pa. 1979); Summers v. Prudential Ins. Co. of America, 179 A. 78 (Pa. 1935).

5. Dr. Abram M. Hostetter, a licensed psychiatrist, will testify as an expert witness. Address: 928 East Chocolate Ave., Hershey, PA. 17033

6. Other: Defendants respectfully reserve the right to supplement this witness list depending on the Court's rulings on pending pretrial motions and/or developments occurring at trial.

## VI. SUMMARY OF TESTIMONY OF EXPERT WITNESSES

### A. <u>Dr. Steinman</u>

In general, Dr. Steinman will testify that after reviewing plaintiff's medical records and "day in the life" video, his opinion, to a reasonable degree of medical certainty, is that plaintiff is not disabled from his occupation by his orthopedic condition. Among other things, Dr. Steinman will testify that (1) plaintiff's back condition does not prevent him from working at the restaurant; (2) his alleged need to stand behind a counter does not mean he is disabled; (3) plaintiff could work by alternating between sitting and standing; (4) the trauma-induced problems in 1996 are not comparable to the ambulance ride in 2000; and (5) any orthopedic impairment from the ambulance ride should be resolved by now.

### B. <u>Dr. Hostetter</u>

In general, Dr. Hostetter will testify that plaintiff has provided insufficient evidence of a psychiatric disability and that Dr. Bower's diagnosis concerning the alleged psychological condition is flawed due to a lack of proper testing.

8

## VII.   SPECIAL COMMENTS ABOUT PLEADINGS AND DISCOVERY

None at this time.

## VIII.   SUMMARY OF LEGAL ISSUES INVOLVED AND AUTHORITIES RELIED UPON

### A.   Plaintiff's Breach of Contract Claim - Burden of Proof.

Plaintiff's burden is to prove he was "disabled within the meaning of the policy and to prove that defendant breached its obligation to pay benefits." Doe v. Provident Life and Accident Ins. Co., No. 96-3951, 1997 U.S. Dist. LEXIS 5462 at *4 (E.D. Pa. April 23, 1997) (citations omitted).  Plaintiff has "the burden of proof, the burden of going forward, and the burden of ultimate persuasion at trial...." Id.

Moreover, under Russell v. Paul Revere Life Ins. Co., 288 F.3d 78 (3d Cir. 2002), plaintiff must prove that he was disabled from performing all of his occupational duties.  288 F.3d at 82.  If he can perform some of his duties (such as bookkeeping and office duties), he could have, at most, only a partial disability. And, if he has a partial disability but is not working at all, he cannot recover any benefits.  Id.

The rule stated in Russell applies regardless of whatever the policy in question is governed by ERISA.[3]  It is also consistent with Pennsylvania law in

---

[3]   Courts in other Circuits have applied the same rules of contract interpretation, McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 588 8th Cir. 2002, even when the policy in question was not subject to ERISA, Yahiro v. Northwestern Mutual Life Ins. Co., 168 F. Supp. 2d 51, 517-518 (D. Md. 2001); See also, Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264 (4th Cir. 2002) (September 2002 decision applying standard analogous to Russell).

general.[4]

## B.   Plaintiff Cannot Satisfy His Burden Of Proof.

Under Russell, plaintiff is not entitled to any recovery if he has the ability to

work at least part-time (i.e., to perform some if not all of his occupational duties)

but has failed to return to part-time work.  Here, there is no impediment to part-

time work as plaintiff owns the business in question and, therefore, would be free

to set his own schedule.

Even more importantly, plaintiff has no medical evidence to support the

conclusion that he does not have at least the ability to perform some of his

occupational duties.  Instead, Dr. Bower's trial testimony confirms that plaintiff has

the ability to perform at least some of his occupational duties.  Under Russell, this

concession is fatal to plaintiff's claim.

Finally, although plaintiff's part-time work capacity should alone be

determinative, defendants intend to prove that plaintiff is, in fact, not limited (in

whole or in part) in his ability to perform his occupational duties.

---

[4]   Ditommasso v. Union Central Life Ins. Co., 1991 U.S. Dist. LEXIS 17079 (E.D. Pa. Nov. 25, 1991), aff'd, 972 F.2d 1330 (3d Cir. 1992); Cobosco v. Life Assur. Co. of Pennsylvania, 213 A.2d 369 (Pa. 1965); Moskowitz v. Prudential Ins. Co. of America, 35 A.2d 567, 569 (Pa. Super. 1944); Bundy v. National Safety Life Ins. Co., 503 A.2d 417, 423 (Pa. Super. 1985).

## IX.  STIPULATIONS DESIRED

That the documents proposed as exhibits on exhibit A are admissible or, in the alternative, that, without regard to relevancy, a proper foundation exists for the admissibility of the documents.  No additional stipulations are desired at this time.

## X.  ESTIMATED NUMBER OF TRIAL DAYS

Defendants estimate that the trial will take 5 to 6 days.

