UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENZO MAZZAMUTO,<br>    Plaintiff, | CIVIL ACTION – LAW |
| v. | NO. 1:CV-01-1157 |
| UNUM PROVIDENT CORPORATION; PAUL REVERE LIFE INSURANCE COMPANY; and NEW YORK LIFE INSURANCE COMPANY<br>    Defendants | JUDGE CONNER<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION FOR LEAVE TO FILE SUPPLEMENTAL
BRIEF IN OPPOSITION TO PLAINTIFF'S MOTIONS
FOR LEAVE TO AMEND THE COMPLAINT AND\OR
RECONSIDERATION OF SUMMARY JUDGMENT ORDER**

**I.    INTRODUCTION**

Plaintiff, Vincenzo Mazzamuto, by and through his counsel, Richard C. Angino, Angino & Rovner, P.C., hereby opposes Defendants' Motion for Leave to File Supplemental Brief in Opposition to Plaintiff's Motions for Leave to Amend the Complaint and for Reconsideration of Summary Judgment Order.

**II.    PROCEDURAL HISTORY**

On February 18, 2003, Plaintiff filed a Petition to File Amended Complaint. Plaintiff's Petition to File Amended Complaint recites 19 events which occurred after Defendants denied Plaintiff's claim on or about April 20, 2001, and 18 events which occurred after the Complaint

was filed on June 26, 2001.  Only one of these events concerns UNUM/Provident's practices regarding other claimants, to wit:

> 8/22/02 – Plaintiff's counsel filed the first of various articles, depositions, opinions from courts to the effect that UNUM/Provident had been engaging in unfair insurance practices for a number of years with respect to disability specific occupation policies which UNUM/Provident had found to be unprofitable

On March 17, 2003, this Court granted Defendants' motion for summary judgment as to Plaintiff's bad faith claim.  On March 19, 2003, Plaintiff requested Reconsideration of that Order.  The primary basis for reconsideration is the lack of an adequate medical examination and/or report from UNUM's Dr. Clarke on the subject of Mr. Mazzamuto's disability.

Defendants have filed a Motion to for Leave to File supplemental brief to address the Supreme Court's recent decision in State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S ___, 2003 U.S. LEXIS 2713 (April 7, 2003), which Defendants posit supports Defendant's opposition to Plaintiff's motions for leave to amend the complaint and for reconsideration of the Court's summary judgment order.  For the reasons set forth infra, Defendants' Motion for Leave to File Supplemental Brief . . . should be denied.

### III. ARGUMENT

Contrary to Defendants' assertion, Plaintiff has not shifted the focus of the case from Defendants' bad acts as to Mr. Mazzamuto's claim for proceeds under his own insurance policy, to Defendants' broad corporate culture and handling of other claims.  Plaintiff has ample evidence of Defendants bad acts as to Mr. Mazzamuto, including ignorance of Defendants' own manual for handling claims.  However, the customary behavior of an organization is relevant to show how the organization acted in a particular case, McCormick on Evidence, Vol. I, 686 (1999).  Habit is a regular response to a repeated situation.  Ibid.  Moreover, Rule 406 of the Federal Rules of Evidence provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Plaintiff's Petition to Amend the Complaint is based in only a small part on Plaintiff's recent discovery of Defendants' habit of denying occupation specific disability claims. This evidence is only one small piece of Plaintiff's proof, and it is relevant and admissible to show how Defendants probably acted on Plaintiff's claim for disability benefits under his policy.[1]

Defendant UNUM/Provident has a company-wide practice dealing with occupation specific disability claims that has led to hundreds of cases and a number of punitive damage bad faith jury verdicts as well as a specific order to cease and desist in continuing the type of unfair insurance practices engaged in with Mr. Mazzamuto. Plaintiff learned in discovery that although Defendants' manual suggests independent medical examinations as an appropriate basis for declining claims rather than suspect in-house reviews, yet no independent medical examination of Mr. Mazzamuto was requested. This is because Defendants' practice deviates from Defendants' published manual. Defendants' treatment of Mr. Mazzamuto is similar to Defendants' treatment of other similar types of claims across the country. Defendants have been found guilty of bad faith and/or unfair insurance practices by their systematic treatment of claims such as Plaintiff's and Defendants have been ordered to cease and desist in these unfair insurance practices.

