# MASLAND ASSOCIATES, INC.
## INTERNAL MEDICINE

MEDICAL ARTS BUILDING    220 WILSON STREET, CARLISLE, PA 17013    (717) 249-1929    Fax (717) 249-9332

| | | |
|---|---|---|
| DAVID S. MASLAND, M.D.<br>RETIRED | LARRY S. RANKIN, M.D., F.A.C.C.<br>CARDIOLOGY | TERRY A. RORISON, D.O.<br>INTERNAL MEDICINE |
| JOSEPH F. BRAZEL, M.D.<br>INTERNAL MEDICINE | DEBRA D. TAYLOR, M.D.<br>INTERNAL MEDICINE | PHILIP A. NEIDERER, D.O.<br>INTERNAL MEDICINE |
| FRANK P. CASTRINA, M.D.<br>PULMONARY | LESTER L. HIMMELREICH, III, M.D., F.A.C.P.<br>INTERNAL MEDICINE | DOUGLAS J. BOWER, M.D.<br>INTERNAL MEDICINE |
| | MICHELLE M. HALE, M.S.N., C.R.N.P. | |

November 3, 2000

Paul Revere Life Insurance Company
New York Life Customer Care Center
P.O. Box 15001
Worcester, MA 01615-0001

New York Life Insurance Company
51 Madison Avenue
New York, New York 10010

RE: Vincenzo Mazzamuto
    DOB: 5/25/55

Dear Sir or Madam:

I am writing this letter to clarify the medical facts of my patient, Vincenzo Mazzamuto, who apparently has policies with your companies. I find it difficult to coherently fill out the forms as his medical problems are several, some of which are long standing and do not easily fit into a category such as "when did symptoms appear". Mr. Mazzamuto has had a long history of low back pain and in fact for many years has undergone numerous treatments and physical therapy and MRI in the past did reveal central spinal stenosis which gradually worsened to a maximum at the L3-L4 level and extends from L2 to L5. This has given him periodic problems with lower back discomfort, symptoms of radiculopathy and urinary irritability. Prolonged standing and heavy lifting have aggravated it. He has been seen in physical therapy, treated in a local Pain Clinic with local injections as well as prescription analgesics, nonsteroidal anti-inflammatory agents and other atypical chronic pain medications.

Mr. Mazzamuto's condition was complicated this year when he was admitted to the hospital on July 22nd with new onset angina and a small subendocardial myocardial infarction. He underwent cardiac catheterization and had a subsequent PTCA of a distal LAD stenosis. He is currently involved in cardiac rehabilitation.

The patient did subsequently have one re-admission to the hospital with chest pain after his initial admission where this pain was subsequently felt to be noncardiac in nature.

As the patient has attempted to return to work after his recovery from his heart attack, his back has worsened again, also the stress and anxiety which has been provoked because of his recent cardiac problems, and manifested themselves with significant anxiety when he is back in a work situation.

PLAINTIFF'S
EXHIBIT
25

Exhibit A

Paul Rever Life Ins co
RE:  Vincenzo Mazzamuto
November 3, 2000
Page 2

While his heart condition has currently stabilized and should hopefully not pose a great limitation on him in the future (assuming ongoing risk factor modification is successful such as smoking cessation, cholesterol lowering, etc), the amount of weight he has gained from his smoking cessation has re-exacerbated his chronic and progressive back problem. At the present time he is not able to do the work required in running his restaurant because he cannot stand for a prolonged period of time, has difficulty bending, and is restricted from heavy lifting.  It is unlikely he will be able to return to work in the foreseeable future.

His prognosis for recovery is fair over the next 6 to 12-months.

At his last visit on October 4th he weighed 206 lbs., his blood pressure was 112/80, his pulse 48 and regular.  He was proceeding with his cardiac rehabilitation program and was to follow-up with the Pain Clinic for further symptomatic treatment of his back.  At the present time the patient has not achieved a medical plateau.  It is my hope that once his weight stabilizes after his smoking cessation is consolidated and he completes his cardiac rehabilitation he may be able to attempt weight loss and hopefully improve his back situation in the future.

The final results of this may not be evident, however, for the next 6-months.

If further information is required in order to complete your evaluation, please do not hesitate to call our office.  I hope that this narrative summary provides you with the information you need and you can extract those pertinent pieces which you find relevant to insert into your form.

Thank you for your consideration in this matter.

Sincerely,

Douglas J. Bower, M.D.

DJB/gav
T:  11/7/00

PLAINTIFF'S
EXHIBIT
26

## B. Attending Physician's Statement (PLEASE PRINT)

UNUM.

Name of Patient: MAZZAMUTO-VINCENZO

Date of Birth: 5 12511955

Social Security Number:

Mail To: The Paul Revere Life Insurance Compa
New York Life Customer Care Cert
P.O. Box 150
Worcester, MA 01615-0

Claim Questions: 800.633.7506
Fax To: 508.751.7041

### History

When did symptoms first appear or accident happen? 07 22 2000

Date restrictions and limitations began. 07 22 2000

Has patient ever had same or similar condition? If yes, state when and describe.
○ Yes ● No
_ _ / _ _ / _ _ _ _

Names and addresses of other treating physicians

Doctor's Name: Paul Parcini MO

Address (street, city, state, zip): Moffit, Pose & Lim Assoc

Doctor's Name:

Address (street, city, state, zip):

### Diagnosis

Date of last examination: 10 04 2000

Subjective symptoms: Anxiety, worry, law back pain

Objective findings (including current x-rays, EKG's, laboratory data and any clinical findings): Cardiac Cath 7/24

Diagnosis (including any complications) Include ICD9 and/or DSM IV Multi Evaluatio Nomenclature and Code Numbers:
414.01, V45.82, 410.70
272.2, 305.1, 300.00, 78
72

Is condition due to, or exacerbated by injury or sickness arising out of patient's employment? ● Yes ○ No ○ Unknown

Information about the patient's ability to work - this information is critical to understanding your patient's condition Fully describe restrictions and limitations.

