ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| | : | |
| v.    ' | : | |
| | : | |
| UNUM PROVIDENT | : | JUDGE CONNER |
| CORPORATION, et al., | : | |
| Defendants | : | |

**FILED**
HARRISBURG, PA

JUL 1 4 2003

MARY E. D'ANDREA, CLERK
Per _____

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
### OF THEIR MOTION FOR RECONSIDERATION
### OF THE COURT'S DECISION TO ADMIT EVIDENCE OF
### THE SOCIAL SECURITY ADMINISTRATION'S DETERMINATION
### OF DISABILITY OR, IN THE ALTERNATIVE, CONSOLIDATION
### AND EXPEDITED REVIEW OF DEFENDANTS' RELATED
### ACTION AGAINST THE SOCIAL SECURITY ADMINISTRATION

## I. INTRODUCTION

Defendants UNUMProvident Corporation, Paul Revere Insurance Company and New York Life Insurance Company ("Defendants") file this memorandum of law in support of their motion for reconsideration of the Court's decision to admit evidence of the Social Security Administration's ("SSA") determination of disability or, in the alternative, to consolidate and expedite resolution of Defendants' related action against the SSA ("SSA Action") and issue a temporary stay of the Mazzamuto civil action.

## II. PROCEDURAL HISTORY

Plaintiff is a restaurant owner who has asserted claims for bad faith, under 42 Pa. C.S.A. § 8371, and breach of contract arising from the denial of his claim for disability benefits under a disability policy based on alleged back and

1

psychiatric conditions.  On March 17, 2003, the Court granted Defendants' motion

for summary judgment on Plaintiff's bad faith claim.

On May 6, 2003, the Court granted in part and denied in part Defendants'

motion in limine to exclude evidence from trial.  Specifically, the Court denied

Defendants' request to exclude all evidence relating to the SSA's determination of

Plaintiff's claim for Social Security Disability Insurance ("SSDI") benefits.

In deciding to admit evidence of the SSA's decision and decision-making

process, the Court relied on the reasoning of Edgerton v. CNS Ins. Co., 215 F.

Supp. 2d 541 (E.D. Pa. 2002).  However, on May 27, 2003, the United States

Supreme Court rendered a unanimous decision that undermines the Edgerton

court's reasoning regarding the relevance of an SSDI award in a separate dispute

over private disability benefits.  See The Black & Decker Disability Plan v. Nord,

No. 02-469, 2003 U.S. LEXIS 4061 (U.S. May 27, 2003).

On May 13, 2003, the Court conducted a telephone conference with the

parties.  During the conference the Court allowed the parties to reopen discovery

on a limited basis, which included allowing Defendants to take discovery regarding

the SSA's decision awarding SSDI benefits.

On June 6, 2003, Defendants served subpoena on the SSA's Administrative

Law Judge ("ALJ") who conducted Plaintiff's SSDI review.  [A true and correct

copy of the subpoena is attached hereto as Exhibit A].  To date, the SSA has

2

refused to comply with the subpoena by refusing to permit ALJ Morriss to testify.[1] [A true and correct copy of the SSA's letter refusing to allow the ALJ to testify is attached hereto as Exhibit B].

The subpoena cannot be enforced in this action pursuant to federal case law.[2] Rather, to challenge SSA's decision refusing to allow the ALJ to testify, a lawsuit under the Administrative Procedures Act, 5 U.S.C. §§ 701-706, must be filed to challenge the SSA's decision. This lawsuit has been filed contemporaneously with the filing of this motion and a true and correct copy of the complaint is attached as Exhibit C.

Defendants file this motion requesting the Court reconsider its decision to admit evidence of Plaintiff's SSDI claim in light of the Supreme Court's intervening decision in Nord. In the alternative, Defendants' request that the Court issue an order consolidating and expediting the related SSA action, and issue a stay of the Mazzamuto proceedings pending resolution of the related SSA action.

## III. FACTUAL HISTORY

Plaintiff seeks to offer into evidence a decision by the SSA awarding SSDI benefits. As Defendants argued in their October 2, 2002 Motion in Limine, the SSA's decision is based on different legal standards and a vastly different factual record than is presented here in Plaintiff's claim based on a private policy.

---

[1] SSA has indicated that it will provide a certified copy of Plaintiff's disability file.
[2] See Miskiel v. The Equitable Life Assurance Society of the United States, No. 98-3135, 1999 U.S. Dist. LEXIS 1752, * 5 (E.D. Pa. Deb. 24, 1999)("An agency decision not to provide testimony or documents may be challenged under the Administrative Procedure Act and set aside if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'").

