ORIGINAL

*rore to w*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | JUDGE CONNER |
| CORPORATION, et al., | : | |
| Defendants | : | |

**FILED**
HARRISBURG, PA

JUL 1 4 2003

MARY L. _____, CLERK
Per _____

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION IN LIMINE ADDRESSING EX PARTE
## COMMUNICATIONS BY PLAINTIFF'S COUNSEL IN APPARENT
## <u>VIOLATION OF RULES OF PROFESSIONAL CONDUCT</u>

## I. INTRODUCTION

Defendants UNUMProvident Corporation, Paul Revere Insurance

Company and New York Life Insurance Company ("Defendants") file this

memorandum of law in support of their motion in limine to exclude evidence of

the waiver of life insurance premiums by New York Life Insurance Company

("NYL").

1

## II. PROCEDURAL HISTORY

Plaintiff is a restaurant owner who has asserted claims for bad faith, under 42 Pa. C.S.A. § 8371, and breach of contract arising from the denial of his claim for disability benefits under a disability policy based on alleged back and psychiatric conditions. The discovery deadline expired in June 2002. On March 17, 2003, the Court granted Defendants' motion for summary judgment on Plaintiff's bad faith claim. On May 6, 2003, the Court granted in part and denied in part Defendants' motion in limine finding, among other things, that NYL's decision to waive life insurance premiums, while not binding with respect to the disability policy, was relevant and admissible.

## III. FACTUAL HISTORY

On September 4, 2001, Defendants filed their answer to Plaintiff's complaint. In doing so, Defendants' counsel entered his appearance on behalf of all three named Defendants, including NYL. See Defendants' Answer, p. 7. On the same day, Defendants served their Answer on Plaintiff's counsel, thereby placing Plaintiff and his counsel on notice that NYL was a represented party with regard to all matters relating to Plaintiff's claims.

On February 13, 2002, Plaintiff filed a motion for a three-month extension of time to complete discovery. The Court subsequently granted Plaintiff's motion, extending the discovery deadline until June 15, 2002. There

were no further extensions, and the period for fact discovery closed on June 15, 2002.

Following the Court's May 6, 2003 ruling on the motion in limine, Defendants' counsel discovered that Plaintiff's counsel, Richard C. Angino, Esquire, had several direct communications with NYL representatives after this action was commenced and after counsel of record had entered his appearance. In these communications, Plaintiff's counsel demanded relief regarding the waiver of premiums and demanded the production of documents long after the deadline for discovery had passed. Both demands were accompanied by threats of a bad faith claim if NYL did not comply.

These communications, all without the knowledge or consent of undersigned counsel, included the following:

- On June 14, 2002, NYL advised Plaintiff that it had decided to waive premiums under the life policy. [The "June 14, 2002 Waiver Letter," attached as Exhibit A]. However, the June 14, 2002 Waiver Letter advised that premiums were being waived only until August 2002 at which point premiums would again be due.

- On June 24, 2002, Plaintiff's counsel wrote to NYL and sent a letter from Plaintiff's so-called insurance expert. [The "June 24, 2002 Angino Letter," attached hereto as Exhibit B]. In the June 24, 2002 Angino Letter Plaintiff's counsel demanded interest on the refunded premiums and a decision about whether NYL would waive premiums beyond August 2002.

- On July 24, 2002, NYL responded by stating that interest was not due on the refunded premiums and that NYL would consider a claim for waiver

SL1 363517v1/10305.060

beyond August 2002. [The "July 24, 2002 NYL Response Letter," attached hereto as Exhibit C].

- On July 29, 2002, Plaintiff's counsel wrote to NYL and demanded a response within seven days as to whether NYL would waive premiums beyond August 2002. [The "July 29, 2002 Angino Letter," attached hereto as Exhibit D].

- On August 1, 2002, Plaintiff's counsel wrote to NYL and threatened NYL with a bad faith action if NYL did not agree to waive premiums and pay interest on the refunded premiums. [The "August 1, 2002 Angino Letter," attached hereto as Exhibit E].

- On August 15, 2002, NYL agreed to waive premiums after August 2002. [The "August 15, 2002 Waiver Letter," attached hereto as Exhibit F].

Finally, on September 11, 2002, long after the close of discovery, Plaintiff's counsel again communicated directly with NYL, this time requesting interest on premiums refunded by NYL <u>and</u> the production of documents under threat of further litigation. [The "September 11, 2002 Angino Letter," attached hereto as Exhibit G]. Once again, Plaintiff's counsel drew a connection between the disability dispute in this case and the waiver of the life insurance policy.

First, Plaintiff's counsel wrote that "[i]t has come to our attention" that Plaintiff had claimed benefits under the disability policy and the waiver of premium.[1] Next, Plaintiff's counsel linked the disability benefits and the waiver of premium directly to this lawsuit.

