ORIGINAL

NONE to Ct



FILED

JUL 1 5 2003

PER ____
HARRISBURG, PA.   DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENZO MAZZAMUTO, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 1:CV-01-1157 |
| | : | |
| v. | : | |
| | : | |
| UNUM PROVIDENT | : | JUDGE CONNER |
| CORPORATION, et al., | : | |
| Defendants | : | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION IN LIMINE REGARDING
## EXPANDED SCOPE OF TESTIMONY BY DR. SCHNEIDER

## I. INTRODUCTION

Defendants UNUMProvident Corporation, Paul Revere Insurance Company

and New York Life Insurance Company ("Defendants") file this memorandum of

law in support of their motion in limine to exclude the testimony of, or evidence

regarding, Dr. Schneider at trial in so far as it exceeds the scope of the Court's May

6, 2003 Order.  This motion is required in light of Plaintiff's notification following

Dr. Schneider's deposition, and in direct violation of the Court's May 6, 2003

SL1 366525v1/10305.060

Order, that Dr. Schneider would be used as an expert witness to express opinions beyond the content of his July 2001 report.

## II. PROCEDURAL HISTORY

Plaintiff is a restaurant owner who has asserted claims for bad faith, under 42 Pa. C.S.A. § 8371, and breach of contract arising from the denial of a claim for benefits under a disability policy based on alleged back and psychiatric conditions.

On March 17, 2003, after consideration of the parties' submissions, the Court issued an order granting in part Defendants' motion for summary judgment with regard to Plaintiff's bad faith claim.

The deadline for disclosure of experts and expert reports was June 28, 2002.

On October 3, 2002, Defendants filed a motion in limine to exclude as evidence from trial, among other things, the testimony and report of Dr. Schneider for failure to disclose Dr. Schneider as an expert and provide his expert report. On May 6, 2003, the Court issued an order denying Defendants' motion, but limiting the scope within which Dr. Schneider would be permitted to testify. Specifically, the Court held: "This witness will base his testimony on his observations of Mazzamuto's mental condition during the July 2001 examination." [May 6, 2003 Opinion, at 5]. The Court further held: "Dr. Schneider's testimony will be limited to those matters falling within the fair scope of his clinical evaluation." [May 6, 2003 Opinion at 5, n.1].

On June 6, 2003, Defendants issued a subpoena to take a discovery deposition of Dr. Schneider.  On June 18, 2003, Plaintiff noticed the videotaped deposition of Dr. Schneider for use at trial.

On July 8, 2003, Defendants deposed Dr. Schneider.  Plaintiff, however, cancelled the video tape trial deposition.  Then, within hours of the completion of the discovery deposition, Plaintiff notified Defendants that Dr. Schneider would testify live at trial after (1) reviewing depositions, (2) conducting another examination of Plaintiff, and (3) providing a new report of Plaintiff's condition.  Trial is scheduled to begin in less than thirty (30) days.

Defendants file this motion in limine to exclude the testimony and report of Dr. Schneider to the extent it exceeds the scope permitted by the Court's May 6, 2003 Order.  Further, allowing Plaintiff to designate a new expert more than a year after the deadline for expert reports and after the relevant discovery is concluded would be unfairly prejudicial.

## III. FACTUAL HISTORY

Plaintiff seeks to offer into evidence a decision by the Social Security Administration ("SSA") awarding Social Security Disability Income ("SSDI") benefits.  This decision is based on different legal standards and a vastly different factual record than is present here.  Although the Court has thus far permitted Plaintiff to introduce evidence relating to the SSDI decision, Defendants have recently filed a motion for reconsideration.  Defendants based their request for

3

reconsideration on an intervening Supreme Court case that held that SSDI evidence is irrelevant to private party claims for disability insurance benefits.

As part of his evidence concerning the SSDI award, Plaintiff seeks to use the testimony of Dr. Schneider. The SSA referred Plaintiff to Dr. Schneider for a "Clinical Psychological Disability Evaluation" as part of its regimented SSDI adjudication process. On July 13, 2001, Dr. Schneider dictated a 4-page outline covering his one-hour observation of Plaintiff.

Plaintiff failed to designate Dr. Schneider as an expert witness prior to the close of discovery in June of 2002, and Defendants later moved to exclude Dr. Schneider as an expert witness. Nevertheless, the Court held in its May 6, 2003 Order and Opinion that Dr. Schneider would be permitted to testify on a significantly limited basis.