## XI.  OTHER MATTERS

There are several evidentiary issues before the Court on motions in limine which have been fully briefed.  In addition, to the extent not covered in the motions in limine, defendants anticipate that additional evidentiary issues will arise at the time of trial.

## XII.  EXHIBITS

Please see exhibit A.

SL1 341717v1/10305.060

## XIII. CERTIFICATIONS REGARDING LOCAL RULES 16.2 AND 30.10

Please see exhibit B.

STEVENS & LEE

By _E. Thomas Henefer_

E. Thomas Henefer
Attorney I.D. 55773
Kirk L. Wolgemuth
Attorney I.D. 45792
111 North Sixth Street
P.O. Box 679
Reading, PA  19603-0679

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | Case No. 1:01-CV-1157 |
| Plaintiff | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | |
| CORPORATION, PAUL | : | |
| REVERE LIFE INSURANCE | : | JUDGE CONNER |
| COMPANY and NEW YORK | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| Defendants | | |

## EXHIBIT A – DEFENDANTS' EXHIBIT LIST

Defendants hereby submit the following exhibit list.  Defendants

respectfully reserve the right to supplement this exhibit list depending on the

Court's rulings on pending pretrial motions and/or developments occurring at trial.

| Number | Description | Offered | Admitted | Excluded |
|---|---|---|---|---|
| 1. | Plaintiff's NYL disability policy | | | |
| 2. | Plaintiff's policy application | | | |
| 3. | Plaintiff's November 1996 application for benefits with attending physician statements. | | | |
| 4. | Plaintiff's January 1997 "Description of Occupation" form to New York Life | | | |
| 5. | September 2000 letter from Paul Revere regarding | | | |

| | | | | |
|---|---|---|---|---|
| | administration of claim for New York Life. | | | |
| 6. | November 1, 2000 letter from Paul Revere to plaintiff regarding claim form. | | | |
| 7. | November 15, 2000 medical provider statement submitted by Dr. Bower | | | |
| 8. | Plaintiff's November 2000 claim forms. | | | |
| 9. | Plaintiff's November 2000 statement of occupational duties. | | | |
| 10. | Notes from Discussion with plaintiff | | | |
| 11. | Attorney Russo fax of Paul Revere a copy of Dr. Bower's November 3, 2000 letter. | | | |
| 12. | January 15, 2001 Paul Revere letter to plaintiff. | | | |
| 13. | Plaintiff's January 18, 2001 occupational statement | | | |
| 14. | February 2, 2001 vocational rehabilitation log materials | | | |
| 15. | Paul Revere's March 20, 2001 to plaintiff's counsel | | | |
| 16 | Request for Medical Review | | | |
| 17. | March 27, 2001 medical review | | | |
| 18. | April 6, 2001 memorandum from Brian Coar | | | |
| 19. | April 20, 2001 Paul Revere letter to plaintiff's counsel | | | |
| 20. | May 8, 2001 letter from plaintiff's counsel appealing denial of benefits | | | |
| 21. | May 23, 2001 Paul Revere letter to plaintiff's counsel | | | |

| | | | | |
|---|---|---|---|---|
| 22. | Plaintiff's individual tax returns for 1995 | | | |
| 23. | Plaintiff's individual tax returns for 1996 | | | |
| 24. | Plaintiff's individual tax returns for 1997 | | | |
| 25. | Plaintiff's individual tax returns for 1998 | | | |
| 26. | Plaintiff's individual tax returns for 1999 | | | |
| 27. | Plaintiff's individual tax returns for 2000 | | | |
| 28. | Plaintiff's individual tax returns for 2001 | | | |
| 29. | Payroll register from plaintiff's business | | | |
| 30. | Corporate tax returns for Vinny's Restaurant, Inc. for 1996 | | | |
| 31. | Corporate tax returns for Vinny's Restaurant, Inc. for 1997 | | | |
| 32. | Corporate tax returns for Vinny's Restaurant, Inc. for 1998 | | | |
| 33. | Corporate tax returns for Vinny's Restaurant, Inc. for 1999 | | | |
| 34. | Corporate tax returns for Vinny's Restaurant, Inc. for 2000 | | | |
| 35. | Corporate tax returns for Vinny's Restaurant, Inc. for 2001 | | | |
| | | | | |

## EXHIBIT B

Pursuant to Local Rules 16.2 and 30.10, I hereby certify that:

1. The person with settlement authority has been notified of the requirements of and possible sanctions under Local Rule 16.2; and

2. That counsel have met and reviewed depositions and videotapes in an effort to eliminate irrelevancies, side comments, resolve objections and other matters not necessary for consideration by the trier of fact.

E. Thomas Henefer

# CERTIFICATE OF SERVICE

I, E. THOMAS HENEFER, ESQUIRE, certify that on this date, I served a

certified true and correct copy of the foregoing Pretrial Memorandum upon the

following counsel of record, by federal express:

Richard C. Angino, Esquire
Angino & Rovner, P.C.
4503 N. Front Street
Harrisburg, PA  17110

Date: 4/15/03