---

[1] Although Defendants represent at page 3 of their Memorandum that a copy of an Eastern District decision in Mann v. UNUM Life Ins. Co. of America, is attached, no such copy is attached to the Memorandum served on counsel for Plaintiff.

Such is the nature of Dr. McSharry's testimony, which Plaintiff seeks to present in this bad faith case via deposition.[2] Dr. McSharry's deposition was taken in other UNUM Provident Paul Revere cases in which Defendants participated. Dr. McSharry testified extensively as to UNUM Providence's actual practices and procedures with respect to reviewing disability cases. Dr. McSharry's deposition was taken on September 4, 5 and 6, 2002, by six plaintiffs' attorneys in six cases proceeding against Defendants. Defendants engaged counsel who cross-examined Dr. McSharry in great detail. The direct examination took 365 pages and cross-examination took 679 pages. Dr. McSharry was deposed in a consolidated deposition of six plaintiffs[3] against UNUM and/or Paul Revere on September 4, 2002. Defendants were necessarily represented at that deposition, and Defendants have Dr. McSharry's testimony.

Dr. McSharry's testimony is relevant to this proceeding because of his employment as a medical consultant by UNUM/Provident. UNUM had merged with Provident Insurance Company and owns Paul Revere Insurance Company. They had a reinsurance agreement with New York Life, the other Defendant in the instant action. In his deposition, Dr. McSharry testified about claims handling practices at offices in Chicago, Portland, Maine, Glendale, California, Worcester, Massachusetts, and Chattanooga, Tennessee. Depo McSharry, p. 104. Mr. Mazzamuto's claim was processed by personnel in Worcester, Massachusetts.

---

[2]   Dr. McSharry was not discovered by counsel for Mr. Mazzamuto until August 2002. As indicated in Plaintiff's Motion for Extension of Time to Supply Expert Report, Plaintiff's expert, Mr. Rose, found reference to Dr. McSharry's lawsuit against UNUM regarding UNUM's practices regarding denial of disability benefits in a July 29, 2002 magazine article.

[3]   Those cases are Randall Chapman v UNUMProvident Corporation, Joyce A. Kakkis v Provident Mutual Life Insurance Company of Philadelphia, et al, Robert L. Carr v UNUMProvident Corp., The Paul Revere Life Insurance Co., Simon Zemel v Provident Life and Accident Insurance Company, Robert D. Ligorsky v The Paul Revere Life Insurance Company, et al, Catherine Kelly v. The Equitable Life Assurance Society, et al.

Dr. McSharry is a medical doctor who reviewed files, made notations, and expressed opinions according to a format prescribed by UNUM, McSharry depo. pp. 81-82.  Dr. McSharry saw policies of all the companies, McSharry depo, p. 106.  <u>The various geographic sites were set up similarly, to behave similarly</u>.  McSharry depo, p. 112.  "They were as far as I know set up the same." McSharry depo. p. 112.  <u>The goal was uniformity across all areas</u>, McSharry depo. p. 113, 243.  When Dr. McSharry fell behind in his file review, his files were shipped to Worcester, McSharry depo, p. 119.

Dr. McSharry was expected to review 3-4 files per day, or 20 per week, McSharry, depo. pp. 124-125, but Dr. McSharry was unable to do a full and fair file review at that rate, McSharry depo. p. 194.  <u>Managers' bonuses were awarded based on how many claims they denied</u>, McSharry depo. p. 136.

> [T]here's two ways that an insurance company makes money.  One is from the investments that they make on the claimants' policies, and the second area is on claims management.  That's the two areas, and these impairment heads were very responsible for getting results from claims management.

McSharry depo. p. 143.