RESTRICTIONS (What the patient should not do): No prolonged Standing, no heavy lifting (2nd Wbch)

LIMITATIONS (What the patient cannot do): Cannot work in a stress-ful situations

What is the prognosis for recovery? Fair

Height / Weight: / 200 lbs

Blood pressure last visit: 112/80

If pregnancy, delivery type: ○ Normal ○ C-Section

If pregnancy, expected delivery date: _ _ / _ _ / _ _ _ _

If delivered, actual delivery date: _ _ / _ _ / _ _ _ _

### Treatment

Date of first visit for this illness or injury: 07 22 2000

Date of last visit: 10 04 2000

Date of next visit: 01 — 10 —

Frequency of visits: q 2-3 months

### Progress

Has patient achieved maximum medical improvement? ○ Yes ○ No  If no, complete the following:

How soon do you expect fundamental changes in the patient's medical condition?
○ 1 - 2 months    ○ 5 - 6 months
● 3 - 4 months    ○ more than 6 months

Is patient:
● Ambulatory    ○ Bed Confined
○ House Confined    ○ Hospital Confined

Has patient been admitted to hospital?
● Yes ○ No
Confined:
From: 07 22 2000
To: 07 25 2000

If yes, give name and address of hospital: Carlisle Hospital Harrisburg Hospital

## * REQUIRED ATTACHMENTS AND SIGNATURE
Please make sure that office notes, test results, and discharge summaries are attached! This will help reduce additional requests.

FRAUD NOTICE
Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. This includes Employe and Attending Physician portions of the claim form.

The above statements are true and complete to the best of my knowledge and belief.

Name (attending physician): Douglas J. Brown MD

Degree & Specialty: 220 Wilson St #60

Street Address: Carlisle PA

City or Town: 17013

State or Province:

Telephone Number: 717 249 1929

Fax Number: 717 249 9332

Tax I.D. Number: 23-1929361

Signature of Attending Physician (no stamp) Date: X [signature]
11 15 00.

Exhibit B



0609



## MONTHLY PROGRESS REPORT

The Paul Revere Life Insurance Company as administrator for
New York Life Insurance Company
P.O. Box 15001, Worcester, MA 01615   (800) 633-7506

### PERSONAL INFORMATION

Having previously given Notice of Disability due to  ☐ Accident  ☑ Sickness  Beginning _7-21-_ year of _00_

Based on the above accident/sickness: I am  ☐ Unable to work  ☐ Working in a limited capacity

and am receiving regular treatment from

Dr. _BOWER --- DR. Taylor_ _____ Address _Medical Arts Bldg Carlisle, PA 17013_
(List all Physicians Consulted)

Dr. _DR - CHAN_ _____ Address _Cardiology center in Camphill_

Describe how your time is occupied and outline what activities you engage in at present (if working in a limited capacity, describe duties you can perform). _EXERCISE Twice a day - walk - window shop - visit RE-AB for my back 2-3 times a week -_

Have you been at your place of business during your disability or earned any money during your disability?

☐ Yes  ☑ No   If yes, to either or both, when? _____

Please explain _I have been there to eat since my wife cooks sometimes The_

When do you expect to return to work? _I don't know_

Are you receiving or do you expect to receive other disability, retirement benefits, WC, Gov't, or SS disability? ☐ Yes ☑ No

If yes, give sources and amounts 1. _____

2. _____   3. _____

Have you been hospital confined since your last Progress Report?   ☐ Yes ☑ No

If yes, where? _____ Hospital located at _____
                                                (Street and No.)        (City)        (State)        (Zip)

from _____ Year of _____ to Year of _____

### DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print) _VINCENZO MAZZAMUTO_

I authorize any licensed physician, medical practitioner, hospital, clinic, pharmacy or other medically related facility, insurance company, third party administrator, government organization, employer and any of their agents performing services relating to any employee benefits or workers compensation, other organization, institution, or person that has any records or knowledge of me, my health (including any disorder of the immune system including HIV or AIDS, any information relating to the use of drugs and alcohol, and any information relating to mental and physical history, condition, advice or treatment), financial or credit information, earnings, employment history, or other insurance benefits, to release this information to any of the UnumProvident Corporation subsidiaries or their duly authorized representatives. I also authorize the UnumProvident Corporation subsidiaries to request a report from the Medical Information Bureau (MIB), and the association of life insurance companies which operates the Health Claims Index (HCI) and the Disability Income Record System (DIRS). I understand that the dates of my past and present claims with any of the UnumProvident Corporation subsidiaries, excluding medical or personal information, may be reported to MIB and that an HCI or DIRS report may reflect this information including the identity of other insurance companies to which I have submitted claims. I further understand that in executing this authorization, information obtained by it will be used for evaluating and administering a claim for benefits.

This authorization is valid for the duration of my claim. I know that I or my authorized representative has a right to request a copy of this authorization. A copy of this authorization shall be as valid as the original.

I further authorize the UnumProvident Corporation subsidiaries or other authorized representatives to release all information (including information pertaining to HIV or AIDS, mental illness, and drug and alcohol abuse) related to this insurance claim to insurance companies, third party administrators, physicians, rehabilitation professionals, vocational evaluators, employers, my insurance agent, and any institution or person on a need to know basis for the purpose of verifying, evaluating, negotiating, or other pertinent uses with respect to my claim for benefits or service.

The statements made by me on this claim are true and complete.

I further authorize the UnumProvident Corporation subsidiaries or its authorized representatives or agents to request reports and information from the Social Security Administration regarding benefits, earnings and employer information, and any award, disallowance or termination relating to benefits.