In its Opinion, the Court appropriately acknowledged that the SSA's decision does not control Defendants' decision with regard to his private policy. Nevertheless the Court decided that the SSA determination is relevant and that relevance outweighs the potential prejudice. As authority, the Court relied upon the Eastern District's Edgerton decision as authority for admitting such evidence.

Just three weeks after the Court issued its order, however, the Supreme Court in Nord unanimously invalidated the Ninth Circuit's use of treating physician rule in ERISA disability cases. Because the treating physician rule is used in the SSDI cases, the unanimous Supreme Court took pains to clarify some of the vast differences between the SSA and non-SSA disability determinations. Thus, the Nord decision constitutes intervening law, and the Court has ample justification for reconsidering its May 6, 2003 Order and should exclude all evidence relating to Plaintiff's award of SSDI.

However, still faced with having to demonstrate to a lay jury that Plaintiff's SSDI award is not controlling and is in fact an entirely different process, Defendants have sought the testimony of ALJ Morriss. ALJ Morriss is in the unique position of being able to explain to a lay jury the complex decision-making process underlying Plaintiff's claim for SSDI. In addition, ALJ Morriss can confirm for the jury what evidence was considered important, what evidence was not considered important, and what evidence was not before the SSA reviewers at all. Armed with ALJ Morriss's unique insights, the jury will be much less likely to

4

succumb to the confusion inherent in distinguishing between the SSDI decision

and the administrative review of Plaintiff's private insurance policy.

To this end, Defendants' issued a subpoena and filed a written application to

the SSA, but were rebuffed.  The SSA invoked agency regulations – which SSA

claims supersede the authority of an Article III court to enforce a subpoena - to

prohibit ALJ Morriss from testifying.  Thus, in the event the Court does not grant

reconsideration and exclude the evidence relating to the SSDI award, Defendants

request that the Court issue an order (1) consolidating the related action filed in

this Court by Defendants against the SSA, and docketed as <u>UNUMProvident</u>

<u>Corp., et al., v. Social Security Administration</u>, No. 03-_____, (2) expediting the

resolution of the SSA action, and (3) staying the proceedings in the present action

until such a time as a definitive answer regarding the testimony of ALJ Morriss can

be resolved.

## IV.  QUESTIONS PRESENTED

**A.     Whether the Court should grant Defendants' motion for
reconsideration based on intervening Supreme Court authority?**

[Suggested Answer:  Yes].

**B.     Whether the Court should grant Defendants' motion to consolidate
Defendants' related action against the SSA because a common questions of
law exist and consolidation is the most efficient method to resolve to the
common questions?**

[Suggested Answer:  Yes].

**C.     Whether the Court should issue a stay in the <u>Mazzamuto</u> civil action
pending the outcome of Defendants' related action against the SSA when the**

5

testimony of SSA ALJ is critical to a proper examination of the relevance (or lack thereof) of the SSDI evidence?

[Suggested Answer: Yes].

## V. ARGUMENT

**A.    Nord constitutes intervening law meriting reconsideration of Defendants' request to exclude irrelevant evidence of Plaintiff's SSDI award.**

Courts in the Third Circuit may grant a motion for reconsideration when necessary "to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, by Lou-Ann, Inc. v. Max Quinteros; Jack-Mack Inc., 176 F.3d 669, 677 (3d Cir. 1999)(quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)).  The Court may alter or amend its judgment "if the party seeking reconsideration shows . . . an intervening change in controlling law . . . [or] the need to correct a clear error of law or fact to prevent manifest injustice." Max's Seafood, 176 F.3d at 677 (citing North River Ins. Co. v. Cigna Reinsurance Co., 52 F.3d 1194, 1194 1218 (3d. Cir. 1995)).  See also Howard v. Snyder, No. 01-376-SLR, 2002 U.S. Dist. LEXIS 9084 (D. Del.  May 14, 2002) (relying on intervening Supreme Court decision to grant motion for relief from judgment and reverse prior decision); Jones v. Com. of Pennsylvania Dep't of Welfare Bureau of Blindness and Visual Servs., 164 F. Supp. 2d 490, 494 (E.D. Pa. 2001) (relying on intervening Supreme Court decision to grant motion for reconsideration and reverse prior decision).