---

[1]  Presumably, and contrary to the tone of the letter, Plaintiff's counsel had been aware of the disability dispute for a long time having filed this lawsuit in 2001.

4

> If New York Life is willing to pay interest from January 1, 2001, with respect to the life policy in the next two weeks and promptly supply us with the claim files as to [the disability policy] and [life policy], I will recommend that my client not proceed with any type of "bad faith" action against New York Life with respect to the life insurance policy . . . . As to [the disability policy], that case is scheduled to go to trial in November.  Time is, therefore, of the essence.

[See September 11, 2002 Angino Letter, Exhibit G].

Thus, not only did the *ex parte* communication from Plaintiff's counsel link the waiver of premium with this lawsuit, it also violated the Court's scheduling order by demanding (under the threat of a bad faith action) production of the claim file for the disability claim from a represented party three months after the close of discovery.

Again, at no time prior to making these *ex parte* communications did Plaintiff's counsel seek consent from New York Life's counsel of record.  If such a request had been made, consent would <u>not</u> have been given.

Plaintiff now seeks to introduce evidence concerning the decision by NYL to waive premiums under the life insurance policy.  Specifically, he has included in his exhibit list the June 14, 2002 Waiver Letter and the August 15, 2002 Waiver letter.  Presumably, he will also offer testimony about the waiver of premium.  Exclusion is proper because, to the extent the waiver of premium is relevant to this action (as Plaintiff contends), Plaintiff's counsel's direct

5

communication with a represented party violated Pennsylvania Rule of

Professional Conduct 4.2 and this Court's Scheduling Order.

## IV.  QUESTIONS PRESENTED

**A.  Whether the Court should exclude evidence of the waiver of the life insurance premium by Defendant New York Life Insurance Company because Plaintiff's counsel improperly communicated directly with a represented party in violation of the ethics rules and violated the Court's Scheduling Order by requesting the production of documents after the close of discovery?**

[Suggested Answer:  Yes].

## V.  ARGUMENT

**A.  Plaintiff's counsel violated Pennsylvania Rule of Professional Conduct 4.2 by engaging in direct communications with a represented party.**

Rule 83.23.2 of the United States District Court for the Middle

District of Pennsylvania provides in relevant part:

> The Rules of Professional Conduct adopted by this court are: (1) the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania . . . .

> Rule 4.2 of the Pennsylvania Rules of Professional Conduct states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

> The purpose of Rule 4.2 is to "prevent situations in which a

represented part may be taken advantage of by adverse counsel . . . ." <u>University</u>

<u>Patents, Inc. v. Kligman</u>, 737 F.Supp. 325, 327 (E.D. Pa. 1990) (holding that

6

counsel violated Rule 4.2 by contacting employees of corporate defendant). The

Official Comment to Rule 4.2 makes clear that when corporations or other

institutional organizations are parties to a lawsuit, adverse counsel shall not contact

the representatives and employees without first notifying and receiving the consent

of that party's counsel.

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, <u>and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization</u>.

Pa. Rules of Prof'l. Conduct R. 4.2, cmt. As the <u>University Patents</u> court noted, an

adverse party's attorney can take advantage of a corporate party in the same

manner as an individual party by (1) extracting damaging statements, (2) by

dissuading them from pursuing a claim, or (3) by negatively influencing their

expectations of succeeding on the merits. 737 F. Supp. 327-328.

Plaintiff's counsel's *ex parte* communications with NYL employees

with managerial responsibility are clearly included within the prohibitions of Rule

4.2. See <u>Belote v. Maritrans Operating Partners, L.P.</u>, No. 97-3993, 1998 U.S.

Dist. LEXIS 3571, at *6 (E.D. Pa. March 20, 1998)(reasoning that employees with

managerial responsibility are "a party within the meaning of Rule 4.2"). Moreover,

Plaintiff cannot claim that his *ex parte* communications fall outside the scope of

7

Rule 4.2 because the NYL employee to whom he corresponded was not "an officer, 'alter ego' or 'control group' member." See University Patents, 737 F.Supp. at 328.

> The underlying policy and Official Comment to [Rule 4.2] make clear that it was intended to forbid ex parte communications with all institutional employees whose acts or omissions could bind or impute liability to the organization or whose statements could be used as admissions against the organization presumably pursuant to Federal Rule of Evidence 801(d)(2)(D).

Id.

Without question, Plaintiff's counsel communicated directly with NYL, through its employees, several times about a matter which Plaintiff contends is relevant to this litigation in which Plaintiffs' counsel is well aware that NYL is a represented party. [See Exhibits A - G]. Indeed, Plaintiff's counsel used the September 11, 2002 Letter to communicate with NYL about subject matter at the very heart of his client's lawsuit: the disability policy.