> This witness will base his testimony <u>on his observations</u> of Mazzamuto's mental condition <u>during the July 2001 examination</u>. Moreover, Dr. Schneider provided the functional equivalent of an expert's report in the form of his "Clinical Psychological Disability Evaluation" dated July 13, 2001.

[Opinion dated May 6, 2003, p. 5 (emphasis added)].

In allowing Dr. Schneider to testify, despite Plaintiff's failure to timely disclose, the Court noted that he was not a "treating physician" and nor was he employed by Plaintiff as an expert. Based upon these "unique circumstances," the Court held that Dr. Schneider could testify, but that his "testimony will be <u>limited</u>

4

to those matters falling within the fair scope of his clinical evaluation." [Id. at p. 5, n.1 (emphasis added)].

The Court further held that Plaintiff's counsel was required "to provide opposing counsel with a current curriculum vitae and copies of any documents relied upon by Dr. Schneider in the preparation of his clinical evaluation." [Id. at p. 5, n.1]. To date, Plaintiff's counsel has failed to comply with the Court's directive, other than by providing (after the deposition) a checklist used by Dr. Schneider to question Plaintiff in July 2001.

Following the Court's order, Defendants subpoenaed Dr. Schneider for a discovery deposition on July 8, 2003. Subsequently, Plaintiff issued a deposition notice for a video tape trial deposition of Dr. Schneider to commence immediately following the discovery deposition.

At the discovery deposition, however, it soon became clear that Dr. Schneider had little or no significant evidence to provide.[1] For example, Dr. Schneider had never treated Plaintiff and had never spoken with Plaintiff before or after the July 2001 examination which lasted about one hour. Dr. Schneider did not review any treatment records before examining Plaintiff in July 2001. He subsequently has not reviewed any records or deposition transcripts related to the case.

---

[1] A copy of the transcript will be filed immediately upon receipt. An expedited copy has been requested.

Dr. Schneider was not aware of how Plaintiff described his occupation to Defendants. He also conceded that Plaintiff's extensive stock trading activities could be relevant to the psychological analysis and that Mazzamuto did not disclose this information during the July 2001 examination (although Plaintiff had already lost over $300,000 in Internet stock trading by that time).

Perhaps even more compelling, Dr. Schneider testified that he had no information on Plaintiff's current condition or whether it had either deteriorated or improved since July 2001. Finally, Dr. Schneider testified that he did not render an opinion about whether Plaintiff was disabled in 2001 and he has no opinion on disability now.

Apparently realizing that Dr. Schneider was not in a position to help Plaintiff's case at trial, Plaintiff's counsel then cancelled the video trial deposition advising that he would arrange to have Dr. Schneider testify live at trial. Then, roughly three hours later, Plaintiff's counsel faxed a letter to Defendants' counsel regarding Dr. Schneider's trial testimony.

Ignoring the limitations in the Court's May 6, 2003 order, Plaintiff's counsel advised that he would now have Dr. Schneider review deposition transcripts; re-examine Plaintiff; question Plaintiff about the stock trading that Plaintiff previously failed to disclose to Dr. Schneider; and issue a new export report. In short, Plaintiff now wants to change the focus of Dr. Schneider's testimony (after the relevant discovery has been concluded) from the limited scope permitted by the

Court's May 6, 2003 order to that of an expert witness based on an analysis

performed after discovery and report yet to be disclosed more than a year after the

deadline for expert reports.

## IV. QUESTIONS PRESENTED

**A. Whether the Court should exclude testimony of Dr. Schneider beyond the scope of his July 2001 report because the witness's proposed testimony violates the Court's order and because the last-minute disclosure of expert testimony and report less than thirty days before trial is unfairly prejudicial to Defendants?**

[Suggested Answer: Yes].

## V. ARGUMENT

The Court has discretion to deny Plaintiff's use of Dr. Schneider as an

expert. Oliver v. Ingber, No. 96-4471, 1998 U.S. Dist. LEXIS 2799, *3-4, (E.D.