Dr. McSharry testified that he never saw any "customer care representative" care for a customer.  McSharry depo. p. 146.  Employees who were "doing well" were not approving claims, McSharry depo. p. 161-162. Dr. McSharry was asked to sign off on claims whether he agreed with the result or not, McSharry depo. p. 186.  Dr. McSharry was not "part of the team" when he made it difficult to close a claimant's file by denying the claim, McSharry depo. p. 163.  As a result, Dr. McSharry was told that he had fallen off the career path at UNUM, McSharry depo. p. 189.  However, nobody ever complained when Dr. McSharry supported denials, McSharry depo. p. 179.

Dr. McSharry got in trouble for disagreeing with nurses' conclusions that the claimants were not impaired, McSharry depo. p. 192. Claims consultants were hired based on their past work record for closing, i.e., denying claims, McSharry depo. p. 198. McSharry was discouraged from ordering independent medical tests because it slowed the review process, McSharry depo. p. 206, and cost money, depo. p. 272, 316.

Dr. McSharry also noted problems handling claimants with multiple physical problems, in that all of the claimant's problems were not reviewed. "[I]f that person has three or four different problems, they may have physical restrictions and limitations from, say, an orthopedic condition. They may have what I call cognitive and psychological restrictions and limitations from either a functional disorder of [sic] a psychiatric disorder. And really, you have to look at all of those restrictions and limitations to really comment on whether the person's impaired or not. <u>But we were told only to look at the physical restrictions and limitations from the general medical condition.</u> . . . So the person really only essentially got their general medical condition reviewed, the physical aspects of it." McSharry depo. pp. 213-214.

Dr. McSharry apparently recognized what the companies do not:

> [D]isability or impairment is about what the person can do on their job, and jobs demand all sorts of abilities, cognitive, psychological, and you know, the ability to handle stress is a psychological, cognitive, is the ability to think on the spot or make judgments, decisions, and physical is the actual fact that you can move your arm. So if you only look at the fact that whether they can move their arm or not and don't decide, don't look at the cognitive and decide if that is affecting their job, then you haven't really given the person a fair whack.

Depo. p. 215.

Dr. McSharry testified that any unwillingness to go along with denials affected promotion prospects for claim handlers, and nurses, depo. pp. 223-224. McSharry was pressured by claim handlers and consultants to deny claims, depo. pp. 236-239. "Everybody knows and every doctor who's worked has mentioned and knows that we're totally nonvaluable to the

company unless we're able to support the denial of claims, and that is the end game." McSharry depo. p. 242-3. Keeping the claims people happy meant denying claims, depo. p. 246.

Mr. Mazzamuto has multiple problems: he had a heart attack, he has back pain and he has anxiety. According to Dr. McSharry, the review policy at UNUM and its related companies precluded review of multiple physical problems. That's exactly what happened in this case. UNUM's Dr. Clarke said Mr. Mazzamuto's heart didn't keep him from working and ignored Mr. Mazzamuto's back condition and anxiety. This was the position taken by the in-house nurses and rehabilitation experts involved in this case. The claims representative denied Mr. Mazzamuto's claim based upon the single focus <u>heart</u> condition ignoring Mr. Mazzamuto's back problems and anxiety.

Dr. McSharry's testimony about UNUM's practices in denying applications for disability is relevant. It is probative as to the procedure followed in denying Mr. Mazzamuto's claim, as well as Defendants' bad faith. The unwritten procedure is even more important than the written manual disclosed in discovery. In <u>Bonenberger v. Nationwide Mut. Ins. Co.</u>, 2002 PA Super 14, 791 A.2d 378 (2002), the Pennsylvania Superior Court held that a company's manual is relevant to establish an insurance company's practices and procedures. <u>Also see</u>, <u>Kraeger v. Nationwide Mut. Ins. Co.</u>, 1997 U.S. Dist. LEXIS 2726 (E.D. Pa. 1997).