I am the individual to whom this release/request applies or that person's legal Guardian, Power of Attorney, or Conservator. I know that if I make any representation which I know is false to obtain information from federal records, I could be punished by fine or imprisonment or both.

_Vincenzo Mazzamuto_ (Claimant Signature)          _1-16-01_ (Date Signed)

_VINCENZO MAZZAMUTO_ (Print Name Here)          _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_ (SSN)

I signed on behalf of the claimant, as _____ (indicate relationship).

If Power of Attorney, Guardian, or Conservator, please attach a copy of the document granting authority.

Address _____
         (Street and Number)        (City)        (State)        (Zip)

This address is ☐ Temp. ☐ Perm.   Phone No. (Include Area Code) _____

563-NYL

0610

## ATTENDING PHYSICIAN'S STATEMENT

Patient's name _Vincenzo Mazzucato_

Date you first treated patient for this condition _7/22/00_ CAD _4/3/96_ Low B Pm
#1.01, #10.70    72

Nature of sickness or injury. (Describe complications if any) _CAD s/p Non QMI_ , _Chronic Low Back P._

Dates of treatment (since last report) _For MI_    Office _8/23/00, 10/4/00, 11/29/00, Anno 12/15_, 1/16/

Hospital _C. U.R 7/22-7/24, 8/4-8/6/00_ Henshey 7/24-7/

_Brch Pain - multiple visits 5_ _Hbb_

How long will patient be able to work in his/her occupation?    From _8/4_ , Year of _2000_ to _Pen_ , Year of ____

How long will patient be able to work in any occupation?    From _8/4_ , Year of _2000_ to _Pen_ , Year of ____

Partially disabled    From ____ , Year of ____ , to ____ , Year of ____

What is the prognosis for your patient? _Unlikely to be able to rtn to his work (2nd to back)_

When do you feel patient could resume some work? _Unknown_

Work without restriction? _Nun_

Do you feel your patient is a candidate for vocational rehabilitation?    ☐ Yes  ☒ No

Doctor's Name _Bower_    (Signature of Attending Physician)    Dated _1/18_ , Year of _2001_

Street _220 wilson St PhD_    City _Carlisle_    State _PA_    Zip Code _17013_

Phone No. _(717) 249 1929_    Signed ____ (Signature of Attending Physician)    _MD_ (Degree)

**MONTHLY PROGRESS REPORT**
**PLEASE NOTE – THIS FORM SHOULD BE COMPLETED AND RETURNED TO US ON OR ABOUT THE SAME DATE EACH MONTH.**

If you have any questions or concerns about the monthly completion of this claim form, please contact us at 1-800-633-7506.

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

**PLEASE RETURN THIS TO:**
THE PAUL REVERE LIFE INSURANCE COMPANY
NEW YORK LIFE CUSTOMER CARE CENTER
P.O. BOX 15001
WORCESTER, MASSACHUSETTS 01615-9905

From : McGr Case 1:01-cv-01157-CCC     Document 16 125 94#9 Filed 07/14/2003 Aug 08 2002 3:06PM P01
Page 6 of 23

# MASLAND ASSOCIATES, INC.

## INTERNAL MEDICINE

MEDICAL ARTS BUILDING     220 WILSON STREET, CARLISLE, PA  17013     **(717) 249-1929**

DAVID S. MASLAND, M.D.
RETIRED

JOSEPH F. BRAZEL, M.D.
HEMATOLOGY

FRANK P. CASTRINA, M.D.
PULMONARY

LARRY S. RANKIN, M.D., F.A.C.C.
CARDIOLOGY

DEBRA D. TAYLOR, M.D.
INTERNAL MEDICINE

LESTER L. HIMMELREICH, III, M.D., F.A.C.P.
INTERNAL MEDICINE

TERRY A. ROBISON, D.O.
INTERNAL MEDICINE

PHILIP A. NEIDERER, D.O.
INTERNAL MEDICINE

DOUGLAS J. BOWER, M.D.
INTERNAL MEDICINE

*April 16, 2002*

Ms. Trudy McGraw
The Wellington
17 East High Street, Suite 101
Carlisle, PA   17013

Dear Ms. McGraw:

I'm writing to you in regards to my patient, Vincent Mazamutto, to clarify his current medical conditions.

As I mentioned to you in past correspondence, Mr. Mazamutto has three primary medical conditions. His first problem revolves around severe low back pain which has been chronic and unrelenting despite numerous aggressive interventions. He's been on multiple medications, received therapy from the pain clinic, received local epidural steroid injections and numerous prescription medications - all with only partial success. Despite this aggressive therapy, Mr. Mazamutto is still severely limited in his ability to stand, bend or sit for prolonged periods of time and is unable to work.

His second, and perhaps most severe problem, is that of his chronic anxiety and depression. This has become especially manifest over the last several years and has proved to be somewhat refractory to multiple medical interventions. This problem was complicated by his third problem which is that of coronary artery disease. As the result of his heart problems, Mr. Mazamutto is extremely fearful of suffering a heart attack and dying.

At the present time I feel that Mr. Mazamutto is being treated maximally but the combination of the three previously mentioned conditions still renders him unable to work. Because of his severe anxiety, he is unable to even consider the possibility of back surgery as he is extremely fearful that the surgery will render him either paralyzed or induce further myocardial infarction.   As such, I

Exhibit C

Trudy McGraw
April 16, 2002
Page 2

do not think it is wise to pursue this option.   We'll continue our efforts with
medical therapy in an effort to improve Mr. Mazamutto's quality of life , but I feel
we have probably plateaued in our abilities to improve his level of function.  As
such, it has been our recommendation that he not return to work.

If you have any questions, concerns or other specific issues which you'd like me
to address, please don't hesitate to call.

                                    Sincerely,

                                    Douglas J. Bower, M.D.