Here, shortly after the Court cited Edgerton as grounds for denying Defendants' motion in limine to exclude evidence relating to Plaintiff's SSDI claim,

the Supreme Court weighed in on the relevance of the SSA's disability program in disputes involving private disability insurance.  See Nord, 2003 U.S. LEXIS 4061.

The Nord Court invalidated the Ninth Circuit's use of the SSA's "treating physician rule" for ERISA claims.  2003 U.S. LEXIS 4061 at *6.  As the Nord Court explained, the treating physician rule was originally developed by the Courts of Appeal in evaluating SSDI claims and was later formally promulgated by the SSA through regulations.  Id. at *13.  As originally intended, the treating physician rule requires that administrative reviewers of SSDI claims grant special deference to the opinions of treating physicians.  Id. at *14.  Thereafter, the Ninth Circuit in Regula v. Delta-Family-Care Disability Survivorship Plan, 266 F.3d 1130 (2001), held that ERISA plan administrators must also follow the SSA's treating physician rule.

Following its own precedent, the Ninth Circuit in Nord granted summary judgment for Plaintiff on his ERISA-based claim for benefits.  In a unanimous decision, however, the Supreme Court vacated the Ninth Circuit's judgment and held that "plan administrators are not obliged to accord special deference to the opinions of treating physicians."  Nord, 2003 U.S. LEXIS 4061, at *6.

The Nord Court's analysis and reasoning is compelling, directly applicable to this case, and should not be ignored.  Nord certainly provides justification for reconsideration under these circumstances.  Notably, an intervening change in controlling law need not be dispositive of the question before the Court to

7

constitute a valid basis for reconsideration. <u>See</u> <u>Jones</u>, 164 F. Supp. 2d at 493

(applying the analysis and reasoning of intervening Supreme Court decision to

reverse earlier judgment and dismiss action). Here, however, the reasoning of

<u>Nord</u> indicates that it should be viewed as dispositive of this issue.

Specifically, in rejecting the treating physician rule in <u>Nord</u>, the Supreme

Court noted that the differences between the SSDI program (where the treating

physician rule is mandated) and ERISA disability benefits are "of prime

importance." 2003 U.S. LEXIS 4061, at *20.

> [The] critical differences between the Social Security disability
> program and ERISA benefits plans caution against importing a
> treating physician rule from the former area into the latter. The Social
> Security Act creates a nationwide benefits program funded by [federal
> money]. . . . To cope with the "more than 2.5 million claims for
> disability [filed] each year," the Commissioner [of Social Security]
> has published detailed regulations governing benefits adjudications.

<u>Nord</u>, 2003 U.S. LEXIS 4061, at *20 (citations omitted).

The Court explained that the series of "presumptions" contained within the

SSA's regulations, of which the treating physicians rule is but one, are

indispensable when administering such a large benefits system. <u>Id.</u> at *20. The

Court added that requiring administrative law judges to apply these presumptions

"foster[s] uniformity and regularity" in SSDI benefits determinations. <u>Id.</u>

Notably, it appears that the treating physician rule was in play in the SSA's

decision to award SSDI benefits to Plaintiff. Among other things, the ALJ noted "I

have given significant weight to the above-mentioned opinion dated April 16,

8

2002, of Dr. Bower finding the claimant unable to work . . . ."  [A true and correct copy of the SSDI Award is attached hereto as Exhibit D, at p. 3].

The Court contrasted the SSA's nationwide program of uniform benefits to private disability insurance.  While SSA requires the uniform application of presumptions, private disability insurance does not.  Rather than apply detailed regulations and presumptions, the Court noted that private disability insurance disputes turn on the particular policy language.

> In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria.  "The validity of a claim for benefits under an ERISA plan," on the other hand, "is likely to turn," in large part, "on the interpretation of terms in the plan at issue."

Id. at *21 (quoting Firestone Tire & Rubber, Co. v. Bruch, 489 U.S. 101, 115 (1989)).[3]

Of course, the very same considerations apply to Plaintiff's private disability insurance.  Specifically, the Policy contains none of the presumptions used in SSDI cases.  Instead, the Policy contains standard proof of loss provisions and Plaintiff has the burden or proof.  For the state law breach of contract claims, it is Plaintiff's burden to prove he was "disabled within the meaning of the policy and to prove that defendant breached its obligation to pay benefits."  Doe v. Provident Life and Accident Ins. Co., No. 96-3951, 1997 U.S. Dist. LEXIS 5462 at *4 (E.D. Pa.