> If New York Life is willing to pay interest from January 1, 2001, with respect to the life policy in the next two weeks and promptly supply us with the claim files as to [the disability policy] and [life policy], I will recommend that my client not proceed with any type of "bad faith" action against New York Life with respect to the life insurance policy . . . . As to [the disability policy], that case is scheduled to go to trial in November. Time is, therefore, of the essence.

[Exhibit G, ¶ 3, (emphasis added)]. This correspondence not only linked the disability policy and the life insurance policy (in a way which should have alerted Plaintiff's counsel not to have an ex parte communication) but also violated the

8

Court's discovery order by requesting documents from a party outside of the procedures allowed by the rules of civil procedure and after the expiration of the discovery deadline.

Defendants have argued all along that NYL's decision to waive Mazzamuto's life insurance premium is a separate and distinct issue from the decision to deny further disability benefits. [See Defendants' Motion in Limine filed October 17, 2002]. If Defendants' assertion is correct, then Plaintiff's counsel's *ex parte* communications with Defendant NYL would not violate Rule 4.2 because the wavier of premium would not necessarily be "the subject of representation with a party." See Pa. Rule of Prof'l Conduct R. 4.2.

Yet Plaintiff has argued vigorously that evidence of Defendant NYL's waiver of his life insurance premium is directly relevant and critical to his claims for breach of contract. Indeed, as contemplated by the Official Comment to Rule 4.2, Plaintiff's counsel sought to induce conduct by NYL on the waiver of premium which he now wants to have "imputed to [New York Life] for purposes of Civil . . . liability" or which Plaintiff will argue constitutes "an admission on the part of" New York Life. And the Court has thus far agreed to permit Plaintiff to present such evidence. [See May 6, 2003 Order]. Based upon this, Plaintiff has made the NYL waiver of premium "the subject of representation" and therefore the direct communications by Plaintiff's counsel with NYL violated Rule 4.2.

9

## B.  Preclusion of evidence should be ordered.

Federal courts possess the inherent power to discipline attorneys practicing before them.  Belote, 1998 U.S. Dist. LEXIS 3571, at *18 (holding that counsel violated Rule 4.2 by contacting Defendant's employees).  "As part of this power, the court has the ability to prohibit or remedy litigation practices which constitute ethical violations."  Id. (prohibiting use of evidence at trial as a sanction).  As the Belote Court noted:  "it is the judiciary's responsibility to ensure that the integrity of the profession is maintained."  Id. at *19.

And while courts faced with similar Rule 4.2 violations have contemplated but generally ruled out disqualification of counsel, "the problem may be cured by precluding the plaintiff from using during the course of the trial any information obtained through counsel's . . . ex parte contacts with any represented parties . . . ."  Id.  Here, the Court may use its inherent power to remedy Plaintiff's counsel's ethical violation by precluding the use of evidence relating to NYL's decision to waive the life insurance premium.  See id.; Cagguila v. Wyeth Laboratories, Inc., 127 F.R.D. 653, 654-655 (E.D. Pa. 1989) (granting motion for sanctions and "prohibiting the plaintiff's use at trial of any statement, information or evidence obtained or received" in violation of Rule 4.2).

In addition to engaging in prohibited *ex parte* communications with Defendant, NYL, Plaintiff violated the Court's Scheduling Order by demanding that NYL produce copies of Mazzamuto's disability claim file and his Life

10

insurance file. [September 11, 2002 Angino Letter, Exhibit G]. There is no question that the discovery period closed on June 15, 2002. And Plaintiff cannot claim that his request for these documents is somehow unrelated to his ongoing lawsuit against NYL. As Plaintiff's counsel plainly states: "promptly supply us with the claim files as to [the disability policy] . . . . As . . . that case is scheduled to go to trial in November. Time is, therefore, of the essence." [September 11, 2002 Angino Letter, Exhibit G, ¶3].

Based upon Plaintiff's use of strong arm tactics to secure documents in clear violation of the Court's Scheduling Order, the Court should preclude Plaintiff's use of evidence relating to NYL's waiver of life insurance premiums.

**VI. CONCLUSION**

For the foregoing reasons, UNUM respectfully requests this Court to grant its Motion in Limine.

Dated: July 14, 2003                     STEVENS & LEE

                                         By E. Thomas Henefer
                                         E. Thomas Henefer
                                         Attorney I.D. No. 55773
                                         Kirk L. Wolgemuth
                                         Attorney I.D. No. 45792
                                         111 North Sixth Street
                                         P.O. Box 679
                                         Reading, Pennsylvania  19603
                                         (610) 478-2000

                                         Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, E. Thomas Henefer, Esquire, certify that on this date, I served a certified true and correct copy of the foregoing Memorandum of Law upon the following counsel of record, by hand delivery to the following address:

Richard C. Angino, Esquire
4503 North Front Street
Harrisburg, PA  17110-1708

E. Thomas Henefer

Date:  July 14, 2003