Pa. Mar. 9, 1998)(excluding expert testimony because defendants would have been

unfairly prejudiced by allowing testimony of plaintiff's expert where report not

received until the eve of trial). See also, Lanni v. State of New Jersey, et al., 177

F.R.D. 295, 301 (D.N.Y. 1998). Exclusion is proper because the proposed

testimony violates the Court's Order and the eleventh-hour disclosure is unfairly

prejudicial.

**A. Plaintiff's proposed use of Dr. Schneider's testimony violates the Court's May 6, 2003 Order.**

The Court allowed Plaintiff to introduce the testimony of Dr. Schneider as

part of the evidence concerning Plaintiff's SSDI award but set forth very specific

limitations. Defendants have maintained (and continue to maintain) that evidence

7

of SSDI claims is not relevant to a claim for benefits under a private policy of insurance. Nevertheless, the Court permitted Plaintiff to introduce evidence of Dr. Schneider's SSDI examination of Plaintiff, but only for certain specified purposes: "[Dr. Schneider] will base his testimony on his observations of Mazzamuto's mental condition during the July 2001 examination." [May 6, 2003 Opinion at 5]. The Court's directive is unambiguous: "Dr. Schneider's testimony will be limited to those matters falling within the fair scope of his clinical evaluation." [May 6, 2003 Opinion at 5, n.1].

Despite this, Plaintiff has now chosen to ignore the Court's order and unilaterally expand the scope of permitted testimony. And, on top of violating the Court's order, Plaintiff intends to sandbag Defendants by re-writing Dr. Schneider's testimony after the conclusion of his deposition.

Specifically, as noted above, Plaintiff intends to have Dr. Schneider read deposition testimony of Dr. Bowers and Mr. and Ms. Mazzamuto, examine Mazzamuto, inquire into Mazzmuto's stock trading, and then issue a report concerning Mazzamuto's condition. In other words, on the eve of trial, Plaintiff intends to transform Dr. Schneider into a full-fledged expert on Mazzamuto's psychological condition and provide testimony as to Mazzamuto's alleged condition. This plainly violates the Court's May 6, 2003 ruling, which was based solely on Dr. Schneider's functionary role in the SSDI decision.

SL1 366525v1/10305.060

In fact, in the May 6, 2003 Order, the Court did <u>not</u> state that Dr. Schneider was an expert who could testify regarding Mazzamuto's condition. <u>Nor</u> did the Court indicate that Dr. Schneider could render an opinion regarding anything outside the scope of his brief July 13, 2001 observations. The Court's Order was specific and envisions Dr. Schneider testifying only with regard to his SSDI consultation, in which, among other things, he did not render an opinion on the ultimate question of disability.

Discovery has now confirmed that Dr. Schneider's July 2001 examination provides little or no useful information to support Plaintiff's claim. While this may be unfortunate from Plaintiff's perspective, it provides no basis for Plaintiff to violate the Court's May 6, 2003 order. In short, Plaintiff's attempt to expand Dr. Schneider's testimony into prohibited matters is in direct violation of the Court's order and he should be precluded from doing so.

**B. Allowing the late designation of experts is unfairly prejudicial.**

Fed. R. of Evid. 403 prohibits admission of evidence (which would otherwise be admissible) if its probative value is substantially outweighed by the danger of unfair prejudice. This applies to expert testimony. <u>JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.</u>, No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 at *14 (E.D. Pa. Apr. 14, 1998), <u>aff'd</u>, 178 F.3d 1279 (3d Cir. 1999).

9

This is a classic example for use of Rule 403 because Plaintiff's eleventh-hour shift in strategy regarding the proposed testimony of Dr. Schneider will unfairly prejudice Defendants. The discovery period for designating experts expired over a year ago, the Court specifically limited Dr. Schneider's testimony to his July 13, 2001 observations, and, on July 8, 2003, Defendants conducted their deposition of him.

Now, with less than thirty days left until trial is set to begin, Plaintiff proposes to change Dr. Schneider into a full-fledged expert for trial on Plaintiff's disability claim by (1) reading the attending physicians deposition, (2) reading the Mazzamutos' depositions, (3) examining Mazzamuto, (4) inquiring into Mazzamuto's stock trading, and (5) developing a last-minute expert report (in which he will undoubtedly render an opinion on disability for the very first time). For several reasons, Plaintiff's intended course of action will result in substantial unfair prejudice to Defendants and should be precluded.