Claims, operations, procedures, and training manuals are relevant and likely to lead to relevant, admissible evidence. In <u>Robertson v. Allstate Insurance Company</u>, No. 98-4909, 1999 U.S. Dist. LEXIS 2991 (E.D. Pa. 1999), the court recognized the relevance of internal claims and procedure manuals. "Information contained in the manuals is relevant because they contain instructions concerning procedures used by Allstate employees in handling UIM claims such as plaintiff's claim." <u>Ibid</u>, Slip Op. pp. 18-19, 1999 U.S. Dist. LEXIS 2991, p. 9. The <u>Robertson</u> decision cited with approval <u>Kaufman v. Nationwide Mut. Ins. Co.</u>, 1997 U.S. Dist. Lexis 18530,

1997 WL 703175, at 2, n. 2 (E.D. Pa. Nov. 12, 1997) (in bad faith case, insurer ordered to produce information in claims manuals concerning procedures used by insurer's employees in handling UIM claims).  See also, Conway v. State Farm Fire & Casualty Co., 1998 U.S. Dist. LEXIS 20137 (1998).

Obviously, the Superior Court of Pennsylvania agrees that claims manuals can constitute relevant evidence in an action for insurer bad faith.  In Bonenberger v. Nationwide Mutual Insurance Company, 2002 PA Super 14 (decided January 23, 2002), the Superior Court affirmed a trial court finding of insurer bad faith where the insurer's representatives were guided by the terms of its Pennsylvania Best Claims Practices Manual which contained the company's overall philosophy, including reduction of the average claim payment to a level first consistent with, then lower than major competitors, and to be a "defense-minded" carrier in the minds of the legal community.  Both Superior Court and the trial court concluded that the philosophy did not encourage reasonable case-by-case evaluation of claims.  The manual was relevant evidence and supported the court's ultimate finding of bad faith.  Slip Op., p. 7.

Evidence that a company has a habit and practice of ignoring its manual recommendation for independent medical examinations is relevant and admissible.  In fact the evidence in this case is that UNUM did not conduct an independent medical examination despite its manual.

Defendants, who were represented by counsel and had an opportunity to cross-examine Dr. McSharry in the matter concerning UNUM's, Provident's and Paul Revere's practices and consequently cannot claim prejudice.

Dr. McSharry's testimony is based on his employment at UNUM and his knowledge of UNUM's actual claims handling practices.  He is both a fact and expert witness.  He knows what was done at UNUM, what he was told to do, how one received bonuses, and how one reached a

dead end.  As a medical doctor he also possessed specialized knowledge.  Dr. McSharry's testimony is as relevant as manuals.

While it is true that in <u>State Farm v. Campbell,</u> the Supreme Court determined that an award of punitive damages must be based on the conduct at trial, and not on other bad acts, this concern can be adequately addressed by the Court in a proper instruction to the jury.  Moreover, the Supreme Court's determination in <u>State Farm</u> limiting the proportion of punitive damages to the compensatory damages, provides an adequate basis to reign in any runaway jury verdict.  The question could also be addressed on the verdict slip.

WHEREFORE, because UNUM's habits and practices of denying occupation specific disability claims, failing to obtain independent medical examinations and precluding review of multiple-medical conditions is relevant and admissible, Plaintiff should be permitted to produce such evidence in this case.  Plaintiff's Petition to Amend Complaint and Motion for Reconsideration of the grant of summary judgment for Defendants should be granted; and Plaintiff should be permitted to produce Dr. McSharry's deposition testimony in evidence in trial of Mr. Mazzamuto's claim.  Defendants' Motion for Leave to File Supplemental Memorandum . . . should be denied.

                                              Respectfully submitted,
                                              ANGINO & ROVNER, P.C.

                                              <u>    s/Richard C. Angino        </u>
                                              Richard C. Angino, Esquire
                                              I.D. No. PA07140
                                              Joan L. Stehulak, Esquire
                                              I.D. No. PA29496
                                              4503 N. Front Street
                                              Harrisburg, PA  17110
                                              (717) 238-6791
                                              Attorney for Plaintiff

Date:  May 2, 2003

**CERTIFICATE OF SERVICE**

I, Richard C. Angino, Esquire, hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND THE COMPLAINT AND FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER** was served by United States first-class mail, postage prepaid, upon the following:

E. Thomas Henefer, Esquire
Stevens & Lee
111 North Sixth Street
P. O. Box 679
Reading, PA  19603-0679
    Counsel for Paul Revere Life Insurance Company and New York Life Insurance Company

                                              s/Richard C. Angino

Dated:  May 2, 2003