DJB/ro

PENNSTATE

The Milton S. Hershey Medical Center
The College of Medicine

**PROGRESS REPORT**

# ORTHOPAEDIC EVALUATION
## THE MILTON S. HERSHEY MEDICAL CENTER

**MAZZAMUTO, VINCENZO**          **MSHMC# 1193575**          **January 4, 2002**

**DATE OF BIRTH:** 05/25/55

**HISTORY:** This was a followup visit for this 46-year-old man followed for low back pain and spinal stenosis. He returns today to review the results of his MRI scan. He continues to have primarily back pain, but does note significant symptoms in his legs which occurred either with prolonged standing or sitting. He is receiving treatment in the Pain Clinic with epidural steroid injections, but these have failed to gain him any significant long-term relief. He is taking Neurontin and Vioxx for pain control. He does not work. He has no new symptoms.

He moves around the room fairly comfortably. He has no fixed deficits of strength or sensation in either lower extremity.

I reviewed his MRI scan which shows degenerative changes at L3 and L4, with moderately severe spinal stenosis at those levels. There is no evidence of instability or deformity.

**IMPRESSION:** This is a 46-year-old man with lumbar spinal stenosis.

**RECOMMENDATIONS:** I had a long talk with the patient and his wife regarding this situation. I do think that he would be a candidate for a lumbar decompression. I do not think he would require effusion. However, he does understand that decompression is aimed at significantly limiting leg symptoms rather than back symptoms. I did tell him that in many cases there is some improvement in back pain following surgery, but this is not reliable or predictable. We talked about the nature of the surgical procedure. We talked about the potential risks of surgery, anesthetic complications, bleeding, infection, nerve damage, dural tear, and failure to relieve symptoms, as well as the development of progressive deformity or intractable pain requiring fusion following surgery. We talked about the expected hospital stay and convalescence. Currently, the patient is not willing to consider surgery for treatment for this problem. He will continue with his current medication regimen. He will follow up in the future on a p.r.n. basis if his symptoms progress to the point that he would like to consider surgical treatment.

Dictated by:

Daniel E. Gelb, M.D.
Assistant Professor
Department of Orthopaedics and Rehabilitation
Spine

DEG/cbt·0061
D: 01/06/02  T: 01/09/02

RECEIVED STAMP

JAN 2 8 2002

DATE RCVD _____  DATE REVIEWED _____
SEE PROGRESS NOTES FOR INSTRUCTIONS
CALL & TELL OK _____
FILE - NO ACTION _____
DATE & TIME PT GIVEN INST _____
DOCTOR'S SIGN _____

cc:  Douglas Bowers, M.D., 220 Wilson Street, Suite 109, Carlisle, PA 17103
     Ted Kosenske, M.D., Carlisle Hospital, 246 Parker Street, Carlisle, PA 17013
     Medical Records
     File Copy

cc: Hait & Assoc. 2/5/02

Exhibit D


PLAINTIFF'S EXHIBIT
31

07/14/2002 11:45  7152139542                    HARRISBURG BRANCH

07/12/2001
DATE DICTATED

PENNSYLVANIA BUREAU OF DISABILITY DETERMINATION
1171 S. Cameron Street, Room 200, Harrisburg, PA 17104-2594
TRANSCRIPTION OF TELERECORDED MESSAGE

STANLEY E. SCHNEIDER, EDD.
412 ERFORD ROAD
CAMP HILL PA 17011

ADJUDICATOR: T. WEAVER

RE: MAZZAMUTO, VINCENZO

SSN: 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

DATE: 07/13/2001 #77216

TDN#:

Phone: 717-732-2917

AUTHORIZED SERVICE:

Mr. Mazzamuto was referred for a Clinical Psychological Disability Evaluation. He was scheduled and was seen on July 12, 2001, beginning at 10:15 a.m.

Mr. Mazzamuto is Italian and was accompanied to the assessment by his wife, Gerarda, and interpreters from the Center for International Services, Carmella Allen and Monica Moore, who helped, when needed, with interpretation. Mr. Mazzamuto's English comprehension and verbal language is intelligible and generally understandable. He seems to have a better working knowledge of English than he may have presented to others.

ALLEGED CONDITIONS:

Heart attack, spinal stenosis.

COMMENTS AND OBSERVATIONS:

Mr. Mazzamuto indicated that he drove the vehicle getting he and his wife to this office. As noted, he was accompanied by his wife. There were 2 interpreters to help when needed.

This man presents as a 46-year old, married (24 years), former restaurant owner. His dress was appropriate for the cool Summer morning. There was nothing noted about posture and gait. He was cooperative, open, volunteered information, answered all questions, and was polite and cordial.

HISTORY OF ILLNESS:

Mr. Mazzamuto relates that he last worked about 1 year ago, noting July, 2000. When asked why he cannot work, he said "I don't think I can handle people...I get nervous... I lose control very often..." He went on to describe losing his temper and feeling fatigued on a regular basis, difficulty concentrating, and talked about some of his physical problems related to his back which he



PLAINTIFF'S
EXHIBIT
19

Exhibit E

STANLEY E. SCHNE ER, EDD./MAZZAMUTO, VINCEN. /SSN:
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/p.2

believes has worsened since his heart attack in July, 2000, as well as a "nervous stomach.

Background information provided by the claimant reflects his father having a heart attack around the same age as the claimant. His father died at age 54. Before the heart attack in the Summer, he describes himself as a "happy nervous man". Apparently, he handled his anxieties through smoking (4 packs a day prior to the heart attack) and through attempting to distance himself from the stresses and responsibilities related to work. He said basically "I was able to walk away..."

He now describes himself as being "constantly" worrying about something. He is easily irritated, is anxious, reports feeling tightness in his chest. He is upset because his back was aggravated while being transported from Carlisle Hospital to Harrisburg Hospital last Summer. Apparently, the ambulance stopped short and this aggravated a previously existing back injury. He now reports that his legs get numb and he indicated falling at least on 2 occasions.