---

[3]  Decisions from other Circuits reflect the same marked distinction between SSDI claims and ERISA governed disability claims.  For example, the Eight Circuit has held that "ERISA plans are not bound by Social Security determinations, and [the court] owes no deference to findings made under the Social Security Act."  Coker v. Metro Life Ins. Co., 281 F.3d 793, 798 (8th Cir. 2002) (citations omitted).

April 23, 1997) (citations omitted).  Plaintiff has "the burden of proof, the burden of going forward, and the burden of ultimate persuasion at trial...."  Id.

Conversely, the SSA's SSDI review, with its rigid set of presumptions, stands in stark contrast.  The Nord Court's distinction of the attending physician's rule is perhaps the most obvious.  But, the SSA also uses chronological age in determining the extent to which age "affects a person's ability to adjust to other work."  The basic premise is that advancing age tends to be an increasingly limiting factor in whether an individual has the ability to adjust to alternative work. See 20 C.F.R. § 416.963.  Under Mazzamuto's private policy, there is no applicable age-related presumption.

Also, the SSA must make a determination of whether or not the individual is disabled or has any residual functional capacity.  In making this determination, the SSA makes use of a standardized grid, which includes the factors of age, education and previous work experience.  See 20 C.F.R. Pt. 404, Subpart P., Appendix 2, Table No. 1.  The ALJ noted in the SSDI Decision that Mazzamuto "retains [some] residual capacity, [but] [b]ecause the claimant is limited to significantly less that the full range of sedentary work" he is disabled from his own occupation.  [Exhibit D, p. 3].

But while the SSA may find an individual disabled despite retaining part-time work capacity, Plaintiff's policy here requires a finding of total disability upon proof that he "is unable to perform all the duties of his past occupation" and does

10

not have part-time work capacity.  See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 275 (4th Cir. 2002)(emphasis added).  This is in accord with Russell v. Paul Revere Life Ins. Co., 288 F.3d 78, 82 (3d Cir. 2002), where the Court held that if a claimant has residual work capacity, no disability benefits are payable unless the insured returns to work commensurate with the residual capacity.  Thus the SSDI determination is far different from the analysis the jury should employ.

Again, ERISA plans and Plaintiff's private policy lack any such inflexible presumptions, and instead, reviewers base their decisions solely on the proof supplied by the claimant and by independent medical reviewers.

Here, as in Nord, Plaintiff's policy is not subject to the SSA mandated presumptions.  In fact, the opposite is true.  Plaintiff's claim for benefits must be evaluated solely in accordance with the terms of his policy and the specific facts presented to Paul Revere.  Asking the factfinder to evaluate Plaintiff's private claims for benefits in this case by looking at the SSA's record (developed in accordance with its rigid set of presumptions) would be unfairly prejudicial to Defendants and very confusing to the jury.

Finally, in this case, the Court relied on Edgerton for the proposition that an SSDI award, while not binding, was relevant to the determination of disability benefits in the private insurance context.  But the Edgerton Court first concluded that SSDI awards were "analogous" and that the treating physician rule should

11

apply, citing the Ninth Circuit's <u>Regula</u> decision.  <u>Regula</u>, however, has now been undermined by <u>Nord</u>.

Moreover, if there were any doubt left about the viability of <u>Edgerton</u> after <u>Nord</u>, such doubt is resolved when one considers that the unanimous <u>Nord</u> opinion was written by Justice Ginsberg who, during her tenure on the Court of Appeals for the D.C. Circuit, had previously addressed the use of SSDI awards in ERISA cases. She noted that the evidentiary records will be different for the SSDI and ERISA claims and, therefore, held that the SSA's determination of plaintiff's SSDI claim was entitled to "no weight."  <u>Block v. Pitney Bowes</u>, 952 F.2d 1450, 1455-56 (D.D.C. 1992).  Defendants respectfully submit that Justice Ginsburg's views, as stated in <u>Block</u> and now <u>Nord</u>, are better authority than the District Court's decision in <u>Edgerton</u>.

In short, the intervening <u>Nord</u> decision illustrates the direction this Court should take in reconsidering its decision to deny Defendants' motion in limine. Clearly, the Supreme Court has held that evaluating SSDI evidence in an ERISA disability claim presents "an apples to oranges" comparison.  The same rationale applies here and, therefore, the Court should grant Defendants' motion for reconsideration and exclude all evidence relating to Plaintiff's claim for SSDI.