First, the Court's scheduling order closing expert discovery over a year ago was intended to give the parties an opportunity to prepare their respective cases for trial without the concern of surprise expert testimony. Allowing Plaintiff to offer Dr. Schneider's testimony about matters Dr. Schneider never previously considered violates Court's scheduling order. As a result, Plaintiff intends to slip in Dr. Schneider's radically modified testimony at the eleventh hour and thwart Defendants' efforts to develop their case.

10

Second, when the Court issued its May 6, 2003 Order, it contemplated the relevance of Dr. Schneider's testimony in the context of Plaintiff's SSDI claim. The Court did not indicate that it thought Dr. Schneider would have relevant testimony with regard to Plaintiff's claims for breach of his private policy of insurance. Yet that is precisely what Plaintiff now hopes to achieve with Dr. Schneider: elicit an expert opinion regarding Mazzamuto's condition as it relates to his private claim for benefits. Plaintiff's intended course of action will be unfairly prejudicial in light of what Defendants learned during discovery about the extent of Dr. Schneider's role in the SSDI award.

Again, Defendants deposed Dr. Schneider on July 8, 2003, based upon the limited scope of testimony anticipated under the direction Court's May 6, 2003 Order. During the deposition, Dr. Schneider acknowledged that he (1) never rendered an opinion regarding Mazzamuto's disability (and currently has no opinion), (2) never reviewed any of Mazzamuto's medical records, and (3) never had access to the type of information Plaintiff's propose to give him now (e.g., reports of Mazzamuto's extensive stock trading and depositions). Plaintiff now seeks to cure Dr. Schneider's very limited understanding of Plaintiff's claims by selectively spoon-feeding him favorable information and then having him produce a favorable report.

The unfairly prejudicial circumstances presented here are obvious. Defendants have already completed their depositions based on the anticipated

11

limited scope of Dr. Schneider's testimony. And, Dr. Schneider's testimony was only marginally relevant to the issue of the SSDI award in the first place. Now, if Plaintiff is allowed to expand the scope of Dr. Schneider's testimony to include an expert opinion on Mazzamuto's private claim of disability, Defendants will be unfairly prejudiced.

Third, one of the few "advantages" inherent in the procedural rules is that Defendants are permitted to go last in presenting their case and their evidence. This includes the presentation of expert testimony.

Here, Defendants completed a video trial deposition of their expert psychiatrist for July 14, 2003 so that his testimony may be presented at trial even if he is unable (due to scheduling commitments to his patients) to testify live at trial. Now, if Plaintiff is permitted to make Dr. Schneider into a full-fledge expert, Plaintiff will have the advantage of Dr. Schneider's review of the opinions of Defendants' experts without a response by Defendants. Dr. Schneider would also be able to offer new opinions about which Defendants' expert may be unable to comment. Thus, assuming Dr. Hostetter is not able to testify live at trial, Defendants' tactical advantage of going last will be nullified if Plaintiff is permitted to get the last word on experts.

Simply put, the Defendants were entitled to make informed strategic choices in defending this action based on the pretrial preparation that took place within the deadlines and within the scope of the Court's orders. Discovery made it clear that

12

this case has always been about Plaintiff's individual claim and to the extent Dr. Schneider is permitted to testify he should be limited to his observations concerning SSDI.  Plaintiff should not be allowed to undermine Defendants' trial preparation by using Dr. Schneider to present a new opinions never before considered or tested through the discovery process.

As a result, Defendants will be unfairly prejudiced if Dr. Schneider is permitted to testify beyond the scope of the Court's May 6, 2003 Order.

## VI. CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to grant their Motion in Limine.

Dated:  July 15, 2003          STEVENS & LEE

By _E. Thomas Henefer_

E. Thomas Henefer
Attorney I.D. No. 55773
Kirk L. Wolgemuth
Attorney I.D. No. 45792
111 North Sixth Street
P.O. Box 679
Reading, Pennsylvania  19603
(610) 478-2000

Attorneys for Defendants

07/15/03/SL1 366525v1/10305.060

## **CERTIFICATE OF SERVICE**

I, E. Thomas Henefer, Esquire, certify that on this date, I served a

certified true and correct copy of the foregoing Memorandum of Law upon the

following counsel of record, by hand delivery to:

Richard C. Angino, Esquire
4503 North Front Street
Harrisburg, PA  17110-1708

E. Thomas Henefer

Date:  July **15**, 2003