This man does not engage in former hobbies. He basically stays at home and watches T.V. and said "the T.V. watches me back", reflecting an underlying sense of humor.

This man has never been hospitalized for any emotional problems or mental health issues.

Mr. Mazzamuto and his wife indicate that his doctor is currently modifying anti-depressant medications, however, they present a list of the following medications Mr. Mazzamuto currently is taking. These include: Flexeril, Metoclopramide, Zocor, Prevacid, Lopressor, aspirin, Nitratol, Neurontin, Ativan, Wellbutrin (which is being decreased) with Celexa being added on or about July 23, 2001.

Major medical problems relate to his back and stomach.

PERSONAL AND FAMILY HISTORY:

Personal and family history reflects his being born and raised in Sicily. He noted being born in Polamo and raised Carini. He only went to the 7th grade. He immigrated to the United States at age 21 to marry his current wife of 24 years. They have 4 children. Mr. Mazzamuto indicates that he has always worked in a restaurant since age 21. He reports no problems relating with employees or other co-workers. He has never been fired. He really has never worked under anyone's supervision for any length of time.

The claimant does not report any involvement with drugs or alcohol. He has never had contact with the criminal justice system. He has never received any mental health counseling. He has never been in the military.

He does admit to smoking 4 packs a day. He stopped the day he had his heart attack in July, 2000.

Currently, the claimant lives with his wife and 4 children.

MENTAL STATUS:

Mental status shows a 5'5", well-developed, 195-pound Caucasian male. He indicates that he now exercises using a treadmill daily. He was able to establish and maintain eye contact. He tolerated the interview well. He answered all questions in a very cooperative and open fashion. His speech is understandable even though Italian is his native language.

When asked how he would describe his mood, he said "depressed". When asked to describe that, he noted his being tired, having stomach "vibrations", being lazy, having major sleep difficulties throughout the days and nights.

His mood was noted to be somewhat anxious as well as mildly dysphoric. His affect was restricted.

There is no history nor any evidence of any perceptual disturbances or underlying psychotic process.

This man's thought process and thought content are uninvolved. He was able to answer questions in a relevant and goal-directed fashion. There is no major language impairment that interferes with reception or expression. There are no noted problems with thought content. He does admit to suicidal thoughts about once a week but has no plan and no intent to kill himself. He denies any suicidal thinking.

He does think about returning to Sicily. He presents this as a possible cure for his difficulties thinking that perhaps a geographic change, "a return to his home", might help him.

Cognitively, he appears to be of average intelligence. He is oriented times 3. He is aware of current news events and items in the world.

Initially, he had some difficulty with identifying similarities between apparent dissimilar objects but once he got the sense of it was able to interpret similarities without difficulty.

He could do serial sevens accurately.

As noted, he is oriented times 3.

There seems to be some difficulty with memory. He can forget things during the day which may be a reflection more of his anxiety and depression versus any organic involvement. He was able to recall remote incidents from childhood as well as events from the past few months. He had more difficulty with more recent memory.

Immediate retention and recall reflects his doing 4 digits forward and backward without any problem.

There is no history of any impulse control problem. Currently, since his heart attack, he is more easily irritated, he is more socially withdrawn, and asocial.

Test judgment and insight is acceptable and appropriate. He has insight that he continues to need treatment and is aware that his doctors are trying to titrate his medications and identify appropriate medication regimens, especially for his anxiety disorder and related depression.

He appears to be a reliable informant.

DIAGNOSIS:

Generalized anxiety disorder, DSM-IV 300.02, with related depressive features. This man presents with anxiety and worry which he reports experiencing on a daily basis and has no success in controlling. He reports being easily fatigued, has difficulty concentrating, reports being irritable (confirmed by his wife), and indicates having a sleep problem.

If awarded funds, he is able to manage the same competently.

Mr. Mazzamuto's activities of daily living are somewhat more restricted than they were prior to his heart attack. He does not help his wife with cleaning around the house. He will do some simple prep cooking at home and will also do some simple shopping if she requests him to do so. She has assumed responsibility for basically maintaining the residence and paying the bills. There is no difficulty with personal care or hygiene.

Socially, he has become more intolerant and withdrawn from both family as well as friends.

Concentration, persistence, and pace are more impaired since the heart attack. He has little tolerance for doing anything but watching T.V.

The Medical Source Statement is enclosed.

STANLEY E. SCHNEIDER, EDD.

SS/94040

"THIS TRANSCRIPTION WAS MADE FROM THE RECORDING OF THE VOICE OF STANLEY E. SCHNEIDER, EDD.. A COPY OF THIS REPORT HAS BEEN SENT TO THE DOCTOR FOR REVIEW AND SIGNATURE."

GUIDANCE ASSOCIATES OF PA
ADJUDICATOR: T Weaver

CLAIMANT NAME: VINCENZO MAZZANUTO
SSN: 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

---

## I. MAKING OCCUPATIONAL ADJUSTMENTS

Check the blocks representing the individual's ability to adjust to a job, and complete Item 9.

| | Unlimited/ Very Good | Good | Fair | Poor/ None |
|---|---|---|---|---|
| 1. Follow Work Rules | | | ✓ | |
| 2. Relate to Co-workers | | | ✓ | |
| 3. Deal with the Public | | | | ✓ |
| 4. Use Judgment | | ✓ | | |
| 5. Interact with Supervisor(s) | | | | ✓ |
| 6. Deal with Work Stresses | | | | ✓ |
| 7. Function Independently | | | ✓ | |
| 8. Maintain Attention/Concentration | | | ✓ | |

9. Describe any limitations and include the medical/clinical findings that support this assessment.

Pain is Bad, Possible leg y Blue
Anxiety. Nervousness Worry (extensive)

---

## II. MAKING PERFORMANCE ADJUSTMENTS

Check the blocks representing the individual's ability to adjust to a job, and complete Item 4.

| | Unlimited/ Very Good | Good | Fair | Poor/ None |
|---|---|---|---|---|
| 1. Understand, remember and carry out complex job instructions | | | | ✓ |
| 2. Understand, remember and carry out detailed, but not complex job instructions | | | | ✓ |
| 3. Understand, remember and carry out simple job instructions | | | | ✓ |

4. Describe any limitations and include the medical/clinical findings that support this assessment; e.g., intellectual ability, thought organization, memory, comprehension, etc.