12

**B.    Consolidation of this action with Defendants' action against
the SSA is the most efficient method to resolve a common question
of law.**

Alternatively, pursuant to Fed. R. Civ. P. 42(a), the Court should grant

Defendants' motion to consolidate their recently filed action against the SSA to

compel the testimony of ALJ Edward Morriss.  Rule 42(a) provides:

> When actions involving a common question of law or fact are pending
> before the court, it may order a joint hearing or trial of any or all the
> matters in issue in the actions;  it may order all the actions
> consolidated;  and it may make such orders concerning proceedings
> therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).

Pursuant to Rule 42(a) actions may be consolidated "as a matter of

convenience and economy" in judicial administration.  Newfoundland Mgmt.

Corp. v. Lewis, 131 F.3d 108, 116 (3d Cir. 1997) (quoting Johnson v. Manhattan

Ry. Co., 289 U.S. 479, 496-97 (1933)).  See also Graphic Arts Int'l Union, Local

97-B v. Haddon Craftsman, Inc., 489 F. Supp. 1088, 1091 (M.D. Pa. 1979)

(granting motion to consolidate because a common question of law is presented).

"A court has broad discretion to consolidate actions involving common

questions of law or fact for trial or pretrial purposes if it will facilitate the

administration of justice."  Smithkline Beecham Corp. v. Apotex Corp., 2001 U.S.

Dist. LEXIS 17434, at *18 (E.D. Pa. Sep. 28 2001)(emphasis added)(holding that

the benefits of consolidation outweighed any possible prejudice).

Here, the common questions of law include whether (1) the SSA abused its discretion in refusing to permit ALJ Morriss to testify, and (2) the Court should compel compliance with the June 6, 2003 subpoena. Consolidating these two actions is the most convenient option for minimizing the burden on the Court and on the parties. Furthermore, consolidation will also ensure that the result is consistent with the interests of all parties.

For these reasons, if the Court declines to reconsider its decision to admit evidence of Mazzamuto's SSDI award, the Court should grant Defendants' motion to consolidate the SSA action with the Mazzamuto action, and expedite its review of the SSA's decision.

**C.    The Court has the inherent authority to issue a stay of the present proceedings pending the outcome of Defendants' related action against the SSA.**

"[T]he decision whether to grant a stay in this case is committed to the district court's discretion, since it is a matter of the court's inherent power to conserve judicial resources by controlling its own docket." Cost Brothers, Inc. v. The Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985)(holding that it was error not to grant a stay pending arbitration).

Here, Plaintiff can hardly claim to be prejudiced when the purpose of the stay is ultimately to examine the relevance of the SSDI award – an issue raised and deemed important by Plaintiff. Also, if Defendants are successful in their related action and are permitted to depose ALJ Morriss, it will shed greater light on the

14

SSDI process and thereby further narrow the issues in the Mazzamuto action.

Finally, although a trial date has been set, and is, indeed, imminent, the Court has

granted additional time for limited discovery into the precise issue that Defendants

seek to enforce through the related SSA action. Pegasus Dev. Corp. v. DirecTV,

Inc., 2003 U.S. Dist. LEXIS 8052, *3-4 (D. Del. May 14, 2003) (applying a

three-factor analysis to find stay warranted). Thus, the Court should exercise its

inherent authority and stay the Mazzamuto civil action.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to

grant their motion for reconsideration, or in the alternative, their motion for

consolidation, expedited review and stay of proceedings.

Dated: July 14, 2003          STEVENS & LEE

                              By _E. Thomas Henefer_
                              E. Thomas Henefer
                              Attorney I.D. No. 55773
                              111 North Sixth Street
                              P.O. Box 679
                              Reading, Pennsylvania  19603
                              (610) 478-2000

                              Attorneys for Defendants

SL1 363936v1/10305.060

## CERTIFICATE OF SERVICE

I, E. Thomas Henefer, Esquire, certify that on this date, I served a

certified true and correct copy of the foregoing Memorandum of Law upon the

following counsel of record, by hand delivery to the following address:

>Richard C. Angino, Esquire
>4503 North Front Street
>Harrisburg, PA  17110-1708

and by first class mail to:

>Social Security Administration
>Office of the Regional Chief Counsel
>Office of the General Counsel
>Attn: Amy Nalence, Esquire
>P.O. Box 41777, 6th Floor
>Philadelphia, Pa  19101

>E. Thomas Henefer

Date:  July 14, 2003

SL1 363936v1/10305.060