---

TDN: 0053265892

F48198
164  10/99

# SOCIAL SECURITY ADMINISTRATION
## Office of Hearings and Appeals

## DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|

VINCENZO MAZZAMUTO
<u>(Claimant)</u>

Period of Disability and
Disability Insurance Benefits

<u>(Wage Earner)</u>

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
<u>(Social Security Number)</u>

## INTRODUCTION

On April 24, 2001, the claimant protectively filed an application for disability insurance benefits. The claim was denied initially, and a Request for Hearing was timely filed on October 1, 2001. Because there is sufficient evidence to establish disability based upon the evidence in the record, an oral hearing was not held. The claimant alleges disability beginning July 22, 2000 due to stenosis of the spine, a heart attack, and stress (Ex. 1E). Trudy H. McGraw, an attorney, represents the claimant in this matter.

The general issue is whether the claimant is entitled to a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act. The specific issue is whether he is under a disability, which is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for disability insurance benefits, there is an additional issue pertaining to insured status. A review of the claimant's earnings record reveals that he has earned sufficient quarters of coverage to remain insured at least through the date of this decision.

After careful consideration of the entire record, I conclude that a fully favorable decision on behalf of the claimant is appropriate at step five of the sequential evaluation process.

## EVALUATION OF THE EVIDENCE

Exhibit F

From : McGraw Real Estate CCC    Document 161925 94    Filed 07/14/2003    Aug 02 2002 3:56PM P01
Case 1:01-cv-01157-CCC    Document 161-25    Filed 07/14/2003    Page 15 of 23

The claimant is a 47-year-old individual with a limited seventh grade education and past relevant work as a restaurant owner. He has not engaged in substantial gainful activity at any time since the alleged onset date.

The claimant has the following medically determinable severe impairments: degenerative disc disease and coronary artery disease. The medical evidence of record establishes that the claimant has a significant history of low back pain since at least 1996. The medical records reveal that the claimant experiences severe low back pain, which has been chronic and unrelenting despite numerous aggressive interventions. Treatment records show that the claimant has been on multiple medications, that he has received physical therapy, that he has received treatment from a pain clinic, and has received numerous local epidural steroid injections, all of which have only minimally attenuated his symptoms. In addition to debilitating back pain, the evidence also establishes that the claimant suffered a myocardial infarction and required cardiac catheterization on July 24, 2000. Although the evidence establishes that the claimant's coronary condition is relatively stable, he continues to experience debilitating back pain. An August 4, 2000 medical report indicates that the claimant was experiencing worsening back pain with radiculopathy into the posterior aspect of both thighs. On March 12, 2001, the claimant was still complaining of back pain going down his right buttock and down into his leg as well as anterior right thigh burning. It was noted that walking and sitting for any length of time seem to aggravate this condition. Upon examination, there was tenderness to palpation in the lumbosacral spine. A lumbar spine MRI performed on October 17, 2001 revealed degenerative desiccation and diffuse degenerative bulge of the L3-4 and L4-5 intervertebral discs. The neural canal was significantly narrowed at L3-4 consistent with focal spinal stenosis. A December 19, 2001 treatment note indicates that the claimant has difficulty sleeping because of the pain. Daniel E. Gelb, M.D. indicated in an orthopedic evaluation report of January 4, 2002 that the claimant continues to have primary back pain with significant symptoms in the legs, which occur either with prolonged standing or sitting. Dr. Gelb concluded that the claimant is a candidate for lumbar decompression. Douglas J. Bower, M.D. indicated in a report of January 31, 2002 that the claimant's most significant problem is his low back discomfort. Dr. Bower indicated that the claimant has ongoing discomfort, both with sitting and standing and that he is unable to lift. Dr. Bower concluded that the claimant was incapable of working (Exs. 1F-6F and 12F-15F).

The claimant stated in the record that he experiences bad back pain with pinching, trembling, and a burning sensation in his legs. He reported that sitting and standing for any length of time aggravate his pain and noted that he must rest between activities. The claimant reported that pain disturbs his sleep regularly and that pain interferes with his ability to concentrate. He indicated that medications cause constipation as a side effect.

The allegations of the claimant are credible based on the medical evidence and the criteria of 20 CFR 404.1529 and SSR 96-7p.

The claimant does not have an impairment that meets or equals the criteria of any listed impairment. A determination must therefore be made of whether he retains the residual functional capacity to perform the requirements of his past relevant work or can adjust to other work.

I realize that the claimant also has a severe anxiety disorder. However, since a fully favorable decision is appropriate based on physical impairments alone, functional limitations attributable to the claimant's mental impairment have not been assessed.

The evidence of record supports a finding that the claimant retains the residual functional capacity to lift or carry and push or pull 2-3 pounds occasionally and no weight frequently, stand or walk 1 hour per 8-hour workday and sit 4 hours per 8-hour workday with a sit/stand option. Additionally, he is only able to engage in bending, stooping, kneeling, climbing, crawling, or crouching on an occasional basis. Based on these limitations, the claimant retains the residual functional capacity for significantly less than the full range of sedentary work.

I have given significant weight to the above-mentioned opinion dated April 16, 2002, of Dr. Bower finding the claimant unable to work (Ex. 15F), as it is supported by the clinical findings contained in the record as well as the degree of treatment required. As for the opinion dated June 18, 2001 of the State Agency medical consultant finding that the claimant retained the capacity to perform light work activity (Ex. 8F), it has been given limited weight as it is inconsistent with the other substantial evidence, some of which was unavailable for review by the State Agency consultant.

In his former work as a restaurant owner, the claimant was required to perform skilled light exertional level work activity. Because the claimant is limited to significantly less than the full range of sedentary work, he is precluded from the performance of his past relevant work.

As the claimant has demonstrated that he lacks the residual functional capacity to perform the requirements of any past relevant work, the burden shifts to the Social Security Administration to show that there are other jobs that the claimant can perform. This determination is made in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations (20 CFR Part 404). Appendix 2 contains a series of rules that direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's age, education, work experience, and residual functional capacity.

Born May 25, 1955, the claimant was 44 years old on July 22, 2000. For the purpose of this decision, he is considered to be a younger individual. He has a limited education and has a skilled work background. However, considering the nature and extent of the claimant's functional limitations, it is reasonable to conclude that there are no occupations to which the claimant's acquired work skills could transfer.

The claimant's capacity for the full range of sedentary work is reduced by additional limitations that narrow the range of work he can perform. Considering these limitations within the guidelines of Social Security Ruling 96-9p, there are no occupations with jobs existing in significant numbers in the national economy which the claimant could perform. A finding of "disabled" may therefore be reached within the framework of Medical-Vocational Rule 201.25.

VINCENZO MAZZAMUTO (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)                     Page 4 of 5

In accordance with a finding that the claimant has been under a disability beginning
July 22, 2000, he is entitled to disability insurance benefits on the basis of his application
protectively filed on April 24, 2001.

## FINDINGS

After careful consideration of the entire record, I make the following findings:

1.  The claimant has not engaged in substantial gainful activity since July 22, 2000.

2.  The medical evidence establishes that the claimant has the following severe impairments:
    degenerative disc disease and coronary artery disease.

3.  The claimant has no impairment that meets or equals the criteria of any impairment listed in
    Appendix 1, Subpart P, Regulations No. 4.

4.  The claimant's assertions concerning his ability to work are credible.

5.  The claimant retains the residual functional capacity to lift or carry and push or pull 2-3
    pounds occasionally and no weight frequently, stand or walk 1 hour per 8-hour workday and
    sit 4 hours per 8-hour workday with a sit/stand option. Additionally, he is only able to
    engage in bending, stooping, kneeling, climbing, crawling, or crouching on an occasional
    basis. Based on these limitations, the claimant retains the residual functional capacity for
    significantly less than the full range of sedentary work.

6.  The claimant is unable to perform the requirements of his past relevant work.

7.  The claimant's residual functional capacity for the full range of sedentary work is reduced by
    additional limitations.

8.  On July 22, 2000, the claimant was a younger individual.

9.  The claimant has a limited education.

10. The claimant has a skilled work background. However, considering the nature and extent of
    the claimant's functional limitations, it is reasonable to conclude that there are no
    occupations to which the claimant's acquired work skills could transfer.

11. Considering the claimant's additional limitations, he cannot make an adjustment to any work
    that exists in significant numbers in the national economy; a finding of disabled is therefore
    reached within the framework of Medical-Vocational Rule 201.25.

12. The claimant has been under a disability, as defined in the Social Security Act, since
    July 22, 2000 (20 CFR §404.1520(f)).

VINCENZO MAZZAMUTO (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)                    Page 5 of 5

## DECISION

It is my decision that, based on the application protectively filed on April 24, 2001, the claimant
is entitled to a period of disability commencing July 22, 2000, and to disability insurance
benefits under Sections 216(i) and 223, respectively, of the Social Security Act.


_____
EDWARD T. MORRISS
Administrative Law Judge


_____ **JUL 2 5 2002** _____
Date



**Hershey Psychiatric Associates**

92S East Chocolate Avenue

Hershey, Pennsylvania 17033-1215

(717) 533-4797

Fax. (717) 533-1574

June 28, 2002

Kirk L. Wolgemuth, Esq.
Stevens & Lee
POB 679
Reading PA 19603-0679
Fax #610/988-0810

Re: Vincenzo Mazzamuto

Dear Mr. Wolgemuth:

I have had the opportunity to review all of the medical records you had forwarded to me concerning Mr. Mazzamuto, along with the transcription of the testimony given by Douglas Bower, M.D. on April 16, 2002.

Based on reviewing all of this information, it is quite unclear whether Mr. Mazzamuto is psychiatrically disabled from functioning in his responsibilities as a restaurant owner.

For me to give a more definitive opinion about whether he is disabled, it would be necessary for me to see him in person, to conduct a full mental status evaluation.

I cannot conclude in any definitive way whether Mr. Mazzamuto is psychiatrically disabled from the medical records and the deposition testimony of Dr. Bower. He recognizes he is not a psychiatrist and has not done a thorough mental status evaluation on Mr. Mazzamuto. He indicated that Mr. Mazzamuto should have been under the care of a psychiatrist, but he felt it was practically impossible for such a consultation to be arranged. Dr. Bower has not indicated that he carried out formal mental status examinations when he saw Mr. Mazzamuto.

I also had read the records from Mitchell Sadar, Ph.D. He had prepared questionnaires for Social Security Disability determination. His document is internally inconsistent, indicating limitations ranging from mild to moderate. He also was not clear in completing this form as to what his basis was for indicating Mr. Mazzamuto as having basically a psychiatric impairment. He indicated his primary complaints were medical and physical rather than psychiatric.

Abram M. Hostetler, M.D., F.A.C.P., F.A.P.A.        Barbara G. Kuhlengel, M.D., F.A.P.A.
Kathleen L. Huth, Office Manager

PLAINTIFF'S
EXHIBIT
33

tabbies®

Exhibit6

Re: Vincenzo Mazzamuto
Page: 2

I did not find that Dr. Sadar had carried out any formal psychological testing, to determine the extent of Mr. Mazzamuto's having personality factors which may have been contributing to his anxiety level.

I also reviewed the report prepared by Stanley E. Schneider, Ed.D., who had evaluated Mr. Mazzamuto on July 13, 2001. Dr. Schneider is a psychologist who went through a clinical interview with Mr. Mazzamuto, which did also include a mental status evaluation. Dr. Schneider concluded Mr. Mazzamuto has a Generalized Anxiety Disorder with Depressive Features. However, in his narrative describing the interview he did not establish and support a finding of psychiatric impairment and disability.

Therefore, as noted above, it would be necessary to have Mr. Mazzamuto seen in person by a psychiatrist in order to determine his degree of psychiatric impairment.

Very truly yours,

Abram M. Hostetter, M.D.

AMH/kh
AMH33/mazzamuto

### Robert C. Steinman, M.D.

1671 Crooked Oak Drive
Lancaster, PA 17601
(717) 581-4821

June 27, 2002

Kirk L. Wolgemuth, Esquire
P.O. Box 1594
Lancaster, PA 17608-1594

Re:    Vincenzio Mazzamuto vs. UNUM Life Insurance Company of America

Dear Mr. Wolgemuth:

At your request I have reviewed medical records about this gentleman that started in 1996. In addition, I reviewed a transcript of the deposition of Dr. Bower from April 16, 2002. Specifically, I reviewed the records from Dr. Ted Kosenske, a pain specialist, medical records from Masland Associates, records from Dr. Laurence Goldstein, Mitchell Sader, Ph.D., Stanley Schneider, EDD, Harrisburg Hospital, Alexander Spring Rehab, Inc., Dr. Daniel Gelb and the Carlisle Hospital. There were other medical records in addition. There were several reports of imaging studies, x-ray's and MR scans of his low back. There also was an electro-diagnostic report (EMG).

A brief summary of these records would include the fact that he was having low back pain in 1996. He was out of work because of back problems from March 1996 until October 1996. Apparently, he fell on ice in January and hurt his back and then had several other falls. He continued intermittently after that to complain about his back. He was attended by Dr. Bower, his family internist since 1996, who treated him for problems with his back as well as other medical conditions. He had difficulty with his urinary tract with urgency and frequency of urination. He also suffered with gastroesophageal reflux disorder (GERD). He also is suffering from obesity. Dr. Bower is also treating him for depression and anxiety.

Plain x-rays of the low back in June 1996 showed sacralization of the fifth lumbar vertebra with bilateral pseudo-arthrosis at the lumbosacral junction and disc space narrowing at L4-5. At that time, the MR scan showed some central spinal stenosis principally at the L3-4 level. A second MR scan of the low back was done in October 2001. Again there was focal

Exhibit H

PLAINTIFF'S
EXHIBIT
32

Kirk L. Wolgemuth, Esquire
June 26, 2002
Page 2

spinal stenosis at L3-4 with some mild bulging of intervertible discs and a congenitally narrowed neural canal. There was some disc degeneration and bulging at L3-4 and L4-5 without focal disc protrusion.

In mid 2000, he suffered a myocardial infarction and was treated successfully with single vessel angioplasty. He did very well after that. Because of some burning sensations in the anterior right thigh, an EMG test was done on March 28, 2001. Dr. Jurgensen reported that there was no evidence of motor nerve root damage. After the heart attack he did have successful cardiac rehabilitation. Nevertheless, he never returned full-time, on a sustained basis, to his regular duties at his restaurant.

After studying these records, I would make the following diagnoses:

1.    Chronic low back pain with evidence of some spinal stenosis on the imaging studies.

2.    Obesity.

3.    Chronic urinary tract problems with frequency and some urgency.

4.    Chronic indigestion, evidently gastroesophageal reflux disorder.

5.    Status post myocardial infarction which occurred in mid-2000 with an excellent recovery including no limitations on his general activities.

6.    History of treatment by Dr. Bower for anxiety and depression.

I am not going to offer any opinions about his cardiac or psychological/psychiatric conditions. With respect to his spinal stenosis, that diagnosis does not necessarily require surgery. Many people are treated conservatively. Based on my review of the medical records, including the diagnostic reports and the testimony of Dr. Bower, I do have an opinion about his ability to return to work at his restaurant.

Kirk L. Wolgemuth, Esquire
June 26, 2002
Page 3

I am convinced that his back condition does not prevent him from working there. As a matter of fact, he could have returned to his full-time duties after recovering from his heart attack in mid-2000. The restrictions offered by Dr. Bower should not have kept him from performing his duties. Dr. Bower stated that he could handle up to 20 pounds. He is easily capable of that and more. I agree with the limitations by Dr. Goldstein in his June 18, 2001 report, except that I believe that Mr. Mazzamuto should be allowed to vary periods of sitting, standing and moving about. The counter at which he would stand, at four to possibly five feet is excellent for Mr. Mazzamuto because he can lean on the counter with his forearms and relieve back discomfort while standing. He could also place a barstool with a back support behind the counter so he could alternate sitting and standing. As a physiatrist, I have recommended the use of a chair numerous times to assist patients with back conditions to return to work. The suggestion that he needs to change positions intermittently is not a disqualifier. This is actually ideal for a person with back pain. As the restaurant owner, he can do these things pretty much at will.

Mr. Mazzamuto may have aggravated his back condition in July 2000 when he claims the ambulance ride jarred his back. This is obviously noting to compare with the reported falls that he suffered in 1996. If the ride aggravated his back, he should have recovered from this in a short period of time.

The above opinions have been offered within a reasonable degree of medical certainty. Thank you for sending this file for review.

Very truly yours,

Robert T. Steinman